**DUANE MORRIS LLP**
Karen L. Alexander (SBN 265926)
KLAlexander@duanemorris.com
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: +1 619 744 2200
Facsimile: +1 619 744 2201

Daniel D. Wall (SBN 311391)
DWall@duanemorris.com
Spear Tower, One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Telephone: +1 415 957 3000
Facsimile: +1 415 957 3001

Attorneys for Defendant
ARB GAMING LLC dba MODO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| MATTHEW JOYCE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ARB GAMING LLC dba MODO, a Delaware limited liability company; B2SERVICES OU dba MCLUCK; AFFIRM, INC.; GOLDMAN SACHS BANK USA; APPLE INC.; AMAZON.COM, INC.; and DOES 1-10 inclusive,<br><br>Defendants. | Case No. 2:25-cv-01868-DJC-CSK (PS)<br><br>**DEFENDANT ARB'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THE ACTION**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Date:       August 13, 2026<br>Time:      1:30 p.m.<br>Dept:      Courtroom 7, 14th Floor<br>Judge:    Hon. Daniel J. Calabretta<br>              Magistrate Judge Chi Soo Kim |

DUANE MORRIS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ........................................................................................................ 1

II.     STATEMENT OF FACTS .......................................................................................... 2

        A.      ARB's Services and Plaintiff's Allegations ..................................................... 2

        B.      Users Were Required to Agree to the Terms Before Using the Platform .............. 3

        C.      Plaintiff Assented .............................................................................................. 4

        D.      The Terms Contain a Broad Arbitration and Delegation Clause .......................... 5

        E.      Plaintiff Previously Filed Suit and Initiated Arbitration ..................................... 5

        F.      The JAMS Arbitration Proceedings ................................................................... 6

        G.      Plaintiff's Attempts to Circumvent the Arbitrator's Rulings ............................... 7

        H.      The Arbitrator Has Already Ruled That Plaintiff's Claims Belong in
                Arbitration ......................................................................................................... 8

        I.      Meet and Conferring Over Sanctions ................................................................ 9

III.    LEGAL STANDARD ................................................................................................. 9

IV.     ARGUMENT ............................................................................................................. 10

        A.      The Parties Already Litigated the Issue of Arbitrability ..................................... 10

        B.      Plaintiff Agreed to a Valid and Enforceable Arbitration Agreement .................. 12

        C.      The Terms Delegated Questions of Arbitrability to the Arbitrator ...................... 12

        D.      Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement .............. 14

        E.      The Court Should Dismiss This Action or, Alternatively, Stay this Action
                Pending Arbitration ........................................................................................... 15

        F.      Sanctions and Fees Are Warranted ................................................................... 15

V.      CONCLUSION .......................................................................................................... 17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Express Co. v. Italian Colors Rest.*
570 U.S. 228 (2013) ..................................................................................................... 10

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*
475 U.S. 643 (1986) ..................................................................................................... 10

*Bishoy Nessim v. Fliff, Inc.*
No. 5:23-cv-01048-SSS-SHK (C.D. Cal. Jan. 5, 2024) ............................................. 14

*Boyle v. Sweepsteaks Ltd.*
No. 8:25-cv-00302, 2025 WL 1674480 (C.D. Cal. May 19, 2025) ............................ 14

*Chambers v. NASCO, Inc.*
501 U.S. 32 (1991) ....................................................................................................... 16

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*
207 F.3d 1126 (9th Cir. 2000) ..................................................................................... 10

*Dean Witter Reynolds, Inc. v. Byrd*
470 U.S. 213 (1985) ................................................................................................ 10, 12

*Epic Sys. Corp. v. Lewis*
584 U.S. 497 (2018) ..................................................................................................... 10

*G.C. and K.B. Investments, Inc. v. Wilson*
326 F.3d 1096 (9th Cir. 2003) ..................................................................................... 16

*Gilmer v. Interstate/Johnson Lane Corp.*
500 U.S. 20 (1991) ....................................................................................................... 10

*Green Tree Fin. Corp.-Ala. v. Randolph*
531 U.S. 79 (2000) ....................................................................................................... 10

*Hebei Hengbo New Materials Technology Co., Ltd. v. Apple, Inc.*
344 F. Supp. 3d 1111 (N.D. Cal. 2018) ................................................................. 11, 16

*Henry Schein, Inc. v. Archer & White Sales, Inc.*
586 U.S. 63 (2019) ............................................................................................. 1, 10, 13

*Johnmohammadi v. Bloomingdale's, Inc.*
755 F.3d 1072 (9th Cir. 2014) ..................................................................................... 15

*Joyce v. Affirm et al.*
Case No. 25-cv-4667-KAW, ECF No. 1 .......................................................................6

DUANE MORRIS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

*Kyocera Corp. v. Prudential-Bache Trade Servs., Inc.*
    341 F.3d 987 (9th Cir. 2003) (en banc) ............................................................... 11

*Meyer v. Uber Techs., Inc.*
    868 F.3d 66 (2d Cir. 2017) ................................................................................. 13

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*
    460 U.S. 1 (1983) ............................................................................................... 10

