# EXHIBIT B

Hon. Peggy A. Leen (Ret.)
JAMS
7160 Rafael Rivera Way
Suite # 400
Las Vegas, NV 89113
Ph: 702-457-5267

**JAMS ARBITRATION CASE REFERENCE NO. 5100003080**

**Joyce, Matthew,**
        **Claimant(s),**

        **vs.**

**Arb Gaming LLC dba Modo,**
        **Respondent(s).**

---

**ORDER RE: (1) CLAIMANT'S MOTION FOR AN ORDER DECLARING
ARBITRATION NON-BINDING AND
(2) RESPONDENT'S MOTION TO DISMISS**

## I.    Introduction and Procedural History

A Demand for Arbitration was filed May 9, 2025 which attached a Complaint for Damages with a caption (but without a case number) suggesting it was filed in the Superior Court of the State of California in Contra Costa County.  Claimant asserted claims for: (1) violation of the California Unruh Civil Rights Act; (2) Breach of Contract; (3) Negligent Misrepresentation); (4) Unfair Business Practices under California Bus. & Prof. Code (violation of the Unruh Civil Rights Act); (5) Fraud/Intentional Misrepresentation; (6) Unjust Enrichment/Quasi-Contract; and (7) Violation of California Financial Lenders Law.  The Demand does not name anyone other than ARB Gaming as a Respondent. None of the other Defendants named in the Complaint (but not named as Respondents in the Demand) have been served or made an appearance.

1

Respondent ARB Gaming LLC dba Modo US filed an Answer and Affirmative Defenses August 20, 2025.

Claimant filed the Motion for An Order Declaring Arbitration Non-Binding September 10, 2025.  Respondent filed the Motion to Dismiss October 22, 2025.

A Preliminary Hearing was conducted September 25, 2025. Claimant was represented at the time by Reshma Kamath who appeared on his behalf. Walter Saurack appeared on behalf of Respondent ARB Gaming LLC dba Modo US ("ARB Gaming").  At the preliminary hearing counsel for Claimant stated she had not served and did not intend to serve the other two Defendants named in the Complaint and was proceeding only with claims asserted against Respondent. Counsel for both sides indicated a number of threshold issues should be decided before any voluntary exchange of information and discovery was commenced. Claimant's counsel indicated she intended to file an amended motion raising additional issues not addressed in the motion to declare the arbitration non-binding.

A briefing schedule was established for the threshold issues the parties indicated they intended to file, and oral argument was set for November 13, 2025.  Claimant's counsel did not file an amended motion, and did not appear at the hearing set to conduct oral argument.  Claimant appeared without counsel and said he was not surprised by his counsel's failure to appear and that although she was still his counsel of record he was seeking a second opinion from another lawyer.

Oral argument was not conducted in the absence of counsel for Claimant and I entered an Order to Show Cause ("OSC") giving counsel for Claimant until December 1, 2025 to show cause why the pending motions should not be decided on the moving and responsive papers. The OSC also

2

EXHIBIT B Page 2

gave counsel until December 1, 2025 to seek to withdraw or request any relief deemed reasonable to protect Claimant's rights in this arbitration.  Counsel for Claimant did not respond to the OSC.

Claimant subsequently sent an email to the JAMS case manager copied to opposing counsel indicating his counsel had been disbarred, that he was in the process of obtaining substitute counsel, requesting access to JAMS Access and various other forms of relief. Claimant was given instructions on how to use JAMS Access.  Counsel for Respondent filed a letter November 21, 2025 proposing that Claimant obtain counsel by December 17, 2025 and requesting that if no substitute counsel appeared the pending motions should be decided on the submissions on file.

On December 6, 2025 Claimant filed and served a pro se Supplemental Submission in Support of Motion for Non-Binding Arbitration. Respondent filed and served a letter response December 15, 2025 objecting to the supplement, pointing out substitute counsel had not made an appearance, and requesting that the pending motions be decided without consideration of the Claimant's supplemental filing. Claimant filed and served a letter response December 18, 2025.

