Matthew Joyce
600 Market Grove Drive #100
Wake Forest, NC 27587-7345
(919) 259-4661
m.joyce07@proton.me
Plaintiff, Pro Se

**FILED**

JUL 28 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| MATTHEW JOYCE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ARB GAMING LLC dba MODO.US;<br>AFFIRM, INC.;<br>GOLDMAN SACHS BANK USA;<br>APPLE INC.;<br>AMAZON.COM, INC.,<br><br>Defendants. | Case No.  2:25-cv-01868-DJC-CSK (PS)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT AFFIRM, INC.'S MOTION TO DISMISS (ECF 60)**<br><br><br>Hearing: August 25, 2026, 10:00 a.m.,<br>Courtroom 25 (Zoom) — Hon. Chi Soo Kim |

## I. INTRODUCTION

Affirm, Inc. moves under Rule 12(b)(6) to dismiss all twelve claims in the operative First Amended Complaint (ECF 33, the "FAC"), most of them with prejudice. (ECF 60.) Plaintiff opposes the motion in its entirety and concedes none of its grounds. But before the Court reaches any of them, one feature of the motion's posture deserves its attention: the pleading Affirm attacks is not the pleading Plaintiff would file today, because it is not a pleading Plaintiff drafted — and the Court has already set in motion the process that will replace it. **The pleading under attack is former counsel's work**

The FAC was drafted and filed by Plaintiff's former counsel. The record of that representation's end is documented on this docket:

• Counsel moved to withdraw on May 20, 2026 and was relieved on May 31, 2026, on the eve of this briefing schedule (ECF 47, 58).

• She has never returned Plaintiff's complete client file despite a written demand served May 26, 2026 under N.C. Rule of Professional Conduct 1.16(d) and her own written acknowledgment and twice-repeated written promise to produce it (ECF 76 at 4–5; ECF 89 at 4).

• She declined in writing, on May 26, 2026, while still counsel of record, to prepare Plaintiff's request for disability accommodations (ECF 73).

• She made a filing in the parallel arbitration over Plaintiff's express written instruction not to file it (see Plaintiff's opposition to ARB Gaming's motion (ECF 56), filed concurrently, at §IV.E).

• She remains, today, counsel of record for a co-party in this action — Plaintiff-in Interpleader Jamie Stahura — because her Local Rule 182(d) withdrawal remains pending: the Court directed a noticed motion on July 13, 2026 (ECF 87), counsel filed it on July 21, 2026, and it is set for hearing August 5, 2026 (ECF 88). Until relieved by order, "[t]he authority and duty of the attorney of record shall continue." E.D. Cal. L.R. 182(d).

Plaintiff recites this history without rhetoric and asks for no finding about counsel's conduct on this motion. He recites it because it frames what this motion actually is: a demand for dismissal, with prejudice, of claims whose pleaded form reflects the work of an attorney Plaintiff has since had to replace with himself.

**Plaintiff's diligence since proceeding pro se**

Plaintiff has not stood still. Since proceeding pro se he has obtained accommodations from this Court (ECF 73; granted in part, ECF 82), announced a motion for leave to file a Second Amended Complaint under Rule 15(a)(2) (ECF 89 at 6), and received this Court's finding of good

PLAINTIFF'S OPPOSITION TO DEFENDANT AFFIRM, INC.'S MOTION TO DISMISS - 2

cause on the extension that permits these oppositions and the Rule 15 motion to be prepared in an orderly sequence (ECF 92). Plaintiff is grateful for the Court's careful management of that transition.

This opposition therefore makes three points — three independent grounds on which the motion fails or should be deferred:

1. **Judicial economy (§ II).** Judicial economy favors resolving the Rule 15 motion first: if leave is granted, the amended pleading will supersede the FAC and moot this motion as a matter of settled Ninth Circuit law.

2. **The merits (§ IV).** Every ground Affirm raises is disputed on the merits — the FAC, liberally construed, states its claims, and Affirm's central factual premise (that it was a stranger to the conduct pleaded) is contradicted by the FAC's own Affirm-specific allegations.

3. **The remedy (§ V).** If the Court finds any pleading defect, the defect traces to former counsel, not to the substance of the claims, and the answer under Rule 15's "extreme liberality" is leave to amend — not dismissal, and certainly not dismissal with prejudice.

## II. THE PENDING RULE 15 MOTION SHOULD BE RESOLVED FIRST

The law on supersession is not in doubt. "[A]n amended complaint supersedes the original, the latter being treated thereafter as non-existent." Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) (cleaned up). In Ramirez, the Ninth Circuit held that a motion to dismiss aimed at a superseded pleading "should have been deemed moot" once the amended pleading was filed. Id.; accord Rhodes v. Robinson, 621 F.3d 1002, 1005 (9th Cir. 2010).

Plaintiff is candid about the sequence, as he was in his extension motion (ECF 89 at 7): a pleading is superseded upon amendment, not upon the filing of a motion for leave, and Plaintiff does not contend that his forthcoming Rule 15(a)(2) motion by itself moots ECF 60. This opposition is filed precisely so that no motion stands unopposed. But the Court retains discretion over the order in which it takes up the pending matters, and economy points one way: if leave to amend is granted — as Foman v. Davis, 371 U.S. 178, 182 (1962), and Eminence Capital, LLC v.

Aspeon, Inc., 316 F.3d 1048, 1051–52 (9th Cir. 2003) (per curiam), strongly favor at this early stage, before any discovery — the Court's and the parties' investment in adjudicating twelve claims of a pleading about to be replaced would be spent on a complaint "treated thereafter as non-existent." Ramirez, 806 F.3d at 1008.

Plaintiff respectfully requests, as a matter of discretion and not of right, that the Court resolve the Rule 15 motion first and deny or defer ECF 60 accordingly.

### III. LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to Plaintiff; a claim survives if its factual content permits a reasonable inference of liability. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A pro se litigant's filings are entitled to liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). And federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Johnson v. City of Shelby, 574 U.S. 10, 11 (2014) (per curiam).

