Matthew Joyce
600 Market Grove Drive #100
Wake Forest, NC 27587-7345
(919) 259-4661
m.joyce07@proton.me
Plaintiff, Pro Se



FILED

JUL 28 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| MATTHEW JOYCE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ARB GAMING LLC dba MODO.US;<br>AFFIRM, INC.;<br>GOLDMAN SACHS BANK USA;<br>APPLE INC.;<br>AMAZON.COM, INC.,<br><br>Defendants. | Case No.  2:25-cv-01868-DJC-CSK (PS)<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT ARB GAMING LLC'S MOTION TO COMPEL ARBITRATION, TO DISMISS, OR TO STAY (ECF 56); DEMAND FOR JURY TRIAL ON FORMATION UNDER 9 U.S.C. § 4**<br><br>Hearing: August 25, 2026, 10:00 a.m., Courtroom 25 (Zoom) — Hon. Chi Soo Kim |

## I. INTRODUCTION

ARB's motion turns on one sworn sentence: that no user "could" access the Modo platform without first accepting ARB's Terms through a "clear and enforceable clickwrap mechanism." (Mem. at 3; Decl. of ARB Chief Executive Officer Patrick Fechtmeyer ("Fechtmeyer Decl.") ¶¶ 4–8, ECF 56-9.) The proof ARB filed for that sentence is Exhibit A to the same declaration: a signup form on which every customer field still shows the placeholder text the page displays before anyone types — "John Doe," at "1234 NW Bobcat Lane," "San Francisco," "CA," ZIP code "90210," date of birth "MM/DD/YYYY." No "Matthew Joyce." No

date. No click. Neither checkbox is checked, and the "Next" button is greyed out. (ECF 56-9 at 6.) Plaintiff's name is not John Doe.

And one detail ARB's memorandum never mentions: the form's own checkbox reads, "I acknowledge that I am not a resident of the following states: Florida, Georgia, Idaho, New York, North Carolina, Rhode Island, Washington." Plaintiff lives in one of those states — North Carolina, where ARB's own Form 1099 found him by mail (§ IV.A, infra). ARB has submitted, as proof that this customer clicked to agree, a form whose own terms say a customer in his state could not click it at all. Plaintiff has been told, motion after motion, that he has "failed to state a claim." Fourteen months in, it is ARB that has failed to state a defense: to whose signup Exhibit A depicts, to how a North Carolina resident its own checkbox excludes could be bound by it, or to a single element of claims involving hundreds of thousands of dollars. Its entire answer, so far, is a terms page.

Formation is therefore disputed on ARB's own exhibits — and formation is for this Court, not an arbitrator. The motion should be denied outright; in the alternative, Plaintiff, the party alleged to be in default, demands trial by jury of the making of the agreement under 9 U.S.C. § 4. (§ IV.F, infra.) ARB's papers contain no signature, no click record, no timestamp, and no assent artifact of any kind — yet its declarant swears he is familiar with "Modo's business records concerning user registration and acceptance of the Terms." (Fechtmeyer Decl. ¶ 2(e).) So the records that would decide this motion exist, by ARB's own oath — and ARB filed a blank form instead.

On the strength of that blank form, ARB asks to remove Plaintiff — alone among five defendants — to a private forum whose record is already written: there, his California claims were dismissed on the pleadings because the complaint his then-counsel filed contained "conclusory jurisdictional allegations" — the arbitrator made no finding about Plaintiff's

disability and reached the merits of nothing. (Interim Award, ECF 56-6; § IV.D, infra.) ARB's motion is therefore not a request for a different decision-maker; it is a request for none.

Three independent threshold grounds require denial:

1. Evidentiary void and shifting contracts (§§ IV.A–B). ARB's proof of assent is a blank signup exemplar whose own checkbox excludes North Carolina residents: it proves no assent, and it cannot identify which of ARB's contracts governs.

2. No arbitral finality (§§ IV.C–D). The "Interim Award" is non-final by its own terms and by ARB's counsel's own written admission — and it construed a different contract version than the one sworn operative here.

3. Formation is for this Court and a jury (§§ IV.C, IV.F). Under 9 U.S.C. § 4, threshold formation cannot be delegated, and where it is genuinely disputed it is triable to a jury on proper demand.

The sanctions request — aimed at a plaintiff ten days after the documented fee threats that preceded his lawyers' withdrawal, and days before he was left pro se — should be denied with the motion (§ IV.H).

The "election" of arbitration ARB attributes to Plaintiff was never his: he refused arbitration with ARB in writing four days before his first attorney filed the JAMS Demand, and forbade in writing — twice, on the day it happened — the amendment his second attorney filed anyway (§ IV.E, infra). ARB's own declaration quotes that second attorney telling ARB's counsel, seven weeks before this motion, that Plaintiff "wishes to pursue this matter federally only." (Alexander Decl. ¶ 6, ECF 56-8.) From his first pro se appearance, Plaintiff's position has been one sentence long: show me what I signed. Four forums and fourteen months later, ARB still has not. Nearly all of the evidence in this opposition originated with ARB itself: ARB's own papers do not carry ARB's motion — they carry the opposition to it.

## II. THE RECORD ARB FILED

**The account, and the contract ARB never produced**

ARB's Chief Executive swears Plaintiff's account was created "on or about August 2, 2024" (Fechtmeyer Decl. ¶ 10), and that Plaintiff "accepted the September 10, 2024 Terms via iPhone" (¶ 12 & Ex. B). On ARB's own transaction ledger, Plaintiff's purchases span nine separate days before September 10, 2024. (Joyce Decl. ¶ 5 & Ex. H.) The Terms in effect on the day of account creation — the only version that could evidence formation — ARB has never produced anywhere.

**Exhibit A**

As its proof of the signup process, ARB filed a blank form: "We need to gather a few details from you before you can start playing," followed by empty fields and an unchecked "I agree" box. (ECF 56-9 at 6; § IV.A, infra.)

**Seven answers to which contract governs**

What ARB told each audience, from ARB's own filings and postings:

• The Terms in effect at account creation (August 2, 2024) — never produced by ARB anywhere.

• The signup-era posted Terms — AAA arbitration, Orange County, Florida, Florida law — given to co-defendant Goldman Sachs as the operative contract. (§ IV.B, infra.)

• The September 10, 2024 Terms — JAMS, Scottsdale, Arizona — sworn to this Court. (¶ 12 & Ex. B.)

• The March 28, 2025 rewrite — demanded at lockout, refused three times in writing. (ECF 33 ¶¶ 83–91.)

• The seat where ARB actually filed its own demand — JAMS, Las Vegas, Nevada — a seat no version names. (ECF 33 ¶ 103.)

• The version the arbitration itself was conducted on — the March 28, 2025 document. (ECF 56-6 at 13; § IV.D, infra.)

• Terms "updated as of May 29, 2026" — posted the day this motion was filed — reaching "ANY PAST, PENDING, OR FUTURE DISPUTES" and moving the seat again, to Wilmington, Delaware. (Joyce Decl. ¶ 20 & Ex. L.)

**This case began in court**

Plaintiff's then-attorney filed in Contra Costa County Superior Court on May 5, 2025 — before any arbitration demand existed. (Mem. at 5.) Co-defendant Affirm removed the action on June 3, 2025 (ECF 33 ¶ 170); ARB was served November 10, 2025 (ECF 15 at 4), sought three extensions reciting the "ongoing arbitration" (ECF 15; ECF 25; ECF 49), and filed this motion on May 29, 2026 — some 200 days after service.

**The arbitration ARB relies on**

Plaintiff's first attorney filed the JAMS Demand — attaching the March 28, 2025 Terms Plaintiff had refused to sign — on May 9, 2025; his second attorney filed the Amended Demand on April 1, 2026 (§ IV.E, infra). On December 6, 2025, Plaintiff, then pro se, filed a Supplemental Submission raising the cross-forum contract problem (ECF 56-6 at 4); on May 13, 2026, the arbitrator issued an "Interim Award" (ECF 56-6; § IV.D, infra).

### III. LEGAL STANDARD

A party moving under 9 U.S.C. § 4 bears the burden of proving, by a preponderance of admissible evidence, that a specific agreement to arbitrate was formed with this specific plaintiff. The motion is evaluated under "the summary judgment standard of Rule 56" and may be granted only if there is no genuine dispute of material fact as to formation, with all reasonable inferences drawn for the non-movant. Hansen v. LMB Mortg. Servs., Inc., 1 F.4th 667, 670 (9th Cir. 2021). The "federal policy favoring arbitration" ARB invokes is "about treating arbitration contracts like

all others, not about fostering arbitration"; a court "must hold a party to its arbitration contract just as the court would to any other kind." Morgan v. Sundance, Inc., 596 U.S. 411, 418 (2022).

Arbitration requires an "express, unequivocal agreement" to arbitrate; where that is in doubt, the dispute goes to trial on proper demand. Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1141 (9th Cir. 1991). Whether "any agreement between the alleged obligor and obligee was ever concluded" is for the court, not an arbitrator. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 n.1 (2006); Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 296–303 (2010). Where the making of the agreement is in issue, § 4 does not permit resolution on paper: "the court shall proceed summarily to the trial thereof," and the party alleged to be in default "may … demand a jury trial of such issue." 9 U.S.C. § 4; Hansen, 1 F.4th at 672.

Plaintiff does not argue that any contract is void or unenforceable by reason of ARB's conduct or business. His argument is narrower and comes first: no agreement to arbitrate was ever formed. Formation is the one question the FAA reserves to this Court alone — and the one question ARB's motion never engages.

## IV. ARGUMENT

**A. ARB's own Exhibit A defeats the assent its declarant swears to.**

Fourteen months into this litigation, through the tenure of two attorneys, three applications to extend its time to respond — the last denied as moot (ECF 15; ECF 25; ECF 49; ECF 58) — and motion practice in which Plaintiff has been told he failed to state a claim, ARB has answered no element of any claim on its merits.

It has now filed its evidence. The strongest piece of evidence ARB has produced in this litigation is Exhibit A to its Chief Executive's declaration. Exhibit A is an empty form. The customer is "John Doe." The street is "1234 NW Bobcat Lane." The city is "San Francisco," the State is "CA," and the ZIP code is "90210," which is in Beverly Hills. The date of birth is

"MM/DD/YYYY." Neither box is checked. The "Next" button is greyed out. (ECF 56-9 at 6.)

ARB's formation case is Fechtmeyer Declaration ¶¶ 4–8: a generic description of a registration process, and the sworn statement that a user could not complete registration without checking "I agree with the Terms of Service and Sweepstakes Rules." The exhibit offered to prove it is that blank template. It records no event — a theory of how signup works, not a fact about what Plaintiff did. ARB's own authorities are against it: the clickwrap cases it cites (Mem. at 13, citing Nguyen v. Barnes & Noble Inc., 763 F.3d 1171, 1175–76 (9th Cir. 2014)) enforce agreements on evidence that a particular user in fact clicked after conspicuous notice — a record ARB does not produce.

And the template refutes the theory it was filed to prove. Its checkbox bars residents of North Carolina from registering. ARB's own records place this customer in North Carolina twice over. The Form 1099 ARB issued for his account is addressed to him at a North Carolina street address, mailed from ARB's return address in Miami, Florida. (Joyce Decl. ¶ 6 & Ex. I [Rule 5.2-redacted].) And ARB's own chargeback packet to co-defendant Goldman Sachs records, under "CUSTOMER INFORMATION," a billing city of "Chapel Hill" and a "State" entry of "NC." (Joyce Decl. ¶ 11 & Ex. M.) ARB has never had difficulty locating this customer when it wanted payment from him or reported him to the Internal Revenue Service; it produced an address belonging to no one only when asked to prove he agreed to arbitrate. A business whose records are precise enough for the Internal Revenue Service can generate an acceptance record, if one existed.

Plaintiff's name is not John Doe. Exhibit A carries no more weight than a blank sheet of paper — and unlike a blank sheet, it certifies that ARB's own signup process bars residents of the state ARB's own records place him in.

Nor does the seven-state exclusion exist in any version of ARB's actually-posted Terms; it

appears only on ARB's own exemplar templates — the form filed here, and the identical blank form ARB enclosed in the chargeback packets it sent co-defendant Goldman Sachs, beneath a footer disclaiming the contents as "an example of the customer journey" with "no warranty against error." (Joyce Decl. ¶¶ 10–13 & Ex. M.) ARB's own packet described this form to a bank the way Plaintiff describes it to this Court: an illustration, not a record. One of two things is true: either ARB's exhibit does not show what ARB certified it shows, or by ARB's own records no agreement could have been formed.

If ARB holds any artifact of assent — a click log, a timestamp, an IP entry — its own declaration says where it would live. The declarant swears familiarity with "Modo's business records concerning user registration and acceptance of the Terms." (Fechtmeyer Decl. ¶ 2(e).) He separately swears those records include "timestamps associated with acceptance, and the versions of the Terms accepted by users," kept "at or near the time of the events." (¶ 9.) ARB has had fourteen months and four forums in which to produce one. It has produced a blank form. At an absolute minimum — against Plaintiff's sworn denial (Joyce Decl. ¶¶ 2–3) — formation is genuinely disputed, and § 4 sends that dispute to a jury, not to Scottsdale.

ARB will answer with the operative complaint's recital that a "valid and enforceable contract" existed (ECF 33 ¶¶ 82, 256–258). Rule 8(d)(2)–(3) permits alternative and inconsistent pleading, and in this Circuit "a pleading should not be construed as an admission against another alternative or inconsistent pleading in the same case." Molsbergen v. United States, 757 F.2d 1016, 1019 (9th Cir. 1985). Those paragraphs — drafted by since-withdrawn counsel, carried verbatim from the original May 5, 2025 complaint, tracking ARB's representations about its own records rather than Plaintiff's knowledge — stand in the alternative, and Plaintiff has announced his intent to seek leave to amend (ECF 89 at 6), the very course this Court's first scheduling order directed: "an amended complaint, whether by stipulation or motion." (ECF 27.)

A recital of counsel cannot supply the click log, timestamp, or acceptance record that ARB's declarant swears exist — the movant's burden is proof of an agreement by a preponderance of the evidence. Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014). Nor can ARB recast Plaintiff's three written refusals as an untimely "opt-out" under § H(2): an opt-out clause presupposes a formed agreement, and a refusal to assent is evidence there was none — there was nothing to opt out of.

**B. ARB cannot say which contract it is enforcing — and the one that could prove formation is the one it has never produced.**

Where parties have agreed to two contracts, "a court must decide which contract governs." Coinbase, Inc. v. Suski, 602 U.S. 143, 149–50 (2024). ARB's own filings and postings give that question at least seven different answers — spanning five distinct terms documents and four different seats (§ II, supra). ARB tells each audience that whichever version helps it most is the real one — and this Court is simply the next audience.

Three points dispose of ARB's theory. First, the September 10, 2024 document cannot be the formation contract: the account predates it by five weeks (Fechtmeyer Decl. ¶ 10), and Plaintiff's purchases predate it on nine separate days in ARB's own ledger. The parties' relationship and ARB's receipt of Plaintiff's money began under some other instrument — the one ARB withholds.

Second, a drafter's posted revision "is merely an offer"; a customer has "no obligation to check the terms on a periodic basis," and continued use is not assent to terms he was never shown. Douglas v. U.S. Dist. Court (Talk America), 495 F.3d 1062, 1066 (9th Cir. 2007). Retroactive, notice-free rewriting at will does not create a formed agreement the drafter can enforce. ARB's shifting seats tracked regulatory enforcement actions across multiple state jurisdictions. (Ariz. Dep't of Gaming directive, Apr. 17, 2025; Ill. Gaming Bd. cease-and-desist, Feb. 4, 2026; Joyce Decl. ¶ 21 & Exs. Q, R.)

PLAINTIFF'S OPPOSITION TO ARB MOTION TO COMPEL ARBITRATION; DEMAND FOR JURY TRIAL UNDER 9 U.S.C. § 4 - 9

Third, ARB's own conduct concedes the assent rule it now denies: at the April 2025 lockout it conditioned release of Plaintiff's funds on signing the March 28, 2025 rewrite, was refused three times in writing — "I'm not signing any new terms and conditions" — and released the funds anyway. (ECF 33 ¶¶ 83–91.) The gate exists when it helps ARB and vanishes when it does not.

The declarant's answer — that the arbitration and delegation provisions in every version are "materially and substantively identical in all relevant respects" (¶ 16) — is impeached by ARB's own documents: AAA became JAMS; Orange County, Florida became Scottsdale, Arizona, became Wilmington, Delaware; Florida law became Arizona law became Delaware law. On a motion to compel JAMS arbitration in a specific seat, the identity of the administrator, the seat, and the governing law are the most relevant respects there are.

ARB's notice also asks the Court to compel "all claims asserted in this action" and to dismiss "this duplicative action" (ECF 56 at 2) — wholesale relief reaching co-defendants Goldman Sachs, Apple, Affirm, and Amazon, each with its own counsel and pending motion; ARB cites no authority allowing one defendant to sweep co-defendants' claims into its own arbitration, because there is none.

ARB's dealings with co-defendant Goldman Sachs make both problems concrete. In April 2025 — seven months after the September 2024 Terms its declarant swears govern — ARB answered Goldman Sachs's chargeback inquiries by submitting its superseded signup-era AAA/Orange County, Florida terms as the operative contract, in packets transmitted, by Plaintiff's sworn account, with his disputes and all three refiled disputes — while telling JAMS and this Court that other versions control. The packet is lodged with his declaration. Its terms page is the signup-era version — numbered "Section G," providing that "the arbitration will be held in Orange County, Florida" under AAA administration — while the version ARB swears

governs here numbers the same provision "Section H" and names JAMS in Scottsdale. (Joyce Decl. ¶¶ 10–13 & Ex. M; cf. Ex. K-2 § H.) A movant that cannot tell a bank and a court the same thing about which contract governs cannot carry its § 4 burden to prove which agreement to arbitrate was formed, Suski, 602 U.S. at 149–50 — and ARB's course of conduct with its co-defendant bank cannot be confined to a one-defendant arbitration.

**C. Formation is for this Court; ARB's delegation theory presupposes the very contract whose existence is disputed.**

ARB's delegation argument (Mem. at 12–14) runs in a circle. A delegation clause is itself an agreement; it can allocate questions only if it was formed; it cannot establish its own existence. Ahlstrom v. DHI Mortg. Co., 21 F.4th 631, 634–35 (9th Cir. 2021) (parties cannot delegate formation to the arbitrator); Granite Rock, 561 U.S. at 296–303. Delegation requires "clear and unmistakable" evidence, First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995) — and a clause that never mentions formation cannot clearly and unmistakably delegate it.

The September 2024 delegation sentence ARB relies on reaches "enforceability, validity, scope or severability" (ECF 56-6 at 18, quoting the clause) — it omits formation and existence. Incorporated arbitral rules cannot supply the gap for the same reason: incorporation-by-reference presupposes the very contract whose existence is disputed. A rulebook referenced by an unformed contract binds no one. Plaintiff challenges the arbitration and delegation provisions specifically — he never agreed to either — which keeps the question here under ARB's own authority. Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 70–72 (2010).

The arbitrator's rulings do not change the allocation: she decided validity and enforceability questions, expressly retaining the illegality question "to be resolved in this arbitration" (ECF 56-6 at 18) — a question properly hers under Buckeye once an agreement exists. Formation she never decided: it remains untouched, reserved, and this Court's alone. Buckeye, 546 U.S. at 444 n.1.

PLAINTIFF'S OPPOSITION TO ARB MOTION TO COMPEL ARBITRATION; DEMAND FOR JURY TRIAL UNDER 9 U.S.C. § 4 - 11

**D. The Interim Award earns no deference: it is interim by its own terms, non-reviewable by ARB's own argument — and it construed a different contract than the one sworn operative here.**

ARB's lead argument is that "[t]he Parties Already Litigated the Issue of Arbitrability" (Mem. at 10), invoking the deference owed final arbitral awards under Kyocera Corp. v. Prudential-Bache Trade Servs., Inc., 341 F.3d 987, 998 (9th Cir. 2003) (en banc). That standard governs judicial review of final awards; there is none here, on the arbitrator's say-so and on ARB's.

The arbitrator wrote that "Respondent is not entitled to a final award because Claimant is correct that the March 4th Order was an interlocutory order[.]" (ECF 56-6 at 28.) And: "It is not intended that this Interim Award be subject to review pursuant to the FAA, 9 U.S.C. Sections 10-12." (Id. at 30.)

ARB's own counsel, three weeks before this motion, in writing, to the arbitrator: "a federal court lacks authority to review the Order because it is not a final award" — and, citing his own authority, "where an order retains the arbitrator's jurisdiction to determine substantive issues, the order is not final and not subject to review by the court." (Saurack Letter, May 4, 2026, at 2; Joyce Decl. ¶ 19 & Ex. G.) ARB brought the arbitration's papers into this public record by its own Request for Judicial Notice. (ECF 56-2.) Having published the proceedings when they help it, ARB cannot object to Plaintiff's declaration completing the same record with the parts ARB omitted — beginning with its own counsel's letter swearing the order is not final.

A party may not describe one order as beyond judicial review in one forum and dispositive in another. New Hampshire v. Maine, 532 U.S. 742, 749–51 (2001); Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 782–83 (9th Cir. 2001). Nor could this Court review the order if it wished: FAA § 10 reaches only final awards, and an award acquires the force of a judgment upon confirmation, 9 U.S.C. § 13; NTCH-WA, Inc. v. ZTE Corp., 921 F.3d 1175 (9th

Cir. 2019) — and nothing has been confirmed or moved for confirmation.

And there is a mismatch more basic still: the proceeding that produced the order was conducted on the document "entitled 'Terms & Conditions Last Updated: March 28, 2025'" (ECF 56-6 at 13; § II, supra), while the motion before this Court swears the operative contract is dated September 10, 2024. An order positioned beyond every avenue of review, about a version ARB itself disavows here, is entitled to no deference from the one court ARB now asks to honor it. It is the shield ARB chose; it cannot also be ARB's sword.

The Award's treatment of the disability claims forecloses nothing either. ARB argued there that "gambling disorders are not a recognized disability under California or Arizona law" (ECF 56-6 at 19) — a straw man: Plaintiff's diagnosed disability is bipolar disorder, and the compulsive gambling ARB cultivated was a symptom of that condition, not the condition itself. 42 U.S.C. § 12211(b)(2) excludes compulsive gambling as a disability; it does not exclude a person with bipolar disorder whose episodes manifest in gambling. The California claims were dismissed with prejudice on cognizability grounds, without a word of merits analysis (ECF 56-6 at 22), and Plaintiff has announced his intent to conform the pleading. (ECF 89 at 6.)

**E. The "election," "waiver," and "acquiescence" story is refuted by Plaintiff's unbroken written record — and by ARB's own declaration.**

ARB quotes the arbitrator's findings that the arbitration agreement is "mandatory, valid and enforceable" and that Plaintiff "has invoked the jurisdiction of this arbitral forum and has waived any argument his remaining claims should not be arbitrated." (Mem. at 8, 10, quoting the Interim Award, ECF 56-6 at 28–29.)

First, those findings live inside the same order ARB swore is "not final and not subject to review by the court" (§ D supra). They cannot be too interim to review and too binding to question. Even were some finding final — none is — a record built by counsel filing against the client's express written instructions is not the full and fair opportunity to litigate that preclusion

presupposes.

Second, the "waiver" finding is, by its own terms, about "his remaining claims" — the claims then remaining in that proceeding — not about whether an agreement to arbitrate was ever formed, a question the arbitrator never had (§ C supra). To whatever extent ARB asks this Court to find waiver or acquiescence afresh, waiver is "the intentional relinquishment or abandonment of a known right," and no arbitration-favoring presumption softens that showing. Morgan, 596 U.S. at 417–19. The intent Morgan requires must be Plaintiff's own.

Plaintiff's written record is unbroken:

• May 5, 2025 — four days before the Demand — Plaintiff instructed his first attorney in writing: "Will not arbitrate vs ARB interactive llc." (Joyce Decl. ¶ 15 & Ex. N-1.)

• May 7–9, 2025 — counsel initiated a new JAMS case and, on May 9, 2025, filed the Demand over that written refusal. (§ II, supra.)

• August 29, 2025 — Plaintiff wrote: "With that being said I have wanted this knocked out of binding arbitration since day one." Counsel's written answer, August 30, 2025: "That's not true. Even if you have a federal or state lawsuit, they will compel Arbitration. You have an Arbitration clause in the contract with them. This is your path forward …" (Id.)

• April 1, 2026 — at 11:04 a.m., Plaintiff wrote his second attorney: "Please don't submit anything until we decide on this." Her reply: "Received." At 3:58 p.m.: "Do not file the amended JAMS demand. I do not authorize its submission. … Please confirm … that nothing will be filed in any forum without my express written approval." Her reply, 4:03 p.m.: "Nothing will be filed." That same evening counsel wrote: "I already just filed this and confirmed with you guys at 9:38PM." The Amended Demand was on file. (Joyce Decl. ¶ 17 & Exs. O-3, O-4, F.)

• April 6, 2026 — Plaintiff's second attorney to ARB's counsel: "My client is withdrawing from JAMS as of today… He wishes to pursue this matter federally only." (ECF 56-8, Ex. A

PLAINTIFF'S OPPOSITION TO ARB MOTION TO COMPEL ARBITRATION; DEMAND FOR JURY TRIAL UNDER 9 U.S.C. § 4 - 14

(email dated Apr. 6, 2026); cf. Alexander Decl. ¶ 6 (dating the same email April 5).)

Plaintiff, as holder of the privilege, discloses these specific communications on the discrete subject of authorization to initiate and amend the arbitration; no broader waiver is intended, and Rule 502(a) confines any waiver to disclosures that "ought in fairness" be considered together on that same subject.

Counsel cannot bind a client to arbitration, or waive substantial rights, against the client's contemporaneous written objection. Blanton v. Womancare, Inc., 38 Cal. 3d 396, 404–08 (1985); Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630–31 (2009) (state agency law governs). The general rule that a litigant is bound by chosen counsel's conduct presupposes conduct within counsel's authority. Link v. Wabash R.R. Co., 370 U.S. 626, 633–34 (1962). And a client "cannot be charged with the acts or omissions of an attorney who has abandoned him." Maples v. Thomas, 565 U.S. 266, 283 (2012). Plaintiff's first attorney — who filed the Demand over his written refusal — was disbarred in California (Nov. 8, 2025) and terminated as counsel of record (ECF 13, 14).

Third, ARB's own papers tell this Court what Plaintiff actually elected. Its declaration documents his position through the eve of this motion: the April 6 withdrawal notice quoted above — "federally only" — and, on May 15: "My client does not agree to dismiss his Federal Court complaint against ARB. He is aware of the sanction." (ECF 56-8, Ex. A at 4.) The only arbitration-affirming act in that window — the April 1 Amended Demand — was counsel's, taken the same day Plaintiff forbade it in writing. A movant's own evidence cannot carry a preclusion or waiver argument it contradicts. ARB filed a declaration swearing Plaintiff chose this Court, attached to a motion swearing he chose arbitration. The tell is who never relied on the supposed election: Affirm — the co-defendant that removed this very action — has never moved to compel arbitration; its motion seeks dismissal. (ECF 60.) The one time Plaintiff deferred to counsel's

arbitration advice, no defendant wanted it; now that he stands alone, ARB insists he elected it.

Once the Demand was on file, Plaintiff dealt with the proceeding that existed, objecting in writing on August 28, August 29, and September 2, 2025. (Joyce Decl. ¶ 16.) Engaging under protest with a proceeding one's own lawyer filed over one's written refusal is not acquiescence, not waiver, and not an election. This history is not formation evidence — formation rises or falls on ARB's own exhibits (§§ A–B supra) — but it answers ARB's election story.

**F. Plaintiff's sworn denial places formation genuinely in issue — the motion should be denied outright; in the alternative, Plaintiff demands a jury.**

Against Plaintiff's § 1746 declaration — never knowingly accepted any terms, never signed, never saw the September 10 Terms before this dispute, three written refusals answered by release of his funds (Joyce Decl. ¶¶ 2–3, 14) — ARB offers a declarant with no click record, describing a registration process generically, authenticating a contract dated five weeks after the account, whose own "signup proof" is a blank form barring North Carolinians. A sworn denial of assent, met by an evidentiary void, is the definition of a genuine dispute. Hansen, 1 F.4th at 670–72. On this record the Court can deny the motion outright: ARB has not produced evidence on which any reasonable factfinder could find a formed agreement. Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 855 (9th Cir. 2022).

**ARB cannot show its own opt-out window ever opened, much less closed**

The September 10 Terms do not make arbitration unconditional. They make it defeasible. A customer "may decline this agreement to arbitrate by sending written notice of your decision to opt out to" a Scottsdale, Arizona address, "within thirty (30) days after first becoming subject to these Terms." (Joyce Decl. ¶ 8 & Ex. K-2, at 14.) By ARB's own drafting, the agreement binds only if that window opened and ran — and it can open only on the date of an acceptance ARB has never produced. ARB therefore cannot establish when the thirty days began, that they ever expired, or that Plaintiff failed to use them. A movant carrying the § 4 burden cannot prove a

condition of its own contract measured from a date it has never identified.

The exit itself also moved. Under the signup-era Terms a customer opted out by emailing "arbitrationoptout@modo.us." (Joyce Decl. ¶ 8 & Ex. K-1, at 14.) The September version replaced that with written notice mailed to a street address in Scottsdale, and added that a customer who did not use the new method "is ineligible to opt-out." (Id. & Ex. K-2, at 14.) A customer holding the version he was shown would have declined arbitration by a route the later document no longer recognizes. Under Douglas, that later posting was "merely an offer," and Plaintiff had "no obligation to check the terms on a periodic basis." 495 F.3d at 1066. ARB moved the escape hatch without notice, and now asks this Court to hold Plaintiff to the door he was never shown.

Should the Court instead conclude the making of the agreement is in issue, the FAA directs what happens next: the Court "must proceed without delay to a trial on arbitrability and hold any motion to compel arbitration in abeyance until the factual issues have been resolved." Hansen, 1 F.4th at 672.

## DEMAND FOR JURY TRIAL UNDER 9 U.S.C. § 4

Plaintiff's primary position is that no agreement was formed as a matter of law and the motion must be denied outright; in the alternative, if the Court concludes the making of the agreement is in issue, Plaintiff — the party alleged to be in default — hereby demands trial by jury of that issue under 9 U.S.C. § 4. This demand is made timely, with and as part of this opposition, on or before the return day of ARB's application. The demand is unconditional as a demand; it is alternative only as to relief.

The formation issues for the jury include: (1) whether Plaintiff ever saw, clicked, or otherwise accepted the September 10, 2024 Terms ARB swears are operative (Fechtmeyer Decl. ¶ 12 & Ex. B); (2) which terms document, if any, was in force when the account was created and

when Plaintiff's first purchases were made on ARB's own ledger; and (3) whether any act of Plaintiff unambiguously manifested assent, given that ARB's own signup exhibit bars North Carolina residents from registering (ECF 56-9 at 6). The trial § 4 contemplates is confined to the making of the agreement, Prima Paint Corp. v. Flood & Conklin Mfg. Co., 388 U.S. 395, 404 (1967) — Plaintiff seeks no merits determination within it.

**G. Even if an agreement had been formed, the seat term ARB invokes is mandatory by its own text — and it is a seat ARB itself never used and can no longer offer.**

The version sworn operative here does not treat venue as a preference; it mandates it: "except to the extent prohibited under JAMS Consumer Minimum Standards … the arbitration will be held in Scottsdale, Arizona or, at your election, conducted via telephone or other remote electronic means." (ECF 56-9, Ex. B, § H.) The remote alternative is Plaintiff's election, not ARB's — and it changes the medium, not the seat.

The seat has not held still. ARB first seated arbitration in Orange County, Florida — a state its own signup form turns away: "the arbitration will be held in Orange County, Florida, or, at your election, conducted via telephone or other remote electronic means." (Joyce Decl. ¶ 7 & Ex. K-1, at 15.) It moved the seat to Scottsdale, Arizona (id. ¶ 7 & Ex. K-2, at 15), where, on April 17, 2025, the Arizona Department of Gaming named "ARB Gaming, LLC d/b/a Modo.us" and directed it to "immediately cease all online (or other) gambling operations and activities in Arizona." (Id. ¶ 21 & Ex. Q.) It filed its own demand in Las Vegas, Nevada — a seat no version of its Terms has ever named. (ECF 33 ¶ 103.) On February 4, 2026, the Illinois Gaming Board wrote ARB that it "has neither licensed nor authorized Modo to engage in online gambling activity" and demanded that it stop. (Joyce Decl. ¶ 21 & Ex. R.) The day this motion was filed, ARB posted Terms moving the seat again, to Wilmington, Delaware. (Id. ¶ 20 & Ex. L.) Nevada and Delaware both appear on the September 10 Terms' own "Excluded Territory" list. (ECF 56-9, Ex. B, Definitions.)

Each time the ground moved, ARB moved the room. A document that changes whenever the law approaches is not evidence of a meeting of minds; it is evidence of a document that was never about one. A forum-selection term is unenforceable where enforcement would be unreasonable — including where the selected forum is one the movant itself has abandoned and no longer operates in. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). The specific, mandatory seat ARB asks this Court to order does not exist for ARB anymore — its own filing choice, its own regulator's directive, and its own rewrites all concede it. A court cannot compel performance of a venue clause its movant has already walked away from.

**H. The sanctions request should be denied — and fault, if it must be located, is documented in ARB's own exhibit.**

ARB seeks "at least $30,170" — twenty-five hours at $800 and nine at $1,130 (Alexander Decl. ¶¶ 12–14) — under 28 U.S.C. § 1927 and the Court's inherent power, from a pro se plaintiff with a diagnosed disability and court-granted accommodations (ECF 73; ECF 82). Section 1927 requires unreasonable and vexatious multiplication of proceedings — subjective bad faith, i.e., a knowing or reckless assertion of a frivolous position, B.K.B. v. Maui Police Dep't, 276 F.3d 1091, 1107 (9th Cir. 2002); inherent-power sanctions require bad faith. Chambers v. NASCO, Inc., 501 U.S. 32, 45–46 (1991). Neither exists — this Court's own orders say so.

The sequencing ARB brands "duplicative" is the sequencing ARB itself designed: a stipulation drafted on ARB's counsel's own pleading paper, filed the day after she appeared (ECF 25), and adopted by this Court. ECF 27 ¶ 4: ARB's "Arbitration Motion … may be filed and heard first," with remaining Rule 12 motions to follow any denial (¶ 5). Plaintiff has proceeded on schedules this Court set, on motions this Court twice extended "for good cause" (ECF 81; ECF 92). Opposing a motion the Court's own scheduling order contemplated — on formation grounds drawn from Granite Rock, First Options, and Ahlstrom — is the opposite of vexatious multiplication, whoever the litigant. A defendant cannot stipulate to a schedule and then bill the

PLAINTIFF'S OPPOSITION TO ARB MOTION TO COMPEL ARBITRATION; DEMAND FOR JURY TRIAL UNDER 9 U.S.C. § 4 - 19

plaintiff for following it.

The declaration supporting the request documents its own timeline. ARB announced its fee theory at the first meet-and-confer (¶¶ 3–4); repeated it in writing (¶ 7) and again by phone on May 19 (¶ 8); and "[a]pproximately 90 minutes" later, Plaintiff's counsel announced her withdrawal (¶ 9). Its Exhibit A shows a draft sanctions motion already circulating before any motion was filed ("Client wants a copy of the draft motion for sanctions"), and ARB's counsel instructing the departing attorney, as to a pleading that belongs to neither ARB nor Plaintiff, "Please also make sure you withdraw/dismiss the interpleader complaint before you withdraw from this case." Ten days later ARB filed this motion, with a footnote stating that ARB is "presently requesting sanctions be imposed against Plaintiff only given that his counsel has requested leave to withdraw." (ECF 56-8 at 5 n.1.) The fee demand now aimed at the pro se plaintiff was the instrument, in ARB's own exhibit, that preceded his becoming one. That instruction was also not ARB's to give, and it was not followed. The interpleader complaint belongs to a separate claimant who has never been in any agreement with ARB; it remains pending in this Court, set for hearing on August 5, 2026. Counsel did not dismiss it, and she did not withdraw as that claimant's attorney: her notice of termination was rejected because Local Rule 182(d) requires a noticed motion (ECF 87), and the motion she then filed is undecided (ECF 88). Her "authority and duties continue" until this Court orders otherwise. L.R. 182(d). What ARB's exhibit records, then, is opposing counsel directing plaintiff-side counsel on which claims would leave this Court before she left the case — as to a pleading in which ARB holds no stake, in an action ARB asks this Court to send elsewhere.

The fee theory also presupposes a final, preclusive arbitral result — the very thing ARB's own counsel told the arbitrator does not exist (§ D supra). A sanctions request built on an order "not final and not subject to review by the court" collapses with its premise. Fourteen months,

four forums, and a $30,170 sanctions demand rest on that form.

If fault must be located, the Ninth Circuit's instruction is that "sanctions should be imposed on the lawyer, rather than on the faultless client." Cmty. Dental Servs. v. Tani, 282 F.3d 1164, 1170 (9th Cir. 2002). The JAMS Demand? Filed by former counsel four days after Plaintiff wrote, "Will not arbitrate vs ARB interactive llc." (Joyce Decl. ¶ 15 & Ex. N-1.) The JAMS "election"? Former counsel's amendment, filed the same day Plaintiff forbade it in writing (§ E supra). The "duplicative" federal posture is the product of a removal by a co-defendant. Plaintiff is the only participant in this litigation who objected to his own lawyers' filings in writing, in both directions, under both attorneys — and ARB aims a $30,170 demand at him in the same weeks it assured this Court it supports his "meaningful access to these proceedings." (ECF 75 at 2.) The request should be denied.

## V. CONCLUSION

More than fourteen months into this litigation, ARB has yet to answer one element of one claim on its merits. Its theory of this litigation is a terms page it has swapped for every audience: one version for its co-defendant bank, another for the arbitrator, another sworn to this Court, another posted the day this motion was filed. Even its supporting declarations carry recycled captions naming a non-party — "B2SERVICES OU dba MCLUCK" — reciting a "Class Action Filed: June 30, 2025" that does not exist in this case and, in the Fechtmeyer Declaration, omitting three of the five defendants. (ECF 56-8 at 1; ECF 56-9 at 1; cf. ECF 33.)

The motion proceeds as if this Court's function were ministerial — as if an Article III court were the enforcement desk for whichever terms page ARB most recently posted. It is not.

ARB asks this Court to enforce a September 2024 contract nobody signed, proved by a blank form its own terms say Plaintiff could not complete, under deference owed to an award that does not exist, about a version ARB disavows here, based on an "election" made for Plaintiff

PLAINTIFF'S OPPOSITION TO ARB MOTION TO COMPEL ARBITRATION; DEMAND FOR JURY TRIAL UNDER 9 U.S.C. § 4 - 21

twice by lawyers he countermanded in writing — while ARB's own declaration quotes him choosing this Court under threat of the very fee demand it now aims at him. ARB was asked, four forums and fourteen months ago, to show Plaintiff what he signed. It has answered with a blank form and a bill. Fourteen months later, its best evidence is a page ARB's own terms say its customer could not complete — and its best argument is that no one would check.

Two things this motion is not about. Plaintiff does not seek in this action to recover any amount he wagered or lost on ARB's platform; the relief he seeks from ARB is measured by what ARB collected from him, what ARB reported to the Internal Revenue Service in his name, and what followed for his credit, his business, and his household. (Joyce Decl. ¶ 23.) And the disability he pleads is bipolar I disorder — of which his gambling was a manifestation, not the disability itself. 42 U.S.C. § 12211(b)(2); Cal. Gov't Code § 12926(j)(5). The arbitrator reached neither question, and neither is before this Court on a motion about formation.

The motion to compel should be denied because ARB has not carried — has not attempted — its burden to prove a formed agreement to arbitrate. If the Court concludes the making of the agreement is in issue, Plaintiff renews his demand for trial by jury under 9 U.S.C. § 4 (§ IV.F supra) — put the question to a jury, and Plaintiff will meet ARB there. The sanctions request should be denied in full.

Plaintiff appears without counsel by necessity; he does not appear without a record. He intends to litigate this matter to conclusion and to pursue every avenue of review available to him.

ARB has had fourteen months and four forums in which to produce one artifact of assent, and has produced a blank form. What it seeks now is not a different decision-maker but delay — and a closed proceeding in Scottsdale where a single unrepresented claimant would face it alone, and where, as ARB's own award shows, no one reached his disability at all. That is not an agreement being enforced. It is an accounting being avoided.

Respectfully submitted,

DATED: July 28, 2026

Signed by:

Matthew Joyce

07B601B840D34AB

Matthew Joyce
Plaintiff, Pro Se
600 Market Grove Dr #100
Wake Forest, NC 27587
Phone: (919) 259-4661
Email: m.joyce07@proton.me

Matthew Joyce
600 Market Grove Drive #100
Wake Forest, NC 27587-7345
(919) 259-4661
m.joyce07@proton.me
Plaintiff, Pro Se

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| MATTHEW JOYCE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ARB GAMING LLC dba MODO.US;<br>AFFIRM, INC.;<br>GOLDMAN SACHS BANK USA;<br>APPLE INC.;<br>AMAZON.COM, INC.,<br><br>Defendants. | Case No.  2:25-cv-01868-DJC-CSK (PS)<br><br>**DECLARATION OF MATTHEW JOYCE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT ARB GAMING LLC'S MOTION TO COMPEL ARBITRATION, TO DISMISS, OR TO STAY (ECF 56)**<br><br>Hearing: August 25, 2026, 10:00 a.m.,<br>Courtroom 25 (Zoom) — Hon. Chi Soo Kim |

I, Matthew Joyce, declare:

1. I am the Plaintiff in this action and I represent myself. I make this declaration from my own personal knowledge, and if called as a witness I could and would testify competently to each fact stated in it. Except where I state otherwise, each exhibit attached to this declaration is a true and correct copy of a document I sent, received, obtained, or preserved, as it appears on its face.

## I. WHAT I DID AND DID NOT AGREE TO

2. I never knowingly accepted any version of ARB's Terms of Use. I never signed any version. I never clicked a checkbox, button, or other mechanism to accept the version dated

September 10, 2024, and I had not seen that document before this dispute arose.

3. ARB has never shown me a record of any act of assent by me to any version of its Terms — no signature, no click record, no timestamp, and no acceptance entry — in this Court, in the arbitration proceeding, in the chargeback correspondence I received, or in any communication with me.

4. I registered a Modo.us account in August 2024. My first purchase on the platform was on August 25, 2024. I had signed up some time before that first purchase.

## II. ARB'S OWN RECORDS

5. ARB sent me a transaction ledger for my account, listing each purchase by payment identifier, date, time, status, and amount. I requested my account records from ARB and ARB provided this ledger to me. A true and correct copy is attached as **Exhibit H**. The earliest entry on that ledger is August 25, 2024, marked "APPROVED," in the amount of $299.99. The ledger reflects purchases on nine separate days before September 10, 2024: August 25, August 26, and August 31, 2024, and September 1, 2, 3, 6, 7, and 8, 2024. Every entry is associated with the user identifier `google-oauth2|113980842547913751449` and the email address `crash07222@gmail.com`, which is mine.

6. ARB issued a Form 1099-MISC for my account for calendar year 2025. It identifies the payer as "ARB Gaming, LLC / Modo.us PO Box 449 / Miami, FL 33139," reports $61,614.66 in Box 3 ("Other income"), and is addressed to "Matthew Thomas Joyce" — that is me — at a street address in Chapel Hill, North Carolina. A true and correct copy, redacted under Federal Rule of Civil Procedure 5.2, is attached as **Exhibit I**.

## III. THE TERMS ARB POSTED, AND THE EXITS IT MOVED

7. Attached as **Exhibits K-1, K-2, and K-3** are copies of three different versions of ARB's

DECLARATION OF MATTHEW JOYCE — OPPOSITION TO ARB MOTION TO COMPEL - 2

Terms, each of which is a true and correct copy of the document as it appears. I did not receive notice from ARB that any of these versions had replaced another. Each bears its own "Last Updated" date on its face: March 4, 2024 (Exhibit K-1); September 10, 2024 (Exhibit K-2); and March 28, 2025 (Exhibit K-3). Exhibit K-1 provides for arbitration administered by the American Arbitration Association. Exhibits K-2 and K-3 provide for arbitration administered by JAMS.

8. The opt-out provisions in these versions are not the same. Exhibit K-1, at page 14, states that a customer "may decline this agreement to arbitrate by contacting arbitrationoptout@modo.us within 30 days of first accepting these Terms." Exhibit K-2, at page 14, states that a customer "may decline this agreement to arbitrate by sending written notice of your decision to opt out to: ARB Gaming LLC, Attn: Arbitration Opt-Out, 13802 N Scottsdale Rd Suite 151-94 Scottsdale AZ 85254-3403, within thirty (30) days after first becoming subject to these Terms." No one at ARB ever told me that the method of declining arbitration had changed from an email address to a postal address, and I never received notice that any version of the Terms had been revised.

9. Exhibit K-2 also states, at page 14, that "all of your activity on the Platform and all of your transactions with Modo, including all events which occurred before your acceptance of the Terms, shall be subject to this Section H."

### IV. WHAT ARB SENT MY CARD ISSUER

10. In the spring of 2025 I filed billing disputes on my Apple Card account, which is issued by co-defendant Goldman Sachs Bank USA. In connection with those disputes I received the response packet ARB submitted to the bank. A true and correct copy of three pages of that packet is attached as Exhibit M, which I have excerpted from the packet as I received and preserved it.

11. The first page of Exhibit M is a page of ARB's submission captioned "DATA

DECLARATION OF MATTHEW JOYCE — OPPOSITION TO ARB MOTION TO COMPEL - 3

INTELLIGENCE AND VALIDATION EVIDENCE." Under "CUSTOMER INFORMATION" it records my name, a billing address of "170 Manordale Drive," a billing city of "Chapel Hill," and, in the field marked "State," the entry "NC."

12. The second page of Exhibit M is a signup form ARB enclosed in the same packet. No customer field on it is filled in and it bears no signature of mine. It contains a printed line reading: "I acknowledge that I am not a resident of the following states: Florida, Georgia, Idaho, New York, North Carolina, Rhode Island, Washington." A printed annotation on the same page reads: "Customer must check a box to confirm that they agree to the terms of service."

13. The third page of Exhibit M is a page of terms ARB enclosed in the same packet, captioned "Terms and Conditions," which ARB submitted to the bank as the terms governing my purchases.

## V. THE LOCKOUT AND MY WRITTEN REFUSAL

14. In April 2025 I could not access my Modo.us account or obtain my funds unless I accepted a rewritten version of ARB's Terms. On April 8, 2025 at 4:39 p.m. I wrote to `support@modo.us` and `vip@modo.us`: "Im not signing any new terms and conditions. I will request what terms have changed. Or I will turn it over to a contract attorney to see. Pay me my pending redemption and anything left in my play account." A true and correct copy is attached as Exhibit J. ARB thereafter released my funds. It never obtained my signature or my acceptance of the rewritten Terms.

## VI. THE ARBITRATION FILINGS I DID NOT AUTHORIZE

15. On May 5, 2025, I wrote to my first attorney: "Will not arbitrate vs ARB interactive llc." A true and correct copy is attached as **Exhibit N-1**. She filed a Demand for Arbitration with JAMS on May 9, 2025.

16. After the Demand was filed I continued to object in writing to arbitrating my claims

DECLARATION OF MATTHEW JOYCE — OPPOSITION TO ARB MOTION TO COMPEL - 4

against ARB. On August 28, 2025 I wrote to my first attorney: "With that being said I have wanted this knocked out of binding arbitration since day one." On August 29, 2025 I wrote: "There is no point in scheduling a time until we make it clear that we will be showing cause on why binding arbitration is not enforceable," and "If not I'm ready to fight this in the eastern district." On August 30, 2025 she answered in writing: "That's not true. Even if you have a federal or state lawsuit, they will compel Arbitration. You have an Arbitration clause in the contract with them. This is your path forward unless they stipulate not to arbitrate, or you file a dispositive motion before arbiter." On September 2, 2025 I wrote: "I don't want to get it thrown out of arbitration. I want to show them why it can't be binding arbitration at best non-binding."

17. On April 1, 2026 at 3:58 p.m. Eastern I sent my second attorney a message captioned "DO NOT FILE - Client Directive," which stated: "Do not file the amended JAMS demand. I do not authorize its submission," and asked her to "confirm that nothing will be filed in any forum without my express written approval." A true and correct copy is attached as **Exhibit O-3**. At 4:03 p.m. she replied: "Nothing will be filed." A true and correct copy is attached as **Exhibit O-4**. That same evening I received a JAMS Access notification stating that an Amended Demand for Arbitration had been uploaded to the case at 9:37 p.m. Eastern by my attorney, which she forwarded under the one-word message "Filed." A true and correct copy is attached as **Exhibit F**.

18. I never approved, authorized, or ratified the Amended Demand for Arbitration, before or after it was filed.

### VII. ARB'S POSITIONS IN THE ARBITRATION AND AFTER

19. On May 4, 2026, ARB's counsel submitted a letter to the arbitrator, Hon. Peggy A. Leen (Ret.), in the JAMS proceeding. I received a copy in that proceeding. The letter states at page 2 that "a federal court lacks authority to review the Order because it is not a final award," and that "where an order retains the arbitrator's jurisdiction to determine substantive issues, the

DECLARATION OF MATTHEW JOYCE — OPPOSITION TO ARB MOTION TO COMPEL - 5

order is not final and not subject to review by the court." A true and correct copy is attached as **Exhibit G.**

20. Attached as **Exhibit L** is a true and correct copy of a further version of ARB's Terms of Use, bearing on its face the notice that they "have been updated as of May 29, 2026, and shall supersede and replace all prior Terms of Use." Those Terms state that they include an arbitration agreement reaching "ANY PAST, PENDING, OR FUTURE DISPUTES BETWEEN YOU AND US," and provide that "the arbitration will be held in Wilmington, Delaware." I was never notified of this version either.

21. Attached as **Exhibit Q** is a true and correct copy of a news release of the Arizona Department of Gaming dated April 17, 2025, captioned "Arizona Department of Gaming Issues Multiple Cease-and-Desists," which names "ARB Gaming, LLC d/b/a Modo.us." Attached as **Exhibit R** is a true and correct copy of a letter of the Illinois Gaming Board dated February 4, 2026, addressed to "Modo, 13802 N Scottsdale Rd Ste 151-94, Scottsdale, AZ 85254-3458," captioned "RE: Suspected Illegal Online Casino Operation by Modo." Each is a publication of a state gaming regulator and is reproduced as it appears.

### VIII. MY POSITION SINCE PROCEEDING PRO SE

22. I have represented myself in this action since May 31, 2026. No filing I have signed in this action has invoked or relied on any right to arbitrate my claims against ARB.

23. I do not seek in this action to recover any amount I wagered or lost on ARB's platform. What I seek from ARB is measured by what ARB itself did and what ARB itself took: the money it collected from me, the income it reported to the Internal Revenue Service in my name, and the consequences that followed for my credit, my business, and my household.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. 28 U.S.C. § 1746.

DECLARATION OF MATTHEW JOYCE — OPPOSITION TO ARB MOTION TO COMPEL - 6

Executed on July 28, 2026, at Wake Forest, North Carolina.

Signed by:

Matthew Joyce

07B601B840D34AB...

Matthew Joyce
Plaintiff, Pro Se
600 Market Grove Dr #100
Wake Forest, NC 27587
Phone: (919) 259-4661
Email: m.joyce07@proton.me

DECLARATION OF MATTHEW JOYCE — OPPOSITION TO ARB MOTION TO COMPEL - 7

Matthew Joyce
600 Market Grove Drive #100
Wake Forest, NC 27587-7345
(919) 259-4661
m.joyce07@proton.me
Plaintiff, Pro Se

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

| | |
|---|---|
| MATTHEW JOYCE, an individual, | Case No.  2:25-cv-01868-DJC-CSK (PS) |
| Plaintiff, | |
| v. | **INDEX OF EXHIBITS** |
| ARB GAMING LLC dba MODO.US;<br>AFFIRM, INC.;<br>GOLDMAN SACHS BANK USA;<br>APPLE INC.;<br>AMAZON.COM, INC., | |
| Defendants. | |

PLAINTIFF'S INDEX OF EXHIBITS

| Exhibit Letter | Date | Description of Document |
|---|---|---|
| Exhibit F | 4/1/2026 | JAMS system confirmation showing the Amended Demand was uploaded |
| Exhibit G | 5/4/2026 | Letter from Defendant ARB's counsel to the arbitrator |
| Exhibit H | Undated | Defendant ARB's own transaction ledger for Plaintiff's account, which Defendant provided on request |
| Exhibit I | Undated | Form 1099-MISC that Defendant ARB issued for Plaintiff's account for 2025, mailed from Miami, Florida to a North Carolina address |

INDEX OF EXHIBITS - 1

| Exhibit J | 4/8/2025 | Plaintiff's email of April 8, 2025 refusing to sign Defendant ARB's rewritten terms |
| Exhibit K-1 | 3/4/2024 | Defendant ARB's Terms of Service dated March 4, 2024, providing for arbitration before the AAA in Orange County, Florida |
| Exhibit K-2 | 9/10/2024 | Defendant ARB's Terms of Service dated September 10, 2024, providing for arbitration before JAMS in Scottsdale, Arizona |
| Exhibit K-3 | 3/28/2025 | Defendant ARB's Terms of Service |
| Exhibit L | 5/29/2026 | Defendant ARB's Terms of Use "updated as of May 29, 2026," |
| Exhibit M | Undated | Three pages of the response packet Defendant ARB submitted to Defendant Goldman Sachs in the chargeback process, including ARnk signup form |
| Exhibit N-1 | 5/5/2025 | Plaintiff's written instruction May 5, 2025: "Will not arbitrate vs ARB interactive llc." |
| Exhibit O-3 | 4/1/2026 | Plaintiff's written instruction April 1, 2026, not to file the amended arbitration demand |
| Exhibit O-4 | 4/1/2026 | Email exchange between Plaintiff and former counsel |
| Exhibit Q | 4/17/2025 | Arizona Department of Gaming naming Defendant ARB Gaming, LLC d/b/a Modo.us |
| Exhibit R | 2/4/2026 | Illinois Gaming Board letter |

DATED: July 28, 2026

Signed by:

*Matthew Joyce*

07B601B840D34AB...

Matthew Joyce
Plaintiff, Pro Se
600 Market Grove Dr #100
Wake Forest, NC 27587
Phone: (919) 259-4661
Email: m.joyce07@proton.me

INDEX OF EXHIBITS - 2

# EXHIBIT F

| | |
|---|---|
| **From:** | "The Mack Law Firm, PLLC" <legal@themacklaw.com> |
| **To:** | Brielle Pittman <brielle.pittman2@gmail.com> |
| **Cc:** | admin <fadetwoblank@pm.me>, Nadine Ludeke <admin@themacklaw.com> |
| **Date:** | Thu, 02 Apr 2026 01:39:30 +0000 |
| **Subject:** | Fw: JAMS Access New Notifications |

Filed.


**Amina M. Mack, Esq. | Managing Partner**
*The Mack Law Firm, PLLC*
4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
t: 984.480.7147 | f: 919.249-1360
legal@themacklaw.com | www.themacklaw.com

This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.

**From:** NoReply-Notification@jamsaccess.com <NoReply-Notification@jamsaccess.com>
**Sent:** Wednesday, April 1, 2026 9:38 PM
**To:** The Mack Law Firm, PLLC <legal@themacklaw.com>
**Subject:** JAMS Access New Notifications



| Log Notification | Time |
|---|---|
| Amended Demand for Arbitration and Amended Statement of Claims is uploaded to case Joyce, Matthew vs. Arb Gaming LLC dba Modo #5100003080 by Amina Mack | 09:37 PM (ET) |

Thanks,
JAMS Access Team

JAMS Logo



JAMS Access

Please do not reply directly to this email as you will not receive a response. For assistance, please visit our Contact Us center at jamsadr.com/contact or call your Case Manager.

# EXHIBIT G

# DuaneMorris®

NEW YORK
LONDON
SINGAPORE
PHILADELPHIA
CHICAGO
WASHINGTON, DC
SAN FRANCISCO
SILICON VALLEY
SAN DIEGO
LOS ANGELES
BOSTON
HOUSTON
DALLAS
FORT WORTH
AUSTIN

*FIRM and AFFILIATE OFFICES*

WALTER A. SAURACK
DIRECT DIAL: +1 212 404 8703
PERSONAL FAX: +1 212 253 4037
E-MAIL: *WASaurack*@duanemorris.com

*www.duanemorris.com*

HANOI
HO CHI MINH CITY
SHANGHAI
ATLANTA
BALTIMORE
WILMINGTON
MIAMI
BOCA RATON
PITTSBURGH
NORTH JERSEY
LAS VEGAS
CHERRY HILL
LAKE TAHOE
MYANMAR

ALLIANCES IN MEXICO

May 4, 2026

VIA JAMS PORTAL:
Hon. Peggy A. Leen (Ret)

    **Re:**   *Joyce v. ARB Gaming, LLC, d/b/a Modo.us,* JAMS Ref. No. 5100003080

Dear Judge Leen,

Respondent ARB Gaming, LLC d/b/a Modo.us ("Modo") respectfully submits this Reply to Claimant Matthew Joyce's ("Claimant") letter response ("Response") to the letter Modo submitted in opposition to Claimant's Notice of Withdrawal of All Claims, filed April 22, 2026. Claimant's withdrawal is an impermissible attempt to avoid unfavorable rulings through forum-shopping.

Claimant's Response devotes considerable effort to minimizing the prejudice Modo would suffer if he were permitted to walk away from Your Honor's March 4, 2026 Order ("Order") and this arbitration. The prejudice Modo would suffer is patent and undeniable.

Claimant concedes that his claims were held to be arbitrable by Your Honor's Order. Response, § 1. Having actively litigated in this forum for nearly a year, Claimant now argues that "the appropriate forum to evaluate whether Claimant's federal claims are barred by the March 4 dismissals is the federal court itself. That court will have the authority to determine whether it has jurisdiction over the claims, whether the prior arbitral dismissals have preclusive effect under applicable law, and what conditions should attach to any relief granted". Response, § 5.4. Claimant further argues that issues of contract formation must be decided by the courts. Response, § 4.3. These arguments are squarely foreclosed by well-settled Ninth Circuit law that bars judicial review of interlocutory arbitral orders.

When an arbitrator properly asserts jurisdiction over a dispute[1], including whether an arbitrator has jurisdiction, a district court cannot review such rulings until a final award is issued.

---

[1] Jurisdiction over the claims in this action was properly asserted under the delegation clause of the Modo Agreement, which reserved arbitrability – *"including any Dispute concerning the enforceability, validity, scope, or severability of this agreement to arbitrate"* – to the

22 VANDERBILT, 335 MADISON AVENUE, NEW YORK, NY 10017    PHONE: +1 212 818 9200  FAX: +1 212 818 9606
C:\Users\NMStewart\Downloads\2026_05_04_Saurack_to_Hon_Peggy_A_Leen_re_Mack_Resp_v3

Page 1 of 4

DuaneMorris

The Hon. Peggy A. Leen (Ret.)
May 4, 2026
Page 2

*Orion Pictures Corp. v. Writers Guild of Am., W., Inc.,* 946 F.2d 722, 725 (9th Cir. 1991); *Millmen Loc. 550, United Bhd. of Carpenters & Joiners of Am., AFL-CIO v. Wells Exterior Trim,* 828 F.2d 1373, 1375 (9th Cir. 1987). A final award will be set aside only if it constitutes a "manifest disregard of the law"; an exceedingly narrow standard that Claimant cannot satisfy here. *Koruga v. Fiserv Correspondent Servs., Inc.,* 40 F. App'x 364, 365–66 (9th Cir. 2002) ("To vacate an arbitration award on the ground of manifest disregard of the law, it must be clear from the record that the panel recognized the applicable law but chose to ignore it"); *Lagstein v. Certain Underwriters at Lloyd's, London,* 607 F.3d 634, 641 (9th Cir. 2010).

Where, as here, a claimant has submitted the issue of an arbitrator's jurisdiction to the arbitrator, he has irrevocably submitted his claim to arbitration and waives judicial review. *Orion Pictures Corp.,* 946 F.2d at 725-26. Claimant's assertion that a federal court has "the authority to determine whether it has jurisdiction over the claims" is therefore legally incorrect and should be rejected. Response, § 5.4. Even if Claimant could demonstrate that the March 4 Order constitutes manifest disregard of the law (he cannot), a federal court lacks authority to review the Order because it is not a final award. *Millmen,* 828 F.2d at 1376 (where an order retains the arbitrator's jurisdiction to determine substantive issues, the order is not final and not subject to review by the court).

Claimant acknowledges that the federal action includes "the same operative facts and legal theories as the dismissed counts". Response, § 3. Despite conceding that he is transparently attempting to relitigate facts that were already found insufficient to sustain his claims, Claimant repeatedly frames Respondent's opposition as merely an "ordinary expense" and "tactical disadvantage" insufficient to warrant placing conditions on, or otherwise barring, withdrawal. Yet Claimant offers no authorities whatsoever in support of his transparent attempts to gain a tactical advantage through duplicative and vexatious litigation.

Courts have consistently refused to allow litigants to avoid unfavorable outcomes by attacking the arbitrability of their claims in federal court. *Fortune, Alsweet & Eldridge, Inc. v.*

---

arbitrator. *Henry Schein, Inc. v. Archer & White Sales, Inc.,* 586 U.S. 63, 67-68, 139 S.Ct. 524, 202 L.Ed.2d 480 (2019); *Caremark, LLC v. Chickasaw Nation,* 43 F.4th 1021, 1029 (9th Cir. 2022) (valid delegation clause shifts challenges to an arbitration to the arbitrator, including *"whether the agreement covers a particular controversy"* and "whether the arbitration provision is enforceable at all."). Moreover, the Modo Agreement also incorporates JAMS rules. *Id.* In the Ninth Circuit incorporation of an arbitration association's rules within an agreement "constitutes clear and unmistakable evidence that contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank,* 796 F.3d 1125, 1130-31 (9th Cir. 2015).

DuaneMorris

The Hon. Peggy A. Leen (Ret.)
May 4, 2026
Page 3

*Daniel,* 724 F.2d 1355, 1357 (9th Cir. 1983) ("We have long recognized a rule that a party may not submit a claim to arbitration and then challenge the authority of the arbitrator to act after receiving an unfavorable result."). That is precisely what Claimant seeks to do here. He voluntarily submitted his state law claims to arbitration. *See,* Claimant's May 5, 2025[2] Complaint (JAMS ID Reference No. 1209978). "A claimant may not voluntarily submit his claim to arbitration, await the outcome, and, if the decision is unfavorable, then challenge the authority of the arbitrators to act". *Ficek v. S. Pac. Co.,* 338 F.2d 655, 657 (9th Cir. 1964). Claimant's brazen attempt to "experiment" in one forum and then remove his claims to federal court after receiving an adverse decision is improper and should not be granted. *Moore v. Permanente Med. Grp., Inc.,* 981 F.2d 443, 447 (9th Cir. 1992).

The cumulative weight of these proceedings, which includes nearly a year of active arbitration; two fully briefed motions; Respondent's payment of substantial JAMS fees; Your Honor's binding ruling on arbitrability; and Respondent's obligation to defend itself against overlapping claims in two separate forums establish concrete legal prejudice well beyond the "ordinary expense" that Claimant attempts to minimize in his Response.

For the foregoing reasons, Respondent respectfully requests that Your Honor deny Claimant's Notice of Withdrawal; or in the alternative, enter an Award reflecting the operative provisions of the Order, granting Modo leave to reopen this proceeding to obtain attorneys' fees and costs, pursuant to Rule 13 and Rule 26, should Claimant continue to pursue his claims in federal court or similar relief in any other forum; and grant such further relief that Your Honor deems just and appropriate.

Respectfully submitted,

Walter A. Saurack

WAS

---

[2] [2] Claimant's statement that the federal action preceded this arbitration is false. Response § 5.3. The commencement of this arbitration on May 5, 2025 occurred before the Complaint was filed in federal court on June 30, 2025. See, *Joyce v. ARB Gaming LLC et al.,* Case No. 25-cv-01868, United States District Court for the Eastern District of California.

DuaneMorris

The Hon. Peggy A. Leen (Ret.)
May 4, 2026
Page 4

Cc:   Claimant Matthew Joyce (VIA JAMS PORTAL)
      Amina M. Mack, Esq., Counsel for Claimant (VIA JAMS PORTAL)

# EXHIBIT H

| | | | | | |
|---|---|---|---|---|---|
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | db7a8656-9aa1-4142-a1c1-9484b907cdd5 | December 31, 2024, 6:53 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f70eaaf1-b71d-4aa8-b0f3-1f2e69cb5c30 | December 31, 2024, 6:39 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f894783b-9ee7-4ce6-91d2-79c59d91bf95 | December 31, 2024, 6:32 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 13d2cf50-a25e-484a-b794-ebed23b41bf6 | December 31, 2024, 6:20 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f1fef759-0477-47ca-887c-c30b7dad83a3 | December 31, 2024, 6:09 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | cc67f894-6e17-47b6-9905-a68352b3a1a2 | December 31, 2024, 4:52 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 67bfc4a6-0019-4bbb-a5ba-9e826f3d1fc5 | December 31, 2024, 4:52 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 88b4960f-3718-4711-8ecf-bb06e62e388c | December 31, 2024, 4:28 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 29386ea6-3410-4295-a922-62b8f6e1b4c9 | December 31, 2024, 4:20 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 8fb0ee22-e73e-4640-8819-451e0a787f6c | December 31, 2024, 4:15 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 5cc0f87a-fa73-4c8c-a1f3-2a5535c3ad3a | December 31, 2024, 4:05 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 21a11911-05a4-4f6c-a397-118906b6d0a2 | December 31, 2024, 4:00 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e27ccdc3-5112-4855-9fdd-3f21dd6c17c4 | December 31, 2024, 2:57 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | bfdb56d0-999f-4bd6-91cc-341dfd3268f9 | December 31, 2024, 12:59 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3ec7201b-cd33-46be-aa74-da23d5ad5b03 | December 31, 2024, 12:53 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 472979d3-4972-4cc4-89fa-2e7cdbc4c303 | December 31, 2024, 12:46 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 0a1a75ca-1115-4df7-91d2-0f30ca712472 | December 31, 2024, 12:44 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 77fe229c-14a1-4a55-aba9-ac2547282759 | December 31, 2024, 12:37 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 8092a8cd-0f95-47ff-bcd2-696adc6160a5 | December 31, 2024, 9:02 AM | APPROVED | 254.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 60693bc1-a1ad-4b71-bd86-b78a22e6b8f4 | December 31, 2024, 8:14 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 71fe7851-c35d-4a93-9d6f-6270696410f0 | December 31, 2024, 8:08 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a0ac8d97-b4d6-4f5d-8f1e-9ef586925b07 | December 31, 2024, 7:47 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 43bf01bc-d95d-4642-801d-015a16774c03 | December 31, 2024, 7:43 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | acaf49b7-e63a-4ca3-aee2-6513e3b66e45 | December 31, 2024, 7:32 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e005dbae-a682-4e02-a252-4ae47cdccd53 | December 31, 2024, 7:22 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 1837a483-fe20-424c-b709-267811840f2e | December 31, 2024, 7:20 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f329b0b4-9770-4d4d-b629-ac657391cf3c | December 31, 2024, 6:51 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | be9c2899-ebb5-4628-8554-3008559b2b9e | December 31, 2024, 5:27 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a44137ad-453d-40da-aa12-1d0bbfcf9076 | December 31, 2024, 3:19 AM | APPROVED | 284.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3bb37e9c-1f61-46fd-94df-79a968ca6d5b | December 30, 2024, 8:32 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | d0f467bb-9b9e-4743-afb6-c58269689f1e | December 30, 2024, 7:16 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3f6a0cde-067f-4b2a-b3c3-7a54f84aba60 | December 30, 2024, 7:15 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 94445abc-acf3-4a07-b8f1-328d5eecab83 | December 30, 2024, 1:25 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 09fb0d4c-0e18-4c1d-be53-9afe54fb027d | December 30, 2024, 6:19 AM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c2b91204-877d-422d-8c82-e7d1f417b9c0 | December 30, 2024, 6:15 AM | APPROVED | 99.99 |

| | | | | | |
|---|---|---|---|---|---|
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 8d450450-12fd-49a7-8deb-2204d3718351 | December 30, 2024, 3:14 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | fbcbd912-3c6d-4775-a99d-639f3e8d18d6 | December 29, 2024, 11:33 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3f01308b-a34c-4911-a361-aac23d9467d3 | December 29, 2024, 11:28 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7305593e-d986-4599-9e55-b6697e2ab005 | December 29, 2024, 11:14 PM | APPROVED | 84.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | be1f7aea-270b-4174-86dd-c75c85353c23 | December 29, 2024, 5:59 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 05d73fec-77c9-450d-8f69-c29ab524083a | December 29, 2024, 2:07 AM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 930af6e1-ced2-47e5-ae46-7960386d363e | December 28, 2024, 10:54 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 999f04be-31e8-4396-b881-09052d094603 | December 28, 2024, 8:01 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2c614093-1684-42a9-b1b7-1fab9047c1a7 | December 28, 2024, 7:56 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c02b9180-b6a6-4a15-b3e5-c9263d85a0d3 | December 28, 2024, 7:52 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 24361736-d81d-4f0b-a68e-0b4cc9d93742 | December 28, 2024, 6:54 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 5e0de5de-7357-45a9-9f5a-4fc6301aff9f | December 28, 2024, 6:16 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | be4e5994-a7a4-4b2f-ab7d-b0d8bab63722 | December 28, 2024, 5:06 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7fcfacab-1cdc-4401-8261-3fc694727706 | December 27, 2024, 7:30 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 6a7ce710-2045-4905-b852-6e1a59a88a1d | December 27, 2024, 7:14 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2935c9a4-5832-471a-ba8f-b153aaee773e | December 27, 2024, 3:51 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | fba3a25b-23f1-451c-91f8-80b7e27b3030 | December 27, 2024, 3:42 PM | APPROVED | 269.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | ee0118b6-98a3-43c5-b1b9-71b22c9d98b9 | December 26, 2024, 11:24 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 82cc09a4-ac52-4ffe-8f79-be0b1c0e6dcd | December 26, 2024, 10:31 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a5c0ca39-78e6-4b7f-b521-ade5ba90b0cf | December 26, 2024, 10:08 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 338f8735-c2dd-4db3-a8dd-a2a9f5ee091b | December 26, 2024, 6:49 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 8228ff43-d7cb-4468-80f4-c3de1dac7b88 | December 26, 2024, 3:30 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9bde813c-f658-4601-be6a-500e9d42bfdb | December 26, 2024, 1:27 PM | APPROVED | 95 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 95ac902b-5f90-482c-910d-7949397425a0 | December 26, 2024, 11:59 AM | APPROVED | 284.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 33c750b8-3d2d-431a-ab3f-6a3e385e4768 | December 25, 2024, 8:08 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c691930d-afb1-4fbc-aab9-11aa1408fbb3 | December 25, 2024, 6:47 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | dae372fe-30d1-41b3-a4e5-34b86507ab79 | December 25, 2024, 3:31 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | ec5e080a-e1cc-48e3-8288-243300e5bd37 | December 25, 2024, 1:26 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9faffe0c-85d3-411c-b5de-1527a16d3764 | December 25, 2024, 12:26 PM | APPROVED | 284.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 95c23c19-2c96-4912-8dc3-0fe5ae205b49 | December 25, 2024, 12:20 PM | APPROVED | 74.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 51182ac2-f551-4d0c-84d6-c71a5d20f860 | December 24, 2024, 11:54 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2e6be876-7c32-4a42-90cd-8526df673f8e | December 24, 2024, 11:43 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2d69f799-e459-4c33-8545-35c6bbdeeb0a | December 24, 2024, 11:40 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f011c367-5ddd-4479-bd75-6ae4e45f6c63 | December 24, 2024, 11:37 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3ee92d58-269f-460d-983b-9d57769a367a | December 24, 2024, 10:51 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 62e5a63e-b340-4586-9558-9949792cab2d | December 24, 2024, 10:31 PM | APPROVED | 299.99 |

| | | | | | |
|---|---|---|---|---|---|
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7a8c39de-8990-44ff-ab87-f68276050b21 | December 24, 2024, 6:22 PM | APPROVED | 79.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 6235106f-fd7f-4749-8805-2c71cd0a833b | December 24, 2024, 5:50 PM | APPROVED | 284.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 5c65d64f-51bd-484a-8113-103d79a058a5 | December 23, 2024, 6:56 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | ccfc26ea-9e19-446e-be34-1c263da3805f | December 23, 2024, 11:03 AM | APPROVED | 4.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 94f91daa-f2bc-41b4-af79-1f77e6399f92 | December 23, 2024, 11:02 AM | APPROVED | 47.49 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 5ff6afbb-3f0c-46a7-a59e-84306f6b3cb6 | December 22, 2024, 11:40 PM | APPROVED | 9.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 03850160-ef53-4800-8531-2ba8b320a39b | December 22, 2024, 8:17 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 5102c929-b94e-43d1-a900-3709599ed964 | December 22, 2024, 8:11 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 0add32b7-4e85-4bea-b356-1bbf80f2f54d | December 22, 2024, 8:09 PM | APPROVED | 40.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | ecea3e43-6936-4f36-af02-b2c81157c338 | December 21, 2024, 6:43 PM | APPROVED | 0.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b4fdbe19-6cd1-416b-91a8-4a3e50e12eac | December 21, 2024, 6:43 PM | APPROVED | 4.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c54a251b-fffb-4063-a692-1c153ba6f18a | December 21, 2024, 6:42 PM | APPROVED | 8.29 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 87b088c7-0b93-4604-a5de-0de71d36bbcb | December 21, 2024, 6:22 PM | APPROVED | 284.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f61aa984-a74e-459b-bff6-1f4f12694a50 | December 20, 2024, 7:46 PM | APPROVED | 7.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e6f30f60-dec9-40dd-8671-5cae2813dd8d | December 20, 2024, 6:14 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9eadb73b-c6fb-45c8-a49e-3ef9b91ca40a | December 20, 2024, 5:57 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a5f262a3-0059-41c6-be04-e83cfb380209 | December 20, 2024, 5:50 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 88f56c93-804f-4d66-b33e-3edf0a47dc7a | December 20, 2024, 5:49 PM | APPROVED | 41.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | d03ce08d-0645-4b0c-9167-5546d6cb2e72 | December 20, 2024, 1:26 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 755e3ae7-5aa9-4c31-87b5-9e9951cf4161 | December 20, 2024, 1:16 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3dff4985-ce2d-4030-9e6e-a0bd58862f90 | December 20, 2024, 11:27 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f49f06b4-549a-42ae-8182-e51e8ebf1a2b | December 19, 2024, 11:48 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 39b9e605-30d5-45f1-8e50-b63417b7e03c | December 19, 2024, 11:19 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2ea3ab60-7005-491f-bf14-2b9fa1884e76 | December 19, 2024, 10:56 AM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 28a5632f-03d2-4eb4-86f5-6b77cfed49f4 | December 19, 2024, 10:50 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 88aa7ca5-2100-462e-b352-f510d9b13589 | December 19, 2024, 10:31 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f134d74a-e736-43e2-93c1-4000090ce412 | December 19, 2024, 9:55 AM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | fb4aa43d-24b6-4500-bb1e-a91062fca205 | December 19, 2024, 9:54 AM | APPROVED | 17 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | fa818fad-1f06-4592-8a19-b62b74c4db59 | December 19, 2024, 9:22 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 378d882e-43c9-4f42-8266-3dbc161b1db8 | December 19, 2024, 2:16 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 0c97d480-fae3-43fe-8bae-6477807423a9 | December 19, 2024, 2:09 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4d935e7d-e653-4d20-98fc-ecef8981dc1a | December 19, 2024, 2:07 AM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 33353715-6789-4504-9e87-37db2569de6f | December 19, 2024, 1:50 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 8136f9bc-ef1b-4ee2-b386-3ace3e2b2944 | December 18, 2024, 7:36 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 6963fd4e-126b-4b32-abf7-cb997f9000d5 | December 15, 2024, 3:34 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e4a6db15-73c4-4666-a4ff-834e52941114 | December 15, 2024, 2:54 PM | APPROVED | 42.49 |

| | | | | | |
|---|---|---|---|---|---|
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7a06a6dd-5f27-423a-8724-46f9157a83d7 | December 15, 2024, 2:45 PM | APPROVED | 42.49 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | d467163c-dfd9-4206-a449-7c975812388b | December 15, 2024, 2:44 PM | APPROVED | 42.49 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 23510f89-5b45-4171-bede-062c234fc35d | December 14, 2024, 5:58 PM | APPROVED | 4.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c28ab36e-9e89-4b4f-b37c-70fd66503f9c | December 14, 2024, 5:58 PM | APPROVED | 9.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4c8668f7-6481-4850-92fa-fcb59aa5fb0f | December 14, 2024, 5:57 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 76f091d6-ca8c-4731-94d6-eb41a24a446c | December 14, 2024, 5:27 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a3bb60fa-0a98-4ef0-a0f4-395801fe1d4e | December 14, 2024, 5:12 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4d51d53d-8be3-4bd0-98c5-350bcf9d2fd5 | December 14, 2024, 5:07 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3c3d9ca5-314a-4035-be69-c5f06ef0c008 | December 14, 2024, 5:02 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7bcfec9c-c637-4ed8-bb26-d6795cc01934 | December 14, 2024, 1:26 PM | APPROVED | 284.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 87ef868a-faaf-41fd-b0a1-21f1a878cb69 | December 13, 2024, 7:19 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a6b41913-c12c-4c25-b2ae-fab7cd61997d | December 13, 2024, 7:18 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4a547229-e947-4d67-b78f-2893e90019eb | December 13, 2024, 7:07 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2089b6e9-66e4-4d7f-8449-65c409f73454 | December 13, 2024, 3:29 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b8d1b0f9-d63b-4759-bf33-9ae89a48243d | December 13, 2024, 1:39 PM | APPROVED | 269.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 551daf03-f68b-4ae7-be84-31a11f111f0c | December 12, 2024, 3:21 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | ea4d17b2-3edb-4664-9f56-1b21ccc7b205 | December 12, 2024, 3:20 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e76ac19f-d248-4dbf-aff4-a08aac5a930f | December 12, 2024, 2:43 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 199e0036-8797-4e9f-b605-065927674f95 | December 12, 2024, 2:36 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2f718958-6b6b-4152-8c49-2c2886d959a5 | December 12, 2024, 10:24 AM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4129f9b3-f5ec-489e-bafd-9f324b6de661 | December 12, 2024, 9:28 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | cd5d20e0-d64c-4d61-92c6-5f2fe3c4b17c | December 12, 2024, 9:26 AM | APPROVED | 47.5 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 1afb03bf-18e1-47fd-84fc-f1f23cb05740 | December 11, 2024, 11:44 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a04e1889-5ed1-4a9f-ab9a-0001b701ea76 | December 11, 2024, 11:32 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 03f2cb77-58ad-4fd2-8b1d-e0b25d7ddb10 | December 10, 2024, 10:17 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | d7402dbd-078d-4d9a-bac7-7deeacbf0785 | December 10, 2024, 9:51 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 069ab97f-1c11-49aa-afed-b72cc38dcbfd | December 10, 2024, 8:33 PM | APPROVED | 7.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 5f57640c-f16f-4dba-afc3-c01508aec627 | December 10, 2024, 8:31 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4deef934-0133-4f87-be84-1820cecbfe05 | December 10, 2024, 12:01 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 50488912-2f85-42ae-a2e9-fbcfd3321a1f | December 10, 2024, 10:25 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 141ddfb5-c135-4946-b700-95743e18a128 | December 10, 2024, 12:51 AM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 95dc4438-fa88-4590-80a1-90a65d98eae0 | December 10, 2024, 12:50 AM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 0b04004b-98a9-4754-9293-43215c6d94ae | December 10, 2024, 12:50 AM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 811f91c9-f1a7-4912-a77e-acf5b6572550 | December 10, 2024, 12:44 AM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 8f1349ee-9bed-4baf-94c7-e4e85484a5fb | December 10, 2024, 12:01 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b7986fcf-e2dd-4836-b525-21f6d2b3dd09 | December 9, 2024, 11:44 PM | APPROVED | 99.99 |

| | | | | | |
|---|---|---|---|---|---|
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 96e78e90-feaf-4438-b7cc-7e9f3e371a5b | December 9, 2024, 11:41 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 34657e4b-4dc2-471d-817f-ff71a5a93381 | December 9, 2024, 11:26 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a0f7c141-3187-4877-8de5-3355e40d8bd8 | December 8, 2024, 3:37 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 1160221a-bb0b-4685-b060-f2a0775ccc65 | December 8, 2024, 3:26 PM | APPROVED | 39.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 475b8b85-2efc-44ed-95cd-1f97456e0272 | December 8, 2024, 3:26 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b1357d02-9997-49dd-9e81-2b506bfa4553 | December 8, 2024, 3:26 PM | APPROVED | 42.49 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 476713c1-d109-42b9-a44e-64376e5a4a93 | December 8, 2024, 3:21 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | d7fe1f83-b8cf-4f59-99a8-307e713dd142 | December 8, 2024, 3:20 PM | APPROVED | 44.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3361304c-bcb0-4710-9341-5dc3c02ce39a | December 8, 2024, 2:32 PM | APPROVED | 284.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 12a85751-6004-4cfc-b69d-9c6fe23ea395 | December 7, 2024, 7:36 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 912529c6-1d19-4866-8eb6-f3c2fab5b17c | December 7, 2024, 2:26 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 766ecf3f-1f24-4ca8-b2e7-74e8e11caba4 | December 7, 2024, 2:16 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | dd12625b-c0e3-4f84-a22f-ddd381053fb2 | December 7, 2024, 2:12 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a4acae22-6445-4412-8eb5-b5a41194b9c8 | December 7, 2024, 2:05 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 898a66de-dbf4-4e94-bf20-741921e5b02a | December 7, 2024, 1:50 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 88ff1222-18b7-4a6a-bd5e-ab2f8a90f4d6 | December 7, 2024, 1:27 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9fb5ba65-246f-4146-86bb-1f75029f8a4a | December 7, 2024, 1:24 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | bc3a5c79-e79e-4e56-862e-c470b375cb8e | December 7, 2024, 1:17 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 04c77588-598b-436b-ba99-6dbd4fcd77a3 | December 7, 2024, 11:40 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2318bba7-c906-4277-a134-5e491c4a115a | December 7, 2024, 11:24 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 556f2782-5e42-4b14-8c1d-c8b940f259b6 | December 7, 2024, 11:20 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 6c26a4d0-9642-4791-a795-40eecba4c05c | December 7, 2024, 11:18 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7ecdbf9c-6d43-45bb-ae2b-aed82c6e66a4 | December 7, 2024, 11:14 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 42407dab-aa95-43a9-8fd3-fb86b5bd2864 | December 6, 2024, 11:26 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | d3b48cb9-2299-4ebd-b658-dcb4b57725f9 | December 6, 2024, 11:26 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 6258ba83-7939-4383-9c70-c73efd2c73ac | December 6, 2024, 11:25 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a6b5aa65-dc3b-453e-9480-eda38d4e141b | December 6, 2024, 11:25 PM | APPROVED | 39.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 6d4a473c-1203-45b9-aa58-14c155b29e32 | December 6, 2024, 11:10 PM | APPROVED | 269.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4dcbbd51-2c83-4594-8f5a-193c62c1c29a | December 6, 2024, 7:50 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c98cf082-393d-4510-9118-4c62fb51e7a8 | December 6, 2024, 12:14 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | bbb54963-7b6f-4d82-b849-60c6e8a18462 | December 6, 2024, 12:07 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | ba05cad8-49a3-4f1c-a854-974646bd672b | December 5, 2024, 11:59 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 784ea97f-3664-4228-8948-9e9d1e608d11 | December 5, 2024, 7:20 AM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 229772b6-b0f0-4568-9e18-02357486e5f9 | December 5, 2024, 6:06 AM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4d2abe3c-34d2-4fce-9f9e-4128c19d0c69 | December 5, 2024, 3:12 AM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7467cdc3-b1db-4aaf-95a5-ec9070f68767 | December 5, 2024, 3:12 AM | APPROVED | 19.99 |

| | | | | | |
|---|---|---|---|---|---|
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3ed1df0a-4433-4366-82cc-9e4654b16223 | December 5, 2024, 3:12 AM | APPROVED | 47.49 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | bbeea664-422d-48f7-9b53-528cfef1f05f | December 5, 2024, 2:49 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b3f73b48-6723-4f9b-8809-f668db58880a | December 4, 2024, 11:12 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a5b783a4-176a-474c-b54b-35b4ffcd8a79 | December 4, 2024, 11:11 PM | APPROVED | 8 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 5fe6f689-d3b9-4ad9-8fd4-4d563081e444 | December 4, 2024, 1:32 PM | APPROVED | 9.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f9bd8f96-ceb1-4e91-9666-0af114ff174c | December 4, 2024, 1:32 PM | APPROVED | 2.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7a84d7c9-ba0e-4294-be29-fe7129309960 | December 4, 2024, 1:31 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | ea5c33e3-b20f-44a8-a59d-beb43af23043 | December 4, 2024, 1:31 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 05d97392-6797-4ed1-a4dc-e4e722085dd1 | December 4, 2024, 1:31 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4d43c7ad-7269-4e82-b3af-d8af2a502886 | December 4, 2024, 10:51 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 0ccbef2b-bc72-4595-b0df-6ba2759980a4 | December 4, 2024, 10:15 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | cb67c7ed-1cec-4a4d-94ce-96db922fe422 | December 3, 2024, 11:21 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f381ffde-4a4e-4c93-a089-b52ea13d6c90 | December 3, 2024, 2:53 PM | APPROVED | 4.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 800a393f-659c-4bb5-b919-0370fe6323e4 | December 3, 2024, 2:53 PM | APPROVED | 9.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | bbc2a6fa-a235-479a-8671-949f152f0d88 | December 3, 2024, 2:29 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 202c2f9c-ebfa-4ec4-b432-f2056e35988e | December 3, 2024, 12:42 AM | APPROVED | 9.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7adf9d7f-53fd-4ae3-b559-3cefd064c531 | December 3, 2024, 12:38 AM | APPROVED | 9.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 892c7c0a-d8f4-41d1-92e2-13c2165fd6b8 | December 3, 2024, 12:37 AM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 5d8609e3-2425-434d-a7ad-c40f7c32a4a6 | December 3, 2024, 12:33 AM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c80d1be2-11d7-489b-996c-8d29db2593c8 | December 3, 2024, 12:33 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 13195be3-ae9b-49a5-84ae-2e5f9cb72879 | December 3, 2024, 12:28 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | fa848fc6-aabf-49a1-a352-374205fcc5b1 | December 2, 2024, 2:10 PM | APPROVED | 4.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 1eff7515-cc4c-4a77-995c-c70e74af574a | December 2, 2024, 2:09 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 781e53ad-55dd-4c90-b5cf-0d294d1abce7 | December 2, 2024, 2:08 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9ca3ab53-fe95-4e3e-be6d-0ece4b346005 | December 2, 2024, 2:08 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 8ffd5263-45e8-415b-a44e-0ee160e8b063 | December 2, 2024, 1:47 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3a77cd0d-19f2-4433-b110-7b2bca848991 | December 2, 2024, 1:35 PM | APPROVED | 42.49 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 940ebe15-691f-4db2-bfaa-a82e266eb53f | December 2, 2024, 1:35 PM | APPROVED | 42.49 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 6dee7f23-b357-4d3d-ad3b-a98882c118f4 | December 2, 2024, 1:35 PM | APPROVED | 42.49 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 6099218e-5960-41e1-bb06-73681f3f6a03 | November 30, 2024, 6:42 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 74b00f02-3836-4440-be0b-ffbb82263658 | November 30, 2024, 3:11 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 92571bc9-cbeb-48c0-84af-7c33774a1366 | November 29, 2024, 7:35 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | edb65dc1-beed-4d9d-af55-1cc58dd823c4 | November 29, 2024, 12:40 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 6944e0b9-e14d-4596-89e9-500ed5140acc | November 29, 2024, 12:40 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c91ea4ba-65a2-4fb1-b4fc-92fe19b63ac9 | November 29, 2024, 12:37 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 93f5ac04-b085-4a56-a94c-aaa534d18501 | November 29, 2024, 12:27 PM | APPROVED | 99.99 |

| | | | | | |
|---|---|---|---|---|---|
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c8d9abe1-6f08-43a9-b7eb-1fe677b39e63 | November 29, 2024, 11:49 AM | APPROVED | 269.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 8f52df65-2054-4d3e-a47b-6851e24680d8 | November 28, 2024, 11:21 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e76a64f3-33db-4afa-8871-12d26947faec | November 28, 2024, 10:29 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 70413cb1-69cf-4177-a046-a84d7b6e02d1 | November 28, 2024, 10:26 PM | APPROVED | 74.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9da15fd7-2c60-420b-8ac5-9d7612033238 | November 28, 2024, 1:20 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 177b898a-d7e0-4fe3-8723-33cb35b31cdc | November 28, 2024, 11:49 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7e39b66e-7e34-4003-9c1b-bf206cf48ff6 | November 28, 2024, 12:32 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | fba01f93-f268-4e18-b848-b67f4a534d77 | November 27, 2024, 11:58 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | d2d74612-d898-4904-bbd8-86f3a3d77845 | November 27, 2024, 11:55 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 31ec62ed-8222-492b-9c4f-facb15621946 | November 27, 2024, 11:50 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 325f2d81-5c4a-49e5-9aab-f9f9fd8c1500 | November 27, 2024, 9:59 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 65c22732-f7f7-49c0-ae6e-2c3d367853f7 | November 27, 2024, 9:59 PM | APPROVED | 39.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2e46c614-ac54-4f83-8276-97aa1e4ca0a9 | November 27, 2024, 5:44 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b4432071-276a-48ea-9876-c0a697a2f593 | November 27, 2024, 4:33 PM | APPROVED | 3.75 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 0ccbbd9f-80a8-4154-8069-d5a9c47c633c | November 27, 2024, 3:59 PM | APPROVED | 84.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b2385cb4-1903-4e79-a317-66c096570514 | November 27, 2024, 3:56 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c74c1ea3-a14f-4e96-8e46-c423a6909b08 | November 26, 2024, 6:00 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 957bfe34-d5f9-4723-959a-c862f84beb74 | November 26, 2024, 5:31 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | fe954d79-64af-4207-bc8b-8e169561d830 | November 25, 2024, 3:53 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 1d7ebbf8-a087-40d5-8667-658f38e8f052 | November 25, 2024, 1:58 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | aca51f85-803b-4ef9-99e3-2f61c73b029b | November 23, 2024, 10:51 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 8f7c9df9-ef75-40c4-bc3f-0d5b942a317b | November 23, 2024, 10:46 PM | APPROVED | 79.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 10fb9377-358b-4741-97cd-c1131e90f771 | November 23, 2024, 9:45 PM | APPROVED | 84.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2eb72567-6a6c-40f7-bcaf-19dc66d092dc | November 23, 2024, 9:15 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c6eb0ddb-4814-4928-a508-5969b8e823ce | November 23, 2024, 12:05 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | bf095995-b7ab-4e18-9971-16dddc290ea6 | November 22, 2024, 11:55 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 83f4ad68-2add-4472-a5c7-da4ecd741058 | November 22, 2024, 11:54 PM | APPROVED | 39.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 85d266d0-31f0-4501-8a2d-e4c5ff63cb57 | November 22, 2024, 7:55 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 11aeeb19-fa86-4d97-a2b7-efbf283d3c5d | November 21, 2024, 11:36 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e202ae53-be12-47d9-aced-f8f42391250b | November 21, 2024, 11:24 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 776532c1-6026-400b-a6b7-600c732963c4 | November 21, 2024, 9:36 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f9fc902a-4936-4792-b70d-2270b8783ce2 | November 21, 2024, 9:32 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | dc6b34e9-2d72-489f-97ac-69ee0a03465c | November 21, 2024, 9:24 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 6f753085-23a8-40a4-afc6-f4499297b7f5 | November 21, 2024, 12:12 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c8a7c05e-1307-4042-97cd-a6396477644b | November 19, 2024, 10:46 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 03793d0f-6857-4b95-b8b4-fd92bc836107 | November 19, 2024, 9:44 PM | APPROVED | 79.99 |

| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 18d9570e-96c0-4ea6-86e0-683a603452b3 | November 19, 2024, 9:20 PM | APPROVED | 84.99 |
|---|---|---|---|---|---|
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 56e3711e-b6ac-4278-9696-fc6d2895439c | November 19, 2024, 2:10 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 1c315f23-0182-4106-a4b1-c73006a2273c | November 17, 2024, 11:31 PM | APPROVED | 16 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f949ea5f-2a67-4cce-8162-133f71b7d18a | November 17, 2024, 11:30 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7cdbdeef-eb88-48a5-bf57-26b0e774e31e | November 17, 2024, 9:26 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 969db8b1-3d6b-48b9-bd6f-281f4c4d0083 | November 16, 2024, 11:20 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 0ceeffad-68e0-4e81-8993-0ff0c95648c6 | November 16, 2024, 10:53 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b5e32971-d333-4cbb-a155-ac2fa3e0425a | November 16, 2024, 10:26 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | bc51194a-3c8f-4402-9866-7c1da8982ed2 | November 16, 2024, 5:53 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9aa18534-c170-4b87-bb1a-198d377785bd | November 16, 2024, 3:11 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9ff3065b-b8b0-4732-b924-10057abab6d6 | November 16, 2024, 2:47 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | fab75741-3c36-41c8-abe3-b3c5d4a738ea | November 16, 2024, 12:58 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b4531175-fa28-426e-95b6-59303ddb9994 | November 15, 2024, 11:09 PM | APPROVED | 269.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3fd34ee0-499f-429b-a718-de6cfc5e063d | November 14, 2024, 10:58 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e7df6183-e90b-42d6-90d3-206120996e98 | November 14, 2024, 10:43 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 384bf115-76e0-48a9-9c73-21f3357df053 | November 14, 2024, 9:44 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3432598f-cadc-4fda-8c2f-7db81bc52585 | November 14, 2024, 9:39 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | dee3f4f4-b611-4261-8e5e-e205b05f20fb | November 14, 2024, 7:33 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 179e5573-3f1a-41e2-b955-5aa7b5ae6561 | November 14, 2024, 7:24 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | cae2f164-7e3f-4beb-9f3a-7d9bdc35290d | November 13, 2024, 11:46 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 61ab6d2e-a5f6-4642-91d0-d7e2b52376da | November 13, 2024, 11:45 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | dbeb2b51-844d-4e87-a8fb-e25e3bd0c418 | November 13, 2024, 11:41 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 8f7b9fee-eee7-4d67-8ae3-94d0093f574f | November 13, 2024, 11:33 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a9434e88-a31d-411b-8435-2bded9464f49 | November 13, 2024, 11:20 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 72fe6c9a-043f-4244-a015-09dcfdf40050 | November 13, 2024, 9:20 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f3a81787-0ae8-4133-93bf-c145e441dc96 | November 13, 2024, 9:16 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b5bf7538-4211-48b3-ab43-d6ad33ace6fd | November 13, 2024, 7:09 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a1415643-b09c-4734-abed-0151fa337e27 | November 13, 2024, 4:00 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 789a63f2-59a6-4d35-ae41-f80f3e7cecb0 | November 12, 2024, 8:06 AM | APPROVED | 9.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | aa0be831-8c4c-4968-b154-3fd019fbfc70 | November 11, 2024, 4:00 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b7103d98-00b1-4c8e-b57d-178d40a8039f | November 10, 2024, 5:49 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | afe1b3ff-16be-4204-a1c5-3feda5aa640a | November 10, 2024, 5:46 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 499d6165-68e8-4089-b968-fbcb1546dee2 | November 10, 2024, 11:51 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 0bda0b76-7456-456f-9b3f-6b9249ba5f9b | November 10, 2024, 11:44 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3a8c0abe-820c-48ca-9816-2432c106df57 | November 9, 2024, 9:39 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 6b179659-b4e6-4f45-bdcd-1d1936343802 | November 9, 2024, 5:44 PM | APPROVED | 95 |

| | | | | | |
|---|---|---|---|---|---|
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3733f6d3-5ee5-4b3c-9b20-379401d95fc0 | November 8, 2024, 4:29 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 817149ff-a76a-445a-88d4-5dac6344e023 | November 8, 2024, 8:54 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a09a280a-48ac-479f-a22b-16a3bbd67e63 | November 8, 2024, 7:11 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 268f7a71-be7a-4634-9317-7330d16bd7a5 | November 8, 2024, 7:07 AM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a3ba8e7e-c44c-4949-981c-adbd5f6571fc | November 6, 2024, 11:02 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | d5eb8d05-6573-4dbe-a335-f69809d7fd95 | November 6, 2024, 9:54 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 5417f77e-27c3-41d8-982b-c93d366b7624 | November 6, 2024, 9:54 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 69dd5a68-d124-4bb7-8cdb-796aef00ff7d | November 6, 2024, 4:34 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c4fb5686-6b66-47c2-ba31-e8f01ed11b18 | November 6, 2024, 2:01 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 15921e38-3dc3-4479-b0aa-e87199c55cfa | November 6, 2024, 4:04 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9f44ae83-d660-4811-ab2c-ca19e13e4d30 | November 5, 2024, 10:39 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4ea596bf-3abb-43a8-a60b-ad0d3721c706 | November 5, 2024, 8:50 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c5270c93-9fed-4bc1-85f0-1e645e4c4982 | November 4, 2024, 8:13 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b4f8b775-7b5f-4777-a1dc-ef73861d9001 | November 4, 2024, 8:11 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 498c3472-60ed-48ff-8f39-3a322c560179 | November 4, 2024, 8:07 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7bc02dbf-af23-4ca2-be24-f927f45ada8c | November 4, 2024, 2:20 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7e3675aa-626c-4e2a-8f03-80dcb18c6a46 | November 4, 2024, 1:59 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 81c2cb72-055b-4565-85e4-3fc1e1e50925 | November 3, 2024, 4:24 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 01aa870d-c89b-4219-939b-0edbaf891e1a | November 3, 2024, 1:20 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b1895343-4cf3-4b26-aa22-a679e2fc423d | November 2, 2024, 5:23 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 8e32bbd3-3441-41f3-bb7f-e90bd1e31985 | November 2, 2024, 5:15 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 855d4cc3-6a95-4a7f-83d0-0abfa1c9b91b | November 2, 2024, 1:22 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c8308c31-2d80-48f0-b515-992e6891f7f3 | November 2, 2024, 1:17 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 89aa0aa7-3ef9-40a1-9a09-d66439673792 | November 1, 2024, 3:47 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | eb97e38d-943d-458d-bd3f-ec5464a5ea6e | November 1, 2024, 3:47 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 1136f201-5f73-408c-b8e6-c06ae9f8ec7a | November 1, 2024, 3:46 PM | APPROVED | 8 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | db22060d-6b7c-46ff-b496-e94eab2b6aef | November 1, 2024, 3:45 PM | APPROVED | 17 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4ffd8f74-2a8f-48e2-9efe-eea3a0bdffbe | November 1, 2024, 3:38 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 657f8ef8-6c5e-49c7-8828-b84e78561df4 | November 1, 2024, 6:45 AM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | bc89bbc4-341b-4745-808a-f9201acf0bce | October 31, 2024, 7:18 PM | APPROVED | 84.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | bdd15bd2-764f-4e92-ab5d-0045ece9e7f5 | October 31, 2024, 8:02 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 5c4d27d9-5cf5-4738-aa78-666173a747e4 | October 31, 2024, 8:00 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 41cddf06-baab-4297-833d-f1a8339eed99 | October 31, 2024, 6:50 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | d3dd84d2-b42d-4c41-95ac-75c8c3b52a5b | October 31, 2024, 1:58 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3da89c5c-25f0-45c7-a99a-24897c462336 | October 31, 2024, 1:38 AM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | de98f3bc-7e00-47d7-988b-8fbffa0c845d | October 31, 2024, 1:32 AM | APPROVED | 99.99 |

| | | | | | |
|---|---|---|---|---|---|
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | edb5096a-72f2-4349-8a5f-18aca49b0e81 | October 31, 2024, 1:30 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 8a2cb7b2-9e56-4481-af47-885b893b23dc | October 30, 2024, 10:23 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e2af7225-1a32-4aba-9283-045e4707d134 | October 30, 2024, 10:11 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2847854d-9de3-4081-90c0-bf45586f9844 | October 30, 2024, 10:03 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f9d71ecc-16d9-44af-93cd-6b35a93688c9 | October 30, 2024, 9:56 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 67d79c53-5f43-4b78-b3b8-11ae6a0e5b4f | October 30, 2024, 9:27 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e3354850-3499-4e59-a1d7-b2bd95663d36 | October 30, 2024, 8:00 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a87ed019-2a95-4867-8802-ee4aec515eb3 | October 30, 2024, 7:50 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 1266e7ee-b09e-4b69-9e66-52475bfd8286 | October 30, 2024, 7:46 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 94ad73ff-5e5c-43ba-b8a9-7c6aaee3331c | October 30, 2024, 6:59 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e50b4a29-7a50-40ed-8462-7f6fb40f3bdd | October 30, 2024, 5:58 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 1985751d-fcc2-4f18-aad2-00b77ba2f5b0 | October 30, 2024, 5:53 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 8d23e91a-efec-4f2b-b552-71e9c41b6e1c | October 30, 2024, 5:44 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | d5693dc4-a23d-4f95-8350-2249df87a20c | October 30, 2024, 5:40 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | fcc12ed1-8ec6-4ba3-8eda-4c1b72195c64 | October 30, 2024, 4:14 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3afb54af-b87c-4634-96cd-129a616aa0ad | October 30, 2024, 4:12 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9524f3db-f2a5-433d-9b59-0ecd26b9ed06 | October 30, 2024, 12:32 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a777442d-dd1a-4229-a363-dac44d28c27d | October 30, 2024, 12:30 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7a98b5f5-68c8-49e2-ad0b-eac74247c9bb | October 30, 2024, 12:08 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 301c5631-1e06-4d91-913d-7f5669cab1ca | October 30, 2024, 4:21 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 459fbf2e-925f-4afe-9c77-d5824616ed1a | October 30, 2024, 4:18 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 49e417ec-3ab3-4b11-b505-8b8b4099352e | October 29, 2024, 7:08 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f6fc7568-ffbf-46c7-905a-aeeeacccd78f | October 29, 2024, 2:19 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 392c524b-14c4-4b19-925c-4ee7c9190235 | October 29, 2024, 5:17 AM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 442aa87d-28b5-4c0a-92dc-2f804904413a | October 29, 2024, 5:14 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a9b4b3e6-9e20-4fef-896b-34e8907b22a1 | October 29, 2024, 5:09 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3e1ea9d4-86d1-4f0b-bff4-5db4b980680e | October 29, 2024, 5:03 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f6c1ac83-e500-41fb-b230-ae431e7b672b | October 29, 2024, 4:42 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 048badfe-9984-47c3-a36e-ece2f4e76aee | October 29, 2024, 4:35 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7097ee94-b6c2-4187-a362-d63f32108a65 | October 29, 2024, 4:13 AM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e97bb2ff-b466-4f73-b06c-be402275cb94 | October 29, 2024, 3:34 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9248d2f2-a48f-40ef-81f1-49936016a843 | October 29, 2024, 3:30 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7cf64c6b-b56b-4b09-9db2-6e076e832d0b | October 28, 2024, 10:28 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 48028ae4-faa3-4346-bddd-96e3f1477d25 | October 28, 2024, 10:25 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b9128344-2522-47d1-a7dc-d8bea55c2b79 | October 28, 2024, 10:14 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 5da3bbf2-4930-4eae-a910-8a08c4f71b0c | October 28, 2024, 9:57 PM | APPROVED | 99.99 |

| | | | | | |
|---|---|---|---|---|---|
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c950dbf4-5e67-4858-8dd9-46e9e489c930 | October 28, 2024, 8:53 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 5c4dad33-f861-4fa9-82e0-d6e6b180dd18 | October 28, 2024, 8:40 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 1ab055ea-b09a-425a-973b-195b622148b0 | October 28, 2024, 8:24 PM | APPROVED | 47.5 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 10281eed-f8d9-42ea-a7d7-4dfe243be517 | October 28, 2024, 7:57 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | dc1c19a1-f929-426c-9839-8f73ff8c7cc9 | October 28, 2024, 6:54 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a9f56e58-69f9-40c1-9382-f7380a96bce2 | October 28, 2024, 7:12 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 39287dd1-efe3-4bb8-a972-acd64f504536 | October 28, 2024, 7:05 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | af998cdf-f5d9-4ca5-8420-bdbcc776a3d5 | October 27, 2024, 7:50 PM | APPROVED | 269.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | ca2f9450-cf44-4a71-8a7c-22d997ecd852 | October 27, 2024, 7:08 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | d158c6c3-5f8a-4daf-b58e-9ef9e297eef7 | October 26, 2024, 7:11 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a6b817ed-e279-4b57-854c-718e6fcf684a | October 24, 2024, 9:35 AM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 109b7587-a216-49ff-b66f-1a432fdff244 | October 23, 2024, 7:11 AM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2a354118-43de-4c28-8941-930236f253a0 | October 23, 2024, 2:57 AM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c05676b2-38fd-49a3-8ccb-cd00fdf78550 | October 22, 2024, 9:01 PM | APPROVED | 299.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c6d83a76-2afe-4ca5-b4c9-a8772ca74e1c | October 22, 2024, 7:48 AM | APPROVED | 284.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 6691b7e4-f46c-49df-8e72-4ff445501efd | October 21, 2024, 9:58 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 95212180-e63e-49fd-81ab-b325506eafac | October 21, 2024, 9:56 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 19a4c856-664d-4f53-a46e-8824d65eb51b | October 21, 2024, 7:39 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 83acf977-82ca-46b0-8532-9b2b49f2df92 | October 21, 2024, 7:37 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 00482d21-a630-498e-b74e-adfe4fb903ff | October 21, 2024, 7:34 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | fa5bf134-a7b6-430f-a1b0-0eca50c3be5a | October 19, 2024, 2:27 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4ee94fc6-fe8d-4834-9cdd-3dff98a7aa6d | October 19, 2024, 9:56 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7c61fb0d-c83c-4557-99b3-debfa5140d17 | October 19, 2024, 4:43 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 8a60b5f7-e068-42c5-a0dc-c91560db109d | October 18, 2024, 4:28 AM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | ef58f0e7-730e-4408-9c5c-5354bbdaf31e | October 17, 2024, 6:00 PM | APPROVED | 284.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 077f9970-5970-4bf8-9f9b-e0e8a013e58f | October 14, 2024, 3:02 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 389a0196-d953-4570-bda7-cb7db8cb1fd7 | October 14, 2024, 2:56 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2734db15-f741-4254-9d49-009fa1b678df | October 14, 2024, 12:39 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7d8a8e82-2717-45b6-afa3-71e1d9075dd9 | October 13, 2024, 9:17 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f47b976d-471d-4a52-b4fb-339a1b820b72 | October 13, 2024, 7:13 AM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | fc92813d-7230-4aba-9c85-5d45e276cd94 | October 12, 2024, 11:58 PM | APPROVED | 4.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7adf11d7-93fd-4709-a2a2-f55ab5e84f18 | October 12, 2024, 11:58 PM | APPROVED | 9.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 0d483ccf-924e-4e43-b6d5-32868e489997 | October 12, 2024, 11:57 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e2b37055-7f65-4580-a32b-cf5f2c635c91 | October 12, 2024, 11:57 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 08bd3d40-5457-4cd8-bbb8-1382c480073d | October 12, 2024, 10:19 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2f51d107-851f-407e-84b8-2d5f4d4aa3ac | October 12, 2024, 10:14 PM | APPROVED | 99.99 |

| | | | | | |
|---|---|---|---|---|---|
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 59c15ba1-67f1-479b-b0ce-d01ab5d89859 | October 12, 2024, 9:36 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 32662e73-5017-40bb-a221-2a1950d5a438 | October 12, 2024, 9:27 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | da80b929-3d8d-4728-8ae8-ba4ae8a98c3b | October 12, 2024, 2:46 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | d5c74ef2-7e18-46f6-b928-7dfd72998b08 | October 12, 2024, 1:14 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | ccbc003a-2354-424a-b62b-62b4ad6a0928 | October 12, 2024, 1:13 AM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | dbeb08c7-0547-4ece-8b12-dff91edc2c95 | October 12, 2024, 1:04 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9ebf9f01-1675-42df-a48f-f089932cc5ad | October 12, 2024, 1:04 AM | APPROVED | 3.75 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | bbcce99c-c6bd-4609-8d4a-2bec97462292 | October 11, 2024, 4:01 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a6555ba2-327a-4fcc-afd6-27dddd66dcac | October 11, 2024, 2:43 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e1250e6d-4d82-422c-8f84-8e1b724167ab | October 11, 2024, 2:04 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 0b8d2167-d94c-4f0a-955d-fab317092256 | October 10, 2024, 5:18 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a2645e78-0a8c-48b3-9f78-dd99da56a264 | October 10, 2024, 5:18 PM | APPROVED | 8 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c5a52c24-aca8-425c-815d-87d8835a90db | October 10, 2024, 5:11 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | cf841d26-a1a7-449f-b3c1-d9470dcec200 | October 10, 2024, 5:11 PM | APPROVED | 42.49 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9dd0eb53-b203-4a89-aad9-7bf51fdc8d59 | October 10, 2024, 4:44 PM | APPROVED | 94.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a005d4b9-d44a-4296-a0da-2d7ac9cd9cd7 | October 7, 2024, 8:48 PM | APPROVED | 44.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 324a891d-25e6-47d8-95e8-10a2fd53dff1 | October 7, 2024, 8:42 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9e5a29c2-df33-43dc-8f9e-c380dc0eb104 | October 6, 2024, 11:39 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 937b787f-81b7-4be2-9f98-3db335189cda | October 6, 2024, 12:33 AM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 315c160b-3b4a-4fa1-b3b6-8cbc5b135bc5 | October 5, 2024, 10:41 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7b0c4f60-3ede-43b5-b3bf-3caaa55d688a | October 4, 2024, 9:43 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 558cb2ed-0906-4c7e-bd51-4c7f44c4550b | October 4, 2024, 1:18 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | afba998e-0dfd-4d65-87de-3463f92e5083 | October 4, 2024, 11:23 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | cad454ac-1470-4179-9ac3-a98cc7281cc1 | October 4, 2024, 10:51 AM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 23ee1db8-fdfd-41be-ba94-391fe6044daf | October 4, 2024, 2:04 AM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b376c6f0-8445-47e8-aba9-8a45396bddcb | September 30, 2024, 11:02 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 18c1324f-e428-421e-a567-ea03382a0e3f | September 30, 2024, 8:04 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e674d5c3-a929-46eb-a82a-723f1e1a67b1 | September 28, 2024, 10:51 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 577a3556-3455-46fb-b13c-a346543f2282 | September 20, 2024, 8:53 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2570f39f-5e4a-49a2-b1a2-afb31b428e3b | September 20, 2024, 7:48 AM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 8ff24a0e-3390-4052-b1cd-a584f1d9580d | September 19, 2024, 10:08 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | bc2fddef-9722-48ae-8e85-e8201d072a79 | September 18, 2024, 10:55 AM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4fd0053a-bd1b-4c70-a5c2-ec108762fe6f | September 18, 2024, 10:48 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9e273a11-4620-45df-8d23-7872aadaeaba | September 18, 2024, 12:50 AM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 0842ad2b-4057-48fe-9130-75a06983dc85 | September 18, 2024, 12:46 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 20fd7378-7b0f-4875-9030-b146b9373aa2 | September 17, 2024, 11:57 PM | APPROVED | 99.99 |

| | | | | | |
|---|---|---|---|---|---|
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f72daefe-c117-4e6d-a3ed-6d7818e26ff6 | September 17, 2024, 6:06 PM | APPROVED | 9.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b3e92e26-1813-4b73-a662-ca21d3045de2 | September 17, 2024, 6:05 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 530a58d4-53f9-40f8-8ffb-d0d13e14322d | September 17, 2024, 4:45 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b0041f33-a9c3-4660-a084-d67277efe587 | September 17, 2024, 4:20 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | ad3d6275-a88b-45cd-b033-e80c3727a21e | September 17, 2024, 4:19 PM | APPROVED | 3.75 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4dc1869e-444e-4b1d-a6da-a761ef3530db | September 14, 2024, 7:30 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b0bdf58e-b858-4489-bff2-8ab74d090092 | September 14, 2024, 7:21 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f9288ee4-349e-4f99-b763-70204db88a08 | September 14, 2024, 6:46 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4a28e7fe-1335-4cc6-99e8-2a5d8b215f92 | September 13, 2024, 9:00 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f16b1d20-c0aa-4752-81dc-147db390ff73 | September 13, 2024, 8:32 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9fa61a87-b524-45f4-9453-aaf92c21b659 | September 13, 2024, 8:29 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 65713504-9185-401e-9ca0-3970062588f9 | September 13, 2024, 7:40 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 473efb54-b834-4f7e-a4a0-d9ec4a4b4f20 | September 13, 2024, 7:34 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4e500322-8e77-4299-85ab-da7f8ce7321d | September 13, 2024, 7:13 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | d5cd85df-48d5-451c-b9b2-ce5553c5102f | September 13, 2024, 6:56 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 62f1b5e1-fedb-4688-969f-7890998e2e64 | September 13, 2024, 6:53 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 0fd50be2-1f16-41bd-a871-4ae788d3e951 | September 13, 2024, 6:24 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7f3a6b77-6cc7-418d-8617-4ef0d6d0570c | September 13, 2024, 6:18 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | bb259a8a-9c07-4275-ab7a-01b8bf5d4d25 | September 13, 2024, 5:59 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | d2205f01-aafc-42e2-9fea-ec21e68d488c | September 13, 2024, 4:55 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 276d8e6f-3d23-4138-a10f-2abd5c77f08a | September 13, 2024, 4:04 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 11ec67ea-1a60-4b28-8506-b911e56fdfe0 | September 13, 2024, 8:28 AM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | da34b0ef-94a1-4650-8c74-0568f871dd6b | September 12, 2024, 6:10 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | cd7f4978-5f27-470d-9e4b-60b87846924f | September 12, 2024, 6:07 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 606c1b68-40fe-4a64-9336-4459decb92e1 | September 12, 2024, 5:19 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f31fcb4a-be5e-4c4f-8bb0-b30488079353 | September 12, 2024, 3:29 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | bb377ceb-0776-4d4e-9afc-3b831ee172c0 | September 11, 2024, 11:49 AM | APPROVED | 9.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 750967b9-65ec-45e3-8100-3e1597810f28 | September 8, 2024, 1:19 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | fcf8e535-a109-4628-af74-49668c4fb806 | September 7, 2024, 11:24 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 2e80af12-bd03-41ef-9e44-37909f07972e | September 7, 2024, 11:06 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 6bbde019-82fa-4aaa-a462-a67d3ab09512 | September 7, 2024, 10:57 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c711b428-5ec8-47ef-9a4b-9ab72a29c24d | September 7, 2024, 10:54 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | a7b1d65b-6bea-4989-add6-08bbcb9956fa | September 7, 2024, 10:50 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9ecad64a-10d8-4b18-acaa-a9ef7af2bc90 | September 7, 2024, 10:45 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 362f4f66-82d4-499b-99a9-12e052567a13 | September 7, 2024, 10:42 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 59c3eb29-5881-45ef-ac36-d03972f7985a | September 7, 2024, 4:11 PM | APPROVED | 49.99 |

| | | | | | |
|---|---|---|---|---|---|
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 85adef3e-129e-4ae6-970d-3ed53da9f51f | September 7, 2024, 4:06 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c3083e81-0be8-47f2-bab1-66896615f396 | September 6, 2024, 6:58 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4383f6c1-2e62-4536-87a2-630b122d8e33 | September 6, 2024, 2:08 PM | APPROVED | 44.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | c986b407-af50-4af4-bcd5-8d944335c8e0 | September 3, 2024, 10:55 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 97e32a72-6832-431c-b648-343ecc1bce65 | September 3, 2024, 10:50 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | bb81e6d4-e26f-46ed-96ce-cacdc309de3c | September 3, 2024, 10:50 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3017cba1-ecad-4230-991b-8dd7febe7f66 | September 3, 2024, 10:48 PM | APPROVED | 44.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | cf857fac-3066-4990-8479-64e4382e3550 | September 3, 2024, 10:34 PM | APPROVED | 89.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | acce0242-2623-4356-abd1-16b8d4dd3e4c | September 2, 2024, 3:49 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | b2866f1a-4317-4230-b13c-8ca59b8e773d | September 2, 2024, 3:20 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | e964c72b-11f4-4afa-98b6-78247e31a054 | September 1, 2024, 10:28 AM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 28a66949-edbd-465c-a330-df525de24ccc | August 31, 2024, 8:19 PM | APPROVED | 9.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 7004567c-a4a3-4cab-8a28-8039ad3d7eb7 | August 31, 2024, 8:18 PM | APPROVED | 19.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 4b376536-9255-4e95-9f0c-449d414f8653 | August 31, 2024, 8:17 PM | APPROVED | 49.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 5339dace-908f-4a79-adce-c3005d75dfc5 | August 31, 2024, 2:31 PM | APPROVED | 99.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 3b97e40b-b2ee-4da0-9c3b-0319f7e8c26f | August 31, 2024, 2:31 PM | APPROVED | 17.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 1dff5f33-029a-4010-a6c9-43c6b2c42be4 | August 31, 2024, 2:30 PM | APPROVED | 17.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 9d76f774-8569-45a1-90f5-fc0ab20e51e3 | August 31, 2024, 2:29 PM | APPROVED | 15.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | fedd411e-0cbc-4b0c-b721-61b7ef990746 | August 31, 2024, 2:28 PM | APPROVED | 0.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | f3f9957a-604f-4fea-8585-9db40182bd85 | August 26, 2024, 9:42 PM | APPROVED | 74.99 |
| google-oauth2\|113980842547913751449 | crash07222@gmail.com | 1dd48237-b8f9-4134-b006-37c9a1a5f70c | August 25, 2024, 1:17 PM | APPROVED | 299.99 |

# EXHIBIT I

EXHIBIT I – PAGE 24



# EXHIBIT J

 Gmail

**Ld D <crash07222@gmail.com>**

## Not signing new terms

**Matt J** <crash07222@gmail.com>
To: support@modo.us <support@modo.us>, modo.us <vip@modo.us>

Tue, Apr 8 at 4:39 PM

Im not signing any new terms and conditions.  I will request what terms have changed.  Or I will turn it over to a contract attorney to see.

Pay me my pending redemption and anything left in my play account.

Matthew

Attaching email to VIP as well.

# EXHIBIT K-1

TERMS & CONDITIONS

Last Updated: March. 4, 2024

The following Terms and Conditions form a binding legal agreement between you and Modo, and apply to your use of the Platform in any way, through any electronic device (web, mobile, tablet, or any other device).

PLEASE NOTE THAT THESE TERMS INCLUDE A PROVISION WAIVING THE RIGHT TO PURSUE ANY CLASS ACTION, GROUP, OR REPRESENTATIVE CLAIM AND REQUIRING YOU TO PURSUE PAST, PENDING, AND FUTURE DISPUTES BETWEEN YOU AND US THROUGH INDIVIDUAL ARBITRATION UNLESS YOU OPT OUT WITHIN THE SPECIFIED TIME FRAME. SEE SECTION G BELOW FOR MORE INFORMATION.

You must read these Terms carefully in their entirety before checking the box for acceptance. By checking the box for acceptance during the registration process, or by accessing the Platform, you confirm that you have read and agree to be bound by these Terms and Conditions, which include and are inseparably linked to our Privacy Policy, Promo Rules, and other Game-specific or promotion-specific terms relevant to your use of any feature of the Platform. If you do not agree with any provision of these Terms or any other linked policy, rules, or terms you may not access or use the Platform or play any Game.

THE GAMES AND PLATFORM DO NOT OFFER REAL MONEY GAMBLING, AND NO ACTUAL MONEY IS REQUIRED TO PLAY.

ONLY PLAYERS IN THE UNITED STATES THAT DO NOT RESIDE IN AN EXCLUDED TERRITORY ARE ELIGIBLE TO ENTER THE SWEEPSTAKES. PLEASE REFER TO THE SWEEPSTAKES RULES TO CHECK YOUR ELIGIBILITY.

YOU CAN REQUEST REDEMPTION OF ANY PRIZES BY SELECTING THE "REDEEM" BUTTON ON THE PLATFORM. WHERE PLAYERS REDEEM PRIZES FOR CASH, SUCH PRIZES WILL BE PAID TO THE PAYMENT MEDIUM FROM WHICH YOU PURCHASED GOLD COINS, AND IF THIS IS NOT TECHNICALLY POSSIBLE, THEN THROUGH AN ELECTRONIC PAYMENT TO THE BANK ACCOUNT YOU HAVE DESIGNATED.

## A. DEFINITIONS

"AAA" means the American Arbitration Association.

"AAA Rules" means the AAA's Commercial Arbitration Rules and the Supplementary Procedures for Consumer Related Disputes, or successor rules (available at www.adr.org), which are in effect at the time arbitration is sought.

"Channel(s)" means any website, web page, blog, forum, third-party social media accounts, and any other media outlet or online account owned or operated by you that is ordinarily used to advertise online services.

"Channel Information" means all content, materials, and other information on your Channels.

"Code of Conduct" means the provisions of Section F(5) which govern your participation in the Referral Program.

"Collective Arbitration" means any claim as part of a class, group, collective, coordinated, consolidated, mass, or representative proceeding.

"Content" means text, graphics, user interfaces, visual interfaces, photographs, trademarks, logos, trade dress, sounds, music, artwork, computer code, and other material used, displayed, or available as part of the Platform. Content includes Gold Coins and Sweepstakes Coins.

"Customer Account(s)" means an account held by a Registered Customer who has verified their associated email address.

"Dispute(s)" means any and all past, present, and future disputes, claims, or causes of action arising out of or relating to these Terms, the Platform, or any other dispute between you and Modo or any of Modo's affiliates, licensors, distributors, suppliers, or agents.

"Excluded Territory" means the States of Washington, Montana, Nevada, Michigan, and Idaho, as well as any U.S. territory or possession, and any other jurisdiction outside of the United States.

"Game(s)" means any of the games available on the Platform in either Standard Play or Promotional Play. We reserve the right to add and remove games from the Platform at our sole discretion.

"Gold Coin(s)" means the virtual tokens which enable you to play the Games in Standard Play for social and entertainment purposes only. We may give you Gold Coins free of charge when you sign up to a Platform and thereafter at regular intervals when you log into a Platform, and you may purchase Gold Coins. Gold Coins have no monetary value and cannot under any circumstance be redeemed for Prizes.

"Inactive Account(s)" means a Customer Account which has not recorded any log in or log out for a period exceeding twelve (12) consecutive months.

"Mark(s)" means the MODO mark and any of our other trademarks, service marks, logos, trade names, business names, or other source identifiers.

"Minor(s)" means any person under the relevant age of majority in the relevant jurisdiction; in the United States, a Minor is generally anyone under the age of eighteen (18) years.

"Modo" or "us", "our", "ours", etc. means ARB Gaming, LLC d/b/a Modo.us. Modo.us a Delaware Limited Liability Company with a registered business address at 13802 N Scottsdale Rd STE 151-94, Scottsdale, Arizona 85254.

"Payment Medium" means any card, online wallet, financial/bank account or other payment medium used to purchase Gold Coins.

"Platform" means the social casino, sweepstakes, and related services provided through any URL belonging to or licensed to Modo, including the website located at https://www.modo.us and all subdomains, subpages, mobile versions, and successor sites thereof, including all Games, Content, features, tools, and services available thereon, whether in whole or any part thereof.

"Player" or "you", "your", "yours," etc. means any user, whether or not a Registered Customer.

"Prize(s)" means Sweepstakes Coins won when playing the Games in Promotional Play, and the cash or other things of value that may be redeemed in exchange for those Sweepstakes Coins, in accordance with the Promo Rules.

"Prohibited Conduct" means any of the conduct described in Section D(1).

"Promo Rules" means the **Promo Rules** available on the Platform.

"Promotional Play" means participation in our sweepstakes promotions by playing any Games with Sweepstakes Coins for a chance to win Prizes.

"Referral" means a new user that subscribes to the Platform and establishes a valid Customer Account using your Referral Link.

"Referral Link" means your personalized referral link.

"Referral Program" means the referral program by which you may be rewarded for referring new users to the Platform, as described in Section F below.

"Registered Customer" means a Player who has successfully registered a Customer Account, whether that Customer Account is considered active or not.

"Standard Play" means playing in any Game on the Platform with Gold Coins for social and entertainment purposes only. You may win more Gold Coins when you play the Games in Standard Play. You cannot win Prizes when you play the Games in Standard Play.

"Sweepstakes Coins" means free entries to our sweepstakes promotion. Use of the Sweepstakes Coins is subject to the Promo Rules. We may give you Sweepstakes Coins free of charge when you sign up to a Platform, as a bonus when you purchase Gold Coins or via each of our free alternative methods of entry as set out in the Promo Rules. You may use the Sweepstakes Coins in Promotional Play to win Prizes. YOU CANNOT PURCHASE SWEEPSTAKES COINS.

"Terms" means these Terms and Conditions, as amended from time to time.

"Third Party Website" means a third-party website not controlled by us.

"USD" means United States Dollar.

## B. ACCESS

You accept and agree to our website policies, including these Terms, and you certify to us that:

(a) you are not a resident of and are not accessing the Platform from any Excluded Territory,

(b) you are not a Minor,

(c) you have the legal capacity to enter into and agree to these Terms,

(d) you are using the Platform freely, voluntarily, willingly, and for your own personal enjoyment, and

(e) you will only provide accurate and complete information to us and promptly update this information as necessary to maintain its accuracy and completeness.

We reserve the right to revise these Terms at any time. You agree that we have this unilateral right, and that all modifications or changes are in force and enforceable immediately upon posting. An updated or revised version of these Terms immediately and retroactively supersedes any prior versions immediately upon posting, and the prior version is of no continuing legal effect unless the revised version specifically refers to the prior version and keeps the prior version or portions thereof in effect. We agree that if we change anything in these Terms, we will change the "Last Updated" date at the top of these Terms. You agree to re-visit this page on a frequent basis, and to use the "Refresh" button on your browser when doing so. You agree to note the date above. If the "Last Updated" date remains unchanged from the last time you reviewed these Terms, then you may presume that nothing in these Terms has changed since the last time you visited. If the "Last Updated" date has changed, then you must review the updated Terms in their entirety. You must agree to any updated Terms or immediately cease use of the Platform. If you fail to review these Terms as required to determine if any changes have been made, you assume all responsibility for such omission, and you agree that such failure amounts to your affirmative waiver of your right to review the updated Terms. We are not responsible for your neglect of your legal rights.

**Modo does not provide gambling services. Modo does not take or place illegal bets. Modo does not recommend or encourage illegal gambling.** Modo offers entertaining online social casino games and related sweepstakes promotions which do not trigger the prohibitions imposed by state and federal gambling laws in those states where Modo operates. Gambling, whether in person or online, is not legal in all areas. If you seek information regarding any illegal activity, you must leave the Platform immediately and shall not attempt to use the Platform. You agree not to use the Platform if doing so would violate the laws of your state, province, or country. Please consult with your local authorities or legal advisors before participating in online gaming of any kind. It is your sole and absolute responsibility to comply with all applicable laws, and you assume all risk in using the Platform. Nothing published on the Platform or by Modo shall be construed as legal advice on any issue. **You assume all risk and responsibility for your use of the Platform. We bear no responsibility for your use of the Platform in connection with illegal gambling activities, and we do not condone illegal gambling. You understand and agree that the Platform is for entertainment purposes only. We make no guarantee that the Platform is legal in your jurisdiction.**

## C. ACCOUNTS

1. Registration

All users may register for a single Customer Account on the Platform, provided you meet the requirements set forth herein and otherwise abide by these Terms. Users will not register more than one Customer Account. If you register more than one Customer Account, we may temporarily suspend or permanently terminate any or all of your Customer Accounts.

2. Gold Coins and Sweepstakes Coins

To purchase Gold Coins, you must provide a valid Payment Medium. The Payment Medium you use to purchase Gold Coins must be legally and beneficially owned by you and in your name. If it comes to our attention that the name you registered on your Customer Account and the name linked to your Payment Medium differ, your Customer Account will be immediately suspended. We reserve the right to request documents and information to verify the legal and beneficial ownership of the Payment Medium you use to make Gold Coin purchases.

GOLD COIN PURCHASES MADE FROM ANY EXCLUDED TERRITORY WILL BE VOIDED AND REFUNDED, MINUS AN ADMINISTRATIVE FEE OF UP TO 10% OF THE TOTAL PURCHASES MADE BY THE PLAYER, IN ADDITION TO ANY CHARGES THAT MAY BE LEVIED BY THE BANK OR FINANCIAL INSTITUTION MANAGING THE AFOREMENTIONED REVERSAL.

Purchases of Gold Coins are final and are not refundable, transferable, or exchangeable. You agree to notify us about any billing problems or discrepancies within 30 days from the date of your purchase. If you do not bring them to our attention within 30 days, you agree that you waive your right to dispute such problems or discrepancies. You are responsible for and agree to reimburse us for all reversals, charge-backs, claims, fees, fines, penalties, and any other liability incurred by us (including costs and related expenses) that were caused by or arising out of payments that you authorized or accepted or that were authorized or accepted using your Customer Account (even if not authorized by you).

All Gold Coin purchases and direct bank transfer payments are executed in USD. It is a Player's responsibility to ensure that their nominated bank account can accept transactions in USD. All foreign exchange transaction fees, charges, or related costs that you may incur as a result of, or in relation to, payments made by Modo to you are to be borne solely by you, including any losses or additional costs arising from foreign exchange fluctuations.

From time to time, we may provide you with Sweepstakes Coins to play the Games in Promotional Play for a chance to win Prizes. To redeem Prizes in accordance with our **Promo Rules,** you must submit valid and current banking or wallet details and any necessary information and documentation. Sweepstakes Coins are only valid for 60 days from the date you last logged on to your Customer Account and will thereafter automatically expire. Sweepstakes Coins may be forfeited if a Customer Account is closed for any reason, or at our sole and exclusive discretion.

You will not transfer, receive, acquire, dispose of, or sell Gold Coins or Sweepstakes Coins in any manner, including to or from other Customer Accounts or Players. Any attempt to circumvent this prohibition is grounds for immediate closure of your Customer Account, without prejudice to any other rights or remedies available to us.

You may participate in any Game only if you have sufficient Gold Coins or Sweepstakes Coins (as applicable) in your Customer Account. We will not extend you any credit whatsoever for the purchase of Gold Coins or otherwise.

### 3. Accuracy of Information

If you fail to provide the required information for your Customer Account, if we reasonably believe that you have provided false, misleading, inaccurate, incomplete, not current, or otherwise incorrect information to us, if you fail to promptly update such information to maintain its accuracy and completeness, or if we or any of our authorized agents have reasonable grounds to suspect that a violation of this provision has occurred, we may suspend or terminate your Customer Account, as well as subject you to criminal and civil liability. Acceptance of registration is subject to our sole discretion. While we may require you to provide additional information as necessary to verify the accuracy of your identity and the information you provide to us, you understand and agree that we do not sponsor or endorse any user.

### 4. No Account Sharing

You will not use, attempt to access, or ask for the login credentials for any third party's Customer Account at any time. You will not allow any third party to access or use your Customer Account at any time, nor provide any third party with your login credentials. We will not be liable for any loss that you may incur as a result of any third party that uses your password or otherwise accesses your Customer Account, either with or without your knowledge. You will be liable for losses incurred by us or any third party due to release of your login credentials to unauthorized persons.

### 5. Termination by You

You may delete your Customer Account by emailing support@modo.us and requesting deletion. You will not assign, transfer, sell, or share your Customer Account. If you do, both you and any unauthorized user are jointly and severally liable for any fees that will be due.

### 6. Termination by Modo

We may suspend or delete your Customer Account or any licenses granted herein at any time, for any reason, in our sole discretion. Closing your Customer Account will forfeit all continued access to and right to use, enjoy, or benefit from any Gold Coins, Sweepstakes Coins, and unredeemed Prizes associated with your Customer Account. If the reason behind the closure of your Customer Account is related to concerns about possible responsible social gameplay issues you must indicate this in your request to close your Customer Account. We have the right to terminate your Customer Account and membership on the Platform at any time, and you will be responsible for all charges to your Customer Account at the time of termination. We are not responsible for preserving terminated account information which may be permanently deleted in our discretion.

## C. GRANT OF RIGHTS

You understand that all Modo is offering you is access to the Platform to play the Games as we provide them from time to time. You need to provide your own access to the Internet, hardware, and software, and you are solely responsible for any fees that you incur to access the Platform. All users may access certain public areas of the Platform, play the Games, and access the Content, free of charge. We grant all users a limited, nonexclusive, revocable, and nontransferable personal license to access and use only the Content provided on free areas of Platform for private, non-commercial purposes on a single computer or mobile device. This free license does not include a license to access or use paid areas of the Platform, or Content available therein. We also grant you a limited, nonexclusive, revocable, and nontransferable personal license to access the Platform, play the Games, and access the Content, as limited by your additional purchase of certain paid features and upgrades and your participation in qualifying activities as described in the Promo Rules. This paid or promotional license is for private, non commercial purposes on a single computer or mobile device. We reserve the right to limit the Content viewed or Games available to you. Your license to access the Platform, play the Games, and access the Content is not a transfer of title. You will not copy or redistribute any Content, and you will prevent others from unauthorized access, use of, or copying of Content.

## D. PROHIBITED USE POLICY

### 1. Prohibited Conduct

You agree that you will only use the Platform for purposes expressly permitted and contemplated by these Terms. You may not use the Platform for any other purposes without our express prior written consent. Without our express prior written authorization, you will not:

(a) use the Platform for any purpose other than as offered by us, including using the Platform in any way that is prohibited by these Terms or that is violative of any applicable law, regulation, or treaty of any applicable governmental body, including: (i) laws prohibiting illegal gambling; (ii) intellectual property right laws protecting patents, copyrights, trademarks, trade secrets, and any other intellectual property right, including making, obtaining, distributing, or otherwise accessing illegal copies of copyrighted, trademarked, or patented materials, deleting intellectual property right indications and notices; (iii) laws against obscene, lewd, defamatory, or libelous speech; (iv) laws protecting confidentiality, privacy rights, publicity rights, or data protection, and (v) laws pertaining to illegal money transfers and money laundering.

(b) fail to comply with orders, judgments, or mandates from courts of competent jurisdiction.

(c) link to the Platform on any Third Party Website in any way that is illegal, unfair, or damages or takes advantage of our reputation, including any link which establishes or suggests a form of association, approval, or endorsement by us where none exists.

(d) impersonate another individual or entity, whether actual or fictitious; falsely claim an affiliation with any individual or entity; access the Customer Accounts of others without permission; misrepresent the source, identity, or materials of the Content; collect the personal information of other Players or third parties; or perform any other similar fraudulent activity, or engage in Prohibited Conduct.

(e) engage in manipulation of the Platform, including utilizing bots or other fraudulent means to

(i) manipulate the Platform, whether for the purpose of cheating, collusion, or otherwise, or (ii) artificially drive traffic to or inauthentically generate engagements with your Customer Account, including your Link and hyperlinks to Third Party Websites.

(f) circumvent, disable, damage, or otherwise interfere with the operations of the Platform, any user's enjoyment of the Platform, or our security-related features or features that prevent, limit, or restrict the use or copying of the Platform that enforce limitations on the use of the Platform or the Content, by any means, including hacking, mining, phishing, posting, linking to, uploading, or otherwise disseminating viruses, adware, spyware, malware, logic bombs, Trojan horses, worms, harmful components, corrupted data, or other malicious code, file, or program designed to interrupt, destroy, limit, or monitor the functionality of any computer software or hardware or any telecommunications equipment.

(g) modify, reverse engineer, reverse-assemble, decompile, disassemble, or otherwise discover the source code of the Platform, except and only if that activity is expressly permitted by applicable law despite this limitation.

(h) access or use any automated process (such as a robot, spider, scraper, or similar) to access the Platform in violation of our robot exclusion headers or to scrape all or a substantial part of the Content (other than in connection with bona fide search engine indexing or as we may otherwise expressly permit).

(i) modify, adapt, translate, or create derivative works based on the Platform, or any part of them, except and only if applicable law expressly permits that activity despite this limitation.

(j) commercially exploit or make available the Platform to third parties including any action to frame or mirror the Platform.

(k) take any action that imposes or may impose (in our sole discretion) an unreasonable or disproportionately large load on our technology infrastructure or otherwise make excessive demands on it.

(l) attempt to do any of the acts described in this Section D(1) or assist or permit any person in engaging in any of the acts described in this Section D(1).

Engaging in any Prohibited Conduct will be considered a breach of these Terms, and may result in immediate suspension, or termination of your Customer Account and access to the Platform, without notice, in our sole discretion. We may pursue any legal remedies or other appropriate actions against you if you engage in any Prohibited Conduct, including civil, criminal, or injunctive relief, and forfeiture of Prizes. Any unauthorized use of the Platform violates these Terms and certain international, foreign, and domestic laws.

2. Reporting Violative Activities

If you are aware of any user engaging in activities that violate these Terms, please email us at

support@modo.us with as much detail as possible, including a description of the objectionable activities, the email or User ID of the individual engaging in suspicious activities, the date and

time of identification, the reason we should investigate the activities, and a statement certifying the accuracy of the information you provided to us.

### 3. Law Enforcement

We will fully cooperate with law enforcement authorities or orders from courts of competent jurisdiction, requesting or directing us to disclose the identity or location of any user in breach of these Terms, in accordance with our **Privacy Policy**, law enforcement policies, and applicable laws and regulations. If your activity results in Modo receiving a subpoena, discovery request, production order, search warrant, or court order that causes Modo to incur expenses, court costs, or legal fees for compliance, you agree to reimburse us for any such expenses, costs or legal fees upon our request.

### 4. Anti-Money Laundering

We monitor all transactions in order to prevent money laundering. If Modo suspects that you may be engaging in, or have engaged in money laundering activities, your access to the Platform will be suspended immediately and your Customer Account may be closed. If your Customer Account is suspended or closed under such circumstances, Modo is under no obligation to reverse any Gold Coin purchases you have made, nor is Modo under any obligation to allow use of any Sweepstakes Coins nor redemption of any Prizes that may be associated with your Customer Account. In addition, Modo may pass any necessary information on to the relevant authorities, other online service providers, banks, credit card companies, electronic payment providers, or other financial institutions. You will cooperate fully with any Modo investigation into such activity. If you suspect any unlawful or fraudulent activity or prohibited transaction by another Player, please notify us immediately by sending an email to support@modo.us.

## E. BILLING AND PAYMENTS

### 1. Purchases

If you provide valid and current payment information, you may purchase Gold Coins at the currently displayed price. Gold Coins have no cash value and are for social and entertainment purposes only. In some instances, we may provide users who purchase Gold Coins or who engage in other qualifying activities with free Sweepstakes Coins in accordance with our **Promo Rules**. Sweepstakes Coins are **never** available for purchase. Unused Gold Coins and Sweepstakes Coins are not eligible for any full or partial refunds. Gold Coins and Sweepstakes Coins may be deleted from Inactive Accounts.

We reserve the right to charge additional fees for access to the Platform or any other feature or service of Modo, and to change our fee structure at our discretion. All previous offers or discounts are unavailable once removed from the Platform.

You agree to pay any and all fees or account charges related to any fees, taxes, charges, purchases, or upgrades associated with your Customer Account, immediately when due in

accordance with our stated billing policy, or that of our third-party billing agent. You acknowledge that the charge on your banking statement may display our company name, one of our brand names, or our third-party billing agent's name. You understand and agree that you are responsible for any and all fees or penalties that are associated with your Customer Account. Your Customer Account will be deemed past due if it is not paid in full by the payment due date. If you utilize a credit or debit card as means of payment, your card issuer agreement may contain additional terms with respect to your rights and liabilities as a card holder. You agree to pay any and all amounts due immediately upon cancellation or termination of your Customer Account.

2. Prizes

If you win Prizes according to our **Promo Rules,** we will allow you to redeem the Prizes for cash which we will transfer to you in your selected Payment Medium, minus any processing fees based on your payment selection or otherwise associated with your Customer Account, provided you have met the minimum payment threshold, except that Prizes in excess of ten thousand dollars ($10,000.00) may, at our election, be made by us to you in weekly installments. If you are a resident of New York and Florida, the maximum redemption value for a Prize won on any single spin or play is five thousand dollars ($5,000). If you are a resident of New York and Florida, any Prize with a value in excess of five thousand dollars ($5,000) will be reduced to a maximum value of five thousand dollars ($5,000). You are responsible for providing accurate bank account or Payment Medium details identifying where Prizes will be sent. You must own or control the account associated with your Payment Medium, and you agree to provide us with such information as we may request to confirm your ownership or control. We reserve the right to charge fees for processing the redemption of Prizes to you and to set a minimum redemption threshold for Prize redemptions. You cannot request a Prize redemption until you have met the minimum payment threshold as displayed on the Platform. We may set off any liability, damages, costs, or expenses that we incur arising from or relating to your breach of these Terms against any money that we owe to you under these Terms. We may also adjust or deduct the monies transferred to your Customer Account or payment account for any reason, at any time, without advance warning or notice, including retroactively. The most common reasons for transfer adjustments include customer refunds, fraud, conduct violations, and technical errors.

3. Taxes

You shall be responsible for payment of all taxes, and we will not be responsible for any federal income tax withholding, unemployment contribution, workers compensation, Medicare / Medicaid, or any employment-related benefits. If requested, you will provide us with a Social Security Number or Taxpayer Identification Number, so that an IRS Form 1099 may be issued where required by law. Failure to provide such information to us may result in termination of these Terms.

4. Third-Party Payment Processing

We utilize various third-party payment processors and gateways, and we reserve the right to contract with additional third-party payment processors and gateways in our sole discretion to process any and all payments associated with the Platform. Such third parties may impose

additional terms and conditions governing payment processing. You are responsible for abiding by such terms. We further disclaim any liability associated with your violation of such terms.

### 5. Changes to Your Billing Information

You must promptly inform our third-party billing agent of all changes, including changes in your address and changes in your credit or debit card used in connection with billing or payment through the Platform, if applicable. You are responsible for any credit card charge backs, dishonored checks, and any related fees that Modo incurs with respect to your Customer Account, along with any additional fees or penalties imposed by our third-party billing agent.

### 6. Chargebacks

If you make a purchase on the Platform that results in a chargeback, we may terminate your Customer Account. You agree to contact us to seek a resolution of any issue before initiating a chargeback. We reserve the right to reverse the dispersal of any Sweepstakes Coins, and to withhold or cancel any Prizes generated from Sweepstakes Coins, associated with Gold Coin purchases that result in a chargeback.

### 7. Changes to Our Billing Methods

We reserve the right to make changes at any time to our fees and billing methods, including the addition of administrative or supplemental charges for any feature, with or without prior notice to you.

### 8. Refunds

You understand and agree that it is our standard policy that all purchases are final and nonrefundable. We reserve the right to address all refund requests in our sole discretion. In no instance will a refund be provided where the user initiates a chargeback.

### 9. Billing Errors

If you believe that you have been erroneously billed for activity associated with your Customer Account, please notify our third-party billing agent immediately of such error. If you do not do so within thirty (30) days after such billing error first appears on any Customer Account statement, the fee in question will be deemed acceptable by you for all purposes, including resolution of inquiries made by or on behalf of your banking institution. You release us from all liabilities and claims of loss resulting from any error or discrepancy that is not reported within thirty (30) days of the bill being rendered to you. These Terms shall supplement and be in addition to any terms required by third party billing entities we engage to provide billing services. You are responsible for review and compliance with such entity's terms in addition to those contained in these Terms.

### 10. Fraudulent Use of Credit Cards

We take credit card fraud very seriously. Discovery that you have used a stolen or fraudulent credit card will result in the notification of the appropriate law enforcement agencies and

termination of your Customer Account.

## F. REFERRAL PROGRAM

### 1. Participation and Termination

By participating in the Referral Program, you accept and agree to comply with this Section F and our **Promo Rules**. We may terminate your participation in the Referral Program for any reason or no reason, in our sole and absolute discretion. If you violate any provision of this Section F, you will forfeit all right to any unpaid and future commissions on Referrals.

### 2. Sweepstakes Coins for Referrals

We may allow you to participate in the Referral Program to provide marketing services in exchange for free Sweepstakes Coins as described on our **Referral Program** page for the first ten (10) Referrals who have completed our customer verification process and made at least twenty dollars ($20.00) in purchases on the Platform. We may alter the number of free Sweepstakes Coins that you will receive for each eligible Referral from time to time in our discretion without notice to you, and without penalty to us. Any changes to the number of free Sweepstakes Coins that you will receive for each eligible Referral will only be applied to Referrals sent to us after the publication of the change. You agree that you will periodically check the **Referral Program** page, and your continued participation in the Referral Program manifests your assent to any changes in the number of free Sweepstakes Coins that you will receive for each eligible Referral.

We will issue the appropriate number of Sweepstakes Coins to your Customer Account for all qualifying Referrals, except that we may deduct an amount of Sweepstakes Coins associated with any Referral that results in a refund or chargeback or any issuance of Sweepstakes Coins resulting from fraud, Prohibited Conduct, other illegal activity, technical error, or as required by law. No Sweepstakes Coins will be issued for Referrals that are in violation of this Section F or any other provision of these Terms. We may temporarily withhold any free Sweepstakes Coins associated with a Referral if we reasonably believe a violation of these Terms has occurred until such time as an investigation can be conducted and a determination can be made. You shall forfeit all free Sweepstakes Coins associated with Referrals if, due to inaccurate, incomplete, or outdated Customer Account information provided by you, we are unable to issue a disbursement to you within six (6) months of the Referral associated with those Sweepstakes Coins.

### 3. Channel Information

You may market, advertise, and promote the Platform by sharing your Referral Link on your Channels. You shall be solely responsible for the Channel Information. You represent and warrant that you own or operate the Channels, and that the Channel Information does not infringe upon or violate any applicable law, rule, or regulation, including intellectual property and publicity rights. We shall have no obligations with respect to the Channel Information, including any duty to review or monitor any such Channel Information. You agree to indemnify us for any claims, charges, debts, allegations, or lawsuits arising out of any Channel Information or other information appearing on the Channels.

4. <u>Grant of Rights in the Marks</u>

We grant you a limited, revocable, non-exclusive right to use our Marks and your Referral Link on the Channels solely for the purposes of your participation in the Referral Program. You may only use the Marks on the Channels in a manner that accurately and appropriately displays the high quality nature of the Platform, and you hereby agree not to take any action that would impair or diminish the value of, or the goodwill associated with, the Marks, including using the Marks in a manner that disparages or portrays us or our products or services in a false, competitively adverse, or poor light. We will immediately terminate this license if we discover that you are using our Marks in any manner not authorized by this Section F(4).

Your use of the Marks shall inure to our benefit. You will not register any domain name or account on any Third Party Website that contains or is confusingly similar to any Mark belonging to us, and you agree that, if you do, you will immediately disable the offending domain name or account on any Third Party Website upon our demand and at your expense, or that, if you fail to immediately do so, you will reimburse us for all fees incurred in order to enforce these obligations, including attorneys' fees and costs associated with filing a domain dispute complaint.

You agree that the Marks are and shall remain our property, and that nothing in these Terms conveys to you any right of ownership in the Marks. You will not now nor in the future contest the validity of the Marks.

5. <u>Code of Conduct for Referral Program Participants</u>

We reserve the right to terminate your participation in the Referral Program at any time and for any reason, or no reason, in our sole and absolute discretion. Reasons for refusal or acceptance or termination of participation may include violation of the Code of Conduct, or the other provisions of this Section F(5).

You must fully comply with state or federal consumer protection statutes, regulations, rules, policies, or advisory opinions. You will notify us of any inquiries or concerns made, accusing you of or investigating you for any activities related to the Referrals that are questionable, illegal, or otherwise violate these Terms.

You will not:

(a) Use deceptive, unlawful, or unfair promotional tactics or devices, such as manipulating search engine results, or otherwise engaging in activity that is false, misleading, infringing, manipulative, or deceptive in order to drive traffic through your Referral Link or to your Channels.

(b) Use any meta-tags, key words, pay-per-click advertising campaigns, or other marketing tactics that would imply or suggest that illegal activities occur on the Platform or the Channels, or otherwise market Modo or the Channels to those seeking to engage in illegal activities.

(c) Transmit or distribute your Referral Link to any Minors.

(d) Solicit or permit a Minor to become a user of the Platform.

(e) Use any form of unlawful email promotion to promote your Referral Link or the Channels. (f) Violate the policies of any Third Party Website while sharing your Referral Link.

(g) Engage in any activities that, in our sole discretion, are harmful to our image, goodwill, or reputation.

(h) Attempt to do any of the acts described in this Section F(5) or assist or permit any person in engaging in any of the acts described in this Section F(5).

6. Access to the Channels

During your participation in the Referral Program, you agree to provide us with the means necessary to monitor the source of traffic you send to us, although we undertake no obligation to do so. To that end, and solely for that purpose, if the Channels have any method of access restrictions in place, you agree to send us valid access credentials to any password-protected area of the Channels within twenty-four (24) hours of receiving a request for such access by us. You agree that we shall not be charged or incur any expense from you for such access.

## G. DISPUTE RESOLUTION AND DAMAGES

1. Mandatory Arbitration

PLEASE READ THIS SECTION G CAREFULLY BECAUSE IT MAY REQUIRE YOU AND MODO TO ARBITRATE ANY DISPUTE ON AN INDIVIDUAL BASIS AND IT LIMITS THE MANNER IN WHICH YOU AND MODO CAN SEEK RELIEF FROM EACH OTHER. This Section G will be construed under and be subject to the Federal Arbitration Act, notwithstanding any other choice of law set out in these Terms.

By agreeing to these Terms, and to the extent permitted by applicable law, you and Modo agree that any Dispute will be governed by the procedure outlined below. You and Modo further agree that any arbitration pursuant to this Section G(1) shall not proceed as a class, group, or representative action.

By agreeing to these Terms, and to the extent permitted by applicable law, you agree to resolve any Disputes — including any Dispute concerning the enforceability, validity, scope, or severability of this agreement to arbitrate — through final and binding arbitration.

You may decline this agreement to arbitrate by contacting arbitrationoptout@modo.us within 30 days of first accepting these Terms. Your email must include your first and last name and a statement that you decline this arbitration clause. By opting out of this clause, you will not be precluded from using the Platform, but neither you nor Modo will be able to invoke the mutual agreement to arbitrate to resolve Disputes. Whether to agree to arbitration is an important decision. It is your decision to make and you are not required to rely solely on the information provided in these Terms. You should take reasonable steps to conduct further research and, if you wish, to consult with counsel of your choice.

You agree that the AAA will administer the arbitration under the AAA Rules, that arbitration will proceed on an individual basis, that arbitration will be handled by a sole arbitrator in accordance with the AAA Rules, that the AAA Rules will govern payment of all arbitration fees, that except as otherwise may be required by the AAA Rules, the arbitration will be held in Orange County, Florida, or, at your election, conducted via telephone or other remote electronic means, that the arbitrator shall be authorized to award any remedies, including injunctive relief, that would be available to you in an individual lawsuit and that are not waivable under applicable law, and that except as and to the extent otherwise may be required by law, the arbitration proceeding and any award shall be confidential.

Notwithstanding any language to the contrary in this Section G(1), if a party seeks injunctive relief that would significantly impact other Modo users as reasonably determined by either party, the parties agree that such arbitration will proceed on an individual basis but will be handled by a panel of three (3) arbitrators. Each party shall select one arbitrator, and the two party-selected arbitrators shall select the third, who shall serve as chair of the arbitral panel. That chairperson shall be a retired judge or an attorney licensed to practice law and with experience arbitrating or mediating Disputes. In the event of disagreement as to whether the threshold for a three arbitrator panel has been met, the sole arbitrator appointed in accordance with this clause shall make that determination. If the arbitrator determines a three-person panel is appropriate, the arbitrator may - if selected by either party or as the chair by the two party-selected arbitrators - participate in the arbitral panel.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER YOU NOR MODO SHALL BE ENTITLED TO CONSOLIDATE, JOIN, OR COORDINATE DISPUTES BY OR AGAINST OTHER INDIVIDUALS OR ENTITIES, OR PARTICIPATE IN ANY COLLECTIVE ARBITRATION OR ARBITRATE OR LITIGATE ANY DISPUTE IN A REPRESENTATIVE CAPACITY, INCLUDING AS A REPRESENTATIVE MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY OR OTHERWISE SEEK TO RECOVER FOR LOSSES INCURRED BY A THIRD PARTY. IN CONNECTION WITH ANY DISPUTE, ANY AND ALL SUCH RIGHTS ARE HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVED. NOTWITHSTANDING ANYTHING TO THE CONTRARY SET FORTH IN THIS AGREEMENT, IN THE EVENT ALL OR ANY PORTION OF THIS SECTION G(1) IS FOUND TO BE INVALID OR LESS THAN FULLY ENFORCEABLE, THEN THE ENTIRETY OF SECTION G(1) MAY BE DEEMED VOID AND AS HAVING NO EFFECT UPON EITHER PARTY'S ELECTION.

## 2. Governing Law and Venue

These Terms and all matters arising out of, or otherwise relating to, these Terms shall be governed by the laws of the State of Florida, excluding its conflict of law provisions. The sum of this Section G(2) is that any and all Disputes that do not proceed to arbitration as set forth in Section G(1) above must be, without exception, resolved in Orange County, Florida. All parties to these Terms agree that all actions or proceedings arising in connection with these Terms or any services or business interactions between the parties that may be subject to these Terms shall be brought exclusively in Orange County, Florida.

The parties agree to *exclusive jurisdiction and venue in, and only in, Orange County, Florida.* The parties additionally agree that this choice of venue and forum is mandatory and not permissive in nature, thereby precluding any possibility of litigation between the parties with respect to, or arising out of, these Terms in a jurisdiction other than that specified in this Section G(2).

All parties hereby waive any right to assert the doctrine of forum non-conveniens or similar doctrines challenging venue or jurisdiction, or to object to venue with respect to any proceeding brought in accordance with this Section G(2) or with respect to any Dispute.

All Parties stipulate that the courts located in Orange County, Florida shall have personal jurisdiction over them for resolution of any litigation permitted by these Terms. You agree to accept service of process by registered or certified mail, Federal Express, or Priority Mail, with proof of delivery or return receipt requested, sent to your last known address for any legal action arising from these Terms. Any final judgment rendered against you or us in any action or proceeding shall be conclusive as to the subject matter and may be enforced in the courts located in Orange County, Florida or other jurisdictions in any manner provided by law if such enforcement becomes necessary.

### 3. Waivers

In consideration of your use of the Platform, you hereby waive any right or ability to initiate any class action, group, or representative claim or collective proceeding, along with any right to trial by jury.

### 4. Rights to Injunctive Relief

You acknowledge that remedies at law may be inadequate to provide us with full compensation in the event you breach these Terms, and that we shall therefore be entitled to seek injunctive relief in the event of any such breach, in addition to seeking all other remedies available at law or in equity.

### 5. Additional Fees

If we are required to enlist the assistance of an attorney, investigator, collections agent, or other person to collect any damages or any other amount of money from you, or if we are required to seek the assistance of an attorney to pursue injunctive relief against you, then you additionally agree that you will reimburse us for all fees incurred in order to collect these damages or in order to seek injunctive relief from you. You understand that even a nominal amount of damages may require the expenditure of extensive legal fees, travel expenses, costs, and other amounts that may dwarf the damages themselves. You agree that you will pay these fees and costs.

## H. DISCLAIMERS

### 1. All Warranties Are Disclaimed

We provide access to the Platform "as is" and "with all faults." We make no warranty that the Platform will meet your needs or requirements. *We disclaim all warranties* — express, statutory, or implied — including warranties of merchantability, fitness for a particular purpose,

workmanlike effort, quality, suitability, truthfulness, usefulness, performance, accuracy, completeness, reliability, security, title, exclusivity, quiet enjoyment, non-infringement, and warranties that your access to and use of the Platform will be uninterrupted, timely, secure, error free, or that loss of materials will not occur, to the greatest extent provided by applicable law. We may change any of the information found on the Platform at any time or remove any or all Content thereon. We make no commitment to update the Content. We make no warranty regarding any goods or services purchased or obtained through the Platform or any transaction entered into through the Platform. There are no warranties of any kind that extend beyond the face of these Terms or that arise because of course of performance, course of dealing, or usage of trade.

2. Use at Your Own Risk

You expressly agree that access to the Platform is at your own and sole risk. You understand that we cannot and do not guarantee or warrant that the Platform will be free of viruses, malware, worms, Trojan horses, or other code that may manifest contaminating or destructive properties. We do not assume any responsibility or risk for your access to or use of the Internet, the Platform. You understand and agree that any Content downloaded or otherwise obtained through the Platform is done at your own discretion and risk, and that you will be solely responsible for any damage to your computer system or loss of data that results from your activity.

3. Third-Party Links

The Platform may contain links to websites or resources owned and operated by our users or third parties. You understand and agree that we have no control over, are not responsible for, and do not screen nor warrant, endorse, guarantee, or assume responsibility for the goods or services provided by our users or on third-party links. We will not be a party to or be in any way responsible for monitoring any transaction between you and other providers of products or services. As with the purchase of a product or service through any medium or in any environment, you should use your best judgment and exercise caution where appropriate. You agree to hold us harmless from any and all damages and liability that may result from use of third-party links that appear on the Platform, and any advertising, services, goods, products, or other materials available on third-party links. We are not responsible for any use of confidential or private information by sellers or third parties. You agree that your use of any third-party link or the goods or services provided thereon is governed by the policies of those third parties, not by these Terms or our other policies. We reserve the right to demote or remove any link at any time.

4. Violations of Law

Access to and use of the Platform in violation of any law is strictly prohibited. If we determine that you have provided or intend to use the Platform in a manner that violates any law, your ability to access the Platform will be terminated immediately. We do hereby disclaim any liability for damages that may arise from you or any user providing any services that violates any law. You do hereby agree to defend, indemnify, and hold us harmless from any liability that may arise for us should you violate any law. You also agree to defend and indemnify us should any

third party be harmed by your illegal actions or should we be obligated to defend any such claims by any party.

## I. INDEMNIFICATION

You agree to defend, indemnify, and hold harmless Modo, its officers, directors, shareholders, employees, independent contractors, telecommunication providers, and agents, from and against any and all claims, actions, loss, liabilities, expenses, costs, or demands, including without limitation legal and accounting fees, for all damages directly, indirectly, or consequentially resulting or allegedly resulting from your actions, or the actions of another person under your authority, including without limitation to governmental agencies, use, misuse, or inability to use the Platform, or any breach of these Terms by you or another person under your authority. We shall promptly notify you by electronic mail of any such claim or suit, and we may cooperate fully (at your expense) in the defense of such claim or suit. We reserve the right to participate in the defense of such claim or suit at our own expense, and choose our own legal counsel; however, we are not obligated to do so.

## J. LIMITATION OF LIABILITY

You acknowledge that we will not be liable to you for user-generated content or the offensive or illegal conduct of any person. You understand that the risk of harm or damage from this rests entirely with you, and you expressly release us from any liability arising out of user-generated content or the conduct of any person. You discharge, acquit, and otherwise release us, our parent company, agents, employees, officers, directors, shareholders, attorneys, and affiliates, from any and all allegations, counts, charges, debts, causes of action, and claims relating in any way to the use of, or activities relating to the use of the Platform including claims relating to the following: negligence, gross negligence, reckless conduct, alienation of affections (to the extent recognized in any jurisdiction), intentional infliction of emotional distress, intentional interference with contract or advantageous business relationship, defamation, privacy, publicity, intellectual property infringement, misrepresentation, infectious disease, illegal gambling, any financial loss not due to the fault of Modo, missed meetings, unmet expectations, false identities, fraudulent acts by others, invasion of privacy, release of personal information, failed transactions, purchases or functionality of the Platform, unavailability of the Platform, its functions and any other technical failure that may result in inaccessibility of the Platform, or any claim based on vicarious liability for torts committed by individuals met on or through the Platform, including fraud, Prohibited Conduct, theft or misuse of personal information, assault, battery, stalking, harassment, cyber-bullying, rape, theft, cheating, perjury, manslaughter, or murder.

The above list is intended to be illustrative only, and not exhaustive of the types or categories of claims released by you. This release is intended by the parties to be interpreted broadly in favor of Modo, and thus any ambiguity shall be interpreted in a manner providing release of the broadest claims. This release is intended to be a full release of claims, and the parties acknowledge the legally binding nature of this provision, and the nature of the rights given up in connection therewith.

We expressly disclaim any liability or responsibility to you for any of the following:

(1) Any loss or damage of any kind incurred because of the Content, including errors, mistakes, or inaccuracies of the Content or any Content that is infringing, obscene, indecent, threatening, offensive, defamatory, invasive of privacy, or illegal.

(2) Personal injury or property damage of any nature resulting from your access to and use of the Platform.

(3) Any third party's unauthorized access to or alterations of your Customer Account, transmissions, or data.

(4) Any interruption or cessation of transmission to or from Modo or the Platform and any delays or failures you may experience in initiating, conducting, or completing any transmissions to or transactions with Modo or the Platform.

(5) Any bugs, viruses, malware, Trojan horses, or the like that may be transmitted to or through the Platform by any third party.

(6) Any incompatibility between the Platform and your other services, hardware, or

software. **K. INTELLECTUAL PROPERTY**

1. Marks

We aggressively defend our intellectual property rights, including our Marks. Other manufacturers' product and service names referenced herein, including the names and logos of the Games, may be trademarks and service marks of their respective companies and are the exclusive property of such respective owners, and may not be used publicly without the express written consent of the owners or holders of such trademarks and service marks. The Marks may not be used publicly except with express written permission from us, and the Marks may not be used in any manner that is likely to cause confusion among consumers, or in any manner that disparages or discredits Modo.

2. Copyrights

The Content comprises our proprietary information and valuable intellectual property. We retain all right, title, and interest in such Content. The Content is protected by copyright law, and all rights to these works are hereby reserved (except as provided herein). The Content may not be copied, downloaded, distributed, republished, modified, uploaded, posted, or transmitted in any way without our prior written consent. You may not remove or alter, or cause to be removed or altered, any copyright, trademark, trade name, service mark, or any other proprietary notice or legend appearing on the Content. Modification or use of the Content except as expressly provided in these Terms violates our intellectual property rights.

**L. GENERAL**

1. Entire Agreement
These Terms and any other legal notice or agreement published by us on the Platform, forms the entire agreement between you and us concerning your use of the Platform. It supersedes all prior terms, understandings, or agreements between you and us regarding use of the Platform. A

printed version of these Terms and of any notice given in electronic form will be admissible in any proceedings based on or relating to these Terms. Such version of these Terms shall be utilized to the same evidentiary extent, and subject to the same conditions as other business documents and records originally generated and maintained in printed form.

## 2. Policies of Our Service Providers

You understand and agree that we may use certain third-party service providers to offer services to you. You understand and agree that you must agree to and abide by any user terms, privacy policy, or other policy that such third party requires you to agree to in order to use their services. In the event of a conflict between those policies and our policies, the terms of our policies shall govern.

## 3. Assignment and Delegation

We may assign any rights or delegate any performance under these Terms without notice to you. You will not assign, delegate, or sublicense any of your rights or duties without our advanced written consent. Any attempted assignment or delegation in violation of this provision will be void.

## 4. Severability

If any provision of these Terms is determined to be invalid, illegal, or unenforceable, the remaining provisions shall continue in full force, if the essential terms for each party remain valid, binding, and enforceable.

## 5. Cumulative Remedies

All rights and remedies provided in these Terms are cumulative and not exclusive, and the assertion by a party of any right or remedy will not preclude the assertion by the party of any other rights or the seeking of any other remedies available at law, in equity, by statute, in any other agreement between the parties, or otherwise.

## 6. Successors and Assigns

These Terms inure to the benefit of, and are binding on, the parties and their respective successors and assigns. This section does not address, directly or indirectly, whether a party may assign its rights or delegate its performance under these Terms.

## 7. Force Majeure

We are not responsible for any failure to perform because of unforeseen circumstances or causes beyond our reasonable control, including: Acts of God, such as fire, flood, earthquakes, hurricanes, tropical storms, or other natural disasters; epidemics; pandemics; war, riot, arson, embargoes, acts of civil or military authority, or terrorism; fiber cuts; strikes, or shortages in transportation, facilities, fuel, energy, labor, or materials; failure of the telecommunications or information services infrastructure; hacking, spam, data breach, malware, or any failure of a computer, server, network, or software for so long as the event continues to delay our performance; and unlawful acts of our employees, agents, or contractors.

## 8. Notices

Any notice required to be given by us under these Terms may be provided by email to a functioning email address of the party to be noticed, by a general posting on the Platform, or by personal delivery via commercial carrier. Notices by customers to us shall be given by contacting us at support@modo.us unless otherwise specified in these Terms. Either party may change the address to which notice is to be sent by written notice to the other party pursuant to this provision of these Terms. Notices shall be deemed effective upon delivery. Notices delivered by overnight carrier shall be deemed delivered on the business day following mailing. Notices delivered by any other method shall be deemed given upon receipt. Any correctly addressed notice that is refused, unclaimed, or undeliverable, because of an act or omission of the party to be notified shall be deemed effective as of the first date that said notice was refused or deemed undeliverable by the postal authorities, messenger, email server, or overnight delivery service.

## 9. Communications are Not Private

We do not provide any facility for sending or receiving private or confidential electronic communications. All messages transmitted to us shall be deemed to be readily accessible to the general public. Notice is hereby given that all messages entered into the Platform may be read by Modo and the agents and operators of the Platform, regardless of whether they are the intended recipients of such messages.

## 10. Authorization and Permission to Send Emails to You

You authorize us to email you notices, advertisements, and other communications. You understand and agree that such communications may contain information about social casinos and related sweepstakes promotions. This authorization will continue until you request us to remove you from our email list. You understand and agree that even unsolicited email correspondence from us, or our affiliates, is not spam as that term is defined under the law.

## 11. Consideration

We allow you to access and use the Platform, as limited by your additional purchase of certain paid features and upgrades and your participation in qualifying activities as described in the Promo Rules, in consideration for your acquiescence to all the provisions in these Terms. You agree that such consideration is both adequate and received upon your accessing any portion of the Platform.

## 12. Electronic Signatures

You agree to be bound by any affirmation, assent, or agreement you transmit through the Platform. You agree that when in the future you click on an "I agree," "I consent," or other similarly worded button, check box, or entry field with your mouse, keystroke, or other computer device, your agreement or consent will be legally binding and enforceable and the legal equivalent of your handwritten signature.

## 13. English Language

We have written these Terms and our associated website policies in the English language. You

are representing your understanding and assent to the English language version of these Terms as they are published. We are not liable to you or any third party for any costs or expenses incurred in translating these Terms. In the event that you choose to translate these Terms, you do so at your own risk, as only the English language version is binding.

14. Export Control

You understand and acknowledge that the software elements of the Platform may be subject to regulation by governmental agencies which prohibit export or diversion of software and other goods to certain countries and third parties. Diversion of such elements contrary to U.S. or international law is prohibited. You will not assist or participate in any such diversion or other violation of applicable laws and regulations. You warrant that you will not license or otherwise permit anyone not approved to receive controlled commodities under applicable laws and regulations and that you will abide by such laws and regulations. You agree that such elements are not being and will not be acquired for, shipped, transferred, or re-exported, directly or indirectly, to proscribed or embargoed countries or their nationals or be used for proscribed activities.

15. No Agency Relationship

Nothing in these Terms shall be deemed to constitute, create, imply, give effect to, or otherwise recognize a partnership, employment, joint venture, or formal business entity of any kind. The rights and obligations of the parties shall be limited to those expressly set forth herein.

16. Usages and Construction

In these Terms, unless otherwise stated or the context otherwise requires, the following usages will apply:

(a) References to a statute will refer to the statute and any successor statute, and to all regulations promulgated under or implementing the statute or successor, as in effect at the relevant time.

(b) In computing periods from a specified date to a later specified date, the words "from" and "commencing on" (and the like) mean "from and including," and the words "to," "until," and "ending on" (and the like) mean "to but excluding."

(c) References to a governmental or quasi-governmental agency, authority, or instrumentality will also refer to a regulatory body that succeeds to the functions of the agency, authority, or instrumentality.

(d) "A or B" means "A or B or both." "A, B, or C" means "one or more of A, B, and C." The same construction applies to longer strings.

(e) "Including" means "including, but not limited to."

17. No Waiver

No waiver or action made by us shall be deemed a waiver of any subsequent default of the same provision of these Terms. If any term, clause, or provision hereof is held invalid or unenforceable

by a court of competent jurisdiction, such invalidity shall not affect the validity or operation of any other term, clause, or provision and such invalid term, clause, or provision shall be deemed to be severed from these Terms.

18. Headings

All headings are solely for the convenience of reference and shall not affect the meaning, construction, or effect of these Terms.

19. Other Jurisdictions/Foreign Law

We make no representation that the Platform is appropriate or available for use in all locations. You may not access the Platform from territories where it is illegal or otherwise prohibited. Those who choose to access the Platform from such locations do so on their own initiative and are solely responsible for determining compliance with all applicable local laws. Nothing contained in these Terms shall be interpreted as an admission that the Platform is subject to the laws of any nation besides the United States.

20. Service Not Available in Some Areas

You are subject to the laws of the state, province, city, country, or other legal entity in which you reside or from which you access the Platform. THE PLATFORM AND THE SWEEPSTAKES PROMOTION ARE VOID WHERE PROHIBITED OR RESTRICTED BY LAW. If you use the Platform or participate in the sweepstakes promotion while located in a prohibited jurisdiction, you will be in violation of the law of such jurisdiction and these Terms, and subject to having your Customer Account suspended or terminated without any notice to you. You hereby agree that Modo cannot be held liable if laws applicable to you restrict or prohibit your participation. Modo makes no representations or warranties, implicit or explicit, as to your legal right to participate in any service offered on the Platform, nor shall any person affiliated, or claiming affiliation, with Modo have authority to make any such representations or warranties. We reserve the right to restrict access to the Platform or any part thereof in any jurisdiction.

*[nothing more follows]*

*© ARB Gaming, LLC (2023). All Rights Reserved.*

# EXHIBIT K-2

TERMS & CONDITIONS

Last Updated: September 10, 2024

The following Terms and Conditions form a binding legal agreement between you and Modo, and apply to your use of the Platform in any way, through any electronic device (web, mobile, tablet, or any other device).

PLEASE NOTE THAT THESE TERMS INCLUDE A PROVISION WAIVING THE RIGHT TO PURSUE ANY CLASS ACTION, GROUP, OR REPRESENTATIVE CLAIM AND REQUIRING YOU TO PURSUE PAST, PENDING, AND FUTURE DISPUTES BETWEEN YOU AND US THROUGH INDIVIDUAL ARBITRATION UNLESS YOU OPT OUT WITHIN THE SPECIFIED TIME FRAME. SEE SECTION H BELOW FOR MORE INFORMATION.

You must read these Terms carefully in their entirety before checking the box for acceptance. By checking the box for acceptance during the registration process, or by accessing the Platform, you confirm that you have read and agree to be bound by these Terms and Conditions, which include and are inseparably linked to our Privacy Policy, Promo Rules, and other Game-specific or promotion-specific terms relevant to your use of any feature of the Platform. If you do not agree with any provision of these Terms or any other linked policy, rules, or terms you may not access or use the Platform or play any Game.

THE GAMES AND PLATFORM DO NOT OFFER REAL MONEY GAMBLING, AND NO ACTUAL MONEY IS REQUIRED TO PLAY.

ONLY PLAYERS IN THE UNITED STATES THAT DO NOT RESIDE IN AN EXCLUDED TERRITORY ARE ELIGIBLE TO ENTER THE SWEEPSTAKES. PLEASE REFER TO THE SWEEPSTAKES RULES TO CHECK YOUR ELIGIBILITY.

YOU CAN REQUEST REDEMPTION OF ANY PRIZES BY SELECTING THE "REDEEM" BUTTON ON THE PLATFORM. WHERE PLAYERS REDEEM PRIZES FOR CASH, SUCH PRIZES WILL BE PAID TO THE PAYMENT MEDIUM FROM WHICH YOU PURCHASED GOLD COINS, AND IF THIS IS NOT TECHNICALLY POSSIBLE, THEN THROUGH AN ELECTRONIC PAYMENT TO THE BANK ACCOUNT YOU HAVE DESIGNATED.

## A. DEFINITIONS

"JAMS" means the arbitration service JAMS.

"JAMS Rules" means JAMS's Comprehensive Arbitration Rules and Procedures in effect at the time arbitration is sought. The JAMS Rules are available at www.jamsadr.com/adr-rules-procedures/.

"Channel(s)" means any website, web page, blog, forum, third-party social media accounts, and any other media outlet or online account owned or operated by you that is ordinarily used to advertise online services.

"Channel Information" means all content, materials, and other information on your Channels.

"Code of Conduct" means the provisions of Section G(5) which govern your participation in the Referral Program.

"Collective Arbitration" means any claim as part of a class, group, collective, coordinated, consolidated, or representative proceeding.

"Content" means text, graphics, user interfaces, visual interfaces, photographs, trademarks, logos, trade dress, sounds, music, artwork, computer code, and other material used, displayed, or available as part of the Platform. Content includes Gold Coins and Sweepstakes Coins.

"Customer Account(s)" means an account held by a Registered Customer who has verified their associated email address.

"Dispute(s)" means any and all past, present, and future disputes, claims, or causes of action arising out of or relating to these Terms, the Platform, or any other dispute between you and Modo or any of Modo's affiliates, licensors, distributors, suppliers, or agents.

"Excluded Territory" means the States of Washington, Montana, Maryland, Pennsylvania, New Jersey, Connecticut, West Virginia, Louisiana, Rhode Island, Delaware, Nevada, Michigan, and Idaho, as well as any U.S. territory or possession, and any other jurisdiction outside of the United States. "Game(s)" means any of the games available on the Platform in either Standard Play or Promotional Play. We reserve the right to add and remove games from the Platform at our sole discretion.

"Gold Coin(s)" means the virtual tokens which enable you to play the Games in Standard Play for social and entertainment purposes only. We may give you Gold Coins free of charge when you sign up to a Platform and thereafter at regular intervals when you log into a Platform, and you may purchase Gold Coins. Gold Coins have no monetary value and cannot under any circumstance be redeemed for Prizes.

"Inactive Account(s)" means a Customer Account which has not recorded any log in or log out for a period exceeding twelve (12) consecutive months.

"Mark(s)" means the MODO mark and any of our other trademarks, service marks, logos, trade names, business names, or other source identifiers.

"Minor(s)" means any person under the relevant age of majority in the relevant jurisdiction; in the United States, a Minor is generally anyone under the age of eighteen (18) years.

"Modo" or "us", "our", "ours", etc. means ARB Gaming, LLC d/b/a Modo.us. Modo.us a Delaware Limited Liability Company with a registered business address at 13802 N Scottsdale Rd STE 151-94, Scottsdale, Arizona 85254.

"Payment Medium" means any card, online wallet, financial/bank account or other payment medium used to purchase Gold Coins.

"Platform" means the social casino, sweepstakes, and related services provided through any URL belonging to or licensed to Modo, including the website located at https://www.modo.us and all subdomains, subpages, mobile versions, and successor sites thereof, including all Games, Content, features, tools, and services available thereon, whether in whole or any part thereof.

"Player" or "you", "your", "yours," etc. means any user, whether or not a Registered Customer.

DMI\15540542.1

"Prize(s)" means Sweepstakes Coins won when playing the Games in Promotional Play, and the cash or other things of value that may be redeemed in exchange for those Sweepstakes Coins, in accordance with the Promo Rules.

"Prohibited Conduct" means any of the conduct described in Section E(1).

"Promo Rules" means the **Promo Rules** available on the Platform.

"Promotional Play" means participation in our sweepstakes promotions by playing any Games with Sweepstakes Coins for a chance to win Prizes.

"Referral" means a new user that subscribes to the Platform and establishes a valid Customer Account using your Referral Link.

"Referral Link" means your personalized referral link.

"Referral Program" means the referral program by which you may be rewarded for referring new users to the Platform, as described in Section G below.

"Registered Customer" means a Player who has successfully registered a Customer Account, whether that Customer Account is considered active or not.

"Standard Play" means playing in any Game on the Platform with Gold Coins for social and entertainment purposes only. You may win more Gold Coins when you play the Games in Standard Play. You cannot win Prizes when you play the Games in Standard Play.

"Sweepstakes Coins" means free entries to our sweepstakes promotion. Use of the Sweepstakes Coins is subject to the Promo Rules. We may give you Sweepstakes Coins free of charge when you sign up to a Platform, as a bonus when you purchase Gold Coins or via each of our free alternative methods of entry as set out in the Promo Rules. You may use the Sweepstakes Coins in Promotional Play to win Prizes. YOU CANNOT PURCHASE SWEEPSTAKES COINS.

"Terms" means these Terms and Conditions, as amended from time to time.

"Third Party Website" means a third-party website not controlled by us.

"USD" means United States Dollar.

## B. ACCESS

You accept and agree to our website policies, including these Terms, and you certify to us that:

(a)     you are not a resident of and are not accessing the Platform from any Excluded Territory,

(b)     you are not a Minor,

(c)     you have the legal capacity to enter into and agree to these Terms,

(d)     you are using the Platform freely, voluntarily, willingly, and for your own personal enjoyment, and

(e)     you will only provide accurate and complete information to us and promptly update this information as necessary to maintain its accuracy and completeness.

We reserve the right to revise these Terms at any time. You agree that we have this unilateral right, and that all modifications or changes are in force and enforceable immediately upon posting. An updated or revised version of these Terms immediately and retroactively supersedes any prior versions immediately upon posting, and the prior version is of no continuing legal effect unless the revised version specifically refers to the prior version and keeps the prior version or portions thereof in effect. We agree that if we change anything in these Terms, we will change the "Last Updated" date at the top of these Terms. You agree to re-visit this page on a frequent basis, and to use the "Refresh" button on your browser when doing so. You agree to note the date above. If the "Last Updated" date remains unchanged from the last time you reviewed these Terms, then you may presume that nothing in these Terms has changed since the last time you visited. If the "Last Updated" date has changed, then you must review the updated Terms in their entirety. You must agree to any updated Terms or immediately cease use of the Platform. If you fail to review these Terms as required to determine if any changes have been made, you assume all responsibility for such omission, and you agree that such failure amounts to your affirmative waiver of your right to review the updated Terms. We are not responsible for your neglect of your legal rights.

**Modo does not provide gambling services. Modo does not take or place illegal bets. Modo does not recommend or encourage illegal gambling.** Modo offers entertaining online social casino games and related sweepstakes promotions which do not trigger the prohibitions imposed by state and federal gambling laws in those states where Modo operates. Gambling, whether in person or online, is not legal in all areas. If you seek information regarding any illegal activity, you must leave the Platform immediately and shall not attempt to use the Platform. You agree not to use the Platform if doing so would violate the laws of your state, province, or country. Please consult with your local authorities or legal advisors before participating in online gaming of any kind. It is your sole and absolute responsibility to comply with all applicable laws, and you assume all risk in using the Platform. Nothing published on the Platform or by Modo shall be construed as legal advice on any issue. **You assume all risk and responsibility for your use of the Platform. We bear no responsibility for your use of the Platform in connection with illegal gambling activities, and we do not condone illegal gambling. You understand and agree that the Platform is for entertainment purposes only. We make no guarantee that the Platform is legal in your jurisdiction.**

## C. ACCOUNTS

### 1. Registration

All users may register for a single Customer Account on the Platform, provided you meet the requirements set forth herein and otherwise abide by these Terms. Users will not register more than one Customer Account. If you register more than one Customer Account, we may temporarily suspend or permanently terminate any or all of your Customer Accounts.

### 2. Gold Coins and Sweepstakes Coins

To purchase Gold Coins, you must provide a valid Payment Medium. The Payment Medium you use to purchase Gold Coins must be legally and beneficially owned by you and in your name. If it comes to our attention that the name you registered on your Customer Account and the name linked to your Payment Medium differ, your Customer Account will be immediately suspended. We reserve the right to request documents and information to verify the legal and beneficial ownership of the Payment Medium you use to make Gold Coin purchases.

DMI\15540542.1

GOLD COIN PURCHASES MADE FROM ANY EXCLUDED TERRITORY WILL BE VOIDED AND REFUNDED, MINUS AN ADMINISTRATIVE FEE OF UP TO 10% OF THE TOTAL PURCHASES MADE BY THE PLAYER, IN ADDITION TO ANY CHARGES THAT MAY BE LEVIED BY THE BANK OR FINANCIAL INSTITUTION MANAGING THE AFOREMENTIONED REVERSAL; PROVIDED THAT ANY GOLD COIN PURCHASES MADE IN CONNECTION WITH PROHIBITED CONDUCT WILL BE FORFEITED AND NO REFUNDS SHALL BE GRANTED THEREFOR.

Purchases of Gold Coins are final and are not refundable, transferable, or exchangeable. You agree to notify us about any billing problems or discrepancies within 30 days from the date of your purchase. If you do not bring them to our attention within 30 days, you agree that you waive your right to dispute such problems or discrepancies. You are responsible for and agree to reimburse us for all reversals, charge-backs, claims, fees, fines, penalties, and any other liability incurred by us (including costs and related expenses) that were caused by or arising out of payments that you authorized or accepted or that were authorized or accepted using your Customer Account (even if not authorized by you).

All Gold Coin purchases and direct bank transfer payments are executed in USD. It is a Player's responsibility to ensure that their nominated bank account can accept transactions in USD. All foreign exchange transaction fees, charges, or related costs that you may incur as a result of, or in relation to, payments made by Modo to you are to be borne solely by you, including any losses or additional costs arising from foreign exchange fluctuations.

From time to time, we may provide you with Sweepstakes Coins to play the Games in Promotional Play for a chance to win Prizes. To redeem Prizes in accordance with our **Promo Rules**, you must submit valid and current banking or wallet details and any necessary information and documentation. Sweepstakes Coins are only valid for 60 days from the date you last logged on to your Customer Account and will thereafter automatically expire. Sweepstakes Coins may be forfeited if a Customer Account is closed for any reason, or at our sole and exclusive discretion.

You will not transfer, receive, acquire, dispose of, or sell Gold Coins or Sweepstakes Coins in any manner, including to or from other Customer Accounts or Players. Any attempt to circumvent this prohibition is grounds for immediate closure of your Customer Account, without prejudice to any other rights or remedies available to us.

You may participate in any Game only if you have sufficient Gold Coins or Sweepstakes Coins (as applicable) in your Customer Account. We will not extend you any credit whatsoever for the purchase of Gold Coins or otherwise.

3. Accuracy of Information

If you fail to provide the required information for your Customer Account, if we reasonably believe that you have provided false, misleading, inaccurate, incomplete, not current, or otherwise incorrect information to us, if you fail to promptly update such information to maintain its accuracy and completeness, or if we or any of our authorized agents have reasonable grounds to suspect that a violation of this provision has occurred, we may suspend or terminate your Customer Account, as well as subject you to criminal and civil liability. Acceptance of registration is subject to our sole discretion. While we may require you to provide additional information as

necessary to verify the accuracy of your identity and the information you provide to us, you understand and agree that we do not sponsor or endorse any user.

4. No Account Sharing

You will not use, attempt to access, or ask for the login credentials for any third party's Customer Account at any time. You will not allow any third party to access or use your Customer Account at any time, nor provide any third party with your login credentials. We will not be liable for any loss that you may incur as a result of any third party that uses your password or otherwise accesses your Customer Account, either with or without your knowledge. You will be liable for losses incurred by us or any third party due to release of your login credentials to unauthorized persons.

5. Termination by You

You may delete your Customer Account by emailing support@modo.us and requesting deletion. You will not assign, transfer, sell, or share your Customer Account. If you do, both you and any unauthorized user are jointly and severally liable for any fees that will be due.

6. Termination by Modo

We may suspend or delete your Customer Account or any licenses granted herein at any time, for any reason, in our sole discretion. Closing your Customer Account will forfeit all continued access to and right to use, enjoy, or benefit from any Gold Coins, Sweepstakes Coins, and unredeemed Prizes associated with your Customer Account. If the reason behind the closure of your Customer Account is related to concerns about possible responsible social gameplay issues you must indicate this in your request to close your Customer Account. We have the right to terminate your Customer Account and membership on the Platform at any time, and you will be responsible for all charges to your Customer Account at the time of termination. We are not responsible for preserving terminated account information which may be permanently deleted in our discretion.

## D. GRANT OF RIGHTS

You understand that all Modo is offering you is access to the Platform to play the Games as we provide them from time to time. You need to provide your own access to the Internet, hardware, and software, and you are solely responsible for any fees that you incur to access the Platform. All users may access certain public areas of the Platform, play the Games, and access the Content, free of charge. We grant all users a limited, nonexclusive, revocable, and nontransferable personal license to access and use only the Content provided on free areas of Platform for private, non-commercial purposes on a single computer or mobile device. This free license does not include a license to access or use paid areas of the Platform, or Content available therein. We also grant you a limited, nonexclusive, revocable, and nontransferable personal license to access the Platform, play the Games, and access the Content, as limited by your additional purchase of certain paid features and upgrades and your participation in qualifying activities as described in the Promo Rules. This paid or promotional license is for private, noncommercial purposes on a single computer or mobile device. We reserve the right to limit the Content viewed or Games available to you. Your license to access the Platform, play the Games, and access the Content is not a transfer of title. You will not copy or redistribute any Content, and you will prevent others from unauthorized access, use of, or copying of Content.

## E. PROHIBITED USE POLICY

### 1. Prohibited Conduct

You agree that you will only use the Platform for purposes expressly permitted and contemplated by these Terms. You may not use the Platform for any other purposes without our express prior written consent. Without our express prior written authorization, you will not:

(a)     use the Platform for any purpose other than as offered by us, including using the Platform in any way that is prohibited by these Terms or that is violative of any applicable law, regulation, or treaty of any applicable governmental body, including: (i) laws prohibiting illegal gambling; (ii) intellectual property right laws protecting patents, copyrights, trademarks, trade secrets, and any other intellectual property right, including making, obtaining, distributing, or otherwise accessing illegal copies of copyrighted, trademarked, or patented materials, deleting intellectual property right indications and notices; (iii) laws against obscene, lewd, defamatory, or libelous speech; (iv) laws protecting confidentiality, privacy rights, publicity rights, or data protection, and (v) laws pertaining to illegal money transfers and money laundering.

(b)     fail to comply with orders, judgments, or mandates from courts of competent jurisdiction.

(c)     link to the Platform on any Third Party Website in any way that is illegal, unfair, or damages or takes advantage of our reputation, including any link which establishes or suggests a form of association, approval, or endorsement by us where none exists.

(d)     use of VPN or other means to circumvent geolocation in order to access the Platform or make Gold Coin purchases from an Excluded Territory.

(e)     impersonate another individual or entity, whether actual or fictitious; falsely claim an affiliation with any individual or entity; access the Customer Accounts of others without permission; misrepresent the source, identity, or materials of the Content; collect the personal information of other Players or third parties; or perform any other similar fraudulent activity, or engage in Prohibited Conduct.

(f)     engage in manipulation of the Platform, including utilizing bots or other fraudulent means to

(i) manipulate the Platform, whether for the purpose of cheating, collusion, or otherwise, or

(ii) artificially drive traffic to or inauthentically generate engagements with your Customer Account, including your Link and hyperlinks to Third Party Websites.

(g)     circumvent, disable, damage, or otherwise interfere with the operations of the Platform, any user's enjoyment of the Platform, or our security-related features or features that prevent, limit, or restrict the use or copying of the Platform that enforce limitations on the use of the Platform or the Content, by any means, including hacking, mining, phishing, posting, linking to, uploading, or otherwise disseminating viruses, adware, spyware, malware, logic bombs, Trojan horses, worms, harmful components, corrupted data, or other malicious code, file, or program designed to interrupt, destroy, limit, or monitor the functionality of any computer software or hardware or any telecommunications equipment.

DMI\15540542.1

(h)      modify, reverse engineer, reverse-assemble, decompile, disassemble, or otherwise discover the source code of the Platform, except and only if that activity is expressly permitted by applicable law despite this limitation.

(i)      access or use any automated process (such as a robot, spider, scraper, or similar) to access the Platform in violation of our robot exclusion headers or to scrape all or a substantial part of the Content (other than in connection with bona fide search engine indexing or as we may otherwise expressly permit).

       (i) modify, adapt, translate, or create derivative works based on the Platform, or any part of them, except and only if applicable law expressly permits that activity despite this limitation.

       (ii) commercially exploit or make available the Platform to third parties including any action to frame or mirror the Platform.

(j)      take any action that imposes or may impose (in our sole discretion) an unreasonable or disproportionately large load on our technology infrastructure or otherwise make excessive demands on it.

(k)      attempt to do any of the acts described in this Section E(1) or assist or permit any person in engaging in any of the acts described in this Section E(1).

Engaging in any Prohibited Conduct will be considered a breach of these Terms, and may result in immediate suspension, or termination of your Customer Account and access to the Platform, without notice, in our sole discretion. We may pursue any legal remedies or other appropriate actions against you if you engage in any Prohibited Conduct, including civil, criminal, or injunctive relief, and forfeiture of Prizes. Any unauthorized use of the Platform violates these Terms and certain international, foreign, and domestic laws.

2. Reporting Violative Activities

If you are aware of any user engaging in activities that violate these Terms, please email us at support@modo.us with as much detail as possible, including a description of the objectionable activities, the email or User ID of the individual engaging in suspicious activities, the date and

time of identification, the reason we should investigate the activities, and a statement certifying the accuracy of the information you provided to us.

3. Law Enforcement

We will fully cooperate with law enforcement authorities or orders from courts of competent jurisdiction, requesting or directing us to disclose the identity or location of any user in breach of these Terms, in accordance with our **Privacy Policy**, law enforcement policies, and applicable laws and regulations. If your activity results in Modo receiving a subpoena, discovery request, production order, search warrant, or court order that causes Modo to incur expenses, court costs, or legal fees for compliance, you agree to reimburse us for any such expenses, costs or legal fees upon our request.

## 4. Anti-Money Laundering

We monitor all transactions in order to prevent money laundering. If Modo suspects that you may be engaging in, or have engaged in money laundering activities, your access to the Platform will be suspended immediately and your Customer Account may be closed. If your Customer Account is suspended or closed under such circumstances, Modo is under no obligation to reverse any Gold Coin purchases you have made, nor is Modo under any obligation to allow use of any Sweepstakes Coins nor redemption of any Prizes that may be associated with your Customer Account. In addition, Modo may pass any necessary information on to the relevant authorities, other online service providers, banks, credit card companies, electronic payment providers, or other financial institutions. You will cooperate fully with any Modo investigation into such activity. If you suspect any unlawful or fraudulent activity or prohibited transaction by another Player, please notify us immediately by sending an email to support@modo.us.

## F. BILLING AND PAYMENTS

### 1. Purchases

If you provide valid and current payment information, you may purchase Gold Coins at the currently displayed price. Gold Coins have no cash value and are for social and entertainment purposes only. In some instances, we may provide users who purchase Gold Coins or who engage in other qualifying activities with free Sweepstakes Coins in accordance with our **Promo Rules**. Sweepstakes Coins are **never** available for purchase. Unused Gold Coins and Sweepstakes Coins are not eligible for any full or partial refunds. Gold Coins and Sweepstakes Coins may be deleted from Inactive Accounts.

We reserve the right to charge additional fees for access to the Platform or any other feature or service of Modo, and to change our fee structure at our discretion. All previous offers or discounts are unavailable once removed from the Platform.

You agree to pay any and all fees or account charges related to any fees, taxes, charges, purchases, or upgrades associated with your Customer Account, immediately when due in accordance with our stated billing policy, or that of our third-party billing agent. You acknowledge that the charge on your banking statement may display our company name, one of our brand names, or our third-party billing agent's name. You understand and agree that you are responsible for any and all fees or penalties that are associated with your Customer Account. Your Customer Account will be deemed past due if it is not paid in full by the payment due date. If you utilize a credit or debit card as means of payment, your card issuer agreement may contain additional terms with respect to your rights and liabilities as a card holder. You agree to pay any and all amounts due immediately upon cancellation or termination of your Customer Account.

### 2. Prizes

If you win Prizes according to our **Promo Rules,** we will allow you to redeem the Prizes for cash which we will transfer to you in your selected Payment Medium, minus any processing fees based on your payment selection or otherwise associated with your Customer Account, provided you have met the minimum payment threshold, except that Prizes in excess of ten thousand dollars ($10,000.00) may, at our election, be made by us to you in weekly installments. If you are a resident of New York and Florida, the maximum redemption value for a Prize won on any single spin or play is five thousand dollars ($5,000). If you are a resident of New York and Florida, any Prize

with a value in excess of five thousand dollars ($5,000) will be reduced to a maximum value of five thousand dollars ($5,000). You are responsible for providing accurate bank account or Payment Medium details identifying where Prizes will be sent. You must own or control the account associated with your Payment Medium, and you agree to provide us with such information as we may request to confirm your ownership or control. We reserve the right to charge fees for processing the redemption of Prizes to you and to set a minimum redemption threshold for Prize redemptions. You cannot request a Prize redemption until you have met the minimum payment threshold as displayed on the Platform. We may set off any liability, damages, costs, or expenses that we incur arising from or relating to your breach of these Terms against any money that we owe to you under these Terms. We may also adjust or deduct the monies transferred to your Customer Account or payment account for any reason, at any time, without advance warning or notice, including retroactively. The most common reasons for transfer adjustments include customer refunds, fraud, conduct violations, and technical errors.

3. Taxes

You shall be responsible for payment of all taxes, and we will not be responsible for any federal income tax withholding, unemployment contribution, workers compensation, Medicare / Medicaid, or any employment-related benefits. If requested, you will provide us with a Social Security Number or Taxpayer Identification Number, so that an IRS Form 1099 may be issued where required by law. Failure to provide such information to us may result in termination of these Terms.

4. Third-Party Payment Processing

We utilize various third-party payment processors and gateways, and we reserve the right to contract with additional third-party payment processors and gateways in our sole discretion to process any and all payments associated with the Platform. Such third parties may impose additional terms and conditions governing payment processing. You are responsible for abiding by such terms. We further disclaim any liability associated with your violation of such terms.

5. Changes to Your Billing Information

You must promptly inform our third-party billing agent of all changes, including changes in your address and changes in your credit or debit card used in connection with billing or payment through the Platform, if applicable. You are responsible for any credit card charge backs, dishonored checks, and any related fees that Modo incurs with respect to your Customer Account, along with any additional fees or penalties imposed by our third-party billing agent.

6. Chargebacks

If you make a purchase on the Platform that results in a chargeback, we may terminate your Customer Account. You agree to contact us to seek a resolution of any issue before initiating a chargeback. We reserve the right to reverse the dispersal of any Sweepstakes Coins, and to withhold or cancel any Prizes generated from Sweepstakes Coins, associated with Gold Coin purchases that result in a chargeback.

DM1\15540542.1

### 7. Changes to Our Billing Methods

We reserve the right to make changes at any time to our fees and billing methods, including the addition of administrative or supplemental charges for any feature, with or without prior notice to you.

### 8. Refunds

You understand and agree that it is our standard policy that all purchases are final and nonrefundable. We reserve the right to address all refund requests in our sole discretion. In no instance will a refund be provided where the user initiates a chargeback.

### 9. Billing Errors

If you believe that you have been erroneously billed for activity associated with your Customer Account, please notify our third-party billing agent immediately of such error. If you do not do so within thirty (30) days after such billing error first appears on any Customer Account statement, the fee in question will be deemed acceptable by you for all purposes, including resolution of inquiries made by or on behalf of your banking institution. You release us from all liabilities and claims of loss resulting from any error or discrepancy that is not reported within thirty (30) days of the bill being rendered to you. These Terms shall supplement and be in addition to any terms required by third party billing entities we engage to provide billing services. You are responsible for review and compliance with such entity's terms in addition to those contained in these Terms.

### 10. Fraudulent Use of Credit Cards

We take credit card fraud very seriously. Discovery that you have used a stolen or fraudulent credit card will result in the notification of the appropriate law enforcement agencies and termination of your Customer Account.

## G. REFERRAL PROGRAM

### 1. Participation and Termination

By participating in the Referral Program, you accept and agree to comply with this Section G and our **Promo Rules**. We may terminate your participation in the Referral Program for any reason or no reason, in our sole and absolute discretion. If you violate any provision of this Section G, you will forfeit all right to any unpaid and future commissions on Referrals.

### 2. Sweepstakes Coins for Referrals

We may allow you to participate in the Referral Program to provide marketing services in exchange for free Sweepstakes Coins as described on our **Referral Program** page for the first ten (10) Referrals who have completed our customer verification process and made at least twenty dollars ($20.00) in purchases on the Platform. We may alter the number of free Sweepstakes Coins that you will receive for each eligible Referral from time to time in our discretion without notice to you, and without penalty to us. Any changes to the number of free Sweepstakes Coins that you will receive for each eligible Referral will only be applied to Referrals sent to us after the publication of the change. You agree that you will periodically check the **Referral Program** page, and your continued participation in the Referral Program manifests your assent to any changes in the number of free Sweepstakes Coins that you will receive for each eligible Referral.

DMI\15540542.1

We will issue the appropriate number of Sweepstakes Coins to your Customer Account for all qualifying Referrals, except that we may deduct an amount of Sweepstakes Coins associated with any Referral that results in a refund or chargeback or any issuance of Sweepstakes Coins resulting from fraud, Prohibited Conduct, other illegal activity, technical error, or as required by law. No Sweepstakes Coins will be issued for Referrals that are in violation of this Section G or any other provision of these Terms. We may temporarily withhold any free Sweepstakes Coins associated with a Referral if we reasonably believe a violation of these Terms has occurred until such time as an investigation can be conducted and a determination can be made. You shall forfeit all free Sweepstakes Coins associated with Referrals if, due to inaccurate, incomplete, or outdated Customer Account information provided by you, we are unable to issue a disbursement to you within six (6) months of the Referral associated with those Sweepstakes Coins.

3. <u>Channel Information</u>

You may market, advertise, and promote the Platform by sharing your Referral Link on your Channels. You shall be solely responsible for the Channel Information. You represent and warrant that you own or operate the Channels, and that the Channel Information does not infringe upon or violate any applicable law, rule, or regulation, including intellectual property and publicity rights. We shall have no obligations with respect to the Channel Information, including any duty to review or monitor any such Channel Information. You agree to indemnify us for any claims, charges, debts, allegations, or lawsuits arising out of any Channel Information or other information appearing on the Channels.

4. <u>Grant of Rights in the Marks</u>

We grant you a limited, revocable, non-exclusive right to use our Marks and your Referral Link on the Channels solely for the purposes of your participation in the Referral Program. You may only use the Marks on the Channels in a manner that accurately and appropriately displays the high quality nature of the Platform, and you hereby agree not to take any action that would impair or diminish the value of, or the goodwill associated with, the Marks, including using the Marks in a manner that disparages or portrays us or our products or services in a false, competitively adverse, or poor light. We will immediately terminate this license if we discover that you are using our Marks in any manner not authorized by this Section G(4).

Your use of the Marks shall inure to our benefit. You will not register any domain name or account on any Third Party Website that contains or is confusingly similar to any Mark belonging to us, and you agree that, if you do, you will immediately disable the offending domain name or account on any Third Party Website upon our demand and at your expense, or that, if you fail to immediately do so, you will reimburse us for all fees incurred in order to enforce these obligations, including attorneys' fees and costs associated with filing a domain dispute complaint.

You agree that the Marks are and shall remain our property, and that nothing in these Terms conveys to you any right of ownership in the Marks. You will not now nor in the future contest the validity of the Marks.

5. <u>Code of Conduct for Referral Program Participants</u>

We reserve the right to terminate your participation in the Referral Program at any time and for any reason, or no reason, in our sole and absolute discretion. Reasons for refusal or acceptance or

termination of participation may include violation of the Code of Conduct, or the other provisions of this Section G(5).

You must fully comply with state or federal consumer protection statutes, regulations, rules, policies, or advisory opinions. You will notify us of any inquiries or concerns made, accusing you of or investigating you for any activities related to the Referrals that are questionable, illegal, or otherwise violate these Terms.

You will not:

(a)    Use deceptive, unlawful, or unfair promotional tactics or devices, such as manipulating search engine results, or otherwise engaging in activity that is false, misleading, infringing, manipulative, or deceptive in order to drive traffic through your Referral Link or to your Channels.

(b)    Use any meta-tags, key words, pay-per-click advertising campaigns, or other marketing tactics that would imply or suggest that illegal activities occur on the Platform or the Channels, or otherwise market Modo or the Channels to those seeking to engage in illegal activities.

(c)    Transmit or distribute your Referral Link to any Minors.

(d)    Solicit   or   permit   a   Minor   to   become   a   user   of   the   Platform.

(e)    Use any form of unlawful email promotion to promote your Referral Link or the Channels.

(f) Violate the policies of any Third Party Website while sharing your Referral Link.

(g)    Engage in any activities that, in our sole discretion, are harmful to our image, goodwill, or reputation.

(h)    Attempt to do any of the acts described in this Section G(5) or assist or permit any person in engaging in any of the acts described in this Section G(5).

6. Access to the Channels

During your participation in the Referral Program, you agree to provide us with the means necessary to monitor the source of traffic you send to us, although we undertake no obligation to do so. To that end, and solely for that purpose, if the Channels have any method of access restrictions in place, you agree to send us valid access credentials to any password-protected area of the Channels within twenty-four (24) hours of receiving a request for such access by us. You agree that we shall not be charged or incur any expense from you for such access.

## H. DISPUTE RESOLUTION AND DAMAGES

1. Initial Dispute Resolution Procedure

The parties shall use best efforts to resolve informally, as a first step, any concerns or Disputes that you may have promptly and in good faith. You can do this by contacting us at disputeresolution@arbgamingllc.com via E-mail. The following information must be included in your written communication: (a) your username, (b) your first and last name, as registered on your Customer Account, (c) explanation of the complaint/claim, and (d) any specific dates and time associated with the complaint/claim. Failure to include the outlined information may result in a delay in our ability to identify and respond to your Dispute. If for some reason your Dispute is not

resolved, you may then pursue arbitration as set out below in Section H(2) or a court claim if you opted-out of the Arbitration Agreement as set forth below in Section H(2).

2. <u>Mandatory Arbitration and Class Action Waiver Agreement</u>

PLEASE READ THIS SECTION H (MANDATORY ARBITRATION AND CLASS ACTION WAIVER AGREEMENT) CAREFULLY BECAUSE IT MAY REQUIRE YOU AND MODO TO ARBITRATE CERTAIN DISPUTES AND CLAIMS ON AN INDIVIDUAL BASIS ONLY AND LIMIT THE MANNER IN WHICH YOU AND MODO CAN SEEK RELIEF FROM EACH OTHER. THIS AGREEMENT APPLIES TO ANY DISPUTES OR CLAIMS YOU MAY CURRENTLY POSSESS AND ANY CLAIMS YOU MAY RAISE IN THE FUTURE CONCERNING THESE TERMS OR USE OF MODO'S PLATFORM.

This Section H will be construed under and be subject to the Federal Arbitration Act, notwithstanding any other choice of law set out in these Terms. The parties acknowledge that this Section H is a separate agreement between the parties and that any alleged or determined invalidity or illegality of all or any part of the Terms or the Platform shall have no effect upon the validity and enforceability of this agreement.

By agreeing to these Terms, and to the extent permitted by applicable law, you and Modo agree that any Dispute will be governed by the procedure outlined below. You and Modo further agree that any arbitration pursuant to this Section H(2) shall proceed on an individual basis and for your own losses only. You may not proceed as a class representative, member or part of any proposed class, collective action, private attorney general suit, qui tam action or any representative proceeding, or otherwise seek to recover on behalf of others or for the benefit of others in any type of claim or the losses of others.

By agreeing to these Terms, and to the extent permitted by applicable law, you agree to resolve any Disputes — including any Dispute concerning the enforceability, validity, scope, or severability of this agreement to arbitrate — through final and binding arbitration. Arbitration means you will not be able to seek damages in court or present your case to a jury.

If you have not previously agreed to arbitration in connection with your use of our Platform, you may decline this agreement to arbitrate by sending written notice of your decision to opt out to: ARB Gaming LLC, Attn: Arbitration Opt-Out, 13802 N Scottsdale Rd Suite 151-94 Scottsdale AZ 85254-3403, within thirty (30) days after first becoming subject to these Terms. If more than thirty (30) days have passed since you previously agreed to arbitration in connection with your use of our Platform and the aforementioned written notice was not provided during such period in accordance with this paragraph, then you are ineligible to opt-out and the entirety of this Section H of these Terms shall apply to your use of our Platform. Your valid notice must include your first and last name, address, the email address associated with your Customer Account, and an unequivocal statement that you decline this agreement to arbitrate. If you duly opt out of this agreement to arbitrate, all other parts of these Terms will continue to apply to you. Opting out of this agreement to arbitrate has no effect on any other arbitration agreements that you may currently have, or may enter in the future, with Modo. By opting out of this agreement to arbitrate, you will not be precluded from using the Platform, but neither you nor Modo will be able to invoke the mutual agreement to arbitrate to resolve Disputes. Whether to agree to arbitration is an important decision. It is your decision to make and you are not required to rely solely on the information

provided in these Terms. You should take reasonable steps to conduct further research and, if you wish, to consult with counsel of your choice.

By using, or otherwise accessing the Platform, or clicking to accept or agree to the Terms where that option is made available, you confirm that you have read and accept and agree to this Section H. Except to the extent that you may opt-out as provided above, all of your activity on the Platform and all of your transactions with Modo, including all events which occurred before your acceptance of the Terms, shall be subject to this Section H.

Notwithstanding the above, all parties retain the right to seek relief in a small claims court for disputes or claims solely within the scope of a small claim's court jurisdiction.

You and Modo agree that JAMS will administer the arbitration under its Comprehensive Arbitration Rules and Procedures (the "JAMS Rules") in effect at the time arbitration is sought. Those rules are available at https://www.jamsadr.com/adr-rules-procedures/.

3. Agreement to Mass Arbitration

For mass arbitrations (which shall be defined as 25 or more similar demands for arbitration filed against the same party or related parties by individual claimants represented by either the same law firm or law firms acting in coordination), the JAMS Mass Arbitration Procedures and Guidelines ("JAMS Mass Arbitration Rules") shall apply. In such proceedings, the parties agree that, notwithstanding any other provisions of these Terms, the Process Administrator (as described in the JAMS Mass Arbitration Rules) and the arbitrators shall have the authority to implement the procedures set forth in the JAMS Mass Arbitration Rules, including the authority to batch together individual arbitration demands into a single coordinated proceeding. All provisions of this Section H (Dispute Resolution and Damages) that are not in conflict with the JAMS Mass Arbitration Rules, including the qualifications for the arbitrators, shall continue to apply.

You and Modo further agree that:

(a)     the arbitration will be handled by a sole arbitrator. The parties agree that the JAMS arbitrator must have the following minimum qualification: practicing attorneys or retired federal court judges who have at least ten years of substantive expertise in litigating and resolving of complex business disputes, including motions to compel arbitration and litigation or adjudication regarding whether disputes are arbitrable;

(b)     for purpose of Sections 16.1 and 16.2 of the JAMS Rules, the JAMS Streamlined Arbitration Rules and Procedures and JAMS Expedited Procedures shall not apply unless otherwise explicitly agreed to by all parties to the Dispute;

(c)     in lieu of JAMS Rule 18, the parties shall have the right to submit a dispositive motion at the outset of the arbitration to the Arbitrator. The submission and scheduling of such motions shall be addressed at a conference held before the JAMS arbitrator, and the parties agree that any dispositive motions shall be resolved and the remainder of the arbitral proceeding stayed pending resolution, absent good cause and immediate necessity to proceed;

(d)     except to the extent prohibited under JAMS Consumer Minimum Standards, located at https://www.jamsadr.com/consumer-minimum-standards/Rules, the arbitration will be held in Scottsdale, Arizona or, at your election, conducted via telephone or other remote electronic means;

DMI\15540542.1

(e)    JAMS will govern payment of all arbitration fees, currently available at https://www.jamsadr.com/arbitration-fees. You will only be required to pay arbitration fees of $250 in connection with any arbitration initiated under this Section H, but you will still be responsible for paying your own attorney's fees;

(f)    except as otherwise waived or limited under the Terms or this Section H, the arbitrator shall be authorized to award any remedies, including injunctive relief, that would be available to you in an individual lawsuit;

(g)    except as and to the extent otherwise may be required by law, the arbitration proceeding, pleadings, and any award shall be confidential, except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its confirmation and enforcement;

(h)    in the event JAMS is unavailable or unwilling to hear the dispute in accordance with this Section H, the parties shall agree to another arbitration provider subject to the procedural agreements of this Section H; and

(i)    You and Modo agree that any award issued by the arbitrator in excess of $50,000 in favor of either party, or any award which grants any form of declaratory or equitable relief that would significantly impact other Modo users or the operation of the Platform, may be appealed in accordance with the JAMS Optional Arbitration Appeal Procedures at either party's election. The JAMS Optional Arbitration Appeal Procedures are available at https://www.jamsadr.com/adr-rules-procedures/.

Notwithstanding any language to the contrary in this Section H(2), if a party seeks injunctive relief that would significantly impact other Modo users as reasonably determined by either party, the parties agree that such arbitration will proceed on an individual basis but will be handled by a panel of three (3) arbitrators. Each party shall select one arbitrator, and the two party-selected arbitrators shall select the third, who shall serve as chair of the arbitral panel. That chairperson shall be a retired federal court judge or an attorney licensed to practice law who have at least ten years of substantive expertise in litigating and resolving of complex business disputes, including motions to compel arbitration and litigation or adjudication regarding whether disputes are arbitrable. In the event of disagreement as to whether the threshold for a three arbitrator panel has been met, the sole arbitrator appointed in accordance with this clause shall make that determination. If the arbitrator determines a three-person panel is appropriate, the arbitrator may - if selected by either party or as the chair by the two party-selected arbitrators - participate in the arbitral panel.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER YOU NOR MODO SHALL BE ENTITLED TO CONSOLIDATE, JOIN, OR COORDINATE DISPUTES BY OR AGAINST OTHER INDIVIDUALS OR ENTITIES, OR PARTICIPATE AS A CLASS REPRESENTATIVE, MEMBER OR PART OF ANY PROPOSED CLASS OR COLLECTIVE ARBITRATION OR ARBITRATE OR LITIGATE ANY DISPUTE IN A REPRESENTATIVE CAPACITY, INCLUDING AS A REPRESENTATIVE MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY, QUI TAM ACTION OR OTHERWISE SEEK TO RECOVER FOR LOSSES INCURRED BY A THIRD PARTY. IN CONNECTION WITH ANY DISPUTE, ANY AND ALL SUCH RIGHTS ARE HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVED.

DM1\15540542.1

### 4. Governing Law and Venue

These Terms and all matters arising out of, or otherwise relating to, these Terms shall be governed by the laws of the State of Arizona, excluding its conflict of law provisions. The sum of this Section H(4) is that any and all Disputes that do not proceed to arbitration as set forth in  Section H(2) above must be, without exception, resolved in Scottsdale, Arizona. All parties to these Terms agree that all actions or proceedings arising in connection with these Terms or any services or business interactions between the parties that may be subject to these Terms shall be brought exclusively in Scottsdale, Arizona.

The parties agree to *exclusive jurisdiction and venue in, and only in, Scottsdale, Arizona.* The parties additionally agree that this choice of venue and forum is mandatory and not permissive in nature, thereby precluding any possibility of litigation between the parties with respect to, or arising out of, these Terms in a jurisdiction other than that specified in this Section H(4).

All parties hereby waive any right to assert the doctrine of forum non-conveniens or similar doctrines challenging venue or jurisdiction, or to object to venue with respect to any proceeding brought in accordance with this Section H or with respect to any Dispute.

All Parties stipulate that the courts located in Scottsdale, Arizona shall have personal jurisdiction over them for resolution of any litigation permitted by these Terms. You agree to accept service of process by registered or certified mail, Federal Express, or Priority Mail, with proof of delivery or return receipt requested, sent to your last known address for any legal action arising from these Terms. Any final judgment rendered against you or us in any action or proceeding shall be conclusive as to the subject matter and may be enforced in the courts located in Scottsdale, Arizona or other jurisdictions in any manner provided by law if such enforcement becomes necessary.

### 5. Waivers

In consideration of your use of the Platform, you hereby waive any right or ability to proceed as a class representative, member or part of any proposed class, collective action, private attorney general suit, qui tam action or any representative proceeding, or otherwise seek to recover on behalf of others or for the benefit of others in any type of claim or action or to recover the losses of others, along with any right to trial by jury.

### 6. Rights to Injunctive Relief

You acknowledge that remedies at law may be inadequate to provide us with full compensation in the event you breach these Terms, and that we shall therefore be entitled to seek injunctive relief in the event of any such breach, in addition to seeking all other remedies available at law or in equity.

### 7. Additional Fees

If we are required to enlist the assistance of an attorney, investigator, collections agent, or other person to collect any damages or any other amount of money from you, or if we are required to seek the assistance of an attorney to pursue injunctive relief against you, then you additionally agree that you will reimburse us for all reasonable fees incurred in order to collect these damages or in order to seek injunctive relief from you. You understand that even a nominal amount of damages may require the expenditure of extensive legal fees, travel expenses, costs, and other

DM1\15540542.1

amounts that may dwarf the damages themselves. You agree that you will pay these fees and costs. For clarity, these additional fees are not fees associated with the cost of arbitration, including any JAMS filing fee, case management fee or professional fees for the arbitrator's services.

## I. DISCLAIMERS

### 1. All Warranties Are Disclaimed

We provide access to the Platform "as is" and "with all faults." We make no warranty that the Platform will meet your needs or requirements. *We disclaim all warranties* — express, statutory, or implied — including warranties of merchantability, fitness for a particular purpose, workmanlike effort, quality, suitability, truthfulness, usefulness, performance, accuracy, completeness, reliability, security, title, exclusivity, quiet enjoyment, non-infringement, and warranties that your access to and use of the Platform will be uninterrupted, timely, secure, error free, or that loss of materials will not occur, to the greatest extent provided by applicable law. We may change any of the information found on the Platform at any time or remove any or all Content thereon. We make no commitment to update the Content. We make no warranty regarding any goods or services purchased or obtained through the Platform or any transaction entered into through the Platform. There are no warranties of any kind that extend beyond the face of these Terms or that arise because of course of performance, course of dealing, or usage of trade.

### 2. Use at Your Own Risk

You expressly agree that access to the Platform is at your own and sole risk. You understand that we cannot and do not guarantee or warrant that the Platform will be free of viruses, malware, worms, Trojan horses, or other code that may manifest contaminating or destructive properties. We do not assume any responsibility or risk for your access to or use of the Internet, the Platform. You understand and agree that any Content downloaded or otherwise obtained through the Platform is done at your own discretion and risk, and that you will be solely responsible for any damage to your computer system or loss of data that results from your activity.

### 3. Third-Party Links

The Platform may contain links to websites or resources owned and operated by our users or third parties. You understand and agree that we have no control over, are not responsible for, and do not screen nor warrant, endorse, guarantee, or assume responsibility for the goods or services provided by our users or on third-party links. We will not be a party to or be in any way responsible for monitoring any transaction between you and other providers of products or services. As with the purchase of a product or service through any medium or in any environment, you should use your best judgment and exercise caution where appropriate. You agree to hold us harmless from any and all damages and liability that may result from use of third-party links that appear on the Platform, and any advertising, services, goods, products, or other materials available on third-party links. We are not responsible for any use of confidential or private information by sellers or third parties. You agree that your use of any third-party link or the goods or services provided thereon is governed by the policies of those third parties, not by these Terms or our other policies. We reserve the right to demote or remove any link at any time.

### 4. Violations of Law

Access to and use of the Platform in violation of any law is strictly prohibited. If we determine that you have provided or intend to use the Platform in a manner that violates any law, your ability

DMI\15540542.1

to access the Platform will be terminated immediately. We do hereby disclaim any liability for damages that may arise from you or any user providing any services that violates any law. You do hereby agree to defend, indemnify, and hold us harmless from any liability that may arise for us should you violate any law. You also agree to defend and indemnify us should any third party be harmed by your illegal actions or should we be obligated to defend any such claims by any party.

## J. INDEMNIFICATION

You agree to defend, indemnify, and hold harmless Modo, its officers, directors, shareholders, employees, independent contractors, telecommunication providers, and agents, from and against any and all claims, actions, loss, liabilities, expenses, costs, or demands, including without limitation legal and accounting fees, for all damages directly, indirectly, or consequentially resulting or allegedly resulting from your actions, or the actions of another person under your authority, including without limitation to governmental agencies, use, misuse, or inability to use the Platform, or any breach of these Terms by you or another person under your authority. We shall promptly notify you by electronic mail of any such claim or suit, and we may cooperate fully (at your expense) in the defense of such claim or suit. We reserve the right to participate in the defense of such claim or suit at our own expense, and choose our own legal counsel; however, we are not obligated to do so.

## K. LIMITATION OF LIABILITY

You acknowledge that we will not be liable to you for user-generated content or the offensive or illegal conduct of any person. You understand that the risk of harm or damage from this rests entirely with you, and you expressly release us from any liability arising out of user-generated content or the conduct of any person. You discharge, acquit, and otherwise release us, our parent company, agents, employees, officers, directors, shareholders, attorneys, and affiliates, from any and all allegations, counts, charges, debts, causes of action, and claims relating in any way to the use of, or activities relating to the use of the Platform including claims relating to the following: negligence, gross negligence, reckless conduct, alienation of affections (to the extent recognized in any jurisdiction), intentional infliction of emotional distress, intentional interference with contract or advantageous business relationship, defamation, privacy, publicity, intellectual property infringement, misrepresentation, infectious disease, illegal gambling, any financial loss not due to the fault of Modo, missed meetings, unmet expectations, false identities, fraudulent acts by others, invasion of privacy, release of personal information, failed transactions, purchases or functionality of the Platform, unavailability of the Platform, its functions and any other technical failure that may result in inaccessibility of the Platform, or any claim based on vicarious liability for torts committed by individuals met on or through the Platform, including fraud, Prohibited Conduct, theft or misuse of personal information, assault, battery, stalking, harassment, cyber-bullying, rape, theft, cheating, perjury, manslaughter, or murder.

The above list is intended to be illustrative only, and not exhaustive of the types or categories of claims released by you. This release is intended by the parties to be interpreted broadly in favor of Modo, and thus any ambiguity shall be interpreted in a manner providing release of the broadest claims. This release is intended to be a full release of claims, and the parties acknowledge the legally binding nature of this provision, and the nature of the rights given up in connection therewith.

DMI\15540542.1

Further, by agreeing to these Terms, you acknowledge and agree that you have read, understand, and consent to the processing of your personal information including, but not limited to, the use web traffic and website usage analytics and tracking technologies, such as cookies, pixel tags, and Java scripts. You acknowledge and agree that you do not have a reasonable expectation of privacy in connection with the use of analytics and tracking technologies or the collection and/or sharing of personal information by us or our third-party advertising partners using these technologies. To the maximum extent permitted under applicable law, you hereby release with prejudice and discharge Modo from, and waive the assertion of, any and all claims, demands, and damages based on or arising out of our use of such analytics and tracking technologies in connection with your access to and/or usage of this Website prior to your acceptance of these Terms of Service, including any claims for any past, present or future use of tracking software, including but not limited to use of A Meta Pixel, "cookies," "GET requests" or JavaScript in HTML code of our website that intercepts, tracks, stores, and analyzes your interactions with our website, which are hereby fully waived, released and compromised.  Modo shall have no liability to you for any past claims arising out of or related to the use of any tracking technology.

You hereby waive and relinquish the provisions, rights, and benefits, if any, of Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

We expressly disclaim any liability or responsibility to you for any of the following:

(1)    Any loss or damage of any kind incurred because of the Content, including errors, mistakes, or inaccuracies of the Content or any Content that is infringing, obscene, indecent, threatening, offensive, defamatory, invasive of privacy, or illegal.

(2)    Personal injury or property damage of any nature resulting from your access to and use of the Platform.

(3)    Any third party's unauthorized access to or alterations of your Customer Account, transmissions, or data.

(4)    Any interruption or cessation of transmission to or from Modo or the Platform and any delays or failures you may experience in initiating, conducting, or completing any transmissions to or transactions with Modo or the Platform.

(5)    Any bugs, viruses, malware, Trojan horses, or the like that may be transmitted to or through the Platform by any third party.

(6)    Any incompatibility between the Platform and your other services, hardware, or

software.

**SOLE AND EXCLUSIVE REMEDY/LIMITATION ON RECOVERY.    UNLESS OTHERWISE PROHIBITED BY LAW, IN ANY DISPUTE WITH US, YOUR SOLE AND EXCLUSIVE REMEDY UNDER ANY LEGAL THEORY SHALL BE TO RECOVER THE**

DM1\15540542.1

AMOUNT OF YOUR OWN PURCHASES DURING A SIX (6) MONTH PERIOD PRIOR TO THE FILING OF YOUR CLAIM. IN NO EVENT MAY YOU RECOVER UNDER ANY THEORY ANY AMOUNT MORE THAN THE AMOUNT OF YOUR OWN PURCHASES DURING THE SIX (6) MONTH PERIOD PRIOR TO THE FILING OF YOUR CLAIM. IN ADDITION, EXCEPT TO THE EXTENT PROHIBITED BY LAW OR OTHERWISE ALLOWED BY THESE TERMS, YOU MAY NOT SEEK INJUNCTIVE RELIEF ON YOUR OWN BEHALF, ON BEHALF OF ANY CLASS OF PERSONS OR FOR THE BENEFIT OF THE GENERAL PUBLIC.

YOU RECOGNIZE AND AGREE THAT THE WARRANTY DISCLAIMERS, INDEMNITIES, LIMITATIONS OF LIABILITY AND LIMITATIONS OF REMEDIES IN THESE SECTIONS I-K, ARE MATERIAL AND BARGAINED-FOR BASES OF THESE TERMS AND THAT THEY HAVE BEEN TAKEN INTO ACCOUNT AND REFLECTED IN THE DECISION BY YOU INTO THESE TERMS OF USE.

## L. INTELLECTUAL PROPERTY

### 1. Marks

We aggressively defend our intellectual property rights, including our Marks. Other manufacturers' product and service names referenced herein, including the names and logos of the Games, may be trademarks and service marks of their respective companies and are the exclusive property of such respective owners, and may not be used publicly without the express written consent of the owners or holders of such trademarks and service marks. The Marks may not be used publicly except with express written permission from us, and the Marks may not be used in any manner that is likely to cause confusion among consumers, or in any manner that disparages or discredits Modo.

### 2. Copyrights

The Content comprises our proprietary information and valuable intellectual property. We retain all right, title, and interest in such Content. The Content is protected by copyright law, and all rights to these works are hereby reserved (except as provided herein). The Content may not be copied, downloaded, distributed, republished, modified, uploaded, posted, or transmitted in any way without our prior written consent. You may not remove or alter, or cause to be removed or altered, any copyright, trademark, trade name, service mark, or any other proprietary notice or legend appearing on the Content. Modification or use of the Content except as expressly provided in these Terms violates our intellectual property rights.

## M. GENERAL

### 1. Entire Agreement
These Terms and any other legal notice or agreement published by us on the Platform, forms the entire agreement between you and us concerning your use of the Platform. It supersedes all prior terms, understandings, or agreements between you and us regarding use of the Platform. A printed version of these Terms and of any notice given in electronic form will be admissible in any proceedings based on or relating to these Terms. Such version of these Terms shall be utilized to the same evidentiary extent, and subject to the same conditions as other business documents and records originally generated and maintained in printed form.

DM1\15540542.1

2. Policies of Our Service Providers

You understand and agree that we may use certain third-party service providers to offer services to you. You understand and agree that you must agree to and abide by any user terms, privacy policy, or other policy that such third party requires you to agree to in order to use their services. In the event of a conflict between those policies and our policies, the terms of our policies shall govern.

3. Assignment and Delegation

We may assign any rights or delegate any performance under these Terms without notice to you. You will not assign, delegate, or sublicense any of your rights or duties without our advanced written consent. Any attempted assignment or delegation in violation of this provision will be void.

4. Severability

If any provision of these Terms is determined to be invalid, illegal, or unenforceable, the remaining provisions shall continue in full force, if the essential terms for each party remain valid, binding, and enforceable.

5. Cumulative Remedies

All rights and remedies provided in these Terms are cumulative and not exclusive, and the assertion by a party of any right or remedy will not preclude the assertion by the party of any other rights or the seeking of any other remedies available at law, in equity, by statute, in any other agreement between the parties, or otherwise.

6. Successors and Assigns

These Terms inure to the benefit of, and are binding on, the parties and their respective successors and assigns. This section does not address, directly or indirectly, whether a party may assign its rights or delegate its performance under these Terms.

7. Force Majeure

We are not responsible for any failure to perform because of unforeseen circumstances or causes beyond our reasonable control, including: Acts of God, such as fire, flood, earthquakes, hurricanes, tropical storms, or other natural disasters; epidemics; pandemics; war, riot, arson, embargoes, acts of civil or military authority, or terrorism; fiber cuts; strikes, or shortages in transportation, facilities, fuel, energy, labor, or materials; failure of the telecommunications or information services infrastructure; hacking, spam, data breach, malware, or any failure of a computer, server, network, or software for so long as the event continues to delay our performance; and unlawful acts of our employees, agents, or contractors.

8. Notices

Any notice required to be given by us under these Terms may be provided by email to a functioning email address of the party to be noticed, by a general posting on the Platform, or by personal delivery via commercial carrier. Notices by customers to us shall be given by contacting us at support@modo.us unless otherwise specified in these Terms. Either party may change the address to which notice is to be sent by written notice to the other party pursuant to this provision of these Terms. Notices shall be deemed effective upon delivery. Notices delivered by overnight carrier

DM1\15540542.1

shall be deemed delivered on the business day following mailing. Notices delivered by any other method shall be deemed given upon receipt. Any correctly addressed notice that is refused, unclaimed, or undeliverable, because of an act or omission of the party to be notified shall be deemed effective as of the first date that said notice was refused or deemed undeliverable by the postal authorities, messenger, email server, or overnight delivery service.

## 9. Communications are Not Private

We do not provide any facility for sending or receiving private or confidential electronic communications. All messages transmitted to us shall be deemed to be readily accessible to the general public. Notice is hereby given that all messages entered into the Platform may be read by Modo and the agents and operators of the Platform, regardless of whether they are the intended recipients of such messages.

## 10. Authorization and Permission to Send Emails to You

You authorize us to email you notices, advertisements, and other communications. You understand and agree that such communications may contain information about social casinos and related sweepstakes promotions. This authorization will continue until you request us to remove you from our email list. You understand and agree that even unsolicited email correspondence from us, or our affiliates, is not spam as that term is defined under the law.

## 11. Consideration

We allow you to access and use of the Platform, as limited by your additional purchase of certain paid features and upgrades and your participation in qualifying activities as described in the Promo Rules, in consideration for your acquiescence to all the provisions in these Terms. You agree that such consideration is both adequate and received upon your accessing any portion of the Platform.

## 12. Electronic Signatures

You agree to be bound by any affirmation, assent, or agreement you transmit through the Platform. You agree that when in the future you click on an "I agree," "I consent," or other similarly worded button, check box, or entry field with your mouse, keystroke, or other computer device, your agreement or consent will be legally binding and enforceable and the legal equivalent of your handwritten signature.

## 13. English Language

We have written these Terms and our associated website policies in the English language. You are representing your understanding and assent to the English language version of these Terms as they are published. We are not liable to you or any third party for any costs or expenses incurred in translating these Terms. In the event that you choose to translate these Terms, you do so at your own risk, as only the English language version is binding.

## 14. Export Control

You understand and acknowledge that the software elements of the Platform may be subject to regulation by governmental agencies which prohibit export or diversion of software and other goods to certain countries and third parties. Diversion of such elements contrary to U.S. or international law is prohibited. You will not assist or participate in any such diversion or other violation of applicable laws and regulations. You warrant that you will not license or otherwise

permit anyone not approved to receive controlled commodities under applicable laws and regulations and that you will abide by such laws and regulations. You agree that such elements are not being and will not be acquired for, shipped, transferred, or re-exported, directly or indirectly, to proscribed or embargoed countries or their nationals or be used for proscribed activities.

15. No Agency Relationship

Nothing in these Terms shall be deemed to constitute, create, imply, give effect to, or otherwise recognize a partnership, employment, joint venture, or formal business entity of any kind. The rights and obligations of the parties shall be limited to those expressly set forth herein.

16. Usages and Construction

In these Terms, unless otherwise stated or the context otherwise requires, the following usages will apply:

(a)    References to a statute will refer to the statute and any successor statute, and to all regulations promulgated under or implementing the statute or successor, as in effect at the relevant time.

(b)    In computing periods from a specified date to a later specified date, the words "from" and "commencing on" (and the like) mean "from and including," and the words "to," "until," and "ending on" (and the like) mean "to but excluding."

(c)    References to a governmental or quasi-governmental agency, authority, or instrumentality will also refer to a regulatory body that succeeds to the functions of the agency, authority, or instrumentality.

(d)    "A or B" means "A or B or both." "A, B, or C" means "one or more of A, B, and C." The same construction applies to longer strings.

(e)    "Including" means "including, but not limited to."

17. No Waiver

No waiver or action made by us shall be deemed a waiver of any subsequent default of the same provision of these Terms. If any term, clause, or provision hereof is held invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the validity or operation of any other term, clause, or provision and such invalid term, clause, or provision shall be deemed to be severed from these Terms.

18. Headings

All headings are solely for the convenience of reference and shall not affect the meaning, construction, or effect of these Terms.

19. Other Jurisdictions/Foreign Law

We make no representation that the Platform is appropriate or available for use in all locations. You may not access the Platform from territories where it is illegal or otherwise prohibited. Those who choose to access the Platform from such locations do so on their own initiative and are solely responsible for determining compliance with all applicable local laws. Nothing contained in these

DMI\15540542.1

Terms shall be interpreted as an admission that the Platform is subject to the laws of any nation besides the United States.

20. <u>Service Not Available in Some Areas</u>

You are subject to the laws of the state, province, city, country, or other legal entity in which you reside or from which you access the Platform. THE PLATFORM AND THE SWEEPSTAKES PROMOTION ARE VOID WHERE PROHIBITED OR RESTRICTED BY LAW. If you use the Platform or participate in the sweepstakes promotion while located in a prohibited jurisdiction, you will be in violation of the law of such jurisdiction and these Terms, and subject to having your Customer Account suspended or terminated without any notice to you. You hereby agree that Modo cannot be held liable if laws applicable to you restrict or prohibit your participation. Modo makes no representations or warranties, implicit or explicit, as to your legal right to participate in any service offered on the Platform, nor shall any person affiliated, or claiming affiliation, with Modo have authority to make any such representations or warranties. We reserve the right to restrict access to the Platform or any part thereof in any jurisdiction.

*[nothing more follows]*

*© ARB Gaming, LLC (2024). All Rights Reserved.*

DM1\15540542.1

# EXHIBIT K-3

TERMS & CONDITIONS

<u>Last Updated</u>: March 28, 2025

The following Terms and Conditions form a binding legal agreement between you and Modo, and apply to your use of the Platform in any way, through any electronic device (web, mobile, tablet, or any other device).

PLEASE NOTE THAT THESE TERMS INCLUDE A PROVISION WAIVING THE RIGHT TO PURSUE ANY CLASS ACTION, GROUP, OR REPRESENTATIVE CLAIM AND REQUIRING YOU TO PURSUE PAST, PENDING, AND FUTURE DISPUTES BETWEEN YOU AND US THROUGH INDIVIDUAL ARBITRATION UNLESS YOU OPT OUT WITHIN THE SPECIFIED TIME FRAME. SEE SECTION H BELOW FOR MORE INFORMATION.

You must read these Terms carefully in their entirety before checking the box for acceptance. By checking the box for acceptance during the registration process, or by accessing the Platform, you confirm that you have read and agree to be bound by these Terms and Conditions, which include and are inseparably linked to our Privacy Policy, Promo Rules, and other Game-specific or promotion-specific terms relevant to your use of any feature of the Platform. If you do not agree with any provision of these Terms or any other linked policy, rules, or terms you may not access or use the Platform or play any Game.

THE GAMES AND PLATFORM DO NOT OFFER REAL MONEY GAMBLING, AND NO ACTUAL MONEY IS REQUIRED TO PLAY.

ONLY PLAYERS IN THE UNITED STATES THAT DO NOT RESIDE IN AN EXCLUDED TERRITORY ARE ELIGIBLE TO ENTER THE SWEEPSTAKES. PLEASE REFER TO THE SWEEPSTAKES RULES TO CHECK YOUR ELIGIBILITY.

YOU CAN REQUEST REDEMPTION OF ANY PRIZES BY SELECTING THE "REDEEM" BUTTON ON THE PLATFORM. WHERE PLAYERS REDEEM PRIZES FOR CASH, SUCH PRIZES WILL BE PAID TO THE PAYMENT MEDIUM FROM WHICH YOU PURCHASED GOLD COINS, AND IF THIS IS NOT TECHNICALLY POSSIBLE, THEN THROUGH AN ELECTRONIC PAYMENT TO THE BANK ACCOUNT YOU HAVE DESIGNATED.

## A. DEFINITIONS

"JAMS" means the arbitration service JAMS.

"JAMS Rules" means JAMS's Comprehensive Arbitration Rules and Procedures in effect at the time arbitration is sought. The JAMS Rules are available at www.jamsadr.com/adr-rules-procedures/.

"Channel(s)" means any website, web page, blog, forum, third-party social media accounts, and any other media outlet or online account owned or operated by you that is ordinarily used to advertise online services.

DM1\15540542.1

"Channel Information" means all content, materials, and other information on your Channels.

"Code of Conduct" means the provisions of Section G(5) which govern your participation in the Referral Program.

"Collective Arbitration" means any claim as part of a class, group, collective, coordinated, consolidated, or representative proceeding.

"Content" means text, graphics, user interfaces, visual interfaces, photographs, trademarks, logos, trade dress, sounds, music, artwork, computer code, and other material used, displayed, or available as part of the Platform. Content includes Gold Coins and Sweepstakes Coins.

"Customer Account(s)" means an account held by a Registered Customer who has verified their associated email address.

"Dispute(s)" means any and all past, present, and future disputes, claims, or causes of action arising out of or relating to these Terms, the Platform, or any other dispute between you and Modo or any of Modo's affiliates, licensors, distributors, suppliers, or agents.

"Excluded Territory" means the States of Washington, Montana, Maryland, Pennsylvania, New Jersey, Connecticut, West Virginia, Louisiana, New York, Rhode Island, Delaware, Nevada, Michigan, and Idaho, as well as any U.S. territory or possession, and any other jurisdiction outside of the United States.  "Game(s)" means any of the games available on the Platform in either Standard Play or Promotional Play. We reserve the right to add and remove games from the Platform at our sole discretion.

"Gold Coin(s)" means the virtual tokens which enable you to play the Games in Standard Play for social and entertainment purposes only. We may give you Gold Coins free of charge when you sign up to a Platform and thereafter at regular intervals when you log into a Platform, and you may purchase Gold Coins. Gold Coins have no monetary value and cannot under any circumstance be redeemed for Prizes.

"Inactive Account(s)" means a Customer Account which has not recorded any log in or log out for a period exceeding twelve (12) consecutive months.

"Mark(s)" means the MODO mark and any of our other trademarks, service marks, logos, trade names, business names, or other source identifiers.

"Minor(s)" means any person under the relevant age of majority in the relevant jurisdiction; in the United States, a Minor is generally anyone under the age of eighteen (18) years.

"Modo" or "us", "our", "ours", etc. means ARB Gaming, LLC d/b/a Modo.us. Modo.us a Delaware Limited Liability Company with a registered business address at 13802 N Scottsdale Rd STE 151-94, Scottsdale, Arizona 85254.

"Payment Medium" means any card, online wallet, financial/bank account or other payment medium used to purchase Gold Coins.

"Platform" means the social casino, sweepstakes, and related services provided through any URL belonging to or licensed to Modo, including the website located at https://www.modo.us and all subdomains, subpages, mobile versions, and successor sites thereof, including all Games, Content, features, tools, and services available thereon, whether in whole or any part thereof.

"Player" or "you", "your", "yours," etc. means any user, whether or not a Registered Customer.

"Prize(s)" means Sweepstakes Coins won when playing the Games in Promotional Play, and the cash or other things of value that may be redeemed in exchange for those Sweepstakes Coins, in accordance with the Promo Rules.

"Prohibited Conduct" means any of the conduct described in Section E(1).

"Promo Rules" means the **Promo Rules** available on the Platform.

"Promotional Play" means participation in our sweepstakes promotions by playing any Games with Sweepstakes Coins for a chance to win Prizes.

"Referral" means a new user that subscribes to the Platform and establishes a valid Customer Account using your Referral Link.

"Referral Link" means your personalized referral link.

"Referral Program" means the referral program by which you may be rewarded for referring new users to the Platform, as described in Section G below.

"Registered Customer" means a Player who has successfully registered a Customer Account, whether that Customer Account is considered active or not.

"Standard Play" means playing in any Game on the Platform with Gold Coins for social and entertainment purposes only. You may win more Gold Coins when you play the Games in Standard Play. You cannot win Prizes when you play the Games in Standard Play.

"Sweepstakes Coins" means free entries to our sweepstakes promotion. Use of the Sweepstakes Coins is subject to the Promo Rules. We may give you Sweepstakes Coins free of charge when you sign up to a Platform, as a bonus when you purchase Gold Coins or via each of our free alternative methods of entry as set out in the Promo Rules. You may use the Sweepstakes Coins in Promotional Play to win Prizes. YOU CANNOT PURCHASE SWEEPSTAKES COINS.

"Terms" means these Terms and Conditions, as amended from time to time.

"Third Party Website" means a third-party website not controlled by us.

"USD" means United States Dollar.

## B. ACCESS

You accept and agree to our website policies, including these Terms, and you certify to us that:

DM1\15540542.1

(a)    you are not a resident of and are not accessing the Platform from any Excluded Territory,

(b)    you are not a Minor,

(c)    you have the legal capacity to enter into and agree to these Terms,

(d)    you are using the Platform freely, voluntarily, willingly, and for your own personal enjoyment, and

(e)    you will only provide accurate and complete information to us and promptly update this information as necessary to maintain its accuracy and completeness.

We reserve the right to revise these Terms at any time. You agree that we have this unilateral right, and that all modifications or changes are in force and enforceable immediately upon posting. An updated or revised version of these Terms immediately and retroactively supersedes any prior versions immediately upon posting, and the prior version is of no continuing legal effect unless the revised version specifically refers to the prior version and keeps the prior version or portions thereof in effect. We agree that if we change anything in these Terms, we will change the "Last Updated" date at the top of these Terms. You agree to re-visit this page on a frequent basis, and to use the "Refresh" button on your browser when doing so. You agree to note the date above. If the "Last Updated" date remains unchanged from the last time you reviewed these Terms, then you may presume that nothing in these Terms has changed since the last time you visited. If the "Last Updated" date has changed, then you must review the updated Terms in their entirety. You must agree to any updated Terms or immediately cease use of the Platform. If you fail to review these Terms as required to determine if any changes have been made, you assume all responsibility for such omission, and you agree that such failure amounts to your affirmative waiver of your right to review the updated Terms. We are not responsible for your neglect of your legal rights.

**Modo does not provide gambling services. Modo does not take or place illegal bets. Modo does not recommend or encourage illegal gambling.** Modo offers entertaining online social casino games and related sweepstakes promotions which do not trigger the prohibitions imposed by state and federal gambling laws in those states where Modo operates. Gambling, whether in person or online, is not legal in all areas. If you seek information regarding any illegal activity, you must leave the Platform immediately and shall not attempt to use the Platform. You agree not to use the Platform if doing so would violate the laws of your state, province, or country. Please consult with your local authorities or legal advisors before participating in online gaming of any kind. It is your sole and absolute responsibility to comply with all applicable laws, and you assume all risk in using the Platform. Nothing published on the Platform or by Modo shall be construed as legal advice on any issue. **You assume all risk and responsibility for your use of the Platform. We bear no responsibility for your use of the Platform in connection with illegal gambling activities, and we do not condone illegal gambling. You understand and agree that the Platform is for entertainment purposes only. We make no guarantee that the Platform is legal in your jurisdiction.**

DMI\15540542.1

## C. ACCOUNTS

### 1. Registration

All users may register for a single Customer Account on the Platform, provided you meet the requirements set forth herein and otherwise abide by these Terms. Users will not register more than one Customer Account. If you register more than one Customer Account, we may temporarily suspend or permanently terminate any or all of your Customer Accounts.

### 2. Gold Coins and Sweepstakes Coins

To purchase Gold Coins, you must provide a valid Payment Medium. The Payment Medium you use to purchase Gold Coins must be legally and beneficially owned by you and in your name. If it comes to our attention that the name you registered on your Customer Account and the name linked to your Payment Medium differ, your Customer Account will be immediately suspended. We reserve the right to request documents and information to verify the legal and beneficial ownership of the Payment Medium you use to make Gold Coin purchases.

GOLD COIN PURCHASES MADE FROM ANY EXCLUDED TERRITORY WILL BE VOIDED AND REFUNDED, MINUS AN ADMINISTRATIVE FEE OF UP TO 10% OF THE TOTAL PURCHASES MADE BY THE PLAYER, IN ADDITION TO ANY CHARGES THAT MAY BE LEVIED BY THE BANK OR FINANCIAL INSTITUTION MANAGING THE AFOREMENTIONED REVERSAL; PROVIDED THAT ANY GOLD COIN PURCHASES MADE IN CONNECTION WITH PROHIBITED CONDUCT WILL BE FORFEITED AND NO REFUNDS SHALL BE GRANTED THEREFOR.

Purchases of Gold Coins are final and are not refundable, transferable, or exchangeable. You agree to notify us about any billing problems or discrepancies within 30 days from the date of your purchase. If you do not bring them to our attention within 30 days, you agree that you waive your right to dispute such problems or discrepancies. You are responsible for and agree to reimburse us for all reversals, charge-backs, claims, fees, fines, penalties, and any other liability incurred by us (including costs and related expenses) that were caused by or arising out of payments that you authorized or accepted or that were authorized or accepted using your Customer Account (even if not authorized by you).

All Gold Coin purchases and direct bank transfer payments are executed in USD. It is a Player's responsibility to ensure that their nominated bank account can accept transactions in USD. All foreign exchange transaction fees, charges, or related costs that you may incur as a result of, or in relation to, payments made by Modo to you are to be borne solely by you, including any losses or additional costs arising from foreign exchange fluctuations.

From time to time, we may provide you with Sweepstakes Coins to play the Games in Promotional Play for a chance to win Prizes. To redeem Prizes in accordance with our **Promo Rules.** you must submit valid and current banking or wallet details and any necessary information and documentation. Sweepstakes Coins are only valid for 60 days from the date you last logged on to your Customer Account and will thereafter automatically expire. Sweepstakes

Coins may be forfeited if a Customer Account is closed for any reason, or at our sole and exclusive discretion.

You will not transfer, receive, acquire, dispose of, or sell Gold Coins or Sweepstakes Coins in any manner, including to or from other Customer Accounts or Players. Any attempt to circumvent this prohibition is grounds for immediate closure of your Customer Account, without prejudice to any other rights or remedies available to us.

You may participate in any Game only if you have sufficient Gold Coins or Sweepstakes Coins (as applicable) in your Customer Account. We will not extend you any credit whatsoever for the purchase of Gold Coins or otherwise.

3. Accuracy of Information

If you fail to provide the required information for your Customer Account, if we reasonably believe that you have provided false, misleading, inaccurate, incomplete, not current, or otherwise incorrect information to us, if you fail to promptly update such information to maintain its accuracy and completeness, or if we or any of our authorized agents have reasonable grounds to suspect that a violation of this provision has occurred, we may suspend or terminate your Customer Account, as well as subject you to criminal and civil liability. Acceptance of registration is subject to our sole discretion. While we may require you to provide additional information as necessary to verify the accuracy of your identity and the information you provide to us, you understand and agree that we do not sponsor or endorse any user.

4. No Account Sharing

You will not use, attempt to access, or ask for the login credentials for any third party's Customer Account at any time. You will not allow any third party to access or use your Customer Account at any time, nor provide any third party with your login credentials. We will not be liable for any loss that you may incur as a result of any third party that uses your password or otherwise accesses your Customer Account, either with or without your knowledge. You will be liable for losses incurred by us or any third party due to release of your login credentials to unauthorized persons.

5. Termination by You

You may delete your Customer Account by emailing support@modo.us and requesting deletion. You will not assign, transfer, sell, or share your Customer Account. If you do, both you and any unauthorized user are jointly and severally liable for any fees that will be due.

6. Termination by Modo

We may suspend or delete your Customer Account or any licenses granted herein at any time, for any reason, in our sole discretion. Closing your Customer Account will forfeit all continued access to and right to use, enjoy, or benefit from any Gold Coins, Sweepstakes Coins, and unredeemed Prizes associated with your Customer Account. If the reason behind the closure of your Customer Account is related to concerns about possible responsible social gameplay issues

you must indicate this in your request to close your Customer Account. We have the right to terminate your Customer Account and membership on the Platform at any time, and you will be responsible for all charges to your Customer Account at the time of termination. We are not responsible for preserving terminated account information which may be permanently deleted in our discretion.

## D. GRANT OF RIGHTS

You understand that all Modo is offering you is access to the Platform to play the Games as we provide them from time to time. You need to provide your own access to the Internet, hardware, and software, and you are solely responsible for any fees that you incur to access the Platform.
All users may access certain public areas of the Platform, play the Games, and access the Content, free of charge. We grant all users a limited, nonexclusive, revocable, and nontransferable personal license to access and use only the Content provided on free areas of Platform for private, non-commercial purposes on a single computer or mobile device. This free license does not include a license to access or use paid areas of the Platform, or Content available therein. We also grant you a limited, nonexclusive, revocable, and nontransferable personal license to access the Platform, play the Games, and access the Content, as limited by your additional purchase of certain paid features and upgrades and your participation in qualifying activities as described in the Promo Rules. This paid or promotional license is for private, noncommercial purposes on a single computer or mobile device. We reserve the right to limit the Content viewed or Games available to you. Your license to access the Platform, play the Games, and access the Content is not a transfer of title. You will not copy or redistribute any Content, and you will prevent others from unauthorized access, use of, or copying of Content.

## E. PROHIBITED USE POLICY

1. Prohibited Conduct

You agree that you will only use the Platform for purposes expressly permitted and contemplated by these Terms. You may not use the Platform for any other purposes without our express prior written consent. Without our express prior written authorization, you will not:

(a)     use the Platform for any purpose other than as offered by us, including using the Platform in  any way that is prohibited by these Terms or that is violative of any applicable law, regulation, or  treaty of any applicable governmental body, including: (i) laws prohibiting illegal gambling; (ii)   intellectual property right laws protecting patents, copyrights, trademarks, trade secrets, and any   other intellectual property right, including making, obtaining, distributing, or otherwise accessing  illegal copies of copyrighted, trademarked, or patented materials, deleting intellectual property   right indications and notices; (iii) laws against obscene, lewd, defamatory, or libelous speech;   (iv) laws protecting confidentiality, privacy rights, publicity rights, or data protection, and (v)  laws pertaining to illegal money transfers and money laundering.

(b)     fail to comply with orders, judgments, or mandates from courts of competent jurisdiction.

(c)     link to the Platform on any Third Party Website in any way that is illegal, unfair, or damages or takes advantage of our reputation, including any link which establishes or suggests a form of association, approval, or endorsement by us where none exists.

(d)     use of VPN or other means to circumvent geolocation in order to access the Platform or make Gold Coin purchases from an Excluded Territory.

(e)     impersonate another individual or entity, whether actual or fictitious; falsely claim an affiliation with any individual or entity; access the Customer Accounts of others without permission; misrepresent the source, identity, or materials of the Content; collect the personal information of other Players or third parties; or perform any other similar fraudulent activity, or engage in Prohibited Conduct.

(f)     engage in manipulation of the Platform, including utilizing bots or other fraudulent means to

(i) manipulate the Platform, whether for the purpose of cheating, collusion, or otherwise, or

(ii) artificially drive traffic to or inauthentically generate engagements with your Customer Account, including your Link and hyperlinks to Third Party Websites.

(g)     circumvent, disable, damage, or otherwise interfere with the operations of the Platform, any  user's enjoyment of the Platform, or our security-related features or features that prevent, limit,  or restrict the use or copying of the Platform that enforce limitations on the use of the Platform or  the Content, by any means, including hacking, mining, phishing, posting, linking to, uploading,  or otherwise disseminating viruses, adware, spyware, malware, logic bombs, Trojan horses,  worms, harmful components, corrupted data, or other malicious code, file, or program designed  to interrupt, destroy, limit, or monitor the functionality of any computer software or hardware or  any telecommunications equipment.

(h)     modify, reverse engineer, reverse-assemble, decompile, disassemble, or otherwise discover the source code of the Platform, except and only if that activity is expressly permitted by applicable law despite this limitation.

(i)     access or use any automated process (such as a robot, spider, scraper, or similar) to access the Platform in violation of our robot exclusion headers or to scrape all or a substantial part of the Content (other than in connection with bona fide search engine indexing or as we may otherwise expressly permit).

(i) modify, adapt, translate, or create derivative works based on the Platform, or any part of them, except and only if applicable law expressly permits that activity despite this limitation.

(ii) commercially exploit or make available the Platform to third parties including any action to frame or mirror the Platform.

(j)     take any action that imposes or may impose (in our sole discretion) an unreasonable or disproportionately large load on our technology infrastructure or otherwise make excessive demands on it.

(k)     attempt to do any of the acts described in this Section E(1) or assist or permit any person in engaging in any of the acts described in this Section E(1).

Engaging in any Prohibited Conduct will be considered a breach of these Terms, and may result in immediate suspension, or termination of your Customer Account and access to the Platform, without notice, in our sole discretion. We may pursue any legal remedies or other appropriate actions against you if you engage in any Prohibited Conduct, including civil, criminal, or injunctive relief, and forfeiture of Prizes. Any unauthorized use of the Platform violates these Terms and certain international, foreign, and domestic laws.

2. Reporting Violative Activities

If you are aware of any user engaging in activities that violate these Terms, please email us at support@modo.us with as much detail as possible, including a description of the objectionable activities, the email or User ID of the individual engaging in suspicious activities, the date and

time of identification, the reason we should investigate the activities, and a statement certifying the accuracy of the information you provided to us.

3. Law Enforcement

We will fully cooperate with law enforcement authorities or orders from courts of competent jurisdiction, requesting or directing us to disclose the identity or location of any user in breach of these Terms, in accordance with our **Privacy Policy**, law enforcement policies, and applicable laws and regulations. If your activity results in Modo receiving a subpoena, discovery request, production order, search warrant, or court order that causes Modo to incur expenses, court costs, or legal fees for compliance, you agree to reimburse us for any such expenses, costs or legal fees upon our request.

4. Anti-Money Laundering

We monitor all transactions in order to prevent money laundering. If Modo suspects that you may be engaging in, or have engaged in money laundering activities, your access to the Platform will be suspended immediately and your Customer Account may be closed. If your Customer Account is suspended or closed under such circumstances, Modo is under no obligation to reverse any Gold Coin purchases you have made, nor is Modo under any obligation to allow use of any Sweepstakes Coins nor redemption of any Prizes that may be associated with your Customer Account. In addition, Modo may pass any necessary information on to the relevant authorities, other online service providers, banks, credit card companies, electronic payment providers, or other financial institutions. You will cooperate fully with any Modo investigation into such activity. If you suspect any unlawful or fraudulent activity or prohibited transaction by another Player, please notify us immediately by sending an email to support@modo.us.

## F. BILLING AND PAYMENTS

### 1. Purchases

If you provide valid and current payment information, you may purchase Gold Coins at the currently displayed price. Gold Coins have no cash value and are for social and entertainment purposes only. In some instances, we may provide users who purchase Gold Coins or who engage in other qualifying activities with free Sweepstakes Coins in accordance with our **Promo Rules**. Sweepstakes Coins are **never** available for purchase. Unused Gold Coins and Sweepstakes Coins are not eligible for any full or partial refunds. Gold Coins and Sweepstakes Coins may be deleted from Inactive Accounts.

We reserve the right to charge additional fees for access to the Platform or any other feature or service of Modo, and to change our fee structure at our discretion. All previous offers or discounts are unavailable once removed from the Platform.

You agree to pay any and all fees or account charges related to any fees, taxes, charges, purchases, or upgrades associated with your Customer Account, immediately when due in accordance with our stated billing policy, or that of our third-party billing agent. You acknowledge that the charge on your banking statement may display our company name, one of our brand names, or our third-party billing agent's name. You understand and agree that you are responsible for any and all fees or penalties that are associated with your Customer Account. Your Customer Account will be deemed past due if it is not paid in full by the payment due date. If you utilize a credit or debit card as means of payment, your card issuer agreement may contain additional terms with respect to your rights and liabilities as a card holder. You agree to pay any and all amounts due immediately upon cancellation or termination of your Customer Account.

### 2. Prizes

If you win Prizes according to our **Promo Rules,** we will allow you to redeem the Prizes for cash which we will transfer to you in your selected Payment Medium, minus any processing fees based on your payment selection or otherwise associated with your Customer Account, provided you have met the minimum payment threshold, except that Prizes in excess of ten thousand dollars ($10,000.00) may, at our election, be made by us to you in weekly installments. If you are a resident of New York and Florida, the maximum redemption value for a Prize won on any single spin or play is five thousand dollars ($5,000). If you are a resident of New York and Florida, any Prize with a value in excess of five thousand dollars ($5,000) will be reduced to a maximum value of five thousand dollars ($5,000). You are responsible for providing accurate bank account or Payment Medium details identifying where Prizes will be sent. You must own or control the account associated with your Payment Medium, and you agree to provide us with such information as we may request to confirm your ownership or control. We reserve the right to charge fees for processing the redemption of Prizes to you and to set a minimum redemption threshold for Prize redemptions. You cannot request a Prize redemption until you have met the minimum payment threshold as displayed on the Platform. We may set off any liability, damages, costs, or expenses that we incur arising from or relating to your breach of these Terms against any money that we owe to you under these Terms. We may also adjust or deduct the monies

DMI\15540542.1

transferred to your Customer Account or payment account for any reason, at any time, without advance warning or notice, including retroactively. The most common reasons for transfer adjustments include customer refunds, fraud, conduct violations, and technical errors.

3. Taxes

You shall be responsible for payment of all taxes, and we will not be responsible for any federal income tax withholding, unemployment contribution, workers compensation, Medicare / Medicaid, or any employment-related benefits. If requested, you will provide us with a Social Security Number or Taxpayer Identification Number, so that an IRS Form 1099 may be issued where required by law. Failure to provide such information to us may result in termination of these Terms.

4. Third-Party Payment Processing

We utilize various third-party payment processors and gateways, and we reserve the right to contract with additional third-party payment processors and gateways in our sole discretion to process any and all payments associated with the Platform. Such third parties may impose additional terms and conditions governing payment processing. You are responsible for abiding by such terms. We further disclaim any liability associated with your violation of such terms.

5. Changes to Your Billing Information

You must promptly inform our third-party billing agent of all changes, including changes in your address and changes in your credit or debit card used in connection with billing or payment through the Platform, if applicable. You are responsible for any credit card charge backs, dishonored checks, and any related fees that Modo incurs with respect to your Customer Account, along with any additional fees or penalties imposed by our third-party billing agent.

6. Chargebacks

If you make a purchase on the Platform that results in a chargeback, we may terminate your Customer Account. You agree to contact us to seek a resolution of any issue before initiating a chargeback. We reserve the right to reverse the dispersal of any Sweepstakes Coins, and to withhold or cancel any Prizes generated from Sweepstakes Coins, associated with Gold Coin purchases that result in a chargeback.

7. Changes to Our Billing Methods

We reserve the right to make changes at any time to our fees and billing methods, including the addition of administrative or supplemental charges for any feature, with or without prior notice to you.

8. Refunds

You understand and agree that it is our standard policy that all purchases are final and nonrefundable. We reserve the right to address all refund requests in our sole discretion. In no instance will a refund be provided where the user initiates a chargeback.

9. <u>Billing Errors</u>

If you believe that you have been erroneously billed for activity associated with your Customer Account, please notify our third-party billing agent immediately of such error. If you do not do so within thirty (30) days after such billing error first appears on any Customer Account statement, the fee in question will be deemed acceptable by you for all purposes, including resolution of inquiries made by or on behalf of your banking institution. You release us from all liabilities and claims of loss resulting from any error or discrepancy that is not reported within thirty (30) days of the bill being rendered to you. These Terms shall supplement and be in addition to any terms required by third party billing entities we engage to provide billing services. You are responsible for review and compliance with such entity's terms in addition to those contained in these Terms.

10. <u>Fraudulent Use of Credit Cards</u>

We take credit card fraud very seriously. Discovery that you have used a stolen or fraudulent credit card will result in the notification of the appropriate law enforcement agencies and termination of your Customer Account.

## G. REFERRAL PROGRAM

1. <u>Participation and Termination</u>

By participating in the Referral Program, you accept and agree to comply with this Section G and our **Promo Rules**. We may terminate your participation in the Referral Program for any reason or no reason, in our sole and absolute discretion. If you violate any provision of this Section G, you will forfeit all right to any unpaid and future commissions on Referrals.

2. <u>Sweepstakes Coins for Referrals</u>

We may allow you to participate in the Referral Program to provide marketing services in exchange for free Sweepstakes Coins as described on our **Referral Program** page for the first ten (10) Referrals who have completed our customer verification process and made at least twenty dollars ($20.00) in purchases on the Platform. We may alter the number of free Sweepstakes Coins that you will receive for each eligible Referral from time to time in our discretion without notice to you, and without penalty to us. Any changes to the number of free Sweepstakes Coins that you will receive for each eligible Referral will only be applied to Referrals sent to us after the publication of the change. You agree that you will periodically check the **Referral Program** page, and your continued participation in the Referral Program manifests your assent to any changes in the number of free Sweepstakes Coins that you will receive for each eligible Referral.

We will issue the appropriate number of Sweepstakes Coins to your Customer Account for all qualifying Referrals, except that we may deduct an amount of Sweepstakes Coins associated with any Referral that results in a refund or chargeback or any issuance of Sweepstakes Coins resulting from fraud, Prohibited Conduct, other illegal activity, technical error, or as required by law. No Sweepstakes Coins will be issued for Referrals that are in violation of this Section G or

any other provision of these Terms. We may temporarily withhold any free Sweepstakes Coins associated with a Referral if we reasonably believe a violation of these Terms has occurred until such time as an investigation can be conducted and a determination can be made. You shall forfeit all free Sweepstakes Coins associated with Referrals if, due to inaccurate, incomplete, or outdated Customer Account information provided by you, we are unable to issue a disbursement to you within six (6) months of the Referral associated with those Sweepstakes Coins.

## 3. Channel Information

You may market, advertise, and promote the Platform by sharing your Referral Link on your Channels. You shall be solely responsible for the Channel Information. You represent and warrant that you own or operate the Channels, and that the Channel Information does not infringe upon or violate any applicable law, rule, or regulation, including intellectual property and publicity rights. We shall have no obligations with respect to the Channel Information, including any duty to review or monitor any such Channel Information. You agree to indemnify us for any claims, charges, debts, allegations, or lawsuits arising out of any Channel Information or other information appearing on the Channels.

## 4. Grant of Rights in the Marks

We grant you a limited, revocable, non-exclusive right to use our Marks and your Referral Link on the Channels solely for the purposes of your participation in the Referral Program. You may only use the Marks on the Channels in a manner that accurately and appropriately displays the high quality nature of the Platform, and you hereby agree not to take any action that would impair or diminish the value of, or the goodwill associated with, the Marks, including using the Marks in a manner that disparages or portrays us or our products or services in a false, competitively adverse, or poor light. We will immediately terminate this license if we discover that you are using our Marks in any manner not authorized by this Section G(4).

Your use of the Marks shall inure to our benefit. You will not register any domain name or account on any Third Party Website that contains or is confusingly similar to any Mark belonging to us, and you agree that, if you do, you will immediately disable the offending domain name or account on any Third Party Website upon our demand and at your expense, or that, if you fail to immediately do so, you will reimburse us for all fees incurred in order to enforce these obligations, including attorneys' fees and costs associated with filing a domain dispute complaint.

You agree that the Marks are and shall remain our property, and that nothing in these Terms conveys to you any right of ownership in the Marks. You will not now nor in the future contest the validity of the Marks.

## 5. Code of Conduct for Referral Program Participants

We reserve the right to terminate your participation in the Referral Program at any time and for any reason, or no reason, in our sole and absolute discretion. Reasons for refusal or acceptance or termination of participation may include violation of the Code of Conduct, or the other provisions of this Section G(5).

DMI\15540542.1

You must fully comply with state or federal consumer protection statutes, regulations, rules, policies, or advisory opinions. You will notify us of any inquiries or concerns made, accusing you of or investigating you for any activities related to the Referrals that are questionable, illegal, or otherwise violate these Terms.

You will not:

(a)     Use deceptive, unlawful, or unfair promotional tactics or devices, such as manipulating search engine results, or otherwise engaging in activity that is false, misleading, infringing, manipulative, or deceptive in order to drive traffic through your Referral Link or to your Channels.

(b)     Use any meta-tags, key words, pay-per-click advertising campaigns, or other marketing tactics that would imply or suggest that illegal activities occur on the Platform or the Channels, or otherwise market Modo or the Channels to those seeking to engage in illegal activities.

(c)     Transmit or distribute your Referral Link to any Minors.

(d)     Solicit or permit a Minor to become a user of the Platform.

(e)     Use any form of unlawful email promotion to promote your Referral Link or the Channels. (f) Violate the policies of any Third Party Website while sharing your Referral Link.

(g)     Engage in any activities that, in our sole discretion, are harmful to our image, goodwill, or reputation.

(h)     Attempt to do any of the acts described in this Section G(5) or assist or permit any person in engaging in any of the acts described in this Section G(5).

6. Access to the Channels

During your participation in the Referral Program, you agree to provide us with the means necessary to monitor the source of traffic you send to us, although we undertake no obligation to do so. To that end, and solely for that purpose, if the Channels have any method of access restrictions in place, you agree to send us valid access credentials to any password-protected area of the Channels within twenty-four (24) hours of receiving a request for such access by us. You agree that we shall not be charged or incur any expense from you for such access.

## H. DISPUTE RESOLUTION AND DAMAGES

1. Initial Dispute Resolution Procedure

The parties shall use best efforts to resolve informally, as a first step, any concerns or Disputes that you may have promptly and in good faith. You can do this by contacting us at disputeresolution@arbgamingllc.com via E-mail. The following information must be included in your written communication: (a) your username, (b) your first and last name, as registered on

DMI\15540542.1

your Customer Account, (c) explanation of the complaint/claim, and (d) any specific dates and time associated with the complaint/claim. Failure to include the outlined information may result in a delay in our ability to identify and respond to your Dispute. If for some reason your Dispute is not resolved, you may then pursue arbitration as set out below in Section H(2) or a court claim if you opted-out of the Arbitration Agreement as set forth below in Section H(2).

2. <u>Mandatory Arbitration and Class Action Waiver Agreement</u>

PLEASE READ THIS SECTION H (MANDATORY ARBITRATION AND CLASS ACTION WAIVER AGREEMENT) CAREFULLY BECAUSE IT MAY REQUIRE YOU AND MODO TO ARBITRATE CERTAIN DISPUTES AND CLAIMS ON AN INDIVIDUAL BASIS ONLY AND LIMIT THE MANNER IN WHICH YOU AND MODO CAN SEEK RELIEF FROM EACH OTHER. THIS AGREEMENT APPLIES TO ANY DISPUTES OR CLAIMS YOU MAY CURRENTLY POSSESS AND ANY CLAIMS YOU MAY RAISE IN THE FUTURE CONCERNING THESE TERMS OR USE OF MODO'S PLATFORM.

This Section H will be construed under and be subject to the Federal Arbitration Act, notwithstanding any other choice of law set out in these Terms. The parties acknowledge that this Section H is a separate agreement between the parties and that any alleged or determined invalidity or illegality of all or any part of the Terms or the Platform shall have no effect upon the validity and enforceability of this agreement.

By agreeing to these Terms, and to the extent permitted by applicable law, you and Modo agree that any Dispute will be governed by the procedure outlined below. You and Modo further agree that any arbitration pursuant to this Section H(2) shall proceed on an individual basis and for your own losses only. You may not proceed as a class representative, member or part of any proposed class, collective action, private attorney general suit, qui tam action or any representative proceeding, or otherwise seek to recover on behalf of others or for the benefit of others in any type of claim or the losses of others.

By agreeing to these Terms, and to the extent permitted by applicable law, you agree to resolve any Disputes — including any Dispute concerning the enforceability, validity, scope, or severability of this agreement to arbitrate — through final and binding arbitration. Arbitration means you will not be able to seek damages in court or present your case to a jury.

If you have not previously agreed to arbitration in connection with your use of our Platform, you may decline this agreement to arbitrate by sending written notice of your decision to opt out to: ARB Gaming LLC, Attn: Arbitration Opt-Out, 13802 N Scottsdale Rd Suite 151-94 Scottsdale AZ 85254-3403, within thirty (30) days after first becoming subject to these Terms. If more than thirty (30) days have passed since you previously agreed to arbitration in connection with your use of our Platform and the aforementioned written notice was not provided during such period in accordance with this paragraph, then you are ineligible to opt-out and the entirety of this Section H of these Terms shall apply to your use of our Platform. Your valid notice must include your first and last name, address, the email address associated with your Customer Account, and an unequivocal statement that you decline this agreement to

arbitrate. If you duly opt out of this agreement to arbitrate, all other parts of these Terms will continue to apply to you. Opting out of this agreement to arbitrate has no effect on any other arbitration agreements that you may currently have, or may enter in the future, with Modo. By opting out of this agreement to arbitrate, you will not be precluded from using the Platform, but neither you nor Modo will be able to invoke the mutual agreement to arbitrate to resolve Disputes. Whether to agree to arbitration is an important decision. It is your decision to make and you are not required to rely solely on the information provided in these Terms. You should take reasonable steps to conduct further research and, if you wish, to consult with counsel of your choice.

By using, or otherwise accessing the Platform, or clicking to accept or agree to the Terms where that option is made available, you confirm that you have read and accept and agree to this Section H. Except to the extent that you may opt-out as provided above, all of your activity on the Platform and all of your transactions with Modo, including all events which occurred before your acceptance of the Terms, shall be subject to this Section H.

Notwithstanding the above, all parties retain the right to seek relief in a small claims court for disputes or claims solely within the scope of a small claim's court jurisdiction.

You and Modo agree that JAMS will administer the arbitration under its Comprehensive Arbitration Rules and Procedures (the "JAMS Rules") in effect at the time arbitration is sought. Those rules are available at https://www.jamsadr.com/adr-rules-procedures/.

3. Agreement to Mass Arbitration

For mass arbitrations (which shall be defined as 25 or more similar demands for arbitration filed against the same party or related parties by individual claimants represented by either the same law firm or law firms acting in coordination), the JAMS Mass Arbitration Procedures and Guidelines ("JAMS Mass Arbitration Rules") shall apply. In such proceedings, the parties agree that, notwithstanding any other provisions of these Terms, the Process Administrator (as described in the JAMS Mass Arbitration Rules) and the arbitrators shall have the authority to implement the procedures set forth in the JAMS Mass Arbitration Rules, including the authority to batch together individual arbitration demands into a single coordinated proceeding. All provisions of this Section H (Dispute Resolution and Damages) that are not in conflict with the JAMS Mass Arbitration Rules, including the qualifications for the arbitrators, shall continue to apply.

You and Modo further agree that:

(a)     the arbitration will be handled by a sole arbitrator. The parties agree that the JAMS arbitrator must have the following minimum qualification: practicing attorneys or retired federal court judges who have at least ten years of substantive expertise in litigating and resolving of complex business disputes, including motions to compel arbitration and litigation or adjudication regarding whether disputes are arbitrable;

(b)      for purpose of Sections 16.1 and 16.2 of the JAMS Rules, the JAMS Streamlined Arbitration Rules and Procedures and JAMS Expedited Procedures shall not apply unless otherwise explicitly agreed to by all parties to the Dispute;

(c)      in lieu of JAMS Rule 18, the parties shall have the right to submit a dispositive motion at the outset of the arbitration to the Arbitrator.   The submission and scheduling of such motions shall be addressed at a conference held before the JAMS arbitrator, and the parties agree that any dispositive motions shall be resolved and the remainder of the arbitral proceeding stayed pending resolution, absent good cause and immediate necessity to proceed;

(d)      except to the extent prohibited under JAMS Consumer Minimum Standards, located at https://www.jamsadr.com/consumer-minimum-standards/Rules, the arbitration will be held in Scottsdale, Arizona or, at your election, conducted via telephone or other remote electronic means;

(e)      JAMS will govern payment of all arbitration fees, currently available at https://www.jamsadr.com/arbitration-fees.  You will only be required to pay arbitration fees of $250 in connection with any arbitration initiated under this Section H, but you will still be responsible for paying your own attorney's fees;

(f)      except as otherwise waived or limited under the Terms or this Section H, the arbitrator shall be authorized to award any remedies, including injunctive relief, that would be available to you in an individual lawsuit;

(g)      except as and to the extent otherwise may be required by law, the arbitration proceeding, pleadings, and any award shall be confidential, except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its confirmation and enforcement;

(h)      in the event JAMS is unavailable or unwilling to hear the dispute in accordance with this Section H, the parties shall agree to another arbitration provider subject to the procedural agreements of this Section H; and

(i)      You and Modo agree that any award issued by the arbitrator in excess of $50,000 in favor of either party, or any award which grants any form of declaratory or equitable relief that would significantly impact other Modo users or the operation of the Platform, may be appealed in accordance with the JAMS Optional Arbitration Appeal Procedures at either party's election.  The JAMS Optional Arbitration Appeal Procedures are available at https://www.jamsadr.com/adr-rules-procedures/.

Notwithstanding any language to the contrary in this Section H(2), if a party seeks injunctive relief that would significantly impact other Modo users as reasonably determined by either party, the parties agree that such arbitration will proceed on an individual basis but will be handled by a panel of three (3) arbitrators. Each party shall select one arbitrator, and the two party-selected arbitrators shall select the third, who shall serve as chair of the arbitral panel. That chairperson shall be a retired federal court judge or an attorney licensed to practice law who have at least ten years of substantive expertise in litigating and resolving of complex business disputes, including

DMI\15540542.1

motions to compel arbitration and litigation or adjudication regarding whether disputes are arbitrable. In the event of disagreement as to whether the threshold for a three arbitrator panel has been met, the sole arbitrator appointed in accordance with this clause shall make that determination. If the arbitrator determines a three-person panel is appropriate, the arbitrator may - if selected by either party or as the chair by the two party-selected arbitrators - participate in the arbitral panel.

TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER YOU NOR MODO SHALL BE ENTITLED TO CONSOLIDATE, JOIN, OR COORDINATE DISPUTES BY OR AGAINST OTHER INDIVIDUALS OR ENTITIES, OR PARTICIPATE AS A CLASS REPRESENTATIVE, MEMBER OR PART OF ANY PROPOSED CLASS OR COLLECTIVE ARBITRATION OR ARBITRATE OR LITIGATE ANY DISPUTE IN A REPRESENTATIVE CAPACITY, INCLUDING AS A REPRESENTATIVE MEMBER OF A CLASS OR IN A PRIVATE ATTORNEY GENERAL CAPACITY, QUI TAM ACTION OR OTHERWISE SEEK TO RECOVER FOR LOSSES INCURRED BY A THIRD PARTY. IN CONNECTION WITH ANY DISPUTE, ANY AND ALL SUCH RIGHTS ARE HEREBY EXPRESSLY AND UNCONDITIONALLY WAIVED.

4. Governing Law and Venue

These Terms and all matters arising out of, or otherwise relating to, these Terms shall be governed by the laws of the State of Arizona, excluding its conflict of law provisions. The sum of this Section H(4) is that any and all Disputes that do not proceed to arbitration as set forth in Section H(2) above must be, without exception, resolved in Scottsdale, Arizona. All parties to these Terms agree that all actions or proceedings arising in connection with these Terms or any services or business interactions between the parties that may be subject to these Terms shall be brought exclusively in Scottsdale, Arizona.

The parties agree to *exclusive jurisdiction and venue in, and only in, Scottsdale, Arizona.* The parties additionally agree that this choice of venue and forum is mandatory and not permissive in nature, thereby precluding any possibility of litigation between the parties with respect to, or arising out of, these Terms in a jurisdiction other than that specified in this Section H(4).

All parties hereby waive any right to assert the doctrine of forum non-conveniens or similar doctrines challenging venue or jurisdiction, or to object to venue with respect to any proceeding brought in accordance with this Section H or with respect to any Dispute.

All Parties stipulate that the courts located in Scottsdale, Arizona shall have personal jurisdiction over them for resolution of any litigation permitted by these Terms. You agree to accept service of process by registered or certified mail, Federal Express, or Priority Mail, with proof of delivery or return receipt requested, sent to your last known address for any legal action arising from these Terms. Any final judgment rendered against you or us in any action or proceeding shall be conclusive as to the subject matter and may be enforced in the courts located in Scottsdale, Arizona or other jurisdictions in any manner provided by law if such enforcement becomes necessary.

DM1\15540542.1

5. Waivers

In consideration of your use of the Platform, you hereby waive any right or ability to proceed as a class representative, member or part of any proposed class, collective action, private attorney general suit, qui tam action or any representative proceeding, or otherwise seek to recover on behalf of others or for the benefit of others in any type of claim or action or to recover the losses of others, along with any right to trial by jury.

6. Rights to Injunctive Relief

You acknowledge that remedies at law may be inadequate to provide us with full compensation in the event you breach these Terms, and that we shall therefore be entitled to seek injunctive relief in the event of any such breach, in addition to seeking all other remedies available at law or in equity.

7. Additional Fees

If we are required to enlist the assistance of an attorney, investigator, collections agent, or other person to collect any damages or any other amount of money from you, or if we are required to seek the assistance of an attorney to pursue injunctive relief against you, then you additionally agree that you will reimburse us for all reasonable fees incurred in order to collect these damages or in order to seek injunctive relief from you. You understand that even a nominal amount of damages may require the expenditure of extensive legal fees, travel expenses, costs, and other amounts that may dwarf the damages themselves. You agree that you will pay these fees and costs. For clarity, these additional fees are not fees associated with the cost of arbitration, including any JAMS filing fee, case management fee or professional fees for the arbitrator's services.

## I. DISCLAIMERS

1. All Warranties Are Disclaimed

We provide access to the Platform "as is" and "with all faults." We make no warranty that the Platform will meet your needs or requirements. *We disclaim all warranties* — express, statutory, or implied — including warranties of merchantability, fitness for a particular purpose, workmanlike effort, quality, suitability, truthfulness, usefulness, performance, accuracy, completeness, reliability, security, title, exclusivity, quiet enjoyment, non-infringement, and warranties that your access to and use of the Platform will be uninterrupted, timely, secure, error free, or that loss of materials will not occur, to the greatest extent provided by applicable law. We may change any of the information found on the Platform at any time or remove any or all Content thereon. We make no commitment to update the Content. We make no warranty regarding any goods or services purchased or obtained through the Platform or any transaction entered into through the Platform. There are no warranties of any kind that extend beyond the face of these Terms or that arise because of course of performance, course of dealing, or usage of trade.

## 2. Use at Your Own Risk

You expressly agree that access to the Platform is at your own and sole risk. You understand that we cannot and do not guarantee or warrant that the Platform will be free of viruses, malware, worms, Trojan horses, or other code that may manifest contaminating or destructive properties. We do not assume any responsibility or risk for your access to or use of the Internet, the Platform. You understand and agree that any Content downloaded or otherwise obtained through the Platform is done at your own discretion and risk, and that you will be solely responsible for any damage to your computer system or loss of data that results from your activity.

## 3. Third-Party Links

The Platform may contain links to websites or resources owned and operated by our users or third parties. You understand and agree that we have no control over, are not responsible for, and do not screen nor warrant, endorse, guarantee, or assume responsibility for the goods or services provided by our users or on third-party links. We will not be a party to or be in any way responsible for monitoring any transaction between you and other providers of products or services. As with the purchase of a product or service through any medium or in any environment, you should use your best judgment and exercise caution where appropriate. You agree to hold us harmless from any and all damages and liability that may result from use of third-party links that appear on the Platform, and any advertising, services, goods, products, or other materials available on third-party links. We are not responsible for any use of confidential or private information by sellers or third parties. You agree that your use of any third-party link or the goods or services provided thereon is governed by the policies of those third parties, not by these Terms or our other policies. We reserve the right to demote or remove any link at any time.

## 4. Violations of Law

Access to and use of the Platform in violation of any law is strictly prohibited. If we determine that you have provided or intend to use the Platform in a manner that violates any law, your ability to access the Platform will be terminated immediately. We do hereby disclaim any liability for damages that may arise from you or any user providing any services that violates any law. You do hereby agree to defend, indemnify, and hold us harmless from any liability that may arise for us should you violate any law. You also agree to defend and indemnify us should any third party be harmed by your illegal actions or should we be obligated to defend any such claims by any party.

## J. INDEMNIFICATION

You agree to defend, indemnify, and hold harmless Modo, its officers, directors, shareholders, employees, independent contractors, telecommunication providers, and agents, from and against any and all claims, actions, loss, liabilities, expenses, costs, or demands, including without limitation legal and accounting fees, for all damages directly, indirectly, or consequentially resulting or allegedly resulting from your actions, or the actions of another person under your authority, including without limitation to governmental agencies, use, misuse, or inability to use the Platform, or any breach of these Terms by you or another person under your authority. We

DMI\15540542.1

shall promptly notify you by electronic mail of any such claim or suit, and we may cooperate fully (at your expense) in the defense of such claim or suit. We reserve the right to participate in the defense of such claim or suit at our own expense, and choose our own legal counsel; however, we are not obligated to do so.

## K. LIMITATION OF LIABILITY

You acknowledge that we will not be liable to you for user-generated content or the offensive or illegal conduct of any person. You understand that the risk of harm or damage from this rests entirely with you, and you expressly release us from any liability arising out of user-generated content or the conduct of any person. You discharge, acquit, and otherwise release us, our parent company, agents, employees, officers, directors, shareholders, attorneys, and affiliates, from any and all allegations, counts, charges, debts, causes of action, and claims relating in any way to the use of, or activities relating to the use of the Platform including claims relating to the following: negligence, gross negligence, reckless conduct, alienation of affections (to the extent recognized in any jurisdiction), intentional infliction of emotional distress, intentional interference with contract or advantageous business relationship, defamation, privacy, publicity, intellectual property infringement, misrepresentation, infectious disease, illegal gambling, any financial loss not due to the fault of Modo, missed meetings, unmet expectations, false identities, fraudulent acts by others, invasion of privacy, release of personal information, failed transactions, purchases or functionality of the Platform, unavailability of the Platform, its functions and any other technical failure that may result in inaccessibility of the Platform, or any claim based on vicarious liability for torts committed by individuals met on or through the Platform, including fraud, Prohibited Conduct, theft or misuse of personal information, assault, battery, stalking, harassment, cyber-bullying, rape, theft, cheating, perjury, manslaughter, or murder.

The above list is intended to be illustrative only, and not exhaustive of the types or categories of claims released by you. This release is intended by the parties to be interpreted broadly in favor of Modo, and thus any ambiguity shall be interpreted in a manner providing release of the broadest claims. This release is intended to be a full release of claims, and the parties acknowledge the legally binding nature of this provision, and the nature of the rights given up in connection therewith.

Further, by agreeing to these Terms, you acknowledge and agree that you have read, understand, and consent to the processing of your personal information including, but not limited to, the use web traffic and website usage analytics and tracking technologies, such as cookies, pixel tags, and Java scripts. You acknowledge and agree that you do not have a reasonable expectation of privacy in connection with the use of analytics and tracking technologies or the collection and/or sharing of personal information by us or our third-party advertising partners using these technologies. To the maximum extent permitted under applicable law, you hereby release with prejudice and discharge Modo from, and waive the assertion of, any and all claims, demands, and damages based on or arising out of our use of such analytics and tracking technologies in connection with your access to and/or usage of this Website prior to your acceptance of these Terms of Service, including any claims for any past, present or future use of tracking software, including but not limited to use of A Meta Pixel, "cookies," "GET requests" or JavaScript in

HTML code of our website that intercepts, tracks, stores, and analyzes your interactions with our website, which are hereby fully waived, released and compromised. Modo shall have no liability to you for any past claims arising out of or related to the use of any tracking technology.

You hereby waive and relinquish the provisions, rights, and benefits, if any, of Section 1542 of the California Civil Code, which provides as follows:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

We expressly disclaim any liability or responsibility to you for any of the following:

(1)     Any loss or damage of any kind incurred because of the Content, including errors, mistakes, or inaccuracies of the Content or any Content that is infringing, obscene, indecent, threatening, offensive, defamatory, invasive of privacy, or illegal.

(2)     Personal injury or property damage of any nature resulting from your access to and use of the Platform.

(3)     Any third party's unauthorized access to or alterations of your Customer Account, transmissions, or data.

(4)     Any interruption or cessation of transmission to or from Modo or the Platform and any delays or failures you may experience in initiating, conducting, or completing any transmissions to or transactions with Modo or the Platform.

(5)     Any bugs, viruses, malware, Trojan horses, or the like that may be transmitted to or through the Platform by any third party.

(6)     Any incompatibility between the Platform and your other services, hardware, or software.

**SOLE AND EXCLUSIVE REMEDY/LIMITATION ON RECOVERY. UNLESS OTHERWISE PROHIBITED BY LAW, IN ANY DISPUTE WITH US, YOUR SOLE AND EXCLUSIVE REMEDY UNDER ANY LEGAL THEORY SHALL BE TO RECOVER THE AMOUNT OF YOUR OWN PURCHASES DURING A SIX (6) MONTH PERIOD PRIOR TO THE FILING OF YOUR CLAIM. IN NO EVENT MAY YOU RECOVER UNDER ANY THEORY ANY AMOUNT MORE THAN THE AMOUNT OF YOUR OWN PURCHASES DURING THE SIX (6) MONTH PERIOD PRIOR TO THE FILING OF YOUR CLAIM. IN ADDITION, EXCEPT TO THE EXTENT PROHIBITED BY LAW OR OTHERWISE ALLOWED BY THESE TERMS, YOU MAY NOT SEEK INJUNCTIVE RELIEF ON YOUR OWN BEHALF, ON BEHALF OF ANY CLASS OF PERSONS OR FOR THE BENEFIT OF THE GENERAL PUBLIC.**

DMI\15540542.1

**YOU RECOGNIZE AND AGREE THAT THE WARRANTY DISCLAIMERS, INDEMNITIES, LIMITATIONS OF LIABILITY AND LIMITATIONS OF REMEDIES IN THESE SECTIONS I-K, ARE MATERIAL AND BARGAINED-FOR BASES OF THESE TERMS AND THAT THEY HAVE BEEN TAKEN INTO ACCOUNT AND REFLECTED IN THE DECISION BY YOU INTO THESE TERMS OF USE.**

## L. INTELLECTUAL PROPERTY

### 1. Marks

We aggressively defend our intellectual property rights, including our Marks. Other manufacturers' product and service names referenced herein, including the names and logos of the Games, may be trademarks and service marks of their respective companies and are the exclusive property of such respective owners, and may not be used publicly without the express written consent of the owners or holders of such trademarks and service marks. The Marks may not be used publicly except with express written permission from us, and the Marks may not be used in any manner that is likely to cause confusion among consumers, or in any manner that disparages or discredits Modo.

### 2. Copyrights

The Content comprises our proprietary information and valuable intellectual property. We retain all right, title, and interest in such Content. The Content is protected by copyright law, and all rights to these works are hereby reserved (except as provided herein). The Content may not be copied, downloaded, distributed, republished, modified, uploaded, posted, or transmitted in any way without our prior written consent. You may not remove or alter, or cause to be removed or altered, any copyright, trademark, trade name, service mark, or any other proprietary notice or legend appearing on the Content. Modification or use of the Content except as expressly provided in these Terms violates our intellectual property rights.

## M. GENERAL

### 1. Entire Agreement

These Terms and any other legal notice or agreement published by us on the Platform, forms the entire agreement between you and us concerning your use of the Platform. It supersedes all prior terms, understandings, or agreements between you and us regarding use of the Platform. A printed version of these Terms and of any notice given in electronic form will be admissible in any proceedings based on or relating to these Terms. Such version of these Terms shall be utilized to the same evidentiary extent, and subject to the same conditions as other business documents and records originally generated and maintained in printed form.

### 2. Policies of Our Service Providers

You understand and agree that we may use certain third-party service providers to offer services to you. You understand and agree that you must agree to and abide by any user terms, privacy policy, or other policy that such third party requires you to agree to in order to use their services. In the event of a conflict between those policies and our policies, the terms of our policies shall govern.

DM1\15540542.1

3. Assignment and Delegation

We may assign any rights or delegate any performance under these Terms without notice to you. You will not assign, delegate, or sublicense any of your rights or duties without our advanced written consent. Any attempted assignment or delegation in violation of this provision will be void.

4. Severability

If any provision of these Terms is determined to be invalid, illegal, or unenforceable, the remaining provisions shall continue in full force, if the essential terms for each party remain valid, binding, and enforceable.

5. Cumulative Remedies

All rights and remedies provided in these Terms are cumulative and not exclusive, and the assertion by a party of any right or remedy will not preclude the assertion by the party of any other rights or the seeking of any other remedies available at law, in equity, by statute, in any other agreement between the parties, or otherwise.

6. Successors and Assigns

These Terms inure to the benefit of, and are binding on, the parties and their respective successors and assigns. This section does not address, directly or indirectly, whether a party may assign its rights or delegate its performance under these Terms.

7. Force Majeure

We are not responsible for any failure to perform because of unforeseen circumstances or causes beyond our reasonable control, including: Acts of God, such as fire, flood, earthquakes, hurricanes, tropical storms, or other natural disasters; epidemics; pandemics; war, riot, arson, embargoes, acts of civil or military authority, or terrorism; fiber cuts; strikes, or shortages in transportation, facilities, fuel, energy, labor, or materials; failure of the telecommunications or information services infrastructure; hacking, spam, data breach, malware, or any failure of a computer, server, network, or software for so long as the event continues to delay our performance; and unlawful acts of our employees, agents, or contractors.

8. Notices

Any notice required to be given by us under these Terms may be provided by email to a functioning email address of the party to be noticed, by a general posting on the Platform, or by personal delivery via commercial carrier. Notices by customers to us shall be given by contacting us at support@modo.us unless otherwise specified in these Terms. Either party may change the address to which notice is to be sent by written notice to the other party pursuant to this provision of these Terms. Notices shall be deemed effective upon delivery. Notices delivered by overnight carrier shall be deemed delivered on the business day following mailing. Notices delivered by any other method shall be deemed given upon receipt. Any correctly addressed notice that is refused, unclaimed, or undeliverable, because of an act or omission of the party to be notified

shall be deemed effective as of the first date that said notice was refused or deemed undeliverable by the postal authorities, messenger, email server, or overnight delivery service.

## 9. Communications are Not Private

We do not provide any facility for sending or receiving private or confidential electronic communications. All messages transmitted to us shall be deemed to be readily accessible to the general public. Notice is hereby given that all messages entered into the Platform may be read by Modo and the agents and operators of the Platform, regardless of whether they are the intended recipients of such messages.

## 10. Authorization and Permission to Send Emails to You

You authorize us to email you notices, advertisements, and other communications. You understand and agree that such communications may contain information about social casinos and related sweepstakes promotions. This authorization will continue until you request us to remove you from our email list. You understand and agree that even unsolicited email correspondence from us, or our affiliates, is not spam as that term is defined under the law.

## 11. Consideration

We allow you to access and use of the Platform, as limited by your additional purchase of certain paid features and upgrades and your participation in qualifying activities as described in the Promo Rules, in consideration for your acquiescence to all the provisions in these Terms. You agree that such consideration is both adequate and received upon your accessing any portion of the Platform.

## 12. Electronic Signatures

You agree to be bound by any affirmation, assent, or agreement you transmit through the Platform. You agree that when in the future you click on an "I agree," "I consent," or other similarly worded button, check box, or entry field with your mouse, keystroke, or other computer device, your agreement or consent will be legally binding and enforceable and the legal equivalent of your handwritten signature.

## 13. English Language

We have written these Terms and our associated website policies in the English language. You are representing your understanding and assent to the English language version of these Terms as they are published. We are not liable to you or any third party for any costs or expenses incurred in translating these Terms. In the event that you choose to translate these Terms, you do so at your own risk, as only the English language version is binding.

## 14. Export Control

You understand and acknowledge that the software elements of the Platform may be subject to regulation by governmental agencies which prohibit export or diversion of software and other goods to certain countries and third parties. Diversion of such elements contrary to U.S. or international law is prohibited. You will not assist or participate in any such diversion or other

violation of applicable laws and regulations. You warrant that you will not license or otherwise permit anyone not approved to receive controlled commodities under applicable laws and regulations and that you will abide by such laws and regulations. You agree that such elements are not being and will not be acquired for, shipped, transferred, or re-exported, directly or indirectly, to proscribed or embargoed countries or their nationals or be used for proscribed activities.

15. No Agency Relationship

Nothing in these Terms shall be deemed to constitute, create, imply, give effect to, or otherwise recognize a partnership, employment, joint venture, or formal business entity of any kind. The rights and obligations of the parties shall be limited to those expressly set forth herein.

16. Usages and Construction

In these Terms, unless otherwise stated or the context otherwise requires, the following usages will apply:

(a)    References to a statute will refer to the statute and any successor statute, and to all regulations promulgated under or implementing the statute or successor, as in effect at the relevant time.

(b)    In computing periods from a specified date to a later specified date, the words "from" and "commencing on" (and the like) mean "from and including," and the words "to," "until," and "ending on" (and the like) mean "to but excluding."

(c)    References to a governmental or quasi-governmental agency, authority, or instrumentality will also refer to a regulatory body that succeeds to the functions of the agency, authority, or instrumentality.

(d)    "A or B" means "A or B or both." "A, B, or C" means "one or more of A, B, and C." The same construction applies to longer strings.

(e)    "Including" means "including, but not limited to."

17. No Waiver

No waiver or action made by us shall be deemed a waiver of any subsequent default of the same provision of these Terms. If any term, clause, or provision hereof is held invalid or unenforceable by a court of competent jurisdiction, such invalidity shall not affect the validity or operation of any other term, clause, or provision and such invalid term, clause, or provision shall be deemed to be severed from these Terms.

18. Headings

All headings are solely for the convenience of reference and shall not affect the meaning, construction, or effect of these Terms.

DM1\15540542.1

19. <u>Other Jurisdictions/Foreign Law</u>

We make no representation that the Platform is appropriate or available for use in all locations. You may not access the Platform from territories where it is illegal or otherwise prohibited. Those who choose to access the Platform from such locations do so on their own initiative and are solely responsible for determining compliance with all applicable local laws. Nothing contained in these Terms shall be interpreted as an admission that the Platform is subject to the laws of any nation besides the United States.

20. <u>Service Not Available in Some Areas</u>

You are subject to the laws of the state, province, city, country, or other legal entity in which you reside or from which you access the Platform. THE PLATFORM AND THE SWEEPSTAKES PROMOTION ARE VOID WHERE PROHIBITED OR RESTRICTED BY LAW. If you use the Platform or participate in the sweepstakes promotion while located in a prohibited jurisdiction, you will be in violation of the law of such jurisdiction and these Terms, and subject to having your Customer Account suspended or terminated without any notice to you. You hereby agree that Modo cannot be held liable if laws applicable to you restrict or prohibit your participation. Modo makes no representations or warranties, implicit or explicit, as to your legal right to participate in any service offered on the Platform, nor shall any person affiliated, or claiming affiliation, with Modo have authority to make any such representations or warranties. We reserve the right to restrict access to the Platform or any part thereof in any jurisdiction.

*[nothing more follows]*

*© ARB Gaming, LLC (2024). All Rights Reserved.*

# EXHIBIT L

EXHIBIT L – PAGE 106

# TERMS OF USE

**IMPORTANT NOTICE: These Terms of Use have been updated as of May 29, 2026, and shall supersede and replace all prior Terms of Use.**

**These Terms of Use ("the Terms" or "TOU") and the Arbitration Agreement (see Section 22) form binding agreements between you ("You," or "User,") and ARB Gaming, LLC d/b/a Modo.us® ("Modo®," the "Company," "Us, or "We") which provide all of the terms and conditions governing Your access and use of** www.modo.us **and any related applications (the "Website," "Site," or "Platform") as well as Your creation of Your Modo® user account ("User Account"), use of the games, promotions or contests (collectively or individually, "Games") on the Site, and any transactions or dealings with Us in any way (collectively, the "Service").**

*IMPORTANT NOTICES*:

**THIS WEBSITE AND THE SERVICES PROVIDED HEREIN DO NOT OFFER "REAL MONEY GAMBLING."  NO ACTUAL MONEY IS REQUIRED TO PLAY, AND THE SERVICE IS INTENDED FOR ENTERTAINMENT PURPOSES ONLY.**

**THESE TERMS OF USE INCLUDE AN ARBITRATION AND CLASS ACTION WAIVER AGREEMENT WHICH REQUIRES THAT ANY PAST, PENDING, OR FUTURE DISPUTES BETWEEN YOU AND US SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION ON AN INDIVIDUAL BASIS ONLY AND FOR YOUR OWN LOSSES ONLY. YOU MAY NOT PROCEED AS A CLASS REPRESENTATIVE, MEMBER OR PART OF ANY PROPOSED CLASS, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL SUIT, QUI TAM ACTION OR ANY REPRESENTATIVE PROCEEDING, OR OTHERWISE SEEK TO RECOVER ON BEHALF OF OTHERS OR FOR THE BENEFIT OF OTHERS IN ANY TYPE OF CLAIM OR ACTION. ARBITRATION MEANS YOU WILL NOT BE ABLE TO SEEK DAMAGES IN COURT OR PRESENT YOUR CASE TO A JURY, UNLESS OTHERWISE PERMITTED BY THESE TERMS.**

**OPT-OUT. IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION ON A RETROACTIVE BASIS AND AS TO ANY FUTURE CLAIMS, *AND* YOU HAVE *NOT* PREVIOUSLY AGREED TO AN ARBITRATION PROVISION WITH US IN CONNECTION WITH YOUR USE OF OUR SERVICES, YOU MAY OPT OUT OF THE ARBITRATION AGREEMENT WITHIN THIRTY (30) DAYS OF ENTERING THIS AGREEMENT BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE "BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER" – SEE SECTION 22 OF THESE TERMS, BELOW. OPT-OUT REQUESTS SENT AFTER THE THIRTY (30) DAY PERIOD SHALL BE NULL AND VOID.  EVEN IF YOU OPT OUT OF THE ARBITRATION AGREEMENT IN SECTION 22, ALL OTHER REMAINING SECTIONS OF THESE TERMS APPLY.**

**PLEASE READ THE FOLLOWING TERMS OF USE, THE ARBITRATION AGREEMENT AND CLASS ACTION WAIVER (SEE SECTION 22 BELOW), AND THE MODO®** PRIVACY POLICY **CAREFULLY BEFORE USING THE SERVICES**

**OFFERED IN CONNECTION WITH ANY MODO® SERVICES OR WEBSITE OR APPLICATION. YOU AGREE THAT YOUR CONTINUED USE OR ACCESS OF THE SITE OR SERVICES SHALL BE SUBJECT TO THESE TERMS OF USE, WHICH FURTHER INCORPORATE AND INCLUDE THE <u>PRIVACY POLICY</u>, THE <u>PLAYER SAFETY POLICY</u>, THE OFFICIAL SWEEPSTAKES RULES, THE MODO BOXES TERMS OF SERVICE, AND ANY OTHER POLICIES THAT EXPRESSLY INCORPORATE THESE TERMS (COLLECTIVELY, "INCORPORATED POLICIES").**

**IT IS AN EXPRESS CONDITION OF THIS AGREEMENT THAT ANY CLAIMS YOU MAY HAVE AGAINST MODO® ARISING FROM ANY PAST, PRESENT OR FUTURE USE OF TRACKING SOFTWARE, INCLUDING BUT NOT LIMITED TO USE OF A META PIXEL, "COOKIES," "GET REQUESTS" OR JAVASCRIPT IN HTML CODE OF THE COMPANY'S WEBSITE THAT INTERCEPTS, TRACKS, STORES, AND ANALYZES YOUR INTERACTIONS WITH THE COMPANY'S WEBSITE FOR PURPOSES OF OBTAINING DATA OR TARGETED ADVERTISEMENT ARE HEREBY FULLY WAIVED, RELEASED AND COMPROMISED. MODO® SHALL HAVE NO LIABILITY TO YOU FOR ANY PAST, PRESENT OR FUTURE CLAIMS ARISING OUT OF OR RELATED TO THE USE OF TRACKING TECHNOLOGY.**

**Acceptance of Terms.** You represent and warrant that You have the right, authority, and capacity to accept these Terms and to abide by them, that You are of legal age and that You have fully read and understood the Terms. You must read these Terms carefully in their entirety **before checking the box for acceptance of these Terms**. By using, or otherwise accessing the Service, or clicking to accept or agree where that option is made available, You confirm that you have read and agree to these Terms. If you do not agree to these Terms, then you may not access or use the Platform or Service. All of your activity on the Website or Platform and all or your transactions with Modo, including all events which occurred before your acceptance of these Terms, shall be subject to these Terms.

The Service is not sponsored, endorsed, or administered by, or associated with Apple®, Facebook® or Google®. You understand that you are providing your information to Modo® only and not to Apple®, Facebook® or Google®.

1.      **Changes to Terms of Use and Incorporated Policies**

        **1.1**      From time to time, We may modify or amend these Terms. If We do so, any such modifications or changes shall be reflected in the TOU or Incorporated Policies, as applicable, on the Site. We may also, but shall not be required to, notify You by email regarding any material changes to the TOU or Incorporated Policies. Whether You receive or review such notifications, You agree that You will be bound by any such changes and that it shall be Your responsibility to check the Terms Of Use, including the Incorporated Policies, as posted on the Site prior to accessing the Site or partaking in any Service. Your further use of the Service after any changes are posted shall constitute further consent and agreement to the terms as changed or amended.

        **1.2**      From time to time, We may also modify or amend any of the Incorporated Policies. If we do so, any such modifications or changes shall be reflected in the Incorporated Policies as posted on the Site. You agree that You will be bound by any such changes and that it

2

shall be Your responsibility to check the Incorporated Policies as posted on the Site prior to accessing the Site or partaking in any Service. Your further use of the Service after any changes are posted shall constitute further consent and agreement to the Incorporated Policies as changed or amended.

     **1.3**     If You have any questions about these Terms or the Incorporated Policies, please contact customer support at <u>support@modo.us</u>.

     **1.4**     In the event of any conflict between the Terms and the Incorporated Policies, the Terms shall control.

**2.**     **Limited Revocable License (the "License")**

     **2.1**     <u>Virtual Coins</u>. The Service includes a License (as defined below) to You to use virtual tokens to play all Games on the Site, including, but not limited to, chips, coins, credits, or points (collectively, "Virtual Coins"), that may be provided for use on the Platform. No matter the reference or format of the Games, Virtual Coins are non-transferrable and may be used subject to the License only. With the exception of "no purchase necessary" promotional contests or giveaways, there is no opportunity for a User on the Platform to win real-money or any prize while playing the Games, regardless of whether any purchase was made at any point by the User.

     **2.2**     <u>The License</u>. Subject to Your agreement and continuing compliance with these Terms, we grant You a limited, personal, non-exclusive, non-transferable, non-sublicensable, revocable, license to access and use the Service, Games and Virtual Coins solely for Your personal, private entertainment on the Platform and for no other reason (the "License"). Other than this limited, personal, revocable, non-transferable, non-sublicensable License to use the Virtual Coins with the Service, You have no right or title in or to any such Virtual Coins appearing or originating with the Service, or any other attributes associated with use of the Service or stored within the Service. You acknowledge and agree that Your License to use the Service is limited by these Terms and if You do not agree to, or act in contravention of, these Terms, Your License to use the Service may be immediately terminated. We have the absolute right to manage, regulate, control, modify and/or eliminate such Virtual Coins as it sees fit in its sole discretion to the extent legally permissible, and We shall have no liability to You or anyone for the exercise of such rights.

     **2.3**     <u>No Right to Sell or Assign</u>. The transfer or sale of Virtual Coins by You to any other person is strictly prohibited. You may NOT sell or assign Your User Account to any other person under any circumstances. Any attempt to do so is in violation of these Terms, will result in in closure and forfeiture of the User Account, and may result in a lifetime ban from the Service and possible legal action.

     **2.4**     <u>No Purchase Required</u>. No purchase is required to set up a User Account or play Games. The Platform is committed to at all times providing additional access to Virtual Coins or otherwise to free-to-play Games to Users who deplete their balance of Virtual Coins. While it is never required to make any purchase in order to play the Games, Users may, subject to the License, increase the number of certain Virtual Coins they may access for licensed use on the Platform only, increase the variety of available Games, and remove advertisements by making a purchase. You understand and agree that any purchases are final and that We are not required to provide a

3

refund for any reason. Virtual Coins are non-transferrable, and carry no cash value. All Virtual Coins under this License are forfeited if Your User Account is terminated or suspended for any reason, in our sole and absolute discretion or if the Services are no longer available. To the extent legally permissible, if Your User Account, or a particular subscription for the Service associated with Your User Account, is terminated, suspended and/or if any Virtual Coins are selectively removed or revoked by Us from Your User Account, no refund will be granted, and no Virtual Coins will be credited to You or converted to cash or other forms of reimbursement.

**2.5**    These Terms do not grant You any right, title or property or ownership interest in the Service or any Virtual Coins.

**2.6**    This Service is licensed, not sold, to You. You agree that we and our own licensors own all rights, title and interest in and to the Service, including all intellectual property rights therein as further specified below in Section 9, and that we retain ownership of the Service even after any installation on Your device. You agree not to delete or in any manner alter the copyright, trademark or other proprietary rights notices or markings which may appear on the Service.

**2.7**    Except as identified and specified in these Terms, You agree not to:

**2.7.1**    sell, rent, distribute, transfer, license, sub-license, lend or otherwise assign any rights of any part of the Service to any third party;

**2.7.2**    copy, modify, create derivative works of the Service (including but not limited to any software that forms part of the Service), including, without limitation, making adaptations or modifications to the Service;

**2.7.3**    reproduce the Service or any part in any form or by any means;

**2.7.4**    exploit the Service in any unauthorized way whatsoever, including without limitation, by trespass or burdening network capacity;

**2.7.5**    disassemble, decompile, reverse engineer, or attempt to derive the source code of the Service, in whole or in part, or permit or authorize a third party to do so, except to the extent such activities are expressly permitted by law;

**2.7.6**    make the Service available to multiple users by any means, including by uploading the Service to a file-sharing service or other type of hosting service or by otherwise making the Service available over a network where it could be used by multiple devices at the same time;

**2.7.7**    misrepresent the source of ownership of the Service;

**2.7.8**    scrape, build databases or otherwise create permanent copies of any content derived from the Service; or

**2.7.9**    use the Service in any manner to harass, abuse, stalk, threaten, defame or otherwise infringe or violate the rights of any other party.

4

**3.    Eligibility**

Your eligibility for continued use of the Service is contingent on Your ongoing compliance with these Terms, in particular:

**3.1**    You are over 21 years of age at the time of accessing or using the Service and are, under the laws of the jurisdiction(s) applicable to You, legally allowed to participate in the Games and access the Service;

**3.2**    You understand and accept that we are unable to provide You with any legal advice or assurances and that it is Your sole responsibility to ensure that at all times You comply with the laws that govern You and that You have the complete legal right to use the Service;

**3.3**    You will monitor Your User Account and ensure that no child or person under the age of 21 can access the Service using Your User Account. You accept full responsibility for any unauthorized use of the Service by minors and You acknowledge that You are responsible for any use of the Service, including use of Your credit card or other payment instrument by minors;

**3.4**    You do not access the Games or Service from the states of Washington or any jurisdiction outside the United States or as otherwise posted within these Terms or on the Platform (the "Restricted Territories").

**3.5**    You will not play or enter into any Games Services with Sweepstakes Coins from the states of Arizona, California, Connecticut, Delaware, Idaho, Indiana, Louisiana, Maine, Michigan, Montana, Nevada, New Jersey, New York, Tennessee, Washington, or West Virginia (the "GC Only States");

**3.6**    You participate in the Games strictly in Your personal capacity for recreational and entertainment purposes only;

**3.7**    You further represent and warrant that all information you supply to Us is complete and accurate. Knowingly submitting incomplete or inaccurate information may result in immediate termination of Your User Account, revocation of any License from Us, and any further participation or access to the Service, at Modo's sole discretion, to the extent legally permissible;

**3.8**    You will not be involved in any fraudulent or other unlawful activity in relation to Your participation in any of the Games and You will not use any software-assisted methods or techniques (including but not limited to "bots" designed to play automatically) for Your participation in any of the Games. We reserve the right to invalidate any participation in the event of such behavior;

**3.9**    If, in the reasonable opinion of Modo, we form the view that a player is abusing any promotion, to derive any advantage or gain for themselves or another player, including by way of fraudulent conduct, we may, at our sole discretion, withhold, deny or cancel any advantage, bonus or promotional prize as we see fit, or terminate or suspend the User Account of such player.

**3.9.1**    You will not directly or indirectly  participate in groups or take advantage of, or encourage others to participate in or take advantage of schemes, organizations, agreements,

5

or groups designed to share: (a) hacks or money-making strategies; (b) special offers or packages emailed to a specific set of players and redeemable by URL; or (c) identification documents (including, but not limited to, photographs, bills and lease documents) for the purpose of misleading Modo® as to a player's identity.

**3.10**    In relation to any purchase, You must only use a valid form of payment accepted by the Platform or its third party payment processing provider(s) ("Payment Agent(s)") which lawfully belongs to You (the "Payment Mechanism").

## 4.    Your User Account

**4.1**    You must create a User Account in order to access or use the Service.

**4.2**    Only one User Account is permitted per person. In the event You open or try to open more than one User Account, all User Accounts You have opened or try to open may then be terminated or suspended any prizes or Virtual Coins balances may be voided.

**4.3**    If You lose access to Your User Account, You must not register a new User Account. Rather, You must contact customer support at support@modo.us to have Your User Account status updated.

**4.4**    You are required to keep Your personal details up to date. If You change Your address, email, phone number or any other contact details or personal information, please contact customer support. The name that You provide to us at registration must match any identification You provide for Your User Account verification.

**4.5**    During the registration process, You will be required to select a password unless: (i) You login to Your User Account using the Facebook® login facility in which case Your Facebook® password will apply; or (ii) You login to Your User Account using the Google® login facility in which case Your Google® password will apply.

**4.6**    You confirm that You will not share Your User Account or password with any other person or let anyone else access or use Your User Account without our written permission. You will not access or use a User Account which has been rented, leased, sold, traded, or otherwise transferred from the User Account creator without our written permission.

**4.7**    If You become aware, or have reasons to suspect, that the security of Your User Account may have been compromised, including loss, theft or unauthorized disclosure of Your password and User Account details, You must notify us immediately.

**4.8**    You are responsible for maintaining the confidentiality of Your User Account and accept responsibility for all uses of the User Account, including any purchases (whether or not authorized by You).

**4.9**    We reserve the right to close Your User Account if it is inactive for a period of sixty days or longer and therefore Dormant under Section 6.11. You agree that We are not required to give notice to You prior to taking such action, although we may choose to do so in our sole discretion.

**4.10**    If You wish to close Your User Account, You may do so at any time by contacting customer support. Closing Your User Account will forfeit all continued access to and right to use, enjoy or benefit from any Virtual Coins associated with Your User Account.

**4.11**    We reserve the right to refuse to open or the right to close a User Account at our sole discretion.

**4.12**    User Account registrations may be limited to one User Account registration per person or per IP address at our sole discretion.

**4.13**    We reserve the right, at our sole discretion, to deactivate or suspend your User Account (notwithstanding any other provision contained in these Terms of Use) where we have reason to believe that you have played or are likely to play in tandem with other player(s) as part of a club, syndicate, group, etc., or played the Games in a coordinated manner with other player(s) involving the same (or materially the same) actions, decisions, or selections.

## 5.    Games and Contests

**5.1**    In addition to these Terms, Games offered on the Service may have their own rules which are available on the Service.  It is Your responsibility to read the rules of a Game before playing. You must familiarize Yourself with the applicable terms of play and read the relevant rules before playing any Game.

## 6.    Modo® Stars Loyalty Rewards Program

**6.1**    You will have the opportunity to accumulate "Modo® Stars" through your use of the Service and Games. For purposes of this section, accumulation of Modo® Stars through gameplay is only possible when playing with Gold Coins, no Modo® Stars will be awarded for gametime played with Sweepstakes Coins. Accordingly, reference to Games in this Section 6 shall refer only to Gold Coin gameplay. Modo® Stars are virtual in-Service points that you can use to exchange for Virtual Items within the Service. As with all Virtual Items, you do not in fact own the Modo® Stars you accumulate and the amounts of any Modo® Stars you accumulate do not refer to any credit balance of real currency or its equivalent. Rather, by "earning" and "acumulating" Modo® Stars, you are merely granted a limited license to use the software programs that manifest themselves as the Modo® Stars. In the event we encounter issues with the Service that impact the accumulation of Modo® Stars and/or the redemption of Rewards, we reserve the right to correct any such errors. We reserve the right, at our sole discretion, to modify, suspend or cancel the Modo® Stars Loyalty Rewards Program for any reason.  By accepting these Terms, you acknowledge and agree that we can adjust, limit, suspend or cancel your participation in Modo® Stars Loyalty Rewards Program at any time.  If you participate in any of our Rewards Partners' rewards programs, the Modo® Stars you accumulate through your use of the Service may be exchanged for items, services, or experiences (each a "Reward") offered by such Rewards Partners through those programs.

**6.2**    You may accumulate Modo® Stars by taking certain actions while using the Services. For example, you may earn Modo® Stars by posting your in-Service achievements to your Facebook account, "liking" certain aspects of the Service, playing the Games for a specified duration, or participating in certain in-Service offers. Modo® Stars are awarded based on a

proprietary system that includes multiple player actions. The foregoing list is solely for purposes of example and explanation and is not meant to be exclusive or exhaustive. Modo® Stars are NOT and WILL NOT be awarded or earned in any way related to or based upon the outcome of any Game you play during your use of the Services.

6.3     Modo® Stars have no cash value and are non-transferable. You may not sell, trade, barter, bequeath or in any way transfer any Modo® Star(s) to any other party. Any attempt to do so will lead to the immediate expiration of the Modo® Stars in that account and may result in the termination of your Account.

6.4     You may exchange your accumulated Modo® Stars for in-Service Virtual Items in the Service. You may also exchange your Modo® Stars for Rewards in the "Rewards" area of the Service. The first time you exchange your Modo® Stars for Rewards, you will be asked to provide your name and email address. The name you provide must match the name that appears on a government-issued identification belonging to the person who has accumulated the Modo® Stars through his/her use of the Service. The identification will be used by our Rewards Partners to verify your eligibility.

6.5     Transactions exchanging Modo® Stars for in-Service Virtual Items, such as Gold Coin packages, will be delivered instantly to your Modo® Account and cannot be returned or refunded.

6.6     Once you have exchanged Modo® Stars for a Reward, you are said to have "claimed" that Reward. After claiming your Reward, you will have a limited period of time in which to complete a "redemption process" by following a defined "redemption method" as provided for and determined by the Reward Partners (the "Redemption Period"). **After the Redemption Period has passed, the Reward will be deemed "expired" and no longer available for redemption. Your Modo® Stars will not be refunded to you if you allow a purchased Reward to expire.** Redeeming a reward that has been "claimed" in the Service secures that reward for your specific use at a particular time. When the redemption process is complete, you may then "use" the reward. A Reward is considered "used" at the moment when it is consumed (e.g., when you check into a hotel room, eat a meal, or attend a show).

6.7     Rewards Partners may, at their discretion, place restrictions on the usage of the Rewards they offer in the Service (e.g., a minimum age requirement, Reward usage black-out dates, a limit as to the number and frequency of Rewards that may be used within a specified period of time, and the requirement to participate in the partner's own loyalty program), which may exist independently of the Service. Redemption of Rewards are subject to the terms and provisions of the Rewards provider, including limitations on redeeming Rewards if you self-limit or self-exclude with the Reward provider or any regulatory agency, including any gaming regulatory agencies.

6.8     Because the Redemption Period, redemption method, and other terms of Rewards usage may vary, you must review the specific terms and conditions of each Reward you claim with your Modo® Stars. We are not responsible for the terms and conditions of the Rewards and Modo® bears no responsibility to you for any such unread, misread or misunderstood terms. By selecting and claiming a Reward, you acknowledge and agree that you read and accept the terms and conditions of the Reward. The selection and availability of Rewards is subject to change without notice and we make no guarantees as to the availability of any Reward. For complete

8

details and the terms, conditions and restrictions for any individual reward, please refer to the rewards detail found within the Rewards catalog within the Service.

7.    Reward Cancellations and Refunds.

7.1    Generally, at any time during the Redemption Period, you may cancel your "claim" of a Reward for a full refund of the Modo® Stars used to "claim" it. Once you have redeemed a Reward, either through the online reservation system available through the Service or otherwise, you may no longer cancel that Reward and you will not receive a refund of your Modo® Stars.

7.2    On rare occasions, a Reward will "sell out" or otherwise become unavailable between the time you "claim" it and the time you redeem it. If you are, within the Redemption Period, unable to redeem a "claimed" Reward because of such unavailability, you will be eligible to receive a full refund of the Modo® Stars used to "claim" that Reward. If you do not redeem or cancel a Reward during that Reward's Redemption Period, the Reward will expire. Some Rewards are of such limited availability that our Rewards Partners may, in their sole discretion, deem them to be non-refundable. Non-refundable Rewards do not have a Redemption Period and therefore may not be cancelled for a refund of Modo® Stars after they are "claimed". You are solely responsible for reading and understanding the refund terms and conditions of each Reward you "claim".

8.    Changes and Other Rewards Terms.

8.1    From time to time, other Rewards Partners may require you to enroll in separate rewards programs as a condition of redeeming certain Rewards. If you choose to participate in such programs, you hereby agree to comply with all applicable Reward Partner rules, policies, and terms and conditions. Once you have redeemed a Reward with any such Rewards Partner, your ability to change that Reward may be at the sole discretion of that Rewards Partner. Any such changes will not result in a change to your Modo® Stars balance.

8.2    Rewards have no cash value and are non-transferable. You may not sell, trade, barter, bequeath or in any way transfer any Reward to any other party. Any attempt to do so will invalidate the Reward and may result in the termination of your Account.

9.    Inactive Accounts. If you do not use your Account by logging in and using the Service at least once every 30 days, your Account will be deemed inactive. You can, at any time, reactivate your Account by logging in and using the Service. When an Account has been deemed inactive, we may, at our own discretion, expire any Modo® Stars accumulated by You. Once your account is deemed inactive, any Rewards which have been "claimed" but not yet redeemed may also be expired at our discretion.

10.    Third Party Providers of Goods and Services

10.1    Our Rewards Partners reserve the right, in their sole discretion, to change, amend, suspend, cancel, or terminate any reward program they offer or any aspects and/or terms and conditions thereof, in whole or in part, at any time, with or without notice and for any or no reason. Any such changes may affect your ability to use the Modo® Stars that you have accumulated through your use of the Service to "purchase" or redeem Rewards from such Rewards Partners.

9

You hereby agree that we shall have no liability to you as a result of such action of any Rewards Partner.

**10.2** Your correspondence or business dealings with, or participation in promotions sponsored by any third party providers of goods or services made available on or through the Service, your participation the rewards programs offered by any of our Rewards Partners, and any other terms, conditions, warranties or representations associated with such dealings, are solely between you and such third-party provider and solely at your own risk. You hereby release us (and our affiliates, officers, directors, agents, subsidiaries, and employees) from any and all claims, demands and damages (actual and consequential) of every kind and nature, known and unknown, arising out of or in any way connected with such dealings or as the result of the presence of such third-party providers on the Service.

## 11. VIP Rank

**11.1** We may, at our sole discretion, grant, modify, limit, suspend, or revoke any VIP Rank benefits, rewards, or features at any time, for any reason, with or without prior notice. VIP Ranks and any associated benefits are provided as discretionary rewards and are not guaranteed. Players have no entitlement to receive or retain any VIP Rank or related rewards. More information on rank-specific benefits and achieving these tiers can be found at https://modo.us/vip-ranks, which can be modified by us at any time as provided for in these Terms.

**11.2** If accepted into a VIP Rank program you may receive and/or be offered certain things of value including tickets, flights, accommodations, and admission to special events, discounted items, and/or other tangible or intangible benefits. These may be subject to IRS form 1099 reporting and may be taxable to you. For purposes of tax reporting, you are said to have received the value of the benefit upon acceptance of the item, regardless of whether you actually use and/or consume the item.

**11.3** By accepting any benefits as described in Section 11 you also hereby agree to the following special provisions:

**11.3.1 Liability Waiver, Release and Covenant Not to Sue:** FOR MYSELF AND MY HEIRS, EXECUTORS, ADMINISTRATORS AND ASSIGNS, I HEREBY WAIVE, RELEASE, COVENANT NOT TO SUE, AND DISCHARGE SPONSOR, ITS CORPORATE PARENTS, SUBSIDIARIES, AFFILIATED COMPANIES, MARKETING AGENCIES, AND ANY OTHER PARTIES INVOLVED IN THE ADMINISTRATION OF THE EVENT AND THE EMPLOYEES, REPRESENTATIVES, AGENTS, DIRECTORS, OFFICERS, SUCCESSORS AND ASSIGNS OF ALL OF THE FOREGOING (COLLECTIVELY, "RELEASEES"), FROM ANY AND ALL LIABILITIES, CLAIMS, LOSSES, DAMAGES, COSTS, AND EXPENSES (INCLUDING ATTORNEYS' FEES) OF ANY KIND (COLLECTIVELY, "CLAIMS") ARISING OUT OF: (A) THE EXERCISE OF THE RIGHTS GRANTED IN PARAGRAPH 11.4 (PUBLICITY RIGHTS) BELOW; (B) THE EVENT; (C) MY ACCEPTANCE OR USE OF, OR INABILITY TO USE, THE BENEFITS PROVIDED (OR ANY COMPONENT THEREOF); OR (D) MY PARTICIPATION IN ANY PRIZE-RELATED TRAVEL, ACTIVITIES OR EVENTS. THE FOREGOING RELEASE, WAIVER, AND COVENANT NOT TO SUE, INCLUDES, BUT IS NOT LIMITED TO, CLAIMS ARISING

10

UNDER A THEORY OF CONTRACT, WARRANTY, TORT (INCLUDING NEGLIGENCE, WHETHER ACTIVE, PASSIVE OR IMPUTED), STRICT LIABILITY, OR ANY OTHER THEORY.

**11.3.2** I HEREBY WAIVE CALIFORNIA CIVIL CODE SECTION 1542, AND ANY ANALOGOUS PROVISION OF OTHER STATE LAWS, WHICH PROVIDES: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY."

**11.3.3 I SPECIFICALLY UNDERSTAND AND AGREE THAT THIS RELEASE WILL PREVENT ME FROM BRINGING A LAWSUIT, CLAIM, OR OTHER ACTION AGAINST ANY OF THE RELEASEES AND FROM RECOVERING ANY MONEY DAMAGES OR OTHER LEGAL RELIEF FROM SPONSOR OR ANY OTHER RELEASEE IN CONNECTION WITH ANY OF THE RELEASED CLAIMS ABOVE.**

**11.4** Publicity Rights. By accepting and participating in any benefits as described herein I acknowledge and agree that I may be photographed and/or recorded on video in connection with my participation in any prize-related events or activities. I hereby irrevocably consent and grant, in perpetuity, the absolute right and permission to Sponsor and its affiliates, successors, and assigns, and others that Sponsor may designate from time to time, to use, publish, and broadcast my name, likeness, voice, statements, and biographical information worldwide, in any manner of media whatsoever now known or hereafter devised, in perpetuity, on a royalty-free basis, without further compensation or approval, including but not limited to use on the Internet, for any commercial, advertising, promotional, publicity, trade, or other lawful purpose.

**11.5** The VIP Rank benefits that may be subject to such changes, limitation, and/or suspension include, but are not limited to:

**11.5.1** Exclusive Pick-Me-Up Click N' Claims
**11.5.2** Birthday Click N' Claim Rewards
**11.5.3** Daily and Weekly VIP Rank Discounts
**11.5.4** Daily Bonus Streak repair
**11.5.5** Access to Live Chat Priority Support
**11.5.6** VIP Points earned per daily log-in
**11.5.7** Access or entry to special events

**11.6** Without limiting the foregoing, the following are common examples of when such limitations may occur:

**11.6.1** When an account is under review by our teams
**11.6.2** When an account is pending closure or has been closed
**11.6.3** When limitations are applied in connection with Responsible Social Gaming practices

**11.6.4** When an account is found to be in violation of these Terms or Sweepstakes Rules

**11.6.5** When we identify technical or operational issues affecting the delivery of benefits

**11.6.6** At our discretion, based on other risk, operational, or compliance considerations

**11.7** Nothing in these Terms guarantees the continued availability of any VIP Rank benefit or feature. We reserve the right to add, modify, suspend, and/or remove VIP Rank benefits and eligibility criteria at any time for any reason.

**11.8** Black Diamond VIP Rank

**11.8.1** Black Diamond is an invitation-only VIP Rank tier that may be granted at our sole discretion. In addition to standard VIP Rank benefits, Black Diamond members may receive access to a dedicated VIP host, special event invitations, and enhanced or personalized promotions. We may, at any time and for any reason, grant, modify, limit, suspend, or revoke any Black Diamond benefits, rewards, or features with or without prior notice. Black Diamond status and its associated benefits are discretionary and not guaranteed. Players have no entitlement to receive or retain Black Diamond status or any related rewards.

## 12. Purchases

**12.1** The name on Your Payment Mechanism must match the name on Your User Account. If it comes to our attention that the name You registered on Your User Account and the name linked to Your Payment Mechanism differ, Your User Account will be suspended, purchases may be voided, and any Virtual Coins balance may be adjusted accordingly. **You must promptly notify us if Your Payment Mechanism is cancelled, lost or stolen or if the security of Your Payment Mechanism has otherwise become compromised.**

**12.2** You acknowledge and agree that we may, from time to time and without notice, appoint one or more Payment Agents to process or make payments from or to You on our behalf.

**12.3** If one or more of Your Virtual Coins purchases is subject to a charge back request, Your User Account will be suspended. In the event of any charge back on Your User Account, the amount of the charge back will be a debt owed by You to Us, and You must immediately submit payment for such purchases through an alternative Payment Mechanism.

**12.4** You agree that we and/or our Payment Agents appointed by us from time to time may store Your Payment Mechanism details to process future purchases. By accepting these Terms, you authorize us and/or our Payment Agents to store Your payment credentials in compliance with applicable payment processing regulations.

**12.5** A Payment Agent will have the same rights, powers and privileges that we have under these Terms and will be entitled to exercise or enforce their rights, powers and privileges as our agent or in their own name. In no event will we be liable to You for any loss, damage or liability resulting from the Payment Agent's negligence and/or acts beyond the authority given by us.

**12.6**     All purchases will be in USD.

**12.7**     If You make a purchase, the purchased, licensed Virtual Coins may be added to Your User Account instantaneously unless there is any delay due to situations outside our control, including without limitation a force majeure event, poor internet connectivity, internet failure or electricity outages.

**12.8**     When You make a purchase, it will appear on Your statement as a purchase from "Modo."

**12.9**     When You make a purchase, You will receive two confirmations: (i) an on-screen confirmation that the transaction has taken place; and (ii) an email to the email address on Your User Account confirming that the transaction has taken place.

**12.10**     When You log into Your User Account Your licensed Virtual Coins balance will be displayed in the upper right-hand corner of Your screen, both on the Modo® mobile application and on the Modo® website.

**12.11**     Virtual Coins will automatically expire in the event a User Account becomes Dormant. For the purpose of these Terms "Dormant" means there has been no game play activity utilizing Virtual Coins for a consecutive period of sixty (60) days. A User's Gold Coins and Sweepstakes Coins are treated as separate items.  For example, if a player goes sixty (60) consecutive days without using his/her Gold Coins but has used his/her Sweepstakes Coins during this period, only the Gold Coins are subject to expiration.  Conversely, if a player goes sixty (60) consecutive days without using his/her Sweepstakes Coins but has used his/her Gold Coins during this period, only the Sweepstakes Coins are subject to expiration.

**12.12**     Our Customer Support can be reached twenty-four hours a day, seven days a week at support@modo.us.  The expected response time is as soon as possible but may take up to twelve (12) hours.

**12.13   Notice for California Users Under Civil Code Section 1789.3**

The Complaint Assistance Unit of the Division of Consumer Services of the California Department of Consumer Affairs may be contacted in writing at 1625 N. Market Blvd., Suite N – 112, Sacramento, CA 95834, or by telephone at 1(800) 952 – 5210.

**13.     Promotions**

**13.1**     All promotions, contests, and special offers are subject to these Terms, the official rules of the promotion, contest, or special offer, and any additional terms that may be published at the time of the promotion, contest or special offer.

**13.2**     We reserve the right to withdraw or alter any such promotions without prior notice to You at our sole discretion.

**13.3** We reserve the right at our sole discretion and without any requirement to provide a justification to exclude You from any promotions, contests or special offers that may be offered from time to time.

**13.4** We reserve the right to exclude You from any promotions, contests or special offers if we believe that You have tried to enter said promotions, contests of special offers by using more than one User Account or are otherwise engaging in any fraudulent or illegal activity (including participation that would be in breach of the law in Your local jurisdiction), whether or not You would have or might have won but for such activity. Where multiple entries/User Accounts have been used, we reserve the right to suspend those User Accounts and withhold any promotional benefits.

**13.5** You confirm that You grant us an irrevocable, perpetual, worldwide, non-exclusive, royalty-free License to use in whatever way we see fit, and without further acknowledgement of You as the author, any content You post or publish as part of a promotion, contest or competition.

## 14.    Verification

**14.1** You acknowledge that we, or a third party acting on our behalf, are entitled to conduct any verification checks (including but not limited to age and identity verifications and credit background checks) that we may reasonably require and/or that are required of us under applicable laws and regulations or by relevant regulatory authorities. You agree to comply with all verification checks in a timely manner.

**14.2** You agree that we may restrict Your opening or use of a User Account pending any verification checks having been completed to our satisfaction.

**14.3** The documents required may include, but are not limited to, photo identification, such as a government issued passport or driver's license; a utility bill that matches the address registered on Your User Account; and source of wealth or source of funds documentation such as a payslip or bank statement.

**14.4** In the event that any verification check cannot be completed for any reason, including Your failure to provide any requested documentation, then We may, in our sole discretion, terminate, deactivate or otherwise restrict Your User Account.

**14.5** You acknowledge and agree that we may use third party service providers to run external identification, location verification and other verification checks based on the information provided by You from time to time. You must enable and allow "Locations Services" on Your device or PC in order to operate the Service or access Your User Account.

## 15.    Intellectual Property

**15.1** These Terms confer only the right to use the Service and they do not convey any rights of ownership in or to the Service.

**15.2**    All rights, title and interest, including without limitation any copyright, patent, trade secret or other intellectual property right in the Service will remain our sole property or where licensed from a third party their sole property.

**15.3**    Your use of the Games will not convey any ownership rights in the intellectual property to You. The titles, source and object codes, game client and server software, the "look and feel" of the Games, sounds, musical compositions, audio-visual effects, concepts and methods of operation, layout, text, data, User Accounts, themes, objects, characters and character likenesses, character names and character profile information, stories, dialogue, catch phrases, locations, artwork, animations files, images, graphics, documentation, gaming history and recording of game play, transcripts of any chat rooms, and moral rights, whether registered or not, and all applications related to the above will remain vested in us or any third party supplier of the Games.

**15.4**    Notwithstanding anything to the contrary in these Terms, You acknowledge and agree that You shall have no ownership or other property interest in the User Account, and You further acknowledge and agree that all rights in and to the User Account are and shall forever be owned by and inure to the benefit of us.

## 16.    Responsibility for User Generated Content

**16.1**    You are responsible for complying with all laws applicable to Your User Content. You agree not to submit to the Service, or send to other users of the Service, any defamatory, inaccurate, abusive, obscene, profane, offensive, sexually oriented, threatening, harassing, racially offensive, illegal material or any material that infringes or violates another party's rights.

**16.2**    You will not provide inaccurate, misleading or false information to us or to any other user of the Service. If information provided to us, or another user of the Service, subsequently becomes inaccurate, misleading or false, You will notify us of such change immediately.

**16.3**    We may, in our sole discretion, delete any User Content without notice but are under no obligation to do so. We have no responsibility for the conduct of any user in the Service, including any User Content submitted in the Service. We assume no responsibility for monitoring the Service for inappropriate content or conduct. Your use of the Service is at Your own risk.

**16.4**    You hereby grant us the sole and exclusive, irrevocable, sub-licensable, transferable, worldwide, royalty-free license to reproduce, modify, create derivative works from, publish, distribute, sell, transfer, transmit, publicly display and use any User Content and to incorporate the same in other works in any form, media, or technology now known or later developed.

**16.5**    You further hereby grant to us the unconditional, right to use and exploit Your name, likeness and any other information or material included in any User Content and in connection with any User Content or Your User Account, without any obligation to You. You waive any rights of attribution and/or any moral rights You may have in Your User Content, regardless of whether Your User Content is altered or changed in any manner except as prohibited by law.

15

**16.6** You acknowledge and agree that all User Content whether publicly posted or privately transmitted to the Service is at Your sole responsibility and risk. We disclaim any responsibility for the backup and/or retention of any User Content transmitted to the Service.

**16.7** Prohibited Content; User Content that is prohibited in the Service includes, but is not limited to:

- User Content that promotes racism, bigotry, hatred or physical harm of any kind against any group or individual;
- Harassing User Content;
- User Content of a sexual or offensive nature;
- User Content that promotes terrorism or religious hatred;
- User Content that promotes illegal activities or conduct that is abusive, threatening, obscene or defamatory;
- User Content of commercial nature without authorization from us; or
- User Content promoting the services of another business or competitor.

**16.8** If You see any material in the Service that in Your belief is offensive, hateful, harassing or that You otherwise think is prohibited, please notify us by contacting support@modo.us.

## 17. Third Party Websites & Content

**17.1** The Service may contain links to content owned and/or operated by third parties, for instance third parties who may invite You to participate in promotional offers or rewards programs or third-party advertisers or payment providers. Any separate charges or obligations that You may incur in Your dealings with these third parties are Your sole responsibility. We are not responsible for any such third-party services or content and do not have control over any materials made available therein.

**17.2** Our inclusion of a link to a third-party website, services or content in the Service does not imply our endorsement, advertising, or promotion of such websites, services or content or any materials available and we make no guarantee as to the content, functionality, or accuracy of any third-party website.

**17.3** By accessing a third-party website, services or content, You accept that we do not exercise any control over such websites, services or content and have no responsibility for them. The third-party sites may collect data or solicit personal information from You. We are not responsible for privacy policies, or for the collection, use or disclosure of any information those sites may collect. It is always best to read and understand the terms of services and privacy policies applicable to any third-party website, services or content You may access.

**17.4** We do not endorse, do not assume and will not have any liability or responsibility to You or any other person for any third-party products, services, materials or websites. Please note that the relevant third party is fully responsible for all goods and services it provides to You and for any and all damages, claims, liabilities and costs it may cause You to suffer, directly or indirectly, in full or in part.

16

**17.5**    If You use third party social networking websites to discuss the Service such as Facebook® and Twitter®, You acknowledge and agree that:

- any content that You post on such social networking sites are subject to the relevant terms and conditions of that website;
- You will not post any comments that are false, misleading or deceptive or defamatory to us, our employees, agents, officers or other players; and
- we are not responsible or liable for any comments or content that You or others post on social networking sites.

## 18.    Copyright Infringement Notice

Modo® requires our Users to respect the intellectual property rights of others. If You are the owner of copyright and You believe that Your work has been used in the Service in a way that constitutes copyright infringement, please provide our Copyright Agent with a notice meeting all of the requirements of the Digital Millennium Copyright Act ("DMCA"). Your notice should contain the following information:

- a physical or electronic signature of the person authorized to act on behalf of the owner of the copyright or other intellectual property interest;
- a clear description of the copyrighted work or other intellectual property that You claim has been infringed;
- a description of where the material that You claim is infringing is located in the Service.
- Your address, telephone number, and email address;
- a statement by You that You have a good faith belief that the disputed use is not authorized by the copyright owner, its agent or the law; and
- a statement by You, made under penalty of perjury, that the above information in Your notice is accurate and that You are the copyright or intellectual property owner or authorized to act in the copyright or intellectual property owner's behalf.

Before you file Your DMCA notice, please carefully consider whether or not the use of the copyrighted material at issue is protected by the Fair Use doctrine. If You file a DMCA notice when there is no infringing use, You could be liable for costs and attorneys' fees.

Our agent for notice of claims of copyright or other intellectual property infringement can be reached as follows:

By email: legal@arbinteractive.com

## 19.    Disruptions, Errors & Omissions

**19.1**    <u>Disclaimer of Warranties</u>.    THE SERVICES, IN WHOLE AND IN PART (INCLUDING, WITHOUT LIMITATION, ALL CONTENT, AND USER MATERIALS), ARE PROVIDED, TRANSMITTED, DISTRIBUTED, AND MADE AVAILABLE "AS IS" AND "AS AVAILABLE" WITHOUT EXPRESS OR IMPLIED WARRANTIES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF TITLE, IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR NON-INFRINGEMENT. WITHOUT LIMITING THE GENERALITY OF THE

17

FOREGOING, WE MAKE NO WARRANTY: (A) THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR FREE; (B) THAT DEFECTS OR ERRORS IN THE SERVICES WILL BE CORRECTED; (C) THAT THE SERVICES WILL BE FREE FROM VIRUSES OR OTHER HARMFUL COMPONENTS; (D) AS TO THE QUALITY, ACCURACY, COMPLETENESS AND VALIDITY OF ANY INFORMATION OR MATERIALS IN CONNECTION WITH THE SERVICES; (E) THAT YOUR USE OF THE SERVICES WILL MEET YOUR REQUIREMENTS; OR (F) THAT TRANSMISSIONS OR DATA WILL BE SECURE.

**19.2   Exceptions.   SOME JURISDICTIONS DO NOT ALLOW THE DISCLAIMER, EXCLUSION OR LIMITATION OF CERTAIN WARRANTIES, LIABILITIES AND DAMAGES, SO SOME OF THE ABOVE DISCLAIMERS, EXCLUSIONS AND LIMITATIONS MAY NOT APPLY TO YOU. IN SUCH JURISDICTIONS, OUR WARRANTIES AND LIABILITY WILL BE LIMITED TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW.**

**19.3**   We are not liable for any downtime, server disruptions, errors, lagging, or any technical or political disturbance to the Service or Games, nor attempts by You to participate by methods, means or ways not intended by us.

**19.4**   We accept no liability for any damages or losses which are deemed or alleged to have arisen out of or in connection with any Service including, without limitation, delays or interruptions in operation or transmission, loss or corruption of data, communication or lines failure, any person's misuse of a Service or any errors or omissions in the Service.

**19.5**   In the event of a Service system malfunction, then all Game play on the Service will be void.

**19.6**   In the event of an error or malfunction in a Game, then all Game play resulting from the error or malfunction will be voided.

**19.7**   We reserve the right to remove any part of the Games from the Service at any time. Any part of the Games that indicate incorrect behavior affecting, game data, or Virtual Coins balances, that may be due to error, misconfiguration or a bug, will be cancelled and removed from the Service. We reserve the right to alter player balances and User Account details under such circumstances, at our sole discretion, in order to correct any mistake.

**19.8**   We may suspend the whole or any part of the Service for any reason, and for any duration of time, at our sole discretion. We may, but will not be obliged to, give You as much notice as is reasonably practicable of such suspension. We will restore the Service, as soon as is reasonably practicable, after a temporary suspension.

**19.9**   We reserve the right to declare participation in a Game void, partially or in full, if, in our sole discretion, we deem it obvious that there was an error, mistake, misprint or technical error on the pay-table, win-table, minimum or maximum stakes, odds or software.

**19.10**   If You are incorrectly awarded any Virtual Coins or prizes as a result of (a) any human error; (b) any bug, defect or error in the Service; or (c) the failure of any Games to operate

18

in accordance with the rules of the relevant game, then We will not be liable to award You any such Virtual Coins or prizes, and You agree that any such Virtual Coins or prizes that have been awarded in error to Your User Account will be voided.

**19.11** We retain absolute discretion in the event of a discrepancy between the result showing on a user's device and the server software. Such discretion includes the authority to recognize the result showing on the server software as the official and governing result.

## 20. Limitation of Liability and Indemnification

**20.1** <u>Limitation of Liability</u>. BY ACCESSING, USING OR DOWNLOADING THE SERVICE, YOU ACKNOWLEDGE AND AGREE THAT SUCH USE IS AT YOUR OWN RISK AND THAT NEITHER THE COMPANY NOR ANY OF THE PARTIES INVOLVED IN CREATING, PRODUCING, OR DELIVERING THE SERVICES OR THE COMPANY OR ANY OF THEIR AFFILIATES, SUBSIDIARIES, AGENTS, EMPLOYEES, OFFICERS, DIRECTORS, CONSULTANTS, SUPPLIERS, ADVERTISERS, PAYMENT SERVICES PROMOTERS, PARTNERS, OR CONTRACTORS (COLLECTIVELY "RELEASED PARTIES") ARE LIABLE FOR ANY DIRECT, INCIDENTAL, CONSEQUENTIAL, INDIRECT, SPECIAL, OR PUNITIVE DAMAGES, OR ANY OTHER LOSSES, COSTS, OR EXPENSES OF ANY KIND (INCLUDING, WITHOUT LIMITATION, LOST PROFITS, LOSS OF DATA, LEGAL FEES, EXPERT FEES, COST OF PROCURING SUBSTITUTE SERVICES, LOST OPPORTUNITY, OR OTHER DISBURSEMENTS) WHICH MAY ARISE, DIRECTLY OR INDIRECTLY, THROUGH THE ACCESS TO, USE OF, RELIANCE ON ANY MATERIAL OR CONTENT ON THE SERVICES, OR BROWSING OF THE SERVICES OR THROUGH YOUR DOWNLOADING OF ANY MATERIALS, DATA, TEXT, IMAGES, VIDEO OR AUDIO FROM THE SERVICES, SPECIFICALLY INCLUDING ANY PAST, PRESENT OR FUTURE USE OF "COOKIES," "GET REQUESTS," PIXELS AND OTHER TRACKING TECHNOLOGY, EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

RELEASED PARTIES CANNOT AND DO NOT WARRANT OR GUARANTEE CONTINUOUS, UNINTERRUPTED, OR SECURE ACCESS TO THE SERVICES. WITHOUT LIMITING THE FOREGOING, RELEASED PARTIES ASSUME NO RESPONSIBILITY, AND WILL NOT BE LIABLE, FOR ANY DAMAGES RELATING TO OR CAUSED BY ANY VIRUSES, BUGS, HUMAN ACTION OR INACTION OF ANY COMPUTER SYSTEM, PHONE LINE, HARDWARE, SOFTWARE OR PROGRAM MALFUNCTIONS, OR ANY OTHER ERRORS, FAILURES OR DELAYS IN COMPUTER TRANSMISSIONS OR NETWORK CONNECTIONS ON ACCOUNT OF YOUR ACCESS TO OR USE OF THE SERVICES.

**20.2** <u>Indemnification</u>. BY USING THE SERVICES, YOU AGREE TO INDEMNIFY, DEFEND AND HOLD HARMLESS (INCLUDING REASONABLE ATTORNEY'S FEES AND COSTS OF SUIT) THE RELEASED PARTIES FROM ANY AND ALL THIRD PARTY CLAIMS AGAINST THE COMPANY RELATED IN ANY WAY TO YOUR USER ACCOUNT, YOUR USE OF THE SERVICES OR YOUR ACCESS TO THE SITE.

19

**20.3**    One Year Limitations Period. You and Modo® agree that any claims, regardless of form, arising out of or related to the Site (including Services) or these Terms of Use or Privacy Policy must BE FILED within ONE (1) YEAR of the action, omission, event or occurrence giving rise to the claim or suit, after which such claims will be time-barred and prohibited, without regard to any longer period of time which may be provided by any period of limitation or repose by law or statute.

**20.4    SOLE AND EXCLUSIVE REMEDY/LIMITATION ON RECOVERY. UNLESS OTHERWISE PROHIBITED BY LAW, IN ANY DISPUTE WITH THE RELEASED PARTIES, YOUR SOLE AND EXCLUSIVE REMEDY UNDER ANY LEGAL THEORY FOR ANY LOSS OR DAMAGE WHATSOEVER ARISING FROM ANY CAUSE SHALL BE LIMITED TO RECOVERY OF THE AMOUNT OF YOUR OWN PURCHASES DURING THE ONE (1) YEAR PERIOD PRECEDING THE DATE ON WHICH YOU FIRST ASSERT ANY SUCH CLAIM.**

**20.5    YOU RECOGNIZE AND AGREE THAT THE WARRANTY DISCLAIMERS IN SECTION 13.1, AND THE INDEMNITIES, LIMITATIONS OF LIABILITY AND LIMITATIONS OF REMEDIES IN THIS SECTION 14, ARE MATERIAL AND BARGAINED-FOR BASES OF THESE TERMS AND THAT THEY HAVE BEEN TAKEN INTO ACCOUNT AND REFLECTED IN THE DECISION BY YOU AND Modo® TO ENTER INTO THESE TERMS OF USE.**

**20.6    NOTHING IN THESE TERMS OF USE WILL OPERATE SO AS TO EXCLUDE ANY LIABILITY OF Modo® FOR DEATH OR PERSONAL PHYSICAL INJURY THAT IS DIRECTLY AND PROXIMATELY CAUSED BY MODO'S NEGLIGENCE OR WILLFUL MISCONDUCT.**

**20.7    TO THE EXTENT ANY OF THE LIMITATIONS OF REMEDY, INCLUDING WAIVER OF THE RIGHT TO PRIVATE OR PUBLIC INJUNCTIVE RELIEF, ARE NOT PERMITTED BY LAW OF ANY APPLICABLE JURISDICTION, SUCH LIMITATIONS SHALL NOT APPLY AND SHALL BE DEEMED AS SEVERABLE AND STRICKEN FROM THESE TERMS.   THE PARTIES AGREE FURTHER THAT SUCH PROVISION(S) SHALL NOT AFFECT THE ENFORCEABILITY OF THE TERMS OR THE ARBITRATION AGREEMENT (SECTION 22), WHICH THE PARTIES AGREE SHALL REMAIN IN PLACE AND IN FORCE LESS ANY SUCH STRICKEN PROVISIONS.**

**21.    CUSTOMER SERVICE AND INITIAL DISPUTE RESOLUTION PROCEDURE**

**Customer Support**

**21.1**    If You need customer service in relation to the Service, You may contact us by at support@modo.us.

**21.2**    To protect Your privacy, all communications between You and us should be carried out using or referencing the email address that You used to register Your User Account for the Service. Failure to do so may result in our response being delayed.

**Initial Dispute Resolution Procedure and Conference**

**21.3**    The parties shall use best efforts to resolve informally any customer service issue promptly and in good faith. If for some reason You are not satisfied or your claim is not resolved (a "Dispute"), You may then pursue arbitration as set out below in Section 22. However, You must first submit a Notice of Dispute as set forth in this Section 21 and engage in a conference either by telephonic or videoconference means with Modo® prior to and as a condition precedent to initiating arbitration or any formal proceeding over a Dispute as required by Section 22.

**21.4    Notice of Dispute Required Prior to Arbitration.** The party initiating a claim over a Dispute must give notice to the other party in writing of its intent to initiate an informal dispute resolution conference. The initial conference, which may consist solely of an email communication between the parties, shall occur within thirty (30) days after the other party receives such notice or within a time period required by law, unless an extension is mutually agreed upon by the parties.

**21.5**    All initial dispute resolution conferences shall be conducted individually, between Modo® and You. Multiple individuals with Disputes cannot participate in the same informal telephonic dispute resolution conference. If a party is represented by counsel (which such representation will be at such parties' sole cost and expense), counsel may participate in the conference, but each party shall also attend and participate in the conference.

**21.6**    To notify Modo® that You intend to initiate an informal dispute resolution conference, please inform us by sending a Notice of Dispute via email to disputeresolution@arbinteractive.com and include the following information:

(a)    Your username and email address associated with Your User Account;

(b)    Your first and last name, as registered on your User Account;

(c)    Your residence address;

(d)    Your telephone number (home and/or mobile);

(e)    a detailed explanation of the complaint/claim and basis for the claim;

(f)    any specific dates and times associated with the complaint/claim (if applicable); and

(g)    the remedy, action or any amount You are seeking from Modo.

**21.7**    Upon receipt of Your Notice of Dispute, We will respond in writing within thirty (30) days after receipt of such Notice, unless an extension is mutually agreed upon by the parties. Failure to submit a written communication with the information outlined above may result in a delay in our ability to identify and respond to Your complaint/claim in a timely manner, and may,

21

in Modo's discretion, extend the time period for resolution before a formal proceeding may be commenced, as permitted by these Terms.

21.8    The parties shall use their best efforts to settle any Dispute, claim, question, or disagreement and engage in good faith negotiations which shall be a pre-condition to either party initiating a formal arbitration as provided in Section 22. If the parties do not reach an agreed upon solution within a period of thirty (30) days from the time of the initial Notice, then either party may initiate binding arbitration, to the extent permitted by law, as the sole means to resolve claims, subject to these Terms and the Arbitration Agreement.

21.9    The aforementioned Notice of Dispute and informal dispute resolution process is a condition precedent to commencing any formal arbitration proceeding under the Arbitration Agreement (Section 22 below), including litigation if you have successfully opted-out of the arbitration agreement. The parties agree that any relevant limitations period or other deadlines will be tolled solely by the amount of time the parties initiate and engage in this informal dispute resolution process.

21.10   Regardless of whether you decide to opt out of arbitration, the terms set forth in this Section 15 Initial Dispute Resolution shall remain in full force and effect as part of these Terms.

## 22.    BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER

**PLEASE READ THIS ARBITRATION & CLASS ACTION WAIVER AGREEMENT (THE "AGREEMENT") CAREFULLY BECAUSE IT REQUIRES YOU AND Modo® TO ARBITRATE CERTAIN DISPUTES AND CLAIMS AND LIMIT THE MANNER IN WHICH YOU AND MODO® CAN SEEK RELIEF FROM EACH OTHER. THIS AGREEMENT APPLIES TO ANY CLAIMS YOU OR COMPANY CURRENTLY POSSESS AND ANY CLAIMS THE PARTIES MAY RAISE IN THE FUTURE. WHILE YOU MUST AGREE TO THESE TERMS OF USE IN ORDER TO USE THE SERVICES, IF YOU HAVE NOT PREVIOUSLY AGREED TO AN ARBITRATION PROVISION IN CONNECTION WITH YOUR USE OF OUR SERVICE, THERE IS AN OPTION, DESCRIBED BELOW IN SECTION 22.12, TO OPT OUT OF THE ARBITRATION PROVISIONS. THE OPTION TO OPT-OUT IS TIME-LIMITED TO THIRTY (30) DAYS OF ENTERING THIS AGREEMENT AND REQUIRES YOUR IMMEDIATE ATTENTION.**

**If you reside in or access the Service at any time while located in the United States, this Section 22 (Binding Arbitration Agreement and Class Action Waiver Agreement) shall be construed under and be subject to the Federal Arbitration Act, notwithstanding any other choice of law set out in these Terms of Service.**

**THIS AGREEMENT INCLUDES AN ARBITRATION PROVISION WHICH SETS FORTH HOW PAST, PENDING OR FUTURE DISPUTES BETWEEN YOU AND MODO® SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION.**

**ARBITRATION MEANS YOU WILL NOT BE ABLE TO SEEK DAMAGES IN COURT OR PRESENT YOUR CASE TO A JURY.**

22

**THIS ARBITRATION AND CLASS ACTION WAIVER AGREEMENT ALSO REQUIRES THAT ANY PAST, PENDING OR FUTURE DISPUTES WITH THE COMPANY SHALL PROCEED FOR YOUR OWN LOSSES ONLY. YOU MAY NOT PROCEED AS A CLASS REPRESENTATIVE, MEMBER OR PART OF ANY PROPOSED CLASS, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL SUIT, QUI TAM ACTION, OR ANY REPRESENTATIVE PROCEEDING, OR OTHERWISE SEEK TO RECOVER ON BEHALF OF OTHERS OR FOR THE BENEFIT OF OTHERS IN ANY TYPE OF CLAIM OR ACTION.**

**22.1**    Acceptance of Terms. By using, or otherwise accessing the Service, or clicking to accept or agree to the Terms where that option is made available, you confirm that you have read and accept and agree to this Agreement. Except to the extent that you may opt-out as provided below, all of your activity on the Website or Platform and all or your transactions with Modo, including all events which occurred before your acceptance of this Agreement, shall be subject to this Agreement.

**22.2**    Scope of Agreement to Arbitrate. You and Modo® agree that any past, pending, or future dispute, claim or controversy arising out of or relating to any purchase or transaction by you, your access to or use of any Platform or the Service, or to this Agreement, the Terms of Use, or Privacy Policy (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of this Agreement or the Terms of Use) (a "Dispute"), shall be determined by arbitration, including claims that arose before acceptance of any version of this Agreement. In addition, in the event of any Dispute concerning or relating to this Agreement — including the scope, validity, enforceability, or severability of this Agreement or its provisions, as well as the arbitrability of any claims—you and Modo® agree and delegate to the Arbitrator the exclusive jurisdiction to rule on their own jurisdiction over the Dispute, including any objections with respect to the scope, validity, enforceability, or severability of this Agreement or its provisions, as well as the arbitrability of any claims or counterclaims presented as part of the Dispute.

**22.3**    Notwithstanding the above provision and Agreement to Arbitrate, all parties retain the right to seek relief in a small claims court for disputes or claims solely within the scope of a small claim's court jurisdiction.

**22.4**    Lack of Estoppel or Preclusive Effect. The parties agree that any issues determined in arbitration or any other proceeding between the parties shall be conducted and decided for the benefit of the parties or express third party beneficiaries only and shall have no preclusive or estoppel effect against a party in any subsequent or other arbitration or litigation matter, such that all issues shall be decided anew in any subsequent or other proceedings involving either party. The parties reach this agreement in order to narrowly and efficiently tailor their legal positions without concern that any third party may attempt to offensively use any finding or determination of fact or law against You or Modo.

**22.5**    Third-Party Beneficiaries. You further agree and intend that this Agreement and the Terms are entered into for the express benefit of your spouse, heirs, children and next-of-kin and shall bind same to the extent of any claims arising from your use of the Service which is brought by them or by any person for the use or benefit of your spouse, heirs, children and next-

23

of-kin. Modo® agrees also that this Agreement is intended to benefit and shall bind any successor-in-interest or assignee of Modo.

**22.6**    Intellectual Property. Notwithstanding the requirement to arbitrate in this Section 22, you and Modo® are NOT required to arbitrate any claims for the alleged unlawful use of copyrights, trademarks, trade names, trade dress, logos, trade secrets, or patents, and the parties agree that in the event of infringement of copyrights, trademarks, trade names, trade dress, logos, trade secrets, or patents of a party, they shall also be entitled to seek injunctive relief from a court of competent jurisdiction, and the parties shall not be able to hold out a user's access to the Service as a basis to enforce this arbitration agreement as to such claims.

**22.7**    Separate Agreement. The parties acknowledge that this Agreement is a separate agreement between the parties governed by the Federal Arbitration Act, and that any alleged or determined invalidity or illegality of all or any part of the Terms of Use, the Service, the Platform, or the Privacy Policy shall have no effect upon the validity and enforceability of this Agreement.

**22.8**    Applicable Law. While the Federal Arbitration Act shall control, to the extent the law of any state is applied or considered with respect to issues bearing upon the enforceability or scope of this Agreement, the parties agree that the law of the State of Delaware shall exclusively apply, notwithstanding any consideration or application of choice of law or conflicts of law principles.

**22.9    NOTICE TO CALIFORNIA RESIDENTS.** In accordance with California Civil Code sections 1541 and 1542, you hereby agree to waive all rights and remedies under Section 1542.

**INITIATING ARBITRATION UNDER JAMS RULES**

**22.10**    Following the conclusion of the initial dispute resolution process required by Section 15, you or Modo® may seek arbitration of a Dispute in accordance with the provisions of this Agreement. You and Modo® agree that JAMS ("JAMS") will administer the arbitration under its Comprehensive Arbitration Rules and Procedures ("JAMS Rules") in effect at the time arbitration is sought ("JAMS Rules"). The parties further agree that, to the extent applicable, the JAMS Mass Arbitration Procedures and Guidelines shall apply. The JAMS Rules referenced above are available at https://www.jamsadr.com/adr-rules-procedures/.

You and Modo® further agree:

**22.10.1** The arbitration will be handled on the merits by a sole arbitrator. The parties agree that any JAMS arbitrator appointed, including merits and process arbitrators, must have the following minimum qualification: practicing attorneys or retired federal court judges who have at least ten years of substantive expertise in litigating and resolving of complex business disputes, including motions to compel arbitration and litigation or adjudication regarding whether disputes are arbitrable;

**22.10.2** For purpose of Sections 16.1 and 16.2 of the JAMS Rules, the JAMS Streamlined Arbitration Rules and Procedures and JAMS Expedited Procedures shall *not* apply unless otherwise explicitly agreed to by all parties to the Dispute;

24

**22.10.3** In lieu of JAMS Rule 15, the parties shall be presented with a list of eight (8) potential arbitrators, be allowed three (3) strikes and the parties shall rank those potential arbitrators in order of preference. JAMS shall select the arbitrator with the highest combined preference (e.g., if both parties select a potential arbitrator as their top preference, that arbitrator will be selected). To the extent a process arbitrator is appointed pursuant to the JAMS Rules, the selection process shall also be as prescribed in this paragraph;

**22.10.4** In lieu of JAMS Rule 18, the parties shall have the right to submit a dispositive motion at the outset of the arbitration to the Arbitrator in order to resolve issues other than the ultimate issue of fact. The submission and scheduling of such motions shall be addressed at a conference held before the JAMS arbitrator, and the Parties agree that any dispositive motions shall be resolved and the remainder of the arbitral proceeding stayed pending resolution, absent good cause and immediate necessity to proceed.

**22.10.5** Unless and only to the extent prohibited under JAMS Rules, the arbitration will be held in Wilmington, Delaware or, at either your or our election, will be conducted telephonically or via other remote electronic means;

**22.10.6** The JAMS Rules will govern payment of all arbitration fees, currently available at https://www.jamsadr.com/arbitration-fees, You will only be required to pay arbitration fees of $250 in connection with any arbitration initiated under this Section 22, but You will still be responsible for paying your own attorneys' fees;

**22.10.7** Except as otherwise waived or limited under the Terms or this Agreement, the JAMS arbitrator shall be authorized to award any remedies, including equitable or injunctive relief, that would be available in an individual lawsuit except:

**(a)** **In any arbitration arising out of or related to this Agreement, the arbitrator(s) are not empowered to award punitive or exemplary damages, and the parties waive any right to recover any such damages; and**

**(b)** **In any arbitration arising out of or related to this Agreement, the arbitrator(s) may not award any incidental, indirect or consequential damages, including damages for lost profits;**

**22.10.8** The arbitration decision and award shall consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. Unless the parties agree otherwise, the award shall be a reasoned award and contain a concise written statement of the reasons for the award;

**22.10.9** Except as and to the extent otherwise may be required by law, the arbitration proceeding, pleadings, and any award shall be treated as confidential and shall not be used by the parties except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its confirmation and enforcement.

**22.10.10** In the event JAMS is unavailable or unwilling to hear the dispute in accordance with this Agreement, the parties shall agree to, or a court shall select, another arbitration provider subject to the procedural agreements of this Section 22; and

25

**22.10.11**     You and Modo® agree that any award issued by the Arbitrator in excess of $50,000 in favor of either party, or any award which grants any form of declaratory or equitable relief that would significantly impact other Modo® users or the operation of the Platform, may be appealed in accordance with the JAMS Optional Arbitration Appeal Procedures at either party's election.  The JAMS Optional Arbitration Appeal Procedures are available at https://www.jamsadr.com/adr-rules-procedures/.

**22.11**    Batch Arbitration/Mediation. To increase efficiency of resolution, in the event 20 or more similar arbitration demands against Modo, presented by or with the assistance of the same law firm or organization or group of law firms or organizations working in coordination, are submitted to JAMS in accordance with the rules described above within a 60-day period, JAMS shall consolidate those arbitrations as contemplated in the JAMS Mass Arbitration Rules. Following the submission, initial presentation and resolution of briefing and motion practice contemplated in Section 22.9.4 on dispositive issues other than the ultimate issue of fact, to the extent claims and issues remain pending, JAMS shall group the arbitration demands into a first batch of no more than 25 demands to be set for resolution as a single arbitration.  Once resolution of the first batch has concluded (or sooner if the parties agree), counsel for the parties must engage in a single mediation before a JAMS mediator of all remaining demands from claimants.  Counsel for the parties must agree on a mediator within thirty (30) days after conclusion of the first batch. If the parties cannot agree on a JAMS mediator within 30 days, JAMS will appoint a JAMS mediator as an administrative matter.  All parties will cooperate for the purpose of ensuring that the mediation is scheduled as quickly as practicable after the mediator is appointed.  If the parties are unable to resolve their demands by mediation, JAMS shall continue to batch the remaining arbitration demands into batches of no more than 100 demands per batch (plus, to the extent there are fewer than 100 arbitration demands left over after the batching described above, a final batch consisting of the remaining demands) for administration.  A single arbitration with one set of filing and administrative fees and one arbitrator will be assigned per batch.  For avoidance of doubt, consolidation does not require that all arbitrations in a single batch be decided the same, nor does it impair your right to present any evidence or argument that you think particular to your case, so long as it is consistent with JAMS Rules.  You agree to cooperate in good faith with the Company and JAMS to implement such a batch approach to resolution and fees and to efficiently consolidate discovery, submission of evidence, and motion practice.

**22.12**    By signing a demand for arbitration, a party certifies, to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that: (i) the demand for arbitration is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of dispute resolution; (ii) the claims and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (iii) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Arbitrator shall be authorized to afford any relief or impose any sanctions available under Federal Rule of Civil Procedure 11 or any applicable state law (including attorney's fees) for either party's violation of this requirement.

## OPTION AND PROCEDURE TO OPT OUT OF ARBITRATION

26

**22.13** IF YOU HAVE <u>NOT</u> PREVIOUSLY AGREED TO AN ARBITRATION PROVISION IN CONNECTION WITH YOUR USE OF OUR SERVICE, YOU MAY OPT OUT OF THE AGREEMENT TO ARBITRATE BY FOLLOWING THE INSTRUCTIONS BELOW. IF YOU DO NOT OPT-OUT, THE ARBITRATION PROVISIONS WILL APPLY RETROACTIVELY TO ALL CLAIMS YOU MAY POSSESS, WHETHER ASSERTED TO DATE OR NOT.

**22.14** OPT-OUT. IF YOU DO NOT WISH TO AGREE TO THE PROVISIONS OF THIS SECTION 22 AGREEMENT REQUIRING ARBITRATION AND CLASS ACTION WAIVER AND YOU HAVE <u>NOT</u> PREVIOUSLY AGREED TO AN ARBITRATION PROVISION IN CONNECTION WITH YOUR USE OF OUR SERVICE, YOU MUST, WITHIN THIRTY (30) DAYS OF ENTERING THIS AGREEMENT, SEND A WRITTEN NOTICE OF YOUR DECISION TO OPT OUT TO ARB GAMING LLC, ATTN: ARBITRATION OPT-OUT, 13802 N SCOTTSDALE RD SUITE 151-94 SCOTTSDALE AZ 85254-3403, WITH THE SUBJECT "OPT-OUT." **REQUESTS TO OPT OUT AFTER THE 30 DAY PERIOD SHALL NOT BE EFFECTIVE.** THE REQUEST MUST INCLUDE YOUR FULL NAME AND EMAIL ADDRESS ASSOCIATED WITH YOUR MODO® ACCOUNT.

**22.15** Whether to agree to arbitration is an important decision. It is your decision to make and you are not required to rely solely on the information provided in these terms of use. You should take reasonable steps to conduct further research and to consult with counsel (at your expense) regarding the consequences of your decision.

## WAIVER OF CLASS RELIEF AND COLLECTIVE ACTION

**22.16** TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER YOU NOR MODO® SHALL BE ENTITLED TO ARBITRATE OR LITIGATE ANY DISPUTE IN A REPRESENTATIVE CAPACITY. YOU MAY ONLY ARBITRATE OR LITIGATE ON AN INDIVIDUAL CLAIMS BASIS ONLY AND FOR YOUR OWN LOSSES ONLY. UNDER THIS AGREEMENT, YOU MAY NOT PROCEED IN ARBITRATION OR COURT AS A CLASS REPRESENTATIVE, MEMBER OR PART OF ANY PROPOSED CLASS, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL SUIT, QUI TAM ACTION OR ANY REPRESENTATIVE PROCEEDING, OR OTHERWISE SEEK TO RECOVER ON BEHALF OF OTHERS OR FOR THE BENEFIT OR USE OF OTHERS IN ANY TYPE OF CLAIM OR ACTION. YOU AND MODO® ARE EACH WAIVING RESPECTIVE RIGHTS TO PARTICIPATE IN A CLASS ACTION. BY ACCEPTING THIS AGREEMENT, YOU GIVE UP YOUR RIGHT TO PARTICIPATE IN ANY PAST, PENDING OR FUTURE CLASS ACTION OR ANY OTHER CONSOLIDATED OR REPRESENTATIVE PROCEEDING, INCLUDING ANY PROCEEDING EXISTING AS OF THE DATE YOU AGREED TO THIS AGREEMENT.

**22.17** <u>Severability</u>. This Agreement applies solely to the extent permitted by law. If for any reason any provision of this Agreement or portion thereof, is found to be unlawful, void, or unenforceable, that part of this Agreement will be deemed severable and shall not affect the validity and enforceability of the remainder of this Agreement which shall continue in full force and effect. To the fullest extent allowable by law and equity, the parties agree that any such

27

provision may be blue-penciled or otherwise construed by the forum presiding over any dispute to give effect to the intent of the parties and consistent with the overall purpose and intent of the agreement, and may be deemed replaced by an enforceable provision that comes closest to the intention underlying the unenforceable provision.

**END OF SECTION 22 ARBITRATION AGREEMENT**

### 23.    Waiver of Jury Trial

**23.1**    EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THE PLATFORM OR SERVICES OR ANY TRANSACTIONS BETWEEN THE PARTIES, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

### 24.    Miscellaneous

**24.1**    Entire Agreement. These Terms constitute the entire agreement between You and us with respect to Your use of the Service and supersede all prior or contemporaneous communications and proposals, whether electronic, oral or written, between You and us with respect to Your participation.

**24.2**    Tax. You are solely responsible for any taxes which apply to Your use of the Service.

**24.3**    Force Majeure. We will not be liable or responsible for any failure to perform, or delay in performance of, any of our obligations under these Terms that is caused by events outside of our reasonable control, including but not limited to an act of God, hurricane, war, fire, riot, earthquake, weather, pandemic or endemic, terrorism, act of public enemies, strikes, labor shortage, actions of governmental authorities or other *force majeure* event.

**24.4**    Severability. In the event any provision of these Terms is held unenforceable, such provision will be ineffective but shall not affect the enforceability of the remaining provisions. To the fullest extent allowable by law and equity, the parties agree that any such provision may be blue-penciled or otherwise construed by the forum presiding over any dispute to give effect to the intent of the parties and consistent with the overall purpose and intent of the agreement, and may be deemed replaced by an enforceable provision that comes closest to the intention underlying the unenforceable provision.

**24.5**    Assignment. These Terms are personal to You, and are not assignable, transferable or sub-licensable by You except with our prior written consent. We reserve the right to assign, transfer or delegate any of our rights and obligations hereunder to any third party without notice to You, and in such case the Terms shall apply to and bind any successor-in-interest or assignee of ours.

**24.6**    Third-Party Beneficiaries. You further agree and intend that these Terms are entered into for the express benefit of your spouse, heirs, children and next-of-kin and shall bind

same to the extent of any claims arising from your use of the Service which is brought by them or by any person for their use or benefit.

**24.7** <u>Entire Agreement</u>. These Terms contain the entire understanding between You and us, and supersede all prior understandings between You and us relating to the subject matter.

**24.8** <u>Business Transfers</u>. In the event we undergo a change of control, merger, acquisition, or sale of assets, Your User Account and associated data may be part of the assets transferred to the purchaser or acquiring party.

**24.9** <u>Waiver</u>. Our failure to assert breach or a violation of these Terms or otherwise failure to exercise any rights under these Terms shall not constitute or be deemed a waiver or forfeiture of such rights or a waiver or forfeiture of such rights in the future.

**24.10** <u>Survival of Obligations</u>. SECTIONS 13, 14, 15, 16, 17, 19, and 21 SHALL BE DEEMED TO SURVIVE THE TERMINATION OF THESE TERMS OF USE OR YOUR USER ACCOUNT FOR ANY REASON.

## 25. Applicable Law and Jurisdiction

**25.1** <u>Governing Law</u>. Subject to the Arbitration Agreement contained in Section 22, which is governed by the Federal Arbitration Act, the parties agree that these Terms and the related Service are governed by and shall be construed in accordance with the laws of the State of Delaware without regard to its principles of conflicts of law. To the extent this governing law provision is finally determined to be unenforceable as it relates to the use of the Services, the parties agree that the governing law shall in such event be the applicable law in the jurisdiction in which the user who is a party to the dispute properly utilizes the services. Nothing herein is intended to limit a party's right to appeal a determination by a court of law that the laws of the State of Delaware are unenforceable.

**25.2** <u>Exclusive Forum</u>. Subject to the Arbitration Agreement contained in Section 22, the parties agree that any dispute, controversy, or claim arising out of or in connection with these Terms, or the breach, termination or invalidity of these Terms, will be submitted exclusively to state or federal courts in Delaware and You and we consent to the venue and personal jurisdiction of those courts. Notwithstanding the foregoing, any motion to compel arbitration or to enforce an arbitral award issued hereunder may be brought before any court of competent jurisdiction.

## 26. Electronic Delivery of Form 1099 and Other Tax Documentation

**26.1** Consent to Electronic Delivery. By accepting these Terms and creating a User Account, You expressly consent to receive all tax-related forms and documents, including but not limited to Forms 1099 and any related statements or corrections, electronically rather than in paper format. This consent applies to all tax years for which You maintain an active User Account or have had activity on the Platform.

**26.2** Electronic Delivery Requirements. You acknowledge and agree that:

29

**26.2.1** You have access to a computer or mobile device with internet connectivity that allows You to access, view, download, and retain electronic documents;

**26.2.2** You have access to and the ability to use Adobe Acrobat Reader or other software capable of reading PDF files;

**26.2.3** You have access to a printer or the ability to download and save electronic documents for Your records;

**26.2.4** Your email address associated with Your User Account is current and accessible to You.

**26.3** Method of Electronic Delivery. We will provide electronic tax forms and documents by:

**26.3.1** Posting them to a secure area of Your User Account on the Platform accessible through Your login credentials; and/or

**26.3.2** Sending an email notification to the email address associated with Your User Account containing either the forms/documents or instructions on how to access them through the Platform.

**26.4** Timing of Electronic Delivery. Electronic tax forms will be made available to You by January 31st of the year following the tax year for which the form applies, or such other date as may be required by applicable law. You will receive email notification when forms are available for Your access and download.

**26.5** Record Retention. You are responsible for:

**26.5.1** Downloading, printing, or otherwise saving copies of all electronic tax forms and documents for Your records;

**26.5.2** Maintaining these records in accordance with applicable tax laws and regulations;

**26.5.3** Ensuring You can access and view the electronic documents when needed for tax preparation or other purposes.

**26.6** Updating Contact Information. You must promptly update Your email address and other contact information in Your User Account to ensure You receive proper notification of available tax documents. Failure to maintain current contact information may result in Your inability to timely receive required tax documentation.

**26.7** Paper Delivery Option. You may withdraw Your consent to electronic delivery at any time by either contacting customer support at support@modo.us and requesting paper delivery of tax forms or changing the settings in your User Account. Any such request:

**26.7.1** Must be received by December 1st to be effective for tax forms issued in the following calendar year;

**26.7.2** Does not apply retroactively to forms already delivered electronically.

30

**26.8** Technical Problems. If You experience technical difficulties accessing Your electronic tax forms, You must contact customer support at support@modo.us within thirty (30) days of the email notification of availability. We will work to resolve technical issues and may provide paper copies if electronic delivery cannot be successfully completed.

**26.9** Confirmation of Receipt. By downloading or accessing electronic tax forms through Your User Account, You acknowledge receipt of such forms. If You do not access Your electronic tax forms within sixty (60) days of email notification, You will be deemed to have received the forms as of the date they were made available in Your User Account.

**26.10** Changes to Electronic Delivery. We reserve the right to modify the method or format of electronic delivery upon thirty (30) days' advance notice to You. Any such changes will be communicated via email to Your registered email address and/or through notifications in Your User Account.

**26.11** Compliance with Tax Laws. This electronic delivery consent is subject to applicable federal and state tax laws and regulations. In the event of any conflict between these provisions and applicable tax law, the requirements of applicable law shall control.

31

# EXHIBIT M

Merchant Name: ARB Gaming                                                                No: 7STU53439491

## DATA INTELLIGENCE AND VALIDATION EVIDENCE

### CUSTOMER INFORMATION

| | | | |
|---|---|---|---|
| Internal Case ID | 117695681 | Zip | 27514 |
| Customer | Matthew thomas Joyce | Country | United States |
| Billing Address | 170 Manordale Drive | Phone | 13219873397 |
| Billing City | Chapel Hill | Email | crash07222@gmail.com |
| State | NC | | |

The cardholders contact details were confirmed. The customer agreed to the terms and conditions prior to being charged.

### ORDER DETAILS

| | | | |
|---|---|---|---|
| Order ID | 01960db0e992 | Transaction Date | 2025-04-07 |
| Auth ID | 31252Z | Transaction ID | 01960db0e992 |
| CC Expires | 0528 | Price | 99.99 |
| Credit Card Number | 521400xxxxxx0279 | Product Qty | 1 |
| Card Product | MASTERCARD | Customer Dob | |
| Telephone | +13219873397 | Customer Passport Number | |
| IP Address | 2600:1004:b0af:4c:78ee:fc 92:c133:42bb | Customer Date Of First Transaction | 2025-04-08 01:40:05 |
| Order Total | 99.99 | | |

Order Information was obtained and validated from the Merchant's Customer Relationship Management database. The customer had full control over all aspects, including but not limited to the product information and specification, purchase, billing, and account.

### TRANSACTION DETAILS

| | | | |
|---|---|---|---|
| Transaction ID | 01960db0e992 | Total Currency | USD |
| Trans Status | Approved | Total Amount | 99.99 |
| Settlement Currency | USD | Gateway Id | 0025c5fc-0c90-426c-922d-1 4b3021b1838 |
| Address Verification Status | Y | Customer Id Verified | Yes |
| IP Address | 2600:1004:b0af:4c:78ee:fc 92:c133:42bb | Customer Ssn Verified | Yes |
| | | Customer Proof Of Address | Yes |
| Card Type | MASTERCARD | | |
| Card No | 521400xxxxxx0279 | Customer Drivers License Number | |
| Exp Date | 05/28 | | |

Customer purchased through click to accept process.

Please be advised that the following documents illustrate an example of the customer journey. Information in this document is based on data held by the merchant and publicly available sources. No warranty against error is implied or represented. If the information contained herein is illegible or if additional information is required please contact us via fax at +1 727 693 9491 or +44 203 750 5545.

1702 02 00 0000511 0020-0003558



Merchant Name: AkB Gaming                                                              No: 751053439401

## modo us

Payment Details



We need to gather a few details from you before you can start playing

First Name

Last Name

Phone Number

Address line 1

Address line 2 (optional)

City

State          Zip Code

Date of Birth

[X] I acknowledge that I am not a resident of the following states: Florida, Georgia, Idaho, New York, North Carolina, Rhode Island, Washington

[X] I agree with the Terms of Service and Sweeps Rules (B?)

Next

Customer must check a box to confirm that they agree to the terms of service.

Credit Holder Name

Card Number

Exp Date

CCV/CVC

[✓] Save this payment method

Billing Address
Address Line 1

Address Line 2 (optional)

City

State                    Zip Code

Merchant Name: ARB Gaming                                                          No: 751053409401

## modo.us

### Terms and Conditions

The following Terms and Conditions form a binding legal agreement between you and Modo, and apply to your use of the Platform in any way, through any electronic device (web, mobile, tablet, or any other device). You must *read* these Terms carefully in their entirety before checking the box for acceptance. By checking the box for acceptance during the registration process, or by accessing the Platform, you confirm that you have read and agree to be bound by these Terms and Conditions, which include and are inseparably linked to our Privacy Policy, Promo Rules, and other Game-specific or promotion-specific terms relevant to your use of any feature of the Platform. If you do not agree with any condition of these Terms or any other linked policy, rules, or terms, you may not access or use the Platform or play any Game.

Dispute(s) means any and all past, present, and future disputes, claims, or causes of action arising out of or relating to these Terms, the Platform, or any other dispute between you and Modo or any of Modo's affiliates, licensors, distributors, suppliers, or agents.

If you make a purchase on the Platform that results in a chargeback, we may terminate your Customer Account. You agree to contact us to seek a resolution of any issue before initiating a chargeback. We reserve the right to reverse the dispersal of any Sweepstakes Coins, and to withhold or cancel any Prizes generated from Sweepstakes Coins, associated with Gold Coin purchases that result in a chargeback

This Section Q will be construed under and be subject to the Federal Arbitration Act, notwithstanding any other choice of law set out in these Terms. By agreeing to these Terms, and to the extent permitted by applicable law, you and Modo agree that any Dispute will be governed by the procedure outlined below. You and Modo further agree that any arbitration pursuant to this Section Q(1) shall not proceed as a class, group, or representative action. By agreeing to these Terms, and to the extent permitted by applicable law, you agree to resolve any Disputes including any Dispute concerning the enforceability, validity, scope, or severability of this agreement to arbitrate through final and binding arbitration. You may decline this agreement to arbitrate by contacting arbitrationoptout@modo.us within 30 days of first accepting these Terms. Your email must include your first and last name and a statement that you decline this arbitration clause. By opting out of this clause, you will not be precluded from using the Platform, but neither you nor Modo will be able to invoke the mutual agreement to arbitrate to resolve Disputes. Whether to agree to arbitration is an important decision. It is your decision to make and you are not required to rely solely on the information provided in these Terms. You should take reasonable steps to conduct further research and, if you wish, to consult with counsel of your choice. You agree that the AAA will administer the arbitration under the AAA Rules, that arbitration will proceed on an individual basis, that arbitration will be handled by a sole arbitrator in accordance with the AAA Rules, that the AAA rules will govern payment of all arbitration fees, that except as otherwise may be required by the AAA Rules, the arbitration will be held in Orange County, Florida, or, at your election, conducted via telephone or other remote electronic means, that the arbitrator shall be authorized to award any remedies including injunctive relief, that would be available to you in an individual lawsuit and that are not waivable under applicable law, and that except as and to the extent otherwise may be required by law, the arbitration proceeding and any award shall be confidential.



Please be advised that the following documents illustrate an example of the customer journey. Information in this document is based on data held by the merchant and publicly available sources. No warranty against error is implied or represented. If the information contained herein is illegible or if additional information is required please contact us via fax at +1 727 493 9491 or +44 203 250 9545.

1702-02-00-00005 1 1 0023 0003555



# EXHIBIT N-1

**From:**    Matthew Joyce <matthewtjoyce@yahoo.com>

**To:**    Reshma Kamath <reshmakamath2021@gmail.com>

**Date:**    Mon, 5 May 2025 20:10:01 +0000 (UTC)

**Subject:**    Re: MATTHEW JOYCE, an individual, Plaintiff, v. ARB GAMING LLC dba MODO, a Delaware limited liability company; B2SERVICES OU dba MCLUCK; AFFIRM, INC.; and DOES 1-100, inclusive,

---

Will not arbitrate vs ARB interactive llc.  I will file arbitration against affirm.  Should I begin contacting attorneys in Delaware for my trade secret?  Also wasn't the plan to connect this to Apple eventually?  Please give me some clarity.
Matt


Sent from Yahoo Mail for iPhone


On Monday, May 5, 2025, 2:27 PM, Reshma Kamath <reshmakamath2021@gmail.com> wrote:

Please see attached. If you'd like to resolve informally, please contact me on or before May 09, 2025. After this, I will be initiating arbitration. The state court action will ensure concurrently. Thank you.

# EXHIBIT O-3

**From:** admin <fadetwoblank@pm.me>
**To:** Nadine Ludeke <admin@themacklaw.com>
**Cc:** Brielle Pittman <brielle.pittman2@gmail.com>, Paralegal <mj@themacklaw.com>, "The Mack Law Firm, PLLC" <legal@themacklaw.com>
**Date:** Wed, 01 Apr 2026 19:58:10 +0000
**Subject:** Subject: DO NOT FILE - Client Directive

Amina,

Do not file the amended JAMS demand. I do not authorize its submission.

I have reviewed the draft and it contains statements that are factually false and directly contradict our federal complaint. Specifically:

- Paragraphs 11 and 97 state I accepted the updated Terms under duress. That is false. I rejected those terms three times in writing and have documentation proving it.

- Paragraph 85 states a valid contract existed. That directly contradicts our position in federal court that the contract is void ab initio under Arizona's illegality doctrine — the same Arizona law that Arbitrator Leen ruled governs.

This is exactly why I was upset this morning. I cannot have filings go out under my name that are factually inaccurate and that undermine the strongest theory in this case.

Please confirm receipt and confirm that nothing will be filed in any forum without my express written approval.  The same goes with federal court as me and Briellle said this morning.

Matt
Sent with Proton Mail secure email.

On Wednesday, April 1st, 2026 at 2:44 PM, Nadine Ludeke <admin@themacklaw.com> wrote:

Good afternoon,

Please find attached the amended demand and statement of claim for review.


**Nadine Ludeke** | *Paralegal*
*The Mack Law Firm, PLLC*
4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
t: 984.480.7147 | c: 919.341.5124
admin@themacklaw.com | www.themacklaw.com

This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.


**From:** The Mack Law Firm, PLLC <legal@themacklaw.com>
**Sent:** Wednesday, April 1, 2026 10:51 AM
**To:** Brielle Pittman <brielle.pittman2@gmail.com>
**Cc:** Nadine Ludeke <admin@themacklaw.com>; Paralegal <mj@themacklaw.com>
**Subject:** Re: JAMS ammended complaint bullets due by 4/2/26 3:00 am EST

We cannot find the original demand. Can you send the original demand? It's not on JAMS.


**Amina M. Mack, Esq. | Managing Partner**

*The Mack Law Firm, PLLC*

4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
t: 984.480.7147 | f: 919.249-1360
legal@themacklaw.com | www.themacklaw.com

This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.

**From:** The Mack Law Firm, PLLC <legal@themacklaw.com>
**Sent:** Wednesday, April 1, 2026 10:51 AM
**To:** Brielle Pittman <brielle.pittman2@gmail.com>
**Cc:** Nadine Ludeke <admin@themacklaw.com>; Paralegal <mj@themacklaw.com>
**Subject:** Re: JAMS ammended complaint bullets due by 4/2/26 3:00 am EST

Not a problem. Adding Nadine. Nadine will work on the bullets Matt sent to incorporate into the amended draft for JAMS.

**Amina M. Mack, Esq. | Managing Partner**
*The Mack Law Firm, PLLC*

4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
t: 984.480.7147 | f: 919.249-1360
legal@themacklaw.com | www.themacklaw.com

This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.

**From:** Brielle Pittman <brielle.pittman2@gmail.com>
**Sent:** Wednesday, April 1, 2026 10:40 AM
**To:** The Mack Law Firm, PLLC <legal@themacklaw.com>
**Subject:** Re: JAMS ammended complaint bullets due by 4/2/26 3:00 am EST

Hey Amina,

After our call, Matt would like to hold off on filing anything right now (in federal court). Please to do not file the dismissal without prejudice.

Thank you
Brielle Pittman | Chapel Hill, NC 27517
(919)749-5754
brielle.pittman2@gmail.com

On Apr 1, 2026, at 9:30 AM, The Mack Law Firm, PLLC <legal@themacklaw.com> wrote:

Calling now.

**Amina M. Mack, Esq. | Managing Partner**
*The Mack Law Firm, PLLC*
4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609

t: 984.480.7147 | f: 919.249-1360
legal@themacklaw.com | www.themacklaw.com

This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.

**From:** Brielle Pittman <brielle.pittman2@gmail.com>
**Sent:** Wednesday, April 1, 2026 9:27 AM
**To:** The Mack Law Firm, PLLC <legal@themacklaw.com>
**Cc:** admin <fadetwoblank@pm.me>; Nadine Ludeke <admin@themacklaw.com>
**Subject:** Re: JAMS ammended complaint bullets due by 4/2/26 3:00 am EST

Yes, we're available now if you're free to call

On Mar 31, 2026, at 9:37 PM, The Mack Law Firm, PLLC <legal@themacklaw.com> wrote:

Let's speak on the phone...lots of emails and we need to get in alignment with a lot of updates.

### Amina M. Mack, Esq. | Managing Partner
### *The Mack Law Firm, PLLC*
4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
t: 984.480.7147 | f: 919.249-1360
legal@themacklaw.com | www.themacklaw.com

This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.

**From:** admin <fadetwoblank@pm.me>
**Sent:** Tuesday, March 31, 2026 9:20 PM
**To:** The Mack Law Firm, PLLC <legal@themacklaw.com>
**Cc:** Brielle Pittman <brielle.pittman2@gmail.com>; Nadine Ludeke <admin@themacklaw.com>; Mack Law <macklaw@themacklaw.com>
**Subject:** Re: JAMS ammended complaint bullets due by 4/2/26 3:00 am EST

hey also Amina, its a me issue but since this has happened i been in a constant state of fight or flight, next time try and give me a little more context on something likke that. im not nervous ever its just my head starts going in 3 different ways making plans, all ready i have thought what to do if they say they can get it tossed, how i would push for us to do immediate press release.

i just dont like being in the dark. if im being transparent it was al letdown, the amount of face time and access i get with you. im very happy with complaint and most other aspects before this draft mix up tonight. i feel like this case is major, i hope u can carve out more time to work with me on things. im very good at this if i have some guidance on things.
let me kniow a brief thing me and brielle can speak on if possible so im not spinning my wheels all night n can stay focused on this draft. if not all good ill get it knocked out.

last thing **please lets get a press release out.** its only help I had before u, John and the press release saved my case. i dont want something happening procedural without the spotlight shined on them, please

stay on john with this, hes paid in full. seems like hes going thru some life stuff but it can be done now that all parties served or is**apple still dodging?**

Sent with Proton Mail secure email.

On Tuesday, March 31st, 2026 at 7:26 PM, The Mack Law Firm, PLLC <legal@themacklaw.com> wrote:

> I spoke with ARB's attorney yesterday and need to speak to you via phone tomorrow morning. Can we speak before 10AM?
>
> ## Amina M. Mack, Esq. | Managing Partner
> ### *The Mack Law Firm, PLLC*
> 4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
> t: 984.480.7147 | f: 919.249-1360
> legal@themacklaw.com | www.themacklaw.com
>
> This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.
>
> **From:** admin <fadetwoblank@pm.me>
> **Sent:** Tuesday, March 31, 2026 7:23 PM
> **To:** The Mack Law Firm, PLLC <legal@themacklaw.com>
> **Cc:** Brielle Pittman <brielle.pittman2@gmail.com>; Nadine Ludeke <admin@themacklaw.com>; Mack Law <macklaw@themacklaw.com>
> **Subject:** JAMS ammended complaint bullets due by 4/2/26 3:00 am EST
>
> hey guys
> worked pretty hard on this its about 4 hours of work into 3 bullet pointed easy to read PDF files (one page each). its a five minute read please take the time to look at it. i need a break and ill get started on the first draft. please give me feed back and corrections or additions i can keep going on. im planning to be up tonight finishing and sent by tomorrow morning for review.
>
> My biggest cincern is timing, ARB will have duane morris sitting there until 5 minutes before thinking well submit at 12 am eastern. i know that for a fact, last time i submitted jams fiings was when they ran to Judge Calabretta to cry for emergency ex parte.
>
> The legal AI I've built has become a weapon. we have been collaborating and building for over 6 months no one knows case better then this AI model. Mix that with the investigating i continue to do, i think its smart "LEENing" on him for this. get it? Judge Leen. And to be clear Brielle found it to be her words....."real rib tickler"
>
> ill have first draft written i hope by 10 still. please give me any kind of format to work with as well after you see it would prefer it like the federal complaint just axeing mostly anyting reshma drafted up.
>
> talk soon
> matt
> Sent with Proton Mail secure email.
>
> On Tuesday, March 31st, 2026 at 6:52 PM, admin <fadetwoblank@pm.me> wrote:
>
> > its due at midnight on the second, its ok im deep into response for judge leen, i dont think you will have to tweak much, will have first draft ready by about 9pm. please give it a read when u get it if its not too late. i can talk tomorrow in the morning or early afternoon. so whatever time you would have available. should

we get john in on 5-10 minutes of conversation. if you have an hour available to bill me for that would be great, haven't spoken on case in a while.

what im writing will get this contract considered failure and out of jams, i can say that with complete certainty. im locked in, keep an eye out for it will send to Sippy and Nadine along with brielle.

matt-

Sent with Proton Mail secure email.

On Tuesday, March 31st, 2026 at 4:06 PM, The Mack Law Firm, PLLC <legal@themacklaw.com> wrote:

> Due midnight tonight? No. I do not have a response. What time can you speak tomorrow?

## Amina M. Mack, Esq. | Managing Partner
### *The Mack Law Firm, PLLC*
4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
t: 984.480.7147 | f: 919.249-1360
legal@themacklaw.com | www.themacklaw.com

This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.

**From:** admin <fadetwoblank@pm.me>
**Sent:** Tuesday, March 31, 2026 4:04 PM
**To:** The Mack Law Firm, PLLC <legal@themacklaw.com>
**Cc:** Brielle Pittman <brielle.pittman2@gmail.com>; Nadine Ludeke <admin@themacklaw.com>
**Subject:** Re: Affirm Extension Request

Yes, also we have our response to judge Leen due on the 2nd at midnight I believe ironically arbs submission to court due then as well. Do you guys have a doc ready for me to review. I sent my thoughts and draft on document 3 weeks back or whenever we found out we needed reply. I haven't gotten any feedback yet. Let me know when you guys have a draft to review.

Sent from Proton Mail for Android.

-------- Original Message --------
On Tuesday, 03/31/26 at 13:15 The Mack Law Firm, PLLC <legal@themacklaw.com> wrote:

> Do you guys have time to speak briefly tomorrow or Thursday?

## Amina M. Mack, Esq. | Managing

**Partner**

*The Mack Law Firm, PLLC*

4242 Six Forks Road Ste. 1550 | Raleigh, NC |
27609
t: 984.480.7147 | f: 919.249-1360
legal@themacklaw.com | www.themacklaw.com

This email (including any attachments) may
contain confidential and/or privileged
information. If you are not the intended recipient,
please notify the sender immediately and delete
this email. Any unauthorized use, copying,
disclosure, or distribution of the information
contained in this email is strictly prohibited.
Unless expressly stated, nothing in this email
should be construed as legal advice or as creating
an attorney-client relationship.

**From:** xx^ <fadetwoblank@pm.me>
**Sent:** Saturday, March 28, 2026 5:03 PM
**To:** The Mack Law Firm, PLLC
<legal@themacklaw.com>
**Cc:** Mack Law <macklaw@themacklaw.com>; Brielle
Pittman <brielle.pittman2@gmail.com>; Nadine
Ludeke <admin@themacklaw.com>
**Subject:** Affirm Extension Request

Hey Amina,

Brielle filled me in that Affirm is asking for a 60-day
extension on service.  My stance— I don't want to grant it.

(part u crushed most in complaint) Affirm has been aware
of this litigation from the start. They removed the original
case to N.D. Cal., they filed a motion to dismiss the same
day they publicized Reshma's disbarment, they monitored
my refile in real time. They know exactly what this case is
and who I am. Giving them 60 more days doesn't fix a
service technicality — it gives them two more months to
coordinate with ARB and delays everything on our end
including PR.

Brielle already pulled the correct entity and registered
agent from the Secretary of State. We can re-serve
properly this week. I'd rather do that than reward them for
dragging their feet.

Also wanted to make sure you got the PR draft that John
and I put together. I know we've talked about timing
around service being complete — that's another reason I
don't want to hand Affirm control of our timeline.  i also
think they said service was not right last time n they still
did all the retalition nonsense.  i think its also telling karen
told u she was in cali, so they still coordinating.  lets push
back on this.  also u have my go head to hire any specialist
or as many servers as need be to make it happen.
attached my moms personal email if u need payment for
any of that.

Matthew
Sent with Proton Mail secure email.

# EXHIBIT O-4

**From:** "The Mack Law Firm, PLLC" <legal@themacklaw.com>
**To:** admin <fadetwoblank@pm.me>, Nadine Ludeke <admin@themacklaw.com>
**Cc:** Brielle Pittman <brielle.pittman2@gmail.com>, Paralegal <mj@themacklaw.com>
**Date:** Wed, 01 Apr 2026 20:03:22 +0000
**Subject:** Re: Subject: DO NOT FILE - Client Directive

Nothing will be filed. Please also do not send the press release in my name.

## Amina M. Mack, Esq. | Managing Partner
*The Mack Law Firm, PLLC*
4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
t: 984.480.7147 | f: 919.249-1360
legal@themacklaw.com | www.themacklaw.com

This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.

**From:** admin <fadetwoblank@pm.me>
**Sent:** Wednesday, April 1, 2026 3:58 PM
**To:** Nadine Ludeke <admin@themacklaw.com>
**Cc:** Brielle Pittman <brielle.pittman2@gmail.com>; Paralegal <mj@themacklaw.com>; The Mack Law Firm, PLLC <legal@themacklaw.com>
**Subject:** Subject: DO NOT FILE - Client Directive

Amina,

Do not file the amended JAMS demand. I do not authorize its submission.

I have reviewed the draft and it contains statements that are factually false and directly contradict our federal complaint. Specifically:

- Paragraphs 11 and 97 state I accepted the updated Terms under duress. That is false. I rejected those terms three times in writing and have documentation proving it.

- Paragraph 85 states a valid contract existed. That directly contradicts our position in federal court that the contract is void ab initio under Arizona's illegality doctrine — the same Arizona law that Arbitrator Leen ruled governs.

This is exactly why I was upset this morning. I cannot have filings go out under my name that are factually inaccurate and that undermine the strongest theory in this case.

Please confirm receipt and confirm that nothing will be filed in any forum without my express written approval.  The same goes with federal court as me and Briellle said this morning.

Matt
Sent with Proton Mail secure email.

On Wednesday, April 1st, 2026 at 2:44 PM, Nadine Ludeke <admin@themacklaw.com> wrote:

Good afternoon,

Please find attached the amended demand and statement of claim for review.

**Nadine Ludeke** | *Paralegal*
*The Mack Law Firm, PLLC*

4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
t: 984.480.7147 | c: 919.341.5124
admin@themacklaw.com | www.themacklaw.com

This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.

---

**From:** The Mack Law Firm, PLLC <legal@themacklaw.com>
**Sent:** Wednesday, April 1, 2026 10:51 AM
**To:** Brielle Pittman <brielle.pittman2@gmail.com>
**Cc:** Nadine Ludeke <admin@themacklaw.com>; Paralegal <mj@themacklaw.com>
**Subject:** Re: JAMS ammended complaint bullets due by 4/2/26 3:00 am EST

We cannot find the original demand. Can you send the original demand? It's not on JAMS.


## Amina M. Mack, Esq. | Managing Partner
### *The Mack Law Firm, PLLC*
4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
t: 984.480.7147 | f: 919.249-1360
legal@themacklaw.com | www.themacklaw.com

This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.

**From:** The Mack Law Firm, PLLC <legal@themacklaw.com>
**Sent:** Wednesday, April 1, 2026 10:51 AM
**To:** Brielle Pittman <brielle.pittman2@gmail.com>
**Cc:** Nadine Ludeke <admin@themacklaw.com>; Paralegal <mj@themacklaw.com>
**Subject:** Re: JAMS ammended complaint bullets due by 4/2/26 3:00 am EST

Not a problem. Adding Nadine. Nadine will work on the bullets Matt sent to incorporate into the amended draft for JAMS.


## Amina M. Mack, Esq. | Managing Partner
### *The Mack Law Firm, PLLC*
4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
t: 984.480.7147 | f: 919.249-1360
legal@themacklaw.com | www.themacklaw.com

This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.

**From:** Brielle Pittman <brielle.pittman2@gmail.com>
**Sent:** Wednesday, April 1, 2026 10:40 AM
**To:** The Mack Law Firm, PLLC <legal@themacklaw.com>
**Subject:** Re: JAMS ammended complaint bullets due by 4/2/26 3:00 am EST

Hey Amina,

After our call, Matt would like to hold off on filing anything right now (in federal court). Please to do not file the dismissal without prejudice.

Thank you
Brielle Pittman | Chapel Hill, NC 27517
(919)749-5754
brielle.pittman2@gmail.com

On Apr 1, 2026, at 9:30 AM, The Mack Law Firm, PLLC <legal@themacklaw.com> wrote:

Calling now.

## Amina M. Mack, Esq. | Managing Partner
### *The Mack Law Firm, PLLC*
4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
t: 984.480.7147 | f: 919.249-1360
legal@themacklaw.com | www.themacklaw.com

This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.

**From:** Brielle Pittman <brielle.pittman2@gmail.com>
**Sent:** Wednesday, April 1, 2026 9:27 AM
**To:** The Mack Law Firm, PLLC <legal@themacklaw.com>
**Cc:** admin <fadetwoblank@pm.me>; Nadine Ludeke <admin@themacklaw.com>
**Subject:** Re: JAMS ammended complaint bullets due by 4/2/26 3:00 am EST

Yes, we're available now if you're free to call

On Mar 31, 2026, at 9:37 PM, The Mack Law Firm, PLLC <legal@themacklaw.com> wrote:

Let's speak on the phone...lots of emails and we need to get in alignment with a lot of updates.

## Amina M. Mack, Esq. | Managing Partner
### *The Mack Law Firm, PLLC*
4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
t: 984.480.7147 | f: 919.249-1360
legal@themacklaw.com | www.themacklaw.com

This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.

**From:** admin <fadetwoblank@pm.me>

**Sent:** Tuesday, March 31, 2026 9:20 PM
**To:** The Mack Law Firm, PLLC <legal@themacklaw.com>
**Cc:** Brielle Pittman <brielle.pittman2@gmail.com>; Nadine Ludeke <admin@themacklaw.com>; Mack Law <macklaw@themacklaw.com>
**Subject:** Re: JAMS ammended complaint bullets due by 4/2/26 3:00 am EST


hey also Amina, its a me issue but since this has happened i been in a constant state of fight or flight, next time try and give me a little more context on something likke that. im not nervous ever its just my head starts going in 3 different ways making plans, all ready i have thought what to do if they say they can get it tossed, how i would push for us to do immediate press release.

i just dont like being in the dark. if im being transparent it was al letdown, the amount of face time and access i get with you. im very happy with complaint and most other aspects before this draft mix up tonight. i feel like this case is major, i hope u can carve out more time to work with me on things. im very good at this if i have some guidance on things.
let me kniow a brief thing me and brielle can speak on if possible so im not spinning my wheels all night n can stay focused on this draft. if not all good ill get it knocked out.

last thing **please lets get a press release out.** its only help I had before u, John and the press release saved my case. i dont want something happening procedural without the spotlight shined on them, please stay on john with this, hes paid in full. seems like hes going thru some life stuff but it can be done now that all parties served or is**apple still dodging?**

Sent with Proton Mail secure email.

On Tuesday, March 31st, 2026 at 7:26 PM, The Mack Law Firm, PLLC <legal@themacklaw.com> wrote:

> I spoke with ARB's attorney yesterday and need to speak to you via phone tomorrow morning. Can we speak before 10AM?
>
> ## Amina M. Mack, Esq. | Managing Partner
> ### The Mack Law Firm, PLLC
> 4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
> t: 984.480.7147 | f: 919.249-1360
> legal@themacklaw.com | www.themacklaw.com
>
> This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.
>
> **From:** admin <fadetwoblank@pm.me>
> **Sent:** Tuesday, March 31, 2026 7:23 PM
> **To:** The Mack Law Firm, PLLC <legal@themacklaw.com>
> **Cc:** Brielle Pittman <brielle.pittman2@gmail.com>; Nadine Ludeke <admin@themacklaw.com>; Mack Law <macklaw@themacklaw.com>
> **Subject:** JAMS ammended complaint bullets due by 4/2/26 3:00 am EST
>
>
> hey guys
> worked pretty hard on this its about 4 hours of work into 3 bullet pointed easy to read PDF files (one page each). its a five minute read please take the time to look at it. i need a break and ill get started on the first draft. please give me feed back and corrections or additions i can keep going on. im planning to be up tonight finishing and sent by tomorrow morning for review.
>
> My biggest cincern is timing, ARB will have duane morris sitting there until 5 minutes before

thinking well submit at 12 am eastern. i know that for a fact, last time i submitted jams fiings was when they ran to Judge Calabretta to cry for emergency ex parte.

The legal AI I've built has become a weapon. we have been collaborating and building for over 6 months no one knows case better then this AI model. Mix that with the investigating i continue to do, i think its smart "LEENing" on him for this. get it? Judge Leen. And to be clear Brielle found it to be her words....."real rib tickler"

ill have first draft written i hope by 10 still. please give me any kind of format to work with as well after you see it would prefer it like the federal complaint just axeing mostly anyting reshma drafted up.

talk soon
matt
Sent with Proton Mail secure email.

On Tuesday, March 31st, 2026 at 6:52 PM, admin <fadetwoblank@pm.me> wrote:

> its due at midnight on the second, its ok im deep into response for judge leen, i dont think you will have to tweak much, will have first draft ready by about 9pm. please give it a read when u get it if its not too late. i can talk tomorrow in the morning or early afternoon. so whatever time you would have available. should we get john in on 5-10 minutes of conversation. if you have an hour available to bill me for that would be great, haven't spoken on case in a while.
>
> what im writing will get this contract considered failure and out of jams, i can say that with complete certainty. im locked in, keep an eye out for it will send to Sippy and Nadine along with brielle.
>
> matt-
>
> Sent with Proton Mail secure email.
>
> On Tuesday, March 31st, 2026 at 4:06 PM, The Mack Law Firm, PLLC <legal@themacklaw.com> wrote:
>
>> Due midnight tonight? No. I do not have a response. What time can you speak tomorrow?
>>
>> ### Amina M. Mack, Esq. | Managing Partner
>> ### *The Mack Law Firm, PLLC*
>> 4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
>> t: 984.480.7147 | f: 919.249-1360
>> legal@themacklaw.com | www.themacklaw.com
>>
>> This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.
>>
>> **From:** admin <fadetwoblank@pm.me>
>> **Sent:** Tuesday, March 31, 2026 4:04 PM
>> **To:** The Mack Law Firm, PLLC <legal@themacklaw.com>
>> **Cc:** Brielle Pittman <brielle.pittman2@gmail.com>; Nadine Ludeke <admin@themacklaw.com>

**Subject:** Re: Affirm Extension Request

Yes, also we have our response to judge Leen due on the 2nd at midnight I believe ironically arbs submission to court due then as well. Do you guys have a doc ready for me to review. I sent my thoughts and draft on document 3 weeks back or whenever we found out we needed reply. I haven't gotten any feedback yet. Let me know when you guys have a draft to review.

Sent from Proton Mail for Android.

-------- Original Message --------
On Tuesday, 03/31/26 at 13:15 The Mack Law Firm, PLLC <legal@themacklaw.com> wrote:

> Do you guys have time to speak briefly tomorrow or Thursday?
>
> **Amina M. Mack, Esq. | Managing Partner**
> *The Mack Law Firm, PLLC*
> 4242 Six Forks Road Ste. 1550 | Raleigh, NC | 27609
> t: 984.480.7147 | f: 919.249-1360
> legal@themacklaw.com | www.themacklaw.com
>
> This email (including any attachments) may contain confidential and/or privileged information. If you are not the intended recipient, please notify the sender immediately and delete this email. Any unauthorized use, copying, disclosure, or distribution of the information contained in this email is strictly prohibited. Unless expressly stated, nothing in this email should be construed as legal advice or as creating an attorney-client relationship.
>
> **From:** xx^ <fadetwoblank@pm.me>
> **Sent:** Saturday, March 28, 2026 5:03 PM
> **To:** The Mack Law Firm, PLLC <legal@themacklaw.com>
> **Cc:** Mack Law <macklaw@themacklaw.com>; Brielle Pittman <brielle.pittman2@gmail.com>; Nadine Ludeke <admin@themacklaw.com>
> **Subject:** Affirm Extension Request
>
> Hey Amina,
>
> Brielle filled me in that Affirm is asking for a 60-day extension on service. My stance— I don't want to grant it.
>
> (part u crushed most in complaint) Affirm has been aware of this litigation from the start. They removed the original case to N.D. Cal., they filed a motion to dismiss the same day they publicized Reshma's disbarment, they monitored my refile in real time. They know exactly what this case is

and who I am. Giving them 60 more days doesn't fix a service technicality — it gives them two more months to coordinate with ARB and delays everything on our end including PR.

Brielle already pulled the correct entity and registered agent from the Secretary of State. We can re-serve properly this week. I'd rather do that than reward them for dragging their feet.

Also wanted to make sure you got the PR draft that John and I put together. I know we've talked about timing around service being complete — that's another reason I don't want to hand Affirm control of our timeline. i also think they said service was not right last time n they still did all the retalition nonsense. i think its also telling karen told u she was in cali, so they still coordinating. lets push back on this. also u have my go head to hire any specialist or as many servers as need be to make it happen. attached my moms personal email if u need payment for any of that.

Matthew
Sent with Proton Mail secure email.

# EXHIBIT Q





GOVERNOR  KATIE HOBBS                                                                                    DIRECTOR  JACKIE JOHNSON

## News Release

FOR IMMEDIATE RELEASE                                          Media Contact | Dayne O'Brien
April 17, 2025                                          602.921.0232 | dobrien@azgaming.gov

## Arizona Department of Gaming Issues Multiple Cease-and-Desists

PHOENIX – The Arizona Department of Gaming (ADG) has taken decisive enforcement action this week against multiple unlicensed and unregulated gambling operators—both domestic and international—that have been unlawfully targeting Arizona residents. As part of its ongoing efforts to protect the public and uphold Arizona gaming laws, the Department has issued several cease-and-desist orders to unlicensed entities offering unlawful wagering activities.

The named operators are allegedly providing access to various illegal online gaming services, including slot-style casino games, "sweepstakes" platforms, sports wagering, horse race betting, and peer-to-peer wagering exchanges. These operations are not licensed by the State and fail to meet Arizona's strict regulatory requirements, thereby posing significant consumer protection and financial risks to Arizonans.

**The following unlicensed operators have been issued cease-and-desist orders:**

- Sweepstakes:
  - ARB Gaming, LLC d/b/a Modo.us
    - MODO.us (online casino) / BITMODO LLC
    - Modo
  - Epic Hunts
- Event Wagering Sportsbook:
  - Generiz
- Peer-to-Peer Exchange:
  - ProphetX
- Offers Multiple Types:
  - MyBookie
  - BetUS.com.pa

The active operations of these companies and online websites in Arizona are alleged to be felony criminal enterprises, and each operator has been directed to desist from any future illegal gambling operations or activities of any type in Arizona. Due to the unregulated and illegal online gaming offerings on these sites, operators are claimed to be in violation of Arizona gaming laws, including:

1. Promotion of Gambling (Felony) -- A.R.S. § 13-3303.
2. Illegal Control of an Enterprise (Felony) -- A.R.S. § 13-2312.

3.    Money Laundering (Felony) -- A.R.S. § 13-2317.

Each aforementioned operator has been directed to **immediately** cease all online (or other) gambling operations and activities in Arizona, and take the necessary steps to immediately prevent and exclude Arizona residents and visitors from gambling on their websites.

"Illegal gaming—no matter the platform or format—has no place in Arizona. Whether it's sweepstakes, online casino-style games, or unauthorized sports betting, if an operation exists outside of the state's legal and regulatory framework, we are prepared to take enforcement action," stated Jackie Johnson, Director of the ADG. "Illegal gambling is not just unlawful—it's stealing from our economy and undermining the safeguards that protect consumers. The Department fully supports the licensed and regulated operators who are doing things the right way—operating within the bounds of the law, contributing to Arizona's economy, and providing the protections that only a regulated market can ensure."

**Consumer Protection Advisory:**

As illegal online gaming activity continues to rise, the ADG urges all residents and visitors to be cautious when participating in gaming—whether online or in person. Regulated gaming offers important consumer protections—helping ensure fair play, data security, accountability, and a safer overall experience.

Many online platforms currently accessible in Arizona are neither licensed nor regulated, exposing users to significant risks, including fraud, identity theft, and financial loss. Because these operations fall outside the state's regulatory authority, ADG cannot assist with complaints or disputes involving unregulated or illegal gaming activities—often leaving victims with no recourse for recovering lost funds. It is important to remember: **just because you can download the app, access the website, and play the games does not mean the platform is legal or safe**.

Individuals are encouraged to verify the legitimacy of any gaming platform before placing bets or engaging in gameplay. To protect yourself, always use legally authorized and state-regulated operators. A complete list of authorized casinos, event wagering operators, fantasy sports operators, and off-track betting for horse racing is available on ADG's official website: gaming.az.gov.

**How to Report Suspicious Gaming Activity, Fraud, or Identity Theft:**
If you encounter what appears to be an illegal gaming website, app, or an operation impersonating an authorized Arizona casino or licensed operator, take the following steps:

1. **Document the website URL, app, business name, and any promotional materials** associated with the platform or operator.
2. **Report it** to ADG at publicaffairs@azgaming.gov and the Arizona Attorney General's Office Consumer Information and Complaints Unit at **(602) 542-5763** or by visiting azag.gov/consumer.
3. **Cease activity on the platform** and monitor financial accounts for unauthorized transactions.
4. **If you suspect identity theft**, report it to the Federal Trade Commission ("FTC"): for help in English, go to IdentityTheft.gov and for help in Spanish, go to RobodeIdentidad.gov.

**ADG takes complaints about all illegal gambling seriously.** To report any form of suspected illegal gambling, visit gaming.az.gov/about/contact-us, **call ADG at (602) 255-3886, or email** publicaffairs@azgaming.gov. Reports can be made anonymously.

**About ADG**

Established by the Arizona State Legislature in 1995, ADG is the state regulatory agency for tribal gaming, event wagering & fantasy sports contests, racing and pari-mutuel/simulcast wagering, and unarmed combat sports. ADG also provides and supports education, prevention, and treatment programs for people and families affected by problem gambling through its Division of Problem Gambling and 24-hour confidential helpline, 1-800-NEXT STEP.

*The Department and our Division of Problem Gambling would greatly appreciate our media partners including supportive resources when reporting on gambling, or event wagering, fantasy sports, sports betting, or other wagering-related activities:*

If you or someone you know has a gambling problem, you can get help now by calling 1-800-NEXT-STEP (1.800.639.8783), DPG's confidential helpline, texting "NEXTSTEP" to 53342, or utilizing a chat feature on the DPG website. DPG's helpline confidentiality connects callers with available resources, including statewide treatment providers who specialize in problem gambling. The helpline is available 24/7 to everyone facing a problem with gambling – individuals and affected family members, friends, or co-workers. Learn more and access resources at problemgambling.az.gov.

###

# EXHIBIT R

# ILLINOIS GAMING BOARD

JB Pritzker • *Governor*   Dionne R. Hayden • *Chairperson*   Marcus D. Fruchter • *Administrator*

160 North LaSalle ♠ Suite 300 ♣ Chicago, Illinois 60601 ♥ Tel: 312/814-4700 ♦ Fax: 312/814-4602

February 4, 2026

**Via Email:** *support@modo.us; legal@arbinteractive.com; disputeresolution@arbgamingllc.com*

Modo
13802 N Scottsdale Rd Ste 151-94
Scottsdale, AZ 85254-3458

**RE:    Suspected Illegal Online Casino Operation by Modo**

To Whom It May Concern:

The Illinois Gaming Board (the "IGB") has reason to believe that Modo is engaged in the operation of an illegal online casino in violation of the Illinois Criminal Code. 720 ILCS 5/28-1(a)(12). On January 15, 2026, the IGB observed that you offered Illinois users the ability to play slots and table games ("Games") through both the internet and mobile devices. The Games gave users the opportunity to win cash, gift cards, and other prizes in violation of Illinois law.

Illinois has only authorized gambling at riverboats or casinos holding an owners license, a racetrack holding an organization gaming license, an Illinois sportsbook holding a license under the Sports Wagering Act, or at an establishment licensed under the Video Gaming Act. 230 ILCS 10/3; 230 ILCS 40/1 *et seq.* It is unlawful to knowingly establish, maintain, or operate an Internet site that permits a person to play a game of chance or skill for money or other thing of value via the Internet, or that permits a person to make a wager upon the result of any sport, game, contest, political nomination, appointment, or election via the Internet, without an IGB-issued license. 720 ILCS 5/28-1(a)(12); 230 ILCS 10/18(a)(1); 730 ILCS 5/5-4.5-55. Under Illinois law no exceptions are permitted under the Illinois Prizes and Gifts Act. 815 ILCS 525/1 *et seq.*

The IGB has neither licensed nor authorized Modo to engage in online gambling activity. Consequently, Modo's activity constitutes illegal gambling in violation of Illinois law. **Accordingly, the IGB demands that you block Illinois residents from accessing your services or discontinue offering cash, gift cards, and other prizes through your service. Failure to do so may subject you, your affiliates, and business partners to civil or criminal penalties.**

Please contact the IGB Legal Division at IGB.Legal@illinois.gov should you have any questions.

Kind regards,

Marcus D. Fruchter
Administrator

cc:    IGB Legal Division
       IGB Field Operations Division
       Illinois State Police – Statewide Gaming Command
       Office of the Illinois Attorney General