Matthew Joyce
Plaintiff, Pro Se
600 Market Grove Dr #100
Wake Forest, NC 27587-7345
Phone: (919) 259-4661
Email: m.joyce07@proton.me

**FILED**

AUG 03 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
DEPUTY CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

### SACRAMENTO DIVISION

| | |
|---|---|
| MATTHEW JOYCE, an individual,<br>Plaintiff,<br>v.<br>ARB GAMING LLC dba MODO.US;<br>AFFIRM, INC.; GOLDMAN SACHS BANK<br>USA; APPLE INC.; AMAZON.COM, INC.;<br>and DOES 1-50,<br><br>Defendants. | Case No. 2:25-cv-01868-DJC-CSK (PS)<br><br>**PLAINTIFF'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF SUPPLEMENTAL SUBMISSION IN OPPOSITION TO ARB GAMING, LLC'S MOTION TO COMPEL ARBITRATION (ECF 56)** |

August 25, 2026, 10:00 a.m. — by Zoom — Hon. Chi Soo Kim

Plaintiff Matthew Joyce respectfully requests, under Federal Rule of Evidence 201(b)(2), that the Court take judicial notice of the existence and content of the court records identified below. Each is a document filed on the public docket of a United States District Court. The existence of each record, and the fact of what each states on its face, are "not subject to reasonable dispute" because they "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Plaintiff requests notice for a limited purpose. A court may notice the existence and content of a filing in another federal proceeding that bears directly on a matter at issue, but not the truth of the facts recited within it. Lee v. City of Los Angeles, 250 F.3d 668, 689–

90 (9th Cir. 2001); Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 999 (9th Cir. 2018). Plaintiff does not ask the Court to accept as true any assertion by ARB or by any other party within these records. Plaintiff asks the Court to notice only that each document was filed and what each document states. Where a record contains a statement by ARB or its officers, that statement is offered not for its truth but as the statement of a party opponent. Fed. R. Evid. 801(d)(2).

Plaintiff does not ask this Court to review or disturb any ruling of any other court, and does not rely on the reasoning or the outcome of any of the cases identified below. He asks the Court to notice no court's decision. Whether ARB's representations can be reconciled is a question for this Court alone, on this record.

The records of which Plaintiff requests judicial notice are:

A. Kowalok v. ARB Gaming, LLC, No. 4:25-cv-02161 (N.D. Ohio)

 RJN Ex. A — ECF No. 16, ARB's Motion to Compel Individual Arbitration and Memorandum of Law in Support, reproducing Figure 1 at page 7 and citing the Declaration of William Colello, ECF No. 17.

 RJN Ex. B — ECF No. 17-1, Terms of Use dated August 4, 2025 (the version ARB submitted as operative in that case), including Section 3.4 "Restricted Territories."

B. Anderson v. ARB Gaming, LLC, No. 6:25-cv-02069 (D. Or.)

 RJN Ex. C — ECF No. 25, Declaration of William Colello in Support of ARB's Motion to Compel Arbitration.

C. Walker v. ARB Gaming, LLC, No. 2:25-cv-00991 (D. Utah)

 RJN Ex. D — ECF No. 16, ARB's Motion to Compel Arbitration and Memorandum of Law in Support (with the Declaration of William Colello and Figure 1 reproduced at page 9).

D. Dinslage v. ARB Gaming, LLC, No. 3:25-cv-02562 (N.D. Cal.)

 RJN Ex. E — ECF No. 18-4, Declaration of Patrick Fechtmeyer in Support of ARB's Opposition to Plaintiff's Motion to Remand.

Each of these documents is a court filing whose existence and content are readily verifiable from the public dockets identified. Plaintiff respectfully requests that the Court take judicial notice of them under Rule 201(b)(2), for the limited purpose stated above.

Dated: August 3, 2026

Respectfully submitted,

Signed by:

Matthew Joyce

07B601B840D34AB...

**Matthew Joyce**

Plaintiff, Pro Se

600 Market Grove Dr #100
Wake Forest, NC 27587-7345
Phone: (919) 259-4661
Email: m.joyce07@proton.me

Matthew Joyce
Plaintiff, Pro Se
600 Market Grove Dr #100
Wake Forest, NC 27587-7345
Phone: (919) 259-4661
Email: m.joyce07@proton.me

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

# SACRAMENTO DIVISION

| | |
|---|---|
| MATTHEW JOYCE, an individual,<br>Plaintiff,<br>v.<br>ARB GAMING LLC dba MODO.US;<br>AFFIRM, INC.; GOLDMAN SACHS BANK<br>USA; APPLE INC.; AMAZON.COM, INC.;<br>and DOES 1-50,<br><br>Defendants. | Case No. 2:25-cv-01868-DJC-CSK (PS)<br><br>**PLAINTIFF'S SUPPLEMENTAL SUBMISSION IN OPPOSITION TO ARB GAMING, LLC'S MOTION TO COMPEL ARBITRATION (ECF 56)** |

August 25, 2026, 10:00 a.m. — by Zoom — Hon. Chi Soo Kim

INTRODUCTION

This supplement addresses the single threshold question ARB's motion presents — whether ARB has proven that this Plaintiff formed an agreement to arbitrate — and rests entirely on ARB's own filings in its parallel federal cases, obtained after the Opposition (ECF 96) was filed. Plaintiff does not reargue the Opposition; its grounds and the record recited in its Section IV are incorporated by reference, and the facts set out there — the blank "John Doe" exemplar, the greyed-out registration screen, the Form 1099 and chargeback packet placing this Plaintiff in North Carolina, and ARB's shifting seats and terms — are not repeated here. The new matter is narrow. In the cases decided weeks

1

2:25-cv-01868-DJC-CSK (PS) — SUPPLEMENTAL SUBMISSION RE ECF 56

before and weeks after this Plaintiff opened his account, ARB swore — through its own Vice President of Player Operations — to a registration screen materially different from the one its Chief Executive attached here to prove this Plaintiff's assent, and different in the one respect that matters to this Plaintiff: it did not exclude North Carolina. On ARB's own sworn exhibits, ARB has not shown that any act by this Plaintiff was a manifestation of assent to the Terms it seeks to enforce.

I. ARB SWORE TO A DIFFERENT REGISTRATION SCREEN — ONE THAT DID NOT EXCLUDE NORTH CAROLINA — FOR ACCOUNTS OPENED WEEKS BEFORE AND WEEKS AFTER THIS PLAINTIFF'S

The screen ARB attached to prove this Plaintiff's assent (Fechtmeyer Decl., Ex. A, ECF 56-9) excludes residents of North Carolina — this Plaintiff's State — on the face of its own checkbox. (ECF 96 § IV.A.) ARB's parallel filings show that the screen ARB swore its customers actually encountered was a different one.

William Colello, ARB's Vice President of Player Operations, swore in Walker v. ARB Gaming, LLC (D. Utah) and Anderson v. ARB Gaming, LLC (D. Or.) that the initial registration screen was the form reproduced as Figure 1 in each case: a single checkbox reading, "I agree with the Terms of Service and Sweepstakes Rules and acknowledge that I cannot enter into any Sweepstakes from AZ, CT, DE, ID, LA, MD, MI, MT, NJ, NV, NY, PA, RI, WA, WV, and any other non-US territories," above a button labeled "Submit." RJN Ex. D (Walker), Figure 1 at 9; RJN Ex. C (Anderson). Fifteen States. North Carolina is not among them. Mr. Colello described that form as "an example of the initial screen encountered by all persons," and allowed only that "the exact language of the excluded states may have varied." RJN Ex. C ¶¶ 11–12.

The accounts Mr. Colello described sit on either side of this Plaintiff's. The Walker customer opened his account on June 21, 2024 (RJN Ex. D); this Plaintiff's account was created "on or about August 2, 2024" (Fechtmeyer Decl. ¶ 10); the Anderson customer registered "on or about August 8, 2024" (RJN Ex. C ¶ 17). Forty-two days before this

Plaintiff, and six days after him, ARB swore to the fifteen-State screen that does not name North Carolina. For this Plaintiff, in the forty-eight-day window between those two accounts, ARB swore to a different screen: two checkboxes rather than one, a different header, and a list of seven States — Florida, Georgia, Idaho, New York, North Carolina, Rhode Island, and Washington — that includes the single State the other screen omits. Fechtmeyer Decl., Ex. A.

ARB's Chief Executive swore that the arbitration and delegation provisions of every version of its Terms are "materially and substantively identical in all relevant respects." Fechtmeyer Decl. ¶ 16. Whatever the merit of that statement as to the Terms, it does not reconcile the screens. A hedge that "the exact language of the excluded states may have varied" does not account for one checkbox against two, a different header, and a different roster of States — one that turns North Carolina residents away and one that admits them. Each officer's account may be internally consistent; the two are not consistent with each other.

Mr. Colello also swore that no ARB customer "could have used or accessed the ARB Platform . . . unless the customer first agreed" to the Terms. RJN Ex. C ¶ 13. The screen ARB says this Plaintiff agreed to bars residents of North Carolina, and ARB's own records place this Plaintiff in North Carolina. (ECF 96 § IV.A.) Both statements cannot be true of this Plaintiff.

The consequence is not that one screen or the other governs — that would assume a formed agreement and ask only which version. It is that ARB, the party bearing the burden of proving a formed agreement by a preponderance of the evidence, Knutson v. Sirius XM Radio, Inc., 771 F.3d 559, 565 (9th Cir. 2014), has sworn across its own cases to two irreconcilable accounts of the one event its motion depends on: what this Plaintiff was shown, and did, at sign-up. A timestamp, had ARB produced one, would establish that a click occurred; it would not establish which screen the customer saw. ARB has never produced the Terms in effect on August 2, 2024 — the day it says this Plaintiff's

account was created — and swears instead to a version dated September 10, 2024, five weeks later. On this record, ARB has not shown that any act by this Plaintiff was a manifestation of assent to the Terms it seeks to enforce.

## II. ARB PRODUCES EXACT ACCOUNT RECORDS WHEN PAYMENT IS AT STAKE

ARB's declarant swears that ARB "maintains records concerning . . . the timestamps associated with acceptance, and the versions of the Terms accepted by users," kept "at or near the time of the events." Fechtmeyer Decl. ¶ 9. ARB filed none of them; it filed the Terms and a blank exemplar. (ECF 96 § IV.A.) That is not for want of ability. In Dinslage v. ARB Gaming, LLC (N.D. Cal.), the same Patrick Fechtmeyer submitted a declaration giving a single user's account-opening date to the day and that user's transaction figures to the dollar. RJN Ex. E ¶¶ 4–5. ARB's records are exact when ARB seeks to establish what a customer spent. The account-level record of what this Plaintiff saw and accepted — the record ARB's own Paragraph 9 says it keeps — is the one ARB did not file.

## III. THE CHECKBOX ARB CALLS ASSENT DOES NOT MATCH THE CONTRACT IT PURPORTS TO INCORPORATE — THOUGH ARB'S OWN PRACTICE ELSEWHERE IS THAT THEY MATCH

ARB's own exhibit contains a second mismatch, internal to this record. The checkbox (Fechtmeyer Decl., Ex. A) names seven States. The Terms ARB seeks to enforce (Fechtmeyer Decl., Ex. B) define "Excluded Territory" as thirteen States — a different set. Four of the seven States the checkbox names (Florida, Georgia, New York, and North Carolina) appear nowhere in those Terms. North Carolina appears once in all thirty-two pages of ECF 56-9 — on the face of the checkbox — and never in the Terms. A customer who checked that box acknowledged a roster of States that the contract ARB seeks to enforce does not contain, so the act ARB calls assent conveyed nothing about the Terms now before this Court.

That ARB's forms are meant to track the contracts they incorporate is shown by ARB's own practice. In Kowalok v. ARB Gaming, LLC (N.D. Ohio), the registration checkbox listed fifteen States, and the contemporaneous Terms ARB filed as operative — Section 3.4 — listed the same fifteen States as "Restricted Territories." RJN Exs. A–B. When ARB pairs a registration form with the contract it incorporates, the two lists correspond. In this Plaintiff's file, they do not. Whether an agreement to arbitrate was ever formed is a question the FAA reserves to this Court. (ECF 96 § IV.C.)

IV. IF ARB SUPPLIES ACCEPTANCE RECORDS FOR THE FIRST TIME ON REPLY, PLAINTIFF MUST BE HEARD ON THEM

ARB's motion and declaration contain no account-level acceptance record. Should ARB produce one for the first time in its reply — a click log, a timestamp, or the contemporaneous screen it has not produced in fourteen months — the Court may consider that new evidence only if Plaintiff is given an opportunity to respond. Provenz v. Miller, 102 F.3d 1478, 1483 (9th Cir. 1996); see El Pollo Loco, Inc. v. Hashim, 316 F.3d 1032, 1040 (9th Cir. 2003) (quoting the same rule). Plaintiff respectfully requests that, if ARB introduces such material with its reply, the Court either decline to consider it or permit Plaintiff a short surreply addressed to it.

V. IN THE ALTERNATIVE: IF ARBITRATION IS COMPELLED, DISMISSAL IS NOT AVAILABLE, AND THE RELIEF ARB SEEKS EXCEEDS WHAT IT SOUGHT ELSEWHERE

Plaintiff's position is that the motion should be denied for the reasons above and in the Opposition. If the Court were to compel arbitration — which it should not — the relief ARB requests could not be granted as framed. Sections 3 and 4 of the FAA authorize an order directing arbitration and a stay; where a party has requested a stay, they do not authorize dismissal. Smith v. Spizzirri, 601 U.S. 472, 478 (2024). ARB requested a stay in the alternative, and cited Spizzirri itself. (ECF 56-1 at 15.) Its lead request — to dismiss "this duplicative action" — is on that authority unavailable.

The relief ARB seeks here also exceeds what the same counsel sought from ARB's other courts. In Walker, on its motion to compel, ARB asked only for an order compelling individual arbitration and a stay of further proceedings; its request to dismiss rested on a separate Rule 12(b)(2) motion for lack of personal jurisdiction, not on the motion to compel. RJN Ex. D. ARB did the same in Kowalok, where its motion to compel states that "[c]ontemporaneous with this Motion to Compel, ARB has filed a Motion to Dismiss Plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(2)." RJN Ex. A. Here, ARB asks the motion to compel itself to dismiss the action as "duplicative" and to award $30,170 in sanctions. As to the claims of co-defendants who are not parties to ARB's agreement, and as to sanctions, Plaintiff rests on the Opposition. (ECF 96 §§ IV.B, IV.H.)

CONCLUSION

On its own sworn exhibits, ARB attributes to this Plaintiff a registration screen it swore, weeks earlier and weeks later, was a different screen — one that did not exclude his State. ARB has not proven that this Plaintiff manifested assent to the Terms it seeks to enforce. The motion should be denied. If the making of the agreement is in issue, Plaintiff renews his demand for trial by jury under 9 U.S.C. § 4. (ECF 96 § IV.F.)

Dated: August 3, 2026

Respectfully submitted,

Signed by:

*Matthew Joyce*
07B601B840D34AB

**Matthew Joyce**

Plaintiff, Pro Se


600 Market Grove Dr #100
Wake Forest, NC 27587-7345
Phone: (919) 259-4661
Email: m.joyce07@proton.me

Matthew Joyce
600 Market Grove Drive #100
Wake Forest, NC 27587-7345
(919) 259-4661
m.joyce07@proton.me
Plaintiff, Pro Se

August 3, 2026

Clerk of the Court
United States District Court
Eastern District of California
501 I Street
Sacramento, CA 95814

Re: **Joyce v. ARB Gaming LLC dba Modo.US, et al.**
Case No. 2:25-cv-01868-DJC-CSK (PS)
Filing: Plaintiff's Request for Leave to File a Supplemental Brief and Request for Judicial Notice
(ECF 56)

Dear Clerk of the Court:

Enclosed for filing, please find the following, submitted in this order:

1. Request for Leave to File a Supplemental Brief and Request for Judicial Notice;
2. [Proposed] Order Granting the Request;
3. Proposed Supplemental Submission (lodged; not to be filed unless leave is granted);
4. Proposed Request for Judicial Notice (same);
5. Index of Exhibits;
6. Proof of Service; and
7. Exhibits A through E.

The underlying motion is set for hearing **August 25, 2026 at 10:00 a.m.** by Zoom before
Magistrate Judge Chi Soo Kim; defendants' replies are due August 10, 2026 (ECF 98).

A copy of the [Proposed] Order is being submitted separately in Microsoft Word format to
CSKorders@caed.uscourts.gov, per Section VII.A of Judge Kim's Civil Standing Orders.

Kindly file the enclosed documents and return a file-stamped conformed copy to the courier
presenting this filing. I am proceeding pro se and filing by paper, consistent with the Court's
Minute Order at ECF No. 74.

Respectfully submitted,

Signed by:
*Matthew Joyce*
07B601B840D34AB...

**Matthew Joyce**
Plaintiff, Pro Se

1

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Michael Kowalok, | ) | CASE NO. 4:25-CV-02161 |
| | ) | |
| Plaintiff, | ) | JUDGE JOHN R. ADAMS |
| | ) | |
| vs. | ) | |
| | ) | |
| ARB Gaming, LLC d/b/a MODO, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ARB GAMING, LLC D/B/A MODO'S**
**MOTION TO COMPEL INDIVIDUAL ARBITRATION**

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), defendant ARB

Gaming, LLC d/b/a Modo ("ARB"), by and through its undersigned counsel, hereby move this

Court for an order compelling Michael Kowalok ("Plaintiff"), a customer of ARB, to submit his

claims against ARB to individual arbitration and stay any further litigation activity and deadlines

applicable until the completion of such arbitration. As grounds for this motion, ARB relies on its

contemporaneously filed Memorandum of Law in Support and supporting Declaration of William

Colello, ARB's Vice President of Player Operations.

Contemporaneous with this Motion to Compel, ARB has filed a Motion to Dismiss

Plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(2). Accordingly, ARB respectfully

requests that this Court dismiss Plaintiff's claims against it pursuant to Fed. R. Civ. P. 12(b)(2), or

alternatively, grant its Motion to Compel Arbitration and compel Plaintiff's claims to arbitration.

WHEREFORE, subject to the above order of review, ARB respectfully requests that this

Honorable Court enter an order compelling arbitration and staying all further litigation of

Plaintiff's claims against it until completion of the arbitration, and for such other and further relief that the Court deems just and equitable.

Dated: November 24, 2025

<div style="margin-left:40%">

*s/ Robert A. Zimmerman*
Robert A. Zimmerman (0055478)
Jaquan S. Williams (0100189)
**BENESCH, FRIEDLANDER, COPLAN & ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  rzimmerman@beneschlaw.com
          jawilliams@beneschlaw.com

**DUANE MORRIS LLP**
Walter A. Saurack (admitted pro hac vice)
22 Vanderbilt
335 Madison Ave. 23rd Floor
New York, NY 10017
Phone: 212-404-9200
Email: wasaurack@duanemorris.com

Gregory Bailey (pro hac vice application to follow)
201 S. Biscayne Boulevard, Suite 3400
Miami, FL 33131-4325
Phone: 305-960-2250
Email: gbailey@duanemorris.com

*Attorneys for ARB Gaming, LLC d/b/a MODO*

</div>

2

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT ARB GAMING, LLC D/B/A MODO'S MOTION TO COMPEL INDIVIDUAL ARBITRATION

### I. INTRODUCTION

Michael Kowalok ("Plaintiff"), a customer of defendant ARB Gaming, LLC d/b/a Modo ("ARB"), filed his putative class action Complaint on October 8, 2025, asserting four causes of action against ARB: (1) declaratory judgment that ARB's games are illegal under O.R.C. § 2915, *et seq.*; (2) recovery under the Ohio gambling loss recovery statute, O.R.C. § 3763, *et seq.* (the "Ohio Loss Recovery Act" or "LRA"); (3) violations of the Ohio Consumer Sales Practices Act, O.R.C. § 1345, *et seq.*; and (4) unjust enrichment. Compl. ¶¶ 108–53. Plaintiff's claims are subject to arbitration on an individual basis[1] because every Ohio customer of ARB's platform (modo.us, the "Platform")—including Plaintiff himself—affirmatively accepted and agreed to arbitrate individually through the Terms of Use (collectively, the "Terms"), each of which included a class action waiver and provision requiring ***arbitration of all past, pending, and future disputes***. *See* Declaration of William Colello in Support of Defendant ARB Gaming, LLC's Motion to Compel Arbitration ("Colello Decl.") ¶¶ 10, 17-19, 23, attaching Exhibit A (the relevant Terms).

Notably, Plaintiff does not dispute that he agreed to the Terms, but rather that the Terms (and the arbitration provision therein) are void under O.R.C. § 3763.02 and *Lester v. Buel*, 49 Ohio St. 240, 257 (1892) and/or that the Terms are unconscionable as an adhesion contract, without citing any additional support. Compl. ¶¶ 85–91. Neither argument is persuasive.

The rationale of *Lester* was tied to the unique context on the future prices of grain in the market—whose illegality, unlike the markedly different games at issue here, was beyond any

---

[1] ARB files this motion to compel arbitration concurrently with its motion to dismiss for lack of personal jurisdiction. ARB asks that the Court hear and decide this motion to compel Arbitration after it decides its motion to dismiss based upon lack of personal jurisdiction.

serious dispute because the legality of wagers on the rise and fall of prices of personal property where the property was not to be delivered had already been determined in Ohio. However, there has been no decision in Ohio that ARB's games—which do not require any money to play—are somehow illegal "gambling" such that the Terms, or any arbitration provision therein, are void.

The arbitration provisions are "valid[ and] irrevocable," 9 U.S.C. § 2, and must be "rigorously enforce[d] . . . according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Plaintiff, an actual user of the Platform, is obligated to arbitrate his dispute pursuant to the Terms. And, to allow Plaintiff to seek class representation of other users without regard to the Terms that apply to the other users themselves, would afford Plaintiff greater rights than the users who are also bound by the applicable Terms.

