**DUANE MORRIS LLP**
Karen L. Alexander (SBN 265926)
KLAlexander@duanemorris.com
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: +1 619 744 2200
Facsimile: +1 619 744 2201

Daniel D. Wall (SBN 311391)
DWall@duanemorris.com
Spear Tower, One Market Plaza, Suite 2200
San Francisco, California 94105-1127
Telephone: +1 415 957 3000
Facsimile: +1 415 957 3001

Attorneys for Defendant
ARB GAMING LLC dba MODO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| MATTHEW JOYCE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ARB GAMING LLC dba MODO, a Delaware limited liability company; B2SERVICES OU dba MCLUCK; AFFIRM, INC.; GOLDMAN SACHS BANK USA; APPLE INC.; AMAZON.COM, INC.; and DOES 1-10 inclusive,<br><br>Defendants. | Case No. 2:25-cv-01868-DJC-CSK (PS)<br><br>**DEFENDANT ARB'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THE ACTION**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Date: August 13, 2026<br>Time: 1:30 p.m.<br>Dept: Courtroom 7, 14th Floor<br>Judge: Hon. Daniel J. Calabretta<br>Magistrate Judge Chi Soo Kim |

## I. INTRODUCTION

Plaintiff Matthew Joyce's ("Plaintiff" or "Joyce") opposition rests on a theory he has never asserted before and that is directly contrary to statements he has personally made, under oath, in the parallel arbitration: that no agreement to arbitrate was ever formed. This newfound position is irreconcilable with the record and undermines his entire litigation history. For more than a year, Joyce alleged that he accepted ARB Gaming's Terms of Service, claimed those Terms constituted a valid and enforceable contract, asserted claims for breach of that contract, made a demand for arbitration, and initiated arbitration proceedings under the same agreement.[1] Moreover, the arbitrator has already decided Plaintiff's claims are arbitrable and that he can maintain a breach of contract claim. Only after receiving adverse rulings in arbitration and facing ARB's motion to compel does Joyce suddenly reverse course and, despite his contrary allegations, prior sworn statements, and litigation conduct, now contend that no agreement ever existed. That reversal has needlessly multiplied these proceedings and forced ARB to incur substantial expense responding to a position irreconcilable with Joyce's own pleadings and sworn testimony, warranting sanctions.

Joyce's new contrary and frivolous position is contradicted by both his own sworn statements and the objective evidence. In this action, Joyce declares that he "never knowingly accepted any version of ARB's Terms of Use" and that he "never clicked a checkbox." (Opp'n, Joyce Decl. ¶ 2.) Yet, in a declaration submitted during the arbitration proceedings, he declared that he "was required to click a box to agree to the Terms of Use to access the games." (*See* RJN in Support of Reply ("Supp. RJN") Ex. A, ¶ 2.)

To advance his position, Joyce attacks an exemplar screenshot that was never offered as proof of his personal assent. The screenshot merely illustrates the registration interface used during the relevant period. (Fechtmeyer Original Decl. ¶ 7, Ex. A.) The

[1] Joyce also previously filed suit under the same agreement in Contra Costa County Superior Court which was then removed to the United States District Court, Northern District of California before the current action before this Court. (*See Joyce v. Affirm et al.*, Contra Costa Superior Court No. C25-01268 *and Joyce v. Affirm et al.*, Case No. 25-cv-4667-KAW (N.D. Cal.).)

evidence establishing Joyce's agreement consists of ARB's contemporaneous business records that independently confirm Joyce accepted the applicable Terms, the original Fechtmeyer declaration explaining both the mandatory clickwrap process and the records documenting Joyce's assent, the Supplemental Fechtmeyer Declaration ("Supp. Fechtmeyer Decl.") authenticating the account-specific business records reflecting Joyce's acceptance of the Terms,[2] and Joyce's own prior admissions. (Fechtmeyer Decl. ¶¶ 5-12; Supp. Fechtmeyer Decl. ¶¶ 2-4, Ex. A; Supp. RJN, Ex. A, ¶ 2.)

As already decided in arbitration, Joyce accepted the agreement containing the arbitration provision. His effort to avoid the arbitrator's ruling by contradicting the evidence and his prior pleadings and sworn statements does not create any issue for the Court. Instead, he has engaged in sanctionable duplicative and contradictory litigation and this motion should be granted.

