**DLA PIPER LLP (US)**
JOHN SAMUEL GIBSON (SBN 140647)
john.gibson@us.dlapiper.com
TANYA L. GREENE (SBN 267975)
tanya.greene@us.dlapiper.com
COLIN F. MCGRATH (SBN 351947)
colin.mcgrath@us.dlapiper.com
2000 Avenue of the Stars, Suite 400 North Tower
Los Angeles, California 90067-4735
Tel.: 310.595.3000
Fax: 310.595.3300

Attorneys for Defendant
APPLE INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

**SACRAMENTO DIVISION**

MATTHEW THOMAS JOYCE,

Plaintiff,

v.

ARB GAMING LLC DBA MODO. US; AFFIRM, INC; GOLDMAN SACHS BANK USA; APPLE INC.; AMAZON.COM, INC; DOES 1-50,

Defendants.

CASE NO. 2:25-CV-01868-DJC-CSK

**APPLE INC.'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS CORRECTED AMENDED COMPLAINT**

Date: August 25, 2026
Time: 10:00 AM
Courtroom: 25
Judge: Hon. Daniel J. Calabretta
Assigned to: Magistrate Judge Chi Soo Kim

## INTRODUCTION

Plaintiff's Opposition fails to rebut, and indeed reinforces, the Corrected Amended Complaint's ("Complaint") failure to plausibly allege that Apple was anything other than a neutral third party to the underlying dispute between Plaintiff and ARB Gaming LLC ("ARB Gaming"), the operator of the platform on which Plaintiff claims to have suffered his gambling losses. Plaintiff fails to allege Apple had any contemporaneous commercial relationship with ARB Gaming or played any role in authorizing, denying, financing or controlling any transaction Plaintiff made on ARB Gaming's platform. Plaintiff's allegations and Opposition confirm that Apple Pay served only as a conduit that transmitted bank-issued card information to a merchant for processing by the merchant's own bank. Neither the Complaint nor the Opposition identifies any substantive interaction between Apple and Plaintiff regarding ARB Gaming, his alleged losses, or any challenged transaction. Even accepting Plaintiff's allegation that Apple could "observe" transaction patterns, Plaintiff's own pleadings confirm that Apple was not the entity deciding whether transactions would be approved, declined, financed, or funded. Rather, Plaintiff alleges that all of these decisions were made by third-party financial institutions, including Affirm and the issuing banks. *See* Opp. to Affirm MTD 4–5; Opp. to Goldman Sachs MTC 3–4. Plaintiff only argues that Apple Pay functioned as a "frictionless" payment "rail" through which those independently approved transactions traveled. Opp. 9. The Opposition fails to identify any basis on which Apple would have a duty to stop transactions under these circumstances.

Plaintiff's Opposition to Defendant Apple Inc.'s Motion to Dismiss (ECF 57) ("Opposition") thus fails to rebut Apple's grounds for dismissing the Complaint with prejudice. Plaintiff concedes he asserts no Civil Rights (Count I) or ADA (Count II) claims against Apple (Opp. 3), leaving only four counts: Unfair Competition ("UCL") (Count VI), Unjust Enrichment (Count VII), "Payment Processor Liability" (Count XI), and Aiding and Abetting (Count XII). Each fails.

Plaintiff has not identified any transaction that violated state gambling law, and even if he could, California's strong public policy against judicial resolution of gambling-related

disputes independently bars recovery. Plaintiff's UCL claim fails for the additional reason that he cannot allege an economic injury caused by Apple, a neutral payment conduit, or a cognizable restitutionary interest. Plaintiff's unjust enrichment claim is duplicative and fails for the same reasons. Plaintiff abandons the Payment Processor claim as an independent cause of action, and his aiding and abetting claim fails because he cannot plausibly allege that Apple knew of, or substantially assisted, ARB Gaming's purported misconduct. Plaintiff's Opposition confirms that each claim is deficient as a matter of law, and fails to explain how he could amend the Complaint to state a plausible claim against Apple. Dismissal with prejudice is warranted.

