**DUANE MORRIS LLP**
Karen L. Alexander (SBN 265926)
KLAlexander@duanemorris.com
750 B Street, Suite 2900
San Diego, CA 92101-4681
Telephone: +1 619 744 2200
Facsimile: +1 619 744 2201

Daniel D. Wall (SBN 311391)
DWall@duanemorris.com
Spear Tower, One Market Plaza, Suite 2200
San Francisco, California 94105-1127
Telephone: +1 415 957 3000
Facsimile: +1 415 957 3001

Attorneys for Defendant
ARB GAMING LLC dba MODO

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| MATTHEW JOYCE, an individual,<br><br>Plaintiff,<br><br>v.<br><br>ARB GAMING LLC dba MODO, a Delaware limited liability company; B2SERVICES OU dba MCLUCK; AFFIRM, INC.; GOLDMAN SACHS BANK USA; APPLE INC.; AMAZON.COM, INC.; and DOES 1-10 inclusive,<br><br>Defendants. | Case No. 2:25-cv-01868-DJC-CSK (PS)<br><br>**DEFENDANT ARB GAMING LLC'S NOTICE OF FINAL ARBITRATION AWARD IN ITS FAVOR**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Dept: Courtroom 7, 14th Floor<br>Judge: Hon. Daniel J. Calabretta<br>Magistrate Judge Chi Soo Kim |

Respondent/Defendant ARB Gaming LLC d/b/a Modo ("Defendant" or "ARB") respectfully notifies the Court that, on September 4, 2026, the Honorable Peggy A. Leen (Ret.) ("Arbitrator") entered a Final Award ("Final Award") in the JAMS arbitration initiated by Plaintiff Matthew Joyce ("Plaintiff" or "Joyce") against ARB. A true and correct copy of the Final Award is attached hereto as **Exhibit A**.

The Arbitrator's Final Award resolves the arbitration in its entirety in ARB's favor. The Arbitrator determined, among other things, that (1) the parties' arbitration agreement is mandatory, valid, and enforceable; (2) Joyce's claims against ARB are arbitrable; (3) Joyce, having initiated and participated in the arbitration, waived his argument that his remaining claims should not be arbitrated; and (4) ARB is entitled to a Final Award in its favor on all remaining claims asserted by Joyce—for breach of contract, unjust enrichment, negligent misrepresentation, and fraud/intentional misrepresentation. The Arbitrator had previously dismissed Joyce's California statutory claims with prejudice.

The Court may take judicial notice of materials from another tribunal. *Biggs v. Terhune*, 334 F.3d 910, 915 n.3 (9th Cir. 2003), *overruled on other grounds by Hayward v. Marshall*, 603 F.3d 546 (9th Cir. 2010) (en banc). Courts also may notice arbitration filings, records, orders, and awards. *See, e.g.*, *Rachford v. Air Line Pilots Ass'n, Int'l*, 284 F. App'x 473, 475 (9th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Aug. 11, 2008) (taking judicial notice of arbitrator's ruling); *Klahn v. Quizmark, LLC*, 2013 WL 4605873, at *1 n.4 (N.D. Cal. Aug. 28, 2013) (same); *Coleman v. Am. Honda Fin. Corp.*, 2019 WL 4456002, at *1 (C.D. Cal. June 7, 2019) (taking judicial notice of "filings, records, orders, and awards" in arbitration proceeding). ARB previously requested that the Court take judicial notice of materials from the same JAMS arbitration in connection with its Motion to Compel Arbitration. Had the Final Award been available at that time, ARB would have included it in its request for judicial notice. ARB therefore respectfully requests that the Court take judicial notice of the Final Award.

The Final Award was issued after briefing on ARB's pending Motion to Compel Arbitration in this Court [ECF No. 56] and bears directly on the issues presented by that

motion. ARB therefore respectfully submits the Final Award for the Court's consideration in connection with the pending Motion.

Dated: September 16, 2026

**DUANE MORRIS LLP**

By: */s/ Daniel D. Wall*
Karen L. Alexander
Daniel D. Wall

Attorneys for Defendant
ARB GAMING LLC dba MODO

# EXHIBIT A

Hon. Peggy A. Leen (Ret.)
JAMS
7160 Rafael Rivera Way
Suite # 400
Las Vegas, NV 89113
Ph: 702-457-5267

**JAMS ARBITRATION CASE REFERENCE NO. 5100003080**

**Joyce, Matthew,**
**Claimant(s),**

**vs.**

**Arb Gaming LLC dba Modo,**
**Respondent(s).**

---

# FINAL AWARD

This Final Award incorporates the Interim Award entered May 13, 2026, in its entirety and updates the procedural history and findings and conclusions made after it was entered.

**Claimant's August 14, 2026 Motion**

A Final Award is entered at the request of Claimant as one of two alternative requests for relief made in Claimant's Motion to Terminate Arbitration or in the Alternative for Entry of a Final Award filed and served August 14, 2026. Claimant filed and served a Declaration of Matthew Joyce Under 28 USC 1746 in Support of Motion to Terminate Arbitration, or in the Alternative for Entry of a Final Award with the motion.

The relief requested is that I (1) "TERMINATE this arbitration as a proceeding that cannot be administered to a binding result; or (2) IN THE ALTERNATIVE, … enter a FINAL AWARD that embodies the determinations already made; and (3) DENY Respondent's request for sanctions. (emphasis in original)

Briefly summarized Claimant's Declaration attests that: (1) he "did not begin this dispute in arbitration" and "filed suit in Contra Costa, California; (2) his former counsel, Reshma Kamath, prepared the Demand for Arbitration and "opened this proceeding"; (3) he consented because Ms. Kamath represented it would be non-binding, was "a first step only", the next step was proving the arbitration clause was worthless, and he did not understand that "proceeding here could foreclose the claim" he brought in court; (4) he repeatedly told his attorney that he was "not walking into a closed binding arbitration" with Respondent, orally and in writing; (5) his attorney prepared all the submissions and he was willing "to take part in the proceeding" but "not willing to be bound by it"; (6) counsel filed a Motion for Order Declaring Arbitration Non-Binding September 10, 2025 which remained pending until it was denied March 4, 2026; (7) he was not aware when he appeared at a Zoom hearing in this arbitration without counsel on November 13, 2025 that his counsel had been disbarred from practice in federal court in the Northern District of California, but his counsel had not responded to his communication asking what he "needed to know for it" and learned the next day she had been disbarred; (8) he was not surprised Ms. Kamath failed to appear because "she had not been reachable for a long time before she failed to appear"; (9) "during that period" he "was acutely ill".

The Declaration further attests: (10) his former attorney Ms. Mack "has never surrendered [his] complete file; (11) he requested the file May 19, 2026 and May 26, 2026; (12) in late June Ms. Mack's office gave him access to a client portal that was incomplete; (13) on May 26 he asked his counsel to file a formal request for disability accommodation with the Court and she declined to do so; (14) he received an email from counsel May 27, 2026 and responded asking for information about the arbitration to which she did not respond; (15) Ms. Mack's last substantive communication to him was May 20, 2026 in which she stated she was moving to

withdraw from this arbitration the same day; (16) "[w]ithdrawal was not granted until June 18, 2026" and he has "proceeded alone in this forum" since then without his file.

**Respondent's August 21, 2026 Opposition to Claimant's Motion**

Respondent opposes the motion arguing it is an improper and unauthorized request for reconsideration/re-argument of issues previously decided in this arbitration. Respondent asserts the motion fails to comply with JAMS Comprehensive Rule 18 because it is a dispositive motion filed without leave which violates the June 18, 2026 scheduling order entered in this case which set a briefing schedule for Respondent's motion to dismiss Claimant's Amended Statement of Claim. Respondent maintains Claimant may not circumvent the scheduling order and its requirements by filing a motion to terminate claims that were determined as arbitrable in a March 4, 2026 Order and the Interim Award entered May 13, 2026.

