# EXHIBIT A

TROUTMAN PEPPER LOCKE LLP
Kalama M. Lui-Kwan (SBN 242121)
kalama.lui-kwan@troutman.com
Ryan A. Lewis (SBN 307253)
ryan.lewis@troutman.com
Three Embarcadero Center, Suite 800
San Francisco, CA 94111
Telephone: 415.477.5700
Facsimile: 415.477.5710

TROUTMAN PEPPER LOCKE LLP
Gary D. Sonnenfeld (SBN 247894)
gary.sonnenfeld@troutman.com
777 South Flagler Drive
Suite 215, East Tower
West Palm Beach, FL 33401
Telephone: 305.712.1572
Facsimile: 561.655.8719

Attorneys for Defendant
AFFIRM, INC.

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION**

| | |
|---|---|
| MATTHEW THOMAS JOYCE, by and through undersigned counsel,<br><br>Plaintiff,<br><br>v.<br><br>ARB GAMING LLC DBA MODO. US; AFFIRM, INC.; GOLDMAN SACHS BANK USA; APPLE INC; AMAZON.COM, INC; DOES 1-50,<br><br>Defendants. | Case No. 2:25-cv-01868-DJC-CSK<br><br>**DEFENDANT AFFIRM, INC.'S RESPONSE TO PLAINTIFF'S OPPOSITION TO NOTICE OF INTENT TO DISMISS**<br><br>Judge: Hon. Daniel J. Calabretta<br>Assigned to: Magistrate Judge Chi Soo Kim<br><br>Complaint Filed: June 30, 2025<br>FAC Filed: March 2, 2026<br>Trial Date: None set |
| JAMIE STAHURA,<br><br>Plaintiff in Interpleader,<br><br>v.<br><br>ARB GAMING LLC dba MODO, a Delaware limited liability company; B2SERVICES OU dba; MCLUCK; AFFIRM, INC.; and DOES 1-10, inclusive,<br><br>Defendants in Interpleader. | |

## I. INTRODUCTION

Defendant Affirm, Inc. ("Affirm") respectfully submits this response to Plaintiff Matthew Joyce's Memorandum in Opposition to the Court's Notice of Intent to Dismiss (ECF No. 118) ("Opposition").

In its August 19, 2026 Minute Order (ECF No. 111), the Court provided notice that it may sua sponte dismiss Counts Six (unfair business practices in violation of California Business & Professions Code § 17200), Seven (unjust enrichment), Eleven ("payment processor liability"), and Twelve (aiding and abetting) against Affirm for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), to the extent those claims are barred by California's public policy against judicial resolution of gambling-related claims. The Court cited *Wong v. Bell*, 642 F.2d 359, 362 (9th Cir. 1981), and *In re Apple Inc. App Store Simulated Casino-Style Games Litig.*, 806 F. Supp. 3d 1015, 1034–35 (N.D. Cal. 2025), appeal docketed, No. 25-7917 (9th Cir. Dec. 17, 2025). The Court afforded Plaintiff thirty (30) days from the date of the order to submit a written opposition and warned that failure to file an opposition by the prescribed deadline may result in a recommendation that Plaintiff's claims be dismissed without leave to amend.

Plaintiff's Opposition miscasts context-specific legal characterizations as contradictions. By selectively cherry-picking and juxtaposing isolated sentences from different sections of Affirm's Reply (ECF No. 105), each of which addressed a different legal framework, Plaintiff ignores substantive legal authority and declares the result a "contradiction." That is a rhetorical device, not a legal argument. Affirm's positions are entirely consistent: a financial technology platform facilitating and servicing consumer financing can operate lawfully while acknowledging that the borrower subsequently used the proceeds on a gambling platform. There is no tension in those statements, any more than a bank contradicts itself by calling a mortgage "lawful" after learning a borrower use home-equity funds to gamble at a casino.

## II. AFFIRM'S POSITIONS ARE CONSISTENT

The word "gambling" appears in Affirm's Reply across two distinct legal contexts, addressing two different legal tests. Understanding those contexts disposes of Plaintiff's "contradiction" argument.

**A. The Disability Claim Context**

In addressing Plaintiff's disability claims, Affirm described the loans facilitated on its platform as "gambling-related" to invoke California Government Code § 12926(j)(5), which expressly excludes compulsive gambling from disability protection. ECF No. 105 at 3:22–27. Specifically, Affirm stated that "[t]he FAC alleges the existence of forty-six loans to a gambling platform in two months" and that "[r]elabeling the conduct of forty-six gambling-related loans does not bring the claim under the Act's protection when the facts pled establish that the relevant conduct was compulsive gambling." *Id.* The label "gambling-related" described what Plaintiff did with the loan proceeds, not Affirm's business.

**B. The UCL/Unfair Prong Context**

In addressing the UCL "unfair" prong, Affirm stated that it facilitated lawful consumer loans and "not to have operated, promoted, or participated in any gambling enterprise." ECF No. 105 at 6:28–7:6. This described *Affirm's role*: it is a financial technology platform, not a gambling operator. A borrower's unilateral choice to use loan proceeds for gambling does not render the underlying credit transaction "unfair," "any more than a bank extending a line of credit becomes 'unfair' because the borrower misuses the funds." *Id.*; *see also Taylor v. Apple, Inc.*, 2022 WL 35601, at *3 (N.D. Cal. Jan. 4, 2022) (dismissing UCL "unfair" prong claim predicated on alleged facilitation of "gambling addiction").

