Matthew Joyce
600 Market Grove Drive, #100
Wake Forest, NC 27587-7345
Telephone: (919) 259-4661
Email: m.joyce07@proton.me
Plaintiff, In Propria Persona

FILED

NOV 24 2026

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY ______ DEPUTY CLERK

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

MATTHEW JOYCE, an individual,
Plaintiff,
v.
ARB GAMING LLC dba MODO.US; AFFIRM, INC.; GOLDMAN SACHS BANK USA; APPLE INC.; AMAZON.COM, INC.; and DOES 1–50,
Defendants.

Case No. 2:25-cv-01868-DJC-CSK (PS)

**PLAINTIFF'S CONSOLIDATED OPPOSITION TO DEFENDANT ARB GAMING LLC'S MOTION TO CONFIRM ARBITRATION AWARD AND FOR RULE 54(b) JUDGMENT (ECF NO. 137); CROSS-MOTION TO VACATE FINAL ARBITRATION AWARD; AND RENEWED DEMAND FOR JURY TRIAL ON CONTRACT FORMATION (9 U.S.C. §§ 4, 5, 9, 10(a)(2)–(4), 12; E.D. Cal. L.R. 230(c), 230(e))**

Date: December 15, 2026
Time: 10:00 a.m.
Courtroom: 25, 8th Floor (Remote Requested)
Magistrate Judge: Hon. Chi Soo Kim
District Judge: Hon. Daniel J. Calabretta

## NOTICE OF CROSS-MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on December 15, 2026, at 10:00 a.m. (noticed concurrently on Defendant ARB Gaming LLC's existing confirmation calendar pursuant to E.D. Cal. L.R. 230(c) and 230(e)), before Magistrate Judge Chi Soo Kim (for Findings and Recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and E.D. Cal. L.R. 302(c)(21)) and District Judge Daniel J. Calabretta (for final de novo determination pursuant to 28 U.S.C. § 636(b)(1)(C), Fed. R. Civ. P. 72(b)(3), and E.D. Cal. L.R. 304), Plaintiff

Matthew Joyce opposes Defendant ARB Gaming LLC's ("ARB") Motion to Confirm Final Arbitration Award, Enter Judgment, and Enter Partial Final Judgment Under Fed. R. Civ. P. 54(b) (ECF No. 137), and cross-moves pursuant to 9 U.S.C. §§ 4, 5, 10(a)(2), 10(a)(3), 10(a)(4), and 12 for an Order:

1. Denying ARB's Motion to Confirm and for Rule 54(b) Judgment (ECF No. 137) in its entirety;

2. Vacating the September 4, 2026 Final Award in Joyce v. ARB Gaming LLC dba Modo, JAMS Ref. No. 5100003080 (filed on this docket at ECF No. 121 at 5–40; JAMS proof of service at ECF No. 137-6), pursuant to 9 U.S.C. §§ 4, 5, 10(a)(2), 10(a)(3), and 10(a)(4);

3. Enforcing Plaintiff's preserved demand for summary trial by jury under 9 U.S.C. § 4 (ECF No. 96) to the extent any genuine dispute of material fact regarding threshold contract formation survives de novo documentary review;

4. Striking Paragraphs 6 and 7 of ARB's [Proposed] Judgment (ECF No. 137-8 at 9), which insert unbriefed blank-check fee and sanctions awards ("$______") with zero motion in ECF No. 137-1 and zero 21-day safe harbor under Fed. R. Civ. P. 7(b)(1), Rule 11(c)(2), and E.D. Cal. L.R. 230; and

5. Directing party Defendant ARB—pursuant to Fed. R. Civ. P. 26(d)(1) and the post-October 14, 2026 changed circumstance disclosed on ARB's own Exhibit A ("11/06/2026 NOTICE OF CLOSING FILE.PDF", ECF No. 137-3 at 2), which triggered JAMS's 30-calendar-day file destruction deadline of December 6, 2026 (nine days prior to the December 15, 2026 hearing)—to serve written notice within 48 hours joining Plaintiff's November 24, 2026 written hold notice and instructing JAMS, Inc. to preserve intact the complete JAMS file, Neutral notes, portal deletion audit logs, NAC routing records, and Arbitrator Peggy A. Leen's full 5-year conflict records involving Duane Morris LLP across JAMS, AAA, private mediation, and Special Master appointments.

This Opposition and Cross-Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Sworn Declaration of Matthew Joyce ("Joyce

Decl.") and exhibits thereto, all pleadings and records on file in this action, and such further argument or evidence as the Court may consider.

Dated: November 24, 2026
Respectfully submitted,

Signed by:
Matthew Joyce
07B601B840D34AB...

MATTHEW JOYCE
Plaintiff, In Propria Persona

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND TWO-TIER DE NOVO STANDARD OF REVIEW

Arbitration under the Federal Arbitration Act is "a matter of consent, not coercion." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 479 (1989); Granite Rock Co. v. Int'l Bhd. of Teamsters, 561 U.S. 287, 299 (2010). Across fifteen months, Defendant ARB Gaming LLC ("ARB") deployed seven Duane Morris attorneys against one disabled pro se consumer, opposed two separate motions in JAMS in which Plaintiff simply asked to leave an arbitration he never agreed to enter, and warned JAMS in writing that letting Plaintiff walk out the door would set "a very dangerous precedent" (Joyce Decl. ¶ 9). Yet now, with its self-impeached Motion to Compel (ECF No. 56) still undecided on this Court's docket, ARB moves to confirm a September 4, 2026 JAMS Final Award (ECF No. 121 at 5–40; proof of service only at ECF No. 137-6) and demands premature Rule 54(b) judgment while flatly refusing in its brief to prove that any JAMS arbitration contract was ever formed (ECF No. 137-1 at 2, 5).

ARB refuses to brief contract formation because it cannot survive contact with ARB's own exhibits. Arbitrator Peggy A. Leen grounded her Award solely in ARB's March 28, 2025 ("V15") Terms and their Arizona choice-of-law clause—administering the case in Las Vegas, Nevada, an express "Excluded Territory" under V15 itself—even though ARB's own Exhibit B proves Plaintiff rejected V15 three times in writing (ECF No. 137-4 at 82, 110; Final Award at 19–24, 36, ECF No. 121 at 23–28, 40). Unable to

defend V15 in an Article III Court, ARB's confirmation brief quietly swaps in a different, September 10, 2024 ("V14") Scottsdale-only template whose own audit-log description omits the word "accepted" (ECF No. 106-2, Ex. A at 4). That leaves ARB wholly dependent on an unauthorized April 1, 2026 JAMS upload (ECF No. 137-5) by a North Carolina pro hac vice lawyer whose retainer restricted her engagement "solely" to this federal Court—an improper cross-forum appearance capped off hours after ARB's counsel threatened her personally under 28 U.S.C. § 1927 and coached her behind Plaintiff's back on how to dismiss this federal lawsuit under "FRCP 41(a)(1)(A)(i)" (ECF No. 56-8 at 3, 12–14; Joyce Decl. ¶¶ 14–15). Pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Fed. R. Civ. P. 72(b)(3), and E.D. Cal. L.R. 302(c)(21) and 304, Magistrate Judge Kim issues Findings and Recommendations subject to de novo determination by District Judge Calabretta. ARB's Motion (ECF No. 137) must be denied, Paragraphs 6 and 7 of ARB's [Proposed] Judgment (ECF No. 137-8 at 9) stricken, and the Final Award vacated under 9 U.S.C. §§ 4, 5, and 10(a)(2)–(4).

ARB's three incompatible contract versions defeat confirmation on sight:

1. March 28, 2025 ("V15"): Designates JAMS under Arizona law while defining Nevada as an "Excluded Territory" (ECF No. 137-4 at 83–109)—rejected three times in writing by Plaintiff (id. at 82, 110; zero rows in ECF No. 106-2), yet used as the sole jurisdictional predicate of Final Award § III in Las Vegas, Nevada (ECF No. 121 at 23–28, 40).

2. August 2, 2024 audit entry ("V13," March 4, 2024 terms): Mandates AAA in Orange County, Florida (ECF No. 96, Ex. M)—the sole row in ECF No. 106-2 whose DESCRIPTION states "accepted" (formation denied by Plaintiff), conferring zero authority on JAMS in Las Vegas under 9 U.S.C. §§ 5 and 10(a)(4) (Polimaster; PoolRe).

3. September 10, 2024 ("V14," DM1\15540542.1): Designates JAMS exclusively in Scottsdale, Arizona (ECF No. 56-9, Ex. B)—swapped into ECF No. 137-1 (at 2–3) despite zero email notice, an exemplar-only screenshot, an audit DESCRIPTION omitting

"accepted" (ECF No. 106-2, Ex. A at 4), and illusory unilateral-change terms (Oberstein; Miranda).