*Nguyen v. Barnes & Noble Inc.*
    763 F.3d 1171 (9th Cir. 2014) ............................................................................ 13

*Rent-A-Center, W., Inc. v. Jackson*
    561 U.S. 63 (2010) ........................................................................................ 10, 13

*Smith v. Spizzirri*
    601 U.S. 472 (2024) ........................................................................................... 15

*Teamsters Local Union No. 760 v. United Parcel Service, Inc.*
    921 F.2d 218 (9th Cir. 1990) ......................................................................... 11, 16

*United Paperworkers Int'l Union v. Misco, Inc.*
    484 U.S. 29 (1987) ............................................................................................. 11

*Wages v. I.R.S.*
    915 F.2d 1230 (9th Cir. 1990) ........................................................................... 16

*Wood v. Santa Barbara Chamber of Commerce, Inc.*
    699 F.2d 484 (9th Cir. 1983) (*cert. denied*), 465 U.S. 1080 (1984) ...................... 16

**Statutes**

9 U.S.C. § 2 ....................................................................................... 1, 9, 12-13

9 U.S.C. § 3 ................................................................................................ 10, 15

9 U.S.C. § 4 ........................................................................................................ 10

28 U.S.C. § 1927 ................................................................................................ 16

42 U.S.C. § 12182 ................................................................................................ 3

DUANE MORRIS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii
ARB'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THE ACTION
2:25-cv-01868-DJC-CSK (PS)

## I.    INTRODUCTION

Plaintiff Matthew Joyce ("Plaintiff" or "Joyce") brings this action arising from his use of ARB Gaming LLC d/b/a Modo's ("ARB," "Modo" or "Defendant") online social gaming platform (the "Platform").  This action should be dismissed or stayed while Mr. Joyce's claims are arbitrated and, because Plaintiff persists in pursuing duplicative litigation despite the arbitrator's express rulings and repeated warnings, ARB should be awarded sanctions and fees for being forced to make this application.

Plaintiff previously initiated arbitration arising from the same dispute asserted here. After nearly a year of active litigation before JAMS, the arbitrator held in an Order that this matter is arbitrable.

Plaintiff attempted to withdraw his claim after receiving this adverse ruling. The arbitrator rejected that application and entered an Interim Award again ordering Mr. Joyce to arbitrate. Mr. Joyce has refused to abide by the Interim Award and persists in litigating his claims before this Court. Plaintiff, of course, cannot demand arbitration, fully litigate arbitrability before JAMS, receive adverse rulings, and then attempt to relitigate those same issues in federal court simply because he now prefers a different forum.

As the arbitrator already determined, Plaintiff's claims belong in arbitration. Plaintiff was required to create an account and affirmatively accept the Terms of Use ("Terms") as a condition of accessing and using the Platform.  Plaintiff accepted the Terms, which contain a broad and mandatory arbitration provision requiring arbitration of "any and all past, present and future disputes" arising out of or relating to the Platform, including disputes arising prior to assent to the arbitration provision itself.  The Terms further contain a clear delegation clause requiring threshold arbitrability questions to be decided by the arbitrator, not the Court.

The FAA requires arbitration agreements to be enforced according to their terms. 9 U.S.C. § 2. Because Plaintiff's claims fall squarely within the scope of the arbitration agreement, because the Terms delegate questions of arbitrability to the arbitrator, and because Plaintiff has already submitted to arbitral jurisdiction and was ordered by an arbitrator to arbitrate, this Court should compel arbitration and dismiss or stay this action. *See Henry Schein, Inc. v. Archer & White*

*Sales, Inc.*, 586 U.S. 63, 71 (2019) ("When the parties' contract delegates the arbitrability question to an arbitrator, the courts must respect the parties' decision as embodied in the contract.").

Motion practice here could have been avoided as arbitrability already has been decided. ARB advised Plaintiff's counsel multiple times that it would seek sanctions if ARB was forced to make this motion. Plaintiff's counsel conferred with Mr. Joyce. He refused, however, to stay this case and accept the arbitrator's decision on arbitrability. Apparently in response to Mr. Joyce's intransigence, Mr. Joyce's counsel made a motion to withdraw as counsel from this case (which ARB does not oppose).

Mr. Joyce has created unnecessary motion practice and as a sanction should bear costs and attorneys' fees incurred by ARB in having to make this unnecessary motion.[1]

## II.    STATEMENT OF FACTS

### A.    ARB's Services and Plaintiff's Allegations

ARB is a private company organized and existing under the laws of Delaware. (Declaration of Patrick Fechtmeyer ("Fechtmeyer Decl.") ¶ 3.) ARB offers customers the ability to access its free-to-play online social gaming platform designed solely for amusement and entertainment through the Platform. (*Id*.) The Platform does not provide any essential or critical service; rather, its users voluntarily choose whether to participate, and its users are free to stop playing at any time without consequence. (*Id*.) As a condition of accessing and using the Platform, all users are required to create an account and affirmatively accept ARB's Terms of Use ("Terms"). Users cannot create an account or access the Platform without agreeing to those Terms. (*Id*.)