On January 21, 2026 Amina Mack filed and served a Notice of Appearance on behalf of Claimant.  On February 12, 2026 counsel for Respondent filed and served a letter request again asking that I decide the pending motions on the papers under submission.  Substitute counsel had not filed or requested leave to file any additional pleadings or papers.  I therefore directed the case manager to advise counsel that I had begun drafting the order to decide these motions on the moving and responsive papers.

Two weeks later on February 28, 2028 counsel for Claimant responded to the February 12, 2026 letter requesting "targeted procedural relief", at a minimum in the form of a short procedural conference, and a clear revised schedule to complete the record and both sides to have a fair

opportunity to be heard.  Claimant requested a 30-minute status conference, permission to file a late response to the OSC, permission to file a limited reply regarding procedural issues and any permitted supplemental briefing, oral argument and/or an evidentiary hearing, and leave to respond more formally to Respondent's February 12th letter, and if not, that the submission be disregarded, or treated as a request that requires more motion practice.

Counsel for Respondent replied March 2, 2026 objecting to Claimant's request for a "do over", asserting Respondent would be prejudiced by the additional delay and expense of "relitigating" motions under submission, objecting to additional briefing and hearings, and reiterating Respondent's request for a decision on the fully briefed motions.

I waited more than a month after Counsel for Claimant made an appearance for Counsel for Claimant to request any form of relief before starting to draft an order resolving fully briefed pending motions.  None was made until after the case manager advised counsel I was in the process of preparing the order.  Claimant's request for additional briefing on the motions under submission and related relief is denied.  A status and case management conference will be coordinated promptly after this order is entered and served.

## II.    The Parties Positions

### A.    Claimant's Motion

Claimant's prior counsel filed this motion arguing that the arbitration agreement contained in the parties' contract "is void *ab initio* due to its alleged illegal object—a nation-wide online gambling operation that targeted a disabled individual in violation of federal law." The motion seeks an order pursuant to the Federal Arbitration Act ("FAA") 9 U.S.C. Sec 1-16 "declaring that any arbitration compelled in this matter shall be conducted on a non-binding basis."  The motion

EXHIBIT B Page 4

also maintains the provisions of the arbitration agreement "are so one-sided and oppressive as to be unconscionable, rendering the agreement to arbitrate itself unenforceable."

Counsel for Claimant contended the gravamen of the complaint "alleges a sophisticated and predatory enterprise that operated in flagrant disregard of federal statutes … as a facade for an online casino that systematically exploited a vulnerable individual with a known gaming disability."

Counsel also asserted that "the arbitration clause is a paradigmatic example of an unconscionable adhesive contract drafted by a sophisticated party and imposed upon a vulnerable consumer without negotiation, containing terms so one-sided that they shock the conscience." Specifically, she argued:  the arbitration clause is found within a 24-page Terms of Use; and is a contract of adhesion presented on a take-it-or-leave-it basis; mandates individual arbitration with JAMS; contains a sweeping class action waiver; severely limits Claimant's and others ability to seek redress for widespread grievances; is inextricably intertwined with the alleged illegality of the entire contract; contains a confidentiality agreement which shrouds the practices alleged to violate federal law; and is designed to minimize the cost of litigation and settlement for defendants while allowing them to profit out of public view.

 She also contended the opt-out provision in Section 16.12-13 of the arbitration clause was effectively concealed, and practically impossible for someone in Claimant's compromised mental state to exercise.

The motion asserts the contract as a whole is void due to illegality and therefore it is for a court rather than an arbitrator to decide the validity of the contract containing the arbitration clause.  This is because the arbitrator's authority is derived from the parties' contract and an arbitrator has no

5

EXHIBIT B Page 5

authority to act based on a contract found void *ab* initio.  "The Court" should therefore deny enforcement of the binding arbitration scheme in its entirety or, at a minimum, order that it proceed on a non-binding basis.