### IV. EACH OF AFFIRM'S GROUNDS IS DISPUTED

Affirm's memorandum proceeds through thirteen lettered grounds (Mot. §§ III.A–M). Plaintiff disputes every one. Two threads run through nearly all of them and are addressed once here. The "no facts" premise fails: the FAC's Affirm-specific allegations. First, Affirm repeatedly asserts that the FAC pleads "no facts" about Affirm. The FAC devotes a dedicated factual section to Affirm — "Affirm's Predatory Lending Practices" (FAC ¶¶ 111–125) — alleging that:

• Affirm issued forty-six loans to Plaintiff in a December 2024–January 2025 window (¶112) totaling $11,799.55 in principal (¶ 113);

• forty-four of them financed co-defendant ARB's "Modo" gambling platform (¶ 114), all at 25.28% APR (¶ 115);

• eighteen loans issued in a single forty-eight-hour span (¶ 119), each approved instantly (¶ 121);

• Affirm's own employee acknowledged in writing "a number of loans with the same merchant MODO, many of them for the same amount" (¶ 122); and

• Bank of America investigated, determined Affirm had facilitated gambling loans in violation of its own terms, and refunded Plaintiff (¶¶ 123–125).

That is defendant-specific pleading, not "lumping." Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011), condemns only undifferentiated "everybody-did-everything" pleading; a complaint that tells Affirm exactly which loans, which window, which merchant, which employee, and which admissions is the opposite.

**State of mind cannot be resolved on the pleadings**

Second, several grounds ask the Court to resolve Affirm's state of mind — its knowledge, intent, and purpose — on the pleadings. Knowledge and intent "may be alleged generally," Fed. R. Civ. P. 9(b), and here they are alleged specifically. Taking Affirm's grounds in order:

**A. Unruh Civil Rights Act: the FAC pleads bipolar disorder, not gambling, as the disability**

Affirm's residency argument (Mot. § III.A.1) reads the Act's phrase "within the jurisdiction of this state" as a domicile requirement that would immunize California businesses for conduct they direct from California at anyone living elsewhere; whether Plaintiff's transactions with a San Francisco-based lender, executed on that lender's California-operated platform, occurred "within the jurisdiction" is at minimum not resolved by Plaintiff's mailing address (FAC ¶ 1).

The "compulsive gambling" exclusion argument (Mot. § III.A.2) misreads the pleading: the disability alleged is Plaintiff's diagnosed bipolar disorder, of which the gambling was a manifestation (FAC ¶¶ 19, 40, 224); Cal. Gov't Code § 12926(j)(5), like 42 U.S.C. § 12211(b)(2), excludes compulsive gambling as a disability — it nowhere strips protection from a covered mood disorder because one of its symptoms is gambling. At minimum, which of the two the FAC

pleads is a construction question that Rule 12(b)(6) resolves in Plaintiff's favor. The intentional-discrimination and ADA-predicate points fall with the corresponding arguments below.

**B. ADA: Ninth Circuit nexus law, not California intermediate authority, controls**

As to § 12182 (Mot. § III.B.2), Affirm's lead authority is a California intermediate appellate decision; in this Circuit the ADA reaches the services "of" a place of public accommodation, not merely services "in" one, and a digital service with a nexus to physical places of public accommodation is covered. Robles v. Domino's Pizza, LLC, 913 F.3d 898, 905–06 (9th Cir. 2019). Affirm is point-of-sale financing embedded in the checkout of third-party merchants, including physical merchants — the nexus posture, not the web-only posture.

As to the § 12203 "retaliation" allegations (Mot. § III.B.1), paragraphs 175–178 principally supply chronology; to the extent they are read as a standalone claim resting on litigation conduct, Plaintiff acknowledges the tension Affirm identifies and intends to restructure those allegations in the Second Amended Complaint — which is a Rule 15 point, not a basis for dismissal with prejudice of the disability claims.

**C. Fraud: the who-what-when-where is pleaded, and the theory is inducement**

The who-what-when-where is pleaded with names and dates: Affirm's identified employees, their written statements, the forty-six loans, and the two-month window (FAC ¶¶111–125, 235–254); Rule 9(b)'s particularity requirement is satisfied by exactly this kind of defendant-specific account, and conditions of mind may be alleged generally, Fed. R. Civ. P. 9(b).

The economic loss rule does not bar fraud claims resting on deception independent of contractual performance: a party "cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to that contract." Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 993 (2004). Plaintiff's theory is inducement — misrepresentation and concealment that brought the loans into being — not a repackaged breach.

**D. Breach of contract: Affirm's own employees named the governing term in writing**

Affirm says Plaintiff identifies no term and no breaching conduct. The FAC identifies both: the loan agreements' own prohibited-use terms — the gambling prohibition Affirm's

PLAINTIFF'S OPPOSITION TO DEFENDANT AFFIRM, INC.'S MOTION TO DISMISS - 6

employees themselves invoked when they flagged and acknowledged the Modo loans (FAC ¶¶ 122, 255–272, read with ¶¶ 111–125) — and Affirm's conduct in issuing and then enforcing loans its own terms prohibited. A defendant whose employees named the governing term in writing cannot plausibly claim it lacks notice of which term is at issue.

**E. Implied covenant: the claim addresses frustration, not duplication**

The covenant claim does not duplicate the contract claim; it addresses Affirm's frustration of the agreement's benefit by continuing to collect on — and derogatorily report — loans Affirm itself had determined violated its own terms (FAC ¶¶ 273–285, read with ¶¶ 122, 337–339). Whether that course of conduct "unfairly interfered" with Plaintiff's rights under the agreements is a merits question, not a pleading defect.

**F. Unjust enrichment: quasi-contract is properly pleaded in the alternative**

Affirm's argument assumes the "express binding agreements" it invokes are valid and enforceable — the very point in dispute, since the FAC alleges the loans financed transactions Affirm's own terms prohibited as gambling (FAC ¶¶ 304–324). A plaintiff may plead quasi-contract in the alternative to contract, Fed. R. Civ. P. 8(d)(2)–(3), precisely for the case in which the express agreement is found unenforceable. Restitution of the 25.28% interest collected on those loans (FAC ¶¶ 307, 319) is a coherent alternative theory at the pleading stage.

**G. California Financial Code: the violations remain UCL predicates**

Plaintiff does not concede Affirm's no-private-right argument. But even on Affirm's own framework, statutory violations that lack a direct private right remain cognizable as predicates for the UCL's "unlawful" prong — a borrowing function Affirm's own memorandum describes (Mot. at 14–15). The Second Amended Complaint will conform this count's mechanics; the appropriate disposition is leave, not dismissal with prejudice.