Notably, every court to have considered the exact question raised here found that identical statewide claims under the LRA were subject to arbitration on the same grounds raised herein. *See, e.g.*, *Deleon v. Sweepsteaks Limited*, No. 1:25-CV-11481 (D. Ma. Nov. 20, 2025) ("[T]he existence of the arbitration agreement is not in dispute here. The parties' disagreement involves a different issue – whether the arbitration clause itself is void. . . . Because the parties delegated issues of arbitrability to the arbitrator, the question of the validity of the arbitration agreement is to be resolved by the arbitrator."); *Kennedy v. VGW Holdings Ltd.*, No. 1:24-CV-2184-TWT, 2025 WL 1932750, at *5-6 (N.D. Ga. July 14, 2025) (compelling arbitration of class action plaintiff's claims against online gaming operator because she accepted the terms of use and arbitration provision); *Ambrosia v. Blazesoft, Ltd., et al.*, No. 1:25-cv-01723 (N.D. Ill., Oct. 21, 2025) (compelling arbitration for putative class because customers accepted the terms and any question of the arbitration agreement was delegated exclusively to the arbitrator); *Bishoy Nessim v. Fliff, Inc.*, No. 5:23-cv-01048-SSS-SHK, 2024 WL 1600649, at *19-20 (C.D. Cal. Jan. 5, 2024)

2

(granting motion to compel arbitration for gaming defendant and finding whether defendant's operations constitute illegal gambling goes to the legality of the contract as a whole, not to the validity of the arbitration clause specifically, and therefore is a question for the arbitrator).

For the reasons stated in this Memorandum, ARB respectfully requests that the Court compel arbitration and dismiss or stay this matter pending arbitration.

## II.     STATEMENT OF FACTS

### A.     The Parties and Claims

ARB offers customers the ability to access its free-to-play online social gaming platform designed solely for amusement and entertainment through the Platform, accessible at the following URL: modo.us. Colello Decl. ¶ 6. The Platform does not provide any essential or critical service, rather its users voluntarily choose whether to participate, and its users are free to stop playing at any time without consequence. The Terms, which includes an arbitration clause, present users with clear, straightforward terms governing their use of the platform. Courts have repeatedly enforced arbitration agreements in voluntary online-service contexts, including gaming platforms. *See, e.g., Ranazzi v. Amazon.com*, 2015-Ohio-4411, ¶¶ 11-14 (6th Dist.) (finding plaintiff manifested assent to arbitration provisions in terms where plaintiff clicked on an "I agree" button when registering for an Amazon account and placing orders); *Rudolph v. Wright Patt Credit Union*, 2021-Ohio-2215, ¶¶ 54-58 (2d Dist.) (rejecting plaintiff's argument that he lacked constructive notice of the arbitration terms because they were sufficiently conspicuous, akin to a clickwrap agreement); *Campinha-Bacote v. AT&T Corp.*, 2017-Ohio-5608, ¶¶ 14-15 (10th Dist.) (affirming grant of motion to stay pending arbitration because plaintiff had assented to terms through clickwrap process); *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1032 (9th Cir. 2016) (enforcing arbitration agreement for voluntary online service); *Lag Shot LLC v. Facebook, Inc.*, No. 21-CV-01495-JST,

3

2021 WL 2660433, at *4–5 (N.D. Cal. June 25, 2021) (finding online agreement not unconscionable where users could freely decline service).

Plaintiff is an Ohio resident who played ARB's games and now seeks to represent a putative class of Ohio residents who allegedly played and lost money on ARB's games. Compl. ¶¶ 92-107. His allegations against ARB in this case arise from his use of the Platform. *Id.* ¶ 92-96. The Complaint seeks declaratory relief under O.R.C. § 2915, *et seq.*, Compl. ¶¶ 108–14; recovery under the LRA, Compl. ¶¶ 115–30; for alleged violations of the Ohio Consumer Sales Practices Act, O.R.C. § 1345, *et seq.*, Compl. ¶¶ 131–48; and, unjust enrichment, Compl. ¶¶ 149–53. These claims arise directly from the services provided by ARB that Plaintiff used and the Terms he accepted when registering his account before playing any games.

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), arbitration agreements are valid, irrevocable, and enforceable. 9 U.S.C. §§ 2-4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). And because Plaintiff's claims fall within the scope of the arbitration agreement, and because any challenges to enforceability must be decided by the arbitrator under the delegation clause, the Court should compel arbitration and stay this case pending its outcome. *Swiger v. Rosette*, 989 F.3d 501, 506 (6th Cir. 2021) (express delegation clause and incorporation of arbitration rules "clearly and unmistakably show[] that the parties agreed to arbitrate issues of arbitrability"); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 852 (6th Cir. 2020) ("It's not about the ***merits*** of the case. It's not even about ***whether*** the parties have to arbitrate the merits. Instead, it's about ***who should decide*** whether the parties have to arbitrate the merits." (emphasis in original)).

### B.   All Users of the Platform Agreed to the Terms and Arbitration Provisions

At all relevant times hereto, ARB required all users to first create a user account and register with the Platform prior to accessing, using, or playing any games on it. Colello Decl. ¶¶ 7-

4

10. The Platform also required all users to agree to and accept the then-applicable Terms, each of which included an arbitration provision during the relevant period. *Id.* ¶¶ 7-10, 15, 23.

A new user who wished to access the Platform must have affirmatively accepted and agreed to the Terms. *Id.* ¶¶ 7-9, 14, 29. In order to use the Platform or make any purchases in Ohio, all users were required by the programming and operation of the Platform to first create a user account and register with the Platform. *Id.* In order to access any of the games, all users were and are required to accept and agree to the Terms. *Id.* Acceptance of the Terms is and was accomplished by checking a box next to a statement that included the language "I agree with the Terms of Service and Sweepstakes Rules," prior to the confirmation of completion of the sign-up process. *Id.* ¶¶ 10-13. The statement is directly above a greyed-out button saying "Submit," and within the statement the hyperlinks to the "Terms of Service," and "Sweepstakes Rules" are bolded and in bright blue font against a dark background. *Id.* ¶¶ 10-13.

All of these features are reflected in the example screenshot below:



*Id.* ¶ 11 (**Figure 1**). In addition to requiring new users to accept the then-applicable Terms at the time of registration, from time-to-time the Terms were amended. *Id.* ¶¶ 14-18. After every

amendment to the Terms during the relevant period, every Platform user was required to re-agree to the amended Terms as a condition of continued use of the Platform and its services, upon their next login to or access of the Platform. *Id.*

When users accessed the Terms, all versions included a notice of the arbitration provision at the beginning. *Id.* ¶¶ 20-23. As a customer himself, Plaintiff created a customer account and registered with ARB prior to playing any games. *Id.* ¶¶ 17-19. Pursuant to the amendments to the Terms, Plaintiff accepted and re-agreed to the then-applicable Terms in place as a condition of continued use. *Id.* ¶¶ 18-19. The most recent version of the Terms that Plaintiff accepted and agreed to was the Terms dated August 4, 2025 (hereafter, the "August 2025 Terms"). *See id.* ¶ 19.

Importantly, the August 2025 Terms required arbitration of all disputes subject to application of the Judicial Arbitration and Mediation Services, Inc. ("JAMS") rules, *id.* ¶ 24; Ex. A, § 17.10, and required that questions of arbitrability, enforceability, and validity be determined by an arbitrator, *id.* ¶ 21; Ex. A, § 17.2 ("You and MODO agree that any ***past, pending or future dispute, claim or controversy*** . . . (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability or arbitrability of this Agreement or the Terms of Use) . . . shall be determined by arbitration") (emphasis added). Likewise, pursuant to the August 2025 Terms, ARB and its customers agreed to arbitrate disputes on an individual basis and waived their rights to a trial by jury. *Id.* ¶¶ 23-25; Ex. A, §§ 17.16 ("You may only arbitrate or litigate on an individual claims basis only and for your own losses only."), 18 ("Waiver of Jury Trial"). Additionally, pursuant to the August 2025 Terms, ARB's customers also unconditionally waived their rights at least to bring, participate in, or recover relief from any class, collective, or other representative action. *Id.* ¶¶ 23, 26-27; Ex. A, § 17.16.

6

Again, all versions of the Terms during the relevant time period required arbitration of all disputes subject to application of AAA or JAMS Rules, and included an opt out provision. *Id.* ¶¶ 22-23, 26 (affirming unattached versions contained similar provisions).  Though the exact language of each version of the Terms in effect during the relevant time period may have varied, each such version of the Terms contained: (1) an arbitration agreement wherein the parties agreed to arbitrate disputes on an individual basis and waived their rights to a trial by jury; (2) an opt out provision; and, (3) a waiver to bring, participate in, or recover relief from any class, collective, or other representative action. *Id.* ¶ 20, 25.; *id.* ¶¶ 22-23, 26 (affirming unattached versions contained similar provisions). Therefore, Plaintiff and all users who made purchases through the Platform, would have had to agree to be bound by all versions of the Terms, including the class action waiver provision and arbitration agreement. *Id.* ¶¶ 20, 23.

Accordingly, all claims by the Platform users—including Plaintiff's claims—by agreement to the Terms, are mutually subject to mandatory and binding arbitration. *Id.* ¶ 31.

## III.    ARGUMENT

### A.    Legal Standard

The FAA applies to (1) "written [arbitration] provision[s]" (2) "evidencing a transaction involving commerce." 9 U.S.C. § 2. The FAA covers interstate commerce and intrastate commerce that would, "in the aggregate," have a "substantial effect on interstate commerce." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003). The arbitration provision in the Terms is in writing, and the Platform permits online gaming, which are "transaction[s] involving interstate commerce." *See, e.g., United States v. Carroll*, 105 F.3d 740, 742 (1st Cir. 1997) ("Transmission of photographs by means of the Internet is tantamount to moving . . . across state lines and thus constitutes . . . interstate commerce."); *United States v. McEwan*, 445 F.3d 237, 245 (3rd Cir. 2006) ("[T]he Internet is an instrumentality and channel of interstate commerce[.]"). Furthermore,

7

ARB is not located in Ohio, so any alleged transactions involving the Platform and residents of Ohio must be interstate. Thus, the FAA applies to the transactions at issue.

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 344-46 (2011), and requires courts to compel arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue., 9 U.S.C. § 4; *see also Am. Express Co.,* 570 U.S. 228, 233 (2013) ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms[.]" (internal citations omitted)). This policy extends to individualized arbitration proceedings. *Epic Sys. Corp. v. Lewis,* 138 S. Ct. 1612, 1619 (2018). When a contract contains an arbitration clause, there is a presumption of arbitrability, and "only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986). Any doubts concerning the scope of arbitrable issues are to be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24–25 (1983). "[The FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement" applies. *Dean Witter Reynolds,* 470 U.S. at 218 (emphasis in original). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.,* 460 U.S. at 24–25.

Thus, once this Court finds a valid written agreement to arbitrate, the Court must compel arbitration upon an application therefor.

**B.      Users of the Platform Agreed to the Mandatory Arbitration Provisions**

As indicated above, customers/users, including Plaintiff, cannot register, use, or access the Platform without clicking a checkbox to indicate that they agree to the Terms when first registering

8

and subsequently re-agreeing to the then-applicable Terms. Colello Decl. ¶¶ 7-10. The Terms are prominently hyperlinked next to the checkbox—they are bolded and in bright blue font against a dark background. *Id.* ¶¶ 11-12. Despite Plaintiff's attempts to paint the Terms as an unconscionable adhesion contract, Compl. ¶ 89, the Terms are typical and enforceable "clickwrap" agreements. "Clickwrap is a . . . term for agreements requiring a computer user to 'consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with [a] . . . transaction.'" *TruLogic, Inc. v. Gen. Elec. Co.*, 2021-Ohio-2860, ¶ 38 (2d Dist.) (alterations in original) (quoting *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1255 (10th Cir. 2012)).

Courts in the Sixth Circuit, Ohio courts, and elsewhere routinely grant motions to compel arbitration where the plaintiff-user agreed to online terms of service, including an arbitration clause, under signup flows materially identical to ARB's and found such clickwrap agreements sufficient to provide notice of terms of use. *See, e.g., Adelstein v. Walmart Inc.*, 728 F. Supp. 3d 762, 768 (N.D. Ohio 2024) (granting Defendant's motion to compel arbitration where the terms in the clickwrap agreement were reasonably communicated to the plaintiff); *Ranazzi*, 2015-Ohio-4411, ¶¶ 11-14 (6th Dist.) (finding plaintiff manifested assent to arbitration provisions by clicking on an "I agree" button when registering for an Amazon account and placing orders); *Rudolph*, 2021-Ohio-2215, ¶¶ 54-58 (2d Dist.) (rejecting plaintiff's argument that he lacked constructive notice of the arbitration terms because they were sufficiently conspicuous, akin to a clickwrap agreement); *Campinha-Bacote*, 2017-Ohio-5608, ¶¶ 14-15 (10th Dist.) (affirming grant of motion to stay pending arbitration because plaintiff had assented to terms through clickwrap process).

Similarly, here, the Platform users had reasonable notice of the Terms, including the arbitration provisions. *Ranazzi*, 2015-Ohio-4411, ¶¶ 11-14; *Rudolph*, 2021-Ohio-2215, ¶¶ 54-58; *Campinha-Bacote*, 2017-Ohio-5608, ¶¶ 14-15. ARB customers acknowledged and agreed to the

9

Terms by clicking the checkbox above to the "Submit" button. Plaintiff's inability to negotiate the Terms and that he could not have used ARB's Platform without agreeing to the Terms is irrelevant. Nor does it matter that no independent signature was required to assent to the arbitration provision. *See, e.g.*, *Reed v. Best Buy Warehousing Logistics, LLCs*, 625 F. Supp. 3d 662, 666 (N.D. Ohio 2022) ("[P]laintiff gives no reason why her checking a box stating 'I Agree' cannot be considered an electronic signature, manifesting her assent to be bound.").

Accepting Plaintiff's interpretation would require the Court to find that no clickwrap agreements—*e.g.*, cellphone agreements, agreements for web services, etc.—could ever be enforceable, which is ludicrous.[2] Therefore, ARB's Terms—which Plaintiff agreed to—are enforceable clickwrap agreements.

## C.    The Terms Delegated Questions of Arbitrability to the Arbitrator

The FAA creates a strong, liberal policy in favor of arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475–76 (1989). The FAA's heavy presumption in favor of arbitrability requires courts to resolve all doubt as to the scope of arbitrable issues in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24; *Morrison v. Circuit City Stores, Inc.*, 317 F.3d 646, 675 (6th Cir. 2003) ("Supreme Court precedent dictates that we resolve any doubts as to arbitrability 'in favor of arbitration.'").

"[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also "'gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate

---

[2] Further, the contract at issue here is for "nonessential recreational activity", which other courts examining similar platform terms have found minimal procedural unconscionability. *See, e.g., Nessim*, 2024 WL 1600649 (order granting motion to compel arbitration for gaming operator because applicable arbitration clause delegated questions to the arbitrator).

10

or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019); *see also In re: Automotive Parts Antitrust Litigation*, 951 F.3d 377, 381–82 (6th Cir. 2020) (finding gateway questions of arbitrability delegated to an arbitrator). Additionally, the Sixth Circuit has noted that "district courts in our circuit have long found that the incorporation of the [arbitration] Rules provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'" *Blanton*, 962 F.3d at 942; *see also McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019). Where parties have clearly and unmistakably shown intent to delegate issues of arbitrability to the arbitrator, issues of arbitrability are for an arbitrator to determine absent a question as to the validity of the arbitration agreement itself. *See Swiger*, 989 F.3d at 506 (express delegation clause and incorporation of arbitration rules "clearly and unmistakably show[] that the parties agreed to arbitrate issues of arbitrability").

Here, the August 2025 Terms—the last version that Plaintiff agreed to, Colello Decl. ¶ 19—delegated questions of arbitrability to the arbitrator. *Id.* ¶ 21; Ex. A, § 17.2 ("any past, pending, or future dispute . . . shall be determined by arbitration"). That is clear and unmistakable evidence that the parties intended for the issue of arbitration to be arbitrated.

Further evidence that the arbitration provision delegates substantive arbitrability to the arbitrator lies in the fact that the August 2025 Terms required adherence to JAMS rules. *Id.* ¶ 24; Ex. A, § 17.10. JAMS rules expressly provide that issues of jurisdiction and arbitrability shall be submitted to and ruled on by the arbitrator. (June 1, 2021), https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-8. Incorporation of arbitral rules—such as JAMS rules—into an arbitration agreement is independently sufficient to delegate all questions of arbitrability to the arbitrator ***as a matter of law***. *See Swiger*, 989 F.3d at 506 (express delegation clause and incorporation of arbitration rules "clearly and unmistakably show[] that the parties agreed to

11

arbitrate issues of arbitrability"); *Blanton*, 962 F.3d at 845-46) (finding incorporation of arbitral rules "provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'").

Under these circumstances, this Court should enforce the delegation clause within the Terms and compel Plaintiff to proceed with his case in arbitration.

### D. The Class Action Waiver Is Enforceable

Both the Supreme Court and courts in this Circuit have held that arbitration agreements precluding class action relief are valid and enforceable. *Am. Express Co.*, 570 U.S. at 236–39; *Credit Acceptance Corp. v. Davisson*, 644 F. Supp. 2d 948, 959 (N.D. Ohio 2009) (finding an arbitration agreement's class action waiver is enforceable consistent with the FAA and Ohio's public policy); *Howard v. Wells Fargo Minnesota, NA*, No. 1:06CV2821, 2007 WL 2778664, at *4 (N.D. Ohio Sept. 21, 2007) (finding that a class action waiver in the arbitration agreement was enforceable because plaintiff was still able to vindicate her rights and was "only limited to the forum in which she may establish her right to relief."). This is because a class action waiver "does not constitute the elimination of the right to pursue [a] remedy" but rather "merely limits arbitration to the two contracting parties." *Am. Exp. Co.*, 570 U.S. at 236.

Plaintiff agreed to the August 2025 Terms, which included both a class action waiver and required that customers arbitrate their claims on an individual basis. Colello Decl. ¶¶ 20, 23, 26-28; Ex. A, §§ 17, 17.16. There is nothing substantively unconscionable about the class action waiver. *Am. Exp. Co.*, 570 U.S. at 236–39; *Pleasants v. Am. Exp. Co.*, 541 F.3d 853, 857–59 (8th Cir. 2008).

Therefore, by agreeing to the August 2025 Terms, and the class action waiver therein, Plaintiff should be required to arbitrate his claim on an individual non-class action basis.

12

### E.     Questions of "Voidness" Are Delegated to the Arbitrator

Plaintiff's reliance on *Lester* to argue that the Terms are void is misplaced.  Compl. ¶¶ 88, 138.  *Lester*, a case from 1892, dealt with individuals who were entering contracts, containing no arbitration provisions, to buy and sell grain with the intent to speculate in the rise or fall of prices in the grain market in Chicago. 46 Ohio. St. at 250-51. The parties would pay or receive the difference between the contract price and market price of the goods at the time for delivery, without delivering any goods, making it a gambling contract that was void under the statute.  *Id*. at 253. That is not the case here.  Further, allowing Plaintiff to circumvent the Terms and ARB's arbitration provision, would be incompatible with Ohio and U.S. Supreme Court precedents requiring the issue of the contract's validity to be considered by the arbitrator in the first instance. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445–46 (2005); *Rudolph*, 2021-Ohio-2215, ¶¶ 54-58 (2d Dist.); *Campinha-Bacote*, 2017-Ohio-5608, ¶¶ 14-15 (10th Dist.).  The language of the arbitration agreements and governing caselaw therefore unambiguously require Plaintiff to arbitrate not only the merits of his request for recovery, but also his threshold argument that the Terms are void.  *See Buckeye Check Cashing*, 546 U.S. at 446; *In re: Automotive Parts Antitrust Litigation*, 951 F.3d at 381–82.

Any question about whether the Terms are void because they effectuate illegal gambling are to be resolved by the arbitrator, not the Court.  Unless Plaintiff is challenging the validity of the arbitration clause itself—he is not, *see* Compl. ¶ 88 ("[T]he *entire* contract is void . . . .")—the FAA requires any issue of the contract's validity as a whole to be considered by the arbitrator in the first instance. *See, e.g., Buckeye Check Cashing*, 546 U.S. at 445–46).  There is no plausible argument here that ARB's customers, including Plaintiff, did not enter into the Terms, nor does Plaintiff allege as such.  The issue of validity of the Terms is for the arbitrator to decide.

13

Plaintiff's claims are subject to arbitration particularly in light of the fact that he agreed to the Terms. To hold otherwise would allow Plaintiff to have it both ways—*i.e.*, adopting and advancing the claims for himself and of users while simultaneously shirking the obligations and limitations governing those other users' claims. *See Cleveland-Akron-Canton Advert. Coop. v. Physician's Weight Loss Ctrs. of Am., Inc.*, 2009-Ohio-5699, ¶ 20 (8th Dist.) ("Once the third-party beneficiary has accepted the benefit of the contract, it can receive no greater rights from the contract than those possessed by the signatories."). Courts facing similar LRA claims in other states have likewise compelled arbitration for the customer seeking to represent a class. *See Sweepsteaks Limited*, No. 1:25-CV-11481, at *4 (compelling arbitration of plaintiffs' class action claims because of express delegation clause); *Kennedy*, 2025 WL 1932750, at *5-6 (compelling arbitration of plaintiff's class action claims against online gaming operator because she accepted the terms of use and arbitration provision); *Ambrosia*, Case No. 1:25-cv-01723 (same); *Nessim*, 2024 WL 1600649 (same in context of injunction action of gaming operator).