## II. ARGUMENT

### A. The Arbitrator Already Ruled that Plaintiff's Claims Belong in Arbitration

The question of whether Plaintiff's claims are subject to binding arbitration has already been fully briefed and decided by the Arbitrator. (*See* Request for Judicial Notice in Support of ARB's original Motion ("RJN") Ex. D, at 27-28.) Plaintiff voluntarily initiated arbitration against ARB and submitted the arbitrability of his claims to the arbitrator. After briefing from the parties, the arbitrator ruled that the arbitration agreement was "severable, mandatory, binding and enforceable under the FAA" and determined that Plaintiff's claims were arbitrable. (RJN Ex. D at 17, 27-28.)

Plaintiff's Opposition does not dispute that the arbitrator reached those issues; he argues instead that the interim award is not "final." (Opp'n 11-12.) The Court should not allow him to reverse course and relitigate in this Court an issue that has already been

[2] New material on reply is proper when it responds to a position the opponent raised for the first time in its opposition. *El Pollo Loco, Inc. v. Hashim*, 316 F.3d 1032, 1040 (9th Cir. 2003) (new responsive argument is proper on reply); *In re ConAgra Foods, Inc.*, 302 F.R.D. 537, 559 n.87 (C.D. Cal. 2014) (new responsive evidence is proper on reply). Here, Plaintiff swore, during arbitration, that he clicked to accept ARB's Terms. He now swears the opposite. The supplemental declaration responds to this improper reversal.

fully decided in the forum he chose when he voluntarily filed his demand for arbitration.

**B. Plaintiff Is Estopped From Disputing He Agreed to Arbitrate**

Plaintiff's position that no contract was formed is irreconcilable with — and foreclosed by — the position he has maintained throughout this litigation.

In his operative FAC, Plaintiff alleges that he "last accepted ARB Gaming's Terms of Service on September 10, 2024." (FAC ¶¶ 82, 257.) He further alleges that "[a] valid contract existed between Plaintiff and ARB Gaming" (FAC ¶ 256), that "[t]he September 10, 2024 Terms of Service constituted a valid and enforceable contract" (FAC ¶ 258), and that he "performed all conditions, covenants, and promises required of him under the contract." (FAC ¶ 259.) He alleges that ARB's actions "constitute material breaches of the contract." (FAC ¶¶ 264, 269.) Those allegations formed the factual basis for Plaintiff's breach of contract claim (Count Four) and breach of the implied covenant (Count Five). (FAC ¶ 273.) Plaintiff seeks affirmative relief based on the very agreement he now contends never existed. Rule 8 does not address Plaintiff's separate invocation of the agreement in arbitration.

Plaintiff's conduct matched his pleadings. Four days after filing his original complaint, Plaintiff filed a Demand for Arbitration with JAMS, attaching the Terms of Service and invoking the arbitration provision contained in those Terms. (RJN Exs. A, D; *see also* Alexander Decl. ¶ 2.)

Over the following year, Plaintiff actively litigated in the arbitral forum. He briefed arbitrability, filed an Amended Demand asserting breach of contract claims, retained substitute counsel, and continued litigating before the arbitrator. (RJN Exs. A-E; Supp. RJN Exs. A-B.) Joyce's own correspondence reflected the same understanding. In April 2025, he wrote, "I'm not signing any *new* terms and conditions." (FAC ¶ 88; Joyce Decl. ¶ 14, Ex. J.) A person who insists he will not sign "new" Terms necessarily recognizes the existence of prior Terms under which he was already operating. Joyce likewise declared in arbitration that ARB "forced Claimant Joyce to sign the contract," (Supp. RJN, Ex. B, p. 4), which presupposes both the existence of and assent to a contract.

The arbitrator rejected Plaintiff's effort to avoid arbitration, holding that the arbitration agreement was "severable, mandatory, binding and enforceable under the FAA." (RJN Ex. D, p. 17.) After receiving those adverse rulings, Plaintiff attempted to withdraw from arbitration, but the arbitrator denied that request.

Only after the arbitrator rejected Plaintiff's attempt to escape arbitration did he reverse course and contend for the first time that no contract had ever been formed because he never accepted the Terms. (*Compare* FAC ¶¶ 82, 256-259, RJN A-E, and Supp. RJN Ex. A, ¶ 2, Ex. B.) That contention appears nowhere in his Complaint, FAC, arbitration demands, or prior motion practice. There are no new facts here and the only thing that has changed is Plaintiff's litigation position.