## ARGUMENT

### I. ALL CLAIMS AGAINST APPLE MUST BE DISMISSED BECAUSE PLAINTIFF STILL FAILS TO PLEAD FACTS SHOWING THAT ANY TRANSACTION INVOLVED UNLAWFUL GAMBLING OR A DUTY BY APPLE TO INTERVENE.

Plaintiff asserts claims against Apple based on its alleged unfair conduct in processing 75% of Plaintiff's "gambling transactions," "observ[ing] a sustained pattern of high-velocity transactions to a single gambling merchant," and not intervening. CAC ¶ 299. But even accepting Plaintiff's new factual assertions in his Opposition characterizing ARB's content as implementing a dual currency structure and his reiterated theory that Apple allegedly could observe a high-volume pattern of Apple Pay transactions to a single "gambling" merchant, he still has not alleged facts showing that the transactions Apple allegedly facilitated were unlawful gambling transactions under California law. Nor has he alleged facts showing that Apple knew any transaction was unlawful or that Apple had any obligation to prevent otherwise authorized transactions.

First, Plaintiff's contention that the Complaint pleads the "elements" of an unlawful California lottery—"consideration, chance, and prize"—fails because the cited allegations contain only "labels and conclusions" without factual support. Opp. 6 (citing CAC ¶¶ 24, 29, 34, and 289); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Opposition does not identify a single allegation concerning any specific transaction that allegedly constituted unlawful gambling. Nor could it because the Complaint does not identify any

game Plaintiff played, explain how the game operated, describe what he received in exchange for any payment, explain how the purported sweepstakes mechanism functioned, or plead facts showing that any transaction for which he elected to use Apple Pay (sweepstakes or otherwise) satisfied the elements of unlawful gambling under California law.

Plaintiff tries to address this deficiency by introducing new factual allegations in his Opposition to describe ARB's purported use of "Gold Coins" and "Sweeps Coins." But the Complaint lacks any reference to either type of coin, and Plaintiff cannot amend the Complaint through his Opposition. Nor do the additional allegations explain how those currencies were obtained, used, redeemed, or connected to any Apple Pay transaction. Plaintiff therefore does not plausibly allege a gambling violation. Moreover, Plaintiff concedes that California Assembly Bill 831, the statute supplying the definition of a dual currency system, ***does not apply to his claims*** as it does not apply retroactively. Opp. 7; Mot. 13 (quoting Compl. ¶¶ 388 "[t]he transactions at issue in this case occurred entirely before AB 831's effective date"). Even if it applied, AB 831 is not intended to hold third parties like Apple liable for providing generally available, content-neutral payment services. Mot. 6–7. Plaintiff therefore fails to allege any conduct or transaction that violated A.B. 831. Further, Plaintiff's reference to an Arizona Department of Gaming cease-and-desist order naming ARB Gaming and alleging "felony gambling promotion and money laundering" is immaterial. Compl. ¶ 95-99. Plaintiff concedes in his Opposition that the order does not show an actual violation. *See* Opp. 7 (stating the order is "offered for the **fact of its issuance**" rather than for the "truth of its allegations") (emphasis in original). The mere issuance of an Arizona regulator's order, unconnected to Plaintiff's claims, does not show that Plaintiff's specific transactions violated California gambling law.

More fundamentally, Plaintiff's Opposition never explains why Apple's alleged ability to "observe[]" transaction volume creates any legal obligation to intervene. Plaintiff repeatedly asserts that Apple "observed" a pattern of transactions and "never implemented any intervention." Opp. 4, 9. But the fact that Plaintiff may have used Apple Pay—a digital

wallet—to transmit his payment information to a merchant does not instill Apple with knowledge about the nature of those transactions, let alone that the transactions are unlawful.

Nor does Plaintiff identify any authority imposing a duty on a payment conduit to halt otherwise authorized transactions. Plaintiff's theory therefore turns on the unsupported premise that Apple was required to determine that ARB Gaming's platform constituted unlawful gambling and then independently prevent customers from transacting with that merchant. The Opposition cites no authority imposing such a duty.