Respondent also contends Claimant is seeking to reverse prior orders entered in this arbitration without identifying an intervening change in law, newly discovered evidence previously unavailable, clear error or manifest injustice. Respondent requests that the motion be denied and that its pending unopposed July 3, 2026 motion to dismiss be granted on the papers it submitted "and the existing record."

The claims for which Claimant seeks termination or alternatively a Final Award are those asserted in Amended Demand for Arbitration and Amended Statement of Claim filed by his counsel April 1, 2026 for: (1) breach of contract; (2) unjust enrichment; (3) negligent misrepresentation; and (4) fraud/intentional misrepresentation.

A Final Award is entered in favor of Respondent and against Claimant on all claims asserted in his original Demand and Statement of Claims, and on all threshold issues addressed and decided in the Interim Award. The analysis, reasons, conclusions on which this Final Award

is based are set forth below the Interim Award.

**INTERIM AWARD RE: (1) CLAIMANT'S MOTION FOR AN ORDER DECLARING ARBITRATION NON-BINDING, (2) RESPONDENT'S MOTION TO DISMISS AND (3) CLAIMANT'S NOTICE OF WITHDRAWAL OF ALL CLAIMS**

## I. Introduction and Procedural History

A Demand for Arbitration was filed May 9, 2025 which attached a Complaint for Damages with a caption (but without a case number) suggesting it was filed in the Superior Court of the State of California in Contra Costa County. Claimant asserted claims for: (1) violation of the California Unruh Civil Rights Act; (2) Breach of Contract; (3) Negligent Misrepresentation); (4) Unfair Business Practices under California Bus. & Prof. Code (violation of the Unruh Civil Rights Act); (5) Fraud/Intentional Misrepresentation; (6) Unjust Enrichment/Quasi-Contract; and (7) Violation of California Financial Lenders Law. The Demand does not name anyone other than ARB Gaming as a Respondent. None of the other Defendants named in the Complaint (but not named as Respondents in the Demand) have been served or made an appearance.

Respondent ARB Gaming LLC dba Modo US filed an Answer and Affirmative Defenses August 20, 2025.

Claimant filed the Motion for An Order Declaring Arbitration Non-Binding September 10, 2025. Respondent filed a Motion to Dismiss October 22, 2025.

A Preliminary Hearing was conducted September 25, 2025. Claimant was represented at the time by Reshma Kamath who appeared on his behalf. Walter Saurack appeared on behalf of Respondent ARB Gaming LLC dba Modo US ("ARB Gaming"). At the preliminary hearing counsel for Claimant stated she had not served and did not intend to serve the other two Defendants named in the Complaint and was proceeding only with claims asserted against Respondent.

Counsel for both sides indicated a number of threshold issues should be decided before any voluntary exchange of information and discovery was commenced. Claimant's counsel indicated she intended to file an amended motion raising additional issues not addressed in the motion to declare the arbitration non-binding.

A briefing schedule was established for the threshold issues the parties indicated they intended to file, and oral argument was set for November 13, 2025. Claimant's counsel did not file an amended motion, and did not appear at the hearing set to conduct oral argument. Claimant appeared without counsel and said he was not surprised by his counsel's failure to appear and that although she was still his counsel of record he was seeking a second opinion from another lawyer.

Oral argument was not conducted in the absence of counsel for Claimant and I entered an Order to Show Cause ("OSC") giving counsel for Claimant until December 1, 2025 to show cause why the pending motions should not be decided on the moving and responsive papers. The OSC also gave counsel until December 1, 2025 to seek to withdraw or request any relief deemed reasonable to protect Claimant's rights in this arbitration. Counsel for Claimant did not respond to the OSC.

Claimant subsequently sent an email to the JAMS case manager copied to opposing counsel indicating his counsel had been disbarred, that he was in the process of obtaining substitute counsel, requesting access to JAMS Access and various other forms of relief. Claimant was given instructions on how to use JAMS Access. Counsel for Respondent filed a letter November 21, 2025 proposing that Claimant obtain counsel by December 17, 2025 and requesting that if no substitute counsel appeared the pending motions should be decided on the submissions on file.

On December 6, 2025 Claimant filed and served a pro se Supplemental Submission in Support of Motion for Non-Binding Arbitration. Respondent filed and served a letter response December

15, 2025 objecting to the supplement, pointing out substitute counsel had not made an appearance, and requesting that the pending motions be decided without consideration of the Claimant's supplemental filing. Claimant filed and served a letter response December 18, 2025.

On January 21, 2026 Amina Mack filed and served a Notice of Appearance on behalf of Claimant. On February 12, 2026 counsel for Respondent filed and served a letter request again asking that I decide the pending motions on the papers under submission. Substitute counsel had not filed or requested leave to file any additional pleadings or papers. I therefore directed the case manager to advise counsel that I had begun drafting the order to decide these motions on the moving and responsive papers.

Two weeks later on February 28, 2028 counsel for Claimant responded to the February 12, 2026 letter requesting "targeted procedural relief", at a minimum in the form of a short procedural conference, and a clear revised schedule to complete the record and both sides to have a fair opportunity to be heard. Claimant requested a 30-minute status conference, permission to file a late response to the OSC, permission to file a limited reply regarding procedural issues and any permitted supplemental briefing, oral argument and/or an evidentiary hearing, and leave to respond more formally to Respondent's February 12th letter, and if not, that the submission be disregarded, or treated as a request that requires more motion practice.

Counsel for Respondent replied March 2, 2026 objecting to Claimant's request for a "do over", asserting Respondent would be prejudiced by the additional delay and expense of "relitigating" motions under submission, objecting to additional briefing and hearings, and reiterating Respondent's request for a decision on the fully briefed motions.

I waited more than a month after Counsel for Claimant made an appearance for Counsel for Claimant to request any form of relief before starting to draft an order resolving fully briefed pending motions. None was made until after the case manager advised counsel I was in the process of preparing the order. Claimant's request for additional briefing on the motions under submission and related relief was therefore denied.

In an Order filed and served on March 4, 2026 I: (1) Denied Claimant's Motion for an Order Declaring Arbitration Non-Binding; (2) Granted in Part and Denied in Part Respondent's Motion to Dismiss; (3) Dismissed Claimant's California law-based claims in Counts one, four, and seven with prejudice; (4) Dismissed Claimant's claims against the unserved entities with prejudice; (5) Dismissed Claimant's negligence and fraudulent misrepresentation claims with Leave to Amend; (6) Gave Claimant until April 2, 2026 to file and serve an Amended Demand with a statement of claims and the relief sought in this arbitration with a plain, short and concise statement of the factual basis for each claim and the remedy sought consistent with JAMS Comprehensive Rule 9.

On April 1, 2026 Claimant filed and served an Amended Demand for Arbitration and Amended Statement of Claim asserting claims against Respondent for: (1) Breach of Contract; (2) Unjust Enrichment; (3) Negligent Misrepresentation; and (4) Fraud/Intentional Misrepresentation. The prayer for relief requests that the Arbitrator enter an award in favor of Claimant and against Respondent for compensatory damages, consequential damages, punitive damages, pre-judgment interest, attorney's fees and costs pursuant to Ariz. R. Civ. P. 54, and such other relief as the Arbitrator deems just and proper.