**C. There Is No Contradiction**

These two characterizations are not contradictory. They are complementary. A financial technology platform operates lawfully when facilitating consumer financing, while simultaneously acknowledging that the borrower subsequently used the proceeds on a gambling platform. A bank is not transformed into a casino the moment a customer withdraws cash and gambles with it. One statement describes the borrower's conduct; the other describes the technology platform's lawful conduct. That these distinct statements appear in the same brief is not a contradiction; it merely reflects the unremarkable reality that different legal tests examine different actors' behavior. Plaintiff's Opposition at pages 7–8 (citing ECF No. 105 at 3:23–25 and 6:28–7:6) selectively juxtaposes sentences from different sections of Affirm's Reply addressing different legal tests and

manufactures a pseudo "contradiction." Plaintiff lifts the phrase "forty-six gambling-related loans" from the disability-exclusion analysis and sets it beside "lawful consumer loans … not … any gambling enterprise" from the UCL analysis, as if the two were rival descriptions of the same thing. They are not. One characterizes the borrower's use of funds; the other characterizes the technology platform's business operations. The selective juxtaposition proves only that the two phrases can be placed on the same page, not that they conflict.

## III. THE DIFFERENT LEGAL FRAMEWORKS REQUIRE DIFFERENT CHARACTERIZATIONS

Each legal test in Affirm's Reply examines a different actor under a completely different statutory standard. The differing characterizations are not contradictions; they are dictated by the governing legal frameworks.

**The disability exclusion** (Cal. Gov. Code § 12926(j)(5)) focuses squarely on what conduct the *plaintiff* engaged in. Here, the FAC's own allegations establish that Plaintiff obtained forty-six loans to use on a gambling platform in two months. That compulsive gambling activity is explicitly excluded from statutory disability protections.

**The UCL "unfair" prong** evaluates what the *defendant* did. Here, Affirm facilitated consumer credit via its platform. The UCL does not transform lawful credit facilitation into an "unfair" business practice simply because the borrower elects to spend the proceeds at a particular merchant.

**The anti-gambling public policy** is not raised as a defense by Affirm in its Motion or Reply because its motion addressed independent pleading deficiencies, not because it concedes the policy's applicability. Affirm's decision not to invoke the *Kelly v. First Astri Corp.*, 72 Cal. App. 4th 462, 466 (1999) bar was a deliberate strategic and procedural choice, not an admission.

Plaintiff's argument that Affirm "declined" the defense (Opposition at 8–9) conflates silence with waiver. A movant is not required to raise every conceivable defense in a single motion to dismiss. Its decision not to brief the anti-gambling public-policy defense is no more an admission that it lacks merit than a plaintiff's decision not to plead a particular theory is a concession that no claim exists.

## IV. AFFIRM'S JANUARY 2025 COMMUNICATION DOES NOT CREATE A CONTRADICTION

Plaintiff places considerable weight on Affirm's January 27, 2025 message identifying "transactions aiming to engage into gambling," listing 106 loans, and announcing a "final decision" to close Plaintiff's account. Opposition at 8; Joyce Decl. Ex. B. Plaintiff argues that this communication constitutes a concession that the loans are "gambling" transactions, creating an irreconcilable conflict with Affirm's litigation position that it facilitated lawful consumer credit. The argument fails.

Affirm's internal compliance communication was an operational decision about Affirm's acceptable-use policies, not a legal concession about the nature of the underlying credit agreements. Financial institutions and platforms routinely enforce their terms of service, discontinue merchant relationships, flag high-risk transactions, or restrict account activity based on risk-management or compliance considerations. A financial platform's decision to close an account because a merchant's transactions fall outside the platform's acceptable-use parameters does not suddenly transform all underlying loan agreements into unenforceable gambling debts. The loans remain consumer credit obligations governed by their contractual terms, regardless of how the platform categorized the merchant for compliance purposes.

Plaintiff conflates Affirm's compliance safeguards with legal admissions. An acceptable-use determination is not a judicial finding. A bank that closes an account because the customer's transactions appear associated with a high-risk industry has not thereby conceded that all prior transactions were unlawful, or that the debts incurred are unenforceable. The same principle applies here.

## V. CONCLUSION

Plaintiff's opposition relies entirely on artificial contradictions and mischaracterized compliance actions. Affirm's positions are consistent and context-appropriate. The word "gambling" was used in two distinct legal contexts to address two different legal tests, and the resulting characterizations are not contradictory. Affirm's January 2025 compliance communication was an operational decision, not a legal concession.

Affirm respectfully requests that the Court reject Plaintiff's arguments in their entirety and dismiss Counts Six, Seven, Eleven, and Twelve with prejudice.

Dated: October 1, 2026

TROUTMAN PEPPER LOCKE LLP

By: */s/ Kalama M. Lui-Kwan*
Kalama M. Lui-Kwan
Ryan A. Lewis
Gary D. Sonnenfeld

Attorneys for Defendant
AFFIRM, INC.