Under settled Supreme Court and Ninth Circuit law, ultra-narrow post-award deference never attaches unless the movant first proves a formed contract designating the rendering arbitral forum. Granite Rock, 561 U.S. at 297, 299; First Options of Chi., Inc. v. Kaplan, 514 U.S. 938, 943–47 (1995); Coinbase, Inc. v. Suski, 602 U.S. 143, 148–52 (2024); accord Olson v. FCA US, LLC, No. 24-6527 (9th Cir. Apr. 7, 2026) (affirming Calabretta, J., citing Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 67–68 (2010), and First Options, 514 U.S. at 943); 9 U.S.C. § 9 (permitting confirmation only "[i]f the parties in their agreement have agreed" to entry of judgment by that forum). Where no contract designating JAMS was formed, the arbitrator's threshold and merits rulings are reviewed de novo without deference.

## II. GROUND I (9 U.S.C. §§ 4, 9, 10(a)(4)): NO JAMS ARBITRATION AGREEMENT WAS EVER FORMED

### A. Arbitrator Leen Enforced a Rejected 2025 Contract ("V15") in an Excluded State, While ARB Moves to Confirm Under a Different 2024 Template

Under 9 U.S.C. § 10(a)(4), an arbitrator exceeds arbitral power by enforcing choice-of-law or forum terms from a contract whose formation was never verified. Granite Rock, 561 U.S. at 297; First Options, 514 U.S. at 943. Across sixteen months of JAMS administration—despite Plaintiff contesting contract formation from his earliest filings onward—Arbitrator Leen never held an evidentiary hearing and never ordered ARB to prove which contract Plaintiff allegedly signed. Instead, on March 4, 2026, Arbitrator Leen applied the Arizona choice-of-law clause of ARB's post-dated March 28, 2025 ("V15") Terms to extinguish Plaintiff's California Unruh Act, UCL, and McGill claims (Final Award at 19–24, ECF No. 121 at 23–28)—invoking the law of a state whose Department of Gaming ordered ARB/Modo.us to cease operations twenty days later on April 17, 2025 as an alleged felony gambling enterprise under Ariz. Rev. Stat. § 13-3303 —while administering JAMS Ref. No. 5100003080 out of Las Vegas, Nevada, a state V15

expressly defines as an "Excluded Territory" (ECF No. 137-4 at 83–109; Joyce Decl. ¶ 5). As late as August 21, 2026—fourteen days before the Final Award—ARB's own JAMS brief admitted that threshold contract validity under the March 4 Order remained "a contested issue to be resolved in this arbitration" (Joyce Decl. ¶ 9), yet the September 4 Final Award anchored decretal jurisdiction solely in "the Parties' Arbitration Agreement identified in Section III"—exclusively V15 (Final Award at 36, ECF No. 121 at 40)—with zero evidentiary adjudication in between.

ARB's own confirmation exhibits disprove V15 on contact: (1) V15 issued March 28, 2025, after Plaintiff's primary gameplay; (2) on April 7–9, 2025, when ARB gated $8,092.23 of Plaintiff's pending redemptions behind V15, Plaintiff rejected V15 three times in writing ("Not signing terms," ECF No. 137-4 at 82, JOYCE00059; "I cannot sign the terms," id. at 110, JOYCE00087), and ARB paid out the $8,092.23 anyway without acceptance (Joyce Decl. ¶¶ 6–8); and (3) ARB's backend log stops on September 10, 2024 (ECF No. 106-2, Ex. A at 4). Unable to defend V15 here, ARB's confirmation brief abandons the Award's V15 predicate and cites a September 10, 2024 ("V14") Word template—which itself mandated exclusive venue in Scottsdale, Arizona, not Las Vegas, Nevada (ECF No. 56-9, Ex. B; ECF No. 137-1 at 2–3). Asking an Article III Court to confirm a 2025 V15 Las Vegas Award under an unproved 2024 V14 Scottsdale template violates 9 U.S.C. §§ 9 and 10(a)(4).

**B. ARB's Substituted September 10, 2024 ("V14") Template Fails Ninth Circuit Assent Law and Contradicts CEO Patrick Fechtmeyer's Sworn Declaration**

To prove a mid-stream online contract modification, the proponent must establish clear notice and unambiguous affirmative assent. Stover v. Experian Holdings, Inc., 978 F.3d 1082, 1086 (9th Cir. 2020); Oberstein v. Live Nation Ent., Inc., 60 F.4th 505, 513–18 (9th Cir. 2023); Berman v. Freedom Fin. Network, LLC, 30 F.4th 849, 856 (9th Cir. 2022). As illustrated in Kamath v. Coinbase, Inc., 2024 WL 950163, at *5 (N.D. Cal. Mar. 5, 2024), an online operator meets this burden by producing (1) an advance update email, (2) the actual re-acceptance modal presented to the user, and (3) a consistent backend

acceptance record. ARB produced zero of three for V14: (1) zero V14 notice across hundreds of Modo promotional, purchase, VIP, and Zendesk emails sent to Plaintiff; (2) zero actual clickwrap screen, conceding on reply (ECF No. 106 at 8) that its cropped registration image (ECF No. 56-9, Ex. A at 6) was a generic exemplar; and (3) an internally inconsistent September 10, 2024 audit row in ECF No. 106-2, Ex. A at 4—where, although the generic TYPE column prints "TERMS_AND_CONDITIONS_ACCEPTED," the specific DESCRIPTION column omits the word "accepted" ("Terms and conditions version V14."), in sharp contrast to the August 2, 2024 DESCRIPTION explicitly recording "accepted" (Joyce Decl. ¶¶ 3–4).

Under FTC v. Publishing Clearing House, Inc., 104 F.3d 1168, 1171 (9th Cir. 1997), and Fed. R. Civ. P. 56(c)(4), an officer's declaration carries zero weight when refuted by the company's own records. CEO Patrick Fechtmeyer swore under 28 U.S.C. § 1746 that Plaintiff accepted V14 via iPhone outside an "Excluded Territory," attaching a one-of-one exemplar listing "North Carolina" as excluded (ECF No. 56-9 ¶¶ 8–12 & Ex. A at 6)—just as Fechtmeyer publicly boasted following February 2026 Indiana Senate testimony that Modo enforces strict built-in "geolocation, and responsible play tools" (CasinoBeats, Feb. 18, 2026; Joyce Decl. ¶ 11). ARB's own records refute both assertions:

1. North Carolina Was Never Excluded: Neither V13 (ECF No. 96, Ex. M), V14 (ECF No. 56-9, Ex. B at 9–10), nor V15 (ECF No. 137-4 at 83–109) listed North Carolina as an Excluded Territory; ARB verified Plaintiff's North Carolina registration (ECF No. 106-2, Ex. A at 4) and issued a $61,614.66 IRS Form 1099-MISC to Plaintiff's Chapel Hill, North Carolina address (Joyce Decl. ¶ 10).

2. Twenty-Nine Unvoided European Purchases on ARB's Own Produced Ledger: During Plaintiff's October 13–26, 2024 trip to France, Italy, and Spain while attending his partner's brother's wedding (outside the United States, an express Excluded Territory), ARB's own produced transaction ledger (ECF No. 96; Joyce Decl. ¶ 10) records 29 Modo purchases. Plaintiff did not use a VPN, and none of those 29 purchases was voided or

refunded despite ARB's express written Term that "GOLD COIN PURCHASES MADE FROM ANY EXCLUDED TERRITORY WILL BE VOIDED AND REFUNDED" (ECF No. 56-9 at 9, 12, 32; Joyce Decl. ¶ 10).

**C. Unilateral Modification Renders the Clause Illusory, and Buckeye Severability Does Not Apply**

Even if V14 had been shown to Plaintiff, ARB's unilateral-modification clause—purporting to revise Terms effective "immediately upon posting" with no notice or opt-out—renders the arbitration provision illusory. In Miranda v. ARB Gaming, LLC, No. 1:25-cv-13206-ADB, ECF No. 38 (D. Mass. Sept. 14, 2026) (appeal pending, 1st Cir.), the district court invalidated ARB's Modo.us arbitration clause on this exact ground—an illusory-modification defect Plaintiff briefed pro se under Harris v. Blockbuster Inc., 622 F. Supp. 2d 396 (N.D. Tex. 2009), in JAMS on December 6, 2025 (282 days before Miranda) and in this Court on July 28, 2026 (ECF No. 96, 48 days before Miranda; Joyce Decl. ¶ 12). Nor is this defect theoretical here: ARB actually deployed retroactive unilateral modification to swap from AAA in Florida (V13) to JAMS in Scottsdale (V14) to gating $8,092.23 in vested redemptions behind V15. Finally, Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 444 n.1 (2006), expressly excludes threshold questions of whether any agreement "was ever concluded" or whether a putative agent lacked authority to bind the principal—questions reserved exclusively for the Court. Sanford v. MemberWorks, Inc., 483 F.3d 956, 962–64 (9th Cir. 2007); Three Valleys Mun. Water Dist. v. E.F. Hutton & Co., 925 F.2d 1136, 1140–41 (9th Cir. 1991).