Plaintiff is a natural person and citizen and resident of North Carolina. (FAC ¶ 1.) Plaintiff alleges that he created accounts on the Platform, purchased virtual currency, participated in games offered through the Platform, communicated extensively with ARB personnel, and used the Platform over an extended period of time. (FAC ¶¶ 35-38, 82.)

---

[1] Counsel for Modo learned on May 19, 2026, that Plaintiff's current counsel, Amina Mack, intends to file a motion to withdraw as counsel. It remains unclear to Defense whether Plaintiff will seek another counsel or proceed pro per.

Plaintiff's claims arise directly from his use of the Platform and his relationship with ARB as a user of the Platform. Plaintiff asserts twelve causes of action arising from that use, including claims for alleged violations of the Unruh Civil Rights Act (Cal. Civ. Code § 51), the Americans with Disabilities Act (42 U.S.C. § 12182), fraud (Cal. Civ. Code § 1709), breach of contract, breach of the implied covenant of good faith and fair dealing, unfair business practices (Cal. Bus. & Prof. Code § 17200), unjust enrichment, violation of California Financial Code § 22000, intentional infliction of emotional distress, negligent infliction of emotional distress, payment processor liability, and aiding and abetting. (FAC ¶¶ 198-414.)

Each claim arises directly from the services Plaintiff used and the Terms he accepted when registering his account and before playing any games and thus falls squarely within the scope of the arbitration clause.

**B.      Users Were Required to Agree to the Terms Before Using the Platform**

At all relevant times, ARB required all users to first create a user account and register with the Platform prior to accessing, using, or playing any games on it. (Fechtmeyer Decl. ¶ 5.) When a new user accesses the Platform to first create and register a user account, they will be prompted to review and accept ARB's Terms. (Fechtmeyer Decl. ¶¶ 5-6.) A new user must affirmatively assent to the Terms through a clear and enforceable clickwrap mechanism before completing an account and accessing the Platform. (Fechtmeyer Decl. ¶¶ 4-8.) Without that acceptance, the account cannot be created and services cannot be used. (Fechtmeyer Decl. ¶ 8.) The process includes completing the "Welcome To Modo!" pop-up fillable form on its website. (Fechtmeyer Decl. ¶ 7.) To submit the form, users must click the checkbox next to the statement: "I agree with the Terms of Service and Sweepstakes Rules." (Fechtmeyer Decl. ¶ 7.) Within that statement, "Terms of Service" and "Sweepstakes Rules" are prominently emphasized hyperlinks. Before clicking that checkbox indicating acceptance, all users may review the Terms of Service and Sweepstakes Rules by clicking on hyperlinks as shown below:

DUANE MORRIS LLP
ATTORNEYS AT LAW
SAN FRANCISCO



Through this process, users acknowledge that they have read and agree to the Terms and Privacy Policy. (Fechtmeyer Decl., ¶¶ 5-8.)

In addition to requiring new users to accept the then-applicable Terms at the time of registration, from time-to-time, the Terms are amended. After each and every amendment to the Terms during the relevant period, every user was required to re-agree to the amended Terms as a condition of continued use of ARB's platform, upon their next login to or access of the platform. (Fechtmeyer Decl. ¶¶ 5-8, 15.)

**C.    Plaintiff Assented**

ARB maintains business records documenting each user's acceptance of the Terms, including the specific version accepted and the corresponding timestamp. (Fechtmeyer Decl. ¶ 9.) According to ARB's records, on or about August 2, 2024, Plaintiff created a user account on the Platform and accepted the then-applicable Terms. (Fechtmeyer Decl. ¶ 10.) Upon subsequent use

DUANE MORRIS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

of the Platform, the last version of the Terms accepted by Plaintiff was dated September 10, 2024. (Fechtmeyer Decl. ¶ 9-12.) At the time of registration and upon each subsequent update, Plaintiff was required to accept, and did accept, the Terms then in effect as a condition of creating an account and continuing to access the Platform. Plaintiff continued using the Platform thereafter. (Fechtmeyer Decl. ¶¶ 5-12, 15-17.)  The relevant arbitration and delegation provisions are substantively identical across all versions. (Fechtmeyer Decl. ¶ 16.)

Plaintiff's own FAC repeatedly acknowledges the existence and applicability of the Terms. Plaintiff alleges that he "last accepted ARB Gaming's Terms of Service on September 10, 2024." (FAC ¶ 82).

**D.      The Terms Contain a Broad Arbitration and Delegation Clause**

All versions of the Terms accepted by Plaintiff contain a broad and mandatory arbitration provision. The Terms define "Dispute" to mean "any and all past, present and future disputes, claims or causes of action" arising out of or relating to these Terms, the Platform, or any other dispute between you and Modo or any of Modo's affiliates, licensors, distributors, suppliers, or agents." (Fechtmeyer Decl., ¶¶ 13-14, Exhibit B.) The Terms require the resolution of "any Dispute" including disputes "concerning the enforceability, validity, scope, or severability of this agreement to arbitrate" through "final and binding arbitration." (*Id*.) The Terms further provide that all activity on the Platform, "including all events which occurred before your acceptance of the Terms, shall be subject to this Section H." (*Id*.)