    **B.**       **Respondent's Opposition**

Respondent opposes the motion arguing Claimant filed a Demand for Arbitration attaching a Complaint and a March 28, 2025 version of ARB Gaming's Terms of Use ("Terms") which includes a mandatory arbitration agreement. Respondent contends there is no basis to disregard Claimant's agreement to arbitrate or to maintain a parallel action against it in another forum.

Respondent asserts it offers users the ability to play games online which bear resemblance to casino-based games.  However, the games it offers do not offer real gambling opportunities, no money is required to play and the products do not constitute gambling. Claimant is a resident of North Carolina who occasionally accessed the Modo platform in 2024 and 2025 to play games and make purchases.

The opposition asserts that Joyce commenced an action by filing a Complaint in the Superior Court of California, County of Contra Costa May 5, 2025 against it and other Defendants not named in the Demand for Arbitration filed with JAMS May 9, 2025.  One of the Defendants named in the Complaint, Affirm, removed the state case to the United States District Court for the Northern District of California June 3, 2025, case no 25-cv-04677 KAW.  According to Respondent, after counsel for Claimant was disbarred, the Northern District of California case was voluntarily dismissed and refiled in federal court in the Central District of California June 30, 2025 as Joyce v ARB Gaming et. al, Case No. 25-cv-1968-DJC-CSK.  However, ARB Gaming has not

yet been served.  ARB intends to move to dismiss for lack of personal jurisdiction if and when it is served and required to appear.

On the merits Respondent argues the FAA applies to the parties' arbitration agreement which is contained in the Terms Claimant agreed to which contains a mandatory arbitration agreement with an Arizona governing law provision.  Joyce accepted the Terms, including the agreement to arbitrate in a "clickwrap agreement" that multiple jurisdictions, including California and Arizona have upheld as valid and enforceable.

Respondent argues it is unclear from the Complaint attached to the Demand what connection California has to the claims or how California law would apply to Joyce who is a North Carolina resident whose only apparent connection to California is that he retained a California attorney.

Respondent argues the binding arbitration agreement is valid and enforceable under the FAA and that Claimant's claims clearly arise out of and are related to his use of the Modo platform under the Terms of Use he agreed to when he signed up to use it.  Respondent also argues that Joyce's claim that the entire contract is void for alleged illegality is an issue for the arbitrator to decide.

Citing *Prima Paint Corp., v. Flood & Conkin Mfg. Co.,* 388 U.S. 395 (1967), Respondent contends that even if the entire contract is void *ab initio* because its purpose is to promote illegal gambling as Claimant argues the arbitration agreement is severable from the remainder of the contract.

Respondent maintains the parties' arbitration agreement evidences clear and unmistakable intent to delegate questions of arbitrability to the arbitrator although the threshold issue of the

enforceability of the delegation provision is a separate threshold issue in a federal court action to enforce an agreement to arbitrate.

Respondent also argues the Supreme Court has held class action waivers in arbitration agreements are enforceable so Claimant cannot argue the arbitration agreement is unenforceable as unconscionable on this ground, especially since he has not asserted a class action.

Finally, Respondent maintains Claimant waived any objections to arbitration by filing a Demand for Arbitration, participating in the arbitrator's selection process and appearing at the preliminary hearing.

The Opposition is supported by the Declaration of Patrick Fechtmeyer who avers he is the Chief Executive Officer of ARB Gaming, LLC, a limited liability company formed and existing under Delaware law who has personal knowledge and is familiar with the company's products and how the games operate.  He attests a prospective user of the Modo website creates an account and must accept the Terms of Use to participate in ARB's services, access its games, or make purchases.  He further attests Claimant created a user account with ARB on August 2, 2024, and according to ARB records accepted the 2024 Terms attached as Exhibit 1 to the Declaration.