**H. Intentional infliction of emotional distress: the pleaded course is not "mere issuance of loans"**

Affirm reduces the claim to "mere issuance of loans." The pleaded course is different in kind: forty-six instant loans in two months — eighteen of them in forty-eight hours — into a known gambling channel, to a person in psychiatric crisis, followed by continued collection and derogatory credit reporting after Affirm's own employees acknowledged the loans as prohibited gambling transactions (FAC ¶¶ 111–125, 343–363). Under the standard Affirm itself quotes, reckless disregard of the probability of causing distress suffices; whether this course of conduct is "outrageous" is quintessentially a question for the factfinder, not for the pleadings.

## I. Negligent infliction of emotional distress: a drafting defect for Rule 15, not a with-prejudice failure

Affirm critiques the count's bystander architecture as former counsel drafted it (FAC ¶¶ 364–384), and Plaintiff acknowledges the drafting confuses the bystander and direct-victim theories. The underlying distress — Plaintiff's own — is pleaded in the record (FAC ¶¶ 343–363). This is the clearest example in the motion of a defect of drafting rather than of substance: the Second Amended Complaint will state the theory correctly, and Rule 15, not dismissal with prejudice, is the vehicle.

## J. "Payment processor liability": an imperfect label does not doom the facts beneath it

Affirm's point is nomenclature — that the count's label does not fit a lender. Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Johnson, 574 U.S. at 11. The facts beneath the label — Affirm's role and conduct in the payment chain that financed the gambling enterprise (FAC ¶¶ 111–125, 385–400) — state claims under the theories addressed elsewhere in this opposition, and the SAC will house them under their proper headings.

## K. UCL: standing is pleaded under Kwikset and the predicates survive

Affirm's derivative argument fails because the predicates survive (supra §§ IV.A–J). Its standing argument fails on the face of the pleading: under Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 323, 330 (2011), "lost money or property" includes surrendering more in a transaction than one otherwise would have — here, the loan principal and 25.28% interest paid,

and the diminished credit standing pleaded (FAC ¶¶ 113, 115, 182, 296–297). And on the "unfair" prong, under the balancing test Affirm itself quotes, lending at this velocity into a transaction stream the lender's own terms prohibited — and continuing to collect after its employees acknowledged as much — "offends established public policy" and is "substantially injurious to consumers" by any measure; Affirm's contrary authority involved the sellers of games themselves, not a lender financing prohibited gambling in violation of its own terms.

**L. Aiding and abetting: knowledge is pleaded in Affirm's own words**

Affirm calls the knowledge allegations "bald," but the FAC pleads the knowledge element with Affirm's own words:

• its employee's written acknowledgment of the pattern of Modo loans (¶ 122);

• the Bank of America determination and refund (¶¶ 123–125, 337–339); and

• the allegations that Affirm knew it was facilitating gambling loans (¶¶ 403–404) — followed by continued financing, collection, and reporting (¶ 409).

Under the very authority Affirm invokes (Mot. at 17–18), actual knowledge of the specific primary wrong plus substantial assistance states the claim; a lender's provision of the financing that made the primary wrong possible, continued after acknowledgment, is substantial assistance. At minimum, Affirm's state of knowledge is a disputed question of fact that cannot be resolved against the pleading on a Rule 12(b)(6) motion.

**M. Civil conspiracy: a liability theory attached to the surviving torts**

Affirm is correct that conspiracy is not an independent tort under California law — which is why its argument proves too little: conspiracy is a theory of liability that attaches to the underlying torts (fraud; the intentional torts underlying the aiding-and-abetting count) that survive above. To the extent the FAC's conspiracy references (¶ 178) are structurally misplaced, that is once more a drafting defect for the SAC, not a with-prejudice merits failure.

**V. IF ANY CLAIM IS FOUND DEFICIENT, THE REMEDY IS LEAVE TO AMEND**

Plaintiff concedes no deficiency. But should the Court find any claim inadequately pleaded, the disposition Affirm seeks — dismissal with prejudice — would be error twice over.

A. Rule 15's standard: extreme liberality, and no showing of futility Leave to amend "shall be freely given when justice so requires,"Foman, 371 U.S. at 182, a policy applied "with extreme liberality," Eminence Capital, 316 F.3d at 1051–52, and a pro se litigant is ordinarily entitled to leave unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment," Lopez v. Smith, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc). Nothing in Affirm's motion establishes futility: its grounds attack the pleading's form — which paragraphs say what about whom — and the curative facts identified above (Affirm's own written acknowledgments, the loan pattern, the collection and reporting chronology, and additional theories the FAC omitted, including California debt-collection allegations and, as the record supports, credit-reporting (furnisher-duty) allegations) demonstrate that amendment is not just possible but already underway. There has been no prior court-ordered amendment opportunity for this pro se Plaintiff, no undue delay, and no cognizable prejudice to Affirm at this pre-discovery stage.

**B. The defects trace to counsel, not to the claims**

Every drafting defect Affirm identifies is a defect of former counsel's drafting, in a representation whose documented end included an unreturned client file and a written refusal to prepare Plaintiff's accommodation request (§ I, supra; ECF 73; ECF 76 at 4–5; ECF 89 at 4–5). The Supreme Court has recognized that when counsel abandons the representation, the attorney's acts "cannot fairly be attributed" to the client. Maples v. Thomas, 565 U.S. 266, 281–83 (2012).

Plaintiff invokes that principle for a modest purpose only — not to disown the FAC, which he stands behind as construed above, but to inform the Court's discretion on remedy: the Ninth Circuit relieves innocent clients of the "drastic consequences" of counsel's failures, Community Dental Servs. v. Tani, 282 F.3d 1164, 1167, 1170 (9th Cir. 2002); Lal v. California, 610 F.3d 518, 524 (9th Cir. 2010); see also Mackey v. Hoffman, 682 F.3d 1247 (9th Cir. 2012), and this District's own rules incorporate counsel's obligations on withdrawal, including the duty to release

the client's papers and property, Cal. R. Prof. Conduct 1.16(d), (e)(1); E.D. Cal. L.R. 182(d) — obligations whose non-performance here is documented on this docket.

Where the choice is between punishing the client for the lawyer's pleading and letting the client replead, equity and the case law choose repleading. Cf. Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253 (9th Cir. 2010).