Therefore, the Terms are not void, and Plaintiff's claims are subject to arbitration.

**F.     Plaintiff's Claims Are Within the Scope of Arbitration**

There can be no question that if another ARB customer brought claims for declaratory judgment, under the LRA, the Ohio Consumer Sales Practices Act, or common law unjust enrichment, that such claims would be within the scope of arbitration. The August 2025 Terms included an arbitration provision requiring arbitration of "any past, pending or future dispute, claim or controversy arising out of or relating to any purchase or transaction by [the customer], [the customer's] access to or use of any Platform or the Service, or to this Agreement. . . ." Colello Decl. ¶ 21, Ex. A, § 17.2. Such claims fall squarely within the scope of the arbitration provision, as it "aris[es] out of or relat[es] to [] purchase[s] or transaction[s]" made using or on ARB's Platform. Colello Decl. ¶ 21, Ex. A, § 17.2; *see generally* Compl. ¶¶ 38, 129, 131-48.

14

Even if there were any doubts—which there are none—as to whether a user's claim falls within the scope of arbitration, this Court must resolve those doubts in favor of arbitration. *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25 ("[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration[.]"); *W. Branch Loc. Sch. Dist. Bd. of Educ. v. W. Branch Educ. Ass'n*, 2015-Ohio-2753, ¶ 28 (7th Dist.) ("The law in Ohio is clear that arbitration is favored and any doubts in the applicability of a given provision should be resolved in favor of arbitration.").

Thus, Plaintiff's claims all fall within the scope of the arbitration provision.

## IV.    CONCLUSION

For the foregoing reasons, this Court should compel arbitration of Plaintiff's claims on an individual basis in accordance with the arbitration provisions in the August 2025 Terms of ARB's Terms and stay further proceedings pending the completion of such arbitration.

15

Dated: November 24, 2025

*s/ Robert A. Zimmerman*
Robert A. Zimmerman (0055478)
Jaquan S. Williams (0100189)
**BENESCH, FRIEDLANDER, COPLAN &
ARONOFF LLP**
127 Public Square, Suite 4900
Cleveland, Ohio 44114
Telephone:  216.363.4500
Facsimile:  216.363.4588
Email:  rzimmerman@beneschlaw.com
            jawilliams@beneschlaw.com

**DUANE MORRIS LLP**
Walter A. Saurack (admitted pro hac vice)
22 Vanderbilt
335 Madison Ave. 23rd Floor
New York, NY 10017
Phone: 212-404-9200
Email: wasaurack@duanemorris.com

Gregory Bailey (pro hac vice application to
follow)
201 S. Biscayne Boulevard, Suite 3400
Miami, FL 33131-4325
Phone: 305-960-2250
Email: gbailey@duanemorris.com

*Attorneys for ARB Gaming, LLC d/b/a MODO*

## CERTIFICATION OF COUNSEL

Pursuant to Local Rule 7.1(f), undersigned counsel hereby certifies that this memorandum complies with the page limitation for standard track cases, such limitation applying in the absence of any track designation for this case.

*/s/ Robert A. Zimmerman*
One of the Attorneys for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 24, 2025, I electronically filed the above document with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to all registered counsel.

_/s/ Robert A. Zimmerman_____
One of the Attorneys for Defendant

# EXHIBIT B

# TERMS OF USE

**IMPORTANT NOTICE: These Terms of Use have been updated as of August 4, 2025, and shall supersede and replace all prior Terms of Use.**

**These Terms of Use ("the Terms" or "TOU") and the Arbitration Agreement (see Section 16) form binding agreements between you ("You," or "User,") and ARB Gaming, LLC d/b/a Modo.us ("Modo," the "Company," "Us, or "We") which provide all of the terms and conditions governing Your access and use of www.modo.us and any related applications (the "Website," "Site," or "Platform") as well as Your creation of Your Modo user account ("User Account"), use of the games, promotions or contests (collectively or individually, "Games") on the Site, and any transactions or dealings with Us in any way (collectively, the "Service").**

***IMPORTANT NOTICES*:**

**THIS WEBSITE AND THE SERVICES PROVIDED HEREIN DO NOT OFFER "REAL MONEY GAMBLING."  NO ACTUAL MONEY IS REQUIRED TO PLAY, AND THE SERVICE IS INTENDED FOR ENTERTAINMENT PURPOSES ONLY.**

**THESE TERMS OF USE INCLUDE AN ARBITRATION AND CLASS ACTION WAIVER AGREEMENT WHICH REQUIRES THAT ANY PAST, PENDING, OR FUTURE DISPUTES BETWEEN YOU AND US SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION ON AN INDIVIDUAL BASIS ONLY AND FOR YOUR OWN LOSSES ONLY. YOU MAY NOT PROCEED AS A CLASS REPRESENTATIVE, MEMBER OR PART OF ANY PROPOSED CLASS, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL SUIT, QUI TAM ACTION OR ANY REPRESENTATIVE PROCEEDING, OR OTHERWISE SEEK TO RECOVER ON BEHALF OF OTHERS OR FOR THE BENEFIT OF OTHERS IN ANY TYPE OF CLAIM OR ACTION. ARBITRATION MEANS YOU WILL NOT BE ABLE TO SEEK DAMAGES IN COURT OR PRESENT YOUR CASE TO A JURY, UNLESS OTHERWISE PERMITTED BY THESE TERMS.**

**OPT-OUT. IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION ON A RETROACTIVE BASIS AND AS TO ANY FUTURE CLAIMS, *AND* YOU HAVE *NOT* PREVIOUSLY AGREED TO AN ARBITRATION PROVISION WITH US IN CONNECTION WITH YOUR USE OF OUR SERVICES, YOU MAY OPT OUT OF THE ARBITRATION AGREEMENT WITHIN THIRTY (30) DAYS OF ENTERING THIS AGREEMENT BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE "BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER" – SEE SECTION 16 OF THESE TERMS, BELOW. OPT-OUT REQUESTS SENT AFTER THE THIRTY (30) DAY PERIOD SHALL BE NULL AND VOID.  EVEN IF YOU OPT OUT OF THE ARBITRATION AGREEMENT IN SECTION 16, ALL OTHER REMAINING SECTIONS OF THESE TERMS APPLY.**

**PLEASE READ THE FOLLOWING TERMS OF USE, THE ARBITRATION AGREEMENT AND CLASS ACTION WAIVER (SEE SECTION 16 BELOW), AND THE**

**MODO <u>PRIVACY POLICY</u> CAREFULLY BEFORE USING THE SERVICES OFFERED IN CONNECTION WITH ANY MODO SERVICES OR WEBSITE OR APPLICATION. YOU AGREE THAT YOUR CONTINUED USE OR ACCESS OF THE SITE OR SERVICES SHALL BE SUBJECT TO THESE TERMS OF USE, WHICH FURTHER INCORPORATE AND INCLUDE THE <u>PRIVACY POLICY</u>, THE <u>PLAYER SAFETY POLICY</u>, AND ANY OTHER POLICIES THAT EXPRESSLY INCORPORATE THESE TERMS (COLLECTIVELY, "INCORPORATED POLICIES").**

**IT IS AN EXPRESS CONDITION OF THIS AGREEMENT THAT ANY CLAIMS YOU MAY HAVE AGAINST MODO ARISING FROM ANY PAST, PRESENT OR FUTURE USE OF TRACKING SOFTWARE, INCLUDING BUT NOT LIMITED TO USE OF A META PIXEL, "COOKIES," "GET REQUESTS" OR JAVASCRIPT IN HTML CODE OF THE COMPANY'S WEBSITE THAT INTERCEPTS, TRACKS, STORES, AND ANALYZES YOUR INTERACTIONS WITH THE COMPANY'S WEBSITE FOR PURPOSES OF OBTAINING DATA OR TARGETED ADVERTISEMENT ARE HEREBY FULLY WAIVED, RELEASED AND COMPROMISED.  MODO SHALL HAVE NO LIABILITY TO YOU FOR ANY PAST, PRESENT OR FUTURE CLAIMS ARISING OUT OF OR RELATED TO THE USE OF TRACKING TECHNOLOGY.**

**Acceptance of Terms.** You represent and warrant that You have the right, authority, and capacity to accept these Terms and to abide by them, that You are of legal age and that You have fully read and understood the Terms. You must read these Terms carefully in their entirety **before checking the box for acceptance of these Terms**. By using, or otherwise accessing the Service, or clicking to accept or agree where that option is made available, You confirm that you have read and agree to these Terms. If you do not agree to these Terms, then you may not access or use the Platform or Service. All of your activity on the Website or Platform and all or your transactions with Modo, including all events which occurred before your acceptance of these Terms, shall be subject to these Terms.

The Service is not sponsored, endorsed, or administered by, or associated with Apple®, Facebook® or Google®. You understand that you are providing your information to Modo only and not to Apple®, Facebook® or Google®.

## 1.    Changes to Terms of Use and Incorporated Policies

1.1    From time to time, We may modify or amend these Terms. If We do so, any such modifications or changes shall be reflected in the TOU or Incorporated Policies, as applicable, on the Site. We may also, but shall not be required to, notify You by email regarding any material changes to the TOU or Incorporated Policies. Whether You receive or review such notifications, You agree that You will be bound by any such changes and that it shall be Your responsibility to check the Terms Of Use, including the Incorporated Policies, as posted on the Site prior to accessing the Site or partaking in any Service. Your further use of the Service after any changes are posted shall constitute further consent and agreement to the terms as changed or amended.

1.2    From time to time, We may also modify or amend any of the Incorporated Policies. If we do so, any such modifications or changes shall be reflected in the Incorporated Policies as posted on the Site. You agree that You will be bound by any such changes and that it

shall be Your responsibility to check the Incorporated Policies as posted on the Site prior to accessing the Site or partaking in any Service. Your further use of the Service after any changes are posted shall constitute further consent and agreement to the Incorporated Policies as changed or amended.

**1.3** If You have any questions about these Terms or the Incorporated Policies, please contact customer support at support@modo.us.

**1.4** In the event of any conflict between the Terms and the Incorporated Policies, the Terms shall control.

**2.** **Limited Revocable License (the "License")**

**2.1** Virtual Coins. The Service includes a License (as defined below) to You to use virtual tokens to play all Games on the Site, including, but not limited to, chips, coins, credits, or points (collectively, "Virtual Coins"), that may be provided for use on the Platform. No matter the reference or format of the Games, Virtual Coins are non-transferrable and may be used subject to the License only. With the exception of "no purchase necessary" promotional contests or giveaways, there is no opportunity for a User on the Platform to win real-money or any prize while playing the Games, regardless of whether any purchase was made at any point by the User.

**2.2** The License. Subject to Your agreement and continuing compliance with these Terms, we grant You a limited, personal, non-exclusive, non-transferable, non-sublicensable, revocable, license to access and use the Service, Games and Virtual Coins solely for Your personal, private entertainment on the Platform and for no other reason (the "License"). Other than this limited, personal, revocable, non-transferable, non-sublicensable License to use the Virtual Coins with the Service, You have no right or title in or to any such Virtual Coins appearing or originating with the Service, or any other attributes associated with use of the Service or stored within the Service. You acknowledge and agree that Your License to use the Service is limited by these Terms and if You do not agree to, or act in contravention of, these Terms, Your License to use the Service may be immediately terminated. We have the absolute right to manage, regulate, control, modify and/or eliminate such Virtual Coins as it sees fit in its sole discretion to the extent legally permissible, and We shall have no liability to You or anyone for the exercise of such rights.

**2.3** No Right to Sell or Assign. The transfer or sale of Virtual Coins by You to any other person is strictly prohibited. You may NOT sell or assign Your User Account to any other person under any circumstances. Any attempt to do so is in violation of these Terms, will result in in closure and forfeiture of the User Account, and may result in a lifetime ban from the Service and possible legal action.

**2.4** No Purchase Required. No purchase is required to set up a User Account or play Games. The Platform is committed to at all times providing additional access to Virtual Coins or otherwise to free-to-play Games to Users who deplete their balance of Virtual Coins. While it is never required to make any purchase in order to play the Games, Users may, subject to the License, increase the number of certain Virtual Coins they may access for licensed use on the Platform only, increase the variety of available Games, and remove advertisements by making a

purchase. You understand and agree that any purchases are final and that We are not required to provide a refund for any reason. Virtual Coins are non-transferrable, and carry no cash value. All Virtual Coins under this License are forfeited if Your User Account is terminated or suspended for any reason, in our sole and absolute discretion or if the Services are no longer available. To the extent legally permissible, if Your User Account, or a particular subscription for the Service associated with Your User Account, is terminated, suspended and/or if any Virtual Coins are selectively removed or revoked by Us from Your User Account, no refund will be granted, and no Virtual Coins will be credited to You or converted to cash or other forms of reimbursement.

**2.5** These Terms do not grant You any right, title or property or ownership interest in the Service or any Virtual Coins.

**2.6** This Service is licensed, not sold, to You. You agree that we and our own licensors own all rights, title and interest in and to the Service, including all intellectual property rights therein as further specified below in Section 9, and that we retain ownership of the Service even after any installation on Your device. You agree not to delete or in any manner alter the copyright, trademark or other proprietary rights notices or markings which may appear on the Service.

**2.7** Except as identified and specified in these Terms, You agree not to:

**2.7.1** sell, rent, distribute, transfer, license, sub-license, lend or otherwise assign any rights of any part of the Service to any third party;

**2.7.2** copy, modify, create derivative works of the Service (including but not limited to any software that forms part of the Service), including, without limitation, making adaptations or modifications to the Service;

**2.7.3** reproduce the Service or any part in any form or by any means;

**2.7.4** exploit the Service in any unauthorized way whatsoever, including without limitation, by trespass or burdening network capacity;

**2.7.5** disassemble, decompile, reverse engineer, or attempt to derive the source code of the Service, in whole or in part, or permit or authorize a third party to do so, except to the extent such activities are expressly permitted by law;

**2.7.6** make the Service available to multiple users by any means, including by uploading the Service to a file-sharing service or other type of hosting service or by otherwise making the Service available over a network where it could be used by multiple devices at the same time;

**2.7.7** misrepresent the source of ownership of the Service;

**2.7.8** scrape, build databases or otherwise create permanent copies of any content derived from the Service; or

4

**2.7.9** use the Service in any manner to harass, abuse, stalk, threaten, defame or otherwise infringe or violate the rights of any other party.

## 3. Eligibility

Your eligibility for continued use of the Service is contingent on Your ongoing compliance with these Terms, in particular:

**3.1** You are over 21 years of age at the time of accessing or using the Service and are, under the laws of the jurisdiction(s) applicable to You, legally allowed to participate in the Games and access the Service;

**3.2** You understand and accept that we are unable to provide You with any legal advice or assurances and that it is Your sole responsibility to ensure that at all times You comply with the laws that govern You and that You have the complete legal right to use the Service;

**3.3** You will monitor Your User Account and ensure that no child or person under the age of 21 can access the Service using Your User Account. You accept full responsibility for any unauthorized use of the Service by minors and You acknowledge that You are responsible for any use of the Service, including use of Your credit card or other payment instrument by minors;

**3.4** You do not access the Games or Service from the states of Arizona, Connecticut, Delaware, Idaho, Louisiana, Maryland, Michigan, Montana, Nevada, New Jersey, New York Pennsylvania, Rhode Island, Washington, or West Virginia or any jurisdiction outside the United States or as otherwise posted within these Terms or on the Platform (the "Restricted Territories");

**3.5** You participate in the Games strictly in Your personal capacity for recreational and entertainment purposes only;

**3.6** You further represent and warrant that all information you supply to Us is complete and accurate. Knowingly submitting incomplete or inaccurate information may result in immediate termination of Your User Account, revocation of any License from Us, and any further participation or access to the Service, at Modo's sole discretion, to the extent legally permissible;

**3.7** You will not be involved in any fraudulent or other unlawful activity in relation to Your participation in any of the Games and You will not use any software-assisted methods or techniques (including but not limited to "bots" designed to play automatically) for Your participation in any of the Games. We reserve the right to invalidate any participation in the event of such behavior;

**3.8** If, in the reasonable opinion of Modo, we form the view that a player is abusing any promotion, to derive any advantage or gain for themselves or another player, including by way of fraudulent conduct, we may, at our sole discretion, withhold, deny or cancel any advantage, bonus or promotional prize as we see fit, or terminate or suspend the User Account of such player.

**3.8.1**  You will not directly or indirectly  participate in groups or take advantage of, or encourage others to participate in or take advantage of schemes, organizations, agreements, or groups designed to share: (a)  hacks or money-making strategies; (b) special offers or packages emailed to a specific set of players and redeemable by URL; or (c) identification documents (including, but not limited to, photographs, bills and lease documents) for the purpose of misleading Modo as to a player's identity.

**3.9**  In relation to any purchase, You must only use a valid form of payment accepted by the Platform or its third party payment processing provider(s) ("Payment Agent(s)") which lawfully belongs to You (the "Payment Mechanism").

## 4.  Your User Account

**4.1**  You must create a User Account in order to access or use the Service.

**4.2**  Only one User Account is permitted per person. In the event You open or try to open more than one User Account, all User Accounts You have opened or try to open may then be terminated or suspended any prizes or Virtual Coins balances may be voided.

**4.3**  If You lose access to Your User Account, You must not register a new User Account. Rather, You must contact customer support at support@modo.us to have Your User Account status updated.

**4.4**  You are required to keep Your personal details up to date. If You change Your address, email, phone number or any other contact details or personal information, please contact customer support. The name that You provide to us at registration must match any identification You provide for Your User Account verification.

**4.5**  During the registration process, You will be required to select a password unless: (i) You login to Your User Account using the Facebook® login facility in which case Your Facebook® password will apply; or (ii) You login to Your User Account using the Google® login facility in which case Your Google® password will apply.

**4.6**  You confirm that You will not share Your User Account or password with any other person or let anyone else access or use Your User Account without our written permission. You will not access or use a User Account which has been rented, leased, sold, traded, or otherwise transferred from the User Account creator without our written permission.

**4.7**  If You become aware, or have reasons to suspect, that the security of Your User Account may have been compromised, including loss, theft or unauthorized disclosure of Your password and User Account details, You must notify us immediately.

**4.8**  You are responsible for maintaining the confidentiality of Your User Account and accept responsibility for all uses of the User Account, including any purchases (whether or not authorized by You).

**4.9**  We reserve the right to close Your User Account if it is inactive for a period of sixty days or longer and therefore Dormant under Section 6.11. You agree that We are not

required to give notice to You prior to taking such action, although we may choose to do so in our sole discretion.

**4.10**    If You wish to close Your User Account, You may do so at any time by contacting customer support. Closing Your User Account will forfeit all continued access to and right to use, enjoy or benefit from any Virtual Coins associated with Your User Account.

**4.11**    We reserve the right to refuse to open or the right to close a User Account at our sole discretion.

**4.12**    User Account registrations may be limited to one User Account registration per person or per IP address at our sole discretion.

**4.13**    We reserve the right, at our sole discretion, to deactivate or suspend your User Account (notwithstanding any other provision contained in these Terms of Use) where we have reason to believe that you have played or are likely to play in tandem with other player(s) as part of a club, syndicate, group, etc., or played the Games in a coordinated manner with other player(s) involving the same (or materially the same) actions, decisions, or selections.

## 5.    Games and Contests

**5.1**    In addition to these Terms, Games offered on the Service may have their own rules which are available on the Service.  It is Your responsibility to read the rules of a Game before playing. You must familiarize Yourself with the applicable terms of play and read the relevant rules before playing any Game.

## 6.    VIP Rank

**6.1**    We may, at our sole discretion, grant, modify, limit, suspend, or revoke any VIP Rank benefits, rewards, or features at any time, for any reason, with or without prior notice. VIP Ranks and any associated benefits are provided as discretionary rewards and are not guaranteed. Players have no entitlement to receive or retain any VIP Rank or related rewards. More information on rank-specific benefits and achieving these tiers can be found at https://modo.us/vip-ranks, which can be modified by us at any time as provided for in these Terms.

**6.2**    The VIP Rank benefits that may be subject to such changes, limitation, and/or suspension include, but are not limited to:
>    **6.2.1**    Exclusive Pick-Me-Up Click N' Claims
>    **6.2.2**    Birthday Click N' Claim Rewards
>    **6.2.3**    Daily and Weekly VIP Rank Discounts
>    **6.2.4**    Daily Bonus Streak repair
>    **6.2.5**    Access to Live Chat Priority Support
>    **6.2.6**    VIP Points earned per daily log-in

**6.3**    Without limiting the foregoing, the following are common examples of when such limitations may occur:
>    **6.3.1**    When an account is under review by our teams

7

**6.3.2**  When an account is pending closure or has been closed

**6.3.3**  When limitations are applied in connection with Responsible Social Gaming practices

**6.3.4**  When an account is found to be in violation of these Terms or Sweepstakes Rules

**6.3.5**  When we identify technical or operational issues affecting the delivery of benefits

**6.3.6**  At our discretion, based on other risk, operational, or compliance considerations

**6.4**  Nothing in these Terms guarantees the continued availability of any VIP Rank benefit or feature. We reserve the right to add, modify, suspend, and/or remove VIP Rank benefits and eligibility criteria at any time for any reason.

**6.5**  **Black Diamond VIP Rank**

**6.5.1**  Black Diamond is an invitation-only VIP Rank tier that may be granted at our sole discretion. In addition to standard VIP Rank benefits, Black Diamond members may receive access to a dedicated VIP host, special event invitations, and enhanced or personalized promotions. We may, at any time and for any reason, grant, modify, limit, suspend, or revoke any Black Diamond benefits, rewards, or features with or without prior notice. Black Diamond status and its associated benefits are discretionary and not guaranteed. Players have no entitlement to receive or retain Black Diamond status or any related rewards.