It is axiomatic that "where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position, especially if it be to the prejudice of the party who has acquiesced in the position formerly taken by him." *New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (quoting *Davis v. Wakelee*, 156 U.S. 680, 689 (1895)). This doctrine of judicial estoppel typically applies when: (1) a party's later position is "clearly inconsistent" with its earlier position; (2) the party succeeded in persuading a court or tribunal to accept that party's earlier position, so that acceptance of an inconsistent position in a later proceeding would create the perception that the first or second court was misled; and (3) the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. *Id*. at 750–51. Here, all three factors are met by Plaintiff's conduct.

First, Plaintiff has taken two wholly inconsistent positions in this Court and in arbitration as to the existence of an agreement between the two parties to arbitrate. Previously, Plaintiff filed a Demand for Arbitration — in the words of the arbitrator — "attaching a copy of the March 28, 2025 Terms and identifying it as the agreement to arbitrate." (RJN Exs. A, D, at 12.) Plaintiff succeeded in persuading the arbitrator to accept the demand, open a case file, commence an arbitration, solicit extensive briefing

from the parties on a variety of contested matters, and issue lengthy rulings in ARB's favor. (RJN Ex. D at 1-4, 12, 15-17, 27-28.) Plaintiff here is either misleading the arbitrator or the Court. And doing so would be to ARB's significant detriment, particularly because ARB has invested substantial resources in paying the arbitrator and successfully litigating a variety of issues in arbitration. (Alexander Decl. ¶¶ 3-10.)

Plaintiff's claim that he never consented to his lawyers filing a demand for arbitration (Opp'n 13-15) is a red herring and does not avoid estoppel. In *Helfand v. Gerson,* the Ninth Circuit held that parties "are bound by their attorney's assertions" in applying the doctrine. (*Helfand v. Gerson* (9th Cir. 1997) 105 F.3d 530, 535.) Plaintiff cites no case law creating an exception for *pro se* litigants who allege their prior lawyers acted without consent. If Plaintiff has a dispute with how his prior attorneys handled his case, that is between Plaintiff and the lawyers — not ARB. In any event, Plaintiff personally signed a sworn declaration in the arbitration attesting that he "was required to click a box to agree to the Terms of Use to access the games" (Supp. RJN, Ex. A, ¶ 2).

Statements made in arbitration are appropriate subjects of judicial estoppel. *Tri-Dam v. Schediwy*, No. 1:11-CV-01141-AWI, 2014 WL 897337, at *5 (E.D. Cal. Mar. 7, 2014), *amended by* No. 1:11-CV-01141-AWI-MJS, 2014 WL 12778828 (E.D. Cal. May 5, 2014) (unpublished) (citing cases). Plaintiff cannot now disavow the arbitration agreement he previously invoked.

**C. The Evidence Shows Plaintiff Agreed to Arbitrate**

Moreover, even if this Court decides to entertain Plaintiff's newfound argument, after a contrary arbitration decision, that he did not accept ARB's Terms including its arbitration agreement — which it should not — the evidence plainly defeats it.

Plaintiff's Opposition repeatedly asserts that ARB has never produced "a record of any act of assent" … "no signature, no click record, no timestamp, and no acceptance entry." (Opp'n 2, 7-8, Joyce Decl. ¶ 3.) That assertion is simply incorrect.

The original Fechtmeyer Declaration established both the mechanics of ARB's registration process and Plaintiff's acceptance of the Terms: all users were required to

create an account before accessing the Platform, that registration required users to affirmatively accept the Terms through a clickwrap process, that no user could complete registration or access the Platform without accepting the Terms, that users were required to re-accept updated Terms to continue using the Platform, and that ARB maintains business records documenting account creation, acceptance of the Terms, timestamps, and the versions accepted by users. (Fechtmeyer Decl. ¶¶ 4-9.)