Finally, Plaintiff's claims fail to the extent he alleges violations of California Penal Code Sections 319, 330, 337(j). Opp. 7 ("The pre-2026 predicate rests on §§ 319, 330, and 337j, in force throughout"). The Complaint contains no allegations discussing or invoking Sections 319 and 337(j). Plaintiff fails to plead any violation of California law under those sections for that reason.[1] Even assuming Section 319 is implicated, the Complaint still fails to allege facts showing that Plaintiff participated in a lottery, which is generally defined as "any scheme for the disposal or distribution of property by chance" among individuals who "paid or promised to pay" for the chance to receive the property. *See* Cal. Penal Code § 319. While the Complaint repeatedly relies on mere labels—that ARB Gaming provided "consideration," "chance," and "prizes"—it offers no factual allegations explaining how any particular Apple Pay transaction involved those elements. It additionally fails to plausibly plead any violation of Section 330 by Apple. Section 330 applies to

---

[1] Section 319 simply defines a lottery. Cal. Penal Code § 319. The court in *In re Simulated Casino-Style Games Litig.* denied such claims with prejudice as barred by public policy, reasoning "it is of no consequence whether social casinos are lotteries." *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 806 F. Supp. 3d 1015, 1035 (N.D. Cal. 2025).

Section 337(j) describes licensing requirements for "controlled games." Cal. Penal Code § 337(j). Plaintiff does not, and cannot, describe how Apple, a neutral conduit that simply transmits payment information (e.g., credit card information) to a merchant to then be processed by the merchant's bank, would constitute a party subject to such licensing, or how any alleged game would constitute a "controlled game" regulated by that section.

persons who "deal[], play[], or carr[y] on," "open[]," "cause[] to be opened," or "conduct[]" certain specified gambling games. Cal. Penal Code § 330.[2] But Plaintiff alleges only that Apple Pay transmitted payment information used in transactions with ARB Gaming. Even accepting those allegations as true, they do not plausibly allege that Apple dealt, played, carried on, opened, caused to be opened, or conducted any prohibited game under Section 330. The only allegations cited in Plaintiff's Opposition concerning gaming describe actions taken by ARB Gaming and seemingly occur within the game without the use of Apple Pay. Compl. ¶¶ 29, 34 (alleging "ARB Gaming allocated monthly budgets specifically for providing gifts and incentives to VIP players like Plaintiff."). Nor does Plaintiff identify any element of Section 330, explain how any action by Apple violated that statute, or allege that any transaction involving Apple related to one of the enumerated prohibited games in Section 330.

Seemingly acknowledging the weakness of his arguments, Plaintiff states "[t]o the extent the Court wants the mechanic [sic] stated with more particularity, that is a matter for amendment, not dismissal with prejudice." Opp. 7. But Plaintiff's Opposition still does not explain how any conduct allegedly undertaken by Apple violated any California gambling law, and thus fails to show how deficiencies could be cured through amendment.

## II. CALIFORNIA'S PUBLIC POLICY AGAINST JUDICIAL RESOLUTION OF GAMBLING-LOSS CLAIMS BARS ALL CLAIMS AGAINST APPLE.

Plaintiff devotes substantial portions of his Opposition to arguing that the transactions at issue were gambling transactions. Yet he simultaneously attempts to avoid

[2] "Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noire, rondo, tan, fan-tan, seven-and-a-half, twenty-one, hokey-pokey, or any banking or percentage game played with cards, dice, or any device, for money, checks, credit, or other representative of value, and every person who plays or bets at or against any of those prohibited games, is guilty of a misdemeanor, and shall be punishable … ." Cal. Penal Code § 330.

California's public-policy bar against judicial resolution of claims arising from gambling transactions. That contradiction reflects a fundamental misreading of both *Kelly* and the applicable California law.