On April 6, 2026 Claimant filed and served a Notice of Withdrawal of All Claims stating Claimant was: (1) voluntarily withdrawing all claims against Respondent in this arbitration; (2) the notice was intended to withdraw Claimant's Demand for Arbitration and Amended

Demand/Statement of Claims and requested relief; (3) requesting that JAMS and the Arbitrator enter any administrative order(s) necessary to close the file and terminate all further proceedings; (4) requesting that dismissal be entered without prejudice as to all claims asserted in writing unless Respondent objects in writing "within days of service of the Notice" in which event Claimant requested a brief status conference "to address the form of the dismissal"; (5) the Notice was provided "pursuant to the parties' arbitration agreement and the JAMS Comprehensive Rules and Procedures"; and (6) Claimant acknowledged "that the arbitration agreement includes an Arizona governing law and venue provision, and Claimant submits this Notice under Arizona law and jurisdiction as applicable to this arbitration."

The April 6, 2026 Notice also stated: (1) "[u]nless otherwise ordered by the Arbitrator, … Claimant does not concede any entitlement by Respondent to recover attorneys' fees or costs, and expressly reserves all rights and objections concerning any request for costs, fees, or sanctions"; and (2) requested that any request for costs and fees "be made by written motion on a schedule set by the Arbitrator. The relief requested in the Notice was that the Arbitrator and/or JAMS: (1) acknowledge withdrawal of all claims and close this arbitration file; (2) enter an order dismissing all claims without prejudice; and (3) vacate any pending deadlines, hearings or conferences.

Respondent filed and served a letter response to the Notice requesting that the Arbitrator: (1) enter a Final Award pursuant to JAMS Comprehensive Rule 13 as a condition of any withdrawal or dismissal consistent with the March 4, 2026 order; (2) afford Respondent an opportunity to reopen this arbitration to allow an application for attorneys' fees and costs "should Claimant pursue dismissed/arbitrable claims" in a pending Eastern District of California federal action or any other forum; and (3) stay all proceedings while the Notice and objections are under consideration and ruled upon.

I entered an Order April 10, 2026 giving Claimant until April 22, 2026 to file and serve a response to Respondent's opposition to the Notice and granting Respondent's request to stay all pending deadlines in this arbitration.

Claimant field a Response to Respondent's Opposition to Notice of Withdrawal of all Claims on April 22, 2026. Respondent requested and was granted leave to file a reply which was filed and served May 4, 2026.

This Interim Award is entered now that Claimant has filed and served his April 1, 2026 Amended Demand for Arbitration and Amended Statement of Claim to give effect to and incorporate in its entirety the findings, conclusions, analysis and decisions made in the Order entered March 4, 2026.

## II. The Parties Positions

### A. Claimant's Motion for an Order Declaring Arbitration Non-Binding

Claimant's prior counsel filed this motion arguing that the arbitration agreement contained in the parties' contract "is void *ab initio* due to its alleged illegal object—a nation-wide online gambling operation that targeted a disabled individual in violation of federal law." The motion seeks an order pursuant to the Federal Arbitration Act ("FAA") 9 U.S.C. Sec 1-16 "declaring that any arbitration compelled in this matter shall be conducted on a non-binding basis." The motion also maintains the provisions of the arbitration agreement "are so one-sided and oppressive as to be unconscionable, rendering the agreement to arbitrate itself unenforceable."

Counsel for Claimant contended the gravamen of the complaint "alleges a sophisticated and predatory enterprise that operated in flagrant disregard of federal statutes ... as a facade for an

online casino that systematically exploited a vulnerable individual with a known gaming disability."

Counsel also asserted that "the arbitration clause is a paradigmatic example of an unconscionable adhesive contract drafted by a sophisticated party and imposed upon a vulnerable consumer without negotiation, containing terms so one-sided that they shock the conscience." Specifically, she argued: the arbitration clause is found within a 24-page Terms of Use, and is a contract of adhesion presented on a take-it-or-leave-it basis; and which mandates individual arbitration with JAMS; contains a sweeping class action waiver; severely limits Claimant's and others ability to seek redress for widespread grievances; is inextricably intertwined with the alleged illegality of the entire contract; contains a confidentiality agreement which shrouds the practices alleged to violate federal law; and is designed to minimize the cost of litigation and settlement for defendants while allowing them to profit out of public view.

She also contended the opt-out provision in Section 16.12-13 of the arbitration clause was effectively concealed, and practically impossible for someone in Claimant's compromised mental state to exercise.

The motion asserts the contract as a whole is void due to illegality and therefore it is for a court rather than an arbitrator to decide the validity of the contract containing the arbitration clause. This is because the arbitrator's authority is derived from the parties' contract and an arbitrator has no authority to act based on a contract found void *ab* initio. Counsel maintained "the Court" [Arbitrator] should therefore deny enforcement of the binding arbitration scheme in its entirety or, at a minimum, order that it proceed on a non-binding basis.

**B. Respondent's Opposition**

Respondent opposed the motion arguing Claimant filed a Demand for Arbitration attaching a Complaint and a March 28, 2025 version of ARB Gaming's Terms of Use ("Terms") which includes a mandatory arbitration agreement. Respondent contends there is no basis to disregard Claimant's agreement to arbitrate or to maintain a parallel action against it in another forum.

Respondent asserts it offers users the ability to play games online which bear resemblance to casino-based games. However, the games it offers do not offer real gambling opportunities, no money is required to play and the products do not constitute gambling. Claimant is a resident of North Carolina who occasionally accessed the Modo platform in 2024 and 2025 to play games and make purchases.

The opposition asserts that Joyce commenced an action by filing a Complaint in the Superior Court of California, County of Contra Costa May 5, 2025 against it and other Defendants not named in the Demand for Arbitration filed with JAMS May 9, 2025. One of the Defendants named in the Complaint, Affirm, removed the state case to the United States District Court for the Northern District of California June 3, 2025, case no 25-cv-04677 KAW. According to Respondent, after former counsel for Claimant was disbarred, the Northern District of California case was voluntarily dismissed and refiled in federal court in the Central District of California June 30, 2025 as Joyce v ARB Gaming et. al, Case No. 25-cv-1968-DJC-CSK. However, at the time the opposition to Claimant's motion was filed ARB Gaming had not yet been served in the federal action. ARB intends to move to dismiss for lack of personal jurisdiction if and when it is served and required to appear in the federal case.

On the merits Respondent argues the FAA applies to the parties' arbitration agreement which is contained in the Terms Claimant agreed to which contain a mandatory arbitration agreement with an Arizona governing law provision. Joyce accepted the Terms, including the agreement to arbitrate in a "clickwrap agreement" that multiple jurisdictions, including California and Arizona have upheld as valid and enforceable.

Respondent argues it is unclear from the Complaint attached to the Demand what connection California has to the claims or how California law would apply to Joyce who is a North Carolina resident whose only apparent connection to California is that he retained a California attorney.

Respondent argues the binding arbitration agreement is valid and enforceable under the FAA and that Claimant's claims clearly arise out of and are related to his use of the Modo platform under the Terms of Use he agreed to when he signed up to use it. Respondent also argues that Joyce's claim that the entire contract is void for alleged illegality is an issue for the arbitrator to decide.

Citing *Prima Paint Corp., v. Flood & Conkin Mfg. Co.,* 388 U.S. 395 (1967), Respondent contends that even if the entire contract is void *ab initio* because its purpose is to promote illegal gambling as Claimant argues the arbitration agreement is severable from the remainder of the contract.

Respondent maintains the parties' arbitration agreement evidences clear and unmistakable intent to delegate questions of arbitrability to the arbitrator although the threshold issue of the enforceability of the delegation provision is a separate threshold issue in a federal court action to enforce an agreement to arbitrate.

Respondent also argues the Supreme Court has held class action waivers in arbitration agreements are enforceable so Claimant cannot argue the arbitration agreement is unenforceable as unconscionable on this ground, especially since he has not asserted a class action.

Finally, Respondent maintains Claimant waived any objections to arbitration by filing a Demand for Arbitration, participating in the arbitrator's selection process and appearing at the preliminary hearing.