**III. GROUND II (9 U.S.C. §§ 5, 10(a)(4)): A LAS VEGAS JAMS ARBITRATOR DERIVES ZERO AUTHORITY FROM AN UNFILED FLORIDA AAA CLAUSE ("V13")**

Plaintiff denies forming any enforceable contract with ARB—including after ARB unilaterally moved his account into hosted "BLACK_DIAMOND_I" VIP status and used monthly host-budgeted coin drops and an off-platform $500 Amazon gift card to induce continued play after he sought to stop (Joyce Decl. ¶ 11). Regardless, even taking ARB's

supplemental log (ECF No. 106-2, Ex. A at 4) at face value, the sole row whose DESCRIPTION records "accepted" is August 2, 2024 ("V13")— which ARB's own chargeback response to Goldman Sachs proves mandated arbitration exclusively before the American Arbitration Association ("AAA") in Orange County, Florida (ECF No. 96, Ex. M at 3). Under 9 U.S.C. §§ 5 and 10(a)(4), a Las Vegas JAMS arbitrator derives zero power from an uninvoked Florida AAA clause. Polimaster Ltd. v. RAE Sys., Inc., 623 F.3d 832, 840–41 (9th Cir. 2010); PoolRe Ins. Corp. v. Organizational Strategies, Inc., 783 F.3d 256, 263–65 (5th Cir. 2015). Case records confirm Plaintiff alerted JAMS and Arbitrator Leen to this AAA forum defect 94 times under subject line "AAA DOCUMENT RECEIPT- 012500021677" (Joyce Decl. ¶ 12).

In plain terms, the record leaves ARB with zero valid contract in any forum. The only version marked "accepted" in ARB's database (August 2, 2024) required AAA in Florida; the September 10, 2024 template ARB continuously argued to support its Motion to Compel (ECF No. 56-9) and Motion to Confirm (ECF No. 137-1 at 2–3) has no acceptance record and was not even the contract the Arbitrator enforced; and there is no dispute that Plaintiff refused in writing to sign the March 28, 2025 contract (ECF No. 137-4 at 82, 110)—yet that refused March 28, 2025 contract is the exact agreement the Final Award enforced and ARB now asks this Court to confirm as a federal judgment (ECF No. 121 at 5–40, Final Award § III & at 19–24, 36).

Even if the Court credited ARB's generic exemplar screenshot from ECF No. 56-9 (Ex. A at 6), ARB's own unilateral-supersession theory defeats it: just as ARB claimed September 10, 2024 superseded August 2, 2024 to escape AAA in Florida, ARB's March 28, 2025 Terms would have superseded September 10, 2024—leaving ARB solely with a March 28, 2025 contract that Plaintiff indisputably rejected in writing before ARB paid out his $8,092.23 anyway (ECF No. 137-4 at 82, 110; Joyce Decl. ¶¶ 6–8). Either way, a contract excluding North Carolina never existed: neither V13, V14, nor V15 ever excluded North Carolina, and consumers can still play on Modo.us in North Carolina to

this day (Joyce Decl. ¶ 10). That renders both ECF No. 56 and ECF No. 137 defective on their face.

**IV. GROUND III (9 U.S.C. §§ 4, 10(a)(4)): FORMER COUNSEL LACKED AUTHORITY TO MANUFACTURE ASSENT, AND PERSONAL § 1927 THREATS SEVERED AGENCY**

An attorney possesses zero implied or apparent authority to surrender a client's right to an Article III judicial forum or stipulate to binding arbitration without express client consent—a fortiori over the client's written prohibition. Blanton v. Womancare, Inc., 38 Cal. 3d 396, 407–08 (1985); New York v. Hill, 528 U.S. 110, 114–15 (2000); Cal. Civ. Code § 2306; Restatement (Third) of Agency §§ 2.03, 8.01, 8.03.

**A. First Former Counsel Could Not Surrender Plaintiff's Prior-Filed Federal Forum Over Express Written Refusal**

ARB has maneuvered for nearly eighteen months to end this case without ever arguing a single claim on the merits—avoiding a unified federal docket alongside four non-arbitrating co-defendants while seeking to dispose of Plaintiff's claims behind a closed-door JAMS Award backed by conflicting, unsigned contract templates and zero Title III ADA accommodations—yet Plaintiff was not the first to raise federal litigation. On May 22, 2025, ARB's counsel Karen Alexander explicitly invoked federal litigation to first former counsel Reshma Kamath, and Affirm (whose former counsel Ryan A. Lewis was recently terminated on this docket, ECF No. 133) subsequently removed Plaintiff's May 2025 state suit to N.D. Cal. (No. 4:25-cv-04677-KAW, where Kamath was already disbarred, In re Kamath, No. 3:24-mc-80235-JD). Plaintiff instructed Kamath in writing: "Will not arbitrate" (ECF No. 96, Ex. N-1). Although Kamath submitted a May 6, 2025 JAMS packet six days before Plaintiff-in-Interpleader Jamie Stahura's May 12 retainer/payment confirmations issued and repeatedly pressured Plaintiff and Ms. Stahura by email to arbitrate (Joyce Decl. ¶ 13, Ex. A), Plaintiff initiated this federal action on June 30, 2025 (ECF No. 1)—thirty-one (31) days before JAMS administratively commenced arbitration on July 31, 2025—and objected in writing at 3:50 a.m. when

Kamath submitted STRIKE_LIST-JOYCE.pdf from India while he slept ("This does not mean that arbitration is starting correct? What's up with my federal court case?").

On November 13, 2025, Plaintiff dialed into the JAMS Preliminary Hearing while traveling in Idaho after he and Ms. Stahura called Kamath repeatedly without answer—learning only after disconnecting that Kamath had been disbarred five days earlier on November 8, 2025 (reported by Plaintiff at ECF No. 13) and was in federal criminal custody making her initial appearance in United States v. Kamath, No. 3:25-cr-00371-JAM (E.D. Cal.), that exact day (Joyce Decl. ¶ 13).

**B. Second Former Counsel Acted Outside Her Federal-Only Retainer, Over Written Prohibition, and Under Personal § 1927 Threats & Defense "FRCP 41" Dismissal Coaching**

Arbitrator Leen received the April 1, 2026 "Amended Demand" (ECF No. 137-5) uploaded by second former counsel, Amina Mack, PHV, and treated that filing as arbitral consent and an abandonment of Plaintiff's statutory claims (Final Award at 26, 35, ECF No. 121 at 30, 39). First, Mack lacked actual authority on four documented grounds: (1) her December 2025 retainer expressly restricted her scope "solely" to this E.D. Cal. action (§§ 1, 10–11), granting zero authority for JAMS—an executed retainer Mack withheld during withdrawal, twice representing to Plaintiff and this Court that the "entire client file" had already been transmitted before finally producing the signed retainer weeks later (ECF Nos. 113–14, 123, 135; Joyce Decl. ¶ 14); (2) on March 2, 2026, Mack filed Plaintiff's Corrected First Amended Complaint pleading directly and correctly to Hon. Daniel J. Calabretta that Plaintiff rejected V15 three times in writing and no valid arbitration contract existed (FAC ¶¶ 85–87, 91, 93–94, ECF No. 33—whereas an unauthorized boilerplate phrase in FAC ¶ 82 stating Terms were "last accepted... September 10, 2024" contradicts ¶¶ 85–94, will be removed by Plaintiff's forthcoming Rule 15(a)(2) motion to amend, and ceases to carry conclusive force upon amendment under Huey v. Honeywell, Inc., 82 F.3d 327, 333 (9th Cir. 1996)); (3) on April 1, 2026, after Mack's assistant wrote at 10:51 a.m. ET that "[w]e cannot find the original demand"

(followed by an 11:04 a.m. reply), Plaintiff issued a written 3:58 p.m. ET "DO NOT FILE / DO NOT SUBMIT JAMS DEMAND" directive, received Mack's written 4:03 p.m. ET promise that "Nothing will be filed," reiterated at 7:41 p.m. ET that "I would have to sign off on" any revision (acknowledged at 8:04 p.m. ET with no new draft ever sent), and discovered at 10:47 p.m. ET that Mack had uploaded ECF No. 137-5 at 9:37 p.m. ET anyway (Joyce Decl. ¶ 15); and (4) XML and email timestamps prove ECF No. 137-5 was generated (TotalTime = 0) by an unlicensed assistant working in South Africa (Nadine Fritz / Nadine Ludeke—holding even less authority in JAMS than Mack's zero), sat in Mack's inbox for sixty seconds before Mack uploaded it unread while still billing Plaintiff roughly eight hours at $450/hour ($3,420; Joyce Decl. ¶ 15), and contradicts itself on its own face between ¶¶ 14–15 ("rejected the updated Terms three times in writing") and ¶ 101 ("accepted").