The Terms further provide that disputes concerning the "enforceability, validity, scope or severability" of the arbitration agreement are delegated to the arbitrator, not the Court. The Terms also require arbitration to proceed on an individual basis pursuant to JAMS rules. (Fechtmeyer Decl. ¶ 13-14.)

**E.      Plaintiff Previously Filed Suit and Initiated Arbitration**

Before filing this action, Plaintiff filed related claims arising from the same underlying dispute in Contra Costa County Superior Court on May 5, 2025. (FAC; Contra Costa Superior Court No. C25-01268.)

Four days later, on May 9, 2025, Plaintiff filed a Demand for Arbitration with JAMS,

attaching a copy of the same Complaint and Terms concerning the same dispute pursuant to the same arbitration agreement at issue here. (Demand for Arbitration, JAMS Ref. No. 5100003080; Request for Judicial Notice, filed concurrently, ("RJN") ¶ 2, Exhibit A.).

The Contra Costa Superior Court action was removed to the Northern District of California on June 3, 2025. (*Joyce v. Affirm et al.*, Case No. 25-cv-4667-KAW, ECF No. 1.) On June 18, 2025, Plaintiff filed a "Request for Stay Pending Arbitration" in which he requested that the Court stay the matter pending resolution of the ongoing arbitration between himself and ARB. (*Id.*, ECF No. 8.) The District Court then issued an order striking Plaintiff's Request to Stay Pending Arbitration and issuing an Order to Show Cause why Plaintiff's then-counsel Reshma Kamath should not be removed from the action as she had been disbarred in that District.  (*Id.*, ECF No. 15). Plaintiff thereafter filed this action in the Eastern District Court of California on June 30, 2025, and then voluntarily dismissed the Northern District case on July 3, 2025.  (*Id.*, ECF No. 17.)

The JAMS arbitration has been actively ongoing for over one year and remains pending and the detailed history of those proceedings demonstrates Plaintiff's extensive participation and the arbitrator's substantive rulings.

**F.     The JAMS Arbitration Proceedings**

JAMS accepted the arbitration, formally commenced the proceeding on July 31, 2025, and appointed Hon. Peggy A. Leen (Ret.) to arbitrate the matter on August 12, 2025. ARB filed its Answer and Affirmative Defenses on August 20, 2025. (Order re Motion to Declare Arbitration Non-Binding and MTD, Mar. 4, 2026 ("March 4 Order"), RJN ¶ 2, Exhibit. B, p. 2; See also Exhibit C.)

The parties extensively litigated threshold issues concerning arbitrability and enforceability. Plaintiff moved for an order declaring arbitration non-binding, while ARB moved to dismiss Plaintiff's claims. The parties fully briefed both motions and a hearing was conducted on September 25, 2025. (RJN ¶ 2, Exhibit B, p. 2)

On March 4, 2026, the arbitrator issued a comprehensive Order ruling on both pending motions. (RJN ¶ 2, Exhibit B; See also Exhibit C.) The arbitrator denied Plaintiff's Motion for an

Order Declaring Arbitration Non-Binding, found the arbitration agreement to be severable, mandatory, binding, and enforceable, and held that Arizona law governs. (RJN ¶ 2, Exhibit B, p. 15.)

Pursuant to the arbitrator's leave to amend, on April 1, 2026, Plaintiff filed an Amended Demand for Arbitration and Amended Statement of Claim. (RJN ¶ 5, Exhibit C.) The Amended Demand acknowledged the holdings of the March 4 Order, including that the arbitration agreement is "severable, mandatory, binding, and enforceable" and that "Arizona law governs." (RJN, Exhibit B; See also Exhibit D.)

### G.    Plaintiff's Attempts to Circumvent the Arbitrator's Rulings

Just five days after filing the Amended Demand acknowledging the arbitration was binding, Plaintiff reversed course. On April 6, 2026, Plaintiff filed a Notice of Withdrawal of All Claims, requesting that JAMS close the file, dismiss all claims without prejudice, and vacate all pending deadlines. (RJN ¶ 5, Exhibit C.) On April 8, 2026, ARB opposed the withdrawal, arguing that Plaintiff's attempt to withdraw was an impermissible effort to forum-shop, abandon the arbitration, and relitigate the same issues in federal court. (RJN ¶ 6, Exhibit D; See also Exhibit C.)

On April 10, 2026, the arbitrator directed briefing on the withdrawal issue and stayed all pending deadlines. (RJN ¶ 8, Exhibit E.) On May 13, 2026, the Arbitrator denied Plaintiff's withdrawal request and ordered the arbitration to proceed. The Arbitrator found that Plaintiff had "invoked the jurisdiction of this arbitral forum" and "waived any argument his remaining claims should not be arbitrated." (RJN ¶ 9, Exhibit D, p. 27.) The Arbitrator further found that allowing withdrawal would prejudice ARB after "nearly a year of actively participating in and arbitrating resolution of the parties' threshold claims and defenses." (Id.)