### C.     Claimant's Reply

Claimant replies that Mr. Fechmeyer's Declaration demonstrates how unconscionable the parties' agreement is, and fails to address the core issue which she asserts is whether the contract is void *ab initio* for illegality.  Claimant also contends he was forced to sign the latest version of the contract on September 10, 2024, and the "clickwrap process is the epitome of a contract of adhesion." The version of the Terms attached to the Demand dated March 28, 2025 post-dates the majority of Claimant's platform usage and alleged losses.

Claimant's "core assertion is not that any version of the Terms is void *ab initio* but a challenge to the existence of any valid contract whatsoever." The threshold issue "of whether a valid contract ever came into being is therefore paramount and must be resolved before any obligation to arbitrate can attach." Claimant contends the burden is on the party seeking to compel arbitration to prove the existence of a valid agreement to arbitrate by a preponderance of the evidence, and only if that burden is met does the burden shift to the party resisting to prove a defense to enforcement.

Claimant also argues that for a delegation of arbitrability clause to be enforceable the parties must have clearly and unmistakably agreed to delegate arbitrability to the arbitrator. The boilerplate contract of adhesion language buried in the lengthy Terms of Use do not constitute clear and unmistakable agreement by the Claimant consumer.

Claimant disputes that he waived his right to challenge arbitration by participating in this arbitration by taking steps necessary to protect his interests in other forums and this arbitration. Claimant asserts he filed a court action and then this arbitration "to avoid any potential waiver argument from Respondent", and his participation in arbitrator selection and the preliminary conference "was a necessary consequence of this protective filing and does not constitute acting 'inconsistently' with a challenge to arbitration."

### III.    The Arbitration Agreement

Claimant filed the Demand attaching a copy of the March 28, 2025 Terms and identifying it as the agreement to arbitrate. It is entitled "Terms & Conditions Last Updated: March 28, 2025". In the Demand and attached Complaint Claimant alleges that from approximately 2024 to 2025 he was a customer of Respondent Modo's platform who initially made modest purchases but gradually increased his spending as his addiction worsened and mental state declined.

9

In paragraph 41 of the Complaint Claimant alleges he was allowed to win "$6,000 on Defendants' platform but was later coerced into signing a terms and conditions page under duress, which he was forced to accept as a condition of continuing play …". Paragraph 89 of the Complaint Claimant alleges he "entered into contracts with Defendants by agreeing to their Terms of Service when using their platforms."

Respondent's CEO attests Claimant agreed to the September 10, 2024 version of the Terms of Use attached as Exhibit 1 to his declaration via his iPhone. Section H, which contains the Mandatory Arbitration and Class Action Waiver Agreement appears to be identical in both versions of the Terms of Use.

The Terms & Conditions attached to the Demand Claimant identified as the agreement to arbitrate states they "form a binding legal agreement [between Claimant and Modo], and apply to your use of the Platform …."  It states:

> …THESE TERMS INCLUDE A PROVISION WAIVING THE RIGHT TO PURSUE ANY CLASS ACTION, GROUP OR REPRESENTATIVE CLAIM AND REQUIRING YOU TO PURSUE PAST, PENDING AND FUTURE DISPUTES BETWEEN YOU AND US THROUGH INDIVIDUAL ARBITRATION UNLESS YOU OPT OUT WITHIN THE SPECIFIED TIME FRAME. SEE SECTION H BELOW FOR MORE INFORMATION.

Section H is entitled "**DISPUTE RESOLUTION AND DAMAGES".**  Paragraph 1 requires an initial informal resolution procedure.   Paragraph 2 contains the "Mandatory Arbitration and Class Action Agreement". It provides:

10

EXHIBIT B Page 10

PLEASE READ THIS SECTION H (MANDATORY ARBITRATION AND CLASS ACTION AGREEMENT) CAREFULLY BECAUSE IT MAY REQUIRE YOU AND MODO TO ARBITRATE CERTAIN DISPUTES AND CLAIMS ON AN INDIVIDUAL BASIS ONLY AND LIMIT THE MANNER IN WHICH YOU AND MODO CAN SEEK RELIEF FROM EACH OTHER. THIS AGREEMENT APPLIES TO ANY DISPUTES OR CLAIMS YOU MAY CURRENTLY POSSESS AND ANY CLAIMS YOU MAY RAISE IN THE FUTURE CONCERNING THESE TERMS OR USE OF MODO'S PLATFORM.