## C. Link v. Wabash does not counsel otherwise

Affirm may respond that a litigant is ordinarily bound by his freely selected agent's acts. Link v. Wabash R.R. Co., 370 U.S. 626, 633 (1962). Maples answered that argument in terms: the Court did "not disturb that general rule," but held that when an attorney "abandons his client without notice," the abandonment "sever[s] the principal-agent relationship" and the attorney's acts are no longer attributable to the client. 565 U.S. at 281 (cleaned up). Plaintiff does not ask the Court to find abandonment as a matter of law; the documented circumstances of the representation's end — the mid-briefing withdrawal, the unreturned file, the written refusals — are offered as an extension of Maples' principle to the far more modest relief of leave to replead, a context in which the equities require far less than they would to excuse a procedural default.

## D. The Court's discretion, exercised consistently with the accommodations already granted

Finally, Plaintiff notes — as context for discretion, not as a legal command — that this Court has already recognized Plaintiff's documented disabilities and granted accommodations to ensure his meaningful access to these proceedings (ECF 73, 82). The Ninth Circuit instructs that courts consider a pro se litigant's circumstances, including mental impairment, in administering procedural rules. Akhtar v. Mesa, 698 F.3d 1202, 1210–12 (9th Cir. 2012); cf. Tennessee v. Lane, 541 U.S. 509 (2004) (recognizing the fundamental importance of access to the courts). An adjudication of these claims on their merits, on a pleading Plaintiff has actually authored, is the disposition most consistent with that framework.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Affirm's motion to dismiss (ECF 60), or defer its resolution pending the Court's disposition of Plaintiff's

PLAINTIFF'S OPPOSITION TO DEFENDANT AFFIRM, INC.'S MOTION TO DISMISS - 11

forthcoming Rule 15(a)(2) motion for leave to file a Second Amended Complaint; in the alternative, if the Court finds any claim insufficiently pleaded, Plaintiff requests dismissal without prejudice and with leave to amend.

Plaintiff expressly preserves all claims and rights as to Defendant Amazon.com, Inc., including as to service; nothing in this opposition waives or narrows any claim against any of the five Defendants named in this action. Plaintiff appears without counsel by necessity; he does not appear without a record. He intends to litigate this matter to conclusion and to pursue every avenue of review available to him.

Plaintiff does not seek in this action the recovery of any amount he wagered or lost at any gaming platform. The relief he seeks from Affirm is measured by Affirm's own conduct — what Affirm collected, what it reported, and what it continues to collect and report.
Affirm introduced Plaintiff to this Court, in its first sentence, as "a self-described 'gambling addict.'"

Plaintiff asks nothing of Affirm's counsel but this: that his addiction not be placed inside quotation marks.
He acknowledges telling Affirm's representative the truth about his gambling addiction when she asked, and she thanked him for his candor. For the record, Plaintiff is also a drug addict, and is proud to say he has been sober for nearly ten years. He has not used since he walked out of treatment, and he has not used a platform like Modo.us since he was put off it. Many people would call that strength.

Either way, this reaches past Plaintiff and past this case. He was raised not to judge a person on their worst days.

Now that the Court and the parties know the rest of his struggles, Plaintiff hopes this case can proceed on its merits.
None of that gives Affirm a defense. A consumer's condition does not suspend what a creditor owes him under the law — and the disclosure Affirm quotes in its first sentence is the notice that triggered those obligations, not a discount on them.

PLAINTIFF'S OPPOSITION TO DEFENDANT AFFIRM, INC.'S MOTION TO DISMISS - 12

DATED: July 28, 2026

Signed by:

*Matthew Joyce*
07B601B840D34AB

Matthew Joyce
Plaintiff, Pro Se
600 Market Grove Dr #100
Wake Forest, NC 27587
Phone: (919) 259-4661
Email: m.joyce07@proton.me

PLAINTIFF'S OPPOSITION TO DEFENDANT AFFIRM, INC.'S MOTION TO DISMISS - 13

# ⌐⌐ Staples.

Low price. Every item. Every day.

Store No: 1341

249 Commerce Ave

Manteca, CA, 95336

(209) 239-4045

262626 00 026 72433

Receipt #: 72433                                  07/28/2026 17:10

Rewards Number 9861635655

SALE

| Qty | Pages | Description | Amount |
|-----|-------|-------------|--------|
| 1 | 15 | Print From Email - 2821515<br>- Letter 8.5 x 11"<br>- Black & White (15 pages) | 4.80 |

| | |
|---|---|
| SubTotal | 4.80 |
| Standard Tax 9.0% | 0.43 |
| Total | USD $ 5.23 |

Visa #:************5057 [ T ]

VISA DEBIT

Contactless

Auth No.: 405973

Mode: Issuer

AID: A0000000031010

TVR: 0000000000

IAD: 06011203A00000

TSI:

ARC: 3030

NO CVM

**The Cardholder agrees to pay the Issuer of the charges card is accordance with the agreement between the Issuer and the Cardholder.**

Compare and Save

With Staples-brand products

THANK YOU FOR SHOPPING AT STAPLES!

**Mail body: Fwd: [Dispatch] #4 PACKET & FINAL - MATTHEW JOYCE**

Warm regards,

**The Cordova Courier Team**

**Cordova Courier**
📞 24/7 Dispatch: (209) 880-9624
✉ dispatch@cordovacourier.com
🌐 www.cordovacourier.com
Like to leave a review? Cordova Courier Reviews

- **Wait Time Policy**:
  Our quote includes **15 minutes** of wait time at both pickup and delivery locations.
  After that, we charge **$1.25 per additional minute**

---------- Forwarded message ---------
From: **Brielle Pittman** <brielle.pittman2@gmail.com>
Date: Tue, Jul 28, 2026 at 1:50 PM
Subject: [Dispatch] #4 PACKET & FINAL - MATTHEW JOYCE
To: <dispatch@cordovacourier.com>
Cc: <m.joyce@proton.me>

--
The Cordova Courier Team

Cordova Courier
📞 24/7 Dispatch: (209) 880-9624    ✉ dispatch@cordovacourier.com    🌐 www.cordovacourier.com

Wait Time Policy: Our quote includes 15 minutes of wait time at both pickup and delivery locations.
After that, we charge $1.25 per additional minute.