## 7.    Purchases

**7.1**  The name on Your Payment Mechanism must match the name on Your User Account. If it comes to our attention that the name You registered on Your User Account and the name linked to Your Payment Mechanism differ, Your User Account will be suspended, purchases may be voided, and any Virtual Coins balance may be adjusted accordingly. **You must promptly notify us if Your Payment Mechanism is cancelled, lost or stolen or if the security of Your Payment Mechanism has otherwise become compromised.**

**7.2**  You acknowledge and agree that we may, from time to time and without notice, appoint one or more Payment Agents to process or make payments from or to You on our behalf.

**7.3**  If one or more of Your Virtual Coins purchases is subject to a charge back request, Your User Account will be suspended. In the event of any charge back on Your User Account, the amount of the charge back will be a debt owed by You to Us, and You must immediately submit payment for such purchases through an alternative Payment Mechanism.

**7.4**  You agree that we and/or our Payment Agents appointed by us from time to time may store Your Payment Mechanism details to process future purchases. By accepting these Terms, you authorize us and/or our Payment Agents to store Your payment credentials in compliance with applicable payment processing regulations.

**7.5**  A Payment Agent will have the same rights, powers and privileges that we have under these Terms and will be entitled to exercise or enforce their rights, powers and privileges

as our agent or in their own name. In no event will we be liable to You for any loss, damage or liability resulting from the Payment Agent's negligence and/or acts beyond the authority given by us.

**7.6**    All purchases will be in USD.

**7.7**    If You make a purchase, the purchased, licensed Virtual Coins may be added to Your User Account instantaneously unless there is any delay due to situations outside our control, including without limitation a force majeure event, poor internet connectivity, internet failure or electricity outages.

**7.8**    When You make a purchase, it will appear on Your statement as a purchase from "Modo."

**7.9**    When You make a purchase, You will receive two confirmations: (i) an on-screen confirmation that the transaction has taken place; and (ii) an email to the email address on Your User Account confirming that the transaction has taken place.

**7.10**    When You log into Your User Account Your licensed Virtual Coins balance will be displayed in the upper right-hand corner of Your screen, both on the Modo mobile application and on the Modo website.

**7.11**    Virtual Coins will automatically expire in the event a User Account becomes Dormant. For the purpose of these Terms "Dormant" means there has been no game play activity utilizing Virtual Coins for a consecutive period of sixty (60) days.

**7.12**    Our Customer Support can be reached twenty-four hours a day, seven days a week at support@modo.us.   The expected response time is as soon as possible but may take up to twelve (12) hours.

**7.13    Notice for California Users Under Civil Code Section 1789.3**

The Complaint Assistance Unit of the Division of Consumer Services of the California Department of Consumer Affairs may be contacted in writing at 1625 N. Market Blvd., Suite N – 112, Sacramento, CA 95834, or by telephone at 1(800) 952 – 5210.

**8.    Promotions**

**8.1**    All promotions, contests, and special offers are subject to these Terms, the official rules of the promotion, contest, or special offer, and any additional terms that may be published at the time of the promotion, contest or special offer.

**8.2**    We reserve the right to withdraw or alter any such promotions without prior notice to You at our sole discretion.

**8.3**    We reserve the right at our sole discretion and without any requirement to provide a justification to exclude You from any promotions, contests or special offers that may be offered from time to time.

9

**8.4** We reserve the right to exclude You from any promotions, contests or special offers if we believe that You have tried to enter said promotions, contests of special offers by using more than one User Account or are otherwise engaging in any fraudulent or illegal activity (including participation that would be in breach of the law in Your local jurisdiction), whether or not You would have or might have won but for such activity. Where multiple entries/User Accounts have been used, we reserve the right to suspend those User Accounts and withhold any promotional benefits.

**8.5** You confirm that You grant us an irrevocable, perpetual, worldwide, non-exclusive, royalty-free License to use in whatever way we see fit, and without further acknowledgement of You as the author, any content You post or publish as part of a promotion, contest or competition.

## 9. Verification

**9.1** You acknowledge that we, or a third party acting on our behalf, are entitled to conduct any verification checks (including but not limited to age and identity verifications and credit background checks) that we may reasonably require and/or that are required of us under applicable laws and regulations or by relevant regulatory authorities. You agree to comply with all verification checks in a timely manner.

**9.2** You agree that we may restrict Your opening or use of a User Account pending any verification checks having been completed to our satisfaction.

**9.3** The documents required may include, but are not limited to, photo identification, such as a government issued passport or driver's license; a utility bill that matches the address registered on Your User Account; and source of wealth or source of funds documentation such as a payslip or bank statement.

**9.4** In the event that any verification check cannot be completed for any reason, including Your failure to provide any requested documentation, then We may, in our sole discretion, terminate, deactivate or otherwise restrict Your User Account.

**9.5** You acknowledge and agree that we may use third party service providers to run external identification, location verification and other verification checks based on the information provided by You from time to time. You must enable and allow "Locations Services" on Your device or PC in order to operate the Service or access Your User Account.

## 10. Intellectual Property

**10.1** These Terms confer only the right to use the Service and they do not convey any rights of ownership in or to the Service.

**10.2** All rights, title and interest, including without limitation any copyright, patent, trade secret or other intellectual property right in the Service will remain our sole property or where licensed from a third party their sole property.

10

**10.3**    Your use of the Games will not convey any ownership rights in the intellectual property to You. The titles, source and object codes, game client and server software, the "look and feel" of the Games, sounds, musical compositions, audio-visual effects, concepts and methods of operation, layout, text, data, User Accounts, themes, objects, characters and character likenesses, character names and character profile information, stories, dialogue, catch phrases, locations, artwork, animations files, images, graphics, documentation, gaming history and recording of game play, transcripts of any chat rooms, and moral rights, whether registered or not, and all applications related to the above will remain vested in us or any third party supplier of the Games.

**10.4**    Notwithstanding anything to the contrary in these Terms, You acknowledge and agree that You shall have no ownership or other property interest in the User Account, and You further acknowledge and agree that all rights in and to the User Account are and shall forever be owned by and inure to the benefit of us.

## 11.    Responsibility for User Generated Content

**11.1**    You are responsible for complying with all laws applicable to Your User Content. You agree not to submit to the Service, or send to other users of the Service, any defamatory, inaccurate, abusive, obscene, profane, offensive, sexually oriented, threatening, harassing, racially offensive, illegal material or any material that infringes or violates another party's rights.

**11.2**    You will not provide inaccurate, misleading or false information to us or to any other user of the Service. If information provided to us, or another user of the Service, subsequently becomes inaccurate, misleading or false, You will notify us of such change immediately.

**11.3**    We may, in our sole discretion, delete any User Content without notice but are under no obligation to do so. We have no responsibility for the conduct of any user in the Service, including any User Content submitted in the Service. We assume no responsibility for monitoring the Service for inappropriate content or conduct. Your use of the Service is at Your own risk.

**11.4**    You hereby grant us the sole and exclusive, irrevocable, sub-licensable, transferable, worldwide, royalty-free license to reproduce, modify, create derivative works from, publish, distribute, sell, transfer, transmit, publicly display and use any User Content and to incorporate the same in other works in any form, media, or technology now known or later developed.

**11.5**    You further hereby grant to us the unconditional, right to use and exploit Your name, likeness and any other information or material included in any User Content and in connection with any User Content or Your User Account, without any obligation to You. You waive any rights of attribution and/or any moral rights You may have in Your User Content, regardless of whether Your User Content is altered or changed in any manner except as prohibited by law.

11

**11.6**    You acknowledge and agree that all User Content whether publicly posted or privately transmitted to the Service is at Your sole responsibility and risk. We disclaim any responsibility for the backup and/or retention of any User Content transmitted to the Service.

**11.7**    Prohibited Content; User Content that is prohibited in the Service includes, but is not limited to:

- User Content that promotes racism, bigotry, hatred or physical harm of any kind against any group or individual;
- Harassing User Content;
- User Content of a sexual or offensive nature;
- User Content that promotes terrorism or religious hatred;
- User Content that promotes illegal activities or conduct that is abusive, threatening, obscene or defamatory;
- User Content of commercial nature without authorization from us; or
- User Content promoting the services of another business or competitor.

**11.8**    If You see any material in the Service that in Your belief is offensive, hateful, harassing or that You otherwise think is prohibited, please notify us by contacting support@modo.us.

## 12.    Third Party Websites & Content

**12.1**    The Service may contain links to content owned and/or operated by third parties, for instance third parties who may invite You to participate in promotional offers or rewards programs or third-party advertisers or payment providers. Any separate charges or obligations that You may incur in Your dealings with these third parties are Your sole responsibility. We are not responsible for any such third-party services or content and do not have control over any materials made available therein.

**12.2**    Our inclusion of a link to a third-party website, services or content in the Service does not imply our endorsement, advertising, or promotion of such websites, services or content or any materials available and we make no guarantee as to the content, functionality, or accuracy of any third-party website.

**12.3**    By accessing a third-party website, services or content, You accept that we do not exercise any control over such websites, services or content and have no responsibility for them. The third-party sites may collect data or solicit personal information from You. We are not responsible for privacy policies, or for the collection, use or disclosure of any information those sites may collect. It is always best to read and understand the terms of services and privacy policies applicable to any third-party website, services or content You may access.

**12.4**    We do not endorse, do not assume and will not have any liability or responsibility to You or any other person for any third-party products, services, materials or websites. Please note that the relevant third party is fully responsible for all goods and services it provides to You and for any and all damages, claims, liabilities and costs it may cause You to suffer, directly or indirectly, in full or in part.

**12.5**   If You use third party social networking websites to discuss the Service such as Facebook® and Twitter®, You acknowledge and agree that:

- any content that You post on such social networking sites are subject to the relevant terms and conditions of that website;
- You will not post any comments that are false, misleading or deceptive or defamatory to us, our employees, agents, officers or other players; and
- we are not responsible or liable for any comments or content that You or others post on social networking sites.

## 13.   Copyright Infringement Notice

Modo requires our Users to respect the intellectual property rights of others. If You are the owner of copyright and You believe that Your work has been used in the Service in a way that constitutes copyright infringement, please provide our Copyright Agent with a notice meeting all of the requirements of the Digital Millennium Copyright Act ("DMCA"). Your notice should contain the following information:

- a physical or electronic signature of the person authorized to act on behalf of the owner of the copyright or other intellectual property interest;
- a clear description of the copyrighted work or other intellectual property that You claim has been infringed;
- a description of where the material that You claim is infringing is located in the Service.
- Your address, telephone number, and email address;
- a statement by You that You have a good faith belief that the disputed use is not authorized by the copyright owner, its agent or the law; and
- a statement by You, made under penalty of perjury, that the above information in Your notice is accurate and that You are the copyright or intellectual property owner or authorized to act in the copyright or intellectual property owner's behalf.

Before you file Your DMCA notice, please carefully consider whether or not the use of the copyrighted material at issue is protected by the Fair Use doctrine. If You file a DMCA notice when there is no infringing use, You could be liable for costs and attorneys' fees.

Our agent for notice of claims of copyright or other intellectual property infringement can be reached as follows:

By email: legal@arbinteractive.com

## 14.   Disruptions, Errors & Omissions

**14.1**   Disclaimer of Warranties.   THE SERVICES, IN WHOLE AND IN PART (INCLUDING, WITHOUT LIMITATION, ALL CONTENT, AND USER MATERIALS), ARE PROVIDED, TRANSMITTED, DISTRIBUTED, AND MADE AVAILABLE "AS IS" AND "AS AVAILABLE" WITHOUT EXPRESS OR IMPLIED WARRANTIES OF ANY KIND, INCLUDING, WITHOUT LIMITATION, WARRANTIES OF TITLE, IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE

13

OR NON-INFRINGEMENT. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, WE MAKE NO WARRANTY: (A) THAT THE SERVICES WILL BE UNINTERRUPTED OR ERROR FREE; (B) THAT DEFECTS OR ERRORS IN THE SERVICES WILL BE CORRECTED; (C) THAT THE SERVICES WILL BE FREE FROM VIRUSES OR OTHER HARMFUL COMPONENTS; (D) AS TO THE QUALITY, ACCURACY, COMPLETENESS AND VALIDITY OF ANY INFORMATION OR MATERIALS IN CONNECTION WITH THE SERVICES; (E) THAT YOUR USE OF THE SERVICES WILL MEET YOUR REQUIREMENTS; OR (F) THAT TRANSMISSIONS OR DATA WILL BE SECURE.

**14.2** **Exceptions.** **SOME JURISDICTIONS DO NOT ALLOW THE DISCLAIMER, EXCLUSION OR LIMITATION OF CERTAIN WARRANTIES, LIABILITIES AND DAMAGES, SO SOME OF THE ABOVE DISCLAIMERS, EXCLUSIONS AND LIMITATIONS MAY NOT APPLY TO YOU. IN SUCH JURISDICTIONS, OUR WARRANTIES AND LIABILITY WILL BE LIMITED TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW.**

**14.3** We are not liable for any downtime, server disruptions, errors, lagging, or any technical or political disturbance to the Service or Games, nor attempts by You to participate by methods, means or ways not intended by us.

**14.4** We accept no liability for any damages or losses which are deemed or alleged to have arisen out of or in connection with any Service including, without limitation, delays or interruptions in operation or transmission, loss or corruption of data, communication or lines failure, any person's misuse of a Service or any errors or omissions in the Service.

**14.5** In the event of a Service system malfunction, then all Game play on the Service will be void.

**14.6** In the event of an error or malfunction in a Game, then all Game play resulting from the error or malfunction will be voided.

**14.7** We reserve the right to remove any part of the Games from the Service at any time. Any part of the Games that indicate incorrect behavior affecting, game data, or Virtual Coins balances, that may be due to error, misconfiguration or a bug, will be cancelled and removed from the Service. We reserve the right to alter player balances and User Account details under such circumstances, at our sole discretion, in order to correct any mistake.

**14.8** We may temporarily suspend the whole or any part of the Service for any reason at our sole discretion. We may, but will not be obliged to, give You as much notice as is reasonably practicable of such suspension. We will restore the Service, as soon as is reasonably practicable, after such temporary suspension.

**14.9** We reserve the right to declare participation in a Game void, partially or in full, if, in our sole discretion, we deem it obvious that there was an error, mistake, misprint or technical error on the pay-table, win-table, minimum or maximum stakes, odds or software.

14

**14.10**  If You are incorrectly awarded any Virtual Coins or prizes as a result of (a) any human error; (b) any bug, defect or error in the Service; or (c) the failure of any Games to operate in accordance with the rules of the relevant game, then We will not be liable to award You any such Virtual Coins or prizes, and You agree that any such Virtual Coins or prizes that have been awarded in error to Your User Account will be voided.

**14.11**  We retain absolute discretion in the event of a discrepancy between the result showing on a user's device and the server software. Such discretion includes the authority to recognize the result showing on the server software as the official and governing result.

## 15.    Limitation of Liability and Indemnification

**15.1**    <u>Limitation of Liability</u>. BY ACCESSING, USING OR DOWNLOADING THE SERVICE, YOU ACKNOWLEDGE AND AGREE THAT SUCH USE IS AT YOUR OWN RISK AND THAT NEITHER THE COMPANY NOR ANY OF THE PARTIES INVOLVED IN CREATING, PRODUCING, OR DELIVERING THE SERVICES OR THE COMPANY OR ANY OF THEIR AFFILIATES, SUBSIDIARIES, AGENTS, EMPLOYEES, OFFICERS, DIRECTORS, CONSULTANTS, SUPPLIERS, ADVERTISERS, PAYMENT SERVICES PROMOTERS, PARTNERS, OR CONTRACTORS (COLLECTIVELY "RELEASED PARTIES") ARE LIABLE FOR ANY DIRECT, INCIDENTAL, CONSEQUENTIAL, INDIRECT, SPECIAL, OR PUNITIVE DAMAGES, OR ANY OTHER LOSSES, COSTS, OR EXPENSES OF ANY KIND (INCLUDING, WITHOUT LIMITATION, LOST PROFITS, LOSS OF DATA, LEGAL FEES, EXPERT FEES, COST OF PROCURING SUBSTITUTE SERVICES, LOST OPPORTUNITY, OR OTHER DISBURSEMENTS) WHICH MAY ARISE, DIRECTLY OR INDIRECTLY, THROUGH THE ACCESS TO, USE OF, RELIANCE ON ANY MATERIAL OR CONTENT ON THE SERVICES, OR BROWSING OF THE SERVICES OR THROUGH YOUR DOWNLOADING OF ANY MATERIALS, DATA, TEXT, IMAGES, VIDEO OR AUDIO FROM THE SERVICES, SPECIFICALLY INCLUDING ANY PAST, PRESENT OR FUTURE USE OF "COOKIES," "GET REQUESTS," PIXELS AND OTHER TRACKING TECHNOLOGY, EVEN IF WE HAVE BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

RELEASED PARTIES CANNOT AND DO NOT WARRANT OR GUARANTEE CONTINUOUS, UNINTERRUPTED, OR SECURE ACCESS TO THE SERVICES. WITHOUT LIMITING THE FOREGOING, RELEASED PARTIES ASSUME NO RESPONSIBILITY, AND WILL NOT BE LIABLE, FOR ANY DAMAGES RELATING TO OR CAUSED BY ANY VIRUSES, BUGS, HUMAN ACTION OR INACTION OF ANY COMPUTER SYSTEM, PHONE LINE, HARDWARE, SOFTWARE OR PROGRAM MALFUNCTIONS, OR ANY OTHER ERRORS, FAILURES OR DELAYS IN COMPUTER TRANSMISSIONS OR NETWORK CONNECTIONS ON ACCOUNT OF YOUR ACCESS TO OR USE OF THE SERVICES.

**15.2**    <u>Indemnification</u>. BY USING THE SERVICES, YOU AGREE TO INDEMNIFY, DEFEND AND HOLD HARMLESS (INCLUDING REASONABLE ATTORNEY'S FEES AND COSTS OF SUIT) THE RELEASED PARTIES FROM ANY AND ALL THIRD PARTY

CLAIMS AGAINST THE COMPANY RELATED IN ANY WAY TO YOUR USER ACCOUNT, YOUR USE OF THE SERVICES OR YOUR ACCESS TO THE SITE.

**15.3** <u>One Year Limitations Period</u>. You and Modo agree that any claims, regardless of form, arising out of or related to the Site (including Services) or these Terms of Use or Privacy Policy must BE FILED within ONE (1) YEAR of the action, omission, event or occurrence giving rise to the claim or suit, after which such claims will be time-barred and prohibited, without regard to any longer period of time which may be provided by any period of limitation or repose by law or statute.

**15.4** <u>**SOLE AND EXCLUSIVE REMEDY/LIMITATION ON RECOVERY**</u>. UNLESS OTHERWISE PROHIBITED BY LAW, IN ANY DISPUTE WITH THE RELEASED PARTIES, YOUR SOLE AND EXCLUSIVE REMEDY UNDER ANY LEGAL THEORY FOR ANY LOSS OR DAMAGE WHATSOEVER ARISING FROM ANY CAUSE SHALL BE LIMITED TO RECOVERY OF THE AMOUNT OF YOUR OWN PURCHASES DURING THE ONE (1) YEAR PERIOD PRECEDING THE DATE ON WHICH YOU FIRST ASSERT ANY SUCH CLAIM.

**15.5** YOU RECOGNIZE AND AGREE THAT THE WARRANTY DISCLAIMERS IN SECTION 13.1, AND THE INDEMNITIES, LIMITATIONS OF LIABILITY AND LIMITATIONS OF REMEDIES IN THIS SECTION 14, ARE MATERIAL AND BARGAINED-FOR BASES OF THESE TERMS AND THAT THEY HAVE BEEN TAKEN INTO ACCOUNT AND REFLECTED IN THE DECISION BY YOU AND MODO TO ENTER INTO THESE TERMS OF USE.

**15.6** NOTHING IN THESE TERMS OF USE WILL OPERATE SO AS TO EXCLUDE ANY LIABILITY OF MODO FOR DEATH OR PERSONAL PHYSICAL INJURY THAT IS DIRECTLY AND PROXIMATELY CAUSED BY MODO'S NEGLIGENCE OR WILLFUL MISCONDUCT.

**15.7** TO THE EXTENT ANY OF THE LIMITATIONS OF REMEDY, INCLUDING WAIVER OF THE RIGHT TO PRIVATE OR PUBLIC INJUNCTIVE RELIEF, ARE NOT PERMITTED BY LAW OF ANY APPLICABLE JURISDICTION, SUCH LIMITATIONS SHALL NOT APPLY AND SHALL BE DEEMED AS SEVERABLE AND STRICKEN FROM THESE TERMS. THE PARTIES AGREE FURTHER THAT SUCH PROVISION(S) SHALL NOT AFFECT THE ENFORCEABILITY OF THE TERMS OR THE ARBITRATION AGREEMENT (Section 16), WHICH THE PARTIES AGREE SHALL REMAIN IN PLACE AND IN FORCE LESS ANY SUCH STRICKEN PROVISIONS.

**16.     CUSTOMER SERVICE AND INITIAL DISPUTE RESOLUTION PROCEDURE**

**Customer Support**

**16.1** If You need customer service in relation to the Service, You may contact us by at <u>support@modo.us</u>.

16

**16.2**   To protect Your privacy, all communications between You and us should be carried out using or referencing the email address that You used to register Your User Account for the Service. Failure to do so may result in our response being delayed.

**Initial Dispute Resolution Procedure and Conference**

**16.3**   The parties shall use best efforts to resolve informally any customer service issue promptly and in good faith.  If for some reason You are not satisfied or your claim is not resolved (a "Dispute"), You may then pursue arbitration as set out below in Section 16.  However, You must first submit a Notice of Dispute as set forth in this Section 15 and engage in a conference either by telephonic or videoconference means with Modo prior to and as a condition precedent to initiating arbitration or any formal proceeding over a Dispute as required by Section 16.