Plaintiff nevertheless argues that ARB produced no account-specific evidence of his assent. The existing record already established that acceptance of the applicable Terms was mandatory for all users and that no user could create an account or continue using the platform after updated Terms became effective without affirmatively accepting those Terms. Further, in response to Plaintiff's newly introduced and made-for-litigation claims, ARB has supplemented the record with contemporaneous business records specific to Plaintiff's account. Those records reflect that Plaintiff accepted Version 13 when he created his account on August 2, 2024, and accepted Version 14 on September 10, 2024, when updated Terms were presented. (Supp. Fechtmeyer Decl. ¶¶ 2-4, Ex. A.) The Supplemental Declaration thus in no way alters ARB's position or offers a new theory of assent.

ARB's submissions plainly and indisputably establish both the process by which ARB obtained users' assent and the contemporaneous business records confirming that Plaintiff completed that process. This record supports what the arbitrator already found. This is an arbitrable dispute.

**D. Plaintiff's Remaining Arguments Fail as a Matter of Law**

Plaintiff's remaining arguments are foreclosed by the Agreement's delegation clause, which delegates the threshold questions of arbitrability to the arbitrator. (Fechtmeyer Decl., ¶ 12.) Plaintiff does not challenge the delegation provision, which is enforceable. Accordingly, any remaining questions concerning arbitrability are for the arbitrator to decide. *Rent-A-Center, W. Inc. v. Jackson*, 561 U.S. 63, 70-72 & fn.2 (2010).

Even if the Court were to consider Plaintiff's request for a jury trial notwithstanding the delegation provision, Plaintiff identifies no genuine dispute regarding the making of the arbitration agreement. A jury trial under 9 U.S.C. § 4 is warranted only where "the making of the agreement for arbitration" is genuinely in dispute. *Hansen v. LMB Mortg. Servs., Inc.*, 1 F.4th 667, 670, 672 (9th Cir. 2021). None of Plaintiff's remaining arguments satisfy that standard.

**a. The John Doe Exemplar**

Plaintiff devotes substantial attention to Exhibit A, arguing that because it is a screenshot of a registration page displaying placeholder information rather than Plaintiff's personal information, it cannot establish assent. (Opp'n 6-8.) That argument misunderstands both the purpose of Exhibit A and the evidence submitted with it.

Exhibit A was never offered as a record of Plaintiff's registration or acceptance of the Terms. Rather, as the original Fechtmeyer Declaration explains, it was offered to depict the registration interface and the clickwrap mechanism through which all users accepted the Terms before completing account registration. (Fechtmeyer Decl. ¶¶ 5-8.) Mr. Fechtmeyer separately testified that users could not complete registration, access the Platform, participate in games, or make purchases without affirmatively accepting the Terms, and that ARB's business records reflected Plaintiff created his account and accepted the applicable Terms. (Supp. Fechtmeyer Decl. ¶¶ 2-4, Ex. A.)

Plaintiff's Opposition argued ARB had not produced the account-specific records underlying that testimony. The Supplemental Fechtmeyer Declaration now provides those records to address Plaintiff's new-found formation arguments. The system-generated notifications log reflects Plaintiff accepted Version 13 of the Terms on August 2, 2024, and Version 14 on September 10, 2024. Accordingly, Exhibit A and the supplemental business records serve different purposes. Exhibit A illustrates how assent was obtained for all users. The business records confirm that Plaintiff went through that process and gave that assent. (*Id.*)

Plaintiff's challenge to Exhibit A thus does not create a genuine dispute regarding contract formation and, even if it did, that issue was for the arbitrator to decide, and in fact was decided by the arbitrator.

**b. The North Carolina Checkbox**

Plaintiff argues that the exemplar registration screen attached as Exhibit A defeats ARB's evidence of assent because it contains an acknowledgment stating that the user is "not a resident of… North Carolina," while ARB's records reflect that Plaintiff resided in North Carolina. (Opp'n 2, 7.) From that premise, Plaintiff argues that he could not have completed the registration process depicted in the exemplar and therefore could not have accepted the Terms. The argument fails.

First, Plaintiff mischaracterizes the exhibit and adds facts that do not appear in it. Plaintiff asserts that the registration screen "bars North Carolina residents from registering." (Opp'n 2, 7.) It does not. The screenshot contains an acknowledgment requiring the user to represent that he is not a resident of the listed states before proceeding. It does not state that North Carolina residents cannot register, that the system prevents them from doing so, or that acceptance is technically impossible. Plaintiff cites only the screenshot itself for this proposition, but the screenshot contains no such language.