Plaintiff mistakenly conflates *Kelly*'s separate holdings applying (1) California's public policy bar and (2) the *in pari delicto* doctrine. Opp. 7–9. As a threshold issue, the court in *Kelly* found that the plaintiff's claims were "barred as a matter of law and strong public policy," a holding that was not based on the separate *in pari delicto* doctrine. *Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462, 490 (1999). The court reasoned that the bar reflects California's "strong, broad, and long-standing public policy against judicial resolution of civil disputes arising out of gambling contracts or transactions" and that "this judicially recognized public policy can be traced back virtually to the inception of statehood." *Id.* at 477. Analyzing California state gambling cases, the court held that the plaintiff's claims were "barred as a matter of law and strong public policy" regardless of the legality of the games. *Id.* at 490. The court's bar was categorical, explaining that "[i]n the absence of [] a statutory right, California's strong public policy against judicial resolution of civil claims arising out of gambling contracts or transactions necessarily applie[d] to [plaintiff's] claim." *Id.* at 489. Here too, Plaintiff identifies no statutory provision authorizing recovery of gambling losses from Apple notwithstanding California's public-policy bar. *See supra*, § I. And Plaintiff cites no authority holding that California's public-policy bar recognized in *Kelly* does not apply when a plaintiff alleges he was exploited or otherwise not equally at fault with the gambling operator. His claim therefore is barred as a matter of law due to California's strong public policy against recovery for such claims.

Separately, the *Kelly* court found that the *in pari delicto* doctrine also barred the plaintiff's claims. *Kelly*, 72 Cal. App. 4th at 490–96. And even in its *in pari delicto* analysis, the *Kelly* court was clear that "public policy precludes courts from declaring and distinguishing between degrees of turpitude of parties who engaged in unlawful transactions" when engaging in the *in pari delicto* analysis. *Id.* at 490. For this reason,

Plaintiff's argument that *Kelly* does not bar his claims because he is an "exploited, incapacitated" victim, is unavailing. Opp. 8.

Plaintiff's other efforts to distinguish *Kelly* and *In re Simulated Casino-Style Games Litig.* are also unavailing. First, Plaintiff argues (without support) that *Kelly* does not apply when claims are asserted against a "fee-taking intermediary." Opp. 8. But the public policy bar in *Kelly* was broad and unequivocal; it did not turn on the technical mechanism of the payment, but on the nature of the underlying claim as one seeking recovery of gambling losses. *Id.* at 489–90. As in *Kelly*, the court in *In re Simulated Casino-Style Games Litig.* did not rely on the relationship between the parties or the defendants' specific role in the transaction chain in deciding that California's public policy barred claims concerning the use of casino-style slot games. 806 F. Supp. 3d at 1034–35. The court found "no path for Plaintiffs to plead around this policy" simply because "gambling is at the heart of Plaintiffs' claims." *Id.* at 1035; *see also Ochoa v. Zeroo Gravity Games LLC*, 2023 WL 4291650, at *1, 4 (C.D. Cal. May 24, 2023). Here too, gambling is at the heart of Plaintiff's claims. Plaintiff's theories against Apple depend entirely on allegations that Apple processed, observed, or failed to intervene in what Plaintiff repeatedly characterizes as "gambling" transactions. Regardless of how Plaintiff labels his injuries, the claims arise from the same alleged gambling transactions.

Second, Plaintiff cannot evade *Kelly* by reframing his damages as "transaction fees and credit harm" rather than gambling losses. Every asserted injury arises from the same alleged gambling transactions on which the Complaint is based. Every count naming Apple is expressly premised on Apple's alleged processing of Plaintiff's "gambling transactions." Compl. ¶¶ 139–146, 299, 309, 392, 406, 411. The mere recharacterization of the harm does not change the nature of the claims: they arise from and turn on transactions Plaintiff himself characterizes as gambling. Plaintiff critically concedes this point, stating: "[t]o the extent any prayer language still reads on 'gambling losses,' Plaintiff does not press that measure against Apple and will conform the pleading by amendment." Opp. 9. Plaintiff thus admits that the Complaint, *as currently pleaded,* seeks recovery of "gambling losses" from

Apple. But amendment will be futile because no reframing could plausibly disconnect Plaintiff's claims from his gambling losses.

Third, contrary to Plaintiff's assertion (Opp. 9), the court in *In re Simulated Casino-Style Games Litig.* did not draw a distinction between gambling recovery and consumer protection claims in applying California's policy against judicial resolution of gambling claims. Indeed, the court dismissed *all* California claims, including consumer protection claims under California's Unfair Competition Law. *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 806 F. Supp. 3d 1015, 1045 (N.D. Cal. 2025) (denying motion to dismiss as to claims brought under consumer protection laws, "*except* for the California claims, which were dismissed above for an independent reason [due to the public policy bar]" (emphasis added)).