The Opposition is supported by the Declaration of Patrick Fechtmeyer who avers he is the Chief Executive Officer of ARB Gaming, LLC, a limited liability company formed and existing under Delaware law who has personal knowledge and is familiar with the company's products and how the games operate. He attests a prospective user of the Modo website creates an account and must accept the Terms of Use to participate in ARB's services, access its games, or make purchases. He further attests Claimant created a user account with ARB on August 2, 2024, and according to ARB records accepted the 2024 Terms attached as Exhibit 1 to the Declaration.

**C. Claimant's Reply**

Claimant replies that Mr. Fechmeyer's Declaration demonstrates how unconscionable the parties' agreement is, and fails to address the core issue which she asserts is whether the contract is void *ab initio* for illegality. Claimant also contends he was forced to sign the latest version of the contract on September 10, 2024, and the "clickwrap process is the epitome of a contract of adhesion." The version of the Terms attached to the Demand dated March 28, 2025 post-dates the majority of Claimant's platform usage and alleged losses.

Claimant's "core assertion is not that any version of the Terms is void *ab initio* but a challenge to the existence of any valid contract whatsoever." The threshold issue "of whether a valid contract

ever came into being is therefore paramount and must be resolved before any obligation to arbitrate can attach." Claimant contends the burden is on the party seeking to compel arbitration to prove the existence of a valid agreement to arbitrate by a preponderance of the evidence, and only if that burden is met does the burden shift to the party resisting arbitration to prove a defense to enforcement.

Claimant also argues that for a delegation of arbitrability clause to be enforceable the parties must have clearly and unmistakably agreed to delegate arbitrability to the arbitrator. The boilerplate contract of adhesion language buried in the lengthy Terms of Use, Claimant argues, do not constitute clear and unmistakable agreement by the Claimant consumer.

Claimant disputes that he waived his right to challenge arbitration by participating in this arbitration by taking steps necessary to protect his interests in other forums and this arbitration. Claimant asserts he filed a court action and then this arbitration "to avoid any potential waiver argument from Respondent", and his participation in arbitrator selection and the preliminary conference "was a necessary consequence of this protective filing and does not constitute acting 'inconsistently' with a challenge to arbitration."

## III. The Arbitration Agreement

Claimant filed the Demand attaching a copy of the March 28, 2025 Terms and identifying it as the agreement to arbitrate. It is entitled "Terms & Conditions Last Updated: March 28, 2025". In the Demand and attached Complaint Claimant alleges that from approximately 2024 to 2025 he was a customer of Respondent Modo's platform who initially made modest purchases but gradually increased his spending as his addiction worsened and mental state declined.

In paragraph 41 of the Complaint Claimant alleges he was allowed to win "$6,000 on Defendants' platform but was later coerced into signing a terms and conditions page under duress, which he was forced to accept as a condition of continuing play …". Paragraph 89 of the Complaint Claimant alleges he "entered into contracts with Defendants by agreeing to their Terms of Service when using their platforms."

Respondent's CEO attests Claimant agreed to the September 10, 2024 version of the Terms of Use attached as Exhibit 1 to his declaration via his iPhone. Section H, which contains the Mandatory Arbitration and Class Action Waiver Agreement appears to be identical in both versions of the Terms of Use.

The Terms & Conditions attached to the Demand Claimant identified as the agreement to arbitrate states they "form a binding legal agreement [between Claimant and Modo], and apply to your use of the Platform …." It states:

> …THESE TERMS INCLUDE A PROVISION WAIVING THE RIGHT TO PURSUE ANY CLASS ACTION, GROUP OR REPRESENTATIVE CLAIM AND REQUIRING YOU TO PURSUE PAST, PENDING AND FUTURE DISPUTES BETWEEN YOU AND US THROUGH INDIVIDUAL ARBITRATION UNLESS YOU OPT OUT WITHIN THE SPECIFIED TIME FRAME. SEE SECTION H BELOW FOR MORE INFORMATION.

Section H is entitled "**DISPUTE RESOLUTION AND DAMAGES".** Paragraph 1 requires an initial informal resolution procedure. Paragraph 2 contains the "Mandatory Arbitration and Class Action Agreement". It provides:

> PLEASE READ THIS SECTION H (MANDATORY ARBITRATION AND CLASS ACTION AGREEMENT) CAREFULLY BECAUSE IT MAY REQUIRE YOU AND MODO TO ARBITRATE CERTAIN DISPUTES AND CLAIMS ON AN INDIVIDUAL BASIS ONLY AND LIMIT THE MANNER IN WHICH YOU AND MODO CAN SEEK RELIEF FROM EACH OTHER. THIS AGREEMENT APPLIES TO ANY DISPUTES OR CLAIMS YOU MAY CURRENTLY POSSESS AND ANY CLAIMS YOU MAY RAISE IN THE FUTURE CONCERNING THESE TERMS OR USE OF MODO'S PLATFORM.

Paragraph H specifies it "will be construed under and be subject to the Federal Arbitration Act, notwithstanding any other choice of law set out in these terms." It also provides:

> The parties acknowledge that Section H is a separate agreement between the parties and that any alleged or determined invalidity or illegality of all or part of the Terms or Platform shall have no effect upon the validity and enforceability of this agreement.
>
> . . .
>
> By agreeing to these terms, and to the extent permitted by applicable law, you agree to resolve any Disputes—including any Dispute concerning the enforceability, validity, scope, or severability of this agreement to arbitrate—through binding arbitration. Arbitration means you will not be able to seek damages in court or present your case to a jury.

The arbitration agreement gave Claimant 30 days from use of the Platform to decline to arbitrate by sending written notice to ARB Gaming at an address provided in Scottsdale, Arizona.

It also contains an agreement that JAMS would administer the arbitration under its Comprehensive Arbitration Rules and Procedures and provides the website address where the rules are available.

Paragraph 4 contains the "Governing Law and Venue" terms of the agreement to arbitrate. It states:

> These Terms and all matters arising out of, or relating to, these Terms shall be governed by the laws of the State of Arizona, excluding its conflict of law provisions. The sum of this Section H(4) is that any and all Disputes … must be, without exception, resolved in Scottsdale, Arizona. …. The parties agree to *exclusive jurisdiction and venue in, and only in Scottsdale, Arizona.* The parties additionally agree that this choice of venue and forum is mandatory and not permissive in nature, thereby precluding any possibility of litigation between the parties with respect to, or arising out of, these Terms in a jurisdiction other than that specified in H(4).
>
> All parties hereby waive any right to assert the doctrine of forum non-conveniens or similar doctrines challenging venue or jurisdiction, or to object to venue with respect to any proceeding brought in accordance with this Section H or with respect to any dispute.

## IV. Analysis and Decision of Claimant's Motion

The FAA was enacted and designed "to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate." *Dean Witter Reynolds Inc., v Byrd*, 470 U.S. 213, 219-20 (1985). It places agreement to arbitrate "upon the same footing as other contracts." *Scherk v Alberto-Culver Co.*, 417 U.S. 506, 511 (1974). The FAA reflects both a liberal federal policy in favor of arbitration, and the fundamental principle that arbitration is a matter of contract. *AT&T Mobility v Concepcion*,

563 U.S. 333, 339 (2011) ("[A] party can be forced to arbitrate only those issues it specifically has agreed to submit to arbitration." *First Options of Chi., Inc. v. Kaplan* 514 U.S. 938, 945 (1995).

Section 2 of the FAA provides that an arbitration agreement in a contract involving a transaction in interstate commerce "shall be valid, irrevocable and enforceable save upon such grounds as exist in law or equity for the revocation of any contract." 9 U.S.C Sec. 2. State law governs the validity, revocability, and enforcement of a contract. *Chiron Corp. v Ortho Diagnostics*, 207 F 3d. 1126, 1130 (9th Cir. 2000).