Nor can ARB pretend it was an innocent bystander relying on counsel's "apparent authority." ARB's own sworn declaration (ECF No. 56-8) shows why. On March 30, 2026, ARB's counsel put Plaintiff's second lawyer on personal financial notice under 28 U.S.C. § 1927—quoting the "satisfy personally" language word-for-word—unless Plaintiff dropped this federal lawsuit (id. at 14). Forty-eight hours later, on April 1, with Plaintiff and California local counsel left completely off the email chain, Plaintiff's pro hac vice lawyer falsely claimed she had "spoken to her client" and asked opposing defense counsel how to end her own client's case: "As far as my client's complaint, can this be dismissed without prejudice?" (id. at 3:2–4, 13). Instead of flagging an obvious breakdown in representation, ARB's partner Karen L. Alexander spoon-fed Plaintiff's lawyer the rule—telling her "it seems that FRCP 41(a)(1)(A)(i) would apply here"—quoted "Subsection (B) of that same statute" for her, and loaded the preclusion trap in the next sentence by making sure to reserve all arguments against "any future attempts to re-file these claims" (id. at 3:4–10, 12–13). Hours later, defying Plaintiff's written "DO NOT FILE" directive, that same lawyer uploaded the April 1 Amended Demand to JAMS (ECF No. 137-5).

And on May 19, when ARB's counsel threatened personal § 1927 fees again and asked Plaintiff's lawyer to state a legal basis for keeping this federal suit alive, ARB's counsel swears: "She could not" (id. ¶ 8, at 3:26–27)—even though Supreme Court precedent (Granite Rock; First Options), four non-arbitrating federal co-defendants, and counsel's own March 2 pleading to Hon. Daniel J. Calabretta (FAC ¶¶ 87, 93–94) sat in the file—because defending her client's federal forum meant putting her own wallet—and her undisclosed personal conflicts—back in ARB's crosshairs. Ninety minutes after that call, she moved to abandon both the case and a disabled client warranting heightened protection—without ever submitting his medical and ADA accommodation records—and ARB rewarded her exit in Footnote 1 by sparing her its $30,170 sanctions demand "given that his counsel has requested leave to withdraw" (id. at 3:23–4:9 & 5 n.1; Joyce Decl. ¶ 16). Defense counsel who threaten an opposing lawyer personally while teaching her Rule 41 dismissal procedure behind her client's back, and then reward her withdrawal, cannot ask an Article III Court to treat the product of that pressure as the client's "consent." Cal. Civ. Code § 2306; Blanton, 38 Cal. 3d at 407; Restatement (Third) of Agency §§ 2.03, 8.03.

## V. GROUND IV (9 U.S.C. § 4): PLAINTIFF PRESERVED DE NOVO REVIEW UNDER FIRST OPTIONS AND GEORGE DAY, AND AWARD PAGE 31 REFUTES PAGE 34 "CONSENT"

ARB's reliance on George Day Constr. Co. v. United Bhd. of Carpenters, 722 F.2d 1471 (9th Cir. 1984), fails twice over. Beyond George Day's collective-bargaining context (Local Joint Exec. Bd. of Las Vegas v. Mirage Casino-Hotel, Inc., 911 F.3d 588, 596–98 (9th Cir. 2018)), Plaintiff satisfied Judge Tang's exact preservation blueprint (722 F.2d at 1475–76): filing federal ECF No. 1 thirty-one days before JAMS commenced (which Final Award at 28, ¶ 8, ECF No. 121 at 32, admits "forecloses the forum-shopping characterization"), forcing ARB to move to compel at ECF No. 56, and maintaining continuous written jurisdictional objections throughout JAMS (Sept. 10, 2025; Dec. 6, 2025; Apr. 6, 2026; May 27, 2026; June 4, 2026; Aug. 14, 2026). First Options, 514 U.S.

at 946; Textile Unlimited, Inc. v. A..BMH & Co., 240 F.3d 781, 788 (9th Cir. 2001). Nor can ARB manufacture delegation out of a fleeting early pro se meet-and-confer remark ("let the arbitrator decide") made before Plaintiff saw ARB's freeze strategy and squarely rejected any stay or submission—confirmed on the face of ARB's own Notice of Motion: "Plaintiff declined to dismiss this action, stipulate to arbitration, or otherwise voluntarily stay this action" (ECF No. 56 at 3:11–12).

Equally untenable is the Award's Page 34 claim that Plaintiff's August 14, 2026 alternative motion constituted "consent" to an award for ARB (Final Award at 34, ECF No. 121 at 38). On May 13, 2026, Arbitrator Leen's Interim Award erected an explicit statutory barricade: "It is not intended that this Interim Award be subject to review pursuant to the FAA, 9 U.S.C. Sections 10–12" (Final Award at 31, ¶ 7, ECF No. 121 at 35). Because interim arbitral orders are unreviewable under Millmen Local 550 v. Wells Exterior Trim, 828 F.2d 1373, 1375–77 (9th Cir. 1987), and Orion Pictures Corp. v. Writers Guild of Am., W., Inc., 946 F.2d 722, 724–25 (9th Cir. 1991), moving in the alternative to (1) TERMINATE or (2) enter a FINAL AWARD (Final Award at 1, ECF No. 121 at 5) was the mandatory procedural key required by Page 31's own lockout to unlock FAA § 10 review in this Court.

## VI. GROUND V (9 U.S.C. §§ 10(a)(2)–(4)): UNFORWARDED DUANE MORRIS CONFLICT, TWO-FORUM LOCKOUT, PORTAL DELETION (ECF NO. 137-3), ADA EXPLOITATION, AND ULTRA VIRES DECRETAL ¶ 3

### A. The Unforwarded Conflict Disclosure & Two-Forum Lockout (§ 10(a)(2))

Under Monster Energy Co. v. City Beverages, LLC, 940 F.3d 1130, 1135–38 (9th Cir. 2019), a for-profit arbitration provider's economic stake in repeat business with a party or its law firm requires transparent disclosure. Here, Arbitrator Leen disclosed an "economic interest in the overall financial success of JAMS"—a private company with a direct commercial stake in a repeat customer like Duane Morris LLP (which advertises "over a hundred" gaming arbitrations) and an operator like ARB (whose prior 5-year

JAMS case count was zero) that rewrote its Terms in September 2024 to funnel incoming player suits out of AAA and into JAMS (Joyce Decl. ¶ 17).

From day one, second counsel knew Plaintiff's single objective across sixteen months: exit an unconsented JAMS proceeding and litigate in Article III federal court, where the four additional Defendants—none of whom is a party in JAMS—were already joined. Even though her December 2025 retainer restricted her scope "solely" to this federal Court—making her cross-forum appearance in JAMS improper from the outset—JAMS sent her a supplemental notice on March 20, 2026 (sixteen days after the March 4 Order) handing Plaintiff an immediate statutory right to remove Arbitrator Leen: while sitting over Plaintiff's claims, Arbitrator Leen had just been selected "to serve as a Mediator in another case in which Duane Morris LLP is involved" (logged on ECF No. 137-3 and transmitted by JAMS in June 2026; Joyce Decl. ¶ 17). Under Cal. Code Civ. Proc. § 1281.91(b), timely notice within fifteen days disqualifies the arbitrator automatically, without cause and without ARB's consent.

Instead of forwarding that disclosure so her client could exercise his statutory right, second counsel—who never disclosed to this Court or to JAMS, either upon appearing or when moving to withdraw, her own conflict that her mother serves as a state gambling regulator (Joyce Decl. ¶ 14)—did the exact opposite of everything Plaintiff hired her to do:

1. She withheld the March 20 conflict notice until Plaintiff's fifteen-day disqualification window expired unseen;

2. Eleven days later, she went behind Plaintiff's back to ask Duane Morris how to dismiss Plaintiff's federal lawsuit under Rule 41 (ECF No. 56-8 at 12–13);

3. Acting outside her federal-only retainer, she uploaded the April 1 Amended Demand in JAMS over Plaintiff's written "DO NOT FILE" directive (ECF No. 137-5);

4. Seven days before ARB's May 27 JAMS response deadline, she abruptly moved to withdraw over ARB's unserved sanctions threats while telling Duane Morris "I am fine with allowing the extension" (ECF No. 56-8 at 8)—then told Plaintiff directly afterward

that she had not agreed to an extension, while telling Karen Alexander and defense counsel she could not sign because Plaintiff had instructed her not to act (id. at 4, 6–7; Joyce Decl. ¶ 16), handing ARB a 60-day JAMS freeze; and

5. She remained on this Court's docket under a withdrawal motion the Clerk flagged as DEFECTIVE (ECF Nos. 47–48), blocking Plaintiff from filing pro se under L.R. 182(d) while refusing his May 26 written request for an ADA accommodation filing ("Yes, it was defective... However... Ms. Sale and I will not be filing this request at this time"), even while claiming she was still communicating with opposing counsel "to protect [Plaintiff's] rights" and telling the Court "attorney-client privilege" barred her from explaining why (Joyce Decl. ¶ 16)—forcing Plaintiff to write directly to Chambers, which the Clerk routed to Judge Calabretta and docketed (ECF No. 54) so the Court could release him by granting her defective withdrawal motion (ECF No. 58).