On May 19, 2026, ARB was informed that Amina Mack, Plaintiff's then attorney, intended to file a motion to withdraw as counsel in this matter and the arbitration. It is unclear whether Plaintiff will seek a third counsel or proceed pro per.

The arbitration remains pending.

DUANE MORRIS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ARB'S MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THE ACTION
2:25-cv-01868-DJC-CSK (PS)

**H.     The Arbitrator Has Already Ruled That Plaintiff's Claims Belong in Arbitration**

In sum, the question of whether Plaintiff's claims are subject to binding arbitration has already been fully briefed and decided by the arbitrator. On March 4, 2026, after considering extensive briefing from both parties (including Plaintiff's Motion for an Order Declaring Arbitration Non-Binding, Modo's Opposition, Plaintiff's Reply, Modo's Motion to Dismiss, Plaintiff's Opposition, and Modo's Reply) the arbitrator ruled as follows:

First, the arbitrator found that the arbitration agreement is "clear and unambiguous" and "clearly provides that the agreement to arbitrate 'is [a] separate agreement between the parties and that any alleged or determined invalidity or illegality of all or any part of the Terms or Platform shall have no effect upon the validity and enforceability of this agreement.'" (March 4 Order at 15.) The arbitrator further found that the agreement "clearly and unmistakably delegates resolution of any disputes, including disputes 'concerning the enforceability, validity, scope or severability of this agreement to arbitrate' for the arbitrator to decide 'through final and binding arbitration.'" (*Id.*)

Second, the arbitrator held that "the agreement to arbitrate is subject to the FAA" and found it to be "severable from the contract as a whole, mandatory, binding and enforceable under the FAA and the cases construing it." (*Id.*) The arbitrator also found that the agreement "contains a mandatory choice of Arizona law and venue in Scottsdale, Arizona" and that "[w]hether the contract as a whole is void *ab initio* for illegality is a contested issue to be resolved in this arbitration." (*Id.*) The arbitrator therefore denied the Motion for an Order Declaring Arbitration Non-Binding. (*Id.*)

Third, the arbitrator dismissed with prejudice Plaintiff's substantive claims against Defendant and all claims against unserved entities. The Claimant's negligent and fraudulent misrepresentation claims were also dismissed with leave to amend. (*Id.*)

Fourth, the arbitrator's May 13, 2026 Interim Award reaffirmed and incorporated these rulings. The Interim Award confirmed that "this arbitration will proceed as a binding arbitration; the governing law provision of the parties' arbitration agreement is mandatory, valid and

enforceable; and Arizona law applies to any claims or disputes arising out of, or relating to Claimant's use of the Modo platform." (See RJN, Exhibit D, p. 27-28.) The arbitrator also held that Plaintiff "has invoked the jurisdiction of this arbitral forum and has waived any argument his remaining claims should not be arbitrated." (*Id.* at 27.)

In sum, Plaintiff extensively litigated the question of whether his claims belong in binding arbitration, lost, acknowledged that ruling in his own Amended Demand, attempted to withdraw from arbitration to circumvent that ruling, and was denied.  In the March 4 Order and the May 13 Interim Award the arbitrator has twice confirmed that Plaintiff's claims are subject to binding arbitration. (See RJN, Exhibit B.)

### I.     Meet and Conferring Over Sanctions

These issues were discussed during multiple meet and confer communications between counsel, during which ARB advised Plaintiff that continuing to pursue parallel litigation despite the pending arbitration proceedings and arbitral rulings constituted improper duplicative litigation and would result in ARB seeking sanctions and attorneys' fees. (Declaration of Karen L. Alexander ("Alexander Decl.") ¶ 3, Exhibit A.) On May 14, 2026, counsel for ARB again requested that Plaintiff dismiss the duplicative federal court action and advised that ARB would seek sanctions if Plaintiff continued pursuing the parallel action despite the arbitrator's rulings and pending arbitration proceedings. (Alexander Decl., ¶¶ 3-10, Exhibit A.)

Despite those warnings and the arbitrator's rulings confirming that Plaintiff's claims must proceed in arbitration, Plaintiff nevertheless continued pursuing this parallel federal action, thereby requiring ARB to incur additional attorneys' fees and costs addressing issues already fully litigated and decided in arbitration.

### III.    LEGAL STANDARD

The Federal Arbitration Act ("FAA") governs the arbitration agreement at issue. The FAA provides that a written agreement to arbitrate disputes arising out of a contract involving commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA embodies a strong federal policy favoring arbitration and places arbitration

agreements "upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Courts must therefore "rigorously enforce arbitration agreements according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013).

Arbitration agreements must therefore be analyzed in accordance with the agreement terms. *Am. Express Co. v. Italian Colors Restaurant*, 570 U.S. 228, 233 (2013). This policy extends to individualized arbitration proceedings. *Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 506 (2018). When a contract contains an arbitration clause, there is a presumption of arbitrability, and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986). Any doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

In the Ninth Circuit, the Court's role on a motion to compel arbitration is limited to two questions: (1) whether a valid agreement to arbitrate exists and (2) whether the agreement encompasses the dispute at issue. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). The party resisting arbitration bears the burden of proving that the agreement is invalid or inapplicable. *Green Tree Fin. Corp.-Ala. v. Randolph*, 531 U.S. 79, 91 (2000). If both requirements are met, the FAA "leaves no place for the exercise of discretion," and the Court must compel arbitration and stay the proceedings. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985); 9 U.S.C. §§ 3-4.