Paragraph H specifies it "will be construed under and be subject to the Federal Arbitration Act, notwithstanding any other choice of law set out in these terms."  It also provides:

> The parties acknowledge that Section H is a separate agreement between the parties and that any alleged or determined invalidity or illegality of all or part of the Terms or Platform shall have no effect upon the validity and enforceability of this agreement.
>
> …
>
> By agreeing to these terms, and to the extent permitted by applicable law, you agree to resolve any Disputes—including any Dispute concerning the enforceability, validity, scope, or severability of this agreement to arbitrate—through binding arbitration. Arbitration means you will not be able to seek damages in court or present your case to a jury.

The arbitration agreement gave Claimant 30 days from use of the Platform to decline to arbitrate by sending written notice to ARB Gaming at an address provided in Scottsdale, Arizona.

11

EXHIBIT B Page 11

It also contains an agreement that JAMS would administer the arbitration under its Comprehensive Arbitration Rules and Procedures and provides the website address where the rules were available.

Paragraph 4 contains the "Governing Law and Venue" terms of the agreement to arbitrate. It states:

> These Terms and all matters arising out of, or relating to, these Terms shall be governed by the laws of the State of Arizona, excluding its conflict of law provisions. The sum of this Section H(4) is that any and all Disputes … must be, without exception, resolved in Scottsdale, Arizona.  …. The parties agree to *exclusive jurisdiction and venue in, and only in Scottsdale, Arizona.*  The parties additionally agree that this choice of venue and forum is mandatory and not permissive in nature, thereby precluding any possibility of litigation between the parties with respect to, or arising out of, these Terms in a jurisdiction other than that specified in H(4).

> All parties hereby waive any right to assert the doctrine of forum non-conveniens or similar doctrines challenging venue or jurisdiction, or to object to venue with respect to any proceeding brought in accordance with this Section H or with respect to any dispute.

## IV.    Analysis and Decision

The FAA was enacted and designed "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter Reynolds Inc., v Byrd*, 470 U.S. 213, 219-20 (1985). It places agreement to arbitrate "upon the same footing as other contracts." *Scherk v Alberto-Culver Co.*, 417 U.S. 506, 511 (1974).  The FAA reflects both a liberal federal policy in favor of arbitration, and the fundamental principle that arbitration is a matter of contract. *AT&T Mobility v Concepcion*,

EXHIBIT B Page 12

563 U.S. 333, 339 (2011) ("[A] party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *First Options of Chi., Inc. v. Kaplan* 514 U.S. 938, 945 (1995).

Section 2 of the FAA provides that an arbitration agreement in a contract involving a transaction in interstate commerce "shall be valid, irrevocable and enforceable save upon such grounds as exist in law or equity for the revocation of any contract." 9 U.S.C Sec. 2.  State law governs the validity, revocability, and enforcement of a contract. *Chiron Corp. v Ortho Diagnostics*, 207 F 3d. 1126, 1130 (9th Cir. 2000).

State law also governs the interpretation of contracts. As the Supreme Court explained in *Volt Info Sciences v. Bd. of Tr. Of Sanford University*, 489 U.S. 468, 488-89 (1989), "in applying general state law principles of contract interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."

When a contract contains an arbitration clause there is a presumption of arbitrability.  AT&T Tech. v. Commc'cn Workers of Am., 475 U.S. 643, 650 (1986). ([A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.") *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983).  However, the FAA does not mandate the arbitration of all claims, or prevent parties from excluding certain claims from the scope of their arbitration agreement. *Id*. Rather, it simply requires enforcement of agreements to arbitrate "like other contracts, in accordance with their terms." *Id*. (citation omitted).