Brielle Pittman| Wake Forest, NC 27587
(919)749-5754
brielle.pittman2@gmail.com

--
The Cordova Courier Team

Cordova Courier
📞 24/7 Dispatch: (209) 880-9624   📧 dispatch@cordovacourier.com   🌐 www.cordovacourier.com

Wait Time Policy: Our quote includes 15 minutes of wait time at both pickup and delivery locations. After that, we charge $1.25 per additional minute.

**CONFIDENTIALITY NOTICE:** This email and any attachments are intended solely for the use of the individual or entity to whom it is addressed and may contain confidential or legally privileged information, including information protected under the Health Insurance Portability and Accountability Act (HIPAA). If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or use of the contents of this communication is strictly prohibited. If you have received this message in error, please notify the sender immediately and delete all copies from your system.

**Cordova Courier** is committed to maintaining the confidentiality and security of all documents we handle, including legal and medical information. For secure delivery updates, please access your portal at: www.cordovacourier.com

**By scheduling service with *Cordova Courier,*** you certify that the shipment does **not contain** any items that are prohibited under our *Prohibited & Restricted Items Policy* (see www.cordovacourier.com/legal/prohibited-items). Any misdeclared or illicit contents may result in cancellation, refusal of service, and potential notification of law enforcement.

Version: CC-LEGAL-EMAIL-FOOTER v1.0 – March 2025



Matthew Joyce
600 Market Grove Drive #100
Wake Forest, NC 27587-7345
(919) 259-4661
m.joyce07@proton.me
Plaintiff, Pro Se

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| MATTHEW JOYCE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ARB GAMING LLC dba MODO.US;<br>AFFIRM, INC.;<br>GOLDMAN SACHS BANK USA;<br>APPLE INC.;<br>AMAZON.COM, INC.,<br><br>Defendants. | Case No.  2:25-cv-01868-DJC-CSK (PS)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT AFFIRM, INC.'S MOTION TO DISMISS (ECF 60)**<br><br>Hearing: August 25, 2026, 10:00 a.m., Courtroom 25 (Zoom) — Hon. Chi Soo Kim |

## I. INTRODUCTION

Affirm, Inc. moves under Rule 12(b)(6) to dismiss all twelve claims in the operative First Amended Complaint (ECF 33, the "FAC"), most of them with prejudice. (ECF 60.) Plaintiff opposes the motion in its entirety and concedes none of its grounds. But before the Court reaches any of them, one feature of the motion's posture deserves its attention: the pleading Affirm attacks is not the pleading Plaintiff would file today, because it is not a pleading Plaintiff drafted — and the Court has already set in motion the process that will replace it.

**The pleading under attack is former counsel's work**

The FAC was drafted and filed by Plaintiff's former counsel. The record of that representation's end is documented on this docket:

• Counsel moved to withdraw on May 20, 2026 and was relieved on May 31, 2026, on the eve of this briefing schedule (ECF 47, 58).

• She has never returned Plaintiff's complete client file despite a written demand served May 26, 2026 under N.C. Rule of Professional Conduct 1.16(d) and her own written acknowledgment and twice-repeated written promise to produce it (ECF 76 at 4–5; ECF 89 at 4).

• She declined in writing, on May 26, 2026, while still counsel of record, to prepare Plaintiff's request for disability accommodations (ECF 73).

• She made a filing in the parallel arbitration over Plaintiff's express written instruction not to file it (see Plaintiff's opposition to ARB Gaming's motion (ECF 56), filed concurrently, at §IV.E).

• She remains, today, counsel of record for a co-party in this action — Plaintiff-in Interpleader Jamie Stahura — because her Local Rule 182(d) withdrawal remains pending: the Court directed a noticed motion on July 13, 2026 (ECF 87), counsel filed it on July 21, 2026, and it is set for hearing August 5, 2026 (ECF 88). Until relieved by order, "[t]he authority and duty of the attorney of record shall continue." E.D. Cal. L.R. 182(d).

Plaintiff recites this history without rhetoric and asks for no finding about counsel's conduct on this motion. He recites it because it frames what this motion actually is: a demand for dismissal, with prejudice, of claims whose pleaded form reflects the work of an attorney Plaintiff has since had to replace with himself.

**Plaintiff's diligence since proceeding pro se**

Plaintiff has not stood still. Since proceeding pro se he has obtained accommodations from this Court (ECF 73; granted in part, ECF 82), announced a motion for leave to file a Second Amended Complaint under Rule 15(a)(2) (ECF 89 at 6), and received this Court's finding of good

cause on the extension that permits these oppositions and the Rule 15 motion to be prepared in an orderly sequence (ECF 92). Plaintiff is grateful for the Court's careful management of that transition.

This opposition therefore makes three points — three independent grounds on which the motion fails or should be deferred:

1. **Judicial economy (§ II).** Judicial economy favors resolving the Rule 15 motion first: if leave is granted, the amended pleading will supersede the FAC and moot this motion as a matter of settled Ninth Circuit law.

2. **The merits (§ IV).** Every ground Affirm raises is disputed on the merits — the FAC, liberally construed, states its claims, and Affirm's central factual premise (that it was a stranger to the conduct pleaded) is contradicted by the FAC's own Affirm-specific allegations.

3. **The remedy (§ V).** If the Court finds any pleading defect, the defect traces to former counsel, not to the substance of the claims, and the answer under Rule 15's "extreme liberality" is leave to amend — not dismissal, and certainly not dismissal with prejudice.

## II. THE PENDING RULE 15 MOTION SHOULD BE RESOLVED FIRST

The law on supersession is not in doubt. "[A]n amended complaint supersedes the original, the latter being treated thereafter as non-existent." Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) (cleaned up). In Ramirez, the Ninth Circuit held that a motion to dismiss aimed at a superseded pleading "should have been deemed moot" once the amended pleading was filed. Id.; accord Rhodes v. Robinson, 621 F.3d 1002, 1005 (9th Cir. 2010).

Plaintiff is candid about the sequence, as he was in his extension motion (ECF 89 at 7): a pleading is superseded upon amendment, not upon the filing of a motion for leave, and Plaintiff does not contend that his forthcoming Rule 15(a)(2) motion by itself moots ECF 60. This opposition is filed precisely so that no motion stands unopposed. But the Court retains discretion over the order in which it takes up the pending matters, and economy points one way: if leave to amend is granted — as Foman v. Davis, 371 U.S. 178, 182 (1962), and Eminence Capital, LLC v.