**16.4**   **Notice of Dispute Required Prior to Arbitration**.  The party initiating a claim over a Dispute must give notice to the other party in writing of its intent to initiate an informal dispute resolution conference.  The initial conference shall occur within thirty (30) days after the other party receives such notice or within a time period required by law, unless an extension is mutually agreed upon by the parties.

**16.5**   All initial dispute resolution conferences shall be conducted individually, between Modo and You.  Multiple individuals with Disputes cannot participate in the same informal telephonic dispute resolution conference. If a party is represented by counsel (which such representation will be at such parties' sole cost and expense), counsel may participate in the conference, but each party shall also attend and participate in the conference.

**16.6**   To notify Modo that You intend to initiate an informal dispute resolution conference, please inform us by sending a Notice of Dispute via email to disputeresolution@arbgamingllc.com and include the following information:

**(a)**   Your username and email address associated with Your User Account;

**(b)**   Your first and last name, as registered on your User Account;

**(c)**   Your residence address;

**(d)**   Your telephone number (home and/or mobile);

**(e)**   a detailed explanation of the complaint/claim and basis for the claim;

**(f)**   any specific dates and times associated with the complaint/claim (if applicable); and

**(g)**   the remedy, action or any amount You are seeking from Modo.

**16.7**   Upon receipt of Your Notice of Dispute, We will respond in writing within thirty (30) days after receipt of such Notice, unless an extension is mutually agreed upon by the parties.

Failure to submit a written communication with the information outlined above may result in a delay in our ability to identify and respond to Your complaint/claim in a timely manner, and may, in Modo's discretion, extend the time period for resolution before a formal proceeding may be commenced, as permitted by these Terms.

**16.8** The parties shall use their best efforts to settle any Dispute, claim, question, or disagreement and engage in good faith negotiations which shall be a pre-condition to either party initiating a formal arbitration as provided in Section 16. If the parties do not reach an agreed upon solution within a period of thirty (30) days from the time of the initial Notice, then either party may initiate binding arbitration, to the extent permitted by law, as the sole means to resolve claims, subject to these Terms and the Arbitration Agreement.

**16.9** The aforementioned Notice of Dispute and informal dispute resolution process is a condition precedent to commencing any formal arbitration proceeding under the Arbitration Agreement (Section 16 below), including litigation if you have successfully opted-out of the arbitration agreement. The parties agree that any relevant limitations period or other deadlines will be tolled solely by the amount of time the parties initiate and engage in this informal dispute resolution process.

**16.10** Regardless of whether you decide to opt out of arbitration, the terms set forth in this Section 15 Initial Dispute Resolution shall remain in full force and effect as part of these Terms.

**17.    BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER**

**PLEASE READ THIS ARBITRATION & CLASS ACTION WAIVER AGREEMENT (THE "AGREEMENT") CAREFULLY BECAUSE IT REQUIRES YOU AND MODO TO ARBITRATE CERTAIN DISPUTES AND CLAIMS AND LIMIT THE MANNER IN WHICH YOU AND MODO CAN SEEK RELIEF FROM EACH OTHER. THIS AGREEMENT APPLIES TO ANY CLAIMS YOU OR COMPANY CURRENTLY POSSESS AND ANY CLAIMS THE PARTIES MAY RAISE IN THE FUTURE. WHILE YOU MUST AGREE TO THESE TERMS OF USE IN ORDER TO USE THE SERVICES, IF YOU HAVE NOT PREVIOUSLY AGREED TO AN ARBITRATION PROVISION IN CONNECTION WITH YOUR USE OF OUR SERVICE, THERE IS AN OPTION, DESCRIBED BELOW IN SECTION 16.12, TO OPT OUT OF THE ARBITRATION PROVISIONS. THE OPTION TO OPT-OUT IS TIME-LIMITED TO THIRTY (30) DAYS OF ENTERING THIS AGREEMENT AND REQUIRES YOUR IMMEDIATE ATTENTION.**

**If you reside in or access the Service at any time while located in the United States, this Section 16 (Binding Arbitration Agreement and Class Action Waiver Agreement) shall be construed under and be subject to the Federal Arbitration Act, notwithstanding any other choice of law set out in these Terms of Service.**

**THIS AGREEMENT INCLUDES AN ARBITRATION PROVISION WHICH SETS FORTH HOW PAST, PENDING OR FUTURE DISPUTES BETWEEN YOU AND MODO SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION.**

18

**ARBITRATION MEANS YOU WILL NOT BE ABLE TO SEEK DAMAGES IN COURT OR PRESENT YOUR CASE TO A JURY.**

**THIS ARBITRATION AND CLASS ACTION WAIVER AGREEMENT ALSO REQUIRES THAT ANY PAST, PENDING OR FUTURE DISPUTES WITH THE COMPANY SHALL PROCEED FOR YOUR OWN LOSSES ONLY. YOU MAY NOT PROCEED AS A CLASS REPRESENTATIVE, MEMBER OR PART OF ANY PROPOSED CLASS, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL SUIT, QUI TAM ACTION, OR ANY REPRESENTATIVE PROCEEDING, OR OTHERWISE SEEK TO RECOVER ON BEHALF OF OTHERS OR FOR THE BENEFIT OF OTHERS IN ANY TYPE OF CLAIM OR ACTION.**

17.1  Acceptance of Terms. By using, or otherwise accessing the Service, or clicking to accept or agree to the Terms where that option is made available, you confirm that you have read and accept and agree to this Agreement. Except to the extent that you may opt-out as provided below, all of your activity on the Website or Platform and all or your transactions with Modo, including all events which occurred before your acceptance of this Agreement, shall be subject to this Agreement.

17.2  Scope of Agreement to Arbitrate. You and Modo agree that any past, pending, or future dispute, claim or controversy arising out of or relating to any purchase or transaction by you, your access to or use of any Platform or the Service, or to this Agreement, the Terms of Use, or Privacy Policy (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability, or arbitrability of this Agreement or the Terms of Use) (a "Dispute"), shall be determined by arbitration, including claims that arose before acceptance of any version of this Agreement. In addition, in the event of any Dispute concerning or relating to this Agreement — including the scope, validity, enforceability, or severability of this Agreement or its provisions, as well as the arbitrability of any claims—you and Modo agree and delegate to the Arbitrator the exclusive jurisdiction to rule on their own jurisdiction over the Dispute, including any objections with respect to the scope, validity, enforceability, or severability of this Agreement or its provisions, as well as the arbitrability of any claims or counterclaims presented as part of the Dispute.

17.3  Notwithstanding the above provision and Agreement to Arbitrate, all parties retain the right to seek relief in a small claims court for disputes or claims solely within the scope of a small claim's court jurisdiction.

17.4  Lack of Estoppel or Preclusive Effect. The parties agree that any issues determined in arbitration or any other proceeding between the parties shall be conducted and decided for the benefit of the parties or express third party beneficiaries only and shall have no preclusive or estoppel effect against a party in any subsequent or other arbitration or litigation matter, such that all issues shall be decided anew in any subsequent or other proceedings involving either party. The parties reach this agreement in order to narrowly and efficiently tailor their legal positions without concern that any third party may attempt to offensively use any finding or determination of fact or law against You or Modo.

19

**17.5** Third-Party Beneficiaries. You further agree and intend that this Agreement and the Terms are entered into for the express benefit of your spouse, heirs, children and next-of-kin and shall bind same to the extent of any claims arising from your use of the Service which is brought by them or by any person for the use or benefit of your spouse, heirs, children and next-of-kin. Modo agrees also that this Agreement is intended to benefit and shall bind any successor-in-interest or assignee of Modo.

**17.6** Intellectual Property. Notwithstanding the requirement to arbitrate in this Section 16, you and Modo are NOT required to arbitrate any claims for the alleged unlawful use of copyrights, trademarks, trade names, trade dress, logos, trade secrets, or patents, and the parties agree that in the event of infringement of copyrights, trademarks, trade names, trade dress, logos, trade secrets, or patents of a party, they shall also be entitled to seek injunctive relief from a court of competent jurisdiction, and the parties shall not be able to hold out a user's access to the Service as a basis to enforce this arbitration agreement as to such claims.

**17.7** Separate Agreement. The parties acknowledge that this Agreement is a separate agreement between the parties governed by the Federal Arbitration Act, and that any alleged or determined invalidity or illegality of all or any part of the Terms of Use, the Service, the Platform, or the Privacy Policy shall have no effect upon the validity and enforceability of this Agreement.

**17.8** Applicable Law. While the Federal Arbitration Act shall control, to the extent the law of any state is applied or considered with respect to issues bearing upon the enforceability or scope of this Agreement, the parties agree that the law of the State of Delaware shall exclusively apply, notwithstanding any consideration or application of choice of law or conflicts of law principles.

**17.9 NOTICE TO CALIFORNIA RESIDENTS.** In accordance with California Civil Code sections 1541 and 1542, you hereby agree to waive all rights and remedies under Section 1542.

**INITIATING ARBITRATION UNDER JAMS RULES**

**17.10** Following the conclusion of the initial dispute resolution process required by Section 15, you or Modo may seek arbitration of a Dispute in accordance with the provisions of this Agreement. You and Modo agree that JAMS ("JAMS") will administer the arbitration under its Comprehensive Arbitration Rules and Procedures ("JAMS Rules") in effect at the time arbitration is sought ("JAMS Rules"). The parties further agree that, to the extent applicable, the JAMS Mass Arbitration Procedures and Guidelines shall apply. The JAMS Rules referenced above are available at https://www.jamsadr.com/adr-rules-procedures/.

You and Modo further agree:

**17.10.1** The arbitration will be handled on the merits by a sole arbitrator. The parties agree that any JAMS arbitrator appointed, including merits and process arbitrators, must have the following minimum qualification: practicing attorneys or retired federal court judges who have at least ten years of substantive expertise in litigating and resolving of complex

20

business disputes, including motions to compel arbitration and litigation or adjudication regarding whether disputes are arbitrable;

**17.10.2** For purpose of Sections 16.1 and 16.2 of the JAMS Rules, the JAMS Streamlined Arbitration Rules and Procedures and JAMS Expedited Procedures shall *not* apply unless otherwise explicitly agreed to by all parties to the Dispute;

**17.10.3** In lieu of JAMS Rule 15, the parties shall be presented with a list of eight (8) potential arbitrators, be allowed three (3) strikes and the parties shall rank those potential arbitrators in order of preference. JAMS shall select the arbitrator with the highest combined preference (e.g., if both parties select a potential arbitrator as their top preference, that arbitrator will be selected). To the extent a process arbitrator is appointed pursuant to the JAMS Rules, the selection process shall also be as prescribed in this paragraph;

**17.10.4** In lieu of JAMS Rule 18, the parties shall have the right to submit a dispositive motion at the outset of the arbitration to the Arbitrator in order to resolve issues other than the ultimate issue of fact. The submission and scheduling of such motions shall be addressed at a conference held before the JAMS arbitrator, and the Parties agree that any dispositive motions shall be resolved and the remainder of the arbitral proceeding stayed pending resolution, absent good cause and immediate necessity to proceed.

**17.10.5** Unless and only to the extent prohibited under JAMS Rules, the arbitration will be held in Wilmington, Delaware or, at either your or our election, will be conducted telephonically or via other remote electronic means;

**17.10.6** The JAMS Rules will govern payment of all arbitration fees, currently available at https://www.jamsadr.com/arbitration-fees, You will only be required to pay arbitration fees of $250 in connection with any arbitration initiated under this Section 16, but You will still be responsible for paying your own attorneys' fees;

**17.10.7** Except as otherwise waived or limited under the Terms or this Agreement, the JAMS arbitrator shall be authorized to award any remedies, including equitable or injunctive relief, that would be available in an individual lawsuit except:

**(a)** **In any arbitration arising out of or related to this Agreement, the arbitrator(s) are not empowered to award punitive or exemplary damages, and the parties waive any right to recover any such damages; and**

**(b)** **In any arbitration arising out of or related to this Agreement, the arbitrator(s) may not award any incidental, indirect or consequential damages, including damages for lost profits;**

**17.10.8** The arbitration decision and award shall consist of a written statement signed by the Arbitrator regarding the disposition of each claim and the relief, if any, as to each claim. Unless the parties agree otherwise, the award shall be a reasoned award and contain a concise written statement of the reasons for the award;

**17.10.9**   Except as and to the extent otherwise may be required by law, the arbitration proceeding, pleadings, and any award shall be treated as confidential and shall not be used by the parties except as may be necessary in connection with a court application for a preliminary remedy, a judicial challenge to an award or its confirmation and enforcement.

**17.10.10**     In the event JAMS is unavailable or unwilling to hear the dispute in accordance with this Agreement, the parties shall agree to, or a court shall select, another arbitration provider subject to the procedural agreements of this Section 16; and

**17.10.11**     You and Modo agree that any award issued by the Arbitrator in excess of $50,000 in favor of either party, or any award which grants any form of declaratory or equitable relief that would significantly impact other Modo users or the operation of the Platform, may be appealed in accordance with the JAMS Optional Arbitration Appeal Procedures at either party's election.  The JAMS Optional Arbitration Appeal Procedures are available at https://www.jamsadr.com/adr-rules-procedures/.

**17.11**   Batch Arbitration/Mediation. To increase efficiency of resolution, in the event 20 or more similar arbitration demands against Modo, presented by or with the assistance of the same law firm or organization or group of law firms or organizations working in coordination, are submitted to JAMS in accordance with the rules described above within a 60-day period, JAMS shall consolidate those arbitrations as contemplated in the JAMS Mass Arbitration Rules. Following the submission, initial presentation and resolution of briefing and motion practice contemplated in Section 16.9.4 on dispositive issues other than the ultimate issue of fact, to the extent claims and issues remain pending, JAMS shall group the arbitration demands into a first batch of no more than 25 demands to be set for resolution as a single arbitration.  Once resolution of the first batch has concluded (or sooner if the parties agree), counsel for the parties must engage in a single mediation before a JAMS mediator of all remaining demands from claimants.  Counsel for the parties must agree on a mediator within thirty (30) days after conclusion of the first batch.  If the parties cannot agree on a JAMS mediator within 30 days, JAMS will appoint a JAMS mediator as an administrative matter.  All parties will cooperate for the purpose of ensuring that the mediation is scheduled as quickly as practicable after the mediator is appointed.  If the parties are unable to resolve their demands by mediation, JAMS shall continue to batch the remaining arbitration demands into batches of no more than 100 demands per batch (plus, to the extent there are fewer than 100 arbitration demands left over after the batching described above, a final batch consisting of the remaining demands) for administration.  A single arbitration with one set of filing and administrative fees and one arbitrator will be assigned per batch. For avoidance of doubt, consolidation does not require that all arbitrations in a single batch be decided the same, nor does it impair your right to present any evidence or argument that you think particular to your case, so long as it is consistent with JAMS Rules.  You agree to cooperate in good faith with the Company and JAMS to implement such a batch approach to resolution and fees and to efficiently consolidate discovery, submission of evidence, and motion practice.

**17.12**  By signing a demand for arbitration, a party certifies, to the best of their knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, that: (i) the demand for arbitration is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of dispute resolution; (ii) the

22

claims and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law; and (iii) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery. The Arbitrator shall be authorized to afford any relief or impose any sanctions available under Federal Rule of Civil Procedure 11 or any applicable state law (including attorney's fees) for either party's violation of this requirement.

## OPTION AND PROCEDURE TO OPT OUT OF ARBITRATION

**17.13 IF YOU HAVE <u>NOT</u> PREVIOUSLY AGREED TO AN ARBITRATION PROVISION IN CONNECTION WITH YOUR USE OF OUR SERVICE, YOU MAY OPT OUT OF THE AGREEMENT TO ARBITRATE BY FOLLOWING THE INSTRUCTIONS BELOW. IF YOU DO NOT OPT-OUT, THE ARBITRATION PROVISIONS WILL APPLY RETROACTIVELY TO ALL CLAIMS YOU MAY POSSESS, WHETHER ASSERTED TO DATE OR NOT.**

**17.14 OPT-OUT. IF YOU DO NOT WISH TO AGREE TO THE PROVISIONS OF THIS SECTION 16 AGREEMENT REQUIRING ARBITRATION AND CLASS ACTION WAIVER AND YOU HAVE <u>NOT</u> PREVIOUSLY AGREED TO AN ARBITRATION PROVISION IN CONNECTION WITH YOUR USE OF OUR SERVICE, YOU MUST, WITHIN THIRTY (30) DAYS OF ENTERING THIS AGREEMENT, SEND A WRITTEN NOTICE OF YOUR DECISION TO OPT OUT TO ARB GAMING LLC, ATTN: ARBITRATION OPT-OUT, 13802 N SCOTTSDALE RD SUITE 151-94 SCOTTSDALE AZ 85254-3403, WITH THE SUBJECT "OPT-OUT." \*\*REQUESTS TO OPT OUT AFTER THE 30 DAY PERIOD SHALL NOT BE EFFECTIVE.\*\***

**17.15** Whether to agree to arbitration is an important decision. It is your decision to make and you are not required to rely solely on the information provided in these terms of use. You should take reasonable steps to conduct further research and to consult with counsel (at your expense) regarding the consequences of your decision.

## WAIVER OF CLASS RELIEF AND COLLECTIVE ACTION

**17.16 TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER YOU NOR MODO SHALL BE ENTITLED TO ARBITRATE OR LITIGATE ANY DISPUTE IN A REPRESENTATIVE CAPACITY. YOU MAY ONLY ARBITRATE OR LITIGATE ON AN INDIVIDUAL CLAIMS BASIS ONLY AND FOR YOUR OWN LOSSES ONLY. UNDER THIS AGREEMENT, YOU MAY NOT PROCEED IN ARBITRATION OR COURT AS A CLASS REPRESENTATIVE, MEMBER OR PART OF ANY PROPOSED CLASS, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL SUIT, QUI TAM ACTION OR ANY REPRESENTATIVE PROCEEDING, OR OTHERWISE SEEK TO RECOVER ON BEHALF OF OTHERS OR FOR THE BENEFIT OR USE OF OTHERS IN ANY TYPE OF CLAIM OR ACTION. YOU AND MODO ARE EACH WAIVING RESPECTIVE RIGHTS TO PARTICIPATE IN A CLASS ACTION. BY ACCEPTING THIS AGREEMENT, YOU GIVE UP YOUR RIGHT TO**

23

**PARTICIPATE IN ANY PAST, PENDING OR FUTURE CLASS ACTION OR ANY OTHER CONSOLIDATED OR REPRESENTATIVE PROCEEDING, INCLUDING ANY PROCEEDING EXISTING AS OF THE DATE YOU AGREED TO THIS AGREEMENT.**

**17.17** Severability. This Agreement applies solely to the extent permitted by law. If for any reason any provision of this Agreement or portion thereof, is found to be unlawful, void, or unenforceable, that part of this Agreement will be deemed severable and shall not affect the validity and enforceability of the remainder of this Agreement which shall continue in full force and effect. To the fullest extent allowable by law and equity, the parties agree that any such provision may be blue-penciled or otherwise construed by the forum presiding over any dispute to give effect to the intent of the parties and consistent with the overall purpose and intent of the agreement, and may be deemed replaced by an enforceable provision that comes closest to the intention underlying the unenforceable provision.

## END OF SECTION 16 ARBITRATION AGREEMENT

### 18.    Waiver of Jury Trial

**18.1**    EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THE PLATFORM OR SERVICES OR ANY TRANSACTIONS BETWEEN THE PARTIES, WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY.

### 19.    Miscellaneous

**19.1**    Entire Agreement. These Terms constitute the entire agreement between You and us with respect to Your use of the Service and supersede all prior or contemporaneous communications and proposals, whether electronic, oral or written, between You and us with respect to Your participation.

**19.2**    Tax. You are solely responsible for any taxes which apply to Your use of the Service.

**19.3**    Force Majeure. We will not be liable or responsible for any failure to perform, or delay in performance of, any of our obligations under these Terms that is caused by events outside of our reasonable control, including but not limited to an act of God, hurricane, war, fire, riot, earthquake, weather, pandemic or endemic, terrorism, act of public enemies, strikes, labor shortage, actions of governmental authorities or other *force majeure* event.

**19.4**    Severability. In the event any provision of these Terms is held unenforceable, such provision will be ineffective but shall not affect the enforceability of the remaining provisions.  To the fullest extent allowable by law and equity, the parties agree that any such provision may be blue-penciled or otherwise construed by the forum presiding over any dispute to give effect to the intent of the parties and consistent with the overall purpose and intent of the agreement, and may be deemed replaced by an enforceable provision that comes closest to the intention underlying the unenforceable provision.

24

**19.5**    Assignment. These Terms are personal to You, and are not assignable, transferable or sub-licensable by You except with our prior written consent. We reserve the right to assign, transfer or delegate any of our rights and obligations hereunder to any third party without notice to You, and in such case the Terms shall apply to and bind any successor-in-interest or assignee of ours.

**19.6**    Third-Party Beneficiaries.    You further agree and intend that these Terms are entered into for the express benefit of your spouse, heirs, children and next-of-kin and shall bind same to the extent of any claims arising from your use of the Service which is brought by them or by any person for their use or benefit.

**19.7**    Entire Agreement. These Terms contain the entire understanding between You and us, and supersede all prior understandings between You and us relating to the subject matter.

**19.8**    Business Transfers. In the event we undergo a change of control, merger, acquisition, or sale of assets, Your User Account and associated data may be part of the assets transferred to the purchaser or acquiring party.

**19.9**    Waiver. Our failure to assert breach or a violation of these Terms or otherwise failure to exercise any rights under these Terms shall not constitute or be deemed a waiver or forfeiture of such rights or a waiver or forfeiture of such rights in the future.