Second, Plaintiff's argument ignores the account-specific contemporaneous business records generated for Plaintiff's account showing that Plaintiff accepted Version 13 on August 2, 2024 and Version 14 on September 10, 2024. (Supp. Fechtmeyer Decl. ¶¶ 2-4.) Those records establish what actually occurred on Plaintiff's account and are not rebutted by Plaintiff's speculation regarding the meaning of an exemplar screenshot.

**c. Plaintiff's "Multiple Versions" Argument Fails**

Plaintiff argues that ARB cannot identify which Terms govern because different versions existed over time. (Opp'n 8-10.) The supplemental business records eliminate that contention. Those records identify the specific versions Plaintiff accepted and the dates of acceptance: Version 13 on August 2, 2024, when he created the account and

Version 14 on September 10, 2024, when the Terms were updated, both of which contain provisions requiring arbitration of the claims at issue. (Fechtemeyer Decl. ¶¶ 4-15; Supp. Fechtmeyer Decl. ¶¶ 2-4, Ex. A.) Plaintiff's own FAC independently alleges that he "last accepted ARB Gaming's Terms of Service on September 10, 2024" and that "[t]he September 10, 2024 Terms of Service constituted a valid and enforceable contract." (FAC ¶¶ 82, 258.) Thus, both ARB's contemporaneous records and Plaintiff's own operative pleading identify the September 10, 2024 Terms as the Terms he most recently accepted. There is no issue here.

**E. ARB Is Entitled to Sanctions**

Plaintiff's Opposition also misunderstands the basis for ARB's request for sanctions. (Opp'n 18-20.) ARB's request for sanctions is not based on the sequencing of ARB's responsive pleadings, Plaintiff's counsel's decision to withdraw rather than face potentially being sanctioned herself, or any other case participant's filings. Rather, ARB seeks sanctions against Plaintiff in the form of its reasonable attorneys' fees in bringing this motion because Plaintiff should not be litigating these claims against ARB in this or any other court, and is not permitted to advance a contradictory litigation position in a separate litigation.

Plaintiff signed a binding arbitration agreement with ARB, demanded arbitration under that agreement against ARB, and has been actively participating in the arbitration with ARB. ARB requested that Plaintiff dismiss or stay this action while he arbitrated his claims against ARB, but he refused to do so. By refusing to dismiss or stay this action (against the advice of his attorney, apparently), Plaintiff created duplicative litigation and forced ARB and this Court to waste time on this action that never should have been filed in federal court in the first place. Even worse, in his Opposition, he has asserted a new position that is directly contradictory to a position he successfully asserted in the arbitration, and has submitted a new, sworn declaration attesting to facts that are directly counter to facts asserted in a prior sworn declaration. These actions evidence bad faith.

The cases cited in ARB's original Motion are clear that a party who agrees to binding arbitration and then attempts to relitigate the arbitrator's rulings in federal court may be subject to sanctions. *See, e.g.*, *Teamsters Loc. Union No. 760 v. United Parcel Serv., Inc.*, 921 F.2d 218, 220–21 (9th Cir. 1990); *G.C. and K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1110–11 (9th Cir. 2003); *Hebei Hengbo New Materials Tech. Co. v. Apple, Inc.*, 344 F. Supp. 3d 1111, 1125–27 (N.D. Cal. 2018), *discussed in* ECF No. 56-1, at 19–20. Cases are equally clear that when a pro per litigant like Plaintiff makes material factual misrepresentations to the Court in bad faith to gain a litigation advantage, that conduct may warrant sanctions, up to and including dismissal of the action. *See, e.g.*, *James v. Wilber*, 956 F. Supp. 2d 1145, 1168, 1170 (E.D. Cal. 2013) (dismissing action after finding that pro se plaintiff intentionally misrepresented witnesses' qualifications to secure their attendance at trial).

Plaintiff does not dispute the reasonableness of the fees ARB's counsel incurred in litigating the instant motion, nor the hours expended or rates charged. Indeed, ARB's requested fees *are* reasonable, because (among other things) ARB only seeks to recover its attorneys' fees incurred in bringing this motion rather than all of the fees it has incurred defending against this duplicative lawsuit to date. ARB's legal fees have increased as a result of preparing this Reply and responding to Joyce's new factual arguments; however, in the interest of avoiding a further dispute, ARB limits its request to the fees incurred in its preparation of the original Motion. Accordingly, should this Court conclude that sanctions are warranted, ARB respectfully requests the Court award the amount sought in ARB's motion: $30,170.