Plaintiff accordingly has no basis for avoiding California's absolute bar on gambling-based claims.

## III. THE COMPLAINT FAILS TO PLEAD A CLAIM AGAINST APPLE.

### A. Plaintiff's claim under California's Unfair Competition Law fails (Count VI).

#### 1. Plaintiff lacks standing because he fails to allege a loss or injury caused by Apple.

Plaintiff does not meaningfully dispute that he lacks the statutory standing necessary to pursue a UCL claim for lack of an injury-in-fact caused by a loss of money or property *as a result of a challenged business practice*. *See Tash v. Vision Serv. Plan*, 2026 WL 1012680, at *6 (E.D. Cal. April 14, 2026)(emphasis added); Mot. 9–11. Plaintiff's alleged injuries arose from his use of the ARB Gaming platform, not from his use of Apple Pay. Mot. 10. Plaintiff does not (and cannot) allege any economic injury "caused by" Apple, any payment made to Apple, or any facts showing Apple participated in the challenged conduct rather than merely serving as a neutral conduit for third-party funding sources. Nor does Plaintiff's Opposition meaningfully address these deficiencies. Instead, Plaintiff attempts to recast Apple as a participant in the challenged transactions despite alleging only that Apple Pay transmitted payment information to fund transactions with ARB Gaming.

In his Opposition, Plaintiff describes Apple's role as providing a "frictionless rail… through which the loss-producing payments to ARB in fact moved," but still contends that his "loss [is] traceable to Apple's own conduct, not merely to ARB's." Opp. 9. This argument fails. Courts have found that similarly situated technology companies are "not involved" with such transactions and therefore do not cause any alleged resulting economic injury. Mot. 10 (citing *Coffee v. Google, LLC*, 2021 WL 493387, at *10 (N.D. Cal. Feb. 10, 2021) ("Coffee I") (no economic injury attributable to Google, where Google was only alleged to have provided payment services for the purchase of virtual currency from a third party and the alleged gambling transaction was one "in which Google is not involved"); *Coffee v. Google, LLC*, 2022 WL 94986, at *8–9 (N.D. Cal. Jan. 10, 2022) ("Coffee II") (alleged processing of virtual currency sales "do not give rise to a plausible claim that Plaintiffs lost money or property" as a result of defendant's conduct)).

Plaintiff cannot cure these deficiencies by raising new allegations in his Opposition to show Apple's purported "involvement." *Cyph, Inc. v. Zoom Video Commc'ns, Inc.*, 642 F. Supp. 3d 1034, 1043 (N.D. Cal. 2022) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoting *Frenzel v. AliphCom*, 76 F. Supp. 3d 999, 1009 (N.D. Cal. 2014)). Plaintiff's Opposition asserts that Apple is not a "neutral stranger," pointing to two categories of newly-cited evidence: Apple's marketing of device-location and fraud-monitoring features, and Apple's hosting/distribution of ARB Gaming's app on the App Store. Opp. 11–13. Neither is alleged in the Complaint. *See* Compl. ¶¶ 138–146. Nor are RJN Exhibits 1 and 2—which are screenshots of an app store listing and a developer page—properly subject to judicial notice. RJN Opp 1–2. Accordingly, the Court should limit its inquiry to the allegations actually pleaded in the Complaint.

Further, the new allegations in the Opposition do not show Apple's "involvement" with ARB's online content. As Plaintiff admits, the App Store listing's initial release date of May 6, 2025 "postdates Plaintiff's September 2024–April 2025 activity" (Opp. 5, 12), and Plaintiff concedes this information is offered only to rebut Apple's "present-tense 'no

commercial relationship' statement," not as evidence of Apple's knowledge *during* the conduct period at issue. Opp. 12. The developer page, copyrighted 2026, is immaterial for the same reason. Even if an ARB Gaming app is currently available for download from the App Store, that limited developer relationship does not show Apple had any knowledge of or involvement with ARB Gaming content distributed through ARB's own website *outside* the App Store, or controlled or had actual knowledge of Plaintiff's specific transactions with ARB Gaming. As Plaintiff acknowledges, the Complaint asserts no claims arising from use of content accessed through the App Store. Opp. 8. And while Plaintiff points to Apple's general marketing of fraud-monitoring features and alleged device location awareness (Opp. 11), those capabilities do not support any inference that Apple had actual knowledge of Plaintiff's specific transactions or ARB Gaming's specific unlawful conduct.