State law also governs the interpretation of contracts. As the Supreme Court explained in *Volt Info Sciences v. Bd. of Tr. Of Sanford University*, 489 U.S. 468, 488-89 (1989), "in applying general state law principles of contract interpretation of an arbitration agreement within the scope of the Act, due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration."

When a contract contains an arbitration clause there is a presumption of arbitrability. *AT&T Tech. v. Commc'cn Workers of Am.,* 475 U.S. 643, 650 (1986). ([A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.") *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 24-25 (1983). However, the FAA does not mandate the arbitration of all claims, or prevent parties from excluding certain claims from the scope of their arbitration agreement. *Id*. Rather, it simply requires enforcement of agreements to arbitrate "like other contracts, in accordance with their terms." *Id*. (citation omitted).

In *Prima Paint v. Flood & Conklin Mfg.,* 388 U.S. 395, 402-406 (1967) the United States Supreme Court enunciated the principles commonly referred to as the separability or severability doctrine. The Court addressed a dispute over whether arbitrators have the authority to adjudicate

contract avoidance defenses relating to the enforceability of the contract as a whole, or only those that relate to the arbitration agreement. *Prima Paint* involved a claim that the contract containing the arbitration provision was void because it was fraudulently induced. The Supreme Court held that pursuant to Section 4 of the FAA, resolution of the fraudulent inducement claim was for the arbitrator to decide and that a claim the entire contract was fraudulently induced did not implicate whether the parties entered into an arbitration agreement. It held that under the FAA it was for the arbitrator rather than the court to decide whether the parties agreed to arbitrate.

Under the severability doctrine when the validity of the entire contract containing an arbitration clause is challenged, the arbitration provision is severable and the parties' disputes are arbitrable. In this arbitration Claimant asserts the contract he entered into is void *ab initio* because it involves an illegal online gaming operation that targeted a disabled individual in violation of federal law. *In Buckeye Check Cashing Inc. v. Cardegna, 546 U.S. 440 (2006)* the Supreme Court addressed whether it was for the court or the arbitrator to decide if a contract containing an arbitration provision is void for illegality. The Supreme Court reversed a decision by the Florida Supreme Court and held that Section 2 of the FAA created a federal substantive law of arbitrability that included the severability doctrine announced in *Prima Paint*.

Claimant challenges both the validity of the entire contract and the arbitration agreement contained in the Terms of Use. In *Rent-A-Center v. Jackson*, 130 S. Ct. 2772 (2010) the Supreme Court held that when the arbitration agreement contains a provision stating that the arbitrator will resolve all disputes regarding the validity or enforceability of the arbitration agreement, the severability doctrine applies.

Claimant's Demand identified the March 28, 2025 updated version of the Terms and Conditions in Section H as the applicable dispute resolution and damages agreement and paragraph

2 as the parties "Mandatory Arbitration and Class Action Waiver." The arbitration agreement is clear and unambiguous. It clearly provides that the agreement to arbitrate "is a separate agreement between the parties and that any alleged or determined invalidity or illegality of all or any part of the Terms or Platform shall have no effect upon the validity and enforceability of this agreement." It clearly and unmistakably delegates resolution of any disputes, including disputes "concerning the enforceability, validity, scope or severability of this agreement to arbitrate" for the arbitrator to decide "through final and binding arbitration." An arbitration agreement that shows clear and unmistakable evidence of the parties' contractual intent that arbitrators and not courts have the power to determine questions of arbitrability will be enforced. *First Options* id. at 994-95.

The agreement to arbitrate is subject to the FAA. I find the agreement to arbitrate is severable from the contract as a whole, mandatory, binding and enforceable under the FAA and the cases construing it. It contains a mandatory choice of Arizona law and venue in Scottsdale, Arizona. Whether the contract as a whole is void *ab initio* for illegality is a contested issue to be resolved in this arbitration. The Motion for an Order Declaring Arbitration Non-Binding is therefore denied.

## V. Respondent's Motion to Dismiss

Respondent seeks an order dismissing all of Claimant's claims under Arizona Rule of Civ. Proc. 12(b) asserting Arizona law governs this arbitration. Respondent acknowledges that under Rule 12(b) in considering a motion to dismiss all material allegations of the demand and complaint must be considered as true and construed in the light most favorable to Claimant. However, Respondent asserts allegations that represent mere conclusions of law and unwarranted inferences are not entitled to a presumption of truth under Arizona law, and the motion to dismiss should be granted because Claimant is not entitled to relief under any of the facts alleged.

Briefly summarized Respondent argues: (1) Claimants claims are based on inapplicable California law; (2) neither California nor Arizona recognize a claim for gambling losses; (3) gambling disorders are not a recognized disability under California or Arizona law; (4) the unfair business practice claim is based on California law which does not impose civil liability for alleged unfair business practices and gambling loss claims; (5) gambling loss claims do not qualify as an injury to a person under Arizona law; (6) Claimant has failed to plead a fraud claim with particularity; (7) the predatory lending claim fails because Claimant alleges another entity, Affirm, provided the loans to him; (8) the breach of contract claim misstates the parties' agreement and his allegations are contradicted by the plain text of the contract Claimant acknowledges he entered into with Modo; (9) the negligent misrepresentation claim fails (a) to allege any false statements or omissions and (b) is barred by the economic loss doctrine; (10) there is no unjust enrichment claim because a valid contract governs the relationship between the parties; and (11) Claimant's demand for $10.5 Million in damages is limited by the parties exclusive remedy provision in their agreement and "relevant statutes of limitation".

Respondent asks that judgment be entered in its favor dismissing all of the claims with prejudice.

Claimant opposes the motion arguing Respondent is attempting to evade accountability for egregious and exploitive business practices that targeted a vulnerable consumer suffering from a gambling disorder whose claims arise under California anti-discrimination and consumer-protection statutes. Claimant argues that under JAMS Rule 18(b) dismissal is only allowed when the non-moving party could not prevail under any circumstances. Claimant asserts he has set forth detailed allegations and provided exhibits that raise factual and legal disputes which require evidentiary development and are inappropriate for dismissal on the pleadings.

Claimant argues that the Arizona choice of law provision in the arbitration agreement is unenforceable and contrary to California public policy because "they **deprive a California resident of substantive statutory rights or contravene fundamental public policy.**" (emphasis in original). Claimant maintains California has a substantial relationship and materially greater interest in this matter because Joyce is a North Carolina resident "who accessed Modo's gaming platform from within California, used California-based financial institutions, and who was targeted through online marketing campaigns directed toward nation-wide consumers."

Claimant disputes that his claims seek restitution for gambling losses. Rather his claims for fraudulent inducement, disability-based discrimination, predatory lending, and unfair business practices are all **"independent of any wager and actionable under California law."** (emphasis in original). Claimant characterizes the gravamen of his claims against Modo as follows: it misrepresented the nature and fairness of the platform; misled him into believing that his play was lawful and winnable under "sweepstakes" regulations; failed to disclose the predatory and addictive mechanics intentionally built into its system; and partnered with Affirm to facilitate unlawful, debt-generating financing tied directly to compulsive gameplay. All of these allegations fall "squarely within the ambit" of California's Unfair Competition law and the Unruh Civil Rights Act.

Claimant maintains he has pleaded detailed, specific facts showing Respondent exploited a known disability through manipulative and discriminatory business practices; partnered with a third-party lender to facilitate predatory financial transactions; and deceived California consumers through false advertising and unconscionable contract terms. The motion to dismiss should therefore be denied in its entirety, and the arbitrator should direct that the arbitration proceed with full discovery and an evidentiary hearing on the merits, find California law governs this arbitration;

recognize California's disability-based and consumer-based claims as cognizable; award equitable relief deemed just including restitution, disgorgement of ill-gotten gains; enjoin further unlawful and discriminatory conduct; and award fees, costs and reasonable attorney's fees "applicable to California statutes".