JAMS sent Plaintiff the March 20 conflict notice only after he returned pro se in June 2026—months after his statutory right to remove Arbitrator Leen had expired and the May 13 Interim Award was already entered (Joyce Decl. ¶ 17).

**B. Case Manager Reyes's NAC Blockade, Portal Deletion (ECF No. 137-3 at 2), Title III ADA Lockout, & December 6 Destruction Clock (§§ 10(a)(3)–(4))**

Vacatur is independently required under 9 U.S.C. §§ 10(a)(3)–(4) where the forum violates its own mandatory institutional rules, ignores Title III ADA requests, or alters the administrative record. Western Employers Ins. Co. v. Jefferies & Co., 958 F.2d 258, 261–62 (9th Cir. 1992); Heckman v. Live Nation Ent., Inc., 120 F.4th 670, 683–85 (9th Cir. 2024). First, while ARB told this Court on June 26, 2026 that it supported "meaningful access" for Plaintiff's documented psychiatric disabilities (ECF No. 75 at 2:2–4; see also Dr. Ohler's unrejected Oct. 8, 2026 Addendum, ECF No. 129, Ex. A), Plaintiff's June 4, 2026 pro se JAMS Title III ADA accommodation request (09MJ.pdf, 42 U.S.C. § 12182) and Consumer Minimum Standards filing (10MJ.pdf, invoking Standards 1, 2, 3, 5, and 9; Joyce Decl. ¶ 18) sat unruled upon while ARB demanded an unaccommodated default dismissal in JAMS on August 13 and August 21, 2026.

Second, ARB's own Exhibit A (ECF No. 137-3 at 1–2; ECF No. 137-7) and JAMS correspondence confirm three administrative breakdowns: (1) after Plaintiff submitted his August 14, 2026 JAMS Rule 1(c) jurisdictional petition addressed exclusively to the JAMS National Arbitration Committee ("NAC"), Case Manager Danychel Reyes granted ARB unilateral extensions and admitted by telephone that she "forgot to submit" Plaintiff's Rule 1(c) Petition to the NAC (Joyce Decl. ¶ 18); (2) on September 3, 2026 (1:52 p.m. ET), ARB uploaded a 54-page Rule 1(c) Opposition that sat visible on Arbitrator Leen's docket for 25 weekday hours until Reyes manually deleted it at 3:03 p.m. ET on September 4 ("Deleted by: dreyes@jamsadr.com," ECF No. 137-3 at 2), followed 34 minutes later (3:37 p.m. ET) by Duane Morris associate Nelson Stewart re-uploading a 42-page version marked "Exclude Neutrals" and 139 minutes later (5:56 p.m. ET) by JAMS Las Vegas Director Satterwhite and Reyes transmitting the 36-page Final Award citing an "administrative issue" (before the NAC falsely wrote on September 14 that "[n]o party has raised ... Minimum Standards," contradicted by JAMS's July 2025 Consumer Fee Waiver and Plaintiff's June 4 10MJ.pdf); and (3) on November 6, 2026—twenty-three days after this Court denied pre-26(f) discovery in ECF No. 128 on the premise that ARB already knew its preservation duty—JAMS issued "11/06/2026 NOTICE OF CLOSING FILE.PDF" (ECF No. 137-3 at 2), triggering JAMS's 30-day file destruction policy set to wipe Neutral notes and portal logs on December 6, 2026, nine days before the December 15 hearing (Joyce Decl. ¶ 19).

**C. Decretal Paragraph 3 Ultra Vires Resurrection & Non-Party Affirm TILA Dismissal (§ 10(a)(4))**

Under Comedy Club, Inc. v. Improv West Associates, 553 F.3d 1277, 1288 (9th Cir. 2009), an arbitrator lacks authority to adjudicate withdrawn claims or claims against non-parties. In Decretal Paragraph 3 (Final Award at 35–36, ECF No. 121 at 39–40), Arbitrator Leen reached back into first counsel's superseded 2025 filing to dismiss "with prejudice" withdrawn California statutory/McGill public-injunction claims (McGill v. Citibank, N.A., 2 Cal. 5th 945, 961 (2017); Blair v. Rent-A-Center, Inc., 928 F.3d 819,

827–31 (9th Cir. 2019)), unmoved-upon contract/restitution claims, and federal Truth in Lending Act ("TILA," 15 U.S.C. § 1601 et seq.) claims pleaded solely against non-party lender Affirm, Inc.—flatly contradicting Page 28, ¶ 7 of the Award itself (ECF No. 121 at 32) admitting the non-ARB federal Defendants could not be bound.

## VII. GROUND VI: RULE 54(b) CERTIFICATION AND UNBRIEFED BLANK-CHECK PARAGRAPHS 6 AND 7 (ECF NO. 137-8 AT 9) FAIL AS A MATTER OF LAW

Having previously sought to freeze this entire multi-defendant action around ECF No. 56 while disclaiming Apple Pay, ARB reverses course in ECF No. 137-1 (at 10–11) to claim its liability is wholly separable under Fed. R. Civ. P. 54(b). Because Plaintiff's fraud, EFTA, TILA, Rosenthal, and UCL claims against ARB, Apple Inc., Goldman Sachs Bank USA, and Affirm, Inc. arise from a single closed-loop payment spine, piecemeal judgment is barred under Curtiss-Wright Corp. v. General Electric Co., 446 U.S. 1, 8 (1980), and Wood v. GCC Bend, LLC, 422 F.3d 873, 878–79 (9th Cir. 2005), while ARB's unequivocal statement that "no co-defendant is a party" to ARB's Terms (ECF No. 137-1 at 10–11) cements a binding judicial admission (Am. Title Ins. Co. v. Lacelaw Corp., 861 F.2d 224, 226 (9th Cir. 1988)) foreclosing any co-defendant preclusion defense. To the extent any threshold formation dispute survived documentary review, 9 U.S.C. § 4 mandates summary trial by jury. Hansen v. LMB Mortg. Servs., Inc., 1 F.4th 667, 670–72 (9th Cir. 2021). Finally, Paragraphs 6 and 7 of ARB's [Proposed] Judgment (ECF No. 137-8 at 9)—inserting unbriefed "$______" fee and sanctions blanks with zero motion in ECF No. 137-1 and zero 21-day Rule 11(c)(2) safe harbor—must be stricken under Fed. R. Civ. P. 7(b)(1), Rule 11(c)(2), and E.D. Cal. L.R. 230.

## VIII. CONCLUSION

ARB's strategy asks this Court to enforce an Award while bypassing the foundational question of whether the parties ever agreed to arbitrate. ARB bears the absolute burden under the FAA to prove contract formation, and it cannot bootstrap a manufactured Award to evade that duty. An arbitral forum cannot synthesize its own jurisdiction, nor can an Award retroactively forge a contract. Without proof of an underlying agreement designating JAMS, the Award is an ultra vires nullity.

Plaintiff respectfully requests that Magistrate Judge Kim recommend, and District Judge Calabretta order upon de novo review, that ARB's Motion (ECF No. 137) be DENIED; the September 4, 2026 Final Award (ECF No. 121 at 5–40) be VACATED in its entirety (or set for summary jury trial under 9 U.S.C. § 4); Paragraphs 6 and 7 of ARB's [Proposed] Judgment (ECF No. 137-8 at 9) be STRICKEN; and—following Plaintiff's November 24, 2026 written preservation demand to JAMS—party Defendant ARB be ordered within 48 hours to instruct JAMS in writing to preserve intact the complete JAMS file, Neutral notes, portal deletion logs, and 5-year Duane Morris cross-forum conflict records pending final disposition of this action.

Dated: November 24, 2026

Respectfully submitted,

Signed by:

Matthew Joyce

07B601B840D34AB...

MATTHEW JOYCE

Plaintiff, In Propria Persona

Matthew Joyce
600 Market Grove Drive, #100
Wake Forest, NC 27587-7345
Telephone: (919) 259-4661
Email: m.joyce07@proton.me
Plaintiff, In Propria Persona

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| MATTHEW JOYCE, an individual,<br>Plaintiff,<br>v.<br>ARB GAMING LLC dba MODO.US; AFFIRM, INC.; GOLDMAN SACHS BANK USA; APPLE INC.; AMAZON.COM, INC.; and DOES 1–50,<br>Defendants. | Case No. 2:25-cv-01868-DJC-CSK (PS)<br>**DECLARATION OF MATTHEW JOYCE IN SUPPORT OF PLAINTIFF'S CONSOLIDATED OPPOSITION TO MOTION TO CONFIRM ARBITRATION AWARD (ECF NO. 137) AND CROSS-MOTION TO VACATE FINAL ARBITRATION AWARD**<br>Date: December 15, 2026<br>Time: 10:00 a.m.<br>Courtroom: 25, 8th Floor (Remote Requested)<br>Magistrate Judge: Hon. Chi Soo Kim<br>District Judge: Hon. Daniel J. Calabretta |

## DECLARATION OF MATTHEW JOYCE

I, Matthew Joyce, declare as follows:

1. I am the Plaintiff in this action, proceeding in propria persona. I have personal knowledge of the facts set forth herein, and if called as a witness, I could and would competently testify thereto.