Finally, where the arbitration clause contains a delegation provision, as it does here where ARB assigned questions of arbitrability or enforceability to the arbitrator, courts must honor that delegation unless the provision itself is specifically challenged. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70-72 (2010); *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 71 (2019).

## IV.     ARGUMENT

### A.     The Parties Already Litigated the Issue of Arbitrability

Plaintiff's attempt to relitigate arbitrability issues already decided in the pending JAMS arbitration should be rejected. Plaintiff initiated the arbitration, the parties extensively litigated

the threshold arbitrability and enforceability issues, and after full briefing, the arbitrator held that the arbitration agreement is "mandatory, binding and enforceable," determined that arbitrability issues were delegated to the arbitrator, and ordered the arbitration to proceed. (RJN, Exhibit A, p. 15; May 13, 2026 Interim Award at 27-28.) Plaintiff thereafter attempted to withdraw from arbitration. The arbitrator rejected that effort, found Plaintiff had "invoked the jurisdiction of this arbitral forum," held that Plaintiff "waived any argument his remaining claims should not be arbitrated," and ordered the arbitration to proceed. (*Id*.)

Plaintiff's pursuit of duplicative litigation concerning the same underlying dispute is improper, unnecessary, a waste of resources, and contrary to the parties' agreement. Having elected to arbitrate and having briefed and litigated the issues, Plaintiff cannot now seek to undo the orders and litigate the same claims in federal court while simultaneously participating in the arbitration proceedings. *See Hebei Hengbo New Materials Technology Co., Ltd. v. Apple, Inc*., 344 F. Supp. 3d 1111, 1126 (N.D. Cal. 2018) ("a party . . . has a choice: it can either seek to compel arbitration or agree to litigate in court. It cannot choose both"); *see also Teamsters Local Union No. 760 v. United Parcel Service, Inc*., 921 F.2d 218, 224 (9th Cir. 1990) (affirming sanctions where party attempted to relitigate arbitration decision in federal court after agreeing to binding arbitration).

That conclusion is reinforced by the extraordinarily deferential standard federal courts apply to arbitral decisions. The FAA reflects a strong federal policy favoring arbitration and sharply limits judicial interference with arbitral rulings. See *Kyocera Corp. v. Prudential-Bache Trade Servs., Inc*., 341 F.3d 987, 998 (9th Cir. 2003) (en banc) ("Neither erroneous legal conclusions nor unsubstantiated factual findings justify federal court review of an arbitral award under the statute."). As the Ninth Circuit has explained, broad judicial review would "jeopardize the very benefits of arbitration, rendering informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." (*Id*. at 998). Likewise, the Supreme Court has emphasized that "…courts play only a limited role when asked to review the decision of an arbitrator. The courts are not authorized to reconsider the merits of an award…" *United Paperworkers Int'l Union v. Misco, Inc*., 484 U.S. 29, 36 (1987).

**B.** **Plaintiff Agreed to a Valid and Enforceable Arbitration Agreement**

Even if the Court were to disregard the arbitrator's finding of arbitrability and second guess the arbitrator's holding, the record plainly shows that the matter should be arbitrated.

The FAA requires courts to enforce arbitration agreements where a valid agreement exists. 9 U.S.C. § 2; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985).

Here, Plaintiff affirmatively agreed to the Terms in consideration of and as a condition of creating his account and accessing the Platform. Plaintiff created a user account on or about August 2, 2024 and was required to accept the Terms as part of the registration process. Plaintiff subsequently accepted the September 10, 2024 version of the Terms upon continued use of the Platform. Plaintiff then continued using the Platform thereafter. (Fechtmeyer Decl. ¶ 12-14, 17.)

The Terms were presented to Plaintiff through a clear clickwrap interface that provided conspicuous notice and required an unambiguous manifestation of assent. The registration screen included hyperlinks to the Terms, allowing Plaintiff to review them before agreeing. (Fechtmeyer Decl. ¶ 5.) By selecting the checkbox and proceeding with registration, Plaintiff assented to be bound by the Terms.

Plaintiff's own FAC confirms the existence and applicability of the Terms. Plaintiff alleges that he "last accepted ARB Gaming's Terms of Service on September 10, 2024" (FAC ¶ 82), that ARB later implemented revised Terms (FAC ¶¶ 83-84). Plaintiff initiated arbitration concerning the same dispute pursuant to the arbitration agreement at issue here. (RJN, Exhibit A.) Plaintiff therefore does not and cannot seriously dispute that he agreed to arbitrate disputes arising from his use of the Platform. Indeed, Plaintiff's initiation of JAMS arbitration pursuant to the Terms constitutes the most powerful possible confirmation that a binding arbitration agreement exists.