In *Prima Paint v. Flood & Conklin Mfg.,* 388 U.S. 395, 402-406 (1967) the United States Supreme Court enunciated the principles commonly referred to as the separability or severability doctrine.   The Court addressed a dispute over whether arbitrators have the authority to adjudicate

contract avoidance defenses relating to the enforceability of the contract as a whole, or only those that relate to the arbitration agreement. *Prima Paint* involved a claim that the contract containing the arbitration provision was void because it was fraudulently induced. The Supreme Court held that pursuant to Section 4 of the FAA, resolution of the fraudulent inducement claim was for the arbitrator to decide and that a claim the entire contract was fraudulently induced did not implicate whether the parties entered into an arbitration agreement. It held that under the FAA it was for the arbitrator rather than the court to decide whether the parties agreed to arbitrate.

Under the severability doctrine when the validity of the entire contract containing an arbitration clause is challenged, the arbitration provision is severable and the parties' disputes are arbitrable. In this arbitration Claimant asserts the contract he entered into is void *ab initio* because it involves an illegal online gaming operation that targeted a disabled individual in viola*tion* of federal law. *In Buckeye Check Cashing Inc. v. Cardegna, 546 U.S. 440 (2006)* the Supreme Court addressed whether it was for the court or the arbitrator to decide if a contract containing an arbitration provision is void for illegality. The Supreme Court reversed a decision by the Florida Supreme Court and held that Section 2 of the FAA created a federal substantive law of arbitrability that included the severability doctrine announced in *Prima Paint*.

Claimant challenges both the validity of the entire contract and the arbitration agreement contained in the Terms of Use. In *Rent-A-Center v. Jackson*, 130 S. Ct. 2772 (2010) the Supreme Court held that when the arbitration agreement contains a provision stating that the arbitrator will resolve all disputes regarding the validity or enforceability of the arbitration agreement, the severability doctrine applies.

Claimant's Demand identified the March 28, 2025 updated version of the Terms and Conditions in Section H as the applicable dispute resolution and damages agreement and paragraph

14

EXHIBIT B Page 14

2 as the parties "Mandatory Arbitration and Class Action Waiver." The arbitration agreement is clear and unambiguous. It clearly provides that the agreement to arbitrate "is separate agreement between the parties and that any alleged or determined invalidity or illegality of all or any part of the Terms or Platform shall have no effect upon the validity and enforceability of this agreement." It clearly and unmistakably delegates resolution of any disputes, including disputes "concerning the enforceability, validity, scope or severability of this agreement to arbitrate" for the arbitrator to decide "through final and binding arbitration." An arbitration agreement that shows clear and unmistakable evidence of the parties' contractual intent that arbitrators and not courts have the power to determine questions of arbitrability will be enforced. *First Options* id. at 994-95.

The agreement to arbitrate is subject to the FAA. I find the agreement to arbitrate is severable from the contract as a whole, mandatory, binding and enforceable under the FAA and the cases construing it. It contains a mandatory choice of Arizona law and venue in Scottsdale, Arizona. Whether the contract as a whole is void *ab initio* for illegality is a contested issue to be resolved in this arbitration. The Motion for an Order Declaring Arbitration Non-Binding is therefore denied.

### V.    Respondent's Motion to Dismiss

Respondent seeks an order dismissing all of Claimant's claims under Arizona Rule of Civ. Proc. 12(b) asserting Arizona law governs this arbitration. Respondent acknowledges that under Rule 12(b) in considering a motion to dismiss all material allegations of the demand and complaint must be considered as true and construed in the light most favorable to Claimant. However, Respondent asserts allegations that represent mere conclusions of law and unwarranted inferences are not entitled to a presumption of truth under Arizona law, and the motion to dismiss should be granted because Claimant is not entitled to relief under any of the facts alleged.