PLAINTIFF'S OPPOSITION TO DEFENDANT AFFIRM, INC.'S MOTION TO DISMISS - 3

Aspeon, Inc., 316 F.3d 1048, 1051–52 (9th Cir. 2003) (per curiam), strongly favor at this early stage, before any discovery — the Court's and the parties' investment in adjudicating twelve claims of a pleading about to be replaced would be spent on a complaint "treated thereafter as non-existent." Ramirez, 806 F.3d at 1008.

Plaintiff respectfully requests, as a matter of discretion and not of right, that the Court resolve the Rule 15 motion first and deny or defer ECF 60 accordingly.

### III. LEGAL STANDARD

On a Rule 12(b)(6) motion, the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to Plaintiff; a claim survives if its factual content permits a reasonable inference of liability. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A pro se litigant's filings are entitled to liberal construction. Erickson v. Pardus, 551 U.S. 89, 94 (2007); Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010). And federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Johnson v. City of Shelby, 574 U.S. 10, 11 (2014) (per curiam).

### IV. EACH OF AFFIRM'S GROUNDS IS DISPUTED

Affirm's memorandum proceeds through thirteen lettered grounds (Mot. §§ III.A–M). Plaintiff disputes every one. Two threads run through nearly all of them and are addressed once here. The "no facts" premise fails: the FAC's Affirm-specific allegations. First, Affirm repeatedly asserts that the FAC pleads "no facts" about Affirm. The FAC devotes a dedicated factual section to Affirm — "Affirm's Predatory Lending Practices" (FAC ¶¶ 111–125) — alleging that:

• Affirm issued forty-six loans to Plaintiff in a December 2024–January 2025 window (¶112) totaling $11,799.55 in principal (¶ 113);

• forty-four of them financed co-defendant ARB's "Modo" gambling platform (¶ 114), all at 25.28% APR (¶ 115);

PLAINTIFF'S OPPOSITION TO DEFENDANT AFFIRM, INC.'S MOTION TO DISMISS - 4

• eighteen loans issued in a single forty-eight-hour span (¶ 119), each approved instantly (¶ 121);

• Affirm's own employee acknowledged in writing "a number of loans with the same merchant MODO, many of them for the same amount" (¶ 122); and

• Bank of America investigated, determined Affirm had facilitated gambling loans in violation of its own terms, and refunded Plaintiff (¶¶ 123–125).

That is defendant-specific pleading, not "lumping." Destfino v. Reiswig, 630 F.3d 952, 958 (9th Cir. 2011), condemns only undifferentiated "everybody-did-everything" pleading; a complaint that tells Affirm exactly which loans, which window, which merchant, which employee, and which admissions is the opposite.

**State of mind cannot be resolved on the pleadings**

Second, several grounds ask the Court to resolve Affirm's state of mind — its knowledge, intent, and purpose — on the pleadings. Knowledge and intent "may be alleged generally," Fed. R. Civ. P. 9(b), and here they are alleged specifically. Taking Affirm's grounds in order:

**A. Unruh Civil Rights Act: the FAC pleads bipolar disorder, not gambling, as the disability**

Affirm's residency argument (Mot. § III.A.1) reads the Act's phrase "within the jurisdiction of this state" as a domicile requirement that would immunize California businesses for conduct they direct from California at anyone living elsewhere; whether Plaintiff's transactions with a San Francisco-based lender, executed on that lender's California-operated platform, occurred "within the jurisdiction" is at minimum not resolved by Plaintiff's mailing address (FAC ¶ 1).

The "compulsive gambling" exclusion argument (Mot. § III.A.2) misreads the pleading: the disability alleged is Plaintiff's diagnosed bipolar disorder, of which the gambling was a manifestation (FAC ¶¶ 19, 40, 224); Cal. Gov't Code § 12926(j)(5), like 42 U.S.C. § 12211(b)(2), excludes compulsive gambling as a disability — it nowhere strips protection from a covered mood disorder because one of its symptoms is gambling. At minimum, which of the two the FAC

PLAINTIFF'S OPPOSITION TO DEFENDANT AFFIRM, INC.'S MOTION TO DISMISS - 5

pleads is a construction question that Rule 12(b)(6) resolves in Plaintiff's favor. The intentional-discrimination and ADA-predicate points fall with the corresponding arguments below.

**B. ADA: Ninth Circuit nexus law, not California intermediate authority, controls**

As to § 12182 (Mot. § III.B.2), Affirm's lead authority is a California intermediate appellate decision; in this Circuit the ADA reaches the services "of" a place of public accommodation, not merely services "in" one, and a digital service with a nexus to physical places of public accommodation is covered. Robles v. Domino's Pizza, LLC, 913 F.3d 898, 905–06 (9th Cir. 2019). Affirm is point-of-sale financing embedded in the checkout of third-party merchants, including physical merchants — the nexus posture, not the web-only posture.

As to the § 12203 "retaliation" allegations (Mot. § III.B.1), paragraphs 175–178 principally supply chronology; to the extent they are read as a standalone claim resting on litigation conduct, Plaintiff acknowledges the tension Affirm identifies and intends to restructure those allegations in the Second Amended Complaint — which is a Rule 15 point, not a basis for dismissal with prejudice of the disability claims.

**C. Fraud: the who-what-when-where is pleaded, and the theory is inducement**

The who-what-when-where is pleaded with names and dates: Affirm's identified employees, their written statements, the forty-six loans, and the two-month window (FAC ¶¶111–125, 235–254); Rule 9(b)'s particularity requirement is satisfied by exactly this kind of defendant-specific account, and conditions of mind may be alleged generally, Fed. R. Civ. P. 9(b).

The economic loss rule does not bar fraud claims resting on deception independent of contractual performance: a party "cannot rationally calculate the possibility that the other party will deliberately misrepresent terms critical to that contract." Robinson Helicopter Co. v. Dana Corp., 34 Cal. 4th 979, 993 (2004). Plaintiff's theory is inducement — misrepresentation and concealment that brought the loans into being — not a repackaged breach.