**19.10** Survival of Obligations.    SECTIONS 13, 14, 15, 16, 17 and 19 SHALL BE DEEMED TO SURVIVE THE TERMINATION OF THESE TERMS OF USE OR YOUR USER ACCOUNT FOR ANY REASON.

**20.    Applicable Law and Jurisdiction**

**20.1**    Governing Law. Subject to the Arbitration Agreement contained in Section 16, which is governed by the Federal Arbitration Act, the parties agree that these Terms and the related Service are governed by and shall be construed in accordance with the laws of the State of Delaware without regard to its principles of conflicts of law.  To the extent this governing law provision is finally determined to be unenforceable as it relates to the use of the Services, the parties agree that the governing law shall in such event be the applicable law in the jurisdiction in which the user who is a party to the dispute properly utilizes the services. Nothing herein is intended to limit a party's right to appeal a determination by a court of law that the laws of the State of Delaware are unenforceable.

**20.2**    Exclusive Forum.  Subject to the Arbitration Agreement contained in Section 16, the parties agree that any dispute, controversy, or claim arising out of or in connection with these Terms, or the breach, termination or invalidity of these Terms, will be submitted exclusively to state or federal courts in Delaware and You and we consent to the venue and personal jurisdiction of those courts. Notwithstanding the foregoing, any motion to compel arbitration or to enforce an arbitral award issued hereunder may be brought before any court of competent jurisdiction.

# EXHIBIT C

EXHIBIT C - PAGE 47

**UNITED STATES DISTRICT COURT**
**DISTRICT OF OREGON**
**PORTLAND DIVISION**

| | |
|---|---|
| BETHANY ANDERSON, on behalf of themselves and other similarly situated, | Case No.: 6:25-cv-2069-AP |
| Plaintiff, | **DECLARATION IN SUPPORT** |
| v. | |
| ARB GAMING, LLC, d/b/a Modo.us, | |
| Defendant. | |

**DECLARATION OF WILLIAM COLELLO IN SUPPORT OF DEFENDANT**
**ARB GAMING, LLC D/B/A MODO'S MOTION TO COMPEL ARBITRATION**

I, William Colello, on oath depose and state as follows:

1.      I am the Vice President of Player Operations of ARB Gaming, LLC d/b/a MODO ("ARB"), and in this capacity, I am familiar with the corporate and organizational structure as well as the operations of ARB.

2.      I provide this Declaration in support of ARB's Motion to Compel Arbitration of the claim asserted by Plaintiff Bethany Anderson ("Plaintiff") against ARB.

3.      I am over eighteen years old and capable of testifying as to the facts set forth in this Declaration based on my own personal knowledge.

4.      I have reviewed the putative class action Complaint filed by Plaintiff dated November 6, 2025.

5.      It is my understanding from the Complaint that Plaintiff asserts three causes of action: (1) declaratory judgment that ARB's games are illegal, pursuant to 28 U.S.C §§ 2201, *et seq.*; (2) recovery under the Oregon gambling loss recovery statute, Or. Rev. Stat. § 30.720, *et seq.* (the "Oregon Loss Recovery Act" or "LRA"); and (3) violations of the Unlawful Trade Practices Act, Or. Rev. Stat. § 646.605, *et seq.* It is my further understanding that Plaintiff alleges his claims

1

pursuant to the Oregon Loss Recovery Act, on the theory that the games offered by ARB constitute unlawful gambling under Oregon law.

6.    ARB offers customers the ability to access its free-to-play social games online designed solely for amusement and entertainment through the following URL: modo.us (the "Platform").

7.    In order to use the Platform, all persons were and are required to agree to certain Terms of Use provided on the Platform.

8.    Under all applicable Terms of Use (collectively, the "Terms") agreed to by all customers of ARB's platform, claims of ARB and all its customers arising from or relating to ARB's Platform and services were and are subject to mandatory and binding arbitration.

9.    At all relevant times hereto, in order to have accessed, used, or played games on ARB's Platform and services or to make any purchases, ARB's Platform required all customers to first create a customer account and register a user account. This process required users to take affirmative steps to agree to the applicable Terms.

10.    At all relevant times, in order to create an account on the Platform, each customer was directed to a screen wherein they were required to check a box next to a statement that included the language, "I agree with the Terms of Service and Sweepstakes Rules," prior to completion of registration.

11.    **Figure 1** below is a true and accurate screenshot depicting an example of the initial screen encountered by all persons when attempting to sign up to create and use the Platform and services for the first time.

2

DM1\20481702.1

Docusign Envelope ID: 35380076D-720G-421B-B905-54B54E4FD925  Case 6:25-cv-02069-AP-AFD   Document 25   Filed 01/09/26   Page 3 of 9

Case 2:25-cv-01868-DJC-CSK   Document 102   Filed 08/03/26   Page 60 of 103



**FIGURE 1, Registration and Clickwrap Acceptance Form**

12.     Though the exact language of the excluded states may have varied, during the relevant period, the Terms of Use were hyperlinked and were bolded and in bright blue font against a dark background, as shown in **Figure 1**.

13.     At all relevant times hereto, no ARB customer could have used or accessed the ARB Platform and its services, or made any purchases on or through the Platform, unless the customer first agreed to and accepted the then-applicable Terms in accordance with the procedures described above in ¶¶ 7–12.

14.     In addition to requiring new customers to accept the then-applicable Terms at the time of registration, from time-to-time ARB has amended its Terms.

3

Docusign Envelope ID: 3538076D-720G-421B-B905-54B54E4FD925 Case 6.25-CV-02069-APP Document 25    Filed 01/09/26    Page 4 of 9

Case 2:25-cv-01868-DJC-CSK    Document 102    Filed 08/03/26    Page 61 of 103

15.     Though the exact language of the Terms may have varied, all versions of the applicable Terms during the relevant time period required arbitration of all past, present or pending, and future disputes.

16.     After every amendment to the Terms described in ¶¶ 14-15, every Platform user was required to re-agree to the amended Terms as a condition of continued use of the Platform and its services, upon the user's next login to or access of the Platform.

17.     Plaintiff is a customer and user of the Platform. On or about August 8, 2024, Plaintiff created a customer account and registered with ARB prior to playing any games, and Plaintiff last played on the Platform on October 10, 2025, and last logged into her account on November 13, 2025.

18.     Pursuant to the amendments to the Terms, Plaintiff accepted and re-agreed to the then-applicable Terms in place as a condition of continued use, and did not opt-out of the arbitration agreement pursuant to the Terms.

19.     The most recent version of the Terms that Plaintiff accepted and agreed to was the version dated August 4, 2025 Terms (hereafter, the "August 2025 Terms").  A true and accurate copy of the August 2025 Terms is attached hereto as Exhibit A.

20.     The August 2025 Terms included the following notice at the beginning:

IMPORTANT NOTICES

. . .

THESE TERMS OF USE INCLUDE AN ARBITRATION AND CLASS ACTION WAIVER AGREEMENT WHICH REQUIRES THAT ANY PAST, PENDING, OR FUTURE DISPUTES BETWEEN YOU AND US SHALL BE RESOLVED BY FINAL AND BINDING ARBITRATION ON AN INDIVIDUAL BASIS ONLY AND FOR YOUR OWN LOSSES ONLY. YOU MAY NOT PROCEED AS A CLASS REPRESENTATIVE, MEMBER OR PART OF ANY PROPOSED CLASS, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL SUIT, QUI TAM ACTION OR ANY REPRESENTATIVE PROCEEDING, OR OTHERWISE

4

DM1\20481702.1

Docusign Envelope ID: 35380076D-720G-421B-B905-54B54F4FD925 Case 6.25-cv-02069-AP4FD93 Document 25    Filed 01/09/26    Page 5 of 9

Case 2:25-cv-01868-DJC-CSK    Document 102    Filed 08/03/26    Page 62 of 103

SEEK TO RECOVER ON BEHALF OF OTHERS OR FOR THE BENEFIT OF OTHERS IN ANY TYPE OF CLAIM OR ACTION. ARBITRATION MEANS YOU WILL NOT BE ABLE TO SEEK DAMAGES IN COURT OR PRESENT YOUR CASE TO A JURY, UNLESS OTHERWISE PERMITTED BY THESE TERMS.

OPT-OUT. IF YOU DO NOT WISH TO BE SUBJECT TO ARBITRATION ON A RETROACTIVE BASIS AND AS TO ANY FUTURE CLAIMS, AND YOU HAVE NOT PREVIOUSLY AGREED TO AN ARBITRATION PROVISION WITH US IN CONNECTION WITH YOUR USE OF OUR SERVICES, YOU MAY OPT OUT OF THE ARBITRATION AGREEMENT WITHIN THIRTY (30) DAYS OF ENTERING THIS AGREEMENT BY FOLLOWING THE INSTRUCTIONS PROVIDED IN THE "BINDING ARBITRATION AGREEMENT AND CLASS ACTION WAIVER" – SEE SECTION 16 OF THESE TERMS, BELOW. OPT-OUT REQUESTS SENT AFTER THE THIRTY (30) DAY PERIOD SHALL BE NULL AND VOID. EVEN IF YOU OPT OUT OF THE ARBITRATION AGREEMENT IN SECTION 16, ALL OTHER REMAINING SECTIONS OF THESE TERMS APPLY.

Ex. A, at 1.

21.    The August 2025 Terms of the Terms also include a broad arbitration provision requiring that all past, pending, and future disputes be arbitrated, and that questions of arbitrability, enforceability, and validity be determined by an arbitrator:

> You and Modo agree that *any past, pending, or future dispute, claim or controversy* arising out of or relating to any purchase or transaction by you, your access to or use of any Platform or the Service, or to this Agreement, the Terms of Use, or Privacy Policy (including without limitation *any dispute concerning* the breach, enforcement, construction, *validity, interpretation, enforceability, or arbitrability* of this Agreement or the Terms of Use) (a "Dispute"), *shall be determined by arbitration*, including claims that arose before acceptance of any version of this Agreement.

Ex. A, at § 17.2.

22.    All versions of the Terms during the relevant time period required arbitration of all past, present or pending, and future disputes subject to application of either the AAA or JAMS Rules. *See* Ex. A, § 17.10 (specifying JAMS). The exception being that ARB and customers "retain the right to seek relief in a small claims court" for disputes within the scope of small claims court jurisdiction. *See, e.g.,* Ex. A, § 17.3.

5

DM1\20481702.1

Docusign Envelope ID: 35380076D-720G-421B-B905-54B54F4FD925 Case 6:25-CV-02069-AP  Document 25   Filed 01/09/26   Page 6 of 9

Case 2:25-cv-01868-DJC-CSK    Document 102    Filed 08/03/26    Page 63 of 103

23.    Though the exact language of each version of the Terms in effect during the relevant time period may have varied, each such version of the Terms contained an arbitration agreement wherein the parties agreed to arbitrate disputes on an individual basis. *See* Ex. A, at 1 ("These terms of use include an arbitration and class action waiver agreement which requires that any past, pending, or future disputes between you and us shall be resolved by final and binding arbitration on an ***individual*** basis only and for your own losses only.") (emphasis added) (capitalization omitted); *id.* at §17.16 ("You may only arbitrate or litigate on an ***individual*** claims basis only and for your own losses only.") (emphasis added) (capitalization omitted).

24.    The August 2025 Terms additionally required arbitration of all disputes subject to application of the Judicial Arbitration and Mediation Services, Inc. ("JAMS") rules. *See id.* § 17.10 ("Initiating Arbitration Under JAMS Rules").

25.    Pursuant to the August 2025 Terms, ARB its customers agreed to arbitrate disputes on an individual basis and waived their rights to a trial by jury. *See id.* §§ 17.16 ("You may only arbitrate or litigate on an individual claims basis only and for your own losses only.") (capitalization omitted), 18 ("Waiver of Jury Trial").

26.    Though the exact language of each version of the Terms in effect during the relevant period may have varied, each such version of the Terms contained an arbitration provision wherein the Platform users unconditionally waived their rights at least to bring, participate in, or recover relief from any class, collective, or other representative action. *See* Ex. A, § 17, 17.16.

27.    Pursuant to the August 2025 Terms, the specific class action waiver stated:

> TO THE MAXIMUM EXTENT PERMITTED BY APPLICABLE LAW, NEITHER YOU NOR MODO SHALL BE ENTITLED TO ARBITRATE OR LITIGATE ANY DISPUTE IN A REPRESENTATIVE CAPACITY. YOU MAY ONLY ARBITRATE OR LITIGATE ON AN INDIVIDUAL CLAIMS BASIS ONLY AND FOR YOUR OWN LOSSES ONLY. UNDER THIS AGREEMENT, YOU MAY NOT PROCEED IN ARBITRATION OR COURT AS A CLASS REPRESENTATIVE,

6

MEMBER OR PART OF ANY PROPOSED CLASS, COLLECTIVE ACTION, PRIVATE ATTORNEY GENERAL SUIT, QUI TAM ACTION OR ANY REPRESENTATIVE PROCEEDING, OR OTHERWISE SEEK TO RECOVER ON BEHALF OF OTHERS OR FOR THE BENEFIT OR USE OF OTHERS IN ANY TYPE OF CLAIM OR ACTION. YOU AND MODO ARE EACH WAIVING RESPECTIVE RIGHTS TO PARTICIPATE IN A CLASS ACTION. BY ACCEPTING THIS AGREEMENT, YOU GIVE UP YOUR RIGHT TO PARTICIPATE IN ANY PAST, PENDING OR FUTURE CLASS ACTION OR ANY OTHER CONSOLIDATED OR REPRESENTATIVE PROCEEDING, INCLUDING ANY PROCEEDING EXISTING AS OF THE DATE YOU AGREED TO THIS AGREEMENT.

*See id.* § 17.16.

28.     At all relevant times hereto, customers who made purchases on or through the Platform and its services would have had to agree to be bound to the Terms via the procedures described in ¶¶ 7–12 above.

29.     I and ARB know this to be true and accurate because all new users of the Platform would have been required to follow the registration and acceptance procedures described above in ¶¶ 7–12 in order to create and register for any account, and no purchases would have been possible on or through the Platform and its services unless and until the customer had created an account and agreed to and accepted the then-applicable Terms.

30.     I and ARB further know this to be true and accurate because, at all relevant times hereto, all existing ARB customers would have been required to accept the then-applicable Terms through the procedures described above in ¶¶ 7–12 as a condition of continued use of ARB's Platform and services.

31.     Accordingly, all claims by and between ARB and its customers, including Plaintiff, by agreement to the Terms, are mutually subject to mandatory and binding arbitration.

*[signature page follows]*

7

DM1\20481702.1

I declare under penalty of perjury that the foregoing is true and correct.

1/9/2026

Executed on ___ day of January 2026

Signed by:

William Colello

0CB23621590E41E...

Name: William Colello
Title: Vice President of Player Operations
ARB Gaming, LLC

8

DM1\20481702.1

## CERTIFICATE OF SERVICE

I hereby certify that on January 9, 2026, a true and correct copy of **DECLARATION OF WILLIAM COLELLO IN SUPPORT OF DEFENDANT ARB GAMING, LLC D/B/A MODO'S MOTION TO COMPEL ARBITRATION** was served on all parties and counsel of record via the CM/ECF System.

*/s/ Janice Reeder*
Janice Reeder,
an employee of Duane Morris LLP

# EXHIBIT D

Tyson E. Hafen (UT Bar No. 14188)
**DUANE MORRIS LLP**
100 North City Parkway, Suite 1560
Las Vegas, NV 89106
Tele: 702.868.2600; Fax: 702.385.6862
E-Mail: tehafen@duanemorris.com

WILLIAM M. GANTZ (*pro hac vice*
forthcoming*)*
**DUANE MORRIS LLP**
100 High Street, Suite 2400
Boston, MA 02110-1724
T: 857.448.4234; F: 857.401.3026
Email: BGantz@duanemorris.com

Attorneys for Defendants *ARB Gaming, LLC*
and *ARB Gaming Interactive Incorporated*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| NATHAN WALKER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ARB GAMING, LLC and ARB INTERACTIVE INCORPORATED,<br><br>Defendants. | Case No.: 2:25-cv-00991-JCB<br><br>**DEFENDANTS ARB GAMING, LLC AND ARB INTERACTIVE INC'S MOTION TO COMPEL ARBITRATION AND MEMORANDUM OF LAW IN SUPPORT** |

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), Defendants ARB

Gaming, LLC and ARB Interactive Incorporated (collectively, "ARB") move this Court for an

order compelling Plaintiff Nathan Walker ("Plaintiff"), a customer of ARB, to submit his claims

against ARB to individual arbitration and stay any further litigation activity and deadlines

applicable until the completion of such arbitration. As grounds for this Motion to Compel

i

Arbitration, ARB relies on the accompanying Memorandum of Law in Support and the concurrently filed supporting Declaration of William Colello.

Contemporaneous with this Motion to Compel Arbitration, ARB has filed a Motion to Dismiss for lack of personal jurisdiction. Accordingly, ARB respectfully requests that this Court first address the Motion to Dismiss.

Subject to the above requested order of review, to the extent this Court does not dismiss this action for lack of personal jurisdiction as requested in the contemporaneously filed Motion to Dismiss, ARB respectfully requests this Court enter an order compelling arbitration of Plaintiff's claims on an individual basis for the reasons outlined herein, and for such other and further relief that the Court deems just and proper.

Dated: March 6, 2026                    Respectfully submitted,

                                        **DUANE MORRIS** LLP

                                        */s/ Tyson E. Hafen*
                                        Tyson E. Hafen (UT Bar No. 14188)
                                        William M. Gantz (*pro hac vice* forthcoming)

## TABLE OF CONTENTS

I.    INTRODUCTION ............................................................**Error! Bookmark not defined.**

II.    STATEMENT OF THE FACTS ................................................................................2

    A.    The Parties and Claims ......................................................................... 2

    B.    All Users of the Platform Agreed to the Terms and Arbitration Provisions........... 3

III.    ARGUMENT........................................................................................................6

    A.    Legal Standard ..................................................................................... 6

    B.    Plaintiff Agreed to Mandatory Arbitration Provisions ........ **Error! Bookmark not defined.**

    C.    The Terms Delegated Questions of Arbitrability to the Arbitrator......................... 9

    D.    The Class Action Waiver is Enforceable ................................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228 (2013).............................1, 6, 15

*Ambrosia v. Blazesoft Ltd.*, No. 25 C 1723, 2025 WL 2976477 (N.D. Ill. Oct. 21, 2025)............12

*AT&T Mobility LLC v. Concepcion,* 563 U.S. 333 (2011) ............................6, 15

*Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7 (1st Cir. 2009)............................10

*Ball v. Skillz Inc.*, No. 2:20-cv-00888-JAD-BNW, 2020 WL 6685514 (D. Nev. Nov. 12, 2020) ............................13

*Belnap v. Iasis Healthcare*, 844 F.3d 1272 (10th Cir. 2017)............................10

*Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842 (6th Cir. 2020)............................10

*Boatner v. SSPS LLC*, No. 25 Civ. 3251 (DEH), 2025 WL 3281509 (S.D.N.Y. Nov. 25, 2025) ............................12

*Boyle v. Sweepsteaks Ltd.*, No. 8:25-cv-00302-JVS-ADS, 2025 WL 1674480 (C.D. Cal. May 19, 2025)............................ 11-12

*Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006) ............................ 10-12, 14

*Christensen v. Desert Rock Cap., Inc.*, No. 2:24-cv-00808-RJS-CMR, 2025 WL 1135598 (D. Utah Apr. 17, 2025)............................16

*Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003) ............................6

*Curran v. Sideprize LLC*, No. 2477CV01075, 2025 WL 1927786 (Mass. Super. Ct. Apr. 30, 2025) ............................ 13-14

*Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 (1985)............................2, 7

*Doe v. VGW Malta Ltd.*, No. 1:23-CV-3226-TWT, 2023 WL 8234650 (N.D. Ga. Nov. 28, 2023) ............................12

*Fair Gaming Advocs. MA LLC v. VGW Holdings Ltd.*, No. 2384-CV-02451, 2024 WL 5279408 (Mass. Super. Dec. 17, 2024)............................13

*Fedor v. United Healthcare, Inc.*, 976 F.3d 1100 (10th Cir. 2020)............................2

*Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991)............................9

*Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248 (10th Cir. 2012)............................8

*Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019) ..............................................9

*Lewis v. Eassit, Inc.*, No. 2:22-CV-00121-HCN-DAO, 2023 WL 2522812 (D. Utah Mar. 15, 2023) ..............................................................................................................................15

*Love v. Overstock.com, Inc.*, No. 2:22-cv-00118-DBB-CMR, 2022 WL 3345730 (D. Utah Aug. 12, 2022) ......................................................................................................................10

*Lowery v. N.A.R., Inc.*, No. 2:18-cv-00480-JNP-PMW, 2019 WL 1099710 (D. Utah Mar. 8, 2019) ..............................................................................................................................15

*M.M. v. Sweepsteakes Ltd.*, No. 25-11481-RGS, 2025 WL 3240413 (D. Mass. Nov. 20, 2025) .......................................................................................................................... 11-12

*Mid Atl. Cap. Corp. v. Bien*, 956 F.3d 1182 (10th Cir. 2020) ..........................................................6

*Miller v. Corinthian Colleges, Inc.*, 769 F.Supp.2d 1336 (D. Utah 2011) ....................................15

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1 (1983)...............................7, 9

*Munoz v. Conduent State & Loc. Sols., Inc.*, No., 2025 WL 799482 (10th Cir. Mar. 13, 2025) ..................................................................................................................................3

*Nessim v. Fliff, Inc.*, No. 5:23-cv-01048-SSS-SHKx, 2024 WL 1600649 (C.D. Cal. Jan. 5, 2024) ..............................................................................................................................12

*Pagano v. NordicTrack, Inc.*, 749 F.Supp.3d 1183 (D. Utah 2024) ............................................ 8-9

*Penhall v. Young Living Essential Oils, LC*, No. 2:20-cv-00617-DBB-CMR, 2022 WL 15504063 (D. Utah Oct. 27, 2022) ...................................................................................... 8-9

*Prima Paint Corp. v. Flood & Conklin Mfg., Co.*, 388 U.S. 395 (1967)................................10, 12

*Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63 (2010) .................................................................2

*United States v. Carroll*, 105 F.3d 740 (1st Cir. 1997).....................................................................6

*United States v. McEwan*, 445 F.3d 237 (3rd Cir. 2006)....................................................................6

*Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468 (1989).................................................................................................................................9

*Zions Mgmt. Servs. v. Record*, 305 P.3d 1062 ................................................................................6

**Statutes**

Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* ....................................................................... *passim*

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS ARB GAMING, LLC AND ARB INTERACTIVE INC'S MOTION TO COMPEL ARBITRATION

### I.    INTRODUCTION

Plaintiff Nathan Walker ("Plaintiff"), a customer of ARB Gaming, LLC ("ARB Gaming") and ARB Interactive Incorporated ("ARB Interactive," and together with ARB Gaming, "ARB"), filed his putative Class Action Complaint on November 2, 2025, asserting a single cause of action against ARB: recovery under Utah's Gambling Act, Utah Code Ann. § 76-9-1401, *et seq.* Plaintiff's claims are subject to arbitration on an individual basis because every Utah customer of ARB's platform (modo.us, the "Platform")—including Plaintiff himself—affirmatively accepted and agreed to arbitrate individually through the Terms of Use (collectively, the "Terms"), each of which included a class action waiver and provision requiring ***arbitration of all past, pending, and future disputes***.  *See* William Colello in Support of Defendant ARB Gaming, LLC and ARB Interactive Incorporated's Motion to Compel Arbitration ("Colello Decl.") ¶¶ 8, 15, 20-23, attaching Exhibit A (the relevant Terms).