## III. CONCLUSION

ARB respectfully requests that the Court: (1) compel Plaintiff to arbitrate all claims against ARB pursuant to the FAA, 9 U.S.C. §§ 2-4; (2) dismiss this action as to ARB or, alternatively, stay it pending completion of arbitration; and (3) award ARB its reasonable attorneys' fees and costs incurred in bringing this motion in the amount of $30,170.

Dated: August 10, 2026

**DUANE MORRIS LLP**

By: *\/s/ Daniel D. Wall*
Karen L. Alexander
Daniel D. Wall

Attorneys for Defendant
ARB GAMING LLC dba MODO

## CERTIFICATE OF SERVICE

***Matthew Joyce v. ARB Gaming LLC dba MODO, et al.***
**USDC, Eastern District of CA, Case No. 2:25-cv-01868-DJC-CSK (PS)**

I am a citizen of the United States, over the age of 18 years, and not a party interested in the cause. I am an employee of Duane Morris LLP and my business address is One Market, Spear Tower, Suite 2200, San Francisco, California 94105. I hereby certify that a true and correct copy of the following, its attachments and documents filed concurrently therewith was electronically filed on August 10, 2026 using the CM/ECF system, thereby sending a notice of electronic filing to all counsel of record per the attached Service List.

**DEFENDANT ARB'S REPLY IN SUPPORT OF ITS MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY THE ACTION**

☒ **BY MAIL**: As follows: I am readily familiar with the firm's practice of collection and processing correspondence for mailing, whereas the package would be deposited with the USPS on that same day with postage thereon fully prepaid at San Francisco, California, in the ordinary course of business.

| | |
|---|---|
| Jamie Stahura<br>11076 Ligon Mill Road, #100<br>Wake Forest, NC 27587<br>Telephone: 631.252.9182<br>Email: Jamie.Stahura@PNFP.com<br>Nailbnder99@yahoo.com | Interpleader<br>Pro Se Status<br>Jamie Stahura |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on August 10, 2026, at San Francisco, California.

JoAnna Soliman

## SERVICE LIST

| COUNSEL | PARTY |
|---|---|
| Matthew Thomas Joyce<br>600 Market Grove Drive, #100<br>Wake Forest, NC 27587-7345<br>Tel: 919-259-4661<br>Email: m.joyce07@proton.me | Pro Per |
| Kalama Mark Lui-Kwan<br>Ryan A. Lewis<br>Troutman Pepper Locke LLP<br>Three Embarcadero Center, Suite 800<br>San Francisco, CA 94111<br>Tel: 415-477-5700<br>Fax: 415-477-5710<br>Email: kalama.lui-kwan@troutman.com<br>ryan.lewis@troutman.com<br><br>Gary D. Sonnenfeld<br>Troutman Pepper Locke LLP<br>777 South Flagler Drive, Suite 215<br>East Tower<br>West Palm Beach, FL 33401<br>Tel: 305-712-1572<br>Fax: 561-655-8719<br>Email: gary.sonnenfeld@troutman.com | Attorneys for Defendant<br>Affirm, Inc. |
| Arjun P. Rao<br>Marcos D. Sasso<br>Morgan Lewis & Bockius LLP<br>2049 Century Park East, Suite 700<br>Los Angeles, CA 90067<br>Tel: 310-907-1063<br>Fax: 310-907-1001<br>Email: arjun.rao@morganlewis.com<br>marcos.sasso@morganlewis.com | Attorneys for Defendant<br>Goldman Sachs Bank USA |
| John Samuel Gibson<br>DLA Piper LLP US<br>2000 Avenue of the Stars<br>North Tower, Suite 400<br>Los Angeles, CA 90067-4704<br>Tel: 310-595-3039<br>Fax: 310-595-3339<br>Email: john.gibson@dlapiper.com | Attorneys for Defendant<br>Apple, Inc. |
| Jamie Stahura<br>11076 Ligon Mill Road, #100<br>Wake Forest, NC 27587<br>Telephone: 631.252.9182<br>Email: Jamie.Stahura@PNFP.com<br>Nailbnder99@yahoo.com | Interpleader<br>Pro Se Status<br>Jamie Stahura |