Plaintiff's basis for standing is limited to his assertion that Apple allegedly "'observed th[e] sustained pattern' to a single gambling merchant and declined to intervene." Opp. 9. But "observ[ation]" of a transaction pattern is not participation in the underlying conduct that allegedly resulted in economic injury. Plaintiff cites no authority holding that a payment conduit becomes liable under the UCL merely because its systems allegedly could observe transaction velocity. Mot. 10, 18. The allegations do not lend themselves to any plausible inference that Apple had any duty to intervene. In his Opposition, Plaintiff elsewhere concedes that his allegations on Apple's knowledge are deficient, stating that "knowledge is the curable element." Opp. 14.

To cure the knowledge deficiency, Plaintiff introduces facts not present in the Complaint about a conversation he allegedly had with Apple support. Opp. 14. This conversation is not referenced in the Complaint so must be excluded. But even if the Court considers this conversation, it does not show knowledge of any illegal activity. Plaintiff simply writes "[m]y concerns are not with Apple Card. I was thinking I would be talking with a specialist from the Apple wallet department" without elaborating on what his concerns are. Joyce Decl. ¶ 3, Ex. U. Plaintiff himself admits that the underlying transactions at issue "were Plaintiff's own authorized transactions." Opp. 14. Even accepting Plaintiff's

description of the communication as true, nothing in the cited exchange indicates that Apple was informed that ARB Gaming was allegedly operating an unlawful gambling platform, that Plaintiff's transactions were purportedly unlawful, or that Apple possessed knowledge of any underlying misconduct. Apple therefore could not have *caused* any alleged injury.

Finally, Plaintiff concedes that his Complaint, as pleaded, does not allege economic loss that the UCL can redress through its remedy, restitution. Plaintiff states that he "accepts that restitution requires a vested interest in identifiable money," and claims that he "*will plead by amendment*" that he seeks "the funds that moved on Plaintiff's own transactions through Apple's rail… from which Apple's take was derived," which he "plainly held an interest" in. Opp. 10. As Apple explained in its Motion, Plaintiff cannot establish a restitutionary interest merely by tracing funds through transactions in which Apple allegedly played a role. Mot. 11. Plaintiff's proposed amendment therefore confirms, rather than cures, the defect identified in Apple's Motion. Mot. 11. Plaintiff still does not allege that he paid any money to Apple or possessed a vested interest in funds allegedly retained by Apple.

**2. Plaintiff has an adequate remedy at law.**

Federal district courts dismiss claims for equitable relief where an adequate remedy at law exists. *See Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1312–13 (9th Cir. 2022). Plaintiff concedes that his failure to plead the absence of an adequate remedy at law "is at most a basis for dismissing **the equitable prayer without prejudice**." Opp. 10 (emphasis in original). In any case, because Plaintiff does not explain why monetary damages would be insufficient to make him whole, he fails to plausibly allege that he lacks an adequate remedy at law. *In re MacBook Keyboard Litig.*, 2020 WL 6047253, at *3–4 (N.D. Cal. Oct. 13, 2020). Amendment would be futile here where the basis for Plaintiff's Complaint is that he lost money as a result of Apple's alleged actions. Mot. 12.