## VI. Analysis and Decision of Respondent's Motion to Dismiss

The governing law provision of the parties' arbitration agreement is mandatory, valid and enforceable. Arizona law applies to any claims or disputes Claimant has arising out of, or relating to his use of the Modo platform. Arbitration is a creature of contract. The parties agreed Arizona law would apply to any claim or dispute. Claimant has not established that any judicially created public policy exception precludes enforcement of the parties' contractual choice of law provision.

Claimant is a resident of Chapel Hill North Carolina who alleges he was a customer of Defendants' online gaming platforms. He filed a Demand attaching a Complaint asserting claims against Respondent, a Delaware limited liability company doing business as Modo which he alleges operates an online gaming and sweepstakes platform accessible to residents nationwide. Counsel for Claimant representing Claimant at the preliminary hearing represented to the arbitrator and opposing counsel that she had not served, did not intend to serve, and was not pursuing any claims against the other two entities named in the Demand and attached Complaint in this arbitration.

The "Parties and Jurisdiction" allegations in the Complaint attached to the Demand identify two other entities as defendants—an Estonia-based firm which allegedly operates a nationwide gaming and sweepstakes platform, and "a financial lending institution in Pittsburgh, Pennsylvania, providing gaming loans to gamers, including disabled addicts such as JOYCE." Claimant alleges

the Defendants' conduct violates California law protecting persons with disabilities from discrimination, exploitation and unfair business practices. It alleges venue is proper in California Superior Court in Contra Costa County, California because it "has jurisdiction over all the Defendants … as the obligations or liabilities arose from within this County, Defendants reside in and/or do business within this County, and the damages resulting from Defendants' misconduct exceed the minimum general jurisdictional limits of this Court."

These conclusory jurisdictional allegations do not support jurisdiction, venue or a legally cognizable claim under California law against the Respondent. His California law based claims for violation of the Unruh Civil Rights Act (count one), unfair business practices under the California Bus. & Prof. Code (count four), and violation of California Lenders Law (count seven) are therefore dismissed with prejudice.

I also find that Claimant's conclusory allegations that there is a unity of interests among Respondent and the two entities named in the Complaint and the Respondent require amendment, and dismissal of the unserved entities to clarify the Claimant's claims against Respondent. Claimant's prior counsel affirmatively represented she was not pursuing claims against these entities in this arbitration. They will therefore be dismissed.

Having carefully reviewed the remaining claims accepting the allegations as true and in the light most favorable to Claimant I find Claimant has stated a claim for breach of contract and unjust enrichment. Claimant asserts he entered into a contract that is void *ab initio* based on illegality and that Respondent received significant financial benefits from Respondent's wrongful conduct such that it would be unjust for Respondent to retain those benefits and for which he is entitled to restitution. Although Respondent is correct that Claimant may not recover damages

under both theories, they are separate claims asserting alternative or different theories on which relief that may be obtained.

Claimant has also stated a bare bones negligent misrepresentation claim, but has failed to provide the requisite particularity to give Respondent fair notice with respect to his fraudulent misrepresentation claim. Claimant's negligent and fraudulent misrepresentation claims will be dismissed with leave to amend. Claimant is also granted leave to amend to delete the unserved entities as Defendants, and to assert any additional claims he may have in light of the findings in this order that Arizona law shall apply. The Amended Demand should contain a plain, short and concise statement of the factual bases of the claims and the remedies sought. See JAMS Comprehensive Rule 9.

For the reasons explained, the March 4, 2026 Order considered the threshold issues Claimant and Respondent addressed in their respective moving and responsive papers and decided:

**IT IS ORDERED:**

1. Claimant's Motion for an Order Declaring Arbitration Non-Binding is **Denied.**
2. Respondent's Motion to Dismiss is **Granted in Part and Denied** in Part consistent with the findings and conclusions in this order.
3. Claimant's California law-based claims in Counts one, four and seven are **Dismissed with Prejudice**.
4. Claimant's claims against the unserved entities are **Dismissed with Prejudice**.
5. Claimant's negligent and fraudulent misrepresentation claims are **Dismissed with Leave to Amend.**

6. Claimant shall have until **April 2, 2026** to file and serve an Amended Demand with a statement of claims and relief sought in this arbitration which should be plain, short and concise statement of the factual basis for each claim and the remedy sought consistent with JAMS Comprehensive Rule 9.

As set forth in the Introduction and Procedural History section of this Interim Award, Claimant filed an Amended Demand for Arbitration and Amended Statement of Claim April 1, 2026 as ordered. The opening paragraphs of the Amended Demand articulated and acknowledged the holdings of the March 4, 2026 Order, and asserted claims only against the Respondent. Claimant did not challenge the determination that the arbitration agreement is severable, mandatory, binding, or enforceable, or that Arizona law governs, or request reconsideration or reassert any claims dismissed with prejudice to preserve the issue for further proceedings. However, on April 6, 2026 Claimant filed a Notice of Withdrawal of All Claims as summarized above in this Interim Award.

## VII. Claimant's Notice of Withdrawal of All Claims

Respondent's initial April 8, 2026 opposition to the notice of withdrawal summarized the March 4, 2026 Order and argued Claimant's attempt to withdraw his claims is an improper attempt to relitigate the issue of arbitrability and dismissal of certain claims in the Eastern District of California federal case he filed against Respondent and other Defendants June 25, 2025 after filing his Demand for arbitration in this JAMS arbitration. The opposition argues that the notice was an improper attempt to forum shop, abandon this arbitration and start over in federal court to avoid dismissal of his claims and arbitration of his claims.

The opposition requests that the March 4, 2026 Order "be converted to a final Award so that Modo can confirm the Award in the CA action or any other forum where Claimant brings

claims covered by the Order." It also requests that the Arbitrator allow Respondent to reopen this arbitration to seek costs and attorneys' fees if Claimant seeks to pursue dismissed and/or arbitrable claims in another forum, and any other relief the Arbitrator "deems just and appropriate."

Claimant filed and served a response April 22, 2026 asserting that the issue presented is narrow and straightforward: whether Claimant may voluntarily withdraw all claims from this arbitration and obtain dismissal without prejudice, or whether Respondent may condition that withdrawal upon entry of a final award and a prospective reservation of jurisdiction to seek attorneys' fees based on hypothetical future litigation.

Claimant's response agues he has the right to voluntarily withdraw his claims and that the Arbitrator should dismiss his Amended Demand claims without prejudice under JAMS Comprehensive Rule 13 and Rule 41 of Arizona Rules of Civil Procedure. He contends Rule 41(a)(1)(B) recognizes that voluntary dismissal is "generally a matter of right, subject to limited exceptions where the defendant would suffer legal prejudice." He claims Respondent has not demonstrated "concrete legal prejudice", that its concerns about litigation of the same or related claims in other judicial forums are speculative, and that ordinary expense and tactical disadvantage is insufficient to establish prejudice. Claimant also contends that Respondent "retains all ordinary defenses available under applicable law, including defenses based on arbitrability, preclusion, and the scope of the arbitration agreement."

Claimant also maintains the March 4th Order cannot be converted into a final award because it was an interlocutory order which granted him "leave to amend remaining claims, thereby explicitly contemplating additional pleadings and further proceedings." By contrast, Claimant argues, a final award "terminates the arbitrator's jurisdiction and resolves the entire dispute." Claimant contends the March 4th Order permitted him to amend, that he "exercised that

right by filing an amended statement" and "then made the strategic decision to withdraw all claims." Entering a final award as Respondent requests "would be inconsistent with the posture created by the March 4 order and "is effectively asking the Arbitrator to impose an additional merits disposition that would not have been entered had the arbitration proceeded to completion."