2. I opened an account on Modo.us (operated by Defendant ARB Gaming LLC) on August 2, 2024 while residing in North Carolina (residing first in Chapel Hill, North Carolina and subsequently in Wake Forest, North Carolina). I deny ever entering into a valid, enforceable arbitration agreement with ARB.

3. ARB's own supplemental backend log (ECF No. 106-2, Ex. A at 4) records the word "accepted" in its DESCRIPTION column solely on August 2, 2024, when Modo.us's March 4, 2024 ("V13") Terms designated the American Arbitration Association ("AAA") in Orange County, Florida (ECF No. 96, Ex. M at 3).

4. Across hundreds of promotional, purchase-receipt, VIP-host, and Zendesk support emails sent to me by Modo.us, I received zero advance or contemporaneous email notice of ARB's purported September 10, 2024 ("V14") Terms, never clicked an iPhone re-acceptance pop-up modal on September 10, 2024, and note that while the generic TYPE column of ARB's supplemental log prints "TERMS_AND_CONDITIONS_ACCEPTED," the specific DESCRIPTION column on September 10, 2024 omits the word "accepted" ("Terms and conditions version V14."), unlike the August 2, 2024 row (ECF No. 106-2, Ex. A at 4).

5. Throughout sixteen months of JAMS Ref. No. 5100003080—which JAMS administered out of Las Vegas, Nevada despite ARB's March 28, 2025 ("V15") Terms expressly defining "Nevada" as an "Excluded Territory" (ECF No. 137-4 at 83–109)—Arbitrator Peggy A. Leen never held an evidentiary hearing or ordered ARB to prove which version of the Terms I allegedly signed, even after Arizona's Department of Gaming issued an April 17, 2025 cease-and-desist order against ARB/Modo.us under Ariz. Rev. Stat. § 13-3303.

6. On April 7–9, 2025, ARB gated $8,092.23 of my pending redemptions behind its post-dated March 28, 2025 ("V15") Terms.

7. I explicitly rejected V15 three times in writing, including on April 8, 2025 ("Not signing terms," ECF No. 137-4 at 82, JOYCE00059) and April 9, 2025 ("I cannot sign the terms," id. at 110, JOYCE00087).

8. Following my written refusals to sign V15, ARB paid out my $8,092.23 in pending redemptions anyway without my acceptance of V15.

9. Across fifteen months of proceedings, ARB deployed at least seven Duane Morris LLP attorneys, opposed two separate requests in JAMS in which I sought to

withdraw from arbitration, warned JAMS in writing in its September 3, 2026 submission that permitting me to exit would set "a very dangerous precedent," and conceded on page 8 of its August 21, 2026 JAMS opposition brief—fourteen days before the September 4, 2026 Final Award—that threshold contract validity under the March 4, 2026 Order remained "a contested issue to be resolved in this arbitration."

10. Neither V13, V14, nor V15 ever listed North Carolina as an Excluded Territory, and Modo.us remains accessible to players in North Carolina to this day; ARB verified my North Carolina registration (ECF No. 106-2, Ex. A at 4) and issued a $61,614.66 IRS Form 1099-MISC to my Chapel Hill, North Carolina address. Between October 13 and October 26, 2024, I traveled to France, Italy, and Spain while attending my partner's brother's wedding. During that period outside the United States, ARB's own produced transaction ledger (ECF No. 96) records 29 Modo purchases on my account. I did not use a VPN during that trip, and none of those 29 purchases was voided or refunded by ARB despite the express provision in ARB's Terms stating that Gold Coin purchases made from any Excluded Territory will be voided and refunded (ECF No. 56-9 at 9, 12, 32).

11. Those unvoided European purchases directly contradict CEO Patrick Fechtmeyer's sworn declaration (ECF No. 56-9 ¶¶ 8–12 & Ex. A at 6) as well as his February 18, 2026 CasinoBeats statement following February 2026 Indiana Senate testimony claiming Modo enforces strict built-in "geolocation, and responsible play tools." Likewise, after I sought to stop playing and raised platform anomalies, ARB unilaterally moved my account into hosted "BLACK_DIAMOND_I" VIP status and used monthly host-budgeted coin drops and an off-platform $500 Amazon gift card to induce continued play.

12. I filed my pro se unilateral-modification / illusory-contract challenge (citing Harris v. Blockbuster Inc., 622 F. Supp. 2d 396 (N.D. Tex. 2009)) in JAMS on December 6, 2025 (282 days before Miranda v. ARB Gaming, LLC, No. 1:25-cv-13206-ADB, ECF No. 38 (D. Mass. Sept. 14, 2026)) and in this Court on July 28, 2026 (ECF No. 96, 48

days before Miranda). Case records also reflect ninety-four (94) notices alerting JAMS and Arbitrator Leen to the V13 AAA forum defect under subject line "AAA DOCUMENT RECEIPT- 012500021677," and any passing early pro se meet-and-confer remark regarding what might occur if ARB asked the arbitrator was immediately superseded by my refusal to dismiss, stipulate, or stay this federal action, as ARB admitted on the face of ECF No. 56 (at 3:11–12).

13. I instructed first former counsel Reshma Kamath in writing, "Will not arbitrate" (ECF No. 96, Ex. N-1). Although Ms. Kamath submitted a May 6, 2025 JAMS packet six days before my mother Jamie Stahura's May 12, 2025 retainer/payment confirmations issued, Ms. Kamath repeatedly pressured Ms. Stahura and me by email to arbitrate (a true and correct copy of my August 28, 2025 email thread with Ms. Kamath copying Ms. Stahura is attached hereto as Exhibit A). I initiated this federal action on June 30, 2025 (ECF No. 1)—thirty-one (31) days before JAMS administratively commenced arbitration on July 31, 2025—and objected in writing at 3:50 a.m. when Ms. Kamath submitted STRIKE_LIST-JOYCE.pdf from India while I slept ("This does not mean that arbitration is starting correct? What's up with my federal court case?"). On November 13, 2025, I dialed into the JAMS Preliminary Hearing while traveling in Idaho after Ms. Stahura and I called and emailed Ms. Kamath repeatedly without answer—learning only after disconnecting that Ms. Kamath had been disbarred five days earlier on November 8, 2025 (reported by me at ECF No. 13) and was in federal criminal custody making her initial appearance in United States v. Kamath, No. 3:25-cr-00371-JAM (E.D. Cal.), on November 13, 2025.

14. My December 2025 retainer with second former counsel Amina Mack, PHV expressly restricted her scope "solely" to this E.D. Cal. action (§§ 1, 10–11), granting zero authority to appear in or submit demands to JAMS. During and after her withdrawal, Ms. Mack withheld that executed retainer, twice representing to me and to this Court that the "entire client file" had already been transmitted before finally producing the signed retainer weeks later (ECF Nos. 113–14, 123, 135). Ms. Mack also never disclosed to this

Court or to JAMS—either upon appearing or when moving to withdraw—that her mother serves as a state gambling regulator, and she omitted both me and California local counsel Jacqueline Sale from the March 30–April 6, 2026 email chain with ARB's counsel Karen L. Alexander in ECF No. 56-8, Ex. A (pp. 12–16), where Ms. Mack falsely claimed on April 1 that she had "spoken to her client" and asked opposing counsel whether my federal complaint could be dismissed without prejudice.

15. On April 1, 2026, at 10:51 a.m. ET, Ms. Mack's assistant working in South Africa (Nadine Fritz / Nadine Ludeke, admin@themacklaw.com) wrote that "[w]e cannot find the original demand. ... It's not on JAMS" (followed by an 11:04 a.m. ET reply). At 3:58 p.m. ET on April 1, I sent a written "DO NOT FILE / DO NOT SUBMIT JAMS DEMAND" directive; at 4:03 p.m. ET, Ms. Mack promised in writing that "Nothing will be filed"; at 7:41 p.m. ET, I reiterated in writing that "I would have to sign off on" any revision; and at 8:04 p.m. ET, Ms. Mack's office acknowledged that instruction without ever sending a revised draft. At 10:47 p.m. ET, I discovered Ms. Mack had uploaded the April 1 Amended Demand (ECF No. 137-5) to JAMS at 9:37 p.m. ET anyway. Forensic XML and email timestamps confirm ECF No. 137-5 was generated (TotalTime = 0) by Ms. Ludeke, sat in Ms. Mack's inbox for sixty seconds before being uploaded to JAMS, and was nonetheless billed to me at roughly eight hours at $450/hour ($3,420).