Moreover, the Terms expressly provided Plaintiff with a thirty-day opt-out window, permitting him to decline the arbitration agreement by sending written notice within thirty days of first becoming subject to the Terms. (Terms, Section H(2).)

**C.** **The Terms Delegated Questions of Arbitrability to the Arbitrator**

Claimant agrees that arbitrability was delegated to the arbitrator here.  He filed a motion

with JAMS asking an arbitrator to decide that the case was not arbitrable – and lost.

The Supreme Court has made clear that when an agreement delegates questions of arbitrability to the arbitrator, courts must honor that delegation unless it is specifically challenged. *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 70-72 (2010). "[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.* 586 U.S. 63, 71 (2019).

Here, the first page of the Terms expressly states in capitalized letters:

> PLEASE NOTE THAT THESE TERMS… REQUIRING YOU TO PURSUE PAST, PENDING, AND FUTURE DISPUTES BETWEEN YOU AND US THROUGH INDIVIDUAL ARBITRATION UNLESS YOU OPT OUT WITHIN THE SPECIFIED TIME FRAME. SEE SECTION H BELOW FOR MORE INFORMATION.
> (Terms, p. 1)

The Terms also contain an express and unmistakable delegation provision. Specifically, the Terms provide that by agreeing to the Terms, "you agree to resolve any Disputes — including any Dispute concerning the enforceability, validity, scope, or severability of this agreement to arbitrate — through final and binding arbitration." (Terms, Section H(2).) The Terms further require arbitration to proceed pursuant to JAMS rules, which independently delegate questions of arbitrability to the arbitrator. (Fechtmeyer Decl. ¶¶ 13-14; Terms.)

The Terms further specify that "[t]his Section H will be construed under and be subject to the Federal Arbitration Act, notwithstanding any other choice of law set out in these Terms." (Terms, Section H.) This express designation of the FAA eliminates any argument that state contract law, rather than federal arbitration law, governs the enforceability of the arbitration provision.

This language unmistakably delegates all threshold questions of arbitrability to the arbitrator. *Rent-A-Center*, 561 U.S. at 70-72. Courts routinely enforce clickwrap agreements where, as here, users are required to affirmatively assent to terms before accessing services. *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175-76 (9th Cir. 2014); *Meyer v. Uber Techs.*,

*Inc.*, 868 F.3d 66, 75-80 (2d Cir. 2017). The Central District of California recently granted a nearly identical motion to compel arbitration brought by a social gaming platform operator. *See Boyle v. Sweepsteaks Ltd.*, No. 8:25-cv-00302, 2025 WL 1674480 (C.D. Cal. May 19, 2025); *see also Bishoy Nessim v. Fliff, Inc.*, No. 5:23-cv-01048-SSS-SHK (C.D. Cal. Jan. 5, 2024) (granting motion to compel arbitration for similar gaming platform). Plaintiff created accounts, accepted the Terms, extensively used the Platform, and then affirmatively invoked the arbitration provision by filing a demand for arbitration pursuant to the same agreement Plaintiff now attempts to avoid.

## D.    Plaintiff's Claims Fall Within the Scope of the Arbitration Agreement

The arbitration provision is exceedingly broad. It applies to any and all past, present and future disputes, claims or causes of action arising out of or relating to the Platform, the Terms, or any other dispute" between Plaintiff and ARB. (Terms.).

Here, every one of Plaintiff's claims arises directly from his use of the Platform and relationship with ARB as a Platform user. Plaintiff alleges that ARB operated an unlawful gambling platform (FAC ¶¶ 22-26), manipulated RTP calculations (FAC ¶¶ 53-58), delayed withdrawals (FAC ¶¶ 105-109), targeted him through VIP programs (FAC ¶¶ 27-34), communicated with him through Platform representatives (FAC ¶¶ 46-51), and caused damages through his use of the Platform (FAC ¶¶ 179-185). Plaintiff further alleges that he created accounts, purchased virtual currency, participated in games, communicated extensively with ARB personnel, and accepted multiple versions of the Terms. (FAC ¶¶ 35-38, 82.)

Plaintiff's causes of action all arise from those alleged facts and alleged Platform activities. Accordingly, Plaintiff's claims fall squarely within the scope of the arbitration agreement and must be arbitrated.

Notably, the arbitration clause in the Terms is broadly worded to encompass disputes "arising both before and after" Plaintiff's agreement to the Terms. The Terms expressly provide: "Except to the extent that you may opt-out as provided above, all of your activity on the Platform and all of your transactions with Modo, including all events which occurred before your acceptance of the Terms, shall be subject to this Section H." (Terms, Section H(2).) Thus, even Plaintiff's claims regarding pre-agreement conduct fall squarely within the clause's temporal

scope. The Terms further make clear that the arbitration provision "is a separate agreement between the parties and that any alleged or determined invalidity or illegality of all or any part of the Terms or the Platform shall have no effect upon the validity and enforceability" of the arbitration agreement. (Terms, Section H.) This severability language means that even if Plaintiff's allegations regarding the Platform's legality were ultimately credited, the arbitration agreement would remain enforceable.