EXHIBIT B Page 15

Briefly summarized Respondent argues: (1) Claimants claims are based on inapplicable California law; (2) neither California nor Arizona recognize a claim for gambling losses; (3) gambling disorders are not a recognized disability under California or Arizona law; (4) the unfair business practice claim is based on California law which does not impose civil liability for alleged unfair business practices and gambling loss claims; (5) gambling loss claims do not qualify as an injury to a person under Arizona law; (6) Claimant has failed to plead a fraud claim with particularity; (7) the predatory lending claim fails because Claimant alleges another entity, Affirm, provided the loans to him; (8) the breach of contract claim misstates the parties' agreement and his allegations are contradicted by the plain text of the contract Claimant acknowledges he entered into with Modo; (9) the negligent misrepresentation claim fails (a) to allege any false statements or omissions and (b) is barred by the economic loss doctrine; (10) there is no unjust enrichment claim because a valid contract governs the relationship between the parties; and (11) Claimant's demand for $10.5 Million in damages are limited by the parties exclusive remedy provision in their agreement and "relevant statutes of limitation".

Respondent asks that judgment be entered in its favor dismissing all of the claims with prejudice.

Claimant opposes the motion arguing Respondent is attempting to evade accountability for egregious and exploitive business practices that targeted a vulnerable consumer suffering from a gambling disorder whose claims arise under California anti-discrimination and consumer-protection statutes. Claimant argues that under JAMS Rule 18(b) dismissal is only allowed when the non-moving party could not prevail under any circumstances. Claimant asserts he has set forth detailed allegations and provided exhibits that raise factual and legal disputes which require evidentiary development and are inappropriate for dismissal on the pleadings.

EXHIBIT B Page 16

Claimant argues that the Arizona choice of law provision in the arbitration agreement is unenforceable and contrary to California public policy because "they **deprive a California resident of substantive statutory rights or contravene fundamental public policy."** (emphasis in original).  Claimant maintains California has a substantial relationship and materially greater interest in this matter because Joyce is a North Carolina resident "who accessed Modo's gaming platform from within California, used California-based financial institutions, and who was targeted through online marketing campaigns directed toward nation-wide consumers."

Claimant disputes that his claims seek restitution for gambling losses.  Rather his claims for fraudulent inducement, disability-based discrimination, predatory lending, and unfair business practices are all **"independent of any wager and actionable under California law."** (emphasis in original).  Claimant characterizes the gravamen of his claims against Modo as follows: it misrepresented the nature and fairness of the platform; misled him into believing that his play was lawful and winnable under "sweepstakes" regulations; failed to disclose the predatory and addictive mechanics intentionally built into its system; and partnered with Affirm to facilitate unlawful, debt-generating financing tied directly to compulsive gameplay.  All of these allegations fall "squarely within the ambit" of California's Unfair Competition law and the Unruh Civil Rights Act.

Claimant maintains he has pleaded detailed, specific facts showing Respondent exploited a known disability through manipulative and discriminatory business practices; partnered with a third-party lender to facilitate predatory financial transactions; and deceived California consumers through false advertising and unconscionable contract terms.  The motion to dismiss should therefore be denied in its entirety, and the arbitrator should direct that the arbitration proceed with full discovery and an evidentiary on the merits, find California law governs this arbitration;

recognize California's disability-based and consumer-based claims as cognizable; award equitable relief deemed just including restitution, disgorgement of ill-gotten gains; enjoin further unlawful and discriminatory conduct; and award fees, costs and reasonable attorney's fees "applicable to California statutes".

## VI.    Analysis and Decision

The governing law provision of the parties' arbitration agreement is mandatory, valid and enforceable.  Arizona law applies to any claims or disputes Claimant has arising out of, or relating to his use of the Modo platform. Arbitration is a creature of contract.  The parties agreed Arizona law would apply to any claim or dispute. Claimant has not established that any judicially created public policy exception precludes enforcement of the parties' contractual choice of law provision.