**D. Breach of contract: Affirm's own employees named the governing term in writing**

Affirm says Plaintiff identifies no term and no breaching conduct. The FAC identifies both: the loan agreements' own prohibited-use terms — the gambling prohibition Affirm's

PLAINTIFF'S OPPOSITION TO DEFENDANT AFFIRM, INC.'S MOTION TO DISMISS - 6

employees themselves invoked when they flagged and acknowledged the Modo loans (FAC ¶¶ 122, 255–272, read with ¶¶ 111–125) — and Affirm's conduct in issuing and then enforcing loans its own terms prohibited. A defendant whose employees named the governing term in writing cannot plausibly claim it lacks notice of which term is at issue.

**E. Implied covenant: the claim addresses frustration, not duplication**

The covenant claim does not duplicate the contract claim; it addresses Affirm's frustration of the agreement's benefit by continuing to collect on — and derogatorily report — loans Affirm itself had determined violated its own terms (FAC ¶¶ 273–285, read with ¶¶ 122, 337–339). Whether that course of conduct "unfairly interfered" with Plaintiff's rights under the agreements is a merits question, not a pleading defect.

**F. Unjust enrichment: quasi-contract is properly pleaded in the alternative**

Affirm's argument assumes the "express binding agreements" it invokes are valid and enforceable — the very point in dispute, since the FAC alleges the loans financed transactions Affirm's own terms prohibited as gambling (FAC ¶¶ 304–324). A plaintiff may plead quasi-contract in the alternative to contract, Fed. R. Civ. P. 8(d)(2)–(3), precisely for the case in which the express agreement is found unenforceable. Restitution of the 25.28% interest collected on those loans (FAC ¶¶ 307, 319) is a coherent alternative theory at the pleading stage.

**G. California Financial Code: the violations remain UCL predicates**

Plaintiff does not concede Affirm's no-private-right argument. But even on Affirm's own framework, statutory violations that lack a direct private right remain cognizable as predicates for the UCL's "unlawful" prong — a borrowing function Affirm's own memorandum describes (Mot. at 14–15). The Second Amended Complaint will conform this count's mechanics; the appropriate disposition is leave, not dismissal with prejudice.

**H. Intentional infliction of emotional distress: the pleaded course is not "mere issuance of loans"**

Affirm reduces the claim to "mere issuance of loans." The pleaded course is different in kind: forty-six instant loans in two months — eighteen of them in forty-eight hours — into a known gambling channel, to a person in psychiatric crisis, followed by continued collection and derogatory credit reporting after Affirm's own employees acknowledged the loans as prohibited gambling transactions (FAC ¶¶ 111–125, 343–363). Under the standard Affirm itself quotes, reckless disregard of the probability of causing distress suffices; whether this course of conduct is "outrageous" is quintessentially a question for the factfinder, not for the pleadings.

## I. Negligent infliction of emotional distress: a drafting defect for Rule 15, not a with-prejudice failure

Affirm critiques the count's bystander architecture as former counsel drafted it (FAC ¶¶ 364–384), and Plaintiff acknowledges the drafting confuses the bystander and direct-victim theories. The underlying distress — Plaintiff's own — is pleaded in the record (FAC ¶¶ 343–363). This is the clearest example in the motion of a defect of drafting rather than of substance: the Second Amended Complaint will state the theory correctly, and Rule 15, not dismissal with prejudice, is the vehicle.

## J. "Payment processor liability": an imperfect label does not doom the facts beneath it

Affirm's point is nomenclature — that the count's label does not fit a lender. Federal pleading rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." Johnson, 574 U.S. at 11. The facts beneath the label — Affirm's role and conduct in the payment chain that financed the gambling enterprise (FAC ¶¶ 111–125, 385–400) — state claims under the theories addressed elsewhere in this opposition, and the SAC will house them under their proper headings.

## K. UCL: standing is pleaded under Kwikset and the predicates survive

Affirm's derivative argument fails because the predicates survive (supra §§ IV.A–J). Its standing argument fails on the face of the pleading: under Kwikset Corp. v. Superior Court, 51 Cal. 4th 310, 323, 330 (2011), "lost money or property" includes surrendering more in a transaction than one otherwise would have — here, the loan principal and 25.28% interest paid,

and the diminished credit standing pleaded (FAC ¶¶ 113, 115, 182, 296–297). And on the "unfair" prong, under the balancing test Affirm itself quotes, lending at this velocity into a transaction stream the lender's own terms prohibited — and continuing to collect after its employees acknowledged as much — "offends established public policy" and is "substantially injurious to consumers" by any measure; Affirm's contrary authority involved the sellers of games themselves, not a lender financing prohibited gambling in violation of its own terms.

**L. Aiding and abetting: knowledge is pleaded in Affirm's own words**

Affirm calls the knowledge allegations "bald," but the FAC pleads the knowledge element with Affirm's own words:

- its employee's written acknowledgment of the pattern of Modo loans (¶ 122);

- the Bank of America determination and refund (¶¶ 123–125, 337–339); and

- the allegations that Affirm knew it was facilitating gambling loans (¶¶ 403–404) — followed by continued financing, collection, and reporting (¶ 409).

Under the very authority Affirm invokes (Mot. at 17–18), actual knowledge of the specific primary wrong plus substantial assistance states the claim; a lender's provision of the financing that made the primary wrong possible, continued after acknowledgment, is substantial assistance. At minimum, Affirm's state of knowledge is a disputed question of fact that cannot be resolved against the pleading on a Rule 12(b)(6) motion.

**M. Civil conspiracy: a liability theory attached to the surviving torts**

Affirm is correct that conspiracy is not an independent tort under California law — which is why its argument proves too little: conspiracy is a theory of liability that attaches to the underlying torts (fraud; the intentional torts underlying the aiding-and-abetting count) that survive above. To the extent the FAC's conspiracy references (¶ 178) are structurally misplaced, that is once more a drafting defect for the SAC, not a with-prejudice merits failure.

**V. IF ANY CLAIM IS FOUND DEFICIENT, THE REMEDY IS LEAVE TO AMEND**

Plaintiff concedes no deficiency. But should the Court find any claim inadequately pleaded, the disposition Affirm seeks — dismissal with prejudice — would be error twice over.