The arbitration provisions are "valid[ and] irrevocable," 9 U.S.C. § 2, and must be "rigorously enforce[d] . . . according to their terms." *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013). Plaintiff, an actual user of the Platform, is obligated to arbitrate his dispute pursuant to the Terms. And, to allow Plaintiff to seek class representation of other users without regard to the Terms that apply to the other users themselves, would afford Plaintiff greater rights than the users who are also bound by the applicable Terms

1

## II.    STATEMENT OF THE FACTS

### A.    The Parties and Claims

ARB offers customers the ability to access its free-to-play online social gaming platform designed solely for amusement and entertainment through the Platform, accessible at the following URL: modo.us. Colello Decl. ¶ 6. The Platform does not provide any essential or critical service, rather its users voluntarily choose whether to participate, and its users are free to stop playing at any time without consequence. The Terms, which includes an arbitration clause, present users with clear, straightforward terms governing their use of the platform.

Plaintiff is a Utah resident who played ARB's games and now seeks to represent a putative class of Utah residents who allegedly played on ARB's games. Compl. ¶¶ 6, 40. His allegations against ARB in this case arise from his use of the Platform. *See id.* ¶ 36–39. Indeed, Plaintiff's claims arise directly from the services provided by ARB that Plaintiff used and the Terms he accepted when registering his account before playing any games.

Pursuant to the Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), arbitration agreements are valid, irrevocable, and enforceable. 9 U.S.C. §§ 2-4; *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985). And because Plaintiff's claim falls within the scope of the arbitration agreement, and because any challenges to enforceability are to be decided by the arbitrator under the delegation clause, the Court should compel arbitration and stay this case pending its outcome. *See Fedor v. United Healthcare, Inc.*, 976 F.3d 1100, 1105 (10th Cir. 2020) ("While courts typically resolve 'arbitrability' issues such as validity, scope, or enforcement of an arbitration contract, delegation clauses within arbitration contracts can commit the determination of such issues to an arbitrator." (internal citations omitted) (citing *Granite Rock Co. v. Int'l Bhd of Teamsters*, 561 U.S. 287, 298 (2010)); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S.

2

63, 68–69 (2010)); *see also Munoz v. Conduent State & Loc. Sols., Inc.*, No. , 2025 WL 799482, at * (10th Cir. Mar. 13, 2025) ("Unless the agreement provides otherwise, courts resolve threshold arbitrability questions 'such as the validity, scope, or enforcement of an arbitration contract,' but the parties may choose to 'commit the determination of such issues to an arbitrator' via a delegation clause in the arbitration agreement." (internal citation omitted) (citing *Fedor*, 976 F.3d at 1105)).

**B.      All Users of the Platform Agreed to the Terms and Arbitration Provisions**

At all relevant times hereto, ARB required all users to first create a user account and register with the Platform prior to accessing, using, or playing any games on it. Colello Decl. ¶¶ 7-10. The Platform also required all users to agree to and accept the then-applicable Terms, each of which included an arbitration provision during the relevant period. *Id.* ¶¶ 7-10, 13-15.

A new user who wished to access the Platform must have affirmatively accepted and agreed to the Terms. *Id.* ¶¶ 7-9, 14, 29. In order to use or access the Platform in Utah, all users were required by the programming and operation of the Platform to first create a user account and register with the Platform. *Id.* In order to access any of the games, all users were and are required to accept and agree to the Terms. *Id.* Acceptance of the Terms is and was accomplished by checking a box next to a statement that included the language "I agree with the Terms of Service and Sweepstakes Rules," prior to the confirmation of completion of the sign-up process. *Id.* ¶¶ 10-13. The statement is directly above a greyed-out button saying "Submit," and within the statement the hyperlinks to the "Terms of Service," and "Sweepstakes Rules" are bolded and in bright blue font against a dark background. *Id.* ¶¶ 10-13.

All of these features are reflected in the example screenshot below:

3



*Id.* ¶ 11 (**Figure 1**). In addition to requiring new users to accept the then-applicable Terms at the time of registration, from time-to-time the Terms were amended. *Id.* ¶¶ 14-18. After every amendment to the Terms during the relevant period, every Platform user was required to re-agree to the amended Terms as a condition of continued use of the Platform and its services, upon their next login to or access of the Platform. *Id.*

When users accessed the Terms, all versions included a notice of the arbitration provision at the beginning. *Id.* ¶ 20. As a customer himself, Plaintiff created a customer account on June 21, 2024, and registered with ARB prior to playing any games. *Id.* ¶ 17. Pursuant to the amendments to the Terms, Plaintiff accepted and re-agreed to the then-applicable Terms in place as a condition of continued use. *Id.* ¶¶ 18-19. The most recent version of the Terms that Plaintiff accepted and agreed to was the Terms dated August 4, 2025 (hereafter, the "August 2025 Terms"). *See id.* ¶ 19.

Importantly, the August 2025 Terms required arbitration of all disputes subject to application of the Judicial Arbitration and Mediation Services, Inc. ("JAMS"), *id.* ¶ 24; Ex. A, § 17.10, and required that questions of arbitrability, enforceability, and validity be determined by an arbitrator. *Id.* ¶ 21; Ex. A, § 17.2 ("You and MODO agree that any ***past, pending or future dispute,***

*claim or controversy* . . . (including without limitation any dispute concerning the breach, enforcement, construction, validity, interpretation, enforceability or arbitrability of this Agreement of the Terms of Use) . . . shall be determined by arbitration.") (emphasis added). Likewise, pursuant to the August 2025 Terms, ARB and its customers agreed to arbitrate disputes on an individual basis and waived their rights to a trial by jury. *Id.* ¶¶ 23-25; Ex. A, at § 17.16 ("You may only arbitrate or litigate on an individual claims basis only and for your own losses only."), 18 ("Waiver of Jury Trial"). Additionally, pursuant to the August 2025 Terms, ARB's customers also unconditionally waived their rights at least to bring, participate in, or recover relief from any class, collective, or other representative action. *Id.* ¶¶ 23, 26-27; Ex. A, § 17.16.

Again, all versions of the Terms during the relevant time period required arbitration of all disputes subject to application of AAA or JAMS Rules, and included an opt out provision. *Id.* ¶ 22 (identifying JAMS as applicable Rules for Plaintiff's claim, and affirming unattached versions contained similar provisions through AAA or JAMS). Though the exact language of each version of the Terms in effect during the relevant time period may have varied, each such version of the Terms contained: (1) an arbitration agreement wherein the parties agreed to arbitrate disputes on an individual basis and waived their rights to a trial by jury; (2) a provision to "opt out" of the arbitration agreement provision; and (3) a waiver to bring, participate in, or recover relief from any class, collective, or other representative action. *Id.* ¶ 18-20, 26-27; *id.* ¶¶ 22-23, 26 (affirming that unattached versions contained the same material provisions). Therefore, Plaintiff (and all users who accessed or used the Platform), would have had to agree to be bound by all versions of the Terms, including the class action waiver provision and arbitration agreement. *Id.* ¶¶ 28-30.

Accordingly, all claims by the Platform users—including Plaintiff's claims—by agreement to the Terms, are mutually subject to mandatory and binding arbitration. *Id.* ¶ 31.

III.    **ARGUMENT**

A.    **Legal Standard**

The FAA applies to (1) "written [arbitration] provision[s]" (2) "evidencing a transaction involving commerce." 9 U.S.C. § 2. The FAA covers interstate commerce and intrastate commerce that would, "in the aggregate," have a "substantial effect on interstate commerce." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56-57 (2003). The arbitration provision in the Terms is in writing, and the Platform permits online gaming, which are "transaction[s] involving interstate commerce." *See, e.g.*, *United States v. Carroll*, 105 F.3d 740, 742 (1st Cir. 1997) ("Transmission of photographs by means of the Internet is tantamount to moving . . . across state lines and thus constitutes . . . interstate commerce."); *United States v. McEwan*, 445 F.3d 237, 245 (3rd Cir. 2006) ("[T]he Internet is an instrumentality and channel of interstate commerce[.]"). Furthermore, ARB is not located in Utah, so any alleged transactions involving the Platform and residents of Utah must be interstate. Thus, the FAA applies to the transactions at issue.

Under the FAA, arbitration agreements are "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA reflects a "liberal federal policy favoring arbitration," *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344-46 (2011), and requires courts to compel arbitration "upon being satisfied that the making of the agreement for arbitration . . . is not in issue." 9 U.S.C. § 4; *see also Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) ("[C]ourts must 'rigorously enforce' arbitration agreements according to their terms[.]" (internal citations omitted)); *Mid Atl. Cap. Corp. v. Bien*, 956 F.3d 1182, 1192 (10th Cir. 2020) ("[The FAA's] ''principal purpose' . . . is to 'ensur[e] that private arbitration agreements are enforced according to their terms.'" (first alteration added) (quoting *AT&T Mobility LLC*, 563 U.S. at 344)); *Zions Mgmt. Servs. v. Record*,

6

305 P.3d 1062, 1067 ("[T]he FAA 'was designed to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate' and to 'ensure the enforceability, according to their terms, of private agreements to arbitrate.'" (quoting *Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 474, 476 (1989)). "[The FAA] leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement" applies. *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

Similarly, the Utah Uniform Arbitration Act ("UUAA") provides that "[a]n agreement contained in a record to submit to arbitration any existing or subsequent controversy arising between the parties to the agreement is valid, enforceable, and irrevocable except upon a ground that exists at law or in equity for the revocation of a contract." Utah Code § 78B-11-107. Utah courts have consistently held arbitration clauses to be enforceable. The plain language of the UUAA requires a court to compel arbitration once it determines that a valid agreement to arbitrate exists. The UUAA states as follows:

> (1) On motion of a person showing an agreement to arbitrate and alleging another person's refusal to arbitrate pursuant to the agreement:
>
> > (a) if the refusing party does not appear or does not oppose the motion, the court shall order the parties to arbitrate; and
> >
> > (b) if the refusing party opposes the motion, the court shall proceed summarily to decide the issue and order the parties to arbitrate unless it finds that there is no enforceable agreement to arbitrate.

§ 78B-11-108(1). Thus, once this Court finds a valid written agreement to arbitrate, the Court should compel arbitration upon an application therefor.

**B.    Plaintiff Agreed to Mandatory Arbitration Provision**

As indicated above, Plaintiff, as well as all other users of the Platform, cannot register, use, or access the Platform without clicking a checkbox to affirm that they agree to the Terms when first registering and subsequently re-agreeing to the then-applicable Terms. Colello Decl. ¶¶ 7-10. The Terms are prominently displayed next to the checkbox—they are bolded and in bright blue font with hyperlinks against a dark background. *Id.* ¶¶ 11-12. In short, the Terms were accepted via a typical and enforceable "clickwrap" agreement process.  "Clickwrap is a commonly used term for agreements requiring a computer user to 'consent to any terms or conditions by clicking on a dialog box on the screen in order to proceed with [a] . . . transaction.'" *Hancock v. Am. Tel. & Tel. Co., Inc.*, 701 F.3d 1248, 1255 (10th Cir. 2012) (quoting *Feldman v. Google, Inc.*, 513 F.Supp.2d 229, 236 (E.D. Pa. 2007)).

"Clickwrap agreements are increasingly common and 'have routinely been upheld.'" *Id.* at 1256 (quoting *Smallwood v. NCsoft Corp.*, 730 F.Supp.2d 1213, 1226 (D. Haw. 2010)).  Courts, including the District of Utah, have regularly found such clickwrap agreements sufficient to provide reasonable notice of terms of use. *See, e.g.*, *Pagano v. NordicTrack, Inc.*, 749 F.Supp.3d 1183, 1190 (D. Utah 2024) (finding that "notice was conspicuous" as to the terms being agreed to where plaintiffs "were required to affirmatively click a checkbox located adjacent to a notice stating they had each read and agreed to the . . . Terms); *Penhall v. Young Living Essential Oils, LC*, No. 2:20-cv-00617-DBB-CMR, 2022 WL 15504063, at *5–6 (D. Utah Oct. 27, 2022) (finding plaintiff had reasonable notice where the agreement contained a paragraph stating that the individual had "read and agree[d] to be bound by the terms and conditions of the Agreement," the corresponding agreements were hyperlinked beneath the text, and under said hyperlinks, was a

8

checkbox next to text stating, "By clicking on this box, I agree to these statements and to be bound by the terms and conditions of this Agreement.").

Similarly, here, the Platform users had reasonable notice of the Terms, including the arbitration provisions therein. *See Pagano*, 749 F.Supp.3d at 1190; *Penhall*, 2022 L 155040063 at *5–6. ARB customers acknowledged and expressly agreed to the Terms by clicking the checkbox above to the "Submit" button. Plaintiff's inability to negotiate the Terms and that he could not have used ARB's Platform without agreeing to the Terms is irrelevant, and particularly more so when the Plaintiff's use of the Platform to seek entertainment was entirely elective on his part. Therefore, ARB's Terms—which Plaintiff agreed to—are enforceable clickwrap agreements.

## C.    The Terms Delegated Questions of Arbitrability to the Arbitrator

Any disputes concerning the scope of arbitrability were expressly delegated to the arbitrator. The FAA creates a strong, liberal policy in favor of arbitration. *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25 (1991); *Volt Info. Scis., Inc.*, 489 U.S. at 475–76. The FAA's heavy presumption in favor of arbitrability requires courts to resolve all doubt as to the scope of arbitrable issues in favor of arbitration. *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24.

"[P]arties may agree to have an arbitrator decide not only the merits of a particular dispute but also '"gateway" questions of "arbitrability," such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy." *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 67-68 (2019).

Here, the August 2025 Terms—the last version that Plaintiff agreed to, Colello Decl. ¶ 19—delegated questions of arbitrability to the arbitrator. *Id.* ¶ 21, Ex. A, § 17.2 ("any past, present, or future dispute . . . shall be determined by arbitration."). That is clear and unmistakable evidence that the parties intended for the issue of arbitration to be arbitrated.

Further evidence that the arbitration provision delegates substantive arbitrability to the arbitrator lies in the fact that the August 2025 Terms required adherence to JAMS rules. *Id.* ¶ 24; Ex. A, § 17.10. The "incorporation" of arbitration rules that delegate arbitrability to the arbitrator "evidence[s] a clear and unmistakable intent to delegate questions of arbitrability to an arbitrator." *Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1279 (10th Cir. 2017); *see also Love v. Overstock.com, Inc.*, No. 2:22-cv-00118-DBB-CMR, 2022 WL 3345730, at *3–4 (D. Utah Aug. 12, 2022) (relying in part on *Belnap* in holding that "[b]ecause the arbitration clause plainly incorporates the AAA Rules, the court finds that the parties clearly and unmistakably intended for an arbitrator to decide arbitrability"). JAMS rules expressly provide that issues of jurisdiction and arbitrability shall be submitted to and ruled on by the arbitrator. (June 1, 2021), https://www.jamsadr.com/rules-streamlined-arbitration/#Rule-8. Incorporation of such arbitral rules into an arbitration agreement is independently sufficient to delegate all questions of arbitrability to the arbitrator ***as a matter of law***. *See, e.g.*, *Belnap*, 844 F.3d at 1279; *Love*, 2022 WL 3345730, at *3–4; *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 11 (1st Cir. 2009) (finding that incorporation of the AAA's Rule 7(a), which "says plainly that the arbitrator may 'rule on his or her own jurisdiction' including any objection to the 'existence, scope or validity of the arbitration agreement'" "is about as 'clear and unmistakable' as language can get" (citations omitted)); *Blanton v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 845–46 (6th Cir. 2020) ("[I]ncorporation of the [Arbitration] Rules (or similarly worded arbitral rules) provides 'clear and unmistakable' evidence that the parties agreed to arbitrate 'arbitrability.'").

While Plaintiff alleges that the Platform's games are unlawful—its claims still must be arbitrated pursuant to controlling precedent established by the United States Supreme Court in its seminal decisions in *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440 (2006), and *Prima*

10

*Paint Corp. v. Flood & Conklin Mfg., Co.*, 388 U.S. 395 (1967). *Buckeye* is directly on point in this regard. In that case, the Supreme Court decided the issue of "whether a court or an arbitrator should consider the claim that a contract containing an arbitration provision is void for illegality." *Buckeye*, 546 U.S. at 442. Applying the FAA, the Court found that when the "crux of the complaint is that the contract as a whole (including the arbitration provision) is rendered invalid" by an assertion of illegality, then "the issue of the contract's validity is considered by the arbitrator in the first instance." *Id.* at 445–46. The same result is mandated here—questions regarding illegality should be "considered by the arbitrator in the first instance." *Id.*

In fact, applying *Buckeye*, courts have routinely held that plaintiffs cannot avoid their arbitration agreements with other online casino-themed social game companies by challenging the terms as void gambling contracts. More recently, the District of Massachusetts and the Central District of California explicitly rejected identical arguments, in *M.M. v. Sweepsteakes Ltd.*, No. 25-11481-RGS, 2025 WL 3240413, at *1–2 (D. Mass. Nov. 20, 2025) and *Boyle v. Sweepsteaks Ltd.*, No. 8:25-cv-00302-JVS-ADS, 2025 WL 1674480, at *5 (C.D. Cal. May 19, 2025). Specifically, the District of Massachusetts compelled arbitration in *Sweepsteakes Ltd.*, where the defendant, operator of an online gaming platform, moved to compel arbitration alleging there was a contract between the parties that required "an arbitrator to resolve any disputes that might arise." *Sweepsteakes Ltd.*, 2025 WL 3240413, at *1. In contrast, the plaintiffs argued that "consideration was lacking, and that the agreement is a nonseverable provision of a contract that is void under Massachusetts law as contrary to public policy." *Id.* Nonetheless, the District of Massachusetts held that since the plaintiffs "agreed to a set of terms and conditions (the Terms and Conditions) in order to gain access to Sweepsteakes' gaming platform," that contained specific language

11

delegating "all questions of arbitrability to the arbitrator," then "the question of the validity of the arbitration agreement is to be resolved by the arbitrator." *Id.* at *1–2.

Similarly, in *Boyle*, the defendant was alleged to operate a casino-oriented internet gaming website, where users could play games such as slots, poker, and blackjack. 2025 WL 1674480, at *1. There too, the plaintiff argued that "the contract is void because it has an illegal purpose— online gambling," and that "*Buckeye* and *Prima Paint* are distinguishable," because "[w]hile the contracts in those cases were made for valid purposes but include unenforceable provisions, here, the contract was made with an illegal purpose." *Id.* at *5–6. The court disagreed, holding that "[u]nder California law, a contract that has an unlawful purpose and thus void is *an issue of enforceability, not formation*, and consequently controlled by *Buckeye* and its progeny." *Id.* at *5 (emphasis added). Accordingly, the court declined "to rule on the issue of illegality as it should be given to the arbitrator in the first instance" and held that "[w]hether the contract is void for illegality is a question for the arbitrator." *Id.* at *6; *see also Nessim v. Fliff, Inc.*, No. 5:23-cv-01048-SSS-SHKx, 2024 WL 1600649, at *1–10 (C.D. Cal. Jan. 5, 2024) (compelling dispute to arbitration despite allegations that "Fliff operates an illegal unregulated online sports book").

Other courts have reached similar results in suits against online gaming platforms alleged illegality. *See e.g., Boatner v. SSPS LLC*, No. 25 Civ. 3251 (DEH), 2025 WL 3281509, at *2 (S.D.N.Y. Nov. 25, 2025) (declining to rule on the issue of illegality as it should be given to the arbitrator in the first instance); *Ambrosia v. Blazesoft Ltd.*, No. 25 C 1723, 2025 WL 2976477, at *4–5 (N.D. Ill. Oct. 21, 2025) (same); *Doe v. VGW Malta Ltd.*, No. 1:23-CV-3226-TWT, 2023 WL 8234650, at *3 (N.D. Ga. Nov. 28, 2023) (rejecting argument that "the arbitration provision" was void for illegality because "whether a contract was illegal or void" as impermissible "under

state law is a question for the arbitrator"); *Ball v. Skillz Inc.*, No. 2:20-cv-00888-JAD-BNW, 2020 WL 6685514, at *5 (D. Nev. Nov. 12, 2020).