**3. Plaintiff concedes his injunctive relief claim.**

Plaintiff effectively concedes that he lacks standing to pursue injunctive relief against Apple. Plaintiff states that he "does not rest the [injunctive relief] claim on a threat that he will gamble again and does not oppose narrowing it." Opp. 10. But the only injunctive relief he seeks against Apple is an order directed at Apple's alleged "payment processing for illegal gambling operations." Compl. Prayer for Relief ¶ h. Having disclaimed any likelihood that he will again interact with the allegedly unlawful conduct on which his claims are based, Plaintiff fails to allege "a sufficient likelihood that he will again be wronged in a similar way" or that any future injury is actual and imminent. Mot. 12–13 (quoting *Tristan v. Bank of Am.*, 2023 WL 4417271, at *8 (C.D. Cal. June 28, 2023) (citations and alterations omitted)). Nor does Plaintiff identify any facts he could plead to cure this deficiency. Accordingly, his request for injunctive relief should be dismissed.

**B. The Complaint fails to plead a claim for unjust enrichment (Count VII).**

Plaintiff does not dispute that his unjust enrichment claim is improperly duplicative of his UCL Claim and instead argues that "[o]verlap with the UCL claim is, at most, a reason to require an election at judgment." Opp. 10. Plaintiff cites *Echo*, but does not dispute that this case states that "[t]here is no separate cause of action for unjust enrichment under California law." *Echo & Rig Sacramento, LLC v. AmGuard Ins. Co.*, 698 F. Supp. 3d 1210, 1218 (E.D. Cal. 2023). Opp. 10. Plaintiff's unjust enrichment claim should therefore be dismissed as duplicative.

Independently, Plaintiff's unjust enrichment claim also fails because he does not allege that Apple received a benefit directly from him or under inequitable circumstances. First, Plaintiff does not plausibly allege any benefit conferred on Apple at *Plaintiff's expense*. Mot. 14. He instead effectively concedes this element is unpleaded, stating that whether the fee came from Plaintiff or from his issuing bank "raises the same 'at Plaintiff's expense' question [present in his UCL claim]… which Plaintiff will plead with precision by amendment." Opp. 11. Indeed, in discussing his UCL claim Plaintiff states that his "injury is not, as Apple frames it, a fee Plaintiff 'paid' to Apple." Opp. 9. Nor would Plaintiff be able

to claim that Apple received a benefit at his expense where he does not allege that he paid any money directly to Apple, much less that Apple received any applicable transaction fees *from Plaintiff* rather than Plaintiff's issuing bank or other funding source. Mot. 15; *See supra*, § I. For the same reasons and due to the lack of any relationship between Apple and Plaintiff, Plaintiff cannot and will not be able to plausibly plead any inequitable circumstances, such as mistake, fraud, or coercion, that would render Apple's alleged retention of any benefit unjust. Mot. 14. The Court should dismiss Plaintiff's unjust enrichment claim.

**C. Plaintiff concedes he does not assert a separate "Payment Processor Liability" claim (Count XI).**

Plaintiff expressly concedes that he "does not defend Count XI [the Payment Processor claim] as an independent cause of action." Opp. 12. This concession alone warrants dismissal. Plaintiff's discussion of Section 230 immunity is immaterial in light of this concession and because Apple's Motion does not invoke Section 230 immunity. Opp. 13; Mot. 16. Plaintiff instead argues that the underlying factual allegations in his Payment Processor Liability claim should be incorporated into his UCL (Count VI) and Aiding and Abetting (Count XII) claims. Opp. 12–13. But these theories fail for the independent reasons discussed above. *See supra*, §§ I, II, III.A, III.B.

**D. Plaintiff concedes he fails to allege that Apple aided and abetted any purported unlawful gambling (Count XII).**

California adheres to the "'common law rule' that '[l]iability may … be imposed on one who aids and abets the commission of an intentional tort if the person … *knows* the other's conduct constitutes a breach of a duty and *gives substantial assistance* or encouragement to the other to so act.'" Mot. 17 (quoting *In re First All. Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (emphasis added) (quoting *Casey v. U.S. Bank Nat'l Ass'n*, 127 Cal. App. 4th 1138, 1144 (2005))). Here, Plaintiff effectively concedes that his aiding and abetting claim fails where he does not plausibly plead Apple's knowledge that ARB Gaming engaged in any misconduct.

As an initial matter, Plaintiff explicitly concedes that knowledge is "the element most in need of amendment" that he can "strengthen." Opp. 13. Plaintiff further concedes his allegations regarding Apple's knowledge, which are based solely on the "capability" of Apple's systems to detect, flag, and observe transaction patterns, fail because "capability" cannot "alone" constitute knowledge. Opp. 14. Plaintiff therefore concedes that his current allegations do not plausibly plead Apple's knowledge.