Additionally, Claimant argues:

(1) entering a final award now would penalize him for exercising his right to withdraw;

(2) that the March 4th order's dismissal with prejudice of certain claims "already provides whatever preclusive effect it may have under the doctrine of res judicata or collateral estoppel" that Respondent can assert in another forum;

(3) that Respondent's prospective fee request is premature, contingent, and exceeds arbitral authority and contrary to Arizona law governing when and how an arbitrator may award them;

(4) that Respondent can seek appropriate sanctions in the Eastern District of California;

(5) that the Arbitrator should not retain jurisdiction to reopen voluntarily withdrawn claims;

(6) with respect to respondent's forum shopping concerns, the "appropriate course is to grant withdrawal without the proposed conditions and to leave questions of preclusion, arbitrability, and the propriety of any federal-court sanctions to the federal court itself";

(7) four of the five defendants named in the pending federal actions cannot be bound by the March 4th order and "the federal action is therefore not an alternative to this arbitration.";

(8) Claimant filed the federal action June 30, 2025 and Respondent filed its answer in this arbitration on August 20, 2025 so this chronology "forecloses the forum-shopping characterization";

(9) Arizona law and efficient case management support unconditional withdrawal; and

(10) the conditions for withdrawal Respondent requests are either not supported by any legal authority or inconsistent with JAMS Policy on Consumer Arbitrations Pursuant to Pre-Dispute Clauses, Minimum Standard of Procedural Fairness that apply to this arbitration.

Respondent replies that Claimant is attempting to avoid unfavorable rulings in this arbitration through forum shopping by seeking to withdraw from arbitration and that it would suffer prejudice if Claimant is allowed to unconditionally withdraw after extensive motion practice over nearly a year in active arbitration.

Respondent also argues that Claimant's argument the federal court must decide contract formation issues is foreclosed by well settled Ninth Circuit law that bars judicial review of interlocutory arbitral orders. Additionally, Claimant submitted the issue of the Arbitrator's jurisdiction to the Arbitrator, and the Ninth Circuit has held that he has therefore "irrevocably submitted his claim to arbitration and waives judicial review."

Respondent's reply asks that I deny the Notice of Withdrawal "or in the alternative, enter an Award reflecting the operative provisions" of the March 4, 2026 Order, granting leave to reopen to obtain attorneys' fees and costs.

## VIII. Analysis and Decision of Claimant's Request/Notice to Withdraw All Claims without Prejudice

I find that having initiated this arbitration, and requested arbitral resolution of multiple issues, including whether the parties' arbitration agreement is binding and enforceable and having filed an Amended Demand for Arbitration and Amended Statement of Claim Claimant has invoked the jurisdiction of this arbitral forum and has waived any argument his remaining claims should not be arbitrated.

I also find that allowing Claimant to withdraw all claims stated in the April 1, 2026 Amended Demand and Statement of Claims would prejudice Respondent by depriving it of this arbitrable forum, and resolution of the issues decided in the March 4, 2026 Order after nearly a year of actively participating in and arbitrating resolution of the parties' threshold claims and defenses addressed in extensive motion practice.

However, Respondent is not entitled to a final award because Claimant is correct that the March 4th Order was an interlocutory order which dismissed his California law claims with prejudice, required him to delete unserved entities his counsel conceded would not be pursued in this arbitration and granted Claimant leave to amend.

Claimant acknowledges in his response to Respondent's opposition that the March 4th Order granted him "leave to amend remaining claims, thereby explicitly contemplating additional pleadings and further proceedings." The response states Claimant "exercised that right by filing an amended statement" and "then made the strategic decision to withdraw all claims." That "strategic decision" and attempt to withdraw remaining claims Claimant now requests would

deprive Respondent of an arbitral forum to resolve the parties' remaining disputes, and avoid enforcement of the arbitral decisions made to date.

An **Interim Award is entered in favor of Respondent and against Claimant** as follows:

1. Claimant's Motion for an Order Declaring Arbitration Non-Binding is Denied, and this arbitration will proceed as a binding arbitration; the governing law provision of the parties' arbitration agreement is mandatory, valid and enforceable; and Arizona law applies to any claims or disputes arising out of, or relating to Claimant's use of the Modo platform;
2. Claimant's California law-based claims in the Demand and Complaint filed in this arbitration on May 9, 2025, counts one, four and seven are dismissed with prejudice and an interim award entered in Respondent's favor as to these claims;
3. Claimant's claims against the two entities identified in the May 9, 2025 Demand and Complaint Claimant's counsel affirmatively represented would not be served or pursued in this arbitration are dismissed with prejudice.
4. Consistent with the March 4, 2026 Order granting Claimant leave to amend remaining claims, Respondent shall have 14 days from service of this Interim Award to file an answer or other responsive pleading to Claimant's Amended Demand and Statement of Claim.

The further determinations to be made at any further hearing or based on written submissions shall be embodied in a Final Award which shall also incorporate the contents of the Interim Award. It is not intended that this Interim Award be subject to review pursuant to the FAA, 9 U.S.C. Sections 10-12.

## IX. Procedural History Following Interim Award

On May 20, 2026 Counsel for Claimant filed a Motion to Withdraw as counsel for Claimant and Respondent filed a Request for Adjournment. The grounds for the motion to withdraw was an asserted material and irreconcilable breakdown of the attorney-client relationship regarding strategic decisions necessary for the effective prosecution of the arbitration. The motion represented that notice had been given to Claimant who had been advised he should either seek new counsel, or formally notify the Arbitrator of his intent to proceed pro se. The motion requested a stay of all current deadlines for 30 days following entry of an order granting the motion to withdraw, and that until substitute counsel appeared that all notices, filings and communications be served directly on Claimant.

Respondent's request for adjournment requested that all deadlines, including the May 27, 2026 deadline for filing an answer or responsive pleading to the Amended Demand be "adjourned" for 60 days to allow Claimant's counsel to file a motion to withdraw and allow Claimant time to engage new counsel.

In an Order entered May 26, 2026 I: (1) stayed all pending deadlines; (2) gave Respondent until June 2nd to file a response, if any, to the motion to withdraw; (3) gave counsel for Claimant until June 9th to file a reply, if any; (4) gave Claimant until June 30th to either engage substitute counsel or file and serve a notice he would be appearing pro se; and (5) required Claimant's counsel to communicate all notices and filings in the arbitration to Claimant unless and until an order was entered granting her motion to withdraw.

On May 27, 2026 Claimant sent an email to the JAMS Case Manager copied to opposing counsel notifying JAMS he would be representing himself in this arbitration, and requesting

restoration of access to the JAMS portal and case communications. The email objected to any request by Respondent to extend deadlines, indicated that his counsel was still counsel of record in the pending federal action, and that a hearing on his counsel's motion to withdraw was set for hearing July 9th in federal court. I directed that Claimant receive immediate assistance to gain access credentials and access to the JAMS portal used for all case filings and communications in a June 2, 2026 email copied to opposing counsel. Claimant acknowledged and thanked JAMS staff for obtaining prompt access to the portal.

Counsel for Respondent did not oppose the motion to withdraw as counsel and on June 18, 2026 I entered an order granting the motion to withdraw, lifting the stay of all arbitration proceedings, giving Respondent until July 3, 2026 to file an answer or other responsive pleading to Claimant's Amended Demand, with Claimant's response due July 17th and Respondent's reply due July 24th.

A Motion to Dismiss was timely filed July 3, 2026. Claimant did not file a response or opposition or request and extension of time in which to do so.