16. On May 19–20, 2026—seven days before ARB's May 27, 2026 JAMS response deadline and ninety minutes after Ms. Alexander's May 19 telephone sanctions warning (ECF No. 56-8 ¶ 8)—Ms. Mack moved to withdraw over ARB's unserved sanctions threats while writing to Duane Morris "I am fine with allowing the extension" (id. at 8), telling me afterward she had not agreed to an extension, and telling defense counsel she could not sign because I instructed her not to act (id. at 4, 6–7). While remaining on this Court's docket under a withdrawal motion flagged as DEFECTIVE (ECF Nos. 47–48), Ms. Mack refused to submit my medical and ADA accommodation records—writing on May 26, 2026, "Yes, it was defective... However... Ms. Sale and I will not be filing this request at this time"—while claiming she was still communicating

with opposing counsel "to protect [my] rights" and asserting "attorney-client privilege" barred her from explaining why, until my May 28 submission to Chambers (ECF No. 54) led to the May 31 Order terminating her representation (ECF No. 58).

17. Arbitrator Leen's initial disclosures stated that she holds an "economic interest in the overall financial success of JAMS" and reported zero (0) prior 5-year JAMS cases for ARB Gaming LLC. On March 20, 2026, JAMS issued a supplemental disclosure stating Arbitrator Leen "has been selected to serve as a Mediator in another case in which Duane Morris LLP is involved" (logged on ECF No. 137-3). Ms. Mack never forwarded that March 20, 2026 conflict notice to me; JAMS Case Manager Danychel Reyes sent it to me only after I returned pro se in June 2026, after my fifteen-day statutory disqualification window under Cal. Code Civ. Proc. § 1281.91(b) had expired and the May 13, 2026 Interim Award had been entered.

18. On June 4, 2026, I submitted pro se to JAMS my Title III ADA accommodation request (09MJ.pdf) and my Consumer Minimum Standards filing (10MJ.pdf, invoking JAMS Consumer Minimum Standards 1, 2, 3, 5, and 9). Neither filing was ruled upon while ARB demanded an unaccommodated default dismissal on August 13 and August 21, 2026. When I telephoned Case Manager Reyes regarding ARB's unilateral extensions and my August 14, 2026 Rule 1(c) Petition addressed to the JAMS National Arbitration Committee ("NAC"), Ms. Reyes stated to me—as recorded in my contemporaneous notes—that she "forgot to submit" my Rule 1(c) Petition to the NAC.

19. After I received the September 4, 2026 Final Award by email following the 25-weekday-hour upload and deletion of ARB's 54-page Rule 1(c) Opposition ("Deleted by: dreyes@jamsadr.com," ECF No. 137-3 at 2), I declined post-Award emails inviting me to log back into the JAMS Access portal. On November 10, 2026, ARB's Exhibit A disclosed "11/06/2026 NOTICE OF CLOSING FILE.PDF" (ECF No. 137-3 at 2), triggering JAMS's 30-calendar-day file destruction policy set for December 6, 2026 (nine days prior to the December 15, 2026 hearing). On November 24, 2026, I transmitted

written notice to JAMS (copying ARB's counsel) demanding preservation of the complete JAMS file, Neutral notes, portal deletion logs, NAC routing records, and 5-year Duane Morris conflict records, and I request an Order directing party Defendant ARB to issue a matching written hold notice within 48 hours so JAMS does not destroy records prior to this Court's review.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 24, 2026, at Wake Forest, North Carolina.

Signed by:
Matthew Joyce
07B601B840D34AB...

MATTHEW JOYCE
Plaintiff, In Propria Persona

# EXHIBIT A

August 28, 2025 — Email Thread with Reshma Kamath

# Re: All in agreement? They can't force arbitration. No should we submit to it.

From: Reshma Kamath (reshmakamath2021@gmail.com)

To: matthewtjoyce@yahoo.com

Cc: nailbnder99@yahoo.com; brepitt13@gmail.com; jamie.stahura@pnfp.com

Date: Thursday, August 28, 2025 at 11:19 PM EDT

Arbitration is per the contract. You can file the motions once the arbiter is selected to deem the Arbitration clause void and unenforceable.

Sincerely,

*Reshma Kamath*

**Law Office of Reshma Kamath**

Counselor-at-Law | 2022 Elite Lawyer | Lawyers of Distinction | Rising Star, 2023, 2024, 2025 | Best Lawyers: Ones to Watch in America, 2024, 2025.

Address: Law Office of Reshma Kamath

2648 International Blvd, Suite 115 # 294, Oakland, California 94601

Phone: 1 650 257 0719 / 1 213 410 1019 |

E-mail: reshmakamath2021@gmail.com |

LinkedIn: www.linkedin.com/in/globalcitizenwithjd/ |

Website: www.myinstalawyer.com |

RESHMA KAMATH

LAWYERS OF DISTINCTION 2022



Exh. A-1

*Selected to Rising Stars: 2023, 2024, 2025.*

Best Lawyers 2024, 2025.

CIVIL LITIGATION, COMMERCIAL LITIGATION, REAL ESTATE, PROBATE.

**CONFIDENTIALITY NOTICE:** This communication with its contents may contain confidential and/or legally privileged information. It is solely for the use of the intended recipient(s). Unauthorized interception, review, use or disclosure is prohibited and may violate applicable laws including the Electronic Communications Privacy Act. If you are not the intended recipient, please contact the sender and destroy all copies of the communication. Thank you for your cooperation. To ensure compliance with Internal Revenue Service Circular 230, we inform you that any tax advice contained in this communication is not intended or written to be used, and cannot be used for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any tax-related matter(s) addressed herein.

On Thu, Aug 28, 2025, 6:14 PM Matthew Joyce <matthewtjoyce@yahoo.com> wrote:

Reshma,

Want to thank you for believing in me and getting g me this far. I'd also like to apologize for any time I was inpatient or rude to you. You don't deserve that and I have not been well.

With that being said I have wanted this knocked out of binding arbitration since day one. I'm sure AI is not completely right on all of this. But it's pretty clear it can be argued.

If you do not agree to meet my wishes on this as well as have a conversation just to mediate a call with me and Apple. I would respectfully ask for my final itemized invoice and I (personally) will seek other counsel.

If that is what we agree upon please inform us of if my mom would have to switch attorneys as well or if she can stay on with you.

We get on the same page, literally by tomorrow. Or I'll look to retain counsel else where.

Thanks for everything if that's the decision we make. I truly mean that. We all do.

Matt

Sent from Yahoo Mail for iPhone

On Thursday, August 28, 2025, 9:00 PM, Matthew Joyce <matthewtjoyce@yahoo.com> wrote:

Unless they agree to pay the full amount I ask for I would like to file this. With Jams first. To knock it down to non binding arbitration.

If that is not allowed. Please file this in federal court. Even AI believes I should not arbitrate.

Their clause is invalid. It says I can attach that to the in pro se complaint.

Please give me your plan with my wishes in mind reshma.

Absolutely. Below is a **comprehensive declaration** by **Matthew Joyce**, written for submission in **federal court**, arguing **every legal reason** why he should **not be forced into binding arbitration** — including:

1. **His bipolar disorder/disability and lack of accommodation**
2. **Unconscionability (procedural and substantive)**
3. **Lack of clear notice and meaningful assent**
4. **Public policy concerns**
5. **The nature of his claims (statutory and potentially outside arbitration's scope)**
6. **No opportunity to negotiate or opt out**
7. **Defendant's delay or conduct possibly waiving arbitration**

---

# UNITED STATES DISTRICT COURT

**EASTERN DISTRICT OF CALIFORNIA**

---

**MATTHEW JOYCE,**
Plaintiff,
v.
**ARB GAMING LLC (dba modo.us),**
Defendant.

Case No.: [To be assigned]

---

## DECLARATION OF MATTHEW JOYCE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

---

I, **Matthew Joyce**, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

---

### 1. Background

I am the Plaintiff in this matter and submit this declaration in opposition to Defendant's attempt to compel binding arbitration. The statements made here are based on my personal knowledge.

---

## 2. I Have Bipolar Disorder, a Recognized Disability

I have been formally diagnosed with **bipolar disorder**, a medical condition that significantly affects my cognition, judgment, focus, and ability to process complex or dense information—especially during symptomatic periods. This is a **recognized disability** under the **Americans with Disabilities Act (ADA)** and California law.

---

## 3. I Was Not Offered Any Disability Accommodation

At the time I used modo.us, I received **no notification, support, or opportunity to request accommodations** for my condition — despite the fact that the Terms of Service (including the arbitration clause) were written in complex legal language that I could not reasonably understand without assistance or explanation.

Given my mental state and my disorder, I did **not knowingly or voluntarily waive my right** to sue in court. No simplified explanation or accessible option was provided.

---

## 4. I Was Not Given Clear or Reasonable Notice of the Arbitration Clause

When I registered with modo.us, I was not clearly informed that I was waiving my rights to bring legal claims in court or agreeing to mandatory arbitration. The arbitration clause was buried in the Terms of Service, which I was never required to read or affirmatively accept beyond a general clickwrap agreement.

I did **not understand or knowingly agree** to be bound by arbitration. The clause was not highlighted or made accessible.

---

## 5. The Arbitration Clause Is Procedurally and Substantively Unconscionable

The arbitration clause was part of a **non-negotiable, one-sided contract of adhesion**. I had no ability to negotiate or opt out. No meaningful choice was offered.