### E.    The Court Should Dismiss This Action or, Alternatively, Stay this Action Pending Arbitration

This Court should dismiss this action because the issue of arbitrability already has been decided and Plaintiff's claims already are pending in arbitration pursuant to the same arbitration agreement Plaintiff seeks to avoid here. Plaintiff initiated arbitration concerning the same underlying dispute, JAMS accepted the matter, an arbitrator has already been appointed, and Plaintiff continues to participate in those proceedings. Further, the arbitrator already ruled and dismissed substantive claims against defendant with prejudice. (March 4, Order.) Maintaining this duplicative federal action serves no legitimate purpose and risks inconsistent rulings and unnecessary expenditure of judicial and party resources.

All of Plaintiff's claims are subject to arbitration and, accordingly, no claims remain for adjudication before this Court. Under these circumstances, dismissal is appropriate. See *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1074 (9th Cir. 2014) (affirming dismissal after compelling arbitration where all claims were subject to arbitration).

In the alternative, the Court should stay this action pursuant to Section 3 of the FAA. 9 U.S.C. § 3. The Supreme Court recently confirmed that where a court finds that a lawsuit involves an arbitrable dispute, and a party has requested a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding pending completion of arbitration. *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).

### F.    Sanctions and Fees Are Warranted

Federal courts possess broad inherent authority to impose sanctions and full attorneys' fees for bad-faith conduct, vexatious litigation tactics, improper purpose, and conduct that abuses

the judicial process. *Chambers v. NASCO, Inc.,* 501 U.S. 32, 44-46 (1991).  Moreover, the Ninth Circuit has held that district courts may impose sanctions under 28 U.S.C. 1927 against litigants proceeding in pro per who evidence bad faith and multiply proceedings unreasonably.  *Wages v. I.R.S.* (9th Cir. 1990) 915 F.2d 1230, 1235-1236 (9th Cir. 1990) ("Section 1927 sanctions may be imposed upon a pro se plaintiff"); *accord. Wood v. Santa Barbara Chamber of Commerce, Inc.,* 699 F.2d 484, 485-86 (9th Cir. 1983) (*cert. denied*), 465 U.S. 1080 (1984).

The Ninth Circuit has further recognized that a party who agrees to binding arbitration and then attempts to relitigate the arbitrator's rulings in federal court may be subject to sanctions. *Teamsters Local Union No. 760 v. United Parcel Service, Inc.*, 921 F.2d 218, 224 (9th Cir. 1990) (affirming an award of sanctions in the form of attorneys' fees and costs arising from the improper attempt to relitigate the arbitrator's ruling where a party agreed to binding arbitration, received an adverse arbitral ruling, and then attempted to relitigate the same issue in federal court); *see also G.C. and K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096 (9th Cir. 2003).

Courts within this Circuit have likewise recognized that a party may not strategically alternate between arbitration and litigation depending on which forum appears more favorable. *See Hebei Hengbo New Materials Technology Co., Ltd. v. Apple, Inc.*, 344 F. Supp. 3d 1111, 1126 (N.D. Cal. 2018) ("[A] party that signs a binding arbitration agreement . . . has a choice: it can either seek to compel arbitration or agree to litigate in court. It cannot choose both." … "allowing a party to belatedly change its mind after first electing to proceed in what it believed to be a more favorable forum would result in a waste of resources for the parties and the courts and would be manifestly unfair to the opposing party.")

That is exactly what has happened here. Plaintiff has—and continues to—waste party and judicial resources while knowingly pursuing duplicative litigation in bad faith.  ARB provided Plaintiff every opportunity to self-correct and warned that pursuing duplicative litigation despite the pending arbitration proceedings and arbitral rulings would result in Defendant seeking sanctions and attorneys' fees. (Alexander Decl., ¶¶ 3-10, Exhibit A.)

Despite those warnings, Plaintiff proceeded. As a result, ARB has incurred significant attorneys' fees and costs litigating issues that have already been fully briefed and decided.  ARB

respectfully requests that the Court impose sanctions and award Defendant its attorneys' fees and costs incurred in making this unnecessary motion, in an amount set forth in the concurrently-filed declaration of ARB's counsel and/or to be determined in subsequent briefing.

## V.    CONCLUSION

Plaintiff agreed to arbitrate these claims, invoked arbitration, and continues to participate in arbitration concerning the same dispute. The FAA requires enforcement of that agreement. Accordingly, the Court should compel arbitration, enforce the pending JAMS arbitration proceedings, and dismiss this duplicative action or, alternatively, order a stay pending completion of arbitration and impose appropriate sanctions and award ARB attorneys' fees and costs incurred in making this motion.


Dated:   May 29, 2026                                   **DUANE MORRIS LLP**


                                                        By:  */s/ Daniel D. Wall*
                                                             Karen L. Alexander
                                                             Daniel D. Wall

                                                        Attorneys for Defendant
                                                        ARB GAMING LLC dba MODO

DUANE MORRIS LLP
ATTORNEYS AT LAW
SAN FRANCISCO