Claimant is a resident of Chapel Hill North Carolina who alleges he was a customer of Defendants' online gaming platforms. He is has filed a Demand attaching a Complaint asserting claims against Respondent, a Delaware limited liability company doing business as Modo which he alleges operates an online gaming and sweepstakes platform accessible to residents nationwide. Counsel for Claimant representing Claimant at the preliminary hearing represented to the arbitrator and opposing counsel that she had not served, did not intend to serve, and was not pursuing any claims against the other two entities named in the Complaint in this arbitration.

The "Parties and Jurisdiction" allegations in the Complaint attached to the Demand identify two other entities as defendants—an Estonia-based firm which allegedly operates a nationwide gaming and sweepstakes platform, and "a financial lending institution in Pittsburgh, Pennsylvania, providing gaming loans to gamers, including disabled addicts such as JOYCE."  Claimant alleges the Defendants' conduct violates California law protecting persons with disabilities from

discrimination, exploitation and unfair business practices.  It alleges venue is proper in California Superior Court in Contra Costa County, California because it "has jurisdiction over all the Defendants … as the obligations or liabilities arose from within this County, Defendants reside in and/or do business within this County, and the damages resulting from Defendants' misconduct exceed the minimum general jurisdictional limits of this Court."

These conclusory jurisdictional allegations do not support jurisdiction, venue or a legally cognizable claim under California law against the Respondent.  His California law based claims for violation of the Unruh Civil Rights Act (count one), unfair business practices under the California Bus. & Prof. Code (count four), and violation of California Lenders Law (count seven) are therefore dismissed with prejudice.

I also find that Claimant's conclusory allegations that there is a unity of interests among Respondent and the two entities named in the Complaint and the Respondent require amendment, and dismissal of the unserved entities to clarify the Claimant's claims against Respondent. Claimant's prior counsel affirmatively represented she was not pursuing claims against these entities in this arbitration.  They will therefore be dismissed.

Having carefully reviewed the remaining claims accepting the allegations as true and in the light most favorable to Claimant I find Claimant has stated a claim for breach of contract and unjust enrichment.  Claimant asserts he entered into a contract that is void *ab initio* based on illegality and that Respondent received significant financial benefits from Respondent's wrongful conduct such that it would be unjust for Respondent to retain those benefits and for which he is entitled to restitution. Although Respondent is correct that Claimant may not recover damages under both theories, they are separate claims asserting alternative or different theories on which relief that may be obtained.

EXHIBIT B Page 19

Claimant has also stated a bare bones negligent misrepresentation claim, but has failed to provide the requisite particularity to give Respondent fair notice with respect to his fraudulent misrepresentation claim.   Claimant's negligent and fraudulent misrepresentation claims will be dismissed with leave to amend. Claimant is also granted leave to amend to delete the unserved entities as Defendants, and to assert any additional claims he may have in light of the findings in this order that Arizona law shall apply.  The Amended Demand should contain a plain, short and concise statement of the factual bases of the claims and the remedies sought.   See JAMS Comprehensive Rule 9.

For the reasons explained,

**IT IS ORDERED:**

1. Claimant's Motion for an Order Declaring Arbitration Non-Binding is **Denied.**

2. Respondent's Motion to Dismiss is **Granted in Part and Denied** in Part consistent with the findings and conclusions in this order.

3. Claimant's California law-based claims in Counts one, four and seven are **Dismissed with Prejudice**.

4. Claimant's claims against the unserved entities are **Dismissed with Prejudice**.

5. Claimant's negligent and fraudulent misrepresentation claims are **Dismissed with Leave to Amend.**

6. Claimant shall have until **April 2, 2026** to file and serve an Amended Demand with a statement of claims and relief sought in this arbitration which should be plain, short and concise statement of the factual basis for each claim and the remedy sought

EXHIBIT B Page 20

consistent with JAMS Comprehensive Rule 9.


Dated: March 4, 2026

_____
Hon. Peggy A. Leen (Ret.)
Arbitrator

21

EXHIBIT B Page 21