A. Rule 15's standard: extreme liberality, and no showing of futility Leave to amend "shall be freely given when justice so requires,"Foman, 371 U.S. at 182, a policy applied "with extreme liberality," Eminence Capital, 316 F.3d at 1051–52, and a pro se litigant is ordinarily entitled to leave unless "it is absolutely clear that the deficiencies of the complaint could not be cured by amendment," Lopez v. Smith, 203 F.3d 1122, 1130–31 (9th Cir. 2000) (en banc). Nothing in Affirm's motion establishes futility: its grounds attack the pleading's form — which paragraphs say what about whom — and the curative facts identified above (Affirm's own written acknowledgments, the loan pattern, the collection and reporting chronology, and additional theories the FAC omitted, including California debt-collection allegations and, as the record supports, credit-reporting (furnisher-duty) allegations) demonstrate that amendment is not just possible but already underway. There has been no prior court-ordered amendment opportunity for this pro se Plaintiff, no undue delay, and no cognizable prejudice to Affirm at this pre-discovery stage.

**B. The defects trace to counsel, not to the claims**

Every drafting defect Affirm identifies is a defect of former counsel's drafting, in a representation whose documented end included an unreturned client file and a written refusal to prepare Plaintiff's accommodation request (§ I, supra; ECF 73; ECF 76 at 4–5; ECF 89 at 4–5). The Supreme Court has recognized that when counsel abandons the representation, the attorney's acts "cannot fairly be attributed" to the client. Maples v. Thomas, 565 U.S. 266, 281–83 (2012).

Plaintiff invokes that principle for a modest purpose only — not to disown the FAC, which he stands behind as construed above, but to inform the Court's discretion on remedy: the Ninth Circuit relieves innocent clients of the "drastic consequences" of counsel's failures, Community Dental Servs. v. Tani, 282 F.3d 1164, 1167, 1170 (9th Cir. 2002); Lal v. California, 610 F.3d 518, 524 (9th Cir. 2010); see also Mackey v. Hoffman, 682 F.3d 1247 (9th Cir. 2012), and this District's own rules incorporate counsel's obligations on withdrawal, including the duty to release

the client's papers and property, Cal. R. Prof. Conduct 1.16(d), (e)(1); E.D. Cal. L.R. 182(d) — obligations whose non-performance here is documented on this docket.

Where the choice is between punishing the client for the lawyer's pleading and letting the client replead, equity and the case law choose repleading. Cf. Ahanchian v. Xenon Pictures, Inc., 624 F.3d 1253 (9th Cir. 2010).

## C. Link v. Wabash does not counsel otherwise

Affirm may respond that a litigant is ordinarily bound by his freely selected agent's acts. Link v. Wabash R.R. Co., 370 U.S. 626, 633 (1962). Maples answered that argument in terms: the Court did "not disturb that general rule," but held that when an attorney "abandons his client without notice," the abandonment "sever[s] the principal-agent relationship" and the attorney's acts are no longer attributable to the client. 565 U.S. at 281 (cleaned up). Plaintiff does not ask the Court to find abandonment as a matter of law; the documented circumstances of the representation's end — the mid-briefing withdrawal, the unreturned file, the written refusals — are offered as an extension of Maples' principle to the far more modest relief of leave to replead, a context in which the equities require far less than they would to excuse a procedural default.

## D. The Court's discretion, exercised consistently with the accommodations already granted

Finally, Plaintiff notes — as context for discretion, not as a legal command — that this Court has already recognized Plaintiff's documented disabilities and granted accommodations to ensure his meaningful access to these proceedings (ECF 73, 82). The Ninth Circuit instructs that courts consider a pro se litigant's circumstances, including mental impairment, in administering procedural rules. Akhtar v. Mesa, 698 F.3d 1202, 1210–12 (9th Cir. 2012); cf. Tennessee v. Lane, 541 U.S. 509 (2004) (recognizing the fundamental importance of access to the courts). An adjudication of these claims on their merits, on a pleading Plaintiff has actually authored, is the disposition most consistent with that framework.

## VI. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Affirm's motion to dismiss (ECF 60), or defer its resolution pending the Court's disposition of Plaintiff's

PLAINTIFF'S OPPOSITION TO DEFENDANT AFFIRM, INC.'S MOTION TO DISMISS - 11

forthcoming Rule 15(a)(2) motion for leave to file a Second Amended Complaint; in the alternative, if the Court finds any claim insufficiently pleaded, Plaintiff requests dismissal without prejudice and with leave to amend.

Plaintiff expressly preserves all claims and rights as to Defendant Amazon.com, Inc., including as to service; nothing in this opposition waives or narrows any claim against any of the five Defendants named in this action. Plaintiff appears without counsel by necessity; he does not appear without a record. He intends to litigate this matter to conclusion and to pursue every avenue of review available to him.

Plaintiff does not seek in this action the recovery of any amount he wagered or lost at any gaming platform. The relief he seeks from Affirm is measured by Affirm's own conduct — what Affirm collected, what it reported, and what it continues to collect and report.

Affirm introduced Plaintiff to this Court, in its first sentence, as "a self-described 'gambling addict.'"

Plaintiff asks nothing of Affirm's counsel but this: that his addiction not be placed inside quotation marks.

He acknowledges telling Affirm's representative the truth about his gambling addiction when she asked, and she thanked him for his candor. For the record, Plaintiff is also a drug addict, and is proud to say he has been sober for nearly ten years. He has not used since he walked out of treatment, and he has not used a platform like Modo.us since he was put off it. Many people would call that strength.

Either way, this reaches past Plaintiff and past this case. He was raised not to judge a person on their worst days.

Now that the Court and the parties know the rest of his struggles, Plaintiff hopes this case can proceed on its merits.

None of that gives Affirm a defense. A consumer's condition does not suspend what a creditor owes him under the law — and the disclosure Affirm quotes in its first sentence is the notice that triggered those obligations, not a discount on them.

PLAINTIFF'S OPPOSITION TO DEFENDANT AFFIRM, INC.'S MOTION TO DISMISS - 12

DATED: July 28, 2026

Signed by:

*Matthew Joyce*

07B601B840D34AB...

Matthew Joyce
Plaintiff, Pro Se
600 Market Grove Dr #100
Wake Forest, NC 27587
Phone: (919) 259-4661
Email: m.joyce07@proton.me

PLAINTIFF'S OPPOSITION TO DEFENDANT AFFIRM, INC.'S MOTION TO DISMISS - 13