For example, Massachusetts courts facing loss recovery act claims by *third party non-signatories* have also been compelled to arbitrate such claims under theories of estoppel and thus could not avoid the applicable arbitration provisions which actual customers were bound by. *See Fair Gaming Advocs. MA LLC v. VGW Holdings Ltd.*, No. 2384-CV-02451, 2024 WL 5279408 (Mass. Super. Dec. 17, 2024); *Curran v. Sideprize LLC*, No. 2477CV01075, 2025 WL 1927786 (Mass. Super. Ct. Apr. 30, 2025). In *Fair Gaming Advocates MA LLC*, an online gaming platform (VGW) was sued by a non-user "any person" seeking to recover the amount of all the alleged gambling losses of actual users of the "social casino" gaming platform under the Massachusetts gambling loss recovery statute. 2024 WL 5279408, at *1. The gaming platform's motion to compel arbitration was granted. *Id.* at *3. The court found that the plaintiff's "claim flow[ed] directly from Massachusetts residents' terms-of-service agreements" because Massachusetts residents were required to agree to the terms to play VGW's games and "the losses that provide the basis for [plaintiff]'s claim were all incurred as a direct result of playing [the games] pursuant to the terms of service." *Id.* at *2. The court in *Fair Gaming Advocates* thus granted VGW's motion to compel arbitration based on estoppel because the non-signatory plaintiff stood "in the shoes" of users who were signatories of the arbitration agreement. *Id.* at *2–3.

Similarly, in *Curran v. Sideprize LLC*, two online gaming operators (Underdog and PrizePicks) were sued by a third-party seeking to recover the amount of all the alleged gambling losses of actual users of the daily fantasy sports platforms. 2025 WL 1927786, at *1. The *Curran* court found that since the third party plaintiff's "claims flow[ed] directly from Massachusetts residents' terms-of-use agreements with" Underdog and PrizePicks because "[t]he agreements

were prerequisites for Massachusetts residents to participate in" the defendants' contests, and "the alleged losses that provide[d] the basis for [plaintiff's] claims were all incurred as a direct result of participating in [Underdog's and PrizePicks'] online platforms pursuant to their respective terms of use." *Id.* at *2. The court thus granted the motions to compel arbitration under the doctrine of direct benefits equitable estoppel. *Id.*

Moreover, the Terms separate and apart from the Platform are not gambling contracts. There is no consideration supporting the agreement, which could be won or lost. Rather, users gave consideration by agreeing to the Terms as a condition of accessing the site, and did so before the user could access or use the Platform. Indeed, there was no obligation under the Terms for users to make any purchases, play any games, or use the Platform under any provision of the Terms. In short, the process here is like millions of other websites that require users to agree to certain general Terms of Use before accessing the website or services provided or buying anything. Here, the Terms were agreed to between the users *before* accessing the Platform.

As demonstrated above, the parties delegated any alleged issue of illegality to the arbitral body. Nevertheless, the Terms are not void as a gambling contract under Utah law, as there is no obligation to make or pay any wager, nor any amount lent or advanced for the purpose of a wager. The Terms are plainly just ground rules between the parties for access to the Platform and that parties must arbitrate any disputes.

In sum, *Buckeye* governs this case and dictates: (1) the purported illegality of the contract is an issue for the arbitrator, rather than the Court, to decide; and (2) in any event, the arbitration provision is severable from the rest of the contract and may be enforced according to its terms. Accordingly, this Court should reject Plaintiff's demand that the Court preempt the role of the arbitrator by considering Plaintiff's merits argument on illegality before ordering the case to

arbitration. Under these circumstances, any question concerning the scope and applicability of the obligation to arbitrate should be delegated to the arbitral body under the applicable delegation clauses.

### D.    The Class Action Waiver is Enforceable

Both the Supreme Court and courts in this Circuit have held that arbitration agreements precluding class action relief are valid and enforceable. *See Am. Express Co.*, 570 U.S. at 236–39; *Miller v. Corinthian Colleges, Inc.*, 769 F.Supp.2d 1336, 1348–49 (D. Utah 2011) (granting defendant's motion to compel individual arbitration and holding that class action waivers in arbitration agreements requiring plaintiffs to arbitrate their claims on an individual basis were neither substantively nor procedurally unconscionable); *Lewis v. Eassit, Inc.*, No. 2:22-CV-00121-HCN-DAO, 2023 WL 2522812, at *3 (D. Utah Mar. 15, 2023) ("But collective or class action waivers are not substantively unconscionable under Utah law." (citing *Miller*, 769 F.Supp.2d at 1348–49)). This is because a class action waiver "does not constitute the elimination of the right to pursue [a] remedy" but rather "merely limits arbitration to the two contracting parties." *Am. Exp. Co.*, 570 U.S. at 236.

Plaintiff agreed to the August 2025 Terms, which included both a class action waiver and required that Plaintiff and ARB arbitrate their claims on an individual basis. Colello Decl. ¶¶ 23-27; Ex. A, at 1, and § 17.16. There is nothing substantively unconscionable about the class action waiver. *Am. Exp. Co.*, 570 U.S. at 236–39; *see also AT&T Mobility LLC,* 563 U.S. 333; *Miller,* 769 F.Supp.2d at 1348–49. Regardless, where this Court is uncertain as to the validity of the class action waiver, it should allow the arbitrator to resolve that issue. *See Lowery v. N.A.R., Inc.*, No. 2:18-cv-00480-JNP-PMW, 2019 WL 1099710, at *2 (D. Utah Mar. 8, 2019) (holding that the issue of whether plaintiff waived her right to bring, participate in, or maintain a class action should be

15

resolved through arbitration); *see also Christensen v. Desert Rock Cap., Inc.*, No. 2:24-cv-00808-RJS-CMR, 2025 WL 1135598, at *2 n.21 (D. Utah Apr. 17, 2025) ("[I]t is not apparent why this court could opine on the validity of only this [class action waiver] portion of the arbitration agreements and not others.").

Therefore, by agreeing to the August 2025 Terms, and the class action waiver therein, Plaintiff should be required to arbitrate his claim on an individual non-class action basis.

## III.   CONCLUSION

For the foregoing reasons, this Court—to the extent that it does not dismiss this action for lack of personal jurisdiction—should compel arbitration of Plaintiff's claims on an individual basis in accordance with the arbitration provisions in the August 2025 Terms of ARB's Terms and stay further proceedings pending the completion of such arbitration.

Dated: March 6, 2026                              Respectfully submitted,

<div align="center">

**DUANE MORRIS** LLP

/s/ *Tyson E. Hafen*
Tyson E. Hafen (UT Bar No. 14188)
William M. Gantz (*pro hac vice* forthcoming)

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on March 6, 2026, I served via CM/ECF the foregoing **DEFENDANTS ARB GAMING LLC AND ARB INTERACTIVE INCORPORATED'S MOTION TO COMPEL ARBITRATION AND MEMORANDUM OF LAW IN SUPPORT** to all parties and counsel as identified on the CM/ECF-generated Notice of Electronic Filing.

<div align="right">

*/s/ Janice Reeder*

Janice Reeder, an employee of Duane Morris LLP

</div>

# EXHIBIT E

William M. Gantz (admitted to N.D. Cal.)
**Duane Morris LLP**
100 High Street, Suite 2400
Boston, MA 02110-1724
Telephone:  857 488 4234
Facsimile:  857 401 3026
E-mail:  BGantz@duanemorris.com

Karen L. Alexander (SBN: 265926)
**Duane Morris LLP**
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone:  619 744 2200
Facsimile:  619 393 0884
E-mail:klalexander@duanemorris.com

Lauren M. Case (SBN: 280629)
**Duane Morris LLP**
Spear Tower
One Market Plaza, Suite 2200
San Francisco, CA 94105-1127
Telephone:  415 957 3024
Facsimile:  415 723 7201
E-mail:LMCase@duanemorris.com
Attorneys for Defendant
ARB Gaming, LLC

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JIM DINSLAGE,<br><br>            Plaintiff,<br><br>v.<br><br>ARB GAMING, LLC D/B/A MODO.US,<br><br>            Defendant. | Case No.  3:25-CV-02562-VC<br><br>**DECLARATION OF PATRICK FECHTMEYER IN SUPPORT OF ARB GAMING, LLC'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**<br><br>Date:        May 8, 2025<br>Time         10:00 a.m.<br>Judge:      Hon. Vince Chhabria<br>Ctrm:        4<br><br>Complaint Filed: February 10, 2025<br>[Removed from Napa Superior Court, Case No. 25-CV-000297] |

FECHTMEYER DECLARATION IN SUPPORT OF ARB GAMING, LLC'S OPPOSITION TO MOTION TO REMAND

DM1\16447824.1

I, Patrick Fechtmeyer, declare and state as follows:

1.      I have personal knowledge of the facts contained in this declaration, and if called as a witness, I could and would testify as to their accuracy.

2.      I am the chief executive of ARB Gaming, LLC ("ARB"), and in this capacity I am familiar with the corporate and organizational structure as well as the operations of ARB.

3.      I have reviewed the records related to Plaintiff Jim Dinslage's account with ARB.

4.      Mr. Dinslage opened his account on August 8, 2023.

5.      During the lifetime of the account, Mr. Dinslage has attempted purchases totaling $█████. Plaintiff actually spent a total of $█████, as not all of the attempted transaction were successful.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 10, 2025.

Patrick Fechtmeyer, CEO
ARB Gaming, LLC

Matthew Joyce
Plaintiff, Pro Se
600 Market Grove Dr #100
Wake Forest, NC 27587-7345
Phone: (919) 259-4661
Email: m.joyce07@proton.me

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| MATTHEW JOYCE, an individual, Plaintiff, | Case No. 2:25-cv-01868-DJC-CSK (PS) |
| v.<br>ARB GAMING LLC dba MODO.US; AFFIRM, INC.; GOLDMAN SACHS BANK USA; APPLE INC.; AMAZON.COM, INC.; and DOES 1-50, | PLAINTIFF'S REQUEST FOR LEAVE TO FILE A SUPPLEMENTAL BRIEF AND REQUEST FOR JUDICIAL NOTICE IN OPPOSITION TO ARB GAMING LLC'S MOTION TO COMPEL ARBITRATION (ECF 56) |
| Defendants. | |

August 25, 2026, 10:00 a.m. — by Zoom — Hon. Chi Soo Kim

Plaintiff Matthew Joyce, pro se, respectfully requests leave under Section I.B of this Court's Civil Standing Orders to file a supplemental brief, together with a Request for Judicial Notice, in opposition to Defendant ARB Gaming LLC's Motion to Compel Arbitration (ECF 56).

The proposed supplemental brief and the proposed Request for Judicial Notice are submitted with this request so that the Court may evaluate the request against their actual contents rather than a description of them. Plaintiff does not ask the Court to consider either document unless leave is granted.

1
2:25-cv-01868-DJC-CSK (PS) — REQUEST FOR LEAVE TO FILE SUPPLEMENTAL BRIEF (ECF 56)

## I. What is requested.

Plaintiff requests leave to file: (1) a supplemental brief of no more than six (6) pages addressed solely to ARB's evidentiary showing on contract formation; and (2) a Request for Judicial Notice of five documents filed on the public dockets of four United States District Courts, offered for their existence and content only.

Plaintiff does not seek to expand any page limit, to reopen any argument already briefed, or to delay the August 25, 2026 hearing.

## II. Good cause: the records did not exist in Plaintiff's possession when he filed his opposition.

Plaintiff filed his opposition to ECF 56 on July 28, 2026. The documents that are the subject of this request are filings made by ARB Gaming LLC and its officers in four other federal district courts. **Plaintiff obtained them on August 2, 2026 — five days after his opposition was filed.** He files this request the following day.

Plaintiff did not withhold these records. He did not have them. They are not his documents; they are ARB's, filed in *Kowalok v. ARB Gaming, LLC*, No. 4:25-cv-02161 (N.D. Ohio); *Anderson v. ARB Gaming, LLC*, No. 6:25-cv-02069 (D. Or.); *Walker v. ARB Gaming, LLC*, No. 2:25-cv-00991 (D. Utah); and *Dinslage v. ARB Gaming, LLC*, No. 3:25-cv-02562 (N.D. Cal.).

Plaintiff notes the circumstances only because they bear on diligence, and not as a request for indulgence. Defendant ARB is represented by Duane Morris LLP through attorneys in two offices; the appearances for ARB in this action and in the parallel arbitration name seven attorneys of that firm. Four law firms represent the four appearing defendants. Plaintiff is one person, proceeding without counsel, under the accommodations this Court granted at ECF 82, and filing by paper under ECF 74.

He located these records himself, on the public dockets of four district courts, and brought them to the Court's attention the next day.

### III. Why the records matter to a question already before the Court.

Plaintiff's opposition disputes whether ARB has carried its burden of proving that an agreement to arbitrate was formed. 9 U.S.C. § 4. That question is squarely presented and fully briefed. The proposed supplemental brief adds no new theory. It supplies evidence bearing on the question already joined.

Two matters illustrate why the records are material, and Plaintiff states them here only to establish that this request is not made for delay:

**First**, in three of those actions, ARB submitted the same registration-screen exhibit as one another — and it differs from the exhibit ARB submitted here, and was sworn to by a different officer of the same company. One of those plaintiffs registered forty-two days before Plaintiff and another six days after him.

**Second**, in *Dinslage*, the same declarant who signed ARB's declaration in this case swore that he had "reviewed the records" of that plaintiff's account and identified the date the account was opened and the amounts spent. ARB's declaration here (ECF 56-9, ¶ 9) swears that ARB maintains "timestamps associated with acceptance, and the versions of the Terms accepted by users." No such record was submitted with ECF 56.

Plaintiff reserves the substance of both points for the supplemental brief, if leave is granted.

### IV. No prejudice, and the timing is set by the Court's own order.

Defendants' reply briefs are due August 10, 2026 (ECF 98). The hearing is August 25, 2026. Granting this request would place these records before the Court and before ARB in advance of both dates. ARB may address them in its reply.

Plaintiff files this request more than seven days before the proposed filing, as Section I.B requires.

### V. A related matter, stated so the Court is not surprised by it.

ARB's motion rests on a declaration stating that ARB maintains records of acceptance and the versions accepted. Those records were not submitted. If ARB submits them for the

3

first time with its reply brief, Plaintiff will have no opportunity to respond, because Section I.B permits no sur-reply absent leave sought seven days in advance — a deadline that would already have passed.

Plaintiff does not ask the Court to rule on that possibility now. The accompanying supplemental brief addresses it, and the relief requested there is the relief the Ninth Circuit prescribes: that such evidence be considered only if Plaintiff is given an opportunity to respond.

## VI. Conclusion.

Plaintiff respectfully requests leave to file the accompanying supplemental brief and Request for Judicial Notice.

Dated: August 3, 2026

Respectfully submitted,

Signed by:

*Matthew Joyce*

07B601B840D34AB...

**Matthew Joyce**

Plaintiff, Pro Se

600 Market Grove Dr #100
Wake Forest, NC 27587-7345
Phone: (919) 259-4661
Email: m.joyce07@proton.me

Matthew Joyce
Plaintiff, Pro Se
600 Market Grove Dr #100
Wake Forest, NC 27587-7345
Phone: (919) 259-4661
Email: m.joyce07@proton.me

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| MATTHEW JOYCE, an individual,<br>Plaintiff,<br>v.<br>ARB GAMING LLC dba MODO.US;<br>AFFIRM, INC.; GOLDMAN SACHS BANK<br>USA; APPLE INC.; AMAZON.COM, INC.;<br>and DOES 1-50,<br><br>Defendants. | Case No. 2:25-cv-01868-DJC-CSK (PS)<br><br>**[PROPOSED] ORDER** |

This matter came before the Court on Plaintiff Matthew Joyce's "[PROPOSED] ORDER — LEAVE TO FILE SUPPLEMENTAL BRIEF". Having considered the moving papers, any opposition and reply, the arguments of the parties, and the complete record in this action, and good cause appearing therefor,

IT IS HEREBY ORDERED that:

1. The Motion is GRANTED.

2. _____

_____.

IT IS SO ORDERED.

Dated: _____

_____

Chi Soo Kim

United States Magistrate Judge

Matthew Joyce
Plaintiff, Pro Se
600 Market Grove Dr #100
Wake Forest, NC 27587-7345
Phone: (919) 259-4661
Email: m.joyce07@proton.me

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| MATTHEW JOYCE, an individual,<br>Plaintiff,<br>v.<br>ARB GAMING LLC dba MODO.US;<br>AFFIRM, INC.; GOLDMAN SACHS BANK<br>USA; APPLE INC.; AMAZON.COM, INC.;<br>and DOES 1-50,<br><br>Defendants. | Case No. 2:25-cv-01868-DJC-CSK (PS)<br><br>**PROOF OF SERVICE** |
| --- | --- |

August 25, 2026, 10:00 a.m. — by Zoom — Hon. Chi Soo Kim

I, Matthew Joyce, declare:

I am the Plaintiff in this action and appear pro se. I am over the age of eighteen years. My address is 600 Market Grove Drive #100, Wake Forest, North Carolina 27587-7345.

On August 3, 2026, I served the following documents:

1. Plaintiff's Request for Leave to File a Supplemental Brief and Request for Judicial Notice in Opposition to ARB Gaming LLC's Motion to Compel Arbitration (ECF 56);

2. Proposed Supplemental Brief in Opposition to ARB Gaming LLC's Motion to Compel Arbitration (ECF 56);

3. Proposed Request for Judicial Notice, with exhibits; and

4. This Proof of Service.

**BY ELECTRONIC MAIL** pursuant to Federal Rule of Civil Procedure 5(b)(2)(E), each of the following having consented in writing to electronic service:

**ARB Gaming LLC** (Duane Morris LLP): dwall@duanemorris.com; WASaurack@duanemorris.com; klalexander@duanemorris.com

**Apple Inc.** (DLA Piper LLP US): john.gibson@dlapiper.com; ann.lozinski@dlapiper.com; lynda.west@us.dlapiper.com; michele.leyva@us.dlapiper.com

**Affirm, Inc.** (Troutman Pepper Locke LLP): kalama.lui-kwan@troutman.com; ryan.lewis@troutman.com

**Goldman Sachs Bank USA** (Morgan, Lewis & Bockius LLP): arjun.rao@morganlewis.com; marcos.sasso@morganlewis.com; madison.marshall@morganlewis.com; kathleen.rosello@morganlewis.com

**Counsel of record for Plaintiff-in-Interpleader Jamie Stahura** (The Mack Law Firm, PLLC): legal@themacklaw.com

**BY UNITED STATES MAIL**, first-class postage prepaid, in a sealed envelope addressed to:

Amazon.com, Inc.

2626 Glenwood Avenue, Suite 550

Raleigh, North Carolina 27608

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 3, 2026, at Wake Forest, North Carolina.

Dated: August 3, 2026

Respectfully submitted,

Signed by:

*Matthew Joyce*

07B601B840D34AB...

**Matthew Joyce**

Plaintiff, Pro Se

600 Market Grove Dr #100
Wake Forest, NC 27587-7345
Phone: (919) 259-4661
Email: m.joyce07@proton.me

Matthew Joyce
600 Market Grove Drive #100
Wake Forest, NC 27587-7345
(919) 259-4661
m.joyce07@proton.me
Plaintiff, Pro Se

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

## SACRAMENTO DIVISION

| | |
|---|---|
| MATTHEW JOYCE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ARB GAMING LLC dba MODO.US;<br>AFFIRM, INC.;<br>GOLDMAN SACHS BANK USA;<br>APPLE INC.;<br>AMAZON.COM, INC.,<br><br>Defendants. | Case No.  2:25-cv-01868-DJC-CSK (PS)<br><br><br>**INDEX OF EXHIBITS** |

PLAINTIFF'S INDEX OF EXHIBITS

| Exhibit Letter | Date | Description of Document |
|---|---|---|
| Exhibit A | 11/24/2025 | *Kowalok v. ARB Gaming, LLC*, No. 4:25-cv-02161 (N.D. Ohio), ECF No. 16 — Defendant ARB's Motion to Compel Individual Arbitration and Memorandum of Law in Support, reproducing Figure 1 at page 7 |
| Exhibit B | 11/25/2025 | *Kowalok v. ARB Gaming, LLC*, No. 4:25-cv-02161 (N.D. Ohio), ECF No. 17-1 — Terms of Use dated August 4, 2025, including Section 3.4 "Restricted Territories" |
| Exhibit C | 1/9/2026 | Anderson v. ARB Gaming, LLC, No. 6:25-cv-02069 (D. Or.), ECF No. 25 — Declaration of William Colello in Support of |

INDEX OF EXHIBITS - 1

Defendant ARB's Motion to Compel Arbitration

| | | |
|---|---|---|
| Exhibit D | 3/6/2026 | Walker v. ARB Gaming, LLC, No. 2:25-cv-00991 (D. Utah), ECF No. 16 — Defendant ARB's Motion to Compel Arbitration and Memorandum of Law in Support, reproducing Figure 1 at page 9 |
| Exhibit E | 4/14/2025 | Dinslage v. ARB Gaming, LLC, No. 3:25-cv-02562 (N.D. Cal.), ECF No. 18-4 — Declaration of Patrick Fechtmeyer in Support of Defendant ARB's Opposition to Plaintiff's Motion to Remand |

DATED: August 3, 2026

Signed by:

*Matthew Joyce*

—07B601B840D34AB...

Matthew Joyce
Plaintiff, Pro Se
600 Market Grove Dr #100
Wake Forest, NC 27587
Phone: (919) 259-4661
Email: m.joyce07@proton.me

INDEX OF EXHIBITS - 2