Plaintiff describes two categories of facts not currently present in the Complaint that he appears to believe could allege knowledge if he is allowed to amend. Opp. 14. But none of the new allegations plausibly show Apple's knowledge of ARB's alleged conduct. First, Plaintiff alleges that *ARB's* "own ledger" shows that the "3-D Secure fraud-authentication signal was not applied to" his payments. Plaintiff does not explain why that fact could suggest *Apple's* knowledge of alleged gambling, and he even describes this as "a neutral characteristic of the records . . . ." Opp. 14. Further, Plaintiff does not explain how the mere volume of payments of admittedly "authorized transactions" could have informed Apple that ARB was engaging in misconduct. Second, Plaintiff cites a customer service exchange with Apple in which he stated "[m]y concerns are not with Apple Card" and describes his intention to "talk[] with a specialist from the Apple wallet department." Opp. 14; Joyce Decl. ¶ 3, Ex. U. But Plaintiff did not explain his "concerns" and nothing in the exchange indicates Apple's knowledge of alleged gambling. *Id.* That Apple's automatic system "guaranteed help" and stated it would "retain[] the exchange" does not lead to any inference of Apple's knowledge of ARB's alleged misconduct where the exchange does not describe any particular issue with "Apple wallet" or a particular transaction, much less inform Apple of ARB's alleged misconduct. Plaintiff acknowledges this weakness, explaining that "the quoted messages show a consumer routing a Wallet dispute to Apple, not Apple being told in those words that ARB ran an unlawful operation." Opp. 14.

Finally, knowledge alone is insufficient to plead an aiding and abetting claim. Plaintiff must also allege that Apple "substantial[ly] assist[ed]" or "encouraged" ARB to act. Plaintiff cannot do so. Plaintiff's allegations concern Apple's alleged "process[ing] of gambling

transactions." Mot. 18–19. Even accepting these allegations, this conduct cannot plead aiding and abetting liability. *Id*. (citing *Perfect 10*, 494 F.3d at 809 (plaintiff cannot plead aiding and abetting liability by alleging defendants "merely process credit card payments")). Amendment would be futile under this record, even if supplemented. Plaintiff's aiding and abetting claim should be dismissed with prejudice.

## IV. DISMISSAL WITH PREJUDICE IS WARRANTED BECAUSE AMENDMENT WOULD BE FUTILE.

California's public policy barring judicial enforcement of gambling-loss claims independently forecloses Plaintiff's claims against Apple. *See supra*, § II. Regardless, further amendment would be futile because, even accepting new allegations in Plaintiff's opposition, those allegations do not cure the Complaint's fundamental defects. *See supra*, §§ I, II, III; *Pirani v. Slack Techs., Inc.*, 127 F.4th 1183, 1191 (9th Cir.), *cert. denied*, 146 S. Ct. 186, 223 L. Ed. 2d 59 (2025) (holding that "in light of [plaintiff's] concessions, amendment of the complaint would be futile"); *Khangura v. Am. Mortg. Exp.*, 2009 WL 1604764, at *3 (E.D. Cal. June 5, 2009), *report and recommendation adopted sub nom. Khangura v. Am. Mortg. Express*, 2009 WL 10690912 (E.D. Cal. July 1, 2009) (recommending motion to dismiss pro se complaint be granted where, "[a]lthough plaintiff concedes in his opposition that his claims are deficiently pled, he offers no substantive opposition that suggest amendment would be anything other than futile"). Here, dismissal with prejudice is therefore warranted. Mot. 19 (citing cases).

## CONCLUSION

For the foregoing reasons, Apple requests that the Court grant Apple's motion and dismiss each claim against Apple with prejudice.

Dated: August 10, 2026

Respectfully submitted,

**DLA PIPER LLP (US)**

By: /s/ *John Samuel Gibson*
JOHN SAMUEL GIBSON

TANYA L. GREENE
COLIN F. MCGRATH

Attorneys for Defendant
APPLE INC.