On August 13, 2026 counsel for Respondent filed and served a letter request via the JAMS Access portal pointing out Claimant had not filed an opposition to the motion to dismiss and indicating that Claimant was continuing "to litigate nearly identical claims" in federal court in the Eastern District of California forcing Respondent "to waste time and resources engaging in duplicative motion practice to enforce the Interim Award's direction that this case be arbitrated." Respondent requested that the motion to dismiss be decided "forthwith on the papers filed and presented by Modo."

On August 14, 2026 Claimant filed and served a Motion to Terminate Arbitration or in the Alternative for Entry of a Final Award and his Declaration in support of the motion.

## X. Analysis and Decision of Claimant's and Respondent's Post Interim Award Motions

Respondent's unopposed motion to dismiss the Amended Statement of Claims argues Claimant has failed to cure the "facially defective causes of action" for negligent misrepresentation and fraud and therefore should be dismissed with prejudice. Claimant did not file an opposition to Respondent's Motion to Dismiss or request an extension of time in which to do so. His failure to comply with the deadline and refusal to recognize arbitral authority over his disputes against Respondent has unreasonably multiplied proceedings in this matter, resulted in an extraordinary expenditure of time and resources and delayed this arbitration.

It is clear that Claimant will not participate in this arbitration because he firmly believes that this arbitration, in his words, is "a proceeding that cannot be administered to a binding result." I construe Claimant's failure to respond to the motion to dismiss and motion to terminate or in the alternative, request for entry of a final award as yet another attempt to withdraw all of his claims against Respondent in this arbitration and a consent to entry of a Final Award in favor of Respondent.

Claimant initiated this arbitration through his counsel, Ms. Kamath, by filing a Demand for Arbitration. His second counsel, Ms. Mack then filed an Amended Demand/Statement of Claims in compliance with the March 4, 2026 Order which was subsequently entered as an Interim Award. The Interim Award was entered more than 30- days after Ms. Mack, made an appearance in this arbitration and had not requested any form of relief with respect to fully

briefed motions. Only after counsel for both sides were notified by the JAMS Case Manager that I was drafting and would soon enter a decision did counsel for Claimant request additional and/or supplemental briefing, oral argument and/or an evidentiary hearing and various other forms of relief.

After the March 4, 2026 decision and order was entered, and after the Amended Demand/Statement of Claim was filed in compliance with the order counsel for Claimant filed and served a Notice of Withdrawal of All Claims in this arbitration. JAMS Comprehensive Rule 13(a) prohibits a party from terminating or withdrawing from an arbitration after the issuance of the commencement letter "except by written agreement of all Parties to the Arbitration." Respondent did not agree in writing and opposed allowing Claimant to withdraw from arbitration. Respondent also requested that I enter a Final Award dismissing certain claims. I declined to do so because the March 4th order was an interlocutory order granting Claimant leave to amend.

An Interim Award was entered with respect to the claims I found should be dismissed with prejudice because Claimant made no attempt to reassert those claims in the Amended Statement of Claims served April 2, 2026. The Interim Award was entered after motion practice on Claimant's Notice of Withdrawal of all Claims was filed to effectuate the provisions of the interlocutory order entered March 4, 2026—finding Claimants claims were arbitrable, arbitration of his claims was binding, Arizona law applied, Counsel for Claimant had intentionally decided not to pursue claims against non-signatories who were not named in the Demand and had not been served, certain claims were not cognizable and were therefore dismissed, and resolution of any remaining claims would be embodied in the Final Award which would incorporate the contents of the Interim Award.

Allowing Claimant to "terminate' this arbitration he initiated through counsel and has been actively engaging in extensive motion practice for well over a year would deprive Respondent of the arbitral forum to which it is entitled for adjudicating all of the claims asserted in the Demand and Statement of Claim and Amended Demand and Statement of Claim. Claimant's alternative request for entry of a Final Award is therefore granted.

Having been designated in accordance with the Parties' Arbitration Agreement identified in Section III, and having examined all of the submissions, and allegations of the Parties, I find, conclude and issue this Final Award in favor of Respondent and against Claimant as follows:

1. Claimant's Claims in the Demand and Statement of Claim and Amended Demand and Statement of Claim are arbitrable; the governing law provision of the parties' arbitration agreement is mandatory, valid and enforceable; and Arizona law applies to any claims or disputes arising out of, or relating to Claimant's use of the Modo platform;
2. A Final Award is entered in favor of Respondent on Claimant's California law-based claims in the Demand and Complaint filed in this arbitration on May 9, 2025 as counts one, four and seven;
3. A Final Award is entered in favor of Respondent on the claims asserted by Claimant in the Amended Demand and Statement of Claim filed in this arbitration April 1, 2026 for breach of contract, unjust enrichment, negligent misrepresentation and fraud/intentional misrepresentation.

Dated: September 4, 2026

Peggy A. Leen

Hon. Peggy A. Leen (Ret.)
Arbitrator

**CERTIFICATE OF SERVICE**

***Matthew Joyce v. ARB Gaming LLC dba MODO, et al.***
**USDC, Eastern District of CA, Case No. 2:25-cv-01868-DJC-CSK (PS)**

I am a citizen of the United States, over the age of 18 years, and not a party interested in the cause. I am an employee of Duane Morris LLP and my business address is One Market, Spear Tower, Suite 2200, San Francisco, California 94105. I hereby certify that a true and correct copy of the following, its attachments and documents filed concurrently therewith was electronically filed on September 29, 2026 using the CM/ECF System, thereby sending a notice of electronic filing to all counsel of record per the attached Service List.

**DEFENDANT ARB GAMING LLC'S REQUEST FOR LEAVE TO FILE NOTICE OF FINAL ARBITRATION AWARD**

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct. Executed on September 29, 2026, at San Francisco, California.

JoAnna Soliman

**SERVICE LIST**

| COUNSEL | PARTY |
|---|---|
| Matthew Thomas Joyce<br>600 Market Grove Drive, #100<br>Wake Forest, NC 27587-7345<br>Tel: 919-259-4661<br>Email: m.joyce07@proton.me | Pro Per |
| Kalama Mark Lui-Kwan<br>Ryan A. Lewis<br>Troutman Pepper Locke LLP<br>Three Embarcadero Center, Suite 800<br>San Francisco, CA 94111<br>Tel: 415-477-5700<br>Fax: 415-477-5710<br>Email: kalama.lui-kwan@troutman.com<br>ryan.lewis@troutman.com<br><br>Gary D. Sonnenfeld<br>Troutman Pepper Locke LLP<br>777 South Flagler Drive, Suite 215<br>East Tower<br>West Palm Beach, FL 33401<br>Tel: 305-712-1572<br>Fax: 561-655-8719<br>Email: gary.sonnenfeld@troutman.com | Attorneys for Defendant<br>Affirm, Inc. |
| Arjun P. Rao<br>Marcos D. Sasso<br>Morgan Lewis & Bockius LLP<br>2049 Century Park East, Suite 700<br>Los Angeles, CA 90067<br>Tel: 310-907-1063<br>Fax: 310-907-1001<br>Email: arjun.rao@morganlewis.com<br>marcos.sasso@morganlewis.com | Attorneys for Defendant<br>Goldman Sachs Bank USA |
| John Samuel Gibson<br>DLA Piper LLP US<br>2000 Avenue of the Stars<br>North Tower, Suite 400<br>Los Angeles, CA 90067-4704<br>Tel: 310-595-3039<br>Fax: 310-595-3339<br>Email: john.gibson@dlapiper.com | Attorneys for Defendant<br>Apple, Inc. |
| **VIA US FIRST CLASS MAIL**<br>Jamie Stahura<br>11076 Ligon Mill Road, #100<br>Wake Forest, NC 27587<br>Telephone: 631.252.9182<br>Email: Jamie.Stahura@PNFP.com<br>Nailbnder99@yahoo.com | Interpleader<br>Pro Se Status<br>Jamie Stahura |