Substantively, the clause is harsh and unfair. It strips me of the ability to pursue a **class action**, requires me to bear arbitration-related burdens, and attempts to prevent access to important statutory remedies. These elements are **deeply unfair** and **shock the conscience** under California law.

---

## 6. My Claims Are Based on Statutes and Public Policy That Should Not Be Forced Into Arbitration

My legal claims include **consumer protection violations** and potentially **disability discrimination** — claims that courts have held **are not always appropriate for private arbitration**, especially when important public rights are involved. Arbitration is not an appropriate venue for adjudicating statutory violations where **public enforcement and deterrence are essential.**

---

## 7. Enforcing Arbitration Would Violate Public Policy

Forcing me, as a disabled consumer, into private arbitration would **undermine the protective purposes of both consumer protection law and disability law.**

The arbitration clause was not crafted with disabled users in mind, and enforcing it in this context would **shield a company from accountability** using procedures that I could not understand or knowingly accept.

This contradicts the ADA's aim of **ensuring equal access to services and fair treatment**, and undermines fundamental legal protections available to vulnerable individuals.

---

## 8. Defendant Did Not Promptly Assert Arbitration

To the extent Defendant has delayed raising the arbitration issue or participated in litigation conduct inconsistent with arbitration, I believe they may have **waived** their right to compel it.

I relied on the assumption that I would be able to pursue my rights in court, and I have expended effort and time in this forum.

---

## 9. I Did Not Understand That I Was Giving Up My Legal Rights

Because of my bipolar disorder, and the lack of any affirmative explanation, I **did not know that I was giving up my right to sue in court**, to be heard by a jury, or to participate in a class action.

Had I been aware of this, or had I received any accommodation or explanation, I would **never have agreed** to waive those rights.

---

## 10. Conclusion and Request

For all the reasons stated above — including:

- My disability and the Defendant's failure to accommodate it
- Lack of informed consent
- Procedural and substantive unconscionability
- Public policy concerns
- The nature of my claims
- And the unfairness of enforcing a buried, one-sided clause against a disabled person

— I respectfully ask the Court to **deny Defendant's motion to compel arbitration**.

---

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

**Executed on:** [Insert Date]
**At:** [Insert City, State]

**/s/ Matthew Joyce**
**Matthew Joyce**
Plaintiff (Pro Se or via Counsel)

---

## What You Can Do Next:

- Attach this declaration to your **Opposition to Motion to Compel Arbitration**.
- Consider having your **treating doctor or therapist** provide a short statement or declaration as well.
- I can now help you **assemble this into a motion package**, including:
  - A cover **motion/opposition brief**
  - A **table of authorities** (if needed)
  - A **certificate of service** (if filing pro se)

Would you like the **full court-ready motion packet** next?

Sent from Yahoo Mail for iPhone

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| MATTHEW JOYCE, an individual,<br>Plaintiff,<br>v.<br>ARB GAMING LLC dba MODO.US; AFFIRM, INC.; GOLDMAN SACHS BANK USA; APPLE INC.; AMAZON.COM, INC.; and DOES 1–50,<br>Defendants. | Case No. 2:25-cv-01868-DJC-CSK (PS)<br>**[PROPOSED] ORDER DENYING DEFENDANT ARB GAMING LLC'S MOTION TO CONFIRM ARBITRATION AWARD AND FOR RULE 54(b) JUDGMENT (ECF NO. 137), STRIKING PARAGRAPHS 6 AND 7 OF ECF NO. 137-8, AND GRANTING PLAINTIFF'S CROSS-MOTION TO VACATE FINAL ARBITRATION AWARD** |

Having considered Defendant ARB Gaming LLC's Motion to Confirm Final Arbitration Award, Enter Judgment, and Enter Partial Final Judgment Under Fed. R. Civ. P. 54(b) (ECF No. 137), Plaintiff Matthew Joyce's Consolidated Opposition and Cross-Motion to Vacate Final Arbitration Award, the supporting declarations and exhibits, and the record herein upon de novo review pursuant to 28 U.S.C. § 636(b)(1)(C) and 9 U.S.C. §§ 4, 5, 9, and 10, IT IS HEREBY ORDERED THAT:

1. Defendant ARB Gaming LLC's Motion to Confirm Final Arbitration Award, Enter Judgment, and Enter Partial Final Judgment Under Fed. R. Civ. P. 54(b) (ECF No. 137) is DENIED in its entirety;

2. Plaintiff's Cross-Motion to Vacate Final Arbitration Award is GRANTED, and the September 4, 2026 Final Award in Joyce v. ARB Gaming LLC dba Modo, JAMS Ref. No. 5100003080 (ECF No. 121 at 5–40; proof of service at ECF No. 137-6), is VACATED in its entirety pursuant to 9 U.S.C. §§ 4, 5, 10(a)(2), 10(a)(3), and 10(a)(4);

3. Paragraphs 6 and 7 of ARB's [Proposed] Judgment (ECF No. 137-8 at 9) are STRICKEN pursuant to Fed. R. Civ. P. 7(b)(1), Rule 11(c)(2), and E.D. Cal. L.R. 230; and

4. Pursuant to Fed. R. Civ. P. 26(d)(1), within forty-eight (48) hours of entry of this Order, Defendant ARB Gaming LLC shall serve written notice on JAMS, Inc. instructing JAMS to preserve and hold intact the complete file in JAMS Ref. No. 5100003080—including all Neutral notes, JAMS Access portal upload/deletion audit logs, National Arbitration Committee routing records, and Arbitrator Peggy A. Leen's 5-year conflict records involving Duane Morris LLP across JAMS, AAA, private mediation, and Special Master appointments—pending final disposition of this action, and shall file proof of service of such hold notice on the docket.

IT IS SO ORDERED.

Dated: _________________, 2026

_______________________________

HON. DANIEL J. CALABRETTA
UNITED STATES DISTRICT JUDGE

Matthew Joyce
600 Market Grove Drive, #100
Wake Forest, NC 27587-7345
Telephone: (919) 259-4661
Email: m.joyce07@proton.me
Plaintiff, In Propria Persona

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**SACRAMENTO DIVISION**

| | |
|---|---|
| MATTHEW JOYCE, an individual,<br>Plaintiff,<br>v.<br>ARB GAMING LLC dba MODO.US; AFFIRM, INC.; GOLDMAN SACHS BANK USA; APPLE INC.; AMAZON.COM, INC.; and DOES 1–50,<br>Defendants. | Case No. 2:25-cv-01868-DJC-CSK (PS)<br>**PROOF OF SERVICE** |

I, Matthew Joyce, declare:

I am the Plaintiff in this action and over eighteen years of age.

Service date: November 24, 2026 Place of service: Wake Forest, North Carolina

I served the following (see page 2 for recipients and methods):

1. Plaintiff's Consolidated Opposition to the Motion to Confirm Arbitration Award and Cross-Motion to Vacate Final Arbitration Award.

2. Declaration of Matthew Joyce, with Exhibit A.

3. [Proposed] Order.

Additional service details (different dates, places, or delivery addresses):

________________________________________________________

________________________________________________________

**RECIPIENTS AND METHOD OF SERVICE**

| Party | Recipient | E-mail | Method |
|---|---|---|---|
| ARB Gaming | Karen Lehmann Alexander | klalexander@duanemorris.com | Electronic Mail |
| | Daniel Donahoe Wall | dwall@duanemorris.com | Electronic Mail |
| | Walter A. Saurack | wasaurack@duanemorris.com | Electronic Mail |
| Affirm | Kalama Mark Lui-Kwan | kalama.lui-kwan@troutman.com | Electronic Mail |
| | Gary D. Sonnenfeld | gary.sonnenfeld@troutman.com | Electronic Mail |
| Goldman Sachs | Arjun P. Rao | arjun.rao@morganlewis.com | Electronic Mail |
| | Marcos D. Sasso | marcos.sasso@morganlewis.com | Electronic Mail |
| Apple | Tanya L. Greene | tanya.greene@us.dlapiper.com | Electronic Mail |
| | Colin F. McGrath | colin.mcgrath@us.dlapiper.com | Electronic Mail |
| Interpleader | Jamie Stahura | jamie.stahura@proton.me | Electronic Mail |
| | Amina M. Mack | legal@themacklaw.com | Electronic Mail |

Jamie Stahura's mailing address on the court notice: 11076 Ligon Mill Road, #100, Wake Forest, NC 27587.

Amazon.com, Inc. — prior mailing addresses (ECF No. 131):
c/o Corporation Service Company, 2710 Gateway Oaks Dr., Suite 150N, Sacramento, CA 95833; and 410 Terry Avenue North, Seattle, WA 98109-5210.

Courtesy only (if sent): Jacqueline M. Sale, jms@jaxlawoffices.com; jmsale@gmail.com.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on November 24, 2026 at Wake Forest, North Carolina.

Signed by:

07B601B840D34AB...

MATTHEW JOYCE

Plaintiff